## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

———————————————————— )
Nelson L. Bruce,                                      )
                                                      )
                 Plaintiff,                           )
                                                      )
          v.                                          )          Civil Action No.: 2:22-cv-02211-BHH-MGB
                                                      )
Pentagon Federal Credit Union; *et al.*               )          District Judge Bruce Howe Hendricks
                                                      )          Magistrate Judge Mary Gordon Baker
                 Defendants.                          )
———————————————————— )

### DEFENDANT PENTAGON FEDERAL CREDIT UNION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Plaintiff Nelson L. Bruce, a serial *pro se* litigant in this Court,[1] alleges that Pentagon Federal Credit Union ("PenFed") acted tortiously and violated several statutes by informing credit reporting agencies ("CRAs") that it charged off three accounts after Bruce failed to pay debts. None of the allegations in Bruce's 34-page amended complaint [ECF 31] expressly deny that Bruce defaulted on his debts or that PenFed charged off the accounts. Instead, the gravamen of the amended complaint is that PenFed allegedly (1) did not mark the accounts as "disputed" when Bruce raised meritless challenges, and (2) continued to report the accounts after selling them to third parties or assigning them to debt collectors. (*See* Am. Compl. [ECF 31] ¶¶ 27, 50-52.)

---

[1] *See e.g. Bruce v. Bank of Am. Corp.*, No. 2:17-cv-01864-RMG-BM; *Bruce v. Carrington Mortg. Servs. LLC*, No. 2:17-cv-02171-BHH-MGB; *Bruce v. Niagra Cap. Assocs., Inc.*, No. 2:18-cv-00332-BHH; *Bruce v. Bank of Am., NA*, No. 2:20-cv-03778-BHH; *Bruce v. Bank of Am., NA*, No. 2-21-cv-00735-BHH; *Bruce v. T-Mobile USA, Inc.*, No. 2:21-cv-00895-BHH-MGB; *Bruce v. Gov't Nat'l Mortg. Assoc.*, No. 2:18-cv-02635-BHH; *Bruce v. Bank of Am., N.A. et al.*, No. 2:19-cv-02854-BHH; *Bruce v. Equifax Info. Sols., LLC et al.*, No. 2:21-cv-03603-BHH-MGB; *Bruce v. REV Fed. Credit Union*, No. 2:22-cv-01292-BHH-MGB; *Bruce v. Pentagon Fed. Credit Union*, No. 2:17-cv-2170-BHH.

The amended complaint asserts claims against PenFed under the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA"), the South Carolina Consumer Protection Code ("SCCPC"), the Uniform Commercial Code ("UCC"), the South Carolina Unfair Trade Practices Act ("SCUTPA"), and the common law of South Carolina. Bruce's statutory claims fail as a matter of law for reasons this Court has already addressed in Bruce's other lawsuits. In fact, Bruce's FDCPA claim is barred by collateral estoppel because this Court already held that PenFed is not subject to the FDCPA in a final order that has since been affirmed by the U.S. Court of Appeals for the Fourth Circuit. *Bruce v. Pentagon Fed. Credit Union*, No. 2:17-CV-2170-BHH, 2018 WL 4476129, at \*3 (D.S.C. Sept. 19, 2018), *aff'd*, 765 F. App'x 30 (4th Cir. 2019).

Setting aside the Court's prior decisions, the amended complaint fails to allege a coherent factual basis to support Bruce's claims. The most recent letters included in Bruce's own exhibits, which are dated April 30, 2022, and May 3, 2022, unequivocally state that Bruce does not know if PenFed reported inaccurate information about the relevant accounts: "I am not saying they are reporting right or wrong. I am just saying that I am not 100 percent sure if they are." (Compl. [ECF 1] at Ex. A [ECF 1-2] at pp. 48 of 58 & 50 of 58.) The Court should not allow Bruce to use the discovery process for a fishing expedition when he admits he does not know if his claims are valid.

Moreover, Bruce's own exhibits refute the factual allegation at the center of his claims. Bruce alleges PenFed sold a credit card account "prior to January 22, 2018[.]" (Am. Compl. ¶ 50.) The exhibit Bruce cites in support of that allegation directly contradicts it, however, because the exhibit includes a February 8, 2021, letter clearly stating that the relevant accounts, including the credit card account, "are legally established debts for which you are liable to repay." (Compl. at Ex. C [ECF 1-4].) The only letter stating that PenFed sold the credit card account is dated April 11, 2022, and it does not identify the date on which the account was sold. (*Id.*)

## FACTUAL BACKGROUND

The amended complaint identifies two alleged errors in the information PenFed furnished to credit reporting agencies. First, it alleges that PenFed reported a credit card account after having sold the account sometime "prior to January 22, 2018[.]" (Am. Compl. ¶ 50.) In support of the allegation that PenFed sold the account "prior to January 22, 2018," Bruce cites Exhibit C to his initial complaint. (*Id*.) Exhibit C contradicts Bruce's allegation, however, because it includes a February 8, 2021, letter clearly stating that the relevant accounts, including the credit card account, "are legally established debts for which you are liable to repay."[2] (Compl. at Ex. C [ECF 1-4].) Exhibit C also includes a letter stating that PenFed sold the credit card account, but that letter is dated April 11, 2022, and it does not identify the date on which the account was sold. (*Id*.)

Bruce also suggests that, on some unspecified date, PenFed "may have" securitized his accounts, sold them to investors, and retained the servicing rights. (Am. Compl. ¶ 52.) The equivocal language Bruce uses reveals that he lacks any factual basis for the allegation:

> It **appears** that PENFED **may have** sold to investors and securitized plaintiff's alleged auto loan and have pooled the auto loan account with other auto loans and trading it on the secondary market therefore are no longer in possession of the original signed note collateral security as it has been pooled with others therefore they are no longer considered an alleged creditor and are hired as the servicer of the pool associated with plaintiff's account therefore are debt collectors as they are not trying to collect their own debts, they have sold those rights to investors of the pool and now are third parties servicing the loan on behalf of the investors trying to collect on behalf of the investors.

(*Id*. (emphasis added).)

---

[2] "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), Fed.R.Civ.P., the exhibit prevails." *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

Second, the amended complaint alleges that the information PenFed furnished to credit reporting agencies was inaccurate because "the accounts reported were not marked as disputed[.]" (Am. Compl. ¶¶ 25-26.) Rather than listing the specific disputes he claims should have been reported, Bruce states that he "disputed information as evidenced by his disputes" and references the documents included in Exhibit A to his initial complaint. (*Id*.)

The exhibit Bruce cites includes six written disputes he claims he submitted to credit reporting agencies between 2018 and 2022 in connection with three PenFed accounts. (Compl. at Ex. A [ECF 1-2].) The details for each written dispute are as follows:

| DATE | RECIPIENT | EXHIBIT PAGE NO. |
|------|-----------|------------------|
| June 11, 2018 | TransUnion | 43 of 58 |
| September 24, 2021 | Equifax | 2 of 58 |
| September 25, 2021 | Experian | 36 of 58 |
| November 2, 2021 | Experian | 41 of 58 |
| April 30, 2022 | Experian | 50 of 58 |
| May 3, 2022 | Equifax | 48 of 58 |

(*Id*.)[3]

The documents are not models of clarity, but none of the written disputes appear to assert that PenFed reported an account as having a balance at a time when PenFed had sold the account. (*See id*.) Although the written disputes identify other supposed errors, the amended complaint does not identify those supposed errors as independent bases for any of the claims Bruce is asserting. (*Id*.; *see* Am. Compl.) For example, Bruce disputed PenFed's reporting of an account it had charged off: "Charge-offs/write-offs are to be reported with a "0" (zero) balance as paid in full[.]" (Compl. at Ex. A, p. 3 of 58.) The amended complaint, however, does not make any such

---

[3] Bruce also alleges that he raised "verbal dispute[s]" with LexisNexis Risk Solutions, Inc. ("LexisNexis") on June 2 and August 15, 2022. (Am. Compl. ¶¶ 37 & 40.) The amended complaint does not, however, identify any specific errors Bruce raised with LexisNexis. (*See id*.)

allegation. Instead, it admits Bruce does not know if PenFed charged off the account: "It has not yet been discovered if PENFED has written off the alleged debts[.]"  (Am. Compl. ¶ 54.)

The two most recent written disputes attached to Bruce's complaint do not identify any alleged errors whatsoever. (Compl. at Ex. A, pp. 48 & 50.) To the contrary, both letters expressly acknowledge that Bruce does not know if PenFed reported incorrect information: "I am not saying they are reporting right or wrong. I am just saying that I am not 100 percent sure if they are." (*Id.*)

 Finally, the exhibits to Bruce's complaints also include several incoherent documents Bruce claims he sent directly to PenFed. (*See* Compl. at Ex. A, pp. 23 of 58, 30 of 58, & 53 of 58.) For example, a "Verified Cardholder Billing Error Dispute" dated January 28, 2021, states that "[t]he monthly statements are inaccurate and a possible violation of GAAP [Generally Accepted Accounting Principles] for refusing to credit my account because it should reflect a bank asset and liability **(funds owed to me)** per GAAP, and not a debt[,]" but it also states that Bruce is <u>not</u> raising "a complaint about [his] legal obligation to pay back money owed," "a complaint about fraudulent creation of the account or an invalid agreement," "a refusal to pay," or "whether [he] accepted the terms and conditions and benefitted." (*Id.* at 23-25 of 58 (emphasis in original).)

## STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This Court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). "The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule

12(b)(6) when the facts alleged in the complaint cannot support" the legal conclusion. *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001).

"Although the court must liberally construe a pro se complaint, the United States Supreme Court has made it clear a plaintiff must do more than make conclusory statements to state a claim." *Glenn v. Moore*, No. 3:22-2595-CMC-SVH, 2022 WL 3214989, at *1 (D.S.C. Aug. 9. 2022) (citing *Ashcroft*, 556 U.S. at 677-78). "Rather, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face, and the reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions." *Id.* (citing *Iqbal*. 556 U.S. at 678-79). "In considering motions to dismiss under Rule 12(b)(6), the court may properly consider exhibits attached to the complaint." *Smith v. McCarthy*, 349 F. App'x 851, 856 (4th Cir. 2009) (citing *Fayetteville Invs.*, 936 F. 2d at 1465); *see also* Fed. R. Civ. P. 10(c).

## ARGUMENT

The amended complaint asserts claims against PenFed beginning with the section titled "SECOND CAUSE OF ACTION" and ending with the section titled "EIGHTH CAUSE OF ACTION." (Am. Compl.) In total, it asserts seven claims against PenFed: (I) violation of the FCRA; (II) defamation; (III) violation of the FDCPA; (IV) violation of the SCCPC; (V) violation of the UCC; (VI) violation of the SCUTPA; and (VII) negligent and intentional infliction of emotional distress. Each claim fails as a matter of law for the reasons explained below.

## I.    BRUCE'S FCRA CLAIM FAILS.

Bruce alleges that PenFed is a "furnisher" of consumer credit information for purposes of the FCRA. (Am. Compl. ¶ 12.) The FCRA sets forth two general requirements for furnishers: (1) 15 U.S.C. § 1681s-2(a) ("Sub-section (a)") creates a duty to provide accurate information; and (2) 15 U.S.C. § 1681s-2(b) ("Sub-section (b)") creates a duty to investigate the accuracy of reported

information. The FCRA "explicitly bars private suits for violations of § 1681s-2(a)[.]" *Saunders v. Branch Banking & Tr. Co. of VA*, 526 F.3d 142, 149 (4th Cir. 2008). Accordingly, Bruce cannot state a claim under Sub-section (a), and he is limited to Sub-section (b).

Significantly, the duties established by Sub-section 2(b) do not arise until a furnisher receives notice of a dispute from a credit reporting agency. *Freeman v. Equifax, Inc.*, No. No. 6:12–845–HMH, 2012 WL 2502693, at *2 (D.S.C. 2012). "'[N]otice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b).'" *Id.* (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009)).

To prevail on a claim under Sub-section (b), a consumer must show: "(1) that she notified a CRA of the disputed information, (2) that the CRA notified the Defendant furnisher of the dispute, and (3) that the furnisher then failed to reasonably investigate and modify the inaccurate information." *Timms v. USAA Federal Savings Bank*, No. 3:18-cv-01495-SAL, 2020 WL 12618897, at *9 (D.S.C. Aug. 20. 2020) (quoting *Long v. Pendrick Capital Partners II, LLC*, 374 F. Supp. 3d 515, 527 (D. Md. 2019)); *see also Shaunfield v. Experian Info. Sols., Inc.*, 991 F. Supp. 2d 786, 805 (N.D. Tex. 2014) (applying the same general elements to allegations for purposes of a motion to dismiss). "A report is inaccurate when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (quotations omitted); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016) ("not all inaccuracies cause harm[.]" ).

Bruce claims PenFed violated the FCRA on the grounds that: (1) PenFed allegedly continued reporting loans it had sold; and (2) "the accounts reported were not marked as disputed[.]"(Am. Compl. ¶¶ 95-98.) As explained below, the amended complaint fails to state a viable FCRA claim based on either of those theories.

**A.    Bruce's FCRA Claim Involving The Sale Of Loans Is Not Viable.**

The amended complaint fails to allege facts related to the sale of loans that, if true, would establish an actionable claim under the FCRA for three reasons. First, Bruce does not allege, and the exhibits to the amended complaint do not show, that he "notified a CRA of the disputed information" in relation to the sale of loans. *Timms*, 2020 WL 12618897, at *9 (quoting *Long*, 374 F. Supp. 3d at 527). The six written disputes included in Exhibit A to Bruce's initial complaint do not assert that PenFed reported a loan after having sold it. (Compl. at Ex. A.)

Second, Bruce does not adequately allege that PenFed "failed to reasonably investigate and modify the inaccurate information" in relation to the sale of loans. *Timms*, 2020 WL 12618897, at *9 (quoting *Long*, 374 F. Supp. 3d at 527.) Bruce's allegation that PenFed sold his credit card account "prior to January 22, 2018," is directly contradicted by the exhibit he cites because the February 8, 2021, letter clearly states that the relevant accounts "are legally established debts for which you are liable to repay." (Am. Compl. ¶ 50; Compl. at Ex. C [ECF 1-4].) Bruce's exhibit trumps his bare allegations to the contrary. *Fayetteville Invs.*, 936 F.2d at 1465.

The exhibit does include a separate letter dated April 11, 2022, stating that PenFed sold the credit card account, but the letter does not identify the date on which the account was sold. (Compl. at Ex. C.) In any event, the only disputes Bruce claims to have sent to the CRAs during 2022 do not identify any specific errors whatsoever, let alone assert that PenFed reported a loan after selling it. (Compl. at Ex. A, pp. 48 & 50.) To the contrary, both letters expressly acknowledge that Bruce does not know if PenFed reported incorrect information: "I am not saying they are reporting right or wrong. I am just saying that I am not 100 percent sure if they are." (*Id.*)

It is not clear, but Bruce may be conflating the act of selling a loan with the act of charging off a loan. As noted in PenFed's letter dated February 8, 2021, PenFed did charge off the relevant

accounts. (Compl. at Ex. C.) Although the allegations in the amended complaint do not focus on

that fact, two of the written disputes Bruce attached to the initial complaint assert that creditors

cannot report accounts they have charged off:

> Charge-offs/write-offs are to be reported with a "0" **(zero)** balance
> as paid in full as it is the common practice of the bank/alleged
> creditor to charge-off/write-off an alleged account (zero out the
> alleged account balance as GAAP require) the[y] deem is an
> uncollectable business bad debt as they apply for and receive tax
> credits in the year they determine the alleged account is an
> uncollectable business bad debt thereby paying off the remaining
> alleged balance in full on this alleged account.

(Compl. at Ex. A, pp. 2 & 36.)

To the extent Bruce claims reporting a loan after it has been charged off is inaccurate, he

is mistaken. "'Charge-off' is a term of art for credit providers, understood as writing off a debt as

a loss because payment is unlikely." *Makela v. Experian Info. Sols., Inc.*, No. 6:21-cv-00386-MC,

2021 WL 5149699, at *3 (D. Or. Nov. 4, 2021) (citing Black's Law Dictionary (11th ed. 2019)).

Banks are required "to charge off delinquent accounts after 180 days or else their balance sheets

would misleadingly reflect accounts as assets that have little chance of achieving their full

valuation." *Id.* (internal quotations omitted). As this Court recently noted in recommending

dismissal of an FDCPA claim Bruce asserted against a different credit union, "'charge off is an

internal accounting practice and does not have the legal effect of discharging a debtor from the

underlying debt.'" (9.12.2022 Report & Recommendation, Ex. 1 (quoting *In re Washington*, 581

B.R. 150, n.15 (Bankr. D.S.C. 2017) (internal quotation omitted).)

Since charging off a loan does not discharge the underlying debt, it was not misleading or

inaccurate for PenFed to continue reporting Bruce's credit card account after charging it off. "The

FCRA allows credit reporting agencies to retain a charged off notation for a debt on a consumer's

credit report for up to seven years."[4] *Id.* (citing 15 U.S.C. § 1681c(a)(4)); *see also Shaw v. Equifax Information Solutions, Inc.*, 204 F. Supp. 3d 956, 960 (E.D. Mich. 2016) (noting that a furnisher can report a charge-off to a credit reporting agency).

Third, Bruce does not plausibly allege that continuing to list PenFed as the creditor after PenFed sold a loan could be "expected to have an adverse effect" on Bruce's ability to obtain credit. *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (quotations omitted); *see also Spokeo*, 578 U.S. 342. As the Supreme Court recognized in *Spokeo*, "not all inaccuracies cause harm or present any material risk of harm." 578 U.S. at 342. Using "an incorrect zip code" as an example, the Court noted "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id*.

Significantly, Bruce does not allege that the credit card account appeared on his credit report twice as a result of being reported by both PenFed and a third party to whom PenFed sold the account. (*See* Am. Compl.) Nor does Bruce allege that he made any payments on the credit card account after it was sold to a third party. (*See* Am. Compl.) The only allegedly inaccurate information, therefore, is the identity of the creditor as PenFed, rather than the third party to whom PenFed allegedly sold the account.

As with the "incorrect zip code" example, it is difficult to imagine how, in the absence of any other inaccuracies, identifying the creditor as the originator or servicer of a loan instead of a subsequent purchaser could cause harm. *Spokeo*, 578 U.S. at 342. Bruce does not identify any harm that did, or plausibly could, result from PenFed being listed as the creditor.

---

[4] Bruce has also speculated, but not alleged, that PenFed "may have already filed an insurance claim" after it charged off the relevant accounts. (Compl. at Ex. A, pp. 2 & 36.) As with charge-offs, however, making an insurance claim would not discharge Bruce's obligation.

**B.     PenFed Was Not Required To Mark Bruce's Accounts As Disputed.**

Bruce also alleges that PenFed violated the FCRA because "the accounts reported were not marked as disputed[.]" (Am. Compl. ¶ 95.) The amended complaint does not list the specific disputes Bruce claims PenFed should have noted. Instead, it incorporates numerous documents included in Exhibit A to Bruce's initial complaint. (*Id*.)

As previously explained, there is no private right of action under Sub-section (a) of the FCRA. *Saunders*, 526 F.3d at 149. As a result, "a consumer, such as Plaintiff in this case, does not have a private right of action against a furnisher who fails in the first instance to report a dispute to a CRA." *Timms*, 2020 WL 123618897, at *15. This Court has rejected the argument that "a furnisher must report an account as disputed upon receipt of the first [notice from a CRA]." *Id*.

The circumstances under which a consumer can recover under Sub-section (b) for a furnisher's failure to mark an account as disputed are limited. *See id*. "[F]or liability to attach, the failure to report the dispute must 'create a materially misleading impression.'" *Id*. (quoting *Saunders*, 526 F.3d at 148). "Stated differently, '[a] furnisher is not liable for inaccurate reporting for merely failing to report a meritless dispute, because reporting an actual debt without noting that it is disputed is unlikely to be materially misleading.'" *Id*. (quoting *Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 853 (E.D.V.A. 2017). "It is the failure to report a bona fide dispute, a dispute that could materially alter how the reported debt is understood, that gives rise to a furnisher's liability under 15 U.S.C. § 1681s–2(b)." *Wood*, 277 F. Supp. 3d at 853 (quotation omitted); *see also Seamans v. Temple Univ. Gorman v. Wolopoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) ("A furnisher does not report 'incomplete or inaccurate information . . . simply by failing to report a meritless dispute, because reporting an actual debt without noting that it is disputed is unlikely to be materially misleading.")

The amended complaint does not state a viable claim under Sub-section (b) because it does not identify a *bona fide* dispute that PenFed was required to note after having received a notice of dispute from a CRA. As explained in Section I.A. above, Bruce's disputes related to charge-offs and PenFed's sale of the credit card account are meritless. Bruce does not identify any other disputes he claims were *bona fide*, let alone explain why any inaccuracies were material in such a manner that they could be "expected to have an adverse effect" on Bruce's ability to obtain credit. *Dalton, Inc.*, 257 F.3d at 415 (quotations omitted); *see also Spokeo*, 578 U.S. 342. Accordingly, the Court should dismiss Bruce's FCRA claim with prejudice.

## II.    BRUCE'S DEFAMATION CLAIM FAILS.

Bruce's defamation claim is based on the same alleged actions and omissions as his FCRA claim. The FCRA expressly pre-empts state law claims, such as Bruce's defamation claim, absent a showing of malice or willful intent to injure:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C.A. § 1681h(e); s*ee also Ross v. F.D.I.C.*, 625 F.3d 808, 817 (4th Cir. 2010).

Under South Carolina law, malice is established only if "the defendant acted with ill will toward the plaintiff or acted recklessly or wantonly, meaning with conscious indifference toward the plaintiff's rights." *Murray v. Holnam, Inc.*, 542 S.E. 2d 743, 750 (S.C. 2001).[5]

---

[5] The FCRA does not define "malice," and "[c]ourts are split on whether state or federal law governs the meaning of 'malice' in § 1681 h(e)." *Ross*, 625 F.3d at 815 (declining to address the issue because the plaintiff could not create a genuine issue of fact under either definition). Since *Ross,* "the clear majority [of Fourth Circuit district courts have] applied a state law definition." *Hoback v. Synchrony Bank*, No.: 6:19-cv-18, 2019 WL 2438794, at *4 (W.D. Va. June 11, 2019).

Bruce's amended complaint does not allege facts that, if true, would establish malice. As previously explained, Bruce's primary contention is that PenFed reported his credit card account after selling it. Although Bruce alleges malice in a conclusory manner, he does not allege any specific facts from which malice could actually be inferred. Other courts have determined on a motion to dismiss that allegations similar to those made by Bruce were not sufficient to alllege malice under the FCRA. *See*, *e.g.*, *Martirosyan v. Chase Bank USA, N.A.*, CV 12-8902-GW(MANx), 2013 WL 12324599 (C.D. Cal. Jan. 28, 2013) (alleging that the defendants acted with malice because they supposedly "knew of the falsity or recklessly disregarded the truth or falsity of their publication" is insufficient to state a defamation claim in accordance with § 1681h(e)); *Clark v. Saxon Mortg. Co.*, No. 11–0065–JJB–SCR, 2011 WL 2682435 (M.D. La. July 8, 2011) ("However, Plaintiff has not alleged any specific facts in support of his conclusion, but has merely made conclusory statements that Defendants acted with 'willful intent to injure with malice [his] reputation[.]'").

This Court recently recommended against dismissing a defamation claim Bruce asserted against a different credit union because the complaint in that case "alleges that even after Plaintiff told [the credit union] that he disputed the accuracy of the debt on this account, [the credit union] failed to investigate and reported the alleged inaccuracy to third parties." (9.12.2022 Report & Recommendation, Ex. 1 at 6.) By contrast, Bruce does not allege that he told PenFed it was still reporting the credit card account after it had been sold. As explained in Section I.A. above, none of the disputes included in Exhibit A to Bruce's original complaint raise that issue.

Furthermore, Bruce himself admitted in the two most recent dispute letters he sent to CRAs that he does not know if PenFed reported incorrect information about his accounts: "I am not saying they are reporting right or wrong. I am just saying that I am not 100 percent sure if they

are." (Compl. at Ex. A at pp. 48 of 58 & 50 of 58.) If Bruce does not even know whether PenFed reported inaccurate information in the first place, he cannot plausibly allege malice.

## III.    BRUCE'S FDCPA CLAIM FAILS.

Bruce cannot assert an FDCPA claim because PenFed, as a creditor, rather than a debt collector, is not subject to the FDCPA. The FDCPA prohibits a debt collector from engaging "in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of debt." 15 U.S.C. § 1692d. "[T]he FDCPA purports to regulate only the conduct of debt collectors, not creditors, generally distinguishing between the two based on whether the person acts in an agency relationship with the person to whom the borrower is indebted." *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 135 (4th Cir. 2016), *aff'd*, 137 S. Ct. 1718 (2017); *see also Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors").[6]

This Court already held that PenFed is a "creditor" and not a "debt collector" for purposes of the FDCPA in a prior lawsuit Bruce filed against PenFed that involved at least one of the same loans at issue in this case. *Bruce*, 2018 WL 4476129, at *3. For that reason, standing alone, the Court should hold that the doctrine of collateral estoppel bars Bruce from re-litigating the issue and dismiss his FDCPA claim with prejudice. *See generally Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006) (listing the elements of collateral estoppel).

---

[6] "Congress intended to target *third-party or independent collectors* of delinquent debts because unlike creditors, whose actions are often restrained by their desire to protect their good will, independent collectors will generally have no future contact with the consumer and are therefore likely to place less importance on the consumer's opinion of their debt collection tactics." *Alvano v. Am. Bank*, No. 89–2340–O, 1989 WL 156815 *1 (D. Kan. Nov. 3, 1989) (emphasis in original).

Moreover, the amended complaint in this case does not cure the deficiency the Court identified in the complaint Bruce filed in his prior lawsuit. The FDCPA defines a debt collector as a person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." 15 U.S.C. § 1692(a)(6). It specifically excludes from the definition of a debt collector "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was originated by such person." 15 U.S.C. § 1692(a)(6)(f).

Bruce makes the conclusory assertion that PenFed is a "debt collector" pursuant to 15 U.S.C. § 1692(a)(6), but he pleads no facts supporting this assertion. (Am. Compl. ¶ 13.) As in the prior case, Bruce's conclusory assertion that PenFed is a "debt collector" is contradicted by his own allegations and exhibits, which are replete with statements indicating that PenFed was acting as a creditor, not a third party debt collector. In any event, Bruce does not—and cannot—allege that PenFed "regularly collects or attempts to collect" debts "owed or due to another." 15 U.S.C. § 1692(a)(6). As such, PenFed is not a "debt collector" for purposes of the FDCPA. (9.12.2022 Report & Recommendation, Ex. 1 at 8 (finding that another credit union Bruce sued is not a debt collector because "there is no basis to find that the principal purpose of [the credit union's] business is the collection of debts[.]").)

## IV.     BRUCE'S SCCPC CLAIM FAILS.

The SCCPC explicitly states that it does not apply to "federally chartered credit unions[.]" S.C. Code § 37-1-202(10). As its name denotes, Pentagon Federal Credit Union is a federally chartered credit union. Therefore, the SCCPC is inapplicable to PenFed under the plain language of the statute itself. S.C. Code § 37-1-202(10).

Furthermore, the FCRA would preempt any claim against PenFed based on the facts alleged in the amended complaint. This Court recently recommended the dismissal of a claim Bruce asserted against another credit union because any such claim would be wholly pre-empted by the FCRA. (9.12.2022 Report & Recommendation, Ex. 1 at 5.) The Court also held that Bruce's SCCPC claim against another financial institution was pre-empted in *Bruce v. Bank of America, N.A.*, No. 2:19-3456-BHH, 2020 WL 6737647, *2 (D.S.C. Nov. 17, 2020).

This Court's opinions in Bruce's prior cases are well-founded. 15 U.S.C. § 1681t(b)(1)(F) states that "[n]o requirement or prohibition may be imposed under the laws of any State ... with respect to any subject matter regulated under ... section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies[.]" As a result, the FCRA preempts all claims against furnishers arising under state statutes. (9.12.2022 Report & Recommendation, Ex. 1 at 5.)

Moreover, the SCCPC applies only to consumer reporting agencies, not furnishers of information. *Muntean v. Discover Financial Services*, No. 6:13–1151–HMH, 2013 WL 2636003, n.3 (D.S.C. June 12, 2013) ("[T]he proscriptions included in § 37-20-170 only mention CRAs and does not regulate furnishers of information.") While Bruce alleges that PenFed is a "furnisher" and a "debt collector[,]" he does not—and cannot—allege that PenFed is a consumer reporting agency. (*See generally* Am. Compl.)

## V.    BRUCE'S UCC CLAIM FAILS.

Bruce alleges that he submitted a request for accounting to PenFed under SC Code § 36-9-210 and that PenFed did not respond.[7] (Am. Compl. ¶¶ 127-128.) Bruce's own exhibits directly

---

[7] Bruce appears to cite sections of the model Uniform Commercial Code. (*See* Am. Compl. ¶¶ 127-128.) Presumably, he is referring to the version of the UCC adopted by South Carolina.

refute that claim. As Bruce points out, Exhibit A to his initial complaint includes a document titled "REQUEST FOR ACCOUNTING" dated April 4, 2022. (Compl. at Ex. A, p. 53.) He omits, however, that Exhibit C includes the response PenFed sent to Bruce when it received the request seven days later on April 11, 2022. (Compl. at Ex. C.) As stated in the response, PenFed had already responded to multiple prior requests by providing "evidence substantiating the obligations." (*Id.*) Bruce does not identify any specific information PenFed was required to, but did not, provide in the many written communications it sent to him.

## VI.     BRUCE'S SCUTPA CLAIM FAILS.

The SCUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code § 39-5-20(a). To state a claim under the SCUTPA, a plaintiff must allege facts demonstrating: "(1) that the defendant engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest." *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir.1998).

The amended complaint does not plausibly allege that PenFed engaged in an unlawful trade practice that caused Bruce to suffer any damages. As explained throughout this brief, Bruce's allegations about PenFed's credit reporting practices are directly contradicted by Bruce's own exhibits, relate to immaterial matters that do not pose any risk of harm, or both.

Moreover, the amended complaint does not allege any facts that satisfy the third element of SCUTPA, *i.e.*, the "public interest" prong. "[T]he public interest prong of the [SCUTPA] inquiry [is] satisfied by evidence of a potential for repetition of the unfair or deceptive act." *Daisy Outdoor Adver. Co. v. Abbott*, 473 S.E.2d 47, 50 (S.C. 1996). "This may be done either by showing

that similar unfair activities occurred in the past, making it more likely that they will occur in the future absent deterrence, or by showing that [defendant's] procedures create a potential for repetition." *Beattie v. Nations Credit Fin. Servs. Corp.*, 65 Fed. App'x. 893, 897 (4th Cir. 2003).

Bruce has pled no facts showing anything beyond "conduct which only affects the parties to the transaction, [which] provides no basis for a SCUTPA claim." *In re Hughes*, 627 B.R. 327, 337 (Bankr. D.S.C. 2021). This Court recently recommended the dismissal of Bruce's SCUTPA claim against a different credit union for that precise reason. (9.12.2022 Report & Recommendation, Ex. 1 at 9-10.) It should do the same thing in this case.

## VII.   BRUCE'S CLAIMS FOR INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS FAIL.

Bruce's claims for intentional and negligent infliction of emotional distress also arise from his allegation that PenFed reported inaccurate information to the CRAs. (Am. Compl. ¶ 138.) To the extent Bruce alleges that PenFed acted negligently, his claim is explicitly preempted by 15 U.S.C. § 1681h(e).[8] *See Ross*, 625 F.3d at 816-17 ("To be sure, [the plaintiff] would have a triable case for negligence. But § 1681h(e) requires malice, and there is no evidence that [the defendant] engaged in the kind of knowing or reckless behavior needed to meet this standard."); *see also Saint Torrance v. Firstar*, 529 F. Supp. 2d 836, 844 n.4 (S.D. Ohio 2007) ("Indeed, negligent conduct by its very nature, could not meet the heightened *mens rea* requirement of § 1681h(e) and would be preempted by such provision.")

To state a claim for intentional infliction of emotional distress, a plaintiff must allege that:

> (1) The defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result form his conduct.

---

[8] 15 U.S.C. § 1681h(e) does not "preempt only defamation, invasion of privacy, and negligence claims. Rather, it prohibits all actions 'in the nature' of such claims." *Edeh v. Equifax Information Services, LLC*, No. 11–CV–2671 (SRN/JSM), 2012 WL 4378189, at *1 (D. Minn Sep. 25, 2012).

> > (2) The conduct was 'so extreme and outrageous' so as to exceed 'all possible bounds of decency' and must be regarded as 'atrocious, an utterly intolerable in a civilized community;'
> > (3) The actions of the defendant caused plaintiff's emotional distress; and
> > (4) The emotional distress suffered by the plaintiff was 'severe' such that 'no reasonable man could be expected to endure it."

*Hansson v. Scalise Builders of S.C.*, 650 S.E.2d 68, 70 (S.C. 2007) (quotation omitted).

"The South Carolina Supreme Court has instructed that trial courts have a 'significant gatekeeping role' in analyzing whether the alleged conduct was sufficiently outrageous and the emotional distress sufficiently severe to survive a motion to dismiss." *Secka v. Florence County School District Three*, No. 4:20-cv-3342-JD-TER, 2021 WL 1821888, at *5 (D.S.C. Mar. 31, 2021) (quoting *AJG Holding LLC v. Dunn*, 708 S.E. 2d 218 (S.C. Ct. App. 2011)) (citing *Hansson v. Scalise Builders of S.C.*, 650 S.E.2d 68, 72 (S.C. 2007)). South Carolina courts will not "permit a plaintiff to state a legitimate cause of action by simply alleging, 'I suffered emotional distress[.]'" *Hansson*, 650 S.E.2d at 72. Additionally, "where physical harm is lacking, the courts should look for more in the way of extreme outrage as an assurance that the mental disturbance claim is not fictitious." *Id.* at 61 (quotation omitted).

Bruce has not alleged any type of physical harm. Instead, he makes generalized allegations of emotional distress. (Am. Compl. ¶ 141). As such, Bruce has failed to plausibly allege that he suffered the type of severe emotional distress required to prevail on a claim for intentional infliction of emotional distress.

In addition, a plaintiff can prevail on a claim for intentional infliction of emotional distress only "when the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hudson v. Zenith Engraving Company, Inc*., 259 S.E.2d 812, 814 (S.C.

1979). This Court has dismissed a similar claim arising out of allegations that a defendant furnished incorrect information to CRAs because such conduct "is not activity which is intolerable in a civilized society." *Potter v. FIA Card Services, N.A.*, No. 2:12–cv–1722–RMG, 2012 WL 13005806, at *3 (D.S.C. Sep. 28, 2012) (dismissing an "outrage" claim arising from credit reporting); *see generally DeCecco v. University of South Carolina*, 918 F. Supp. 2d 471, 519 (D.S.C. 2013) (collecting cases addressing conduct that is not extreme or outrageous as a matter of law). It should dismiss Bruce's claim for the same reason.

Finally, to avoid pre-emption under 15 U.S.C. § 1681h(e), Bruce must allege that PenFed acted with "'malice or willful intent to injure.'" *Ross*, 625 F.3d at 813 (quoting 15 U.S.C. § 1681h(e)). As explained in connection with Bruce's defamation claim above, the amended complaint fails to adequately allege that PenFed acting maliciously.

## CONCLUSION

The amended complaint fails to state a plausible claim against PenFed. Accordingly, the Court should dismiss the amended complaint with prejudice and enter judgment in PenFed's favor.

DATED: November 16, 2022.          **Respectfully submitted,**


**PENTAGON FEDERAL CREDIT UNION**


s/ G. Troy Thames
G. Troy Thames (Federal ID No.: 07713)
WILLSON JONES CARTER & BAXLEY, P.A.
4922 O'Hear Avenue, Suite 301
North Charleston, SC 29405
Telephone: (843) 284-0832
Facsimile: (843) 606-3300
Email: tthames@wjcblaw.com

Michael A. Graziano  (*pro hac vice* pending)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
1717 Pennsylvania Avenue, N.W., Suite 1200
Washington, D.C. 20006
Telephone: 202.659.6671
Facsimile: 202.659.6699
E-mail: mgraziano@eckertseamans.com

*Attorneys for Pentagon Federal Credit Union*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 16th day of November, 2022, I served the foregoing via first class mail on:

Nelson L. Bruce
P.O. Box 3345
Summerville, SC 29484
*Pro Se Plaintiff*

s/ G. Troy Thames_____
G. Troy Thames (Federal ID No.: 07713)