IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Nelson L. Bruce, ) | Civil Action No. 2:22-cv-02211-BHH-MGB |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Pentagon Federal Credit Union, ) | |
| *a.k.a. Pentagon Federal Credit Union* ) | |
| *Foundation ("collectively" PenFed)*; ) | |
| Experian Information Solutions, Inc.; ) | |
| Trans Union, LLC; Equifax Information ) | |
| Services, LLC; All Unknown Doe's 1-100; ) | |
| LexisNexis Risk Solutions, Inc., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Nelson L. Bruce, proceeding *pro se* and *in forma pauperis*, brings this civil action asserting claims pursuant to the Fair Credit Reporting Act and Fair Debt Collection Practices Act, among others.[1] (Dkt. Nos. 1; 31.) On November 16, 2022, Defendant Pentagon Federal Credit Union ("Defendant" or "PenFed") filed a Motion to Dismiss. (Dkt. No. 40.) For the reasons discussed below, the undersigned recommends PenFed's Motion to Dismiss be granted in part and denied in part. Specifically, the Court should dismiss Plaintiff's claims against PenFed for violations of the Fair Debt Collection Practices Act, the South Carolina Consumer Protection Code, and the South Carolina Unfair Trade Practices Act, as well as his claims against PenFed for negligent infliction of emotional distress and intentional infliction of emotional distress. Plaintiff's claims against PenFed for violation of the Fair Credit Reporting Act, defamation, and violation of the Uniform Commercial Code should remain pending.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Local Rule 73.02(B)(2)(e), D.S.C.

1

## BACKGROUND

While difficult to parse, the Amended Complaint contains the following allegations specific to Defendant PenFed. (Dkt. No. 31.) Plaintiff alleges that as part of its business, PenFed is a furnisher of consumer credit information, and it "furnished information to consumer reporting agencies such as Defendants Trans Union, Equifax, LexisNexis and Experian." (*Id.* at 3.) According to Plaintiff, PenFed reported "inaccurate and misleading" information to lenders, giving "the false impression that a debt and/or account balance is owed or still owed to PenFed" and "that the accounts are paid or not paid as the information reported does not match what the other reporting agencies are or were reporting." (*Id*. at 6, 12.) Plaintiff alleges this inaccurate reporting "negatively affects plaintiff's credit score, which lenders look at to approve or deny credit to a consumer and is also confusing to a lender who sees a balance on one report and a zero balance on another report." (*Id.* at 12.)

According to Plaintiff, the information "furnished by PenFed . . . and published by the Bureaus is inaccurate and misleading because the Plaintiff disputed information, . . . including the balance allegedly owed on the PenFed . . . alleged debts . . . and which the Bureaus should have properly investigated." (*Id*. at 6.) According to Plaintiff, on or about June 2018, he "disputed credit card account, line of credit account and Auto account information reported by PenFed published by the bureaus allegedly belonging to plaintiff with defendant Trans Union." (*Id.* at 10.)

Plaintiff alleges that between December 27, 2021 and April 15, 2022, "upon reaching out to PenFed directly, plaintiff discovered the defendants did not do a proper investigation." (*Id*. at 11.) Plaintiff alleges that if Defendants had conducted a proper investigation, "they would have found that based on PenFed's own internal records, PenFed intended not to furnish accurate information to the reporting agencies because their internal records, prior to January 22, 2018,

2

show that PenFed knew that the credit card account being reported and published on plaintiff's consumer reports . . . allegedly belonging to Plaintiff, was sold and transferred" by PenFed to other entities, and "therefore no account exists as an asset of PenFed that could have been validated and/or verified by PenFed after January 22, 2018 . . . nor reported with a balance as required for the accounts to be accurately reported." (*Id*.)

Plaintiff further alleges, "[i]t appears that PenFed may have sold to investors and securitized plaintiff's alleged auto loan and have pooled the auto loan account with other auto loans and trading it on the secondary market." (*Id*. at 12.) As a result, Plaintiff alleges, PenFed "are longer in possession of the original signed note collateral security as it has been pooled with others, [and] therefore they are no longer considered an alleged creditor." (*Id*.) Plaintiff alleges that PenFed "are debt collectors" because "they are not trying to collect their own debts, they have sold those rights to investors of the pool and now are third parties servicing the loan on behalf of the investors trying to collect on behalf of the investors." (*Id*.)

Specific to PenFed, the Amended Complaint alleges claims for violation of the Fair Credit Reporting Act ("FCRA"); defamation; violation of the Fair Debt Collection Practices Act ("FDCPA"); violation of the South Carolina Consumer Protection Code; violation of the Uniform Commercial Code; violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"); negligent infliction of emotional distress; and intentional infliction of emotional distress. (*Id*. at 19–34.) The Amended Complaint references exhibits that are attached to both the initial complaint and the Amended Complaint.

On November 16, 2022, PenFed filed a Motion to Dismiss. (Dkt. No. 40.) On November 17, 2022, this Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the dismissal procedure and the possible consequences if he failed to

adequately respond to the motion. (Dkt. No. 42.) Plaintiff filed a 45-page response in opposition to the Motion on December 20, 2022,[2] to which PenFed filed a reply on January 5, 2023. (Dkt. Nos. 52; 56.) Plaintiff thereafter filed a 15-page sur-reply. (Dkt. No. 64.) The Motion to Dismiss has been fully briefed and is ripe for review.

## STANDARD OF REVIEW

PenFed seeks dismissal of Plaintiff's claims against it under Rule 12(b)(6) of the Federal Rules of Civil Procedure. On a motion to dismiss pursuant to Rule 12(b)(6), a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) . . . [a court] must determine whether it is plausible that the factual allegations in the complaint are 'enough to raise a right to relief above the speculative level.'" *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "In considering a motion to dismiss, [the court] accept[s] the complainant's well-pleaded allegations as true and view[s] the complaint in the light most favorable to the non-moving party." *Stansbury v. McDonald's Corp.*, 36 F. App'x 98, 98-99 (4th Cir. 2002) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

"Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider exhibits, without converting the motion to dismiss to one for summary judgment." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 501 (D. Md. 2019) (citing *Goldfarb v. Mayor &*

---

[2] While Plaintiff's response brief exceeds the number of pages allowed without express permission from the Court under Local Civil Rule 7.05(B), the undersigned has considered Plaintiff's response brief in its entirety.

4

*City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015)). "In particular, a court may consider documents that are 'explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits.'" *Id.* (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)). Where a plaintiff attaches an exhibit to a complaint, such exhibits are incorporated into the complaint, and "in the event of a conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c) . . . the exhibit prevails." *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see also Jeffrey M. Brown Assocs., Inc. v. Rockville Ctr. Inc.*, 7 F. App'x 197, 202 (4th Cir. 2001) ("While construing those facts in a light most favorable to [plaintiff], we need not accept as true "the legal conclusions drawn from the facts . . . . [or] unwarranted inferences, unreasonable conclusions, or arguments," . . . such as conclusory allegations in the complaint that are contradicted by the attachments.").

Because Plaintiff is representing himself, these standards must be applied while liberally construing his filings in this case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## **DISCUISSION**

### A.     Claim for Violation of FCRA

The Amended Complaint's Second Cause of Action alleges PenFed violated the FCRA. (Dkt. No. 31 at 22–24.) The FCRA is "a comprehensive statutory scheme designed to regulate the consumer reporting industry." *Ross v. F.D.I.C.*, 625 F.3d 808, 812 (4th Cir. 2010). Among other things, it creates a duty for furnishers of credit information to provide accurate information to credit reporting agencies ("agencies"), as well as a duty to correct inaccuracies and to investigate disputed information upon notice. 15 U.S.C. § 1681s-2. In particular, § 1681s-2(b) imposes requirements upon persons who provide information to agencies, upon receiving notice by an agency of a dispute by a consumer or reseller involving that information. *See* 15 U.S.C. § 1681s-

2(b); *id.* § 1681i(a)(2). After receiving notice, such a furnisher must investigate the disputed information; review all relevant information provided by the agency; report the results of the investigation to the agency; report any inaccurate or incomplete information to all other agencies; and modify, delete, or block an inaccurate or incomplete item of information for the purposes of reporting to agencies. *Id.* § 1681s-2(b)(1). In short, this provision "requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a reasonable investigation of their records to determine whether the disputed information can be verified." *Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004).

"[T]o bring a claim under § 1681s-2(b), a plaintiff must establish three elements: (1) that he or she notified the consumer reporting agency of the disputed information, (2) that the consumer reporting agency notified the defendant furnisher of the dispute, and (3) that the furnisher then failed to investigate and modify the inaccurate information." *Ausar-El v. Barclay Bank Del.*, PJM-12-082, 2012 WL 3137151, at *3 (D. Md. July 31, 2012).

According to the Amended Complaint, PenFed is a furnisher of credit information; Plaintiff is a consumer; PenFed furnished inaccurate information to lenders, including inaccurately reporting "the balance allegedly owed on the PenFed . . . alleged debts" and failing to "mark the account as sold, transferred, disputed"; Plaintiff disputed to Trans Union the account information reported by PenFed in June 2018; in May 2022, Plaintiff "sent out another request for reinvestigation" to Equifax and Experian; "[a]fter receiving notification from Trans Union, Equifax and Experian about Plaintiff's disputed accounts," PenFed did not reasonably investigate the disputed information; and PenFed's "willful, negligent, and reckless" action and/or inaction violated provisions under § 1681s-2. (Dkt. No. 31 at 3, 6, 10, 12, 14, 23–24.)

In its Motion to Dismiss, PenFed argues Plaintiff fails to sufficiently allege the inaccuracy of the disputed information. PenFed first argues that to the extent the FCRA claim rests on PenFed continuing to report loans that it had sold or transferred, the exhibits referenced in the Amended Complaint contradict any allegation of inaccuracy. As noted by PenFed, the Amended Complaint alleges that PenFed reported credit card accounts after having sold and/or transferred the accounts sometime "prior to January 22, 2018," and cites "Exhibit C" as "evidencing these accounts [were] sold, assigned and/or transferred." (Dkt. No. 31 at 11.) According to PenFed, Exhibit C establishes that Plaintiff's credit card accounts were not sold or assigned until some point after February 8, 2021.

Specifically, Exhibit C includes two letters from PenFed to Plaintiff dated February 8, 2021 and April 11, 2022. The February 8, 2021 letter states that Plaintiff's accounts, including the credit card accounts, "are legally established debts for which you are liable to pay" and that Plaintiff's "accounts are now charged off." (Dkt. No. 1-4 at 2.) The April 11, 2022 states that PenFed has sold and assigned the credit card accounts, but it does not identify the date on which the accounts was sold/assigned. The latter letter continues to state that Plaintiff's accounts, including the credit card accounts, "are legally established debts for which you are liable to pay" and that Plaintiff's "subject accounts are now charged off." (Dkt. No. 1-4.)

PenFed appears to rely on the language in the February 8, 2021 letter that Plaintiff's accounts "are legally established debts for which you are liable to pay," as evidence that the credit card accounts had not yet been sold. (Dkt. No. 40-1 at 8.) However, the April 11, 2022 letter includes the same language. Both letters state that Plaintiff's accounts "are now charged off." Upon careful review, the undersigned cannot find that Exhibit C directly contradicts Plaintiff's allegation

that PenFed inaccurately reported accounts that it had sold and/or assigned prior to January 22, 2018.

PenFed next argues that the reporting of an account already sold, even if inaccurate, does not support a FCRA claim because there is no basis to find this reporting could be "expected to have an adverse effect" on Plaintiff's ability to obtain credit. (Dkt. No. 40-1 at 10 (quoting *Dalton v. Cap. Associated Indus., Inc*., 257 F.3d 409, 415 (4th Cir. 2001)).) (*Id*.) In *Dalton*, the Fourth Circuit held that "[a] report is inaccurate [in the context of an FCRA claim] when it is 'patently incorrect' or when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse [ ]' effect." 257 F.3d at 415. An account that shows an outdated creditor would presumably fall under the category of "patently incorrect" information, and PenFed's argument here is without merit.

Further, the Amended Complaint alleges PenFed reported "inaccurate and misleading" information to lenders, giving "the false impression that a debt and/or account balance is owed or still owed to PenFed" and "that the accounts are paid or not paid as the information reported does not match what the other reporting agencies are or were reporting." (Dkt. No. 31 at 6, 12.) Plaintiff alleges this inaccurate reporting "negatively affects plaintiff's credit score, which lenders look at to approve or deny credit to a consumer and is also confusing to a lender who sees a balance on one report and a zero balance on another report." (*Id.* at 12.) The exhibits referenced in the Amended Complaint and Plaintiff's briefing makes clear that Plaintiff is referring to PenFed's reporting of a balance on Plaintiff's account despite his accounts being charged off. According to Plaintiff, his accounts should have shown a "zero balance" once they were charged off and sold/transferred. (Dkt. No. 52-1 at 3.)

This Court has found similar allegations to be sufficient to plead a claim under the FCRA. *See Burns v. Trans Union, LLC,* No. 4:18-03120-MGL, 2019 WL 3890833, at *4 (D.S.C. Aug. 19, 2019). In *Burns*, the plaintiff disputed the reporting of a $70.00 monthly payment on an account that was "closed and charged off." 2019 WL 3890833, at *1. The parties "indicated 'closed and charged off' means the account has been closed, a monthly payment is no longer due, but the total amount of the loan remains due and owing." *Id.* The court found the plaintiff's claim that the inaccurate reporting created a misleading impression affecting her ability to obtain credit was sufficient to state a claim for relief. *Id*. at *3–4. *See also Slaughter v. Equifax Info. Servs., LLC*, No. 4:20CV15, 2020 WL 5200823, at *1–4 (E.D. Va. Aug. 12, 2020) (recommending denial of dismissal motion disputing claim that furnisher inaccurately reported monthly payment on closed account), *adopted by*, 2020 WL 5121299 (E.D. Va. Aug. 31, 2020); *Harden v. Residential Credit Sols., Inc*., No. 3:16-cv-668 (MHL), 2017 WL 2888763, at *3 (E.D. Va. June 12, 2017) (rejecting argument that "Plaintiff must *establish* that the disputed information was inaccurate or incomplete[.]' . . . Plaintiff must instead simply state facts sufficient to raise 'above the speculative level' her claim that the disputed information was inaccurate or incomplete. . . . [Defendant's] arguments otherwise are more properly resolved at the summary judgment stage of litigation" (emphasis in original)), *adopted by*, 2017 WL 2888721 (E.D. Va. July 6, 2017); *cf. Meeks v. Equifax Info. Servs., LLC*, 2019 WL 1856411, at *5–6 (N.D. Ga. Mar. 4, 2019) (holding that where an "account is clearly reported as closed, charged-off, purchased by another lender, and with a $ 0 balance," "[t]he mere presence of historical monthly payment terms neither causes confusion nor creates an inaccuracy."), *adopted by*, 2019 WL 1856412 (N.D. Ga. Apr. 23, 2019).

PenFed also argues that Plaintiff fails to sufficiently allege he notified a credit reporting agency of the disputed information in relation to the sale/assignment of loans by PenFed. In

support, PenFed points to the documents attached as Exhibit A to Plaintiff's initial complaint, and asserts that none of those documents show that Plaintiff disputed PenFed reporting a loan after having sold it. (Dkt. No. 40-1 at 8 (citing Dkt. No. 1-2).) The Amended Complaint alleges that Plaintiff informed Trans Union, Equifax, and Experian of the disputed information and cites Exhibit A in support. (Dkt. No. 31 at 10, 14.) Upon review, Exhibit A includes several letters from Plaintiff to credit reporting agencies disputing the accuracy of the Plaintiff's accounts as reported by PenFed, including PenFed's failure to report the charged off accounts with a zero balance. (Dkt. No. 1-2 at 2–6, 36–39.) At this stage, the undersigned cannot find more is required to sufficiently allege that Plaintiff notified a credit reporting agency of the disputed information.

Based on the foregoing, the undersigned recommends Plaintiff has alleged sufficient facts to state a claim under 15 U.S.C. § 1681s–2(b).

### B.     Defamation Claim

The Amended Complaint's Third Cause of Action alleges PenFed's false reporting of credit information to one or more credit reporting agencies constituted defamation under South Carolina common law. (Dkt. No. 31 at 25–27.) Plaintiff's defamation claim is preempted by the FCRA absent an allegation of malice or willful intent to injure Plaintiff. *See* 15 U.S.C. § 1681h(e) ("[N]o consumer may bring any action or proceeding in the nature of defamation . . . with respect to the reporting of information . . . except as to false information furnished with malice or willful intent to injure such consumer."); *Ross*, 625 F.3d at 814 ("The only exception to this bar is a narrow one, requiring proof of 'malice or willful intent to injure [the] consumer.'"). Under South Carolina law, "'[m]alice' is established only if 'the defendant acted with ill will toward the plaintiff or acted recklessly or wantonly, meaning with conscious indifference toward the plaintiff's rights.'" *Beattie*

*v. Nations Credit Fin. Servs. Corp.*, 69 Fed. App'x. 585 (4th Cir. 2003) (citing *Murray v. Holnam, Inc.*, 542 S.E.2d 743, 750 (S.C. 2001)).

The Amended Complaint alleges that even after Plaintiff told PenFed that he disputed the accuracy of his accounts, PenFed failed to investigate and reported the alleged inaccuracy to third parties. (Dkt. No. 31 at 22–27.) Plaintiff alleges that PenFed acted "with malice, willful intent to injure the plaintiff." (*Id.* at 25) At this early stage in proceedings, the undersigned recommends these allegations plausibly allege malice or willful intent under Rule 12(b)(6). *See, e.g. Hoback v. Synchrony Bank*, No. 6:19-CV-18, 2019 WL 2438794, at *4 (W.D. Va. June 11, 2019) ("Courts assessing defamation claims brought in the context of credit reporting errors and FCRA violations tend to permit such claims to proceed to discovery if plaintiffs assert any allegations beyond 'merely reciting the legal standard.'"); *Potter v. FIA Card Servs., N.A.*, No. 2:12-cv-1722-RMG, 2012 WL 13005806, at *2 (D.S.C. Sept. 28, 2012) (denying motion to dismiss defamation claim where plaintiff alleges he "repeatedly told the Defendants he was not an obligor on the account, but they continued to tell [credit reporting agencies] for two years that he was").

## C. Claim for Violation of FDCPA

The Amended Complaint's Fourth Cause of Action alleges PenFed violated the FDCPA. (Dkt. No. 31 at 27–28.) In its Motion to Dismiss, PenFed argues that it cannot be liable under FDCPA because it is not a "debt collector" as contemplated by the statute. (Dkt. No. 40-1 at 14–15.)

The FDCPA, 15 U.S.C. § 1692 *et seq.*, was passed by Congress "to eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged," *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 602 (2010) (quoting 15 U.S.C. § 1692(e)).

11

The FDCPA "distinguishes a 'debt collector,' which collects the debts due to another, from a 'creditor,' which seeks to collect on its own debts." *Bruce v. Pentagon Fed. Credit Union*, No. 2:17-CV-2170-BHH-MGB, 2018 WL 4957387, at *3 (D.S.C. July 24, 2018), *adopted by*, 2018 WL 4476129 (D.S.C. Sept. 19, 2018), *aff'd*, 765 F. App'x 30 (4th Cir. 2019). More specifically, the FDCPA defines a debt collector as "any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). "[T]he term [also] includes any creditor . . . who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." *Id.* "Stated more simply, this provision defines a debt collector as (1) a person whose *principal purpose* is to collect debts; (2) a person who *regularly* collects debts *owed to another*; or (3) a person who collects *its own debts*, using *a name other than its own as if it were a debt collector*." *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136 (4th Cir. 2016), *aff'd*, 198 L. Ed. 2d 177, 137 S. Ct. 1718 (2017) (emphasis in original). Dismissal is proper under Rule 12(b)(6) where a complaint fails "to allege facts demonstrating that [the defendant] was acting as a 'debt collector, as defined by [the FDCPA], when it was collecting on debts owed by the plaintiff[ ]." *Id.* at 140.

      Citing Exhibit C, the Amended Complaint alleges PenFed violated the FDCPA when it "threaten[ed] legal action" after selling "all [its] alleged interests and authority" in Plaintiff's accounts. (Dkt. No. 31 at 27–28; *see also* Dkt. No. 52-1 at 35–36.) The Amended Complaint alleges that PenFed "are debt collectors" because "they are not trying to collect their own debts, they have sold those rights to investors of the pool and now are third parties servicing the loan on behalf of the investors trying to collect on behalf of the investors." (*Id.* at 12.) These allegations

12

fail to demonstrate that PenFed was acting as a debt collector, as defined by the FDCPA, when it was collecting on debts owed by Plaintiff. *Henson*, 817 F.3d at 140.

While the Amended Complaint cites Exhibit C as evidence that PenFed attempted to collect a debt it no longer owned, the April 11, 2022 letter from PenFed directs Plaintiff to contact the entities that have been assigned/sold Plaintiff's accounts in order to "satisfy the balance." (Dkt. No. 1-4 at 3.) To the extent Plaintiff alleges the February 8, 2021 letter in Exhibit C evidences an attempt by PenFed to collect a debt it no longer owned, this one mailing does not establish that PenFed acted as a debt collector, as contemplated by 15 U.S.C. § 1692a(6). *See Henson*, 817 F.3d at 136 ("Stated more simply, this provision defines a debt collector as (1) a person whose *principal purpose* is to collect debts; (2) a person who *regularly* collects debts *owed to another*; or (3) a person who collects *its own debts*, using *a name other than its own as if it were a debt collector*." (emphasis in original)); *see also Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC*, 929 F. Supp. 2d 502, 525 (D. Md. 2013) ("[T]he FDCPA does not apply to any person collecting on a debt that it 'originated.'" (quoting § 1692a(6)(F)(ii)); *Kennedy v. Lendmark Fin. Servs.*, RDB-10-02667, 2011 WL 4351534, at *3 (D. Md. Sept. 15, 2011) ("The FDCPA does not . . . apply to creditors collecting debts in their own names and whose primary business is not debt collection.").

Plaintiff's arguments on this issue are unavailing, and the undersigned recommends Plaintiff's Fourth Cause of Action for violation of the FDCPA be dismissed.[3] *See Jeffrey M. Brown Assocs., Inc.*, 7 F. App'x at 202 ("While construing those facts in a light most favorable to [plaintiff], we need not accept as true "the legal conclusions drawn from the facts . . . . [or] unwarranted inferences, unreasonable conclusions, or arguments," . . . such as conclusory allegations in the complaint that are contradicted by the attachments.").

---

[3] Having recommended dismissal on this basis, the undersigned does not reach PenFed's remaining arguments on this issue.

Here, the undersigned notes that the Fifth Cause of Action of the Amended Complaint alleges a claim for violation of the South Carolina Consumer Protection Code ("SCCPC"). In his response brief, Plaintiff concedes to the dismissal of this claim. (Dkt. No. 52-1 at 38.) Accordingly, the undersigned recommends Plaintiff's claim for violation of the SCCPC also be dismissed as to PenFed.

### D.     Violation of Uniform Commercial Code

The Amended Complaint's Sixth Cause of Action alleges that PenFed violated "U.C.C. 9-210 *et seq*. and 36-9-210 *et seq*" by failing to comply with Plaintiff's April 4, 2022 request for an authenticated accounting. (Dkt. No. 31 at 29–30.) The Amended Complaint refers to Exhibit A of the initial complaint as support for this claim. (*Id*.) Exhibit A includes a letter from Plaintiff to PenFed dated April 4, 2022, in which Plaintiff requests "an authenticated record of accounting" within 14 calendar days. (Dkt. No. 1-2 at 53.)

"Article 9 of the UCC is a comprehensive statutory scheme governing the rights and relationships between secured parties, debtors, and third parties." *McCullough v. Goodrich & Pennington Mortg. Fund, Inc*., 373 S.C. 43, 53, 644 S.E.2d 43, 49 (2007). S.C. Code Ann. § 36-9-210 defines a "[r]equest for an accounting" as "a record authenticated by a debtor requesting that the recipient provide an accounting of the unpaid obligations secured by collateral and reasonably identifying the transaction or relationship that is the subject of the request." § 36-9-210(a)(2). The statute states, *inter alia*,

> (e) A person that receives a request for an accounting or a request regarding a statement of account, claims no interest in the obligations when it receives the request, and claimed an interest in the obligations at an earlier time shall comply with the request within fourteen days after receipt by sending to the debtor an authenticated record:
>
>> (1) disclaiming any interest in the obligations; and

> (2) if known to the recipient, providing the name and mailing address of any assignee of or successor to the recipient's interest in the obligations.

§ 36-9-210(e).

PenFed asserts that the April 11, 2022 letter within Exhibit C demonstrates that PenFed complied with Plaintiff's request. (Dkt. No. 40-1 at 17.) While the April 11, 2022 letter does appear relevant to Plaintiff's claim here (Dkt. No. 1-4 at 3), the undersigned cannot find that the letter demonstrates that PenFed complied with § 36-9-210 as a matter of law. Accordingly, the undersigned recommends Defendants' motion to dismiss Plaintiff's UCC claim be denied.

### E.    Violation of SCUTPA

The Amended Complaint's Seventh Cause of Action alleges PenFed violated SCUTPA by failing "to properly credit and accurately report the alleged debt account, zero out the balance, and provide accurate history dates of activity and status." (Dkt. No. 31 at 30–32.) PenFed argues that this claim fails because Plaintiff fails to allege sufficient facts in support of his claim that PenFed's alleged violations of SCUTPA has an effect on the public interest. (Dkt. No. 40-1 at 17–18.) In his response, Plaintiff disputes that he must allege an adverse impact on the public interest in order to survive dismissal of his SCUTPA claim. (Dkt. No. 52-1 at 37–39.) Plaintiff further argues that discovery may show that PenFed's "policies and procedures" are

> unfair and deceptive as it relates to their process of writing off debts they have determined is an uncollectable bad debt to which they receive a credit for but fail to credit the consumers account as they have already removed the account as an asset of PenFed when they wrote off the alleged debt which affects not only the plaintiff but would affect other members with accounts with the defendant.

(*Id.* at 39.)

The SCUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20. "A plaintiff bringing a private cause of action under SCUTPA must allege and prove that the defendant's

15

actions adversely affected the public interest." *Morgan v. HSBC Bank USA, Nat. Ass'n*, No. 6:13-CV-03593-JMC, 2015 WL 3888412, at *4 (D.S.C. June 24, 2015) (citing *Noack Enterprises Inc. v. Country Corner Interiors, Inc.*, 351 S.E.2d 347, 349–50 (S.C. Ct. App. 1986)). "Conduct that affects only the parties to the transaction provides no basis for a SCUTPA claim." *Id*. (citing *Robertson v. First Union Nat'l Bank*, 565 S.E.2d 309, 315 (S.C. Ct. App. 2002)). The "adverse effect on the public must be proved by specific facts." *Jefferies v. Phillips*, 451 S.E.2d 21, 23 (S.C. Ct. App. 1994).

> An impact on the public interest may be shown if the acts or practices have the potential for repetition. The potential for repetition may be shown in either of two ways: (1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures created a potential for repetition of the unfair and deceptive acts.

*Skywaves I Corp. v. Branch Banking & Tr. Co.*, 814 S.E.2d 643, 655 (S.C. Ct. App. 2018 (quoting *Singleton v. Stokes Motors, Inc.*, 595 S.E.2d 461, 466 (S.C. 2004))).

Upon review, the undersigned finds that Plaintiff has not alleged an adverse impact on the public interest sufficient to establish a SCUTPA claim. Notably, the Amended Complaint does not allege any adverse effect on the public or otherwise allege any facts indicating PenFed's procedures created a potential for repetition of the alleged deceptive acts. Further, Plaintiff's speculative assertion that discovery may show that PenFed's "policies and procedures" are "unfair and deceptive as it relates to their process of writing off debts" does not sufficiently suggest that Plaintiff's experience is likely to be the experience of others. Without more, the undersigned cannot find that Plaintiff has established a potential for repetition of any unfair or deceptive act by PenFed or otherwise indicated an adverse impact on the public interest. *See also White v. White*, 886 F.2d 721, 723 (4th Cir. 1989) (dismissing *pro se* complaint because it "failed to contain any factual allegations tending to support his bare assertion"); *Morgan*, 2015 WL 3888412, at *5

(dismissing SCUTPA claim because "Plaintiffs did not allege facts which suggest Defendants' actions have a potential to impact the public interest. Plaintiffs failed to provide any specific facts that suggest that their experience is likely to be the experience of others. Plaintiffs did not establish that the alleged conduct is standard business practice for [defendant]"); *Ethox Chem., LLC v. Coca-Cola Co.*, No. 6:12-CV-01682-TMC, 2013 WL 41001, at *3 (D.S.C. Jan. 3, 2013) ("Even if Coca-Cola has been accused of similar past violations, which the court is not assuming without additional factual allegations, allegations of accusations are not the same as allegations of specific similar past acts. Similarly, the complaint fails to allege any specific procedures or business practices that create the potential for repetition. The court also notes that the outcome of this case will affect only the parties and not the broader public.").

Based on the foregoing, the undersigned recommends Plaintiff's Seventh Cause of Action for violation of SCUTPA be dismissed.

### F. Claims for Negligent Infliction of Emotional Distress and Intentional Infliction of Emotional Distress

Finally, the Amended Complaint's Eighth Cause of Action alleges claims against PenFed for negligent infliction of emotional distress ("NIED") and intentional infliction of emotional distress. (Dkt. No. 31 at 32–33.) PenFed argues Plaintiff's NIED claim is preempted by the FCRA, and Plaintiff fails to sufficiently allege a claim for intentional infliction of emotional distress. (Dkt. No. 40-1 at 18–20.)

Regardless of whether Plaintiff's NIED claim is preempted by the FCRA, this claim should be dismissed as insufficiently pleaded. The situations in which a plaintiff may recover for NIED are limited, and there is no basis to find Plaintiff has sufficiently alleged such a situation. *See*, *e.g.*, *K.S. by & through Seeger v. Richland Sch. Dist. Two*, No. 2019-000951, 2022 WL 2966388, at *3 (S.C. Ct. App. July 27, 2022) ("South Carolina currently recognizes negligent infliction of

17

emotional distress in three contexts."); *Land v. Barlow*, No. 2:21-cv-1883-RMG, 2021 WL 5997984, at *4 (D.S.C. Dec. 20, 2021) ("To establish a claim for negligent infliction of emotional distress a plaintiff must establish: defendant's negligence caused death or serious injury to another, plaintiff was a bystander in close proximity to the accident, plaintiff and the victim were closely related, plaintiff witnessed the incident and plaintiff must exhibit physical manifestations of emotional distress that can be established by expert testimony.").

The undersigned likewise recommends Plaintiff has failed to sufficiently plead a claim for intentional infliction of emotional distress.

> To state a claim for intentional infliction of emotional distress, a plaintiff must show (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; (3) the actions of defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Bergstrom v. Palmetto Health All.*, 358 S.C. 388, 401, 596 S.E.2d 42, 48 (2004).

Here, the Amended Complaint does not allege any extreme and outrageous conduct by PenFed under the Eighth Cause of Action. Rather this claim appears to focus on the conduct of the defendant credit reporting agencies. (Dkt. No. 31 at 32 ("Defendants knew or should have known that the information reported by PenFed . . . was inaccurate after receiving disputes from plaintiff . . . .) In his response brief, Plaintiff alleges that "reporting inaccurate, incomplete information to CRAs that they have actual knowledge of is prohibited under the FRCA. This is clearly an intolerable, extreme and outrageous act by PenFed that has caused a negative effect on plaintiff as presented through his amended verified complaint." (Dkt. No. 52-1 at 41.)

This Court has dismissed a similar claim arising out of allegations that a defendant "provided incorrect information to CRAs" because such conduct "is not activity which is

18

intolerable in a civilized society." *Potter*, 2012 WL 13005806, at *3 (granting "Defendants' motion to dismiss plaintiff's outrage claim because it does not state a claim which is plausible on its face"); *see also Craig v. Andrew Aaron & Assocs., Inc.*, 947 F. Supp. 208, 212 (D.S.C. 1996) (analyzing actions of a debt collector); *Hainer v. Am. Med. Int'l, Inc.*, 465 S.E.2d 112, 117 (S.C. Ct. App. 1995) (reporting misconduct to licensing board not extreme or outrageous). As in *Potter*, Plaintiff fails to plausibly allege "extreme and outrageous" conduct based on PenFed furnishing incorrect information to CRAs.

Based on the foregoing, the undersigned recommends the Court dismiss Plaintiff's Eighth Cause of Action in its entirety.

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that PenFed's Motion to Dismiss (Dkt. No. 40) be GRANTED IN PART AND DENIED IN PART. Specifically, the Court should dismiss, without prejudice, Plaintiff's Fourth, Fifth, Seventh, and Eighth Causes of Action,[4] which consist of Plaintiff's claims against PenFed for violations of FDCPA, SCUTPA, SCCPC, and for negligent infliction of emotional distress and intentional infliction of emotional distress. Plaintiff's claims against PenFed for violation of the FCRA, defamation, and violation of the UCC should remain pending.

**IT IS SO RECOMMENDED**.

February 7, 2023
Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

---

[4] Because the Fifth and Eighth Causes of Action are also alleged against the other Defendants, they should not be dismissed in their entirety.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).