# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Nelson L. Bruce, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No.: 2:22-cv-02211-BHH-MGB |
| Pentagon Federal Credit Union; *et al.* | ) District Judge Bruce Howe Hendricks |
| | ) Magistrate Judge Mary Gordon Baker |
| Defendants. | ) |

## DEFENDANT PENTAGON FEDERAL CREDIT UNION'S OBJECTIONS TO THE REPORT AND RECOMMENDATION ON ITS MOTION TO DISMISS

Pentagon Federal Credit Union ("PenFed") filed a motion [ECF 40] seeking dismissal with prejudice of all claims asserted against it in Nelson Bruce's amended complaint [ECF 31] ("the complaint"). The Court issued a Report and Recommendation on February 7, 2023 [ECF 66] ("the R&R"). The R&R recommends that the Court grant PenFed's motion in part and deny it in part. Specifically, the R&R recommends that the Court dismiss the complaint except with respect to the following claims: (I) alleged violations of the Fair Credit Reporting Act ("FCRA"); (II) defamation; and (III) alleged violations of the Uniform Commercial Code ("UCC"). PenFed respectfully objects to the R&R to the extent it recommends against dismissing those claims.

With respect to Bruce's FCRA claim, the R&R appears to make three dispositive errors. First, the R&R suggests that furnishers can be held liable for reporting "'patently incorrect'" information to credit reporting agencies ("CRAs") even if the inaccuracy is harmless. (R&R at 8.) To the contrary, plaintiffs do not have standing to sue furnishers for reporting incorrect information if the inaccuracy is harmless. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016).

1

Second, the R&R incorrectly finds that Exhibit A to the complaint [ECF 1-2] shows Bruce notified a credit reporting agency ("CRA") that he disputed an account because PenFed had sold the account but was still reporting it. The R&R appears to conflate two separate and distinct issues. Bruce disputes PenFed's reporting of accounts it charged off in addition to disputing PenFed's reporting of an account it sold. In finding that Bruce raised a dispute about a loan being sold, the R&R cites letters that raised disputes about accounts being charged off. (R&R at 9-10 (citing Pl.'s Ex. A at 2-6, 36-39).) Since the letters do not dispute PenFed reporting a loan it had sold, the R&R is incorrect in finding that Bruce can pursue an FCRA claim predicated on such a dispute.

Third, the R&R cites cases that found it misleading to continue to report the amount of a monthly payment after an account is charged off. (R&R at 9.) Those cases do not apply to this case, however, because Bruce does not claim PenFed reported ongoing monthly payments. Instead, he claims a charged off account must be reported with a zero balance. As the R&R appears to acknowledge, when an account is charged off, "'the total amount of the loan remains due and owing'" even if "'a monthly payment is no longer due.'" (*Id.* (quoting *Burns v. Trans Union, LLC*, No. 4:18-03120-MGL, 2019 WL 3890833, at *4 (D.S.C. Aug. 19, 2019)).) Accordingly, it is not misleading for PenFed to continue reporting a balance after charging off an account. *Makela v. Experian Info. Sols., Inc.*, No. 6:21-cv-00386-MC, 2021 WL 5149699, at *3 (D. Or. Nov. 4, 2021); *Artemov v. TransUnion, LLC*, No. 20-CV-1892 (BMC), 2020 WL 5211068, at *5 (E.D.N.Y. Sept. 1, 2020); *Christian v. Equifax Info. Servs., LLC*, No. 18-13862, 2020 WL 2087869, at *4 (E.D. Mich. Apr. 30, 2020); *cf. Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1297 (11th Cir. 2016); *Kelly v. Wolpoff & Abramson, L.L.P.*, 634 F. Supp. 2d 1202, 1210 (D. Colo. 2008).

As explained below, PenFed also objects to the extent the R&R recommends against dismissing Bruce's defamation and UCC claims. The complaint should be dismissed in its entirety.

**STANDARD**

A magistrate judge can make a recommendation as to the resolution of a motion to dismiss, but the responsibility for making a final determination remains with the district judge. 28 U.S.C.A. § 636(b)(1); Fed. R. Civ. P. 72. When a party objects to a magistrate judge's recommendation, the district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). The magistrate judge's recommendation does not have "presumptive weight." *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

**ARGUMENT**

As previously explained, the R&R recommends that the Court dismiss the complaint as asserted against PenFed except with respect to the following claims: (I) alleged violations of the FCRA; (II) defamation; and (III) alleged violations of the UCC. PenFed objects to the R&R to the extent it recommends against dismissing those claims.

**I.     BRUCE'S FCRA CLAIM FAILS.**

The R&R finds that the complaint states viable FCRA claims based on two separate and distinct factual predicates. First, Bruce claims that PenFed continued to a report a debt after it had already sold the relevant account. (R&R at 8.) Second, Bruce claims PenFed was required to report that certain accounts had a "'zero balance'" because PenFed had charged off the accounts. (*Id.* at 8 (quoting Compl. at ¶ 3).) Both claims, which are addressed separately below, fail.

**A.      Bruce's FCRA Claim Involving an Account That Was Sold Is Not Viable.**

The R&R makes two errors—each of which is independently dispositive—in finding that the complaint states a viable FCRA claim based on allegations about PenFed continuing to report an account it had sold. First, the R&R's suggestion that a harmless inaccuracy can be actionable under the FCRA is inconsistent with the Supreme Court's opinion in *Spokeo*. Second, the R&R incorrectly finds that Exhibit A to the complaint shows Bruce notified a CRA of his dispute.

>    i.      *Harmless Inaccuracies Are Not Actionable*.

Bruce does not allege that the relevant account appeared on his credit report twice as a result of being reported by both PenFed and a subsequent owner of the account. Nor does Bruce allege that listing the creditor as PenFed, rather than the subsequent owner, rendered his credit report inaccurate in any other way. In the absence of any other inaccuracies, listing the wrong creditor is not likely to have an "adverse effect" on a consumer's ability to obtain credit, and, therefore, is not actionable under the FCRA. *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (quotation omitted); *see also Spokeo*, 578 U.S. at 342.

The R&R does not reject the factual premise or the logic of PenFed's argument that listing the wrong creditor was not, by itself, likely to have an adverse effect on Bruce's ability to obtain credit. Nevertheless, the R&R finds that Bruce has alleged a viable claim under the test adopted in *Dalton*. (R&R at 8.) Under *Dalton*, "[a] report is inaccurate when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Dalton*, 257 F.3d at 415 (quotation omitted). The R&R reasons that "[a]n account that shows an outdated creditor would presumably fall under the category of 'patently incorrect' information." (R&R at 8.) It appears that the R&R interprets *Dalton* as imposing an "adverse effect" requirement when information is "misleading" but not when it is "patently incorrect."

4

The R&R's interpretation is understandable because the relevant passage in *Dalton* is somewhat ambiguous as to whether the "adverse effect" requirement applies to "patently incorrect" information. *See id*. This Court does not need to parse the relevant sentence in *Dalton*, however, because the R&R's interpretation, even if plausible, cannot be squared with the Supreme Court's subsequent holding in *Spokeo* that harmless inaccuracies are not actionable.

In *Spokeo*, the Supreme Court held that plaintiffs do not automatically have standing to sue for every technical violation of the FCRA because "not all inaccuracies cause harm or present any material risk of harm." 578 U.S. at 342. Using "an incorrect zip code" as an example, the Court noted "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id*. Since an "incorrect zip code" would fall under the category of "patently incorrect" information, the R&R's holding that harmless FCRA violations are actionable to the extent they involve "patently incorrect" information cannot be reconciled with *Spokeo*.

Neither Bruce nor the R&R have identified any harm that resulted, or could have resulted, from the wrong entity being identified as the creditor for an account listed in Bruce's credit report. Since harmless inaccuracies are not actionable, the Court should dismiss Bruce's FCRA claim to the extent it is based on his allegation that PenFed reported an account after selling it.

      ii.      *Exhibit A Does Not Show That Bruce Notified A CRA of the Dispute*.

The R&R correctly acknowledges that the first element of an FCRA claim requires a plaintiff to establish "'that he or she notified the consumer reporting agency of the disputed information'" before suing. (R&R at 6 (quoting *Ausar-El v. Barclay Bank Del.*, PJM-12-082, 2012 WL 3137151, at *3 (D. Md. July 31, 2012).) The R&R is incorrect, however, in finding that Exhibit A to the original complaint shows that Bruce can satisfy the first element with respect to his claim that PenFed violated the FCRA in connection with an account it sold but continued reporting.

5

The R&R cites pages 2-6 and 36-39 of Exhibit A to Bruce's original complaint in finding that Bruce can show he informed a CRA of the disputed information. (R&R at 10.) The R&R states that "Exhibit A includes several letters from Plaintiff to credit reporting agencies disputing the accuracy of the Plaintiff's accounts as reported by PenFed, including PenFed's failure to report the charged off accounts with a zero balance." (*Id.* (citing Pl.'s Ex. A [ECF 1-2] at 2-6, 36-39).) Significantly, the R&R does not state that the letters raise a dispute about PenFed reporting an account after having sold the account. Indeed, the letters in Exhibit A do not raise any such dispute.

The R&R appears to conflate two separate and distinct issues in this case. The fact that Bruce disputed reports for showing that balances were due on charged off accounts does not mean he disputed reports for listing PenFed as the creditor after it sold an account. Neither the complaint nor Exhibit A, including the specific pages cited by the R&R, show that Bruce informed a CRA that he disputed a report for listing PenFed as the creditor after it sold an account.

Bruce claims he notified a CRA of the dispute by sending a letter in May of 2022 that requests a "reinvestigation of every piece of information that was allegedly being reported[.]" (Compl. ¶ 59; *see* Pl.'s Ex. A at 48-50.) That broad and sweeping request is not sufficient, however, because a "furnisher of information need investigate only what is contained in the CRA's dispute notice as to the nature of the dispute." *Edeh v. Midland Credit Management, Inc.*, 413 F. App'x 925, 926 (8th Cir. 2011); *Alston v. United Collections Bureau, Inc.*, No. CIV.A. DKC 13-0913, 2014 WL 859013, at *8 (D. Md. Mar. 4, 2014) (citing *Johnson v. MBNA Am Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004)); *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (furnisher's investigation was "reasonable given the scant information it received regarding the nature of [the consumer's] dispute"). Needless to say, Bruce's request for a "reinvestigation of

6

every piece of information" was not sufficiently specific to notify a CRA or PenFed that he disputed a report because it listed PenFed as the creditor on an account it had sold.[1]

### B. Bruce's FCRA Claim Involving Charge Offs Is Not Viable.

The complaint does not expressly allege that PenFed violated the FCRA by reporting balances due on accounts it had charged off, but some of the letters included in Exhibit A do raise that issue. Citing those letters, the R&R finds that the complaint sufficiently pleads a claim under the FCRA. (R&R at 8-9.) In support of that finding, the R&R cites several cases that held it is misleading for a creditor to continue reporting that monthly payments are due after an account has already been charged off, including this Court's opinion in *Burns*, 2019 WL 3890833. (*Id.*)

*Burns* and the other cases cited in the R&R are inapposite. In *Burns*, the plaintiff alleged that the defendant reported "a $70.00 monthly payment despite her account being closed and charged off." 2019 WL 3890833, at *3. The Court found that it could be misleading to report that a monthly payment is due on a charged off account. *See id*. Critically, however, the court also noted that "the total amount of the loan remains due and owing" even though "a monthly payment is no longer due[.]" *Id*. at *1. In other words, the credit report was misleading because it indicated that monthly payments continued to accrue, not because the report indicated that the total amount of the unpaid balance on the loan remained due and owing. *See id*.

Other courts have made the same distinction. As the U.S. District Court for the Eastern District of New York explained in *Artemov*, "[m]erely listing a past due balance—an undisputed

---

[1] Exhibit D to Bruce's original complaint includes letters Bruce apparently sent to the CRAs notifying them of his intent to sue and demanding millions of dollars to settle 25 days before he initiated this action. The settlement demands allege that PenFed reported loans it had sold. To the extent the settlement demands could be construed as dispute notifications, which PenFed does not concede, they could not possibly have given rise to an actionable FCRA claim because Bruce sued before the 30-day deadline for the CRAs to investigate Bruce's allegations had expired. 15 U.S.C. 1681i(a)(1); *see also* 15 U.S.C. 1681s-2(b)(2).

legal obligation—for a charged off account is quite different than incorrectly reporting a future monthly responsibility when such requirement no longer exists." 2020 WL 5211068, at *5. Like Bruce, the plaintiff in *Artemov* argued that a creditor must report that an account has a zero balance after it is charged off. *Id*. at *6. The court unequivocally and emphatically rejected that argument:

> If I were to adopt plaintiff's reasoning—that a charge off categorically precludes a creditor from reporting the total past due amount—it would vitiate the entire existence and purpose of credit reporting companies: to present an evenhanded and fair representation of a particular consumer's ability and willingness to pay off debt, so as to encourage a creditor to take a risk and extend a line of credit to a particular consumer.

*Id*. (citation omitted).

Several other courts have also held that it is not misleading for a creditor to report that the unpaid balance of an account remains due and owing after the account has been charged off.[2] *See, e.g.*, *Makela*, 2021 WL 5149699, at *3; *Lieberman*, 2020 WL 5517271 at *3; *Christian*, 2020 WL 2087869, at *4; *cf. Hinkle*, 827 F.3d at 1297; *Kelly*, 634 F. Supp. 2d at 1210. Neither Bruce nor the R&R have cited a single case that reached the opposite conclusion.

This case is similar to *Artemov*, not *Burns*, because Bruce does not claim PenFed reported that monthly payments continued to accrue after it charged off the relevant accounts. In fact, the credit reports included in Exhibit A to Bruce's original complaint prove the opposite because they state that the accounts were charged off, state the total amount charged off, and do not list any monthly payment dates or amounts. (*See* Pl.'s Ex. A at 14.) For example, the following report included in Exhibit A cannot be construed as inaccurate based on the rationale of *Burns*:

---

[2] Moreover, it is not inaccurate to report that monthly payments are still accruing if the creditor has not accelerated the debt even though it has charged off the account. *See Christian*, 2020 WL 2087869, at *4 ("Thus, Christian was still able and obligated to make, and Ginny's was still able to collect, monthly payments on the Account that were less than the full balance, such that Ginny's reporting of a $25 monthly payment was not inaccurate.")



(Pl.s' Ex. A at 14.)

The foregoing example does not suggest monthly payments continue to accrue because it does not list a monthly payment amount. (*Id.*) In fact, it clearly suggests that monthly payments are no longer accruing because the table reflecting Bruce's payment history uses the acronym "CO" for "Charge Off" instead of listing the number of days by which any monthly payments were late. Accordingly, Bruce's own exhibit proves conclusively that his FCRA claim fails to the extent it is predicated on allegations about the manner in which PenFed reported charged off accounts.

## II.     BRUCE'S DEFAMATION CLAIM FAILS.

The R&R correctly states that Bruce's defamation claim "is preempted by the FCRA absent an allegation of malice or willful intent to injure Plaintiff." (R&R at 10 (citing 15 U.S.C.

1681h(e)).) The R&R finds that Bruce has adequately alleged malice because he "alleges that even after Plaintiff told PenFed that he disputed the accuracy of his accounts, PenFed failed to investigate and reported the alleged inaccuracy to third parties." (R&R at 11.) The R&R cites two opinions in holding that a reasonable inference of malice can be drawn based only on allegations that a defendant failed to correct an inaccuracy after being notified of it, *Hoback v. Synchrony Bank*, No. 6:19-CV-18, 2019 WL 2438794 (W.D. Va. June 11, 2019), and *Potter v. FIA Card Servs., N.A.*, No. 2:12-CV-1722-RMG, 2012 WL 13005806 (D.S.C. Sept. 28, 2012). (R&R at 11.)

*Hoback* and *Potter* are distinguishable because Bruce has not adequately alleged that PenFed reported material information inaccurately, received notice of the inaccuracy, and then failed to correct it. As explained in Section I.A., Bruce has not adequately alleged that he raised a dispute about PenFed reporting loans it had sold, and, in any event, listing the wrong entity as the creditor on a valid account is harmless. As explained in Section I.B., neither the complaint nor the R&R have identified any potential inaccuracies in the information PenFed reported about charged off accounts. Under those circumstances, no rational factfinder could possibly infer malice.

A case that is more analogous to this one than those cited by the R&R is *Stoer v. VW Credit, Inc.*, No. GJH-17-3203, 2018 WL 3608776 (D. Md. July 26, 2018). In *Stoer*, the court dismissed a defamation claim because a furnisher responded to the plaintiff's disputes by "continu[ing] to tell him that the late payments existed, which contradicts the conclusory assertions that the [furnisher] entertained serious doubts about the accuracy of the statement or knew them to be false when made to reporting agencies." 2018 WL 3608776, at *3. Similarly, PenFed responded to Bruce in an April 11, 2022, letter by stating that Bruce's prior disputes "were previously investigated," that PenFed "properly responded to prior correspondences multiple times," and that PenFed had "provided evidence substantiating the obligations." (Pl. Ex. C. at 3.)

10

Indeed, Bruce's own exhibits show that even Bruce himself was unsure of whether PenFed had reported inaccurate information. Bruce admitted that fact in his most recent communication to the CRAs: "I am not saying [PenFed] is reporting right or wrong. I am just saying I am not 100% sure if they are." (Pl.'s Ex. A at 48.) Since Bruce's own exhibits directly undercut any possible inference of malice by contradicting the conclusory assertion that PenFed intentionally reported inaccurate information to CRAs, the Court should dismiss Bruce's defamation claim. *Stoer*, 2018 WL 3608776, at *3.

## III. BRUCE'S UCC CLAIMS FAILS.

The R&R finds that the complaint states a claim for violations of the UCC based on the allegation that PenFed did not comply with an April 4, 2022, request for an "'authenticated record of accounting[.]'" (R&R at 14 (quoting Pl.'s Ex. A at 53).) The April 4, 2022, letter is far from a model of clarity. For example, it confusingly states that Bruce is "not requesting a statement of account, for an authenticated record of the accounting." (Pl.'s Ex. A at 53.) Neither Bruce's complaint nor the briefs he filed in opposition to PenFed's motion to dismiss clearly identify the specific information Bruce believes he is missing or establish a basis for standing by providing a rational explanation of how Bruce has been harmed by PenFed's alleged noncompliance with the UCC. Accordingly, PenFed respectfully requests that the Court dismiss Bruce's UCC claim.[3]

---

[3] If the Court grants PenFed's motion with respect to all of Bruce's claims against PenFed except the UCC claim, the Court should decline to exercise supplemental jurisdiction over the UCC claim. The complaint does not, and cannot, allege that Bruce suffered any damages due to PenFed's alleged noncompliance with the UCC. As a result, the amount in controversy with respect to the UCC claim could not come close to exceeding the $75,000 threshold for diversity jurisdiction.

## CONCLUSION

PenFed respectfully objects to the R&R to the extent it recommends against dismissing the complaint in its entirety as asserted against PenFed. The bottom line is that the complaint and its exhibits do not show that PenFed violated the FCRA, let alone plausibly allege that PenFed acted with the type of malice required to avoid the FCRA's preemption clause. Accordingly, PenFed requests that the Court dismiss all claims asserted against PenFed with prejudice.

DATED: February 21, 2023.                **Respectfully submitted,**

**PENTAGON FEDERAL CREDIT UNION**

s/ G. Troy Thames
G. Troy Thames (Federal ID No.: 07713)
WILLSON JONES CARTER & BAXLEY, P.A.
4922 O'Hear Avenue, Suite 301
North Charleston, SC 29405
Telephone: (843) 284-0832
Facsimile: (843) 606-3300
Email: tthames@wjcblaw.com

Michael A. Graziano  (*pro hac vice* pending)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
1717 Pennsylvania Avenue, N.W., Suite 1200
Washington, D.C. 20006
Telephone: 202.659.6671
Facsimile: 202.659.6699
E-mail: mgraziano@eckertseamans.com

*Attorneys for Pentagon Federal Credit Union*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on the 21st day of February, 2023, I served the foregoing via first class mail on:

Nelson L. Bruce
P.O. Box 3345
Summerville, SC 29484
*Pro Se Plaintiff*


                s/ G. Troy Thames
                G. Troy Thames (Federal ID No.: 07713)

13