**FILE ON DEMAND**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

RECEIVED USDC
CLERK, CHARLESTON, SC
2023 MAY 22  PM 4: 25

| | | |
|---|---|---|
| Nelson L. Bruce, | ) | |
| | ) | |
| Plaintiff's, | ) | Case No.: 2:22-cv-02211-BHH-MGB |
| | ) | |
| v. | ) | 2nd AMENDED |
| | ) | VERIFIED COMPLAINT for violations |
| PENTAGON FEDERAL CREDIT UNION | ) | of the Fair Credit Reporting Act (FCRA), 15 |
| (A.K.A. "PENFED") Experian Information | ) | U.S.C.§ 1681 et seq., the Financial Identity |
| Solutions, Inc., Trans Union, LLC, Equifax | ) | Fraud and Identity Act as codified under |
| Information Services, LLC, LEXISNEXIS | ) | 37-20-170 et seq. and 37-20-200 et seq., |
| RISK SOLUTIONS, INC., ALL | ) | Failure to comply U.C.C. 9-210 et seq., and |
| UNKNOWN DOE'S 1-100, et al. | ) | 36-9-210 et seq., Common Law Defamation |
| | ) | of Character "Libel", THE SOUTH |
| Defendant(s) | ) | CAROLINA UNFAIR TRADE |
| | ) | PRACTICES ACT" AS CODIFIED |
| | ) | UNDEER 39-5-20, DEMAND FOR TRIAL |
| | ) | BY JURY |

Comes now Plaintiff, **Nelson L. Bruce**, hereby individually and separately sues each

Defendant identified in this matter.  Plaintiff is filing this Amended Complaint in compliance

with Fed. Rule 15 (a)(1)(A) and (B) as LexisNexis has documented that they have never been

served and there are responsive pleading and motions filed (ECF No. 88 and ECF No. 89) and to

remove and add claims.  No parties will be prejudiced by the court granting this amendment as

this is the early stages of the proceedings and there are no orders by the court filed in this case on

any filings filed on the record that would prejudice any parties.  Further, there are not scheduling

orders entered in this case.  Plaintiff does not consent to magistrate jurisdiction.  Plaintiff

respectfully sets forth, complains, and states as follows with his complaint:

**PRELIMINARY STATEMENT**

1.  This is an action for damages (actual, statutory, compensatory and punitive costs and if

    applicable, attorneys' fees) brought by an individual consumer for Defendants', the Fair

Credit Reporting Act, 15 U.S.C. § 1681, et seq. (the "FCRA"), the Financial Identity Fraud and Identity Theft Protection Act" as codified under 37-20-170 et seq. and 37-20-200 et seq. of the South Carolina Consumer Protection Code ("SCCPC"), Failure to comply with U.C.C. 9-210 et seq., and 36-9-210 et seq., Common Law Defamation of Character "Libel" and THE South Carolina Unfair Trade Practices Act" As Codified Under 39-5-20

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1681p et seq.

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the rights and obligations of the parties in this action are defined by 15 U.S.C. § 1681 pursuant to 15 U.S.C. § 1681p et seq. which in general provides that an action to enforce any liability created under 15 U.S.C. § 1681 may be brought in any appropriate United States district court, without regard to the amount in controversy.

4. This Court has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in South Carolina.

6. Plaintiff brings this action for damages arising from the Defendants' violations of 15 U.S.C. § 1681 *et seq.*, commonly known as the Fair Credit Reporting Act ("FCRA").

7. Plaintiff brings this action for damages arising from the Defendants' violations of Title 37-20-170 et seq. and 37-20-200 et seq. ("SCCPC").

## PARTIES

8. Plaintiff, **Nelson L. Bruce**, is a natural person, who resides in the State of South Carolina.

9. At all times material hereto, Plaintiff was and is a "consumer" as said term is defined under 15 U.S.C. § 1681a(c) and 37-20-110 (1) of the SCCPC.

10. As part of its business, Defendant PENFED is a "furnisher" of consumer credit information, are persons who furnished information to consumer reporting agencies such as Defendants, Trans Union, Equifax, LexisNexis and Experian as that term is used in Section 1681s-2 et seq. PENFED is a Corporation with its principal place of business in Virginia and is authorized to do business in this judicial district. PENFED conducts business in this jurisdiction, and may be served with process through their registered agent SCOTT LIND at **2930 Eisenhower Avenue, Alexandria, Virginia 22313.**

11. Experian Information Solutions, Inc. (hereinafter "Experian") is an Ohio corporation with its principal place of business in California. Experian is a nationwide consumer reporting agency as that term is defined by 15 U.S.C. §1681a(f) of the FCRA and a Consumer Credit Reporting Agency as defined in Section 37-20-110(2) of the SCCPC and conducts substantial and regular business activities in this judicial district. Defendant Experian is a Ohio corporation registered to do business in the State of South Carolina and may be served with process upon the C T CORPORATION SYSTEM, its registered agent for service of process at 2 Office Park Court, Suite 103, Columbia, South Carolina 29223.

12. Defendant Experian is a "furnisher" of consumer credit information, are persons who furnished information to consumer reporting agencies such as Defendant, LexisNexis as that term is used in Section 1681s-2 et seq.

13. Equifax Information Services, LLC (hereinafter "Equifax") is a nationwide consumer reporting agency as that term is defined by 15 U.S.C. §1681a(f) of the FCRA. And a Consumer Credit Reporting Agency as defined in Section 37-20-110(2) of the SCCPC and conducts substantial and regular business activities in this judicial district. Defendant Equifax is a Georgia corporation registered to do business in the State of South Carolina, upon

information and belief its members are citizens of the state of Georgia and may be served with process upon the CORPORATION SERVICE COMPANY, its registered agent for service of process at 508 Meeting Street, West Columbia, South Carolina 29169.

14. Trans Union, LLC (hereinafter "Trans Union" or "TransUnion") is a limited liability company, a nationwide consumer reporting agency as that term is defined by 15 U.S.C. §1681a(f) of the FCRA. And a Consumer Credit Reporting Agency as defined in Section 37-20-110(2) of the SCCPC and conducts substantial and regular business activities in this judicial district. Defendant TransUnion is a Delaware corporation registered to do business in the State of South Carolina, upon information and belief, its members are citizens of the state of Delaware and may be served with process upon the Prentice-Hall Corporation System, its registered agent for service of process at 508 Meeting Street, West Columbia, South Carolina 29169.

15. LexisNexis Risk Solutions, Inc. (hereinafter "LexisNexis") is a corporation with its principal place of business in Georgia.  LexisNexis is a nationwide consumer reporting agency as that term is defined by 15 U.S.C. §1681a(f) of the FCRA and a Consumer Credit Reporting Agency as defined in Section 37-20-110(2) of the SCCPC and conducts substantial and regular business activities in this judicial district. Defendant LexisNexis is a Georgia corporation registered to do business in the State of South Carolina and may be served with process upon the C T CORPORATION SYSTEM, its registered agent for service of process at 75 Beattie Place, Greenville, South Carolina 29601.

16. Defendant Lexis Nexis is a "furnisher" of consumer credit information, are persons who furnished information to consumer reporting agencies such as Defendant, Trans Union as that term is used in Section 1681s-2 et seq.

17. At all times material here to, Defendants, TransUnion, Experian, and Equifax are consumer reporting agencies regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers such as plaintiff for the purpose of furnishing consumer reports, as said term is defined under 15 U.S.C. § 1681(d) and 15 U.S.C. §1681a(f) to third parties.

18. Upon information and belief TransUnion, Experian, LexisNexis and Equifax disburse consumer reports to third parties for monetary compensation.

19. All events herein occurred in this judicial district.

**STATEMENT OF FACTS**
**BACKGROUND**

20. At all times relevant to this matter, Plaintiff was and is an individual, a natural person, a consumer residing within the State of South Carolina.

21. Unless otherwise stated, Plaintiff alleges that any violations by Defendants were knowing, Willful, intentional, reckless, negligent, grossly negligent, done with malice, the intent to injure plaintiff, to harm and damage the plaintiff and his credit worthiness as Defendants did not maintain procedures reasonably adapted to avoid any such violations and/or did not do a reasonable investigation and/or reinvestigation into the matters.

22. Plaintiff hereby incorporates by reference in its entirety as evidence all exhibits A – F4 already filed on the record as part of this amended complaint. (ECF No. 1.2 – 1.5 which include "Exhibits A-D", ECF No. 31.1 which include "Exhibit E", ECF No. 77.1 which include "Exhibits F1-F3", and ECF No. 83.1 which include "Exhibit F4").

23. The consumer reports at issue are a written communications of information concerning Plaintiff's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or for the purpose of serving as a

factor in establishing the consumer's eligibility for credit to be used primarily for personal, family, or household purposes as defined by 15 U.S.C. § 1681a(d)(1) of the FCRA.

24. On information and belief, on a date better known to Defendants TransUnion, Experian, LexisNexis and Equifax, hereinafter ("the Bureaus"), the Bureaus prepared and issued credit reports concerning the Plaintiff that included inaccurate, incomplete, untrue, incorrect and materially misleading information relating to the PENFED, and/or REV accounts being reported.

25. Experian acted as a credit reporting agency only with respect to the consumer reports/credit reports that Experian maintains on the plaintiff. Experian is not acting as a credit reporting agency with respect to credit reports/consumer reports maintained by LexisNexis.

26. Experian was only acting as a furnisher of the information submitted to LEXISNEXIS. Experian is an entity that furnished information relating to plaintiff who is a consumer to one or more consumer reporting agencies [LexisNexis] for inclusion in a consumer report as evidenced by Exhibit E relating to plaintiff and accounts of the plaintiff containing loan balances and his 'creditworthiness' to [agencies], which then used that information to generate consumer reports/credit reports."

27. Experian failed to do a reasonable investigation as a data furnisher furnishing information related to the PenFed, and REV accounts to LexisNexis.

28. Exhibit E clearly evidences that LNRS disclosure report is a "consumer report". LNRS has clearly admitted in their January 11th, July 30th, and September 15th of 2022 letters to plaintiff stating that LNRS "provide consumer reports to customers who have a permissible purpose" (See...plaintiff's Exhibit E).

29. The FCRA § 603 codified under - 15 U.S.C. § 1681a(u)(2) clearly defines a "reseller" as "a

consumer reporting agency that "<u>does not</u>" <u>maintain a database of the assembled or merged</u> <u>information from which new consumer reports are produced</u>.  The record evidences that LexisNexis maintains a database of the assembled and merged information from which new consumer reports are produced as evidenced by "Exhibit E" clearly evidencing different consumer reports and dates produced by LNRS.  LNRS owns "SageStream" which is another consumer reporting agency that maintains a database of consumer information and accounts which LNRS assembled and merged to create a consumer report to third parties.  Because LNRS owns SageStream, they are responsible for their acts in violation of the FCRA and State laws.

30. LexisNexis acted as a credit reporting agency only with respect to the consumer reports/credit reports that LexisNexis maintains on the plaintiff.

31. LexisNexis is not acting as a credit reporting agency with respect to credit reports/consumer reports maintained by Trans Union.

32. LexisNexis was only acting as a "furnisher" of the information submitted to Trans Union. LexisNexis is an entity that furnished information relating to plaintiff who is a consumer to one or more consumer reporting agencies [Trans Union] for inclusion in a consumer report as evidenced by Exhibit E relating to plaintiff and his 'creditworthiness' to [agencies], which then used that information to generate consumer reports/credit reports."

33. LexisNexis failed to do a reasonable investigation/reinvestigation as a "furnisher" furnishing information related to a bankruptcy to Trans Union because it failed to verify all filings on the record in the court as the court record evidences that the bankruptcy was withdrawn by the plaintiff before any final judgments in the case.

34. LexisNexis has knowingly, and willfully violated plaintiff's rights to privacy, privacy rights

under 15 U.S. Code § 1681(a)(4) by disseminating consumer information and consumer reports containing information about the plaintiff and his accounts when a security freeze has been in place since 2015 as evidenced by their dispute results to the plaintiff as Lexis Nexis has disseminated this information to third parties without plaintiff's authorization which include but is not limited to bankruptcy information and other consumer account information stored in their files.

35. PENFED, REV, EQUIFAX, LEXIS NEXIS and EXPERIAN continued to report the debt accounts on Plaintiff's consumer report which defendants knows or has reasonable cause to believe that the information related to the accounts of the plaintiff is inaccurate, incomplete, untrue, and/ or incorrect in violation of the FCRA and the SCCPC.

36. The information furnished by PENFED, REV, and Experian and published by the Bureaus and disseminated to third parties is false, inaccurate, incomplete, untrue, incorrect and misleading because the Plaintiff disputed information as evidenced by his disputes (See... Exhibit A and Exhibit E (Evidencing copies of disputes to the Bureaus and dispute results from LexisNexis, which is hereby incorporated by reference in its entirety) including the balance allegedly owed to PENFED and REV which is hereby incorporated by reference in its entirety which the Bureaus should have reasonably investigated.

37. The Credit Reporting Agency Defendants failed to indicate that plaintiff has disputed information that is being furnished to the agency in each consumer report in violation of the FCRA, 15 U.S. Code § 1681c(f) even after receiving notification by plaintiff's dispute that the REV and PenFed accounts are and have been disputed by the Plaintiff the directly with the furnishers which if reasonable investigated the reinvestigation results should have been that the consumer disputes the information being reported otherwise as prescribed by 1681s-

2(a)(3).

38. The Bureaus have been reporting the REV and PenFed accounts and information through the issuance of false, incomplete, untrue, incorrect and inaccurate credit information and consumer reports that it has disseminated to various third parties, persons and credit grantors, both known and unknown at the time of this filing.

39. Plaintiff notified both the Bureaus and data furnishers that he disputed the accuracy, completeness, correctness of the information the Bureaus were reporting.

40. Dispute letters were sent to Experian via U.S.P.S. Priority Mail Express, signature required, Equifax via certified mail return receipt requested and Trans Union online. (See…ECF No. Exhibit A, which is hereby incorporated by reference in its entirety).

41. "Verification" is the legal context refers to a declaration under oath or upon penalty of perjury that a statement or pleading is true. The verification is located at the end of a document. This is the legal definition of verification.

42. On or about September 24, 2021, Plaintiff pulled his consumer credit report and sent out disputes triggering a reinvestigation disputing an account and information reported by REV Federal Credit Union and a credit card account, a line of credit account and an auto loan account and information reported by PENFED related to these accounts, reported and published allegedly belonging to plaintiff to which PENFED claims plaintiff is liable for with Equifax and Experian. These disputes provided information in an effort to assist the credit bureaus and help with their reinvestigation of the accounts and the information being reported on plaintiff's consumer report (See…Exhibit A, which is hereby incorporated by reference in its entirety) and published to third parties as the disputes pointed out to all Defendants the improper, inaccurate derogatory tradelines to be reinvestigated and requested that the tradelines be deleted/removed.

43. Equifax received Plaintiff's dispute and request for investigation on or about September 26, 2021.

44. Experian received Plaintiff's dispute and request for investigation on or about September 27, 2021.

45. On or about 6-17-2022 defendants Trans Union, Experian, and Equifax received a notice from the plaintiff that clearly notifies them that the PENFED accounts was sold, assigned and transferred to third parties and plaintiff produce evidence from PENFED dated 4-11-2022 documenting these facts which the defendants willfully, negligently, recklessly ignored and failed to update their records and or failed to reinvestigate and willfully, negligently continued to report the accounts (See...Exhibit D).

46. On or about 1-12-2022 Plaintiff received a copy of his consumer file/report that LexisNexis was reporting and publishing with untrue, inaccuracies, false, incorrect, and incompleteness information to third parties. (See...LexisNexis consumer reports, Exhibit E)

47. On or about June 2, 2022 LexisNexis received a verbal dispute (over the phone) from Plaintiff disputing all accounts and information reported by Experian related to PenFed and REV accounts and requested that any and all accounts and information reported by PenFed and REVFCU be reinvestigated as they are inaccurate, untrue, incomplete, and incorrect.

48. On or about June 30, 2022 LexisNexis provided a letter stating that they have removed the disputed information from plaintiffs file reported to which is related to his June 2, 2022 dispute. (See...Exhibit E) but failed to provide a copy of the updated file/report in violation of the FCRA which plaintiff requested a copy be sent.

49. On or about July 29, 2022 Plaintiff received a copy of the updated consumer credit file/report from LexisNexis which evidence the exact same information disputed therefore LexisNexis

provided false, untrue, inaccurate, incomplete, incorrect and misleading information regarding the removal of information as the updated file/report did not show that any accounts disputed was removed as alleged by LexisNexis on or about June 30, 2022. (See…Exhibit E)

50. On or about August 15, 2022, LexisNexis received another verbal dispute (over the phone) from Plaintiff disputing all accounts and information reported by PenFed and REV and requested that any and all accounts and information reported by PenFed and REVFCU be Re-investigated for inaccuracies, incompleteness and correctness.

51. On or about September 8, 2022 LexisNexis provided another letter stating that they have removed the disputed information from plaintiffs file reported to which is related to his August 15, 2022 dispute (See…Exhibit E) but yet again failed to provide a copy of the updated file/report in violation of the FCRA yet again which plaintiff requested a copy of the updated report be sent to him.

52. On or about September 8, 2022 Plaintiff received a copy of the updated consumer credit file/report from LexisNexis which evidence the exact same information disputed therefore LexisNexis provided false, untrue, inaccurate, incomplete, incorrect and misleading information regarding the removal of information as the updated file/report did not show that any accounts disputed was removed as alleged by LexisNexis (See…Exhibit E).

53. LexisNexis violated 1681i(a)(6)(A) & (B) and 1681i(f)(3)(B) by failing to immediately reconvey to the plaintiff any written notices directly from Experian that they received under paragraph (6), (7), or (8) of subsection (a) of 1681i within 5 business days of the completion of the reinvestigation containing, "a statement that the reinvestigation is completed; a consumer report that is based upon the consumer's file as that file is revised as a result of the

reinvestigation; a notice that, if requested by the consumer, if reasonably available; a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the information; and a notice that the consumer has the right to request under subsection (d) that the consumer reporting agency furnish notifications under that subsection.

54. None of the responses from LexisNexis evidence any results received directly from Experian nor any notices directly from Experian related to plaintiff's disputes. LexisNexis reinvestigation results clearly evidence that the accounts disputed have been "removed" when as evidenced by Exhibit E, LexisNexis is still reporting the accounts claimed to have been removed as a result of plaintiff's disputes (See…Exhibit E).

55. All Credit Bureau defendants are well aware of plaintiff's consumer rights under the state of South Carolina, the "SCCPC" as evidenced by the disclosures included in their results of plaintiff's disputes therefore any violations of this statute is knowing, willful, negligent, intentional, and done with the willful intent to injure the plaintiff.

56. Defendant Equifax as a result of their reinvestigations alleged that the information reported by PENFED has been verified as accurate but correcting the "date of first delinquency" which is still inaccurate as the date of last payment is showing 2-1-2017 therefore date of delinquency cannot be the date of last payment. Equifax also deleted the account Reported by REV as a result of their investigation thereby admitting to the inaccuracy, and or incompleteness of the accounts reported. Equifax did not provide plaintiff with written results 5 days from completion of the September 2021 reinvestigation until plaintiff sent out a notice dated November 2, 2021 notifying Equifax that he did not receive the results (See…Exhibit A, which is hereby incorporated by reference in its entirety) in violation of 15

U.S.C. 1681i(6)(A) which they later sent out by first class mail which plaintiff received after the 5 days required (See…Exhibit B, copy if investigation and updated report, which is hereby incorporated by reference in its entirety).

57. Defendant Experian as a result of their reinvestigations alleged that the information reported by PENFED and REV has been verified as accurate and at the same time stating that information has been updated thereby admitting that the previous information reported was untrue, inaccurate, incorrect, incomplete, misleading, and or false as evidenced by the updated information reported.

58. Experian did not provide plaintiff with written results 5 days from completion of the September 2021 dispute nor a copy of his updated report by mail as requested even after receiving plaintiff's notice dated November 2, 2021 notifying Experian that he did not receive the results by mail (See…Exhibit A, which is hereby incorporated by reference in its entirety) in violation of 15 U.S.C. 1681i(6)(A).

59. Based on the disputes by plaintiff (See…Exhibit A, which is hereby incorporated by reference in its entirety) one can clearly see that even when Plaintiff pointed out the specific areas of the account information reported to be reinvestigated, defendants repeatedly ignore all signs and will continue to not do a reasonable reinvestigation otherwise all account information reported would have been reported the same across the board to all credit reporting agencies as it is clear that the information reported is inaccurate, incomplete, incorrect, misleading and not being reported with maximum possible accuracy (100% accuracy) to third parties.

60. The defendant bureaus are required under 15 U.S.C. § 1681e(b) when preparing a consumer report must follow reasonable procedures to assure maximum possible accuracy of the

information concerning and related to the plaintiff and the accounts. Those procedures are adopted by the bureaus and embedded in the established Metro 2 Platform as a standard for reporting accounts to the bureaus and was created by the Consumer Data Industry Association (CDIA) which the credit bureaus have adopted as their procedures to assure maximum possible accuracy in the preparation of the consumer report that is published to third parties.

61. On or about June 2018, Plaintiff disputed credit card account, line of credit account and Auto account information reported by PENFED published by the bureaus allegedly belonging to plaintiff with defendant Trans Union. (See…Exhibit A, which is hereby incorporated by reference in its entirety).

62. Trans Union received Plaintiff's dispute and request for reinvestigation on June 11, 2018.

63. As a result of another online dispute by plaintiff which triggered a reinvestigation by Trans Union on or about 6-4-2019, the PENFED accounts were deleted without any information nor explanation of why the accounts was deleted (See…Exhibit B, copy of investigation from TransUnion), which is hereby incorporated by reference in its entirety.

64. All data Furnishers violated 1681s-2(b)(1)(B) using a standardized system for receiving and processing consumer disputes from the CRAs as the Furnishers understood the consumer's disputes because of this system and the Furnishers ignored the information in the reporting system and "simply regurgitated the same information it had previously reported to" the CRAs. By using a standardized procedure that ultimately repeated back to the ACDV system the same information the Furnishers previously reported to the CRAs.

65. The Furnisher Defendants repeatedly violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) when they did not mark Plaintiff's credit file as disputed. The Furnishers failed consistently update

its reporting to the CRAs, and failed to "permanently and lawfully correct its own internal records to prevent re-reporting of the inaccurate and incomplete information for the disputed accounts.  There is are numerous discrepancies in the reporting across all the CRA's as each credit reporting is inconsistent with the other CRA's, for example, Experian and LexisNexis are reporting the PenFed Auto and Line of Credit accounts with Zero balances but Trans Union and Equifax have been reporting the accounts with a balance. The Furnishers have failed to report an accurate investigative/reinvestigation outcome to the CRA's that notified the parties of plaintiff's disputes.

66. The Defendant Bureaus have been repeatedly producing plaintiff's consumer reports to third parties containing information solely as to transactions or experiences between the consumer and the person making the report which the FCRA prescribes are to be excluded from the consumer report in violation of **15 U.S. Code § 1681a(d)(2)(A)(i),** such conduct has caused plaintiff damages as presented in this entire complaint.

67. Between December 27, 2021 and April 16, 2022, upon reaching out to PENFED directly which include a call to PenFed, plaintiff discovered the defendants did not do a reasonable reinvestigation, if they did do a reasonable investigation of their own internal records, they would have found that accounts was sold, assigned, and transferred to third parties as PENFED intended not to furnish accurate, complete, correct information related to the current status of the accounts to the reporting agencies because their internal records prior to about January 22, 2018, show that  PENFED knew that the credit card account being reported and published on plaintiff's consumer reports (See…Exhibit A, which is hereby incorporated by reference in its entirety) allegedly belonging to the Plaintiff was sold and transferred to United Holding Group "UHG" (See…Exhibit C (letter from PENFED

evidencing these accounts was sold, assigned and/or transferred), which is hereby incorporated by reference in its entirety) and PENFED knew the line of credit account being reported and published on plaintiff's consumer reports (See…Exhibit A, which is hereby incorporated by reference in its entirety) allegedly belonging to the Plaintiff was assigned and transferred to National Credit Corporation (See…Exhibit C, which is hereby incorporated by reference in its entirety) and all were charged off/written off therefore no accounts nor debts existed as an asset of PENFED that could have been validated and/or verified by PENFED.

68. After January 22, 2018, the date of sale, assignment and or transfer of the credit card and line of credit accounts, PenFed to be in compliance with the FCRA and Metro 2 reporting standard for maximum possible accuracy, they are required to report the accounts as sold, transferred, charged-off with a zero balance and zero amount past due to be accurate, complete, true, correct and not misleading regardless of whether the third party is reporting it or not. Courts have determined the following, (See…Exhibit F2 which is hereby incorporated by reference in its entirety). *Also See…Morris v. Experian Info. Sols.,* **478 F. Supp. 3d at 769 (D. Minn. 2020)** ("A report would not be misleading if it reported that "the creditor closed the account and sold the debt to someone else.") **(emphasis added); See...Burrow v. Equifax Info. Servs., LLC, No. 1:18-cv-05134-JPB-LTW, 2019 WL 5417147, at \*8–9 (N.D. Ga. Aug. 5, 2019)** ("Credit reports were accurate in part because they reported that the disputed accounts had been sold to another entity")**; See…** *cf. Meeks v. Equifax Info. Servs., LLC,* **2019 WL 1856411, at \*5–6 (N.D. Ga. Mar. 4, 2019)** ("holding that where an "account is clearly reported as closed, charged-off, purchased by another lender, and with a $ 0 balance," "[t]he mere presence of historical monthly payment terms neither causes confusion

nor creates an inaccuracy."**), adopted by, 2019 WL 1856412 (N.D. Ga. Apr. 23, 2019).;**
***See…Rodriguez v. Trans Union LLC,* No. 1:19-CV-379-LY (W.D. Tex. Oct. 28,**
**2019)**("that, when the Santander account is viewed as a whole, it is undeniable that there
exists no ongoing obligation for payment. The Santander account is clearly reported as
closed, charged-off, purchased by another lender, and with a $ 0 balance. The mere presence
of historical monthly payment terms neither causes confusion nor creates an inaccuracy").

69. **Appendix A** to **Furnisher Rule Part 660**" require PenFed and any other furnisher to report
"Any transfer of an account (e.g., by sale or assignment for collection) to a third party as part
of their policies and procedures they maintain.

70. PENFED was well aware that their reporting duties under the FCRA, that they are required to
report sold and transferred accounts as sold, transferred, with a zero balance and zero amount
owed as they are currently doing with another member of their bank whose debt was sold and
transferred to a third party. (See…Exhibit F4 which is hereby incorporated by reference in its
entirety)

71. PENFED knew that defendant was not liable to pay them anything after the accounts was
sold, assigned and/or transferred because as evidenced by their own records and their letter
dated 4-11-2022, they direct the plaintiff to United Holdings Group and National Credit
Corporation to make arrangements regarding these alleged accounts. (See…Exhibit C, which
is hereby incorporated by reference in its entirety)

72. PENFED sold to investors and securitized plaintiff's auto loan and have pooled the auto loan
account with other auto loans and trading it on the secondary market. Therefore, PENFED
has been hired as the servicer of the pool associated with plaintiff's auto account.

73. Under the law, the Federal Reserve Act, Plaintiff's "Promissory Note" is the "Collateral

Security" for the loan of credit he received and when deposited with the Local Federal Reserve agent, Federal Reserve Notes are issued to the bank, in this case PenFed, therefore PenFed has been paid on both the Auto Loan and Line of Credit Accounts (See…Exhibit F3 which is hereby incorporated by reference in its entirety). The original wet ink signature notes are no longer in PenFeds possession as a result of them depositing the notes with the Local Federal Reserve Agent in exchange for Federal Reserve notes in the amount of the notes which is required to request payment from Plaintiff. Since the notes have been paid by the receipt of the Federal Reserve Notes from the Federal Reserve, there is no original contracts in PenFed's possession holding plaintiff liable for any alleged debts on these accounts as there is a positive balance on these accounts which is evidence that there is no money owed on the Account. It appears that in order for a debt to be owed, due and remaining, all accounting ledger must evidence a negative balance which evidences money owed. A positive balance, as is for all accounts with banks which evidences a positive number is evidence that there are funds in the account and nothing is owed.

74. PENFED has produced no evidence that any remaining alleged debt balances are owed nor legally established debts as of its current status.

75. PENDFED has a continuous policy and procedure when making loans to its members which they do not disclose to its members that they are prohibited from lending their credit and their depositor's credit to other members such as the Plaintiff as plaintiff was lent such credit and charged interest on these credits that they were prohibited by law from lending which is a unfair and deceptive act or practice.

76. PENFED is operating as a Servicer on behalf of PENFED's other associated agency, Auto Receivables Funding, LLC, operating as a for profit business and trading with the SEC

where the Indenture Trustee manages all their securities as it appears that this agency is the agency filing 1099's with the IRS on its charged off/written off debts which include the plaintiff's auto loan account.

77. The reporting and publishing of PENFED's inaccurate, incomplete, incorrect accounts and information are misleading to lenders because it gives the false impression that a debt and/or account balance is owed or still owed to PENFED, that the accounts are paid or not paid as the information reported does not match what the other reporting agencies are reporting or were reporting which negatively affects plaintiff's credit score which lenders look at to approve or deny credit to a consumer and is also confusing to a lender who sees a balance on one consumer report and a zero balance on another consumer report.

78. PENFED has knowingly, willfully, negligently concealed information from the plaintiff and reported information they knew was inaccurate, incomplete, incorrect and false in an attempt to continue injuring the plaintiff expressing their ill will towards the plaintiff.

79. REV has written off the alleged debts with the IRS and cancelled the debt as they have remained silent and have failed to respond directly to plaintiff's specific request verifying such facts evidenced by plaintiff's request (See...Exhibit A, which is hereby incorporated by reference in its entirety) nor have they tried to collect the debt after the charge-off and write off as the IRS only requires a 1099-C for cancellation of debts $600 and over.

80. The FCRA requires Trans Union, Experian, LexisNexis and Equifax to review all information reported on a consumer report to be reported with maximum possible accuracy of the information being reported about the plaintiff and the accounts. Their policies require PENFED and REV to report accurate, complete, and correct information related to the current status of the accounts which include but is not limited to, balance information, open

date, date of first delinquency, whether an account is sold which should be reported with a zero balance if sold or that an account has been transferred to external collections which should also be reported with a zero balance if transferred to a third party for collections to be in compliance with Metro 2 reporting standards for maximum possible accuracy.

81. As a Standard, Accounts are required to be reported to the credit reporting agencies in Metro 2 Format which the bureaus have all adopted. The reported accounts are considered inaccurate, incomplete, incorrect if not in compliance with Metro 2 Standard Format. (See... https://www.experian.com/business/solutions/regulatory-compliance/metro-2-compliance and https://www.cdiaonline.org/resources/furnishers-of-data-overview/metro2-information/ ) Plaintiff states that the accounts PENFED and REV are reporting are in Metro 2 Format evidenced by the bureaus policies for furnishing information to them to be included in a consumer report as referenced above therefore the defendants which are data furnishers know what is required when reporting the accounts to assure that the accounts are being reported correctly, completely and accurately for maximum accuracy under the proper segments representing the current status of the accounts.

82. The CDIA provides the policies known to the bureaus that the furnishers must follow which has been adopted into Metro 2.

83. On or about April 22, 2022 plaintiff received a copy of his consumer credit report that was updated by the bureaus and data furnishers with accounts and information reported and published in April 2022 which identifies multiple inaccuracies and in consistencies such as account balance, account status, High Credit, Credit Limit, Payment Status, Last Report Date, Comments such as the consumer requested the line of credit be closed when he didn't, Date Last Active, Date of Last Payment, Past Due Amount, Account Type, Date Opened and

Monthly Terms (See…Exhibit E which is hereby incorporated by reference in its entirety).

84. On or about May 2022, Plaintiff sent out another request for reinvestigation via U.S.P.S. Priority Mail to Equifax and U.S.P.S. Priority Express Mail to Experian requesting another reinvestigation of every piece of information that was allegedly being reported in regards to the accounts reported by PENFED and REV to be published. (See…Exhibit A, which is hereby incorporated by reference in its entirety)

85. Equifax received Plaintiff's dispute and request for reinvestigation on or about May 15, 2022 via U.S.P.S. Priority Mail.

86. Experian received Plaintiff's dispute and request for reinvestigation on or about May 4, 2022 via U.S.P.S. Priority Express Mail signature required.

87. Plaintiff is a consumer who is the victim of inaccurate false reporting by Defendants who have failed to provide plaintiff with written results of the reinvestigation of his dispute related to the accuracy of his consumer report within thirty days after receiving a notice of inaccuracy from plaintiff in the form of a dispute either electronically or written.

88. At all times, plaintiff states and claims that defendants acts were willful, grossly negligent, knowing, done with "reckless disregard" of their obligations under the statutes, codes and laws presented in this complaint therefore have clearly demonstrate reckless disregard of its statutory obligations by repeatedly ignoring warning signs (plaintiff's numerous disputes and requests for reinvestigation) that it is violating the law, by repeatedly refusing to do a proper and reasonable investigation and by failing to take corrective action to prevent future violations in a reasonable amount of time. See *Am. Arms Int'l v. Herbert,* **563 F.3d 78, 85 (4th Cir. 2009)** (applying the Safeco "willfulness" standard to the Gun Control Act of 1968, 18 U.S.C. § 921 et seq., and concluding that "repeated failure to comply with known

regulations can move . . . conduct from inadvertent neglect into reckless or deliberate disregard (and thus willfulness)").

89. All Defendant Bureaus failed to follow **SECTION 37-20-170(A), (B)(1), (B)(4)** by (1) Failing to provide the plaintiff with "sufficient evidence that the information reported is true and accurate information as it relates to the Plaintiff, and record the current status of the disputed information"; and by (2) Failed to provide plaintiff with "the basis for the denial". These requirements are not regulated under the enumerated portions of the FCRA and are state only requirements therefore are not preempted by the FCRA.

90. Defendants intentionally allowed and continued to report disputed inaccurate consumer records which as the CRA transmits via an automatic credit dispute verification (ACDV) form to the furnisher of the contested information reported to plaintiffs consumer credit report by knowingly, willfully, recklessly and negligently failing to provide the basis for the denial of the disputed accounts and the information being reported, failed to provide the description or the procedure used to determine the accuracy and completeness of the information being reported supported by sufficient evidence that the information that is being reported is true and accurate information as it relates to the consumer,

91. All conduct specifically prohibited or disclosures specifically required by the FCRA is "material." ***Mark v. J. C. Christensen & Assoc., Inc.,*** **09cv100, 2009 WL 2407700, 2009 U.S.Dist. LEXIS 67724, \*11 (D.Minn. Aug. 4, 2009); *Warren v. Sessoms & Rogers, P.A.,* 676 F.3d 365, 374 (4th Cir. 2012)** (violations of §1692e(11) are always "material"). For example, providing a compliant §1692g notice is specifically required and should always be "material." ***Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317 (7th Cir. 2016)**. Similarly, informing a credit bureau that a debt is disputed is specifically required and

material. *Evans v. Portfolio Recovery Associates, LLC*, **889 F.3d 337 (7th Cir. 2018)**.

92. Here, Defendant PENFED, reported the alleged debt on the Plaintiff's credit report, after knowing of the Plaintiff's disputes disputing the accounts including the balances.

93. The defendants acted maliciously, with ill will, recklessly or wantonly, or with conscious indifference to the plaintiffs rights in violation of 15 U.S.C. § 1681h(e) See...*Beattie v. Nations Credit Fin. Servs. Corp.,* **69 Fed. Appx. 585, 590-91 (4th Cir. 2003)** which because of their actions allows for state claims to be asserted and proceed.

94. Defendant Bureaus have failed to provide plaintiff with sufficient evidence that the information is true and accurate information as it relates to that consumer in violation of 37-20-170(A) of the SCCPC.

95. Defendant Bureaus have failed to provide plaintiff with the basis for the denial, and or provide the Plaintiff with a description of the procedure used to determine the accuracy and completeness of the information, and sufficient evidence that the information is true and accurate information as it relates to plaintiff within thirty days after receiving a notice of inaccuracy/notice of dispute from the plaintiff in violation of 37-20-170(B) et seq. and FCRA 1681 et seq.

96. Notwithstanding Plaintiff's efforts, Defendants continue to publish and disseminate such inaccurate, incomplete, incorrect, misleading, false information to other third parties, persons, entities and credit grantors, as evidenced by the inquiries on the Plaintiff's credit report in the form of hard and soft pulls as evidence by Exhibits B and E which is hereby incorporated by reference in their entirety.

97. As a result of the Defendants failure to comply with the FCRA, the SCCPC, U.C.C. 9-210 and 36-9-210, and the erroneous derogatory information, Plaintiff has suffered significant

damages, Plaintiff suffered concrete harm in one or more of the following forms: a significant drop in his credit score, loss of credit, loss of the ability to purchase and benefit from credit, a chilling effect on credit applications, mental and emotional distress and pain, anguish, humiliation, loss of happiness, interest in outside activities, loss of sleep, headaches, sensitive stomach and embarrassment caused by the inability to obtain financing for everyday expenses, bank account denials, denial of credit and credit card applications, higher interest rates on loans and credit cards that would otherwise be affordable and other damages that may be ascertained at a later date.

98. Plaintiff has tried to settle these matters before exercising his right to a remedy in a court of law by sending Notices of Intent to all or some of defendants between March 2021 and June 2022 via mail and email (See…Exhibits A and D, which is hereby incorporated by reference in its entirety) only to be ignored by defendants therefore plaintiff is exercising his right to litigate these matters before a court of law and before a jury.

99. On or about Oct. 17, 2022, plaintiff saw a post by CNBC (See…https://www.cnbc.com/2022/10/17/transunion-equifax-experian-may-have-violated-credit-reporting-rules-rep-jim-clyburn-says.html) reporting that the Democrats want the CFPB to investigate Experian, Equifax, and Trans Union for allegedly failing to address consumer disputes during the pandemic and that these reporting agencies did not do an investigation and that the CFPB have cited Data furnishers such as PENFED in this case for failing to conduct a sufficient investigation which further supports plaintiffs statements and claims in his complaint against these agencies/defendants for doing the exact same thing they are now being investigated for.

## **RESERVATIONS OF RIGHTS**

100. Plaintiffs hereby reserves the right to request leave of court at a later date to amend his
Complaint to add more claims and enjoin defendants relevant to the case.

101. Plaintiff reserves the right to add additional damages under this section throughout the
litigation as an addition to the damages presented herein as part of any and all judgments.

### FIRST CAUSE OF ACTION
### (Willful and Negligent Violation of the FCRA 15 U.S.C. § 1681 et seq. as to TransUnion, Experian, Equifax and LexisNexis)

102. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though
fully stated herein with the same force and effect as if the same were set forth at length
herein;

103. This is an action for willful and negligent violation of the Fair Credit Reporting Act
U.S.C. § 1681 et seq.;

104. Trans Union, Experian, Equifax and LexisNexis violated 15 U.S.C. §1681i by failing to
delete inaccurate information in the Plaintiff's credit file after receiving actual notices of
such inaccuracies; by failing to conduct a reasonable and lawful investigation and/or
reinvestigation; by failing to investigate all the information PENFED and REV Federal
Credit Union was reporting and publishing; by failing to maintain reasonable procedures with
which to filter and verify disputed information in the Plaintiff's credit file; and by relying
upon automated dispute verification from a source they have reason to know is unreliable;

105. Defendants Trans Union, Experian, LexisNexis and Equifax violated 15 U.S.C. §
1681e(b) by failing to establish or to follow reasonable procedures to assure maximum
possible accuracy in the preparation of the credit report and credit files they publish and
maintain concerning the Plaintiff;

106. Defendants Trans Union, Experian, Equifax and LexisNexis have willfully and recklessly
failed to comply with the FCRA. The failure of Defendants to comply with the Act include
but are not necessarily limited to the following:

   a) The failure to follow reasonable procedures to assure the maximum possible accuracy
   of the information reported;

b) The failure to correct erroneous personal information regarding the Plaintiff after a reasonable request by the Plaintiff;

c) The failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by the Plaintiff;

d) The failure to promptly and adequately investigate information which Defendants had notice was inaccurate;

e) The continual placement of inaccurate information into the credit report of the Plaintiff after being advised by the Plaintiff that the information was inaccurate and disputed;

f) The failure to continuously report and not indicate in Plaintiff's credit report that the information being reported by REVFCU and PenFed is disputed by the plaintiff violation of 1681c(f) et seq. as it relates to the accuracy;

g) The failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised defendants to delete;

h) The failure to take adequate steps to verify information the defendants had reason to believe was inaccurate before including it in the credit report of the consumer;

i) The failure to provide the exact procedure used to allegedly verify the alleged accounts and information disputed or requested for reinvestigation;

j) The Failure to insure and exercise their grave responsibilities with fairness, and impartiality that is fair and equitable to the plaintiff, the consumer 1681(b) et seq.;

k) The Inaccurate Reporting of accounts without the written consent of plaintiff and without being properly verified in violation of plaintiff's right;

l) Failed to notify plaintiff that an account and information that was deleted was reinserted.

m) Failed to have reasonable policies and procedures that prevent information that was deleted from being re-inserted on a consumer report.

107. LEXISNEXIS violated plaintiff's right to privacy and the FCRA by reporting in a consumer report and disseminating to third parties a bankruptcy when plaintiff has requested a security freeze and have not authorized such disclosure of information to any third party nor to be reported on his consumer report.

108. As a result of the wrongful conduct, action and inaction of Defendants, and the erroneous derogatory information reported, Plaintiff has suffered significant damages, concrete harm in one or more of the following forms which include but are not limited to: a diminished credit

score, loss of credit, loss of the ability to purchase and benefit from credit, a chilling effect on credit applications, and the mental and emotional distress and pain, anguish, humiliation and embarrassment caused by the inability to obtain financing for everyday expenses, bank account denials, denials of credit and credit card applications, higher interest rates on loans and credit cards that would otherwise be affordable and other damages that may be ascertained at a later date;

109. The wrongful conduct, action and/or inaction of Defendants was willful, negligent, and reckless done with the intent to injure the plaintiff rendering Defendants separately liable for actual or statutory damages, compensatory and/or punitive damages in an amount to be determined by a Jury pursuant to 15 U.S.C. § 1681(n) to be calculated at a Ratio of 98:1 or higher" as determined in **Daugherty v. Ocwen Loan Servicing, LLC, 701 F. App'x 246 (4th Cir. 2017), also see… Younger v. Experian Info. Sols., Inc., No. 2:15-cv-00952, 2019 WL 1296256, at \*13 (N.D. Ala. Mar. 21, 2019)** to punish and deter the defendants; A higher ratio is should be considered against each individually separate defendant to deter defendants in this matter because it is clear that even the 98:1 ratio rendered in the cases above is not enough to deter the defendants from violating consumer's rights as the defendants continue to repeat the same violations against other consumers as a result of defendants' actions and/or inactions as evidenced by the above cases and the many cases filed against the defendants throughout the several states continuously damaging consumers since the above cases;

110. Plaintiff's claims are within 2 years from the date of discovery of the violation that is the basis for such liability (knowing that PENFED accounts was sold, assigned and/or transferred) and within 5 years after the date on which the violation that is the basis for such liability occurs pursuant to 15 U.S.C. § 1681p et seq. as a result of a dispute triggering a duty to investigate and discovering defendant's investigations was unreasonable and improper regarding all current and previous disputes and reinvestigations;

111. The wrongful conduct, action and/or inaction of Defendants was knowing, willful,

negligent, reckless, done with the intent to injure the plaintiff in one or more forms or fashion entitling the Plaintiff to damages actual and/or statutory damages of $1,000 per violation each month as prescribed under 15 U.S.C. § 1681n and 15 U.S.C. § 1681o from the past 5 years to be calculated at a later date;

112. The Plaintiff is entitled to recover reasonable costs and attorney's fees from defendant's in an amount to be determined by the Jury pursuant to 15 U.S.C. § 1681n and 1681o if applicable;

   **WHEREFORE**, Plaintiff, Nelson L. Bruce, an individual, demands judgement in his favor against Defendants, for damages together with, if applicable, attorney's fees and Court costs pursuant to 15 U.S.C. § 1681n;

### SECOND CAUSE OF ACTION
**(Willful and Negligent Violation of the FCRA 15 U.S.C. § 1681 et seq. as to PENFED, LEXISNEXIS AND EXPERIAN as Data Furnishers)**

113. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

114. This is an action for willful and negligent violation of the Fair Credit Reporting Act U.S.C. § 1681 *et seq*.;

115. Pursuant to the Act, all persons who furnished information to reporting agencies must participate in re-investigations conducted by the agencies when consumers dispute the accuracy and completeness of information contained in a consumer credit report;

116. Pursuant to the Act, a furnisher of disputed information is notified by the reporting agency when the agency receives a notice of dispute from a consumer such as the Plaintiff. The furnisher must then conduct a timely investigation/reinvestigation of the disputed information and review all relevant information provided by the agency;

117. The results of the investigation must be reported to the agency and, if the investigation reveals that the original information is incomplete or inaccurate, the information from a

furnisher such as the Defendant must be reported to other agencies which supplied such information;

118. Defendants failed to establish reasonable policies and procedures concerning the accuracy and integrity of furnished information as required under 16 C.F.R. § 660.3 et seq.

119. The Defendants violated 15 U.S.C. § 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate the dispute of the Plaintiff; by failing to review or consider all relevant information regarding same; and by failing to correctly report results of an accurate investigation to the credit reporting agencies. By continuing to publish to Trans Union, Experian, LexisNexis and Equifax the inaccurate, incomplete, unverified information regarding the alleged accounts; and by failing report accurate information which is identified in their own records to prevent the re-reporting of inaccurate misleading information;

120. Specifically, the Defendant continued to report these accounts on the Plaintiff's consumer Report after being notified of his dispute/request for reinvestigation regarding the accounts and all aspects of the information and balances being reported or not reported and published to third parties;

121. Additionally, the Defendants continued to report accounts which Defendants knew or has reasonable cause to believe that the information is inaccurate as it is clear that by their own words, their internal records document the accounts was sold, assigned and/or transferred to a debt buyer and/or external collections in this case United Holding Group and National Credit Corporation. Defendant continuously failed to not mark the account as sold, transferred, disputed, failed to provide accurate information regarding the entire accounts reported and published to the bureaus which the bureaus published to third parties;

122. A reasonable investigation would require a furnisher such as Defendant to consider and evaluate a specific dispute by the consumer, along with all other facts, evidence and materials provided by the agency to the furnisher;

123. After receiving notification from Trans Union, Equifax and Experian about Plaintiff's disputed accounts, PENFED did not contact any third parties other than the Defendant credit

reporting agencies when investigating Plaintiff's dispute. Further, PENFED allegedly verified the Plaintiff's accounts that are no longer an asset of the PENFED, no longer existed, no longer had authority over as a result of a sale, assignment and/or transfer to Trans Union, Equifax and Experian in response to each dispute it received from the credit bureaus;

124. As a result of the wrongful conduct, action and inaction of Defendants, and the erroneous derogatory information reported, Plaintiff has suffered significant damages, concrete harm in one or more of the following forms which include but are not limited to: a diminished credit score, loss of credit, loss of the ability to purchase and benefit from credit, a chilling effect on credit applications, and the mental and emotional distress and pain, anguish, humiliation and embarrassment caused by the inability to obtain financing for everyday expenses, bank account denials, denials of credit and credit card applications, higher interest rates on loans and credit cards that would otherwise be affordable and other damages that may be ascertained at a later date;

125. The wrongful conduct, action and/or inaction of Defendants was willful, negligent, and reckless done with the intent to injure the plaintiff rendering Defendant liable for actual or statutory damages, compensatory and/or punitive damages in an amount to be determined by a Jury pursuant to 15 U.S.C. § 1681(n) to be calculated at a Ratio of 80:1 or higher" as determined in **Daugherty v. Ocwen Loan Servicing, LLC, 701 F. App'x 246 (4th Cir. 2017), also see... Younger v. Experian Info. Sols., Inc., No. 2:15-cv-00952, 2019 WL 1296256, at \*13 (N.D. Ala. Mar. 21, 2019)** to punish and deter the defendant;

126. Plaintiff's claims are within 2 years from the date of discovery of the violation that is the basis for such liability and within 5 years after the date on which the violation that is the basis for such liability occurs pursuant to 15 U.S.C. § 1681p et seq. as a result of a dispute triggering a duty to investigate and discovering defendant's investigations was unreasonable and improper;

127. The wrongful conduct, action and/or inaction of Defendants was knowing, willful, negligent, reckless, done with the intent to injure the plaintiff in one or more forms or fashion

entitling the Plaintiff to damages actual and/or statutory damages of $1,000 per violation each month as prescribed under 15 U.S.C. § 1681n and 15 U.S.C. § 1681o from the past 5 years to be calculated at a later date;

128. The Plaintiff is entitled to recover reasonable costs and attorney's fees from defendant's in an amount to be determined by the Jury pursuant to 15 U.S.C. § 1681n and 1681o if applicable;

   **WHEREFORE**, Plaintiff, Nelson L. Bruce, an individual, demands judgement in his favor against Defendants, for damages together with, if applicable, attorney's fees and Court costs pursuant to 15 U.S.C. § 1681n.

## THIRD CAUSE OF ACTION
### (COMMON LAW DEFAMATION ("LIBEL") AS TO ALL DEFENDANTS)

129. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein;

130. The defendants are guilty of defamation per se, in that defendants intentionally reported and/or allowed third parties to submit inaccurate information which was published and sold to third parties evidenced by plaintiff's inquiries showing on his consumer report (See…Exhibit B, which is hereby incorporated by reference in its entirety) that showed account information that they knew or should have known was false, misleading, inaccurate, unverified, and/or the correct nature of the accounts as it relates to the plaintiff and his rights. Defendants by reporting the accounts inaccurately, unverified and/or without the written consent of the plaintiff was intended to harm and defame plaintiff's reputation when published to third parties who request for reports to qualify or approve Plaintiff based off of his credit and credit worthiness;

131. Said false representations made by PENFED and published by Trans Union, Experian

LexisNexis and Equifax were not privileged and were not consented to by Plaintiff;

132. Defamation of Plaintiff was willful, done with malice, willful intent to injure the plaintiff;

133. Defendants did not have any reasonable basis to believe that the Plaintiff was responsible for the account reported to Trans Union, Experian, LexisNexis and Equifax nor that there should be a balance reported. Defendants also had substantial evidence by which to have verified that the Plaintiff's debt was sold, assigned and/or transferred therefore no longer due or owing to the person reporting the accounts;

134. Further, PENFED cannot plead ignorance, because it knew, evidenced by its own internal records that Plaintiff's accounts were sold and who they were sold to, assigned and/or transferred to external collections and what external collection it was assigned and/or transferred to;

135. As a result of the wrongful conduct, action and inaction of Defendants, and the erroneous derogatory information reported, Plaintiff has suffered significant damages, concrete harm in one or more of the following forms which include but are not limited to: a diminished credit score, loss of credit, loss of the ability to purchase and benefit from credit, a chilling effect on credit applications, and the mental and emotional distress and pain, anguish, humiliation and embarrassment caused by the inability to obtain financing for everyday expenses, bank account denials, denials of credit and credit card applications, higher interest rates on loans and credit cards that would otherwise be affordable and other damages that may be ascertained at a later date;

136. Defendants are each separately and individually liable to plaintiff for damages caused by their actions and this court should award plaintiff an amount equal to or greater than $250,000 as courts have frequently sustain emotional distress awards in the range of $250,000 in defamation cases. *See, e.g., Stamathis v. Flying J, Inc.,* **389 F.3d 429, 439 (4th Cir. 2004)** (upholding an award of $240,000 for "insult, pain, and mental suffering"); *Simon*

*v. Shearson Lehman Bros., Inc.,* 895 F.2d 1304, 1319-20 (11th Cir. 1990) (upholding an award of $250,000, given that the slander caused "an impairment of [the plaintiffs] reputation, personal humiliation, and mental anguish and suffering");

137. The conduct of Defendants was a direct and proximate cause, as well as a substantial factor, in bringing about the injuries, damages and harm to Plaintiff that are outlined more fully above and, as a result, Defendants are liable to Plaintiff;

**Wherefore,** Plaintiff seeks judgment in his favor against Defendants for compensatory and punitive damages in such sums as the jury may assess, plus interest and costs along with such other and further relief as may be necessary, just and proper.

### FOURTH CAUSE OF ACTION
### (KNOWING, WILLFUL AND NEGLIGENT VIOLATIONS OF THE SCCPC "37-20-170 ET SEQ. AND 37-20-200 ET SEQ." AS TO TRANS UNION, EQUIFAX, EXPERIAN, AND LEXISNEXIS)

138. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein;

139. At all times, Defendants knowingly, willfully and intentionally reported and/or allowed to be reported, inaccurate information, acted with malice and the willful intent to injure the plaintiff, the consumer as they failed to provide the basis for their denial of plaintiff's notice of dispute/request for reinvestigation, failed to provide a description of the procedure used by the consumer reporting agency to determine the accuracy and completeness of the information as requested by the consumer, and failed to provide to the consumer, sufficient evidence that the information being reported is true and 100% accurate information as it relates to the consumer and his rights which they voluntarily signed up for when they became a consumer reporting agency or person furnishing information to credit bureaus;

140. Defendants failed to correct, delete information found to be inaccurate, unauthorized,

unverified, and in a reasonable time instead reinserted the information and failed to reasonably and properly reinvestigate Plaintiff's disputes;

141. Defendants failed to promptly reinvestigate the truthfulness and accuracy of the account information being reported and failed to provide plaintiff with the basis for the denial of his dispute, provide the consumer with a description of the procedure used to determine the accuracy and completeness of the information, and sufficient evidence that the information is true and accurate information as it relates to plaintiff within thirty days after receiving a notice of inaccuracy/notice of dispute/request to reinvestigate from the plaintiff in violation of SC Consumer Protection Code **SECTION 37-20-170 (A) & (B) (1) and (4);**

142. As a result of Defendants violations, Defendants are each separately and individually liable to Plaintiff's for actual damages, and or statutory damages as provided under 37-20-170(D) & (E), and if applicable, 37-20-200(A) & (B) along with if applicable, attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law within 3 years from the date of discovery;

143. The conduct of Defendants was a direct and proximate cause, as well as a substantial factor, in bringing about the injuries, damages and harm to Plaintiff that are outlined in this amended complaint;

144. As a result of the wrongful conduct, action and inaction of Defendants, and the erroneous derogatory information reported, Plaintiff has suffered significant damages, concrete harm in one or more of the following forms which include but are not limited to: a diminished credit score, loss of credit, loss of the ability to purchase and benefit from credit, a chilling effect on credit applications, and the mental and emotional distress and pain, anguish, humiliation and embarrassment caused by the inability to obtain financing for everyday expenses, bank account denials, denials of credit and credit card applications, higher interest rates on loans

and credit cards that would otherwise be affordable and other damages that may be ascertained at a later date;

### FIFTH CAUSE OF ACTION
### (KNOWING, WILLFUL AND NEGLIGENT VIOLATIONS OF U.C.C. 9-210 ET SEQ. and 36-9-210 ET SEQ. AS TO DEFENDANT "PENFED")

145. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein;

146. Defendant has a duty to comply with plaintiff's 4-4-2022 request for an authenticated (See...Exhibit A, which is hereby incorporated by reference in its entirety) accounting related to the alleged outstanding debt and has failed to comply as required under U.C.C. 9-210 and 9-36-210 as of the date of this filing;

147. As a result of Defendants conduct and failure to comply, Defendant is liable to Plaintiff for damages, and statutory damages as provided under U.C.C. 9-625 ET SEQ. and 36-9-625 ET SEQ., which include but is not limited to sections "b", "c" and "f" and any other such further relief, as may be permitted by law;

148. The conduct of Defendant was a direct and proximate cause, as well as a substantial factor, in bringing about the injuries, damages and harm to Plaintiff that are outlined more fully above;

149. As a result of the wrongful conduct, action and inaction of Defendants, and the erroneous derogatory information reported, Plaintiff has suffered significant damages, concrete harm in one or more of the following forms which include but are not limited to: a diminished credit score, loss of credit, loss of the ability to purchase and benefit from credit, a chilling effect on credit applications, and the mental and emotional distress and pain, anguish, humiliation and embarrassment caused by the inability to obtain financing for everyday expenses, bank account denials, denials of credit and credit card applications, higher interest rates on loans and credit cards that would otherwise be affordable and other damages that may be

ascertained at a later date;

## SIXTH CAUSE OF ACTION
### (KNOWING, WILLFUL AND NEGLIGENT VIOLATIONS OF "THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT" AS CODIFIED UNDEER 39-5-20 AS TO PENFED")

150. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein;

151. PENFED violated this section by loaning plaintiff and its members their credit and depositors credit which is an unfair, deceptive act or practice that affects commerce and all of the members of the bank receiving loans from PENFED;

152. PENFED's continuous policies and procedures violates this section by taking and receiving from plaintiff and other PenFed member's, "consumer credit contracts" such as auto loan contracts which fails to contain a "Notice" in at least ten point, bold face, type stating that:

- "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.; Or
- "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

which is an unfair and deceptive act or practice as prescribed under 16 CFR § 433.2 which affects commerce and public interest and affects all of its members and third party buyers.

153. As a result of Defendants acts, defendant is liable to Plaintiff for actual damages as provided under Section 39-5-140 et seq.;

154. PENFED's by its policies and procedures and practices takes its members Notes and deposits them with the Local Federal Reserve agent in exchange for Federal Reserve Notes in

the amount of the Notes deposited and therefore have been paid but does not inform its members which is an unfair and deceptive act and practice;

155. PENFED, their successors, assigns, affiliates, partners and other organizations, corporations, agencies who may have filed 1099's with the IRS cancelling out the charged off debts of their members but does not inform their members of such cancellation because it is done through another organization which is an unfair and deceptive act and practice;

156. The acts of the Defendant, PenFed, is material in that their acts are an unfair or deceptive act or practice which occurred within the United States and in the district of State of South Carolina where the consumer is located;

157. The conduct of Defendant was a direct and proximate cause, as well as a substantial factor, in bringing about the injuries, damages and harm to Plaintiff that are outlined more fully throughout this complaint and, as a result, Defendant is liable to Plaintiff for the full amount of damages, and any other such further relief, as may be permitted by law Section 39-5-140 et Seq.;

158. As a result of the wrongful conduct, action and inaction of Defendant, and the erroneous derogatory information reported, Plaintiff has suffered significant damages, concrete harm in one or more of the following forms which include but are not limited to: a diminished credit score, loss of credit, loss of the ability to purchase and benefit from credit, a chilling effect on credit applications, and the mental and emotional distress and pain, anguish, humiliation and embarrassment caused by the inability to obtain financing for everyday expenses, bank account denials, denials of credit and credit card applications, higher interest rates on loans and credit cards that would otherwise be affordable and other damages that may be ascertained at a later date;

## PLAINTIFF DEMANDS A TRIAL BY JURY

159. Plaintiff demands and hereby respectfully demands a trial by jury for all claims and

issues in this complaint to which Plaintiff is or may be entitled to a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff demands judgment against all

Defendants individually and separately as follows:

a) Actual damages in an amount to be proved at trial;
b) An Declaration and Injunction against all defendants, their successors, assigns, affiliates, partners, both known and unknown does, etc. al., pursuant to 37-20-170(G) and if applicable 37-20-200(D) to restrain all parties from future acts constituting a violation of this chapter.
c) For actual damages provided and pursuant to 15 U.S.C. § 1681o(a) be awarded for each negligent violation as alleged herein;
d) For Statutory damages provided and pursuant to 15 U.S.C. § 1681n(a);
e) For Compensatory and/or Punitive Damages to be calculated in a Ratio of 98:1 as determined by the court in ***Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246 (4th Cir. 2017)**, also see... ***Younger v. Experian Info. Sols., Inc.*, No. 2:15-cv-00952, 2019 WL 1296256, at \*13 (N.D. Ala. Mar. 21, 2019)** or higher to punish and deter the defendant as it is clear that the 98:1 will not deter the defendants from violating the FCRA;
f) For attorney fees and costs provided if applicable and pursuant to 15 U.S.C. § 1681n(a)(3), 15 U.S.C. § 1681o(a)(2), 37-20-170(D) & (E), and if applicable, 37-20-200 (A) & (B);
g) For damages as specified under U.C.C. 9-625 ET SEQ. and 36-9-625 ET SEQ., which include but is not limited to sections "b", "c" and "f";
h) For defamation "Libel" award in an amount equal to or greater than $250,000;
i) For any such other and further relief, as well as further costs, expenses and disbursements of this action as this Court may deem just and proper.

Date this 22nd day of **May, 2023**.

RESPECTFULLY PRESENTED,

"Without Prejudice"

*Nelson L. Bruce  5-22-2023*

Nelson L. Bruce, Propria Persona, Sui Juris
"All Natural Rights Explicitly Reserved and Retained"
U.C.C. 1-308
c/o P.O. Box 3345, Summerville, South Carolina [29484]
Phone: 843-437-7901
Email: leonbruce81@yahoo.com

## Affidavit of Verification

I, Nelson L. Bruce, hereby swear, attest, affirm, ascribe, and declare as follows:

1. I am a consumer, the Plaintiff in the present case, and a resident of the State of South Carolina and I am of the age of the Majority, over the age of 18;

2. I have reviewed the complaint in its entirety and have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing **2nd Amended Verified Complaint** for Declaratory and Injunctive relief and the Relief requested in this **2nd Amended Verified Complaint**;

3. I have personal knowledge of all the allegations in this **2nd Amended Verified Complaint** for Declaratory and Injunctive Relief and the relief requested, and swear all of them to be true and correct to the best of my knowledge, information and belief;

4. I do hereby swear, attest, affirm, ascribe, and declare that the aforementioned claims are true, correct and accurate and that I have firsthand knowledge of the foregoing facts stated in this **2nd Amended Verified Complaint** as being true, correct and accurate, and I do so under penalty of the Constitution of the United States of America as such so help me god.

FURTHER AFFIANT SAYETH NOT.

*Nelson L. Bruce 5-22-23*

Nelson L. Bruce

## NOTARY

STATE OF SOUTH CAROLINA )
                         )
COUNTY OF __Berkeley__   )

On this __22__ day of **May, 2023**, before me ___Tayler Perry___ (Notary Public) personally appeared **Nelson L. Bruce**, a natural person, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same, and that by his signature on the instrument the person, acted, executed the instrument.

Notary Public Signature: _____    Date:

My Commission expires: __2-11-2030__

**SEAL**

P a g e  39 | 40

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been mailed to all parties on the service list **via the: UNITED STATES POSTAL SERVICE by the UNITED STATES POST OFFICE via First Class Mail.** Dated this 22nd day of May, 2023.

**SENT TO:**

Willson Jones Carter & Baxley, P.A.
**Attention: G. Troy Thames**
4922 O'Hear Avenue, Suite 301
North Charleston, SC 29405
*Attorney for Pentagon Federal Credit Union*

Eckert Seamans Cherin & Mellott, LLC
**Attention: Michael A. Graziano**
1717 Pennsylvania Avenue, N.W., Suite 1200
Washington, D.C. 20006
*Attorney for Pentagon Federal Credit Union*

Wyche PA
**Attention: Rita Bolt Barker**
200 E Broad Street, Suite 400
Greenville, SC 29601-2892
*Attorney for Equifax*

Seyfarth Shaw, LLP
**Attention: Eric F Barton**
1075 Peachtree Street NE, Suite 2500
Atlanta, GA 30309
*Attorney for Equifax*

Adams and Reese LLP
**Attention: Lyndey Ritz Zwing Bryant**
1221 Main Street, Suite 1200
Columbia, SC 29201
*Attorney for Experian*

Clement Rivers LLP
**Attention: Wilbur Eugene Johnson**
25 Calhoun Street, Suite 400
Charleston, SC 29401
*Attorney for Trans Union, LLC*

William J. Farley III
**Attention: Troutman Pepper Hamilton Sanders LLP**
301 S. College Street, Suite 3400
Charlotte, NC 28202
*Attorney for Defendant LexisNexis Risk Solutions, Inc.*

"Without Prejudice"

Nelson L. Bruce

Nelson L. Bruce, Propria Persona, Sui Juris
"All Natural Rights Explicitly Reserved and Retained"
U.C.C. 1-308
c/o P.O. Box 3345, Summerville, South Carolina 29484
Phone: 843-437-7901
Email: leonbruce81@yahoo.com