IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| NELSON L. BRUCE, | Case No. 2:22-cv-02211-BHH-MGB |
| Plaintiff, | **DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S RENEWED MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C)** |
| v. | |
| PENTAGON FEDERAL CREDIT UNION a.k.a. PENTAGON FEDERAL CREDIT UNION FOUNDATION ("collectively" PENFED), EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, EQUIFAX INFORMATION SERVICES, LLC, all unknown Does 1-100, et al., | |
| Defendants. | |

Defendant Equifax Information Services LLC ("Equifax"), by Counsel, hereby submits its

Renewed Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure, and shows the Court as follows:

## INTRODUCTION

Plaintiff, a serial *pro se* litigant in this District,[1] filed his Complaint on July 12, 2022. In

his Amended Complaint, Plaintiff alleges that Equifax violated §§ 1681i and 1681e(b) of the Fair

Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*., by "failing to delete inaccurate

information in the Plaintiff's credit file after receiving actual notices of such inaccuracies . . . ,"

and by "failing to establish or to follow reasonable procedures to assure maximum possible

---

[1] A search of the Court's PACER system suggests that Plaintiff has been a litigant in fifteen federal lawsuits in this District against various consumer-facing companies.

accuracy in the preparation of the credit report and credit files [it] publish[ed] . . . ." (Doc. 98 ¶¶ 104, 105.)[2]  As set forth herein, Plaintiff's § 1681i claim fails as a matter of law because the exhibits Plaintiff attaches to his pleadings make clear that he did not, in the disputes he sets forth in the Complaint, notify Equifax of the inaccuracy he now purports to premise his claim upon, as required by § 1681i. Similarly, Plaintiff's § 1681e(b) claim fails to state a claim because he makes no allegation regarding the unreasonableness of Equifax's procedures apart from his claimed disputes. Plaintiff also makes claims against Equifax for common law Defamation (*id.* ¶¶ 129-137) and under the South Carolina Financial Identity Fraud And Identity Theft Protection Act, S.C. Code Ann. § 37-20-110, *et seq*. (*id.* ¶¶ 138-144), but these claims too fail, either for the same reason as the FCRA claims or because they are preempted.

## BACKGROUND

In his Complaint, Plaintiff makes allegations regarding four accounts: one account with REV Federal Credit Union ("REV") and three accounts with Pentagon Federal Credit Union ("PENFED"). *See generally* Doc. 98. Plaintiff does not actually identify in his Complaint the inaccuracy with respect to the REV account as it appeared on his Equifax credit file, except to say that "[t]he information furnished by . . . REV . . . and published by the Bureaus and disseminated to third parties is false, inaccurate, incomplete, untrue, incorrect and misleading because the

---

[2] Plaintiff also claims, in paragraph 66 of the Amended Complaint, that "[t]he Defendant Bureaus," presumably including Equifax, "have been repeatedly producing plaintiff's consumer reports to third parties continuing information solely as to transactions or experiences between the consumer and the person making the report which the FCRA prescribes are to be excluded from the consumer report in violation of 15 U.S. Code § 1681a(d)(2)(A)(i) . . . ." (Doc. 98 ¶ 66.) However, it is difficult to know what to make of this claim, as it is both nonsensical (the referenced statute excludes such reports from the definition of consumer report, thus removing them from regulation by the FCRA, not, as Plaintiff claims, "prescribing" anything) and factually unsupported by the remainder of the Complaint.

Plaintiff disputed information as evidenced by his disputes (See…Exhibit A . . . .) including the balance allegedly owed to . . . REV[.]" (*Id.* ¶ 36.)[3]

With respect to the PENFED accounts—"a credit card account, a line of credit account and an auto loan account (*id.* ¶ 42)—Plaintiff's claims appear to be two-fold:

*First*, he claims that "on or about 6-17-2022 defendant[] . . . Equifax received a notice from the plaintiff that clearly notifies [it] that the PENFED accounts was sold, assigned and transferred to third parties and plaintiff produce[d] evidence from PENFED dated 4-11-2022 documenting these facts which [Equifax] willfully, negligently, recklessly ignored and failed to update [its] records and[/]or failed to reinvestigate and willfully, negligently continued to report the accounts [with a balance][4] (See…Exhibit D)." (*Id.* ¶ 45.)  However, as explained below, even if this states a plausible inaccuracy, the claims premised upon this alleged inaccuracy fail to state a claim upon which relief can be granted because the referenced notice ("Exhibit D," i.e., Doc. 1-5) is a "Notice of Intent to Sue" sent by the Plaintiff to counsel representing Equifax in ongoing litigation, along with a settlement demand, and communication in litigation does not trigger a responsibility on behalf of a CRA to reinvestigate under § 1681i of the FCRA.

---

[3] Plaintiff acknowledges that Equifax removed the REV account in his first dispute, (*see* Doc. 98 ¶ 56), but (apparently) bases a § 1681i claim with respect to the REV account on the premise that he did not timely receive the reinvestigation results, (*id.*). This fails to state a claim upon which relief can be granted because, even if there was a brief delay in delivering the reinvestigation results—something Equifax does not concede—Plaintiff's Complaint has "identified no 'downstream consequences' from failing to receive the required information." *TransUnion LLC v. Ramirez*, 594 U.S. __, 141 S.Ct. 2190, 2214 (2021) (citing *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020). Actual damages are an element of a claim under the FCRA, but Plaintiff pleads none with respect to any purported brief delay.

[4] (*See* Doc. 98 ¶¶ 68 *et seq.* wherein Plaintiff claims that the PENFED accounts were transferred or sold, but that PENFED violated "the FCRA and Metro 2 reporting standard for maximum possibly accuracy" by failing "to report the accounts as sold, transferred, charged off with a zero balance and zero amount past due . . . .")

- 3 -

*Second*, he claims that the PENFED accounts were inaccurate, even after a September 2021 reinvestigation by Equifax, because "the date of last payment is showing 2-1-2017," but the "date of delinquency cannot be the date of last payment." (*Id.* ¶ 56.)  This does not plausibly state an inaccuracy, as the referenced Exhibit B (i.e., Doc. 1-3) belies this claim in its entirety: on none of the three PENFED accounts was the "date of last payment showing 2-1-2017." (*See* Doc. 1-3, at 5-7).  And, in any event, the claim that the "date of delinquency cannot be the date of last payment" simply does not hold up to logic: an account can go delinquent on the same day a payment is made if, for example, a consumer makes a payment, but fails to make the minimum required payment.

Plaintiff asserts two actual disputes in his Amended Complaint, one "on or about September 24, 2021," (Doc. 98 ¶ 42), and one "on or about May 2022," (*id.* ¶ 84), and he references as exhibits two dispute letters that he claims correspond with these two disputes as sent to Equifax, (*see* Doc. 1-2, at 2-6; Doc. 1-2, at 48).  In the September 2021 dispute letter, Plaintiff set forth four boilerplate "Reasons" for each of the three PENFED accounts, such as "I do not have a contract with this company where in which I agreed for them to report this alleged account on my consumer credit report. . . . I demand to see Verifiable Proof of the original Consumer Contract with my signature . . . [,]"[5] "The above named alleged creditor is reporting that the above alleged account was charged-off/written off. Charge-offs/write-offs are to be reported with a '0' (zero) balance as paid in full . . . [,]"[6] "The above named creditor pay have already filed an insurance claim on this

---

[5] A claim often seen by consumer reporting agencies, and repeatedly rejected by the courts, "because the FCRA does not require credit reporting agencies to provide original copies of contracts or other loan documents[.]" *Little v. Equifax Info. Servs. LLC*, No. 22-cv-00669, 2022 WL 17989622, at *2 (D. Md. Dec. 29, 2022); *accord Whiteford v. Equifax Inc.*, No. 21-94, 2021 WL 3683293, at *3-4 (W.D. Pa. Aug. 18, 2021) (collecting cases).

[6] Another claim seen by consumer reporting agencies, this boilerplate dispute is incorrect as a matter of law. In case after case, it has been observed "that a 'charge off' report is used when a [creditor] has to write off bad debt for accounting purposes and does not mean that the loan has been forgiven; rather, the balance remains on the [consumer's] account." *In re Jones*, 367 B.R.

- 4 -

alleged account . . . . It needs to be physically verified that there is no insurance policy for the alleged account . . . [,]"[7] and "I, the consumer disputed the validity of the alleged debt and requested the alleged creditor validate this alleged account and support it by verification of it being true and correct under firsthand knowledge which they did not respond at all to the request[.]"[8] (Doc. 1-2, at 2-6.)  Included in *none* of these boilerplate "Reasons" was any claim that the balance on the PENFED accounts should be zero because PENFED had sold the accounts to a debt buyer or otherwise transferred the accounts elsewhere.

The September 2021 dispute letter also contains the following, slightly more account-specific (but still mostly boilerplate) claims of inaccuracy with respect to the PENFED accounts:

With respect to the PENFED account with balance "$13,777.76:"

Reason 5:    The alleged account number being reported by Equifax is inaccurate as the alleged account number reported does not match the alleged account number being reported to Experian . . . [.]

Reason 6:    The date of first delinquency is inaccurate as it does not match what is being reported to Experian . . . [.] Equifax is reporting a date of first delinquency on Jan. 1, 2017 but Experian is reporting the first 30 days late being in March. 2017, the date of first delinquency.[9]

---

564, 566 (E.D. Va. 2007); *see also Ware v. Bank of America Corp*., 9 F.Supp.3d 1329, 1341 (N.D. Ga. 2014) ("Defendant has cited numerous courts in other jurisdictions that have followed the letter's reasoning and concluded that a Form 1099-C does not legally extinguish or cancel a debt.").

[7] This purported inaccuracy is pure speculation, and, for two of the three accounts, is contradicted by the claim of inaccuracy actually alleged in the Complaint, which is that PENFED sold or transferred the accounts, not that PENFED received an insurance payout.

[8] Another common assertion, which seeks to bootstrap an FCRA claim from a prior request directly to the creditor for debt validation under § 1692g(a) of the Fair Debt Collection Practices Act ("FDCPA"). The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors . . . ."  15 U.SC. § 1692(e). CRAs, such as Equifax, are not "debt collectors," as many courts have observed. *See, e.g., White v. Experian Consumer Fraud Assistance*, No. 16-cv-49, 2016 WL 8919459, at *2 (N.D.W.Va. Aug. 15, 2016) ("Experian is not a debt collector, but rather a consumer reporting agency[.]")

[9] It appears that Plaintiff's claim in these sort of "Reasons" was that the identified information was inaccurate *solely* because it was slightly inconsistent with that being reported by another CRA. But Plaintiff did not actually claim that Equifax had it wrong and Experian had it

- 5 -

Reason 7:      The payment history being reported shows that he alleged account was reported as 60 days late as of January 2017, but the "Date of Last Payment" is being reported as Dec. 01, 2016 and the "Date of First Delinquency" is being reported as January 1, 2017 which would make the alleged account only 30 days late.[10]

(Doc. 1-2, at 5.)

With respect to the PENFED account with balance "$4,432.21:"

Reason 5:      The alleged account number being reported by Equifax is inaccurate as the alleged account number reported does not match the alleged account number being reported to Experian . . . [.]

Reason 6:      The date of first delinquency is inaccurate as it does not match what is being reported to Experian . . . [.]  Equifax is reporting a date of first delinquency on Feb. 1, 2017, but Experian is reporting the alleged account as current with no date of delinquency.

Reason 7:      Equifax is also reporting the date of last payment on September 1, 2017, after the date of first delinquency of Feb. 1, 2017. The date of first delinquency cannot be reported before the date of last payment . . . [.][11]

_____

right. Indeed, in his dispute letter to Experian he claimed that *Experian*'s data was inaccurate because it was slightly inconsistent with *Equifax*'s. (*See* Doc. 1-2, at 38 ("Reason 5," "Reason 6.") While some courts have deemed inconsistent reports issued *by the same CRA*, or inconsistencies *within the same report*, as evidence of a lack of reasonable procedures sufficient to ward off summary judgment, *see Stewart v. Credit Bureau, Inc.*, 734 F.2d 47, 52-53 (D.D.C. 1984), the same cannot be said with respect to a plaintiff's burden to point to an inaccuracy, *see Schweitzer v. Equifax Info. Servs. LLC*, No. 08-cv-478, 2010 WL 3809891, at *12 (W.D. Pa. Sept. 21, 2010) ("Here, plaintiff's evidence of inaccuracy is limited to the inconsistent credit reports. She did not present any evidence that the challenged information was inaccurately reported under those circumstances.").

[10] It is unclear where Plaintiff derived this purported inaccuracy, as the attached Equifax disclosure does not appear to show the purported inconsistency. (*See* Doc. 1-2, at 13-14.)  In any event, the reinvestigation results attached to the Complaint in Exhibit B clearly show the account reporting as "1," or "30-59 Days Past Due," for the month of January 2017, just as Plaintiff claims it was supposed to. (Doc. 1-3, at 4-5.)

[11] This purported inconsistency is not in any way suggestive of an inaccuracy, if, for example, a consumer has made a payment on an account after it has gone delinquent, which, as it happens, is what the documents attached to Plaintiff's Complaint suggest is what occurred. (*See* Doc. 1-2, at 15-16 (showing account with a "Charge Off Amount" of $4,818, but a "Balance" of $4,427).)

Reason 8:    The alleged account balance is being reported inaccurately as Equifax is reporting the alleged account with a balance of $4,427 but Experian is reporting he alleged account with a zero ("$0") balance.

Reason 9:    The alleged account is being reported to Equifax with an available credit amount of $573 but the alleged account is closed therefore no available credit should be reported.[12]

(Doc. 1-2, at 3-4.)

With respect to the PENFED account with balance "$31,794.99:"

Reason 5:    The alleged account number being reported by Equifax is inaccurate as the alleged account number reported does not match the alleged account number being reported to Experian . . . [.]

Reason 6:    The date of first delinquency is inaccurate as it does not match what is being reported to Experian . . . [.] Equifax is reporting a date of first delinquency on Oct. 1, 2016 but Experian is reporting the alleged account as current with no date of delinquency.

Reason 7:    Equifax is also reporting the date of last payment on Oct. 1, 2017, after the date of first delinquency in Oct. 1, 2016. The date of first delinquency cannot be reported before the date of last payment . . . [.]

Reason 8:    The alleged account balance is being reported inaccurately as Equifax is reporting the alleged account with a balance of $31,794 but Experian is reporting the alleged account with a zero ("$0") balance.

(Doc. 1-2, at 4.)  Included in *none* of these near-boilerplate "Reasons" was any claim that the

balance on the PENFED accounts should be zero because PENFED had sold the accounts to a debt

buyer or otherwise transferred the accounts elsewhere.

In the May 2022 dispute letter, Plaintiff wrote, with respect to the three PENFED accounts

that he was "not saying they are reporting right or wrong" just that he was "not 100 percent dure

if they are." (Doc. 1-2, at 48.)  He wrote "Please reinvestigate if every piece of information for this

---

[12] It is unclear how this purported inaccuracy could possibly be materially misleading or cause Plaintiff any damage whatsoever. In any event, the purported inaccuracy does not appear in the reinvestigation results attached to the Complaint in Exhibit B. (*See* Doc. 1-3, at 6-7.)

95606164v.1

account is correct. If not, please remove it from my credit report immediately." (*Id*.)  He did not, however, identify *any* alleged inaccuracy.

Finally, Plaintiff claims that "on or about 6-17-2022 defendant[] . . . Equifax received a notice from the plaintiff that clearly notifies [it] that the PENFED accounts was sold, assigned and transferred to third parties and plaintiff produce[d] evidence from PENFED dated 4-11-2022 documenting these facts which [Equifax] willfully, negligently, recklessly ignored and failed to update [its] records and[/]or failed to reinvestigate and willfully, negligently continued to report the accounts [with a balance] (See…Exhibit D)." (*Id*. ¶ 45.)  However, as explained below, even if this states a plausible inaccuracy, the claims premised upon this alleged inaccuracy fail to state a claim upon which relief can be granted because the referenced notice ("Exhibit D," i.e., Doc. 1-5) is a "Notice of Intent to Sue" sent by the Plaintiff to undersigned counsel, along with a settlement demand, and it is well-established that communication in litigation does not trigger a responsibility to reinvestigate under § 1681i of the FCRA.

Because Plaintiff does not plead that he presented *Equifax* with the claimed inaccuracy he now premises his claims on, his FCRA claims fail to state a claim upon which relief can be granted. His state law claims likewise fail, either for the same reason as the FCRA claims or because they are preempted.

## STANDARD

Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Courts "apply the same standard for Federal Rule of Civil Procedure 12(c) motions for judgment on the pleadings as for motions made pursuant to Rule 12(b)(6). *Conner v. Cleveland County, North Carolina*, 22 F.4th 412,416 (4th Cir. 2022).

95606164v.1

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard required a plaintiff to show at the pleading state that success on the merits is more than a "sheer possibility." *Id*.

The court must take the plaintiff's well-pled allegations as true; however, Plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

**I.    Plaintiff's Claims Under § 1681i And § 1681e(b) Of The FCRA Fail Because The Exhibits Attached To The Complaint Make Clear That Plaintiff Did Not, In His Disputes Set Forth In The Complaint, Ask *Equifax* To Reinvestigate The Inaccuracy He Now Alleges In The Complaint**

Under § 1681i of the FCRA, a consumer reporting agency ("CRA") is required to conduct a reasonable reinvestigation of the accuracy of an item of information on a consumer's credit file "if . . . the consumer notifies the agency . . . of such dispute." 15 U.S.C. § 1681i(a)(1)(A). Under this provision, a CRA's duty to reinvestigate is cabined to the dispute the consumer presents. *See Aldaco v. RentGrow, Inc.*, 921 F.3d 685, 690 (7th Cir. 2019) (where consumer's dispute "contended only that the battery record wasn't hers," CRA had duty to "investigate and confirm with its sources the only information that was disputed: whether the battery record pertained to Aldaco"); *accord Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151. 1160 (11th Cir. 1991) (describing the duty under § 1681i as a duty "to make reasonable efforts to investigate and

correct inaccurate or incomplete information *brought to its attention by the consumer*") (emphasis added).

In his Amended Complaint, Plaintiff alleges that two of the PENFED accounts were inaccurately reporting a balance because PENFED had sold or transferred the accounts elsewhere. (Doc. 98 ¶ 68.)  But none of Plaintiff's boilerplate "Reasons" in the first dispute letter presented this claim of inaccuracy to Equifax, and Plaintiff's second dispute letter made no claim of inaccuracy whatsoever.  A CRA has no duty to investigate an alleged inaccuracy if the consumer does not "notif[y] the agency . . . of such dispute." 15 U.S.C. § 1681i(a)(1)(A).  Even where the consumer's dispute identifies generally the piece of information they wish to dispute—a conviction, an account—they cannot bootstrap a § 1681i claim based on one alleged inaccuracy from their dispute of a different alleged inaccuracy. *Aldaco v. RentGrow, Inc*., 921 F.3d at 690; *accord Herisko v. Bank of America*, 367 F. App'x 793 (9th Cir. 2010) (where "the only notice Plaintiff provided to Experian about his dispute was a letter [that] . . . did not put Experian on notice that Plaintiff was claiming a different purported inaccuracy [which was] . . . . the alleged inaccuracy underlying the present suit[,] Plaintiff's dispute letter was therefore insufficient to trigger Experian's duty under § 1681i").

Further, while Plaintiff claims that he alleged the inaccuracy he now stands on in a settlement demand to undersigned counsel,[13] his June 17, 2022 "Notice of Intent to Sue" does not constitute a dispute pursuant to § 1681i of the FCRA.  As an initial matter, the "Notice of Intent to Sue" is not, on its face, a dispute. It is, rather, exactly what it is captioned: notice that Plaintiff

---

[13] Who, at the time, was representing Equifax in other litigation with Plaintiff, *Bruce v. Equifax Information Services LLC*, No. 2:21-cv-03603-BHH-MGB.

intended to sue, with a $2,000,000 settlement demand. Plaintiff did not request a reinvestigation; he demanded money.

Moreover, § 1681i requires a consumer to "notif[y] the agency directly, or indirectly through a reseller, of such dispute[.]" 15 U.S.C. § 1681i(a)(1)(A). Plaintiff alleges that he sent his June 17, 2022 letter to undersigned counsel, an attorney retained to represent Equifax in ongoing litigation, *not* "directly" to Equifax, as required by the Act. *See Parker v. Parker*, 124 F.Supp.2d 1216, 1223 (M.D. Ala. 2000) ("[C]onsumer notification is a requirement for liability under § 1681i."). The FCRA requires, in numerous sections, that CRAs such as Equifax establish and maintain addresses to be disseminated to consumers, in one way or another, so that consumers can communicate with the CRA. *See, e.g.*, 15 U.S.C. §§ 1681b(b)(3)(B)(i)(II), 1681b(e)(5)(A)(ii)(II), 1681c-2(d)(3), 1681g(1)(D), 1681m(a)(3)(A).

Equifax has, accordingly, established various addresses and other methods of communication for consumers to notify it directly of their disputes. *See, e.g.*, How do I correct or dispute inaccuracies on my credit reports by mail?, https://www.equifax.com/personal/help/mail-in-credit-report-dispute/ (last accessed June 2, 2023). But sending a demand letter to an attorney representing a CRA in ongoing, unrelated litigation does not fall within the definition of "notif[ying] directly." At least one court has recognized in the analogous context of FCRA § 1681s–2(a)(8)(D), which requires a data furnisher to mark data submitted to a CRA as disputed if the consumer notifies it "directly," that litigation is not "direct" notification. *Collins v. BAC Home Loans Servicing LP*, 912 F.Supp.2d 997, 1010 (D. Colo. 2012) (holding that "the filing of a lawsuit" does not meet the requirements for submitting a dispute to a data furnisher under § 1681s–2(a)(8)(D)).

Accordingly, Plaintiff cannot premise his § 1681i claim on the claim that the PENFED accounts were inaccurately recorded with a balance on his credit file after they had been sold to a debt buyer, because he did not include that claimed inaccuracy in his direct disputes, and the settlement demand email he relies on is not a direct dispute.  Because he failed to properly present the claimed inaccuracy to Equifax, his § 1681i claim fails as a matter of law and is due to be dismissed.[14]

Further, with regard to Plaintiff's § 1681e(b) claim, the Fourth Circuit has held that "the plaintiff bears the burden under § 1681e(b) to show that the consumer reporting agency did not follow reasonable procedures." *Dalton v. Capital Associated Industries, Inc.*, 257 F.3d 409, 416 (4th Cir. 2001).  As it is Plaintiff's duty to show that Equifax did not follow reasonable procedures, it is also his duty to plead factual content sufficient to make a plausible claim that Equifax did not follow reasonable procedures. *See Iqbal*, 556 U.S. at 678.  While Plaintiff pleads that Equifax "violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files they publish and maintain concerning the Plaintiff," (Doc. 98 ¶ 105), this is nothing more than a "formulaic recitation of the elements of a cause of action" and "will not do," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The actual substance of Plaintiff's factual allegations is almost entirely related to his disputes, and, there is little, if anything, to support his claim that Equifax acted

---

[14] To the extent that Plaintiff seeks to incorporate the boilerplate "Reasons" from his dispute letter exhibits into the substance of his Complaint, this Court should draw the line. *See Condillac v. Califf*, No. 20-cv-1794, 2023 WL 2139794, at *1 n.2 ("Federal Rule of Civil Procedure 10(c) provides that exhibits to pleadings are considered part of the pleadings, but it does not necessarily follow that exhibits containing allegations raised before another body can serve as a substitute for the complaint itself."). In any event, any § 1681i premised on the boilerplate or near-boilerplate "Reasons" included in his dispute letter to Equifax would fail for the reasons set forth *supra*, at n.5-8 & n.9-12, respectively.

unreasonably if it published a consumer report containing a balance on the PENFED accounts after they had been sold or transferred elsewhere. As set forth above, Plaintiff did not present Equifax with that claimed inaccuracy in his dispute, and he cannot plausibly allege that Equifax should otherwise have known that the accounts had been sold or transferred elsewhere. He does not, for example, make any allegation that United Holding Group or National Credit Corporation reported a tradeline to Equifax with the same account number, balance, etc. Accordingly, Plaintiff's § 1681e(b) likewise fails as a matter of law, and is due to be dismissed.

## II.    Plaintiff's Common Law Defamation Claim Is Pre-Empted By Federal Law, And, Therefore, Fails As A Matter Of Law

Section 1681h(e) of the FCRA provides that:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of *defamation*, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency . . . based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report *except as to false information furnished with malice or willful intent to injure such consumer*.

15 U.S.C. § 1681h(e) (emphasis added). Even assuming Plaintiff has sufficiently alleged a common law claim for defamation, which Equifax denies, such common law claims are preempted by the FCRA. Common law claims may be asserted against a CRA to the extent the conduct is alleged to have been done with malice or willful intent to injure the plaintiff. *See* 15 U.S.C. § 1681h(e).

In his Amended Complaint, Plaintiff makes the assertion that "Defamation of Plaintiff was willful, done with malice, willful intent to injure the Plaintiff." (Doc. 98 ¶ 132.) But his factual assertions in support of that contention fall far short, and do not plausibly plead malice or willful

intent to injury. In the next Paragraph, Plaintiff avers that "Defendants did not have any reasonable basis to belief that the Plaintiff was responsible for the accounts reported to . . . Equifax nor that there should be a balance reported" and that "Defendants also had substantial evidence by which to have verified that the Plaintiff's debt was sold, assigned and/or transferred therefore no longer due or owing to the person reporting the accounts." (*Id*. ¶ 133.)

The first of these contentions is belied by the pleadings. While Plaintiff may coyly refer to the PENFED accounts as "allegedly belonging to plaintiff," (*see, e.g.*, *id*. ¶¶ 42, 67), it is clear that he had a debtor-creditor relationship with PENFED, as evidenced by the documents he incorporates into the Complaint as Exhibit C, (*see* Doc. 1-4).  As with his reinvestigation claim, the entire premise of his Defamation claim is contained in the second contention, that the PENFED accounts had been "sold, assigned and/or transferred therefore no longer due or owing to" PENFED. But, as set forth above, he did not present this allegation to Equifax in either of the two disputes he sets forth in his Complaint.

Accordingly, his factual allegations in support of his claim that Equifax acted with malice if it published a consumer report containing a balance on the PENFED accounts after they had been sold or transferred elsewhere is without support, and he cannot escape the FCRA's preemption provision. His Defamation claim is, therefore, due to be dismissed.

## III.    Plaintiff's Claim Under The South Carolina Financial Identity Fraud And Identity Theft Protection Act Fails For The Same Reason As His Claim Under § 1681i(a) Of The FCRA

Plaintiff's last claim against Equifax is brought under a South Carolina statute, the South Carolina Financial Identity Fraud And Identity Theft Protection Act.  (Doc. 98 ¶¶ 138-144.) Specifically, Plaintiff points to § 37-20-170 of the Act, which is a provision that allows a consumer to dispute information on his or her credit file, *in pari materia* with § 1681i of the FCRA.

- 14 -

Accordingly, Plaintiff's claims under this provision fail for the same reason that his § 1681i claim fails: he did not "give notice in writing *to the consumer reporting agency* specifying" the alleged inaccuracy that he now claims in his Complaint, i.e., that the PENFED accounts had been sold or transferred and, therefore, inaccurately reflected a balance. S.C. Code Ann. § 37-20-170(A) (emphasis added).

## CONCLUSION

For the reasons set forth therein, Equifax respectfully requests the Court grant its Motion, dismiss Plaintiff's Complaint with prejudice, enter Judgement in its favor, and grant all other relief as the Court deems appropriate.

DATED:  June 5, 2023                          Respectfully submitted,

                                              WYCHE, P.A.


                                              By:  */s/ Rita Bolt Barker*
                                              Rita Bolt Barker (Fed. ID No. 10566)
                                              WYCHE, P.A.
                                              200 East Broad Street, Suite 400
                                              Greenville, South Carolina 29601
                                              Telephone: (864) 242-8235
                                              Facsimile:  (864) 235-8900
                                              E-mail:  rbarker@wyche.com

                                              *Counsel for Defendant*
                                              *Equifax Information Services LLC*

95606164v.1

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2023, I presented the foregoing RENEWED MOTION FOR

JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C) with the Clerk of

the Court using the CM/ECF system, which will send notification of such filing to all counsel of

record.   A copy has also been sent via U.S. Mail to the following:

> Nelson L. Bruce *(plaintiff pro se)*
> c/o P.O. Box 3345
> Summerville, South Carolina  29484
> Telephone:  (843) 437-7901
> Email:  leonbruce81@yahoo.com

> */s/ Rita Bolt Barker*
> Rita Bolt Barker
> *Counsel for Defendant*
> *Equifax Information Services LLC*

95606164v.1