IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| NELSON L. BRUCE,<br><br>Plaintiff,<br><br>v.<br><br>LEXISNEXIS RISK SOLUTIONS INC., *et al.*,<br><br>Defendants. | Case No.: 2:22-cv-02211-BHH-MGB |

**DEFENDANT LEXISNEXIS RISK SOLUTIONS INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant LexisNexis Risk Solutions Inc. ("LNRS") files this Memorandum in Support of its Motion to Dismiss Plaintiff Nelson Bruce's ("Plaintiff") Second Amended Complaint ("SAC"), Dkt. No. 96.

## INTRODUCTION

LNRS previously moved to dismiss Plaintiff's Amended Complaint for failure to state a claim for relief. In response, Plaintiff filed the SAC in an attempt to salvage his claims. Yet, the SAC still suffers from the same fundamental deficiencies LNRS identified in the Amended Complaint and accordingly should be dismissed.

In the SAC, Plaintiff alleges LNRS violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") and South Carolina Consumer Identity Theft Protection Act, S.C. Code Ann. § 37-20-110, *et seq.* ("SCCITPA") and asserts a claim for common law defamation. But, like the Amended Complaint, the SAC is comprised of mere legal conclusions and formulaic recitations of the elements of the causes of action and lacks factual allegations to support the essential elements of Plaintiff's claims.

Generously construing the SAC, Plaintiff's claims appear to arise from the alleged inaccurate reporting of certain accounts from Defendant Pentagon Federal Credit Union ("PENFED") and REV Federal Credit Union ("REV") with a past due balance owed after the accounts were purportedly charged off and sold. That alleged "inaccuracy" is a legal defense that cannot support Plaintiff's claims against LNRS. And, regardless, an unpaid balance may still in fact be reported after an account is charged off. Accordingly, Plaintiff has not (and cannot) plead any viable inaccuracy, thus requiring dismissal of his claims.

For those reasons, and the reasons more fully described below, LNRS respectfully requests the Court dismiss each of the claims asserted against LNRS in the SAC.

## **FACTUAL ALLEGATIONS**[1]

The majority of the allegations in the SAC are identical to the Amended Complaint. The SAC alleges LNRS is a "consumer reporting agency" ("CRA") that reported "inaccurate information to other third parties, persons, entities, and credit grantors." SAC ¶¶ 15, 24, 96. The SAC does not identify or describe specifically the alleged "inaccurate information" LNRS reported, nor does it identify the third parties to whom LNRS allegedly reported such information.

Based on the exhibits attached to the Amended Complaint, Plaintiff appears to take issue with certain accounts reported by PENFED and REV with a balance owed. *See* SAC ¶¶ 35, 36; *see also* Am. Compl., Dkt. No. 31, Ex. E at 18–25, 31–33, 39–40.[2] Those accounts were reported with the following notation: "UNPAID BALANCE REPORTED AS A LOSS BY CREDIT GRANTOR/CHARGE OFF."

---

[1] For the sole purpose of this Motion, LNRS accepts as true the allegations as pled by Plaintiff.

[2] Plaintiff incorporates by reference the exhibits to his Amended Complaint into the SAC. SAC ¶ 22.



Am. Compl. Ex. E at 18–25.

Plaintiff alleges he called LNRS to dispute "all accounts and information reported by PenFed and REV." SAC ¶¶ 47, 50. In response to those disputes, LNRS responded that "LexisNexis filed your dispute regarding the following data with the listed entity: . . . Dispute Filed With: Experian." Am. Compl. Ex. E at 10–14. Plaintiff alleges LNRS did not "immediately reconvey to the plaintiff any written notices directly from Experian . . . within 5 business days of the completion of the reinvestigation." SAC ¶ 53. He further alleges that the PENFED and REV accounts continued to appear in Plaintiff's consumer file disclosure after these disputes. *Id*. ¶¶ 49, 52.

The SAC also includes new allegations that LNRS is a "furnisher" of consumer credit information that supplies information to CRAs. SAC ¶ 16. Plaintiff alleges that LNRS furnished information to Defendant TransUnion, LLC ("TransUnion") "for inclusion in a consumer report." SAC ¶ 32. Plaintiff claims that in its capacity as a "furnisher," LNRS did not conduct a reasonable investigation relating to "a bankruptcy to Trans Union because it failed to verify all filings on the record in the court." SAC ¶ 33. Although Plaintiff claims he made direct disputes to LNRS, he does not allege that he made any dispute to a CRA that was then forwarded to LNRS by the CRA. *See generally* SAC.

Based on these allegations, Plaintiff alleges claims against LNRS under sections 1681e(b), 1681i, and 1681s-2(b) of the FCRA. SAC ¶¶ 102–28. Plaintiff also alleges claims under South Carolina law, including defamation and a claim under SCCITPA. SAC ¶¶ 129–44.

## **LEGAL STANDARD**

Under Rule 12(b)(6), a complaint must be dismissed when it fails to allege sufficient facts which, if true, would entitle the plaintiff to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must include allegations that provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A formulaic recitation of the elements of a cause of action will not do." *Id*. Rather, a plaintiff must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) ("The presence, however, of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support" the legal conclusion.). "In considering motions to

dismiss under Rule 12(b)(6), the court may properly consider exhibits attached to the complaint." *Smith v. McCarthy*, 349 F. App'x 851, 856 (4th Cir. 2009).

While a *pro se* pleading is afforded a liberal construction, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), the court cannot ignore a clear failure to allege facts that set forth a claim currently cognizable in federal court, *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990). A court may not construct the *pro se* plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## ARGUMENT

**I.   Plaintiff's claims under the FCRA and South Carolina state law are subject to dismissal because the SAC fails to allege LNRS reported any inaccuracy.**

To prevail on his claims under sections 1681e(b) and 1681i of the FCRA and SCCITPA, Plaintiff must first plausibly allege that LNRS reported inaccurate information about him. *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) ("a consumer reporting agency violates § 1681e(b) if (1) the consumer report *contains inaccurate information* and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy") (emphasis added); *Dawkins v. Experian Info. Sols, Inc.*, No. 6:22-cv-00774, 2022 U.S. Dist. LEXIS 218459, at *16–17 (D.S.C. Oct. 19, 2022) ("[T]o succeed on claims under § 1681i(a), a plaintiff must make a threshold showing of inaccuracy.") (internal quotation marks and citation omitted).[3] A "report is inaccurate when it is patently incorrect or when it is misleading in such a

---

[3] S.C. Code Ann. § 37-20-170 largely mirrors the obligations under section 1681i of the FCRA. The statute provides that "[i]f a consumer disputes the *accuracy* of an item in the consumer's records with a consumer reporting agency, the consumer may give notice in writing to the consumer reporting agency specifying in what manner the report is *inaccurate* and the consumer reporting agency shall reinvestigate the inaccuracy at no charge to the consumer . . . ." S.C. Code Ann. § 37-20-170(A) (emphasis added). Accordingly, for the same reasons described below that

5

way and to such an extent that it can be expected to have an adverse effect." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (quotations omitted). If a plaintiff does not plausibly allege some inaccuracy, his FCRA claims are subject to dismissal on a Rule 12(b)(6) motion to dismiss. *See, e.g., Dawkins*, 2022 U.S. Dist. LEXIS 218459 at *19; *Wilcox v. Servis One, Inc.*, No. RDP-19-2535, 2020 U.S. Dist. LEXIS 150543, at *11 (D. Md. Aug. 19, 2020) (granting motion to dismiss FCRA claims for lack of a factual inaccuracy); *Artemov v. TransUnion LLC,* No. 20-cv-1892, 2020 U.S. Dist. LEXIS 159267, at *9 (E.D.N.Y. Sept. 1, 2020) (granting motion to dismiss where plaintiff failed to allege a viable inaccuracy by claiming there was a past due balance on his charged off account).

"[T]o make the required showing of inaccurate reporting under FCRA §§ 1681e(b) and 1681i, a complaint's allegations must dispute *facts* underlying a purported inaccuracy, as the presentation of *legal defenses* to payment will not suffice." *Perry v. Toyota Credit Corp.*, No. 1:18-cv-00034, 2019 U.S. Dist. LEXIS 12125, at *13 (W.D. Va. Jan. 25, 2019) (internal quotation marks and citation omitted) (emphasis in original). In other words, a CRA is only required to resolve factual inaccuracies because CRAs "are 'neither qualified not obligated' to resolve legal issues under the FCRA." *Id*. at *13–14 (quoting *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008)); *see also Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567 (7th Cir. 2021) (recognizing the "dichotomy between factual inaccuracies that consumer reporting agencies are statutorily obligated to reinvestigate, and 'legal inaccuracies' which are outside the competency of the consumer reporting agencies."); *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015) ("A reasonable reinvestigation . . . does not require CRAs to resolve legal disputes about

---

Plaintiff cannot state a claim against LNRS under section 1681i, Plaintiff also cannot state a claim under S.C. Code Ann. § 37-20-170.

the validity of the underlying debts they report."). "[T]he central question is whether the alleged inaccuracy turns on applying law to facts or simply examining the facts alone." *Chuluunbat*, 4 F.4th at 568. "The paradigmatic example of a legal dispute is when a consumer argues that although his debt existed and is reported in the right amount, it is invalid due to a violation of the law." *Id*. at 567. When a plaintiff asks "consumer reporting agencies to make primarily legal determinations, [he has] not stated claims under the Fair Credit Reporting Act." *Id.* at 569.

Like his Amended Complaint, Plaintiff's allegations in his SAC fail to establish the threshold requirement of any inaccuracy. As an initial matter, none of Plaintiff's allegations against LNRS identify a specific inaccuracy. *See* SAC ¶ 46 ("Plaintiff received a copy of his consumer file/report that LexisNexis was reporting and publishing with inaccuracies."). Rather, Plaintiff only alleges that he disputed "any and all accounts and information reported by PenFed and REVFCU . . . for [undefined] inaccuracies." *Id.* ¶ 50.

But liberally construing Plaintiff's SAC and exhibits incorporated by reference, Plaintiff appears to be challenging purported *legal* inaccuracies related to the reporting of the PENFED and REV accounts. *First*, Plaintiff apparently alleges LNRS should not have reported a "balance allegedly owed on the PENFED and REV alleged debts" because the accounts were charged off. *See* SAC ¶¶ 35, 36; *see also id*. at ¶ 77 ("The reporting and publishing of PENFED's inaccurate accounts and information are misleading to lenders because it gives the false impression that a debt and/or account balance is owed or still owed to PENFED"); *id*. at ¶ 133 ("not that there should be a balance reported"); *see also* Feb. 7, 2023 Report & Recommendation, Dkt. No. 66, at 8–10 ("The exhibits referenced in the Amended Complaint and Plaintiff's briefing makes clear that Plaintiff is referring to PenFed's reporting of a balance on Plaintiff's account despite his accounts being charged off. According to Plaintiff, his accounts should have shown a 'zero balance' once they

7

were charged off and sold/transferred . . . [plaintiff disputed that it was inaccurate for PENFED] to report the charged off accounts with a zero balance."). *Second*, Plaintiff also appears to allege that LNRS should have known that he was not "responsible for the account" because "Plaintiff's debt was sold, assigned and/or transferred therefore no longer due or owing to the person reporting the accounts." SAC ¶ 133. None of these allegations are sufficient to allege a viable inaccuracy to support Plaintiff's claims against LNRS.

### A. The SAC only alleges *legal* inaccuracies.

Plaintiff's claims against LNRS do not dispute any *facts* underlying LNRS' allegedly inaccurate reporting of his PENFED and REV accounts. Rather, his claims present *legal defenses* – namely, that the accounts were charged off and sold/transferred, so they should have been reported with a zero balance because there was no longer any obligation owed to PENFED and REV. *See* SAC ¶¶ 36, 77, 133; Feb. 7, 2023 Report & Recommendation at 8–10. To be sure, Plaintiff does not contest the debts' existence, or the original amount owed on the accounts. "Rather, as with a pure challenge to a debt's legal validity, the plaintiff here question[s] the legal relationship of different parties to these debts, which is a task for a court." *Chuluunbat*, 4 F.4th at 568.

Indeed, as the Seventh Circuit recognized in *Chuluunbat*, "whether a debt was assigned— absent a previous decision by a tribunal—is a question that requires a legal determination, placing it outside the competency of a consumer reporting agency." *Id.* at 568. Likewise, whether LNRS should have reported an account balance of zero because the accounts were charged off and sold is also a legal inaccuracy. Plaintiff is apparently claiming that a charge off has the legal effect of forgiving or canceling the remaining debt owed by the Plaintiff. As discussed below, Plaintiff's contention is legally inaccurate, but, regardless, the effect of a charge off on the reporting of

8

Plaintiff's accounts is a legal question that LNRS is "neither qualified not obligated to resolve." *Perry*, 2019 U.S. Dist. LEXIS 12125, at *13–14 (internal citation and quotations omitted).

As a result, Plaintiff's allegation that LNRS inaccurately reported the PENFED and REV accounts with a past due balance owed fails to state a claim under sections 1681e(b) and 1681i of the FCRA and under section 37-20-170 of the SCCITPA. *Chuluunbat*, 4 F.4th at 569; *Perry*, 2019 U.S. Dist. LEXIS 12125, at *15.

### B. The SAC does not allege any factual inaccuracies.

Even if Plaintiff's alleged inaccuracies are somehow not legal defenses, Plaintiff's FCRA claims still fail because he has not pointed to any viable factual inaccuracies.

Plaintiff claims that LNRS inaccurately reported a balance owed on certain of his PENFED and REV accounts that were charged off. SAC ¶¶ 35, 77, 79, 133; *see also* Am. Compl. Ex. E at 18–25 ("UNPAID BALANCE REPORTED AS A LOSS BY CREDIT GRANTOR/CHARGE OFF."). "A charge off, as defined in Black's Law Dictionary, is '[t]o treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt.'" *Artemov,* 2020 U.S. Dist. LEXIS 159267, at *7 (quoting Black's Law Dictionary (11th ed. 2019)). Put differently, "charging off a debt is a business practice where a creditor writes off a debt and no longer considers the account balance an asset for accounting purposes." *Artemov*, 2020 U.S. Dist. LEXIS 159267, at *8 (citation and internal quotation marks omitted). Importantly, "charging off an account does not equate to debt forgiveness." *Id*. at *9. The creditor may still collect the full amount of the debt. *Id*.; *see also LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1188 n.5 (11th Cir. 2010) ("The act of charging off a debt refers to a mechanism whereby creditors determine that a debt is unlikely to be repaid by the borrower and, therefore, cannot be collected. As a result, the loan is written off and deemed a loss of principal and interest. However, the charged off debt is not

9

forgiven. As in the instant case, the charged off debt may then be sold to a collection agency for further efforts toward satisfaction."); *In re Washington*, 581 B.R. 150, 158 n.15 (Bankr. D.S.C. 2017) (A "charge off is an internal accounting practice and does not have the legal effect of discharging a debtor from the underlying debt.") (internal quotation marks omitted).

It is therefore "obvious" that even if PENFED and REV "labeled plaintiff's accounts as charged off, they have no obligation to zero out the overall or past due balance." *Artemov*, 2020 U.S. Dist. LEXIS 159267, at *10–11. LNRS' alleged reporting of two PENFED accounts with a "Past Due" balance and a note stating: "UNPAID BALANCE REPORTED AS A LOSS BY CREDIT GRANTOR/CHARGE OFF," *see* Am. Compl. Ex. E at 19–20, 23–24, is "factually accurate and not misleading." *Artemov*, 2020 U.S. Dist. LEXIS 159267, at *2, 11 (granting motion to dismiss FCRA claims for failure to allege an inaccuracy where the plaintiff claimed two of his accounts were reported "as 'charged off' and 'closed' and contained a non-zero past due balance" because "listing a past due balance for a charged off account was factually accurate and not misleading.").[4]

---

[4] In the Court's Report and Recommendation on PENFED's Motion to Dismiss Plaintiff's Amended Complaint, the Court denied PENFED's Motion as to Plaintiff's FCRA claims, finding that Plaintiff's allegations about the reporting of a balance despite his accounts being charged off were sufficient to plead a claim for relief. *See* Feb.7, 2023 Report & Recommendation at 8–9. The Court relied on three cases in support of his motion, each of which are distinguishable from the facts alleged against LNRS. *Burns v. Trans Union, LLC,* No. 4:18-cv-03120, 2019 U.S. Dist. LEXIS 139613 (D.S.C. Aug. 19, 2019); *Slaughter v. Equifax Info. Servs., LLC*, No. 4:20-cv-15, 2020 U.S. Dist. LEXIS 158648 (E.D. Va. Aug. 12, 2020); *Harden v. Residential Credit Sols, Inc.*, No. 3:16-cv-668, 2017 U.S. Dist. LEXIS 105342 (E.D. Va. June 12, 2017). Specifically, in denying motions to dismiss, those Courts relied on the fact that the CRAs reported a monthly payment amount despite the account being charged off. *Burns*, 2019 U.S. Dist. LEXIS 139613, at *8–11; *Slaughter*, 2020 U.S. Dist. LEXIS 158648, at *7–9; *Harden*, 2017 U.S. Dist. LEXIS 105342, at *10–11. Here, the exhibits attached to the Amended Complaint make clear that LNRS was *not* reporting any monthly payment amount or monthly payment history. *See* Am. Compl. Ex. E at 18–25, 31–33, 38–40.

Because the SAC fails to plausibly allege that LNRS reported inaccurate information, Plaintiff's FCRA and SCCITPA claims should be dismissed.

**II.     Plaintiff's section 1681s-2(b) claim must also be dismissed because Plaintiff fails to allege a CRA sent his dispute to LNRS.**

Section 1681s-2 of the FCRA identifies the duties of "furnishers" of information under the FCRA.  To state a claim under section 1681s–2(b), a plaintiff must plead that (1) he notified a consumer reporting agency of the disputed inaccurate information, (2) the consumer reporting agency notified the furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information.  *Wilson v. Wells Fargo Bank, N.A.*, No. 2:20-cv-02780-BHH-MHC, 2021 U.S. Dist. LEXIS 95171, at *10–11 (D.S.C. Apr. 30, 2021), *R&R adopted by*, 2021 U.S. Dist. LEXIS 94579; *Perkins v. S.C. Community Bank*, 3:14-cv-3245, 2017 U.S. Dist. LEXIS 4499, at *5–6 (D.S.C. Jan. 12, 2017).

Importantly, the Fourth Circuit has explained, "a furnisher's duty to investigate is not triggered until it receives notification of a dispute from a consumer reporting agency." *Mavilla v. Absolute Collection Serv., Inc.*, 539 F. App'x 202, 208 (4th Cir. 2013) (citing 15 U.S.C. § 1681s–2 (b)(1)); *see also Hoback v. Synchrony Bank*, No. 6:19-cv-18, 2019 U.S. Dist. LEXIS 97401, at *5 (W.D. Va. June 11, 2019) ("The private right of action available to a consumer under the FCRA arises under § 1681s-2(b) once that consumer disputes incorrect information with a [CRA] and that [CRA] informs the furnisher.").  Where a complaint fails to allege that the plaintiff sent a dispute to a CRA and the CRA then forwarded that dispute to the furnisher, any section 1681s-2(b) claim must be dismissed. *Wilson*, 2021 U.S. Dist. LEXIS 95171, at *11 (dismissing section 1681s-2(b) claim because "Plaintiff does not allege any facts showing that [the furnisher] received notice of a dispute from Experian or any other consumer reporting agency."); *Perkins*, 2017 U.S. Dist. LEXIS 4499, at *6–7 (dismissing section 1681s-2(b) claim because the plaintiff "did not

11

allege that the [furnisher's] duties under § 1681s-2(b) were triggered by a notification from a CRA, as required by statute and case law.").

Plaintiff's section 1681s-2(b) claims against LNRS fail for at least two reasons. *First*, Plaintiff cannot plausibly allege that LNRS is both a furnisher and a CRA. *See* SAC ¶¶ 15, 16, 30–32. Indeed, the definition of "furnisher" specifically provides that "[a]n entity is *not* a furnisher when it . . . is acting as a 'consumer reporting agency.'" 16 C.F.R. § 660.2(2) (emphasis added). Accordingly, the entire premise of Plaintiff's section 1681s-2(b) claim – that LNRS is a furnisher while also acting as a CRA – is without merit.

*Second*, the SAC contains no allegation that a CRA sent notice of Plaintiff's dispute to LNRS. *See generally* SAC. This is fatal to Plaintiff's section 1681s-2(b) claim. *See Wilson*, 2021 U.S. Dist. LEXIS 95171, at *11; *Perkins*, 2017 U.S. Dist. LEXIS 4499, at *6–7. Without notice of a dispute sent by a CRA, LNRS had no duties triggered under section 1681s-2(b) and cannot be held liable for any alleged violations.

Rather, the SAC only alleges that *Plaintiff* himself sent his disputes to LNRS. SAC ¶¶ 47, 50. Direct disputes to a furnisher do not trigger the furnisher's duties under section 1681s-2(b). *Mavilla v. Absolute Collection Serv.*, No. 5:10-cv-412, 2013 U.S. Dist. LEXIS 3925, at *16 (E.D.N.C. Jan. 10, 2013) ("A consumer who fails to initiate the dispute with the CRA under section 1681i and instead deals directly with the furnisher, whether informally or formally through a furnisher direct dispute, cannot invoke any FCRA remedies whatsoever.") (citation omitted). Accordingly, Plaintiff's section 1681s-2(b) claim against LNRS should be dismissed.

### III. Plaintiff's defamation claim must be dismissed because Plaintiff alleges no viable inaccuracy, and the claim is preempted by the FCRA.

Plaintiff's defamation claim fails for the same reason as his other claims—there is no alleged inaccuracy. To allege a claim for defamation under South Carolina law, Plaintiff must

12

plausibly allege: "(1) *a false and defamatory statement was made*; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Fountain v. First Reliance Bank*, 398 S.C. 434, 441 (2012) (emphasis added). To be false and defamatory, a statement must be both inaccurate and defame the plaintiff's reputation. *AIDS Counseling and Testing Ctrs v. Group W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990) ("[T]rue statements, no matter how damaging to the plaintiff, may never provide the foundation for a defamation claim.") (internal quotations omitted); *see also Robins v. Nat'l Enquirer, Inc.*, No. 3:95-224-17, 1995 U.S. Dist. LEXIS 22872, at *5 (D.S.C. Apr. 10, 1995) ("[M]erely offensive or unpleasant statements are not defamatory.").

For the reasons set forth above, *see* Section I, the SAC fails to plausibly allege any inaccuracy reported by LNRS. Without such, Plaintiff's defamation claim also fails and, accordingly, should be dismissed. *See AIDS Counseling and Testing Ctrs.*, 903 F.2d at 1004.

Furthermore, Plaintiff's defamation claim is based on the same allegations as his FCRA claim. *See* SAC ¶ 129. The FCRA expressly pre-empts state law claims, including Plaintiff's defamation claim, absent a showing of malice or willful intent to injure:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e); *see also Ross v. F.D.I.C.*, 625 F.3d 808, 817 (4th Cir. 2010).

The SAC is devoid of any factual allegations that LNRS acted with malice or willful intent to injure. Rather, the SAC only asserts legal conclusions that "[t]he defendants acted maliciously, with ill will, recklessly or wantonly, or with conscious indifference to the plaintiff's rights in

13

violation of 15 U.S.C. § 1681h(e). *See* SAC ¶¶ 21, 93, 132. On a motion to dismiss, the Court is not required to accept as true legal conclusions and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The SAC does not plausibly allege facts that show LNRS acted with malice to overcome FCRA preemption. Plaintiff's defamation claim is, therefore, preempted by the FCRA and subject to dismissal. *See Danielson v. USAA Federal Savings Bank*, No. 6:17-cv-02849, 2018 U.S. Dist. LEXIS 92928, at *6 (D.S.C. June 1, 2018) (dismissing defamation claim for failure to plausibly allege malice or willful intent).

## CONCLUSION

For the foregoing reasons, LNRS respectfully requests the Court: (1) grant its Motion to Dismiss, (2) dismiss the claims asserted against LNRS in the Second Amended Complaint, and (3) grant any further relief the Court may deem appropriate.

Dated: June 6, 2023.

/s/ William J. Farley III
William J. Farley III
Fed. Bar No. 12004
Troutman Pepper Hamilton Sanders LLP
301 S. College Street, Suite 3400
Charlotte, NC 28202
Telephone: 704.998.4099
Email:  Will.Farley@troutman.com

*Counsel for Defendant LexisNexis Risk Solutions Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of June 2023, a true and correct copy of the foregoing was filed electronically via the Court's CM/ECF system and also sent via U.S. Mail to the following:

Nelson L. Bruce
PO Box 3345
Summerville, SC 29484
*Pro Se Plaintiff*

/s/William J. Farley III
William J. Farley III