UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Nelson L. Bruce, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No.: 2:22-cv-02211-BHH-MGB |
| Pentagon Federal Credit Union; *et al.* | ) ) | District Judge Bruce Howe Hendricks |
| Defendants. | ) ) ) | Magistrate Judge Mary Gordon Baker |

**DEFENDANT PENTAGON FEDERAL CREDIT UNION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Nelson L. Bruce's first amended complaint [ECF 31] ("the FAC") asserted seven claims against Pentagon Federal Credit Union ("PenFed"). PenFed filed a motion to dismiss the FAC in its entirety [ECF 40]. The Court issued a Report and Recommendation on February 7, 2023 [ECF 66] ("the R&R"). The R&R recommended dismissal of four of the seven claims asserted in the FAC. Great American objected to the R&R to the extent it recommended against dismissal of the remaining three claims [ECF 68]. While PenFed's objections were pending, the Court granted leave, and Bruce filed a second amended complaint on May 25, 2023 ("the SAC") [ECF 98].

With respect to PenFed, the SAC is more significant in terms of what it omits than what it adds. The SAC repeats five of the same claims that the FAC asserted against PenFed but omits two of the claims the Court previously recommended dismissing. Perhaps more importantly, the SAC does not contain any new factual allegations that are material to the five claims it asserts against PenFed. For the same reasons previously explained in the R&R and PenFed's objections to the R&R, Bruce has not alleged any viable claims against PenFed.

1

Like its predecessors, the SAC alleges that PenFed defamed Bruce and violated several statutes by informing credit reporting agencies ("CRAs") that PenFed had charged off three accounts after Bruce failed to pay debts. None of the allegations in Bruce's 40-page SAC expressly deny that Bruce defaulted on his debts. Instead, the gravamen of the SAC is that PenFed allegedly (1) did not mark the accounts as "disputed" when Bruce raised meritless challenges, and (2) continued to report the accounts after charging them off and selling them to third parties or assigning them to debt collectors. (*See* SAC ¶¶ 36, 68.)

The SAC asserts claims against PenFed in the sections titled "SECOND CAUSE OF ACTION" through "SIXTH CAUSE OF ACTION" for: (I) alleged violations of the Fair Credit Reporting Act ("FCRA"); (II) defamation; (III) alleged violations of the South Carolina Consumer Protection Code ("SCCPC"); (IV) alleged violations of the Uniform Commercial Code ("UCC"); and (V) alleged violations of the South Carolina Unfair Trade Practices Act ("SCUTPA").

The SAC fails to allege a coherent factual basis to support any of Bruce's claims. Indeed, Bruce's own exhibits include letters dated April 30, 2022, and May 3, 2022, that admit Bruce does not know if PenFed reported inaccurate information about the relevant accounts: "I am not saying they are reporting right or wrong. I am just saying that I am not 100 percent sure if they are." (Compl. [ECF 1] at Ex. A [ECF 1-2] at pp. 48 of 58 & 50 of 58.) The Court should not allow Bruce to use the discovery process for a fishing expedition when he admits he does not know if his claims are valid and has now had three opportunities to state a viable claim.

**FACTUAL BACKGROUND**

The SAC identifies three alleged errors in the information PenFed furnished to credit reporting agencies. First, it alleges that PenFed reported a credit card account after having sold the account sometime "prior to January 22, 2018[.]" (SAC ¶ 67.) In support of the allegation that

2

PenFed sold the account "prior to January 22, 2018," Bruce cites Exhibit C to his initial complaint. (*Id.*) Exhibit C does not support Bruce's allegation, however, because it includes a February 8, 2021, letter clearly stating that the relevant accounts, including the credit card account, "are legally established debts for which you are liable to repay."[1] (Compl. at Ex. C [ECF 1-4].) Bruce also alleges that PenFed "securitized" an auto loan to sell it on the secondary market. (SAC ¶ 72.)

Second, the SAC alleges that PenFed reported accounts that it had "charged-off." (*Id.* ¶ 68.) Bruce incorrectly claims PenFed was required to report accounts it had charged-off as having a "zero balance" despite the fact that Bruce still owes the debts. (*Id.*)

Third, the SAC alleges that the information PenFed furnished to credit reporting agencies was inaccurate because the accounts reported were not marked as disputed. (*Id.* ¶¶ 36.) Rather than listing the specific disputes he claims should have been reported, Bruce states that he "disputed information as evidenced by his disputes" and references the documents included in Exhibit A to his initial complaint. (*Id.*)

The exhibit Bruce cites includes six written disputes he claims he submitted to credit reporting agencies between 2018 and 2022 in connection with three PenFed accounts. (Compl. at Ex. A [ECF 1-2].) The details for each written dispute are as follows:

| DATE | RECIPIENT | EXHIBIT PAGE NO. |
|---|---|---|
| June 11, 2018 | TransUnion | 43 of 58 |
| September 24, 2021 | Equifax | 2 of 58 |
| September 25, 2021 | Experian | 36 of 58 |
| November 2, 2021 | Experian | 41 of 58 |
| April 30, 2022 | Experian | 50 of 58 |
| May 3, 2022 | Equifax | 48 of 58 |

---

[1] "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), Fed.R.Civ.P., the exhibit prevails." *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

(*Id.*)[2]

The documents are not models of clarity, but none of the written disputes assert that PenFed reported an account as having a balance at a time when PenFed had sold the account. (*See id.*) Although the written disputes identify other supposed errors, the SAC does not identify those supposed errors as independent bases for any of the claims Bruce is asserting. (*Id.*; *see* SAC.)

The two most recent written disputes attached to Bruce's complaint do not identify any alleged errors whatsoever. (Compl. at Ex. A, pp. 48 & 50.) To the contrary, both letters expressly acknowledge that Bruce does not know if PenFed reported incorrect information: "I am not saying they are reporting right or wrong. I am just saying that I am not 100 percent sure if they are." (*Id.*)

Finally, the exhibits to Bruce's complaints also include several incoherent documents Bruce claims he sent directly to PenFed. (*See* Compl. at Ex. A, pp. 23 of 58, 30 of 58, & 53 of 58.) For example, a "Verified Cardholder Billing Error Dispute" dated January 28, 2021, states that "[t]he monthly statements are inaccurate and a possible violation of GAAP [Generally Accepted Accounting Principles] for refusing to credit my account because it should reflect a bank asset and liability **(funds owed to me)** per GAAP, and not a debt[,]" but it also states that Bruce is not raising "a complaint about [his] legal obligation to pay back money owed," "a complaint about fraudulent creation of the account or an invalid agreement," "a refusal to pay," or "whether [he] accepted the terms and conditions and benefitted." (*Id.* at 23-25 of 58 (emphasis in original).)

## STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'"

---

[2] Bruce also alleges that he raised "verbal dispute[s]" with LexisNexis Risk Solutions, Inc. ("LexisNexis") on June 2 and August 15, 2022. (SAC ¶¶ 47 & 50.) The amended complaint does not, however, identify any specific errors Bruce raised with LexisNexis. (*See id.*)

4

*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This Court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). "The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support" the legal conclusion. *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001).

"Although the court must liberally construe a pro se complaint, the United States Supreme Court has made it clear a plaintiff must do more than make conclusory statements to state a claim." *Glenn v. Moore*, No. 3:22-2595-CMC-SVH, 2022 WL 3214989, at *1 (D.S.C. Aug. 9. 2022) (citing *Ashcroft*, 556 U.S. at 677-78). "Rather, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face, and the reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions." *Id.* (citing *Iqbal*. 556 U.S. at 678-79). "In considering motions to dismiss under Rule 12(b)(6), the court may properly consider exhibits attached to the complaint." *Smith v. McCarthy*, 349 F. App'x 851, 856 (4th Cir. 2009) (citing *Fayetteville Invs.*, 936 F. 2d at 1465); *see also* Fed. R. Civ. P. 10(c).

## ARGUMENT

**I.    BRUCE'S FCRA CLAIM FAILS.**

Bruce alleges that PenFed is a "furnisher" of consumer credit information for purposes of the FCRA. (SAC ¶ 10.) The FCRA sets forth two general requirements for furnishers: (1) 15 U.S.C. § 1681s-2(a) ("Sub-section (a)") creates a duty to provide accurate information; and (2) 15 U.S.C. § 1681s-2(b) ("Sub-section (b)") creates a duty to investigate the accuracy of reported information. The FCRA "explicitly bars private suits for violations of § 1681s-2(a)[.]" *Saunders v. Branch*

*Banking & Tr. Co. of VA*, 526 F.3d 142, 149 (4th Cir. 2008). Accordingly, Bruce cannot state a claim under Sub-section (a), and he is limited to Sub-section (b).

Significantly, the duties established by Sub-section 2(b) do not arise until a furnisher receives notice of a dispute from a credit reporting agency. *Freeman v. Equifax, Inc.*, No. 6:12–845–HMH, 2012 WL 2502693, at *2 (D.S.C. 2012). "'[N]otice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b).'" *Id.* (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009)).

To prevail on a claim under Sub-section (b), a consumer must show: "(1) that she notified a CRA of the disputed information, (2) that the CRA notified the Defendant furnisher of the dispute, and (3) that the furnisher then failed to reasonably investigate and modify the inaccurate information." *Timms v. USAA Federal Savings Bank*, No. 3:18-cv-01495-SAL, 2020 WL 12618897, at *9 (D.S.C. Aug. 20. 2020) (quoting *Long v. Pendrick Capital Partners II, LLC*, 374 F. Supp. 3d 515, 527 (D. Md. 2019)); *see also Shaunfield v. Experian Info. Sols., Inc.*, 991 F. Supp. 2d 786, 805 (N.D. Tex. 2014) (applying the same general elements to allegations for purposes of a motion to dismiss). "A report is inaccurate when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (quotations omitted); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016) ("not all inaccuracies cause harm[.]").

As previously explained, Bruce alleges that PenFed's credit reporting was inaccurate for three reasons: (1) PenFed allegedly reported loans after having sold them; (2) PenFed allegedly reported loans it had charged off; and (3) PenFed allegedly reported loans without marking them as disputed. None of those issues, as alleged, provides an adequate basis for an FCRA claim.

### 1. Bruce Allegations Regarding Sold Loans Do Not State a Viable Claim.

The SAC fails to allege facts related to the sale of loans that, if true, would establish an actionable claim under the FCRA for two reasons. First, inaccurate credit reporting is not actionable unless it is likely to cause an adverse effect. *Dalton*, 257 F.3d at 415 (quotation omitted); *see also Spokeo, Inc.*, 578 U.S. at 342. Bruce does not claim the relevant account appeared on his credit report twice as a result of being reported by both PenFed and a subsequent owner. Nor does Bruce allege that listing the creditor as PenFed, rather than the subsequent owner, rendered his credit report inaccurate in any other way. In the absence of any other inaccuracies, listing the wrong creditor on a loan is not likely to have an "adverse effect" on Bruce's ability to obtain credit, and, therefore, it is not actionable. *Id*.

The R&R did not reject the factual premise or the logic of PenFed's argument that listing the wrong creditor was not, by itself, likely to have an adverse effect on Bruce's ability to obtain credit. Nevertheless, the R&R found that Bruce alleged a viable claim under the test adopted in *Dalton*. (R&R at 8.) Under *Dalton*, "[a] report is inaccurate when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Dalton*, 257 F.3d at 415 (quotation omitted). The R&R reasoned that "[a]n account that shows an outdated creditor would presumably fall under the category of 'patently incorrect' information." (R&R at 8.) It appears that the R&R interprets *Dalton* as imposing an "adverse effect" requirement when information is "misleading" but not when it is "patently incorrect."

The relevant passage in *Dalton* is somewhat ambiguous as to whether the "adverse effect" requirement applies to "patently incorrect" information. *See id*. This Court does not need to parse the relevant sentence in *Dalton*, however, because the R&R's interpretation, even if plausible,

7

cannot be squared with the Supreme Court's subsequent holding in *Spokeo* that harmless inaccuracies are not actionable.

In *Spokeo*, the Supreme Court held that plaintiffs do not automatically have standing to sue for every technical violation of the FCRA because "not all inaccuracies cause harm or present any material risk of harm." 578 U.S. at 342. Using "an incorrect zip code" as an example, the Court noted "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id*. Since an "incorrect zip code" would fall under the category of "patently incorrect" information, the R&R's holding that harmless FCRA violations are actionable to the extent they involve "patently incorrect" information cannot be reconciled with *Spokeo*.

Bruce has never identified any harm that resulted, or could have resulted, from the wrong entity being identified as the creditor for an account listed in Bruce's credit report. Since harmless inaccuracies are not actionable, the Court should dismiss Bruce's FCRA claim to the extent it is based on his allegation that PenFed reported an account after selling it.

Second, Bruce does not allege, and his exhibits do not show, that he "notified a CRA of the disputed information" in relation to sold loans. *Timms*, 2020 WL 12618897, at *9 (quoting *Long*, 374 F. Supp. 3d at 527). The six written disputes included in Exhibit A to Bruce's initial complaint do not assert that PenFed reported a loan after having sold it. (Compl. at Ex. A.)

The R&R correctly acknowledged that the first element of an FCRA claim requires a plaintiff to establish "'that he or she notified the consumer reporting agency of the disputed information'" before suing. (R&R at 6 (quoting *Ausar-El v. Barclay Bank Del.*, PJM-12-082, 2012 WL 3137151, at *3 (D. Md. July 31, 2012).) The R&R found, however, that Exhibit A to the original complaint shows that Bruce can satisfy the first element with respect to his claim that PenFed violated the FCRA in connection with an account it sold but continued reporting.

The R&R cited pages 2-6 and 36-39 of Exhibit A to Bruce's original complaint in finding that Bruce informed a CRA of the disputed information. (R&R at 10.) The R&R states that "Exhibit A includes several letters from Plaintiff to credit reporting agencies disputing the accuracy of the Plaintiff's accounts as reported by PenFed, including PenFed's failure to report the charged off accounts with a zero balance." (*Id.* (citing Pl.'s Ex. A [ECF 1-2] at 2-6, 36-39).) The fact that Bruce disputed reports for showing that balances were due on charged off accounts does not mean, however, that he disputed reports for listing PenFed as the creditor after it sold an account. Neither the complaint nor Exhibit A, including the specific pages cited by the R&R, show that Bruce informed a CRA that he disputed a report for listing PenFed as the creditor after it sold an account.

Bruce claims he notified a CRA of the dispute by sending a letter in May of 2022 that requests a "reinvestigation of every piece of information that was allegedly being reported[.]" (Compl. ¶ 59; *see* Pl.'s Ex. A at 48-50.) That broad and sweeping request is not sufficient, however, because a "furnisher of information need investigate only what is contained in the CRA's dispute notice as to the nature of the dispute." *Edeh v. Midland Credit Management, Inc.*, 413 F. App'x 925, 926 (8th Cir. 2011); *Alston v. United Collections Bureau, Inc.*, No. CIV.A. DKC 13-0913, 2014 WL 859013, at *8 (D. Md. Mar. 4, 2014) (citing *Johnson v. MBNA Am Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004)); *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (furnisher's investigation was "reasonable given the scant information it received regarding the nature of [the consumer's] dispute"). Needless to say, Bruce's request for a "reinvestigation of every piece of information" was not sufficiently specific to notify a CRA or PenFed that he disputed a report because it listed PenFed as the creditor on an account it had sold.[3]

---

[3] Exhibit D to Bruce's original complaint includes letters Bruce apparently sent to the CRAs demanding millions of dollars to settle litigation 25 days before he initiated this action. The settlement demands indicate that PenFed sold loans. As explained in Equifax Information Services,

9

  2.  <u>Bruce's Allegations Regarding Charged-Off Loans Do Not State a Viable Claim.</u>

Bruce claims PenFed violated the FCRA because it did not report charged-off loans with a "zero balance[.]" (SAC ¶ 68.) The R&R found that the FAC stated a viable FCRA claim based on cases that found it misleading to continue to report the amount of a monthly payment after an account is charged off. (R&R at 9 (citing *Burns v. Trans Union, LLC*, No. 4:18-03120-MGL, 2019 WL 3890833, at *4 (D.S.C. Aug. 19, 2019).) Respectfully, the cases the Court cited are inapposite.

In *Burns*, the plaintiff alleged that the defendant reported "a $70.00 monthly payment despite her account being closed and charged off." 2019 WL 3890833, at *3. The Court found that it could be misleading to report that a monthly payment is due on a charged-off account. *See id*. Critically, however, the court also noted that "the total amount of the loan remains due and owing" even though "a monthly payment is no longer due[.]" *Id*. at *1. In other words, the credit report was misleading because it indicated that monthly payments continued to accrue, not because the report indicated that the total amount of the unpaid balance on the loan remained due and owing.

Other courts have made the same distinction. As the U.S. District Court for the Eastern District of New York has explained, "[m]erely listing a past due balance—an undisputed legal obligation—for a charged off account is quite different than incorrectly reporting a future monthly responsibility when such requirement no longer exists." *Artemov v. TransUnion, LLC*, No. 20-CV-1892 (BMC), 2020 WL 5211068, at *5 (E.D.N.Y. Sept. 1, 2020). Like Bruce, the plaintiff in *Artemov* argued that a creditor must report that an account has a zero balance after it is charged off. *Id*. at *6. The court unequivocally and emphatically rejected that argument:

---

LLC's motion to dismiss, however, Bruce's settlement demands are not disputes for purposes of the FCRA. (Equifax Mem. [ECF 100] at 10-11.) Furthermore, Bruce sued before the 30-day deadline for the CRAs to investigate the allegations in his settlement demands would have expired even if the FCRA did apply. 15 U.S.C. 1681i(a)(1); *see also* 15 U.S.C. 1681s-2(b)(2).

> If I were to adopt plaintiff's reasoning—that a charge off categorically precludes a creditor from reporting the total past due amount—it would vitiate the entire existence and purpose of credit reporting companies: to present an evenhanded and fair representation of a particular consumer's ability and willingness to pay off debt, so as to encourage a creditor to take a risk and extend a line of credit to a particular consumer.

*Id.* (citation omitted).

Several other courts have held that it is not misleading for a creditor to report that the unpaid balance of an account remains due and owing after the account has been charged off.[4] *See, e.g.*, *Makela v. Experian Info. Sols., Inc.*, No. 6:21-cv-00386-MC, 2021 WL 5149699, at *3 (D. Or. Nov. 4, 2021); *Christian v. Equifax Info. Servs., LLC*, No. 18-13862, 2020 WL 2087869, at *4 (E.D. Mich. Apr. 30, 2020); *cf. Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1297 (11th Cir. 2016); *Kelly v. Wolpoff & Abramson, L.L.P.*, 634 F. Supp. 2d 1202, 1210 (D. Colo. 2008).

This case is similar to *Artemov*, not *Burns*, because Bruce does not claim PenFed reported that monthly payments continued to accrue after it charged off the relevant accounts. In fact, the credit reports included in Exhibit A to Bruce's original complaint prove the opposite because they state that the accounts were charged off, state the total amount charged off, and do not list any monthly payment dates or amounts. (*See* Pl.'s Ex. A at 14.) For example, the following report included in Exhibit A cannot be construed as inaccurate based on the rationale of *Burns*:

---

[4] Moreover, it is not inaccurate to report that monthly payments are still accruing if the creditor has not accelerated the debt even though it has charged off the account. *See Christian*, 2020 WL 2087869, at *4 ("Thus, Christian was still able and obligated to make, and Ginny's was still able to collect, monthly payments on the Account that were less than the full balance, such that Ginny's reporting of a $25 monthly payment was not inaccurate.")



(Pl.'s Ex. A at 14.)

The foregoing example does not suggest monthly payments continue to accrue because it does not list a monthly payment amount. (*Id*.) In fact, it clearly suggests that monthly payments are no longer accruing because the table reflecting Bruce's payment history uses the acronym "CO" for "Charge Off" instead of listing the number of days by which any monthly payments were late. Accordingly, Bruce's own exhibit proves conclusively that his FCRA claim fails to the extent it is predicated on allegations about the manner in which PenFed reported charged off accounts.

3.  PenFed Was Not Obligated to Mark Bruce's Accounts as Disputed.

Finally, Bruce alleges that PenFed violated the FCRA because the accounts reported were not marked as disputed." (SAC ¶ 36.) The SAC does not list the specific disputes Bruce claims

PenFed should have noted. Instead, it incorporates numerous documents included in Exhibit A to Bruce's initial complaint. (*Id*.)

As previously explained, there is no private right of action under Sub-section (a) of the FCRA. *Saunders*, 526 F.3d at 149. As a result, "a consumer, such as Plaintiff in this case, does not have a private right of action against a furnisher who fails in the first instance to report a dispute to a CRA." *Timms*, 2020 WL 123618897, at *15. This Court has rejected the argument that "a furnisher must report an account as disputed upon receipt of the first [notice from a CRA]." *Id*.

The circumstances under which a consumer can recover under Sub-section (b) for a furnisher's failure to mark an account as disputed are limited. *See id*. "[F]or liability to attach, the failure to report the dispute must 'create a materially misleading impression.'" *Id*. (quoting *Saunders*, 526 F.3d at 148). "Stated differently, '[a] furnisher is not liable for inaccurate reporting for merely failing to report a meritless dispute, because reporting an actual debt without noting that it is disputed is unlikely to be materially misleading.'" *Id*. (quoting *Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 853 (E.D.V.A. 2017). "It is the failure to report a bona fide dispute, a dispute that could materially alter how the reported debt is understood, that gives rise to a furnisher's liability under 15 U.S.C. § 1681s–2(b)." *Wood*, 277 F. Supp. 3d at 853 (quotation omitted); *see also Seamans v. Temple Univ. Gorman v. Wolopoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009) ("A furnisher does not report 'incomplete or inaccurate information . . . simply by failing to report a meritless dispute, because reporting an actual debt without noting that it is disputed is unlikely to be materially misleading.")

The SAC does not state a viable claim under Sub-section (b) because it does not identify a *bona fide* dispute that PenFed was required to note after having received a notice of dispute from a CRA. As explained in Sections I.A. and I.B. above, Bruce's disputes related to charge-offs and

13

PenFed's sale of the credit card account are meritless. Bruce does not identify any other disputes he claims were *bona fide*, let alone explain why any inaccuracies were material in such a manner that they could be "expected to have an adverse effect" on Bruce's ability to obtain credit. *Dalton, Inc.*, 257 F.3d at 415 (quotations omitted); *see also Spokeo*, 578 U.S. at 342. Accordingly, the Court should dismiss Bruce's FCRA claim with prejudice.

## II.     BRUCE'S DEFAMATION CLAIM FAILS.

The R&R held that Bruce's defamation claim "is preempted by the FCRA absent an allegation of malice or willful intent to injure Plaintiff." (R&R at 10 (citing 15 U.S.C. 1681h(e)).) The R&R found, however, that the FAC adequately alleged malice because it "alleges that even after Plaintiff told PenFed that he disputed the accuracy of his accounts, PenFed failed to investigate and reported the alleged inaccuracy to third parties." (R&R at 11.) The R&R cited two opinions in holding that a reasonable inference of malice can be drawn based only on allegations that a defendant failed to correct an inaccuracy after being notified of it, *Hoback v. Synchrony Bank*, No. 6:19-CV-18, 2019 WL 2438794 (W.D. Va. June 11, 2019), and *Potter v. FIA Card Servs., N.A.*, No. 2:12-CV-1722-RMG, 2012 WL 13005806 (D.S.C. Sept. 28, 2012). (R&R at 11.)

Respectfully, *Hoback* and *Potter* are distinguishable because Bruce has not adequately alleged that PenFed reported material information inaccurately, received notice of the inaccuracy, and then failed to correct it. As explained in Section I.A., Bruce has not adequately alleged that he raised a dispute about PenFed reporting loans it had sold, and, in any event, listing the wrong entity as the creditor on a valid account is harmless. As explained in Section I.B., the SAC does not identify any potential inaccuracies in the information PenFed reported about charged off accounts. Under those circumstances, no rational factfinder could possibly infer malice.

14

A case that is more analogous to this one than those cited by the R&R is *Stoer v. VW Credit, Inc.*, No. GJH-17-3203, 2018 WL 3608776 (D. Md. July 26, 2018). In *Stoer*, the Court dismissed a defamation claim because a furnisher responded to the plaintiff's disputes by "continu[ing] to tell him that the late payments existed, which contradicts the conclusory assertions that the [furnisher] entertained serious doubts about the accuracy of the statement or knew them to be false when made to reporting agencies." 2018 WL 3608776, at *3. Similarly, PenFed responded to Bruce in an April 11, 2022, letter by stating that Bruce's prior disputes "were previously investigated," that PenFed "properly responded to prior correspondences multiple times," and that PenFed had "provided evidence substantiating the obligations." (Pl. Ex. C. at 3.)

Indeed, Bruce's own exhibits show that even Bruce himself was unsure of whether PenFed had reported inaccurate information. Bruce admitted that fact in his most recent communication to the CRAs: "I am not saying [PenFed] is reporting right or wrong. I am just saying I am not 100% sure if they are." (Pl.'s Ex. A at 48.) Since Bruce's own exhibits directly undercut any possible inference of malice by contradicting the conclusory assertion that PenFed intentionally reported inaccurate information to CRAs, the Court should dismiss Bruce's defamation claim. *Stoer*, 2018 WL 3608776, at *3.

## III.    BRUCE'S SCCPC CLAIM FAILS.

The SCCPC explicitly states that it does not apply to "federally chartered credit unions[.]" S.C. Code § 37-1-202(10). As its name denotes, Pentagon Federal Credit Union is a federally chartered credit union. Therefore, the SCCPC is inapplicable to PenFed under the plain language of the statute itself. S.C. Code § 37-1-202(10).

Furthermore, the FCRA would preempt any claim against PenFed based on the facts alleged in the amended complaint. This Court recently recommended the dismissal of a claim

15

Bruce asserted against another credit union because any such claim would be wholly pre-empted by the FCRA. (9.12.2022 Report & Recommendation, Ex. 1 at 5.) The Court also held that Bruce's SCCPC claim against another financial institution was pre-empted in *Bruce v. Bank of America, N.A.*, No. 2:19-3456-BHH, 2020 WL 6737647, *2 (D.S.C. Nov. 17, 2020).

This Court's opinions in Bruce's prior cases are well-founded. 15 U.S.C. § 1681t(b)(1)(F) states that "[n]o requirement or prohibition may be imposed under the laws of any State ... with respect to any subject matter regulated under ... section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies[.]" As a result, the FCRA preempts all claims against furnishers arising under state statutes. (9.12.2022 Report & Recommendation, Ex. 1 at 5.)

Moreover, the SCCPC applies only to consumer reporting agencies, not furnishers of information. *Muntean v. Discover Financial Services*, No. 6:13–1151–HMH, 2013 WL 2636003, n.3 (D.S.C. June 12, 2013) ("[T]he proscriptions included in § 37-20-170 only mention CRAs and does not regulate furnishers of information.") Bruce does not—and cannot—allege that PenFed is a consumer reporting agency. (*See generally* SAC.)

## IV.   BRUCE'S UCC CLAIM FAILS.

Bruce alleges that he submitted a request for accounting to PenFed under SC Code § 36-9-210 and that PenFed did not respond.[5] (SAC ¶¶ 146-149.) Bruce's own exhibits directly refute that claim. As Bruce points out, Exhibit A to his initial complaint includes a document titled "REQUEST FOR ACCOUNTING" dated April 4, 2022. (Compl. at Ex. A, p. 53.) He omits, however, that Exhibit C includes the response PenFed sent to Bruce when it received the request

---

[5] Bruce appears to cite sections of the model Uniform Commercial Code. (*See* SAC ¶¶ 127-128.) Presumably, he is referring to the version of the UCC adopted by South Carolina.

seven days later on April 11, 2022. (Compl. at Ex. C.) As stated in the response, PenFed had already responded to multiple prior requests by providing "evidence substantiating the obligations." (*Id.*) Bruce does not identify any specific information PenFed was required to, but did not, provide in the many written communications it sent to him.

The R&R found that the FAC stated a claim for violations of the UCC based on the allegation that PenFed did not comply with an April 4, 2022, request for an "'authenticated record of accounting[.]'" (R&R at 14 (quoting Pl.'s Ex. A at 53).) However, the April 4, 2022, letter is far from a model of clarity. For example, it confusingly states that Bruce is "not requesting a statement of account, for an authenticated record of the accounting." (Pl.'s Ex. A at 53.) Bruce has never clearly identified the specific information Bruce believes he is missing or established a basis for standing by providing a rational explanation of how he has been harmed by PenFed's alleged noncompliance with the UCC. Accordingly, PenFed respectfully requests that the Court dismiss Bruce's UCC claim.[6]

## V.    BRUCE'S SCUTPA CLAIM FAILS.

As the Court explained in the R&R, Bruce's SCUTPA claim fails because Bruce has not alleged the PenFed engaged in adverse actions that adversely affected the public interest, as opposed to affecting Bruce's personal interests. (R&R at 15-17 citing *Morgan v. HSBC Bank USA, Nat'l Ass'n*, No. 6:13-CV-03593-JMC, 2015 WL 3888412, at *4 (D.S.C. June 25, 2015) (other citations omitted).) Accordingly, the Court should dismiss Bruce's SCUTPA claim.

---

[6] If the Court grants PenFed's motion with respect to all of Bruce's claims against PenFed except the UCC claim, the Court should decline to exercise supplemental jurisdiction over the UCC claim. The complaint does not, and cannot, allege that Bruce suffered any damages due to PenFed's alleged noncompliance with the UCC. As a result, the amount in controversy with respect to the UCC claim could not come close to exceeding the $75,000 threshold for diversity jurisdiction.

17

DATED: June 8, 2023.	**Respectfully submitted,**


**PENTAGON FEDERAL CREDIT UNION**


s/ G. Troy Thames
G. Troy Thames (Federal ID No.: 07713)
WILLSON JONES CARTER & BAXLEY, P.A.
4922 O'Hear Avenue, Suite 301
North Charleston, SC 29405
Telephone: (843) 284-0832
Facsimile: (843) 606-3300
Email: tthames@wjcblaw.com

Michael A. Graziano  (*pro hac vice*)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
1717 Pennsylvania Avenue, N.W., Suite 1200
Washington, D.C. 20006
Telephone: 202.659.6671
Facsimile: 202.659.6699
E-mail: mgraziano@eckertseamans.com

*Attorneys for Pentagon Federal Credit Union*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of June, 2023, I served the foregoing via first class mail on:

Nelson L. Bruce
P.O. Box 3345
Summerville, SC 29484
*Pro Se Plaintiff*

                                                  s/ G. Troy Thames
                                                  G. Troy Thames (Federal ID No.: 07713)