**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Nelson L. Bruce, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 2:22-cv-02211-BHH-MGB |
| ) | |
| Pentagon Federal Credit Union; *et al.* ) | District Judge Bruce Howe Hendricks |
| ) | Magistrate Judge Mary Gordon Baker |
| Defendants. ) | |

**PENTAGON FEDERAL CREDIT UNION'S REPLY BRIEF IN SUPPORT OF**
**ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Nelson Bruce's opposition [ECF 115] to Pentagon Federal Credit Union's ("PenFed") motion to dismiss [ECF 106] the second amended complaint focuses primarily on the Fair Credit Reporting Act ("FCRA"). The 33 pages Bruce devotes to his FCRA claim can be distilled into a single point: Bruce contends that PenFed is liable for continuing to report accounts after charging them off and selling them to third parties. (*See* Opp'n at 4-37.)

Bruce is wrong. As explained below, federal courts have consistently held that it is not misleading to report the existence and balance of a debt after charging it off. Some courts have held that it is misleading to continue reporting a monthly payment obligation, but Bruce's opposition expressly concedes that "this case has nothing to do with a monthly payment being reported[.]" (*Id.* at 30.) Since PenFed did not report ongoing monthly payments, it did not violate the FCRA by continuing to report the existence and balance of loans after charging them off.

Of course, Bruce also contends that his credit report was inaccurate because it continued to list PenFed as the creditor after PenFed allegedly sold the accounts to debt collectors. (*Id.* at 11.) Bruce's claim fails because he did not raise this issue with a credit reporting agency before

1

suing. Moreover, the opposition does not, and cannot, plausibly explain how listing the wrong creditor in an otherwise accurate credit report could possibly harm a debtor. As such, listing the wrong creditor is a harmless inaccuracy that is not actionable under the FCRA.

Bruce's other claims fail as well. His defamation claim is predicated on the same credit reporting issues as his FCRA claim, and, therefore, fails for the same reasons. Bruce concedes that he does not have a claim against PenFed under the South Carolina Consumer Protection Code. (*Id.* at 5.) Bruce's explanation as to what he claims he is entitled to receive under South Carolina's version of the Uniform Commercial Code ("UCC") is non-sensical. (*Id.* at 41.) Finally, precedential opinions issued by the Supreme Court of South Carolina foreclose Bruce's contention that he is not required to identify a harm to the public interest to pursue a claim under the South Carolina Unfair Trade Practices Act ("SCUTPA").

**I.     BRUCE'S FCRA CLAIM FAILS.**

Bruce's opposition, like his second amended complaint, is not a model of clarity. It appears, however, that Bruce's FCRA claim is predicated entirely on the allegations that PenFed continued to report loan accounts after: (1) charging off the accounts; and (2) selling the accounts to third parties.[1] (*See* Opp'n at 4-37.) Neither allegation is sufficient to state a viable claim.

1.     <u>Bruce's Allegations Regarding Charged-Off Loans Do Not State a Viable Claim.</u>

Several federal courts have held that it is not misleading for a creditor to report that a balance remains due and owing after charging off a debt for accounting purposes. *See*, *e.g.*, *Makela*

---

[1] For example, the opposition describes the debts as "illegally established[,]" but it does not allege any facts related to the actual establishment of the debts. (Opp'n at 4.) Instead, it suggests that the debts were "illegally established" because PenFed later sold them: "It appears that plaintiff does not owe nor can he be held liable for or default on an illegally established debt and as evidenced by the record, it appears that no debts PENFED [*sic*] is not the legal owner of the alleged debts as a result of a sale and or transfer of the alleged debts to a third party." (*Id.*) Needless to say, the fact that PenFed eventually sold a debt does not mean it was illegal at the time it was first established.

2

*v. Experian Info. Sols., Inc.*, No. 6:21-cv-00386-MC, 2021 WL 5149699, at *3 (D. Or. Nov. 4, 2021); *Artemov v. TransUnion, LLC*, No. 20-CV-1892 (BMC), 2020 WL 5211068, at *5 (E.D.N.Y. Sept. 1, 2020); *Christian v. Equifax Info. Servs., LLC*, No. 18-13862, 2020 WL 2087869, at *4 (E.D. Mich. Apr. 30, 2020); *cf. Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1297 (11th Cir. 2016); *Kelly v. Wolpoff & Abramson, L.L.P.*, 634 F. Supp. 2d 1202, 1210 (D. Colo. 2008). It is not misleading to continue reporting a balance due in such circumstances because charging off a debt for accounting purposes does not release the debtor. *See id.*

Consistent with the foregoing cases, this Court has acknowledged that, when an account is charged off, "the total amount of the loan remains due and owing" even though "a monthly payment is no longer due[.]" *Burns v. Trans Union, LLC*, No. 4:18-03120-MGL, 2019 WL 3890833, at *4 (D.S.C. Aug. 19, 2019). The Court did, however, hold that it can be misleading to continue reporting a monthly payment obligation, as opposed to the overall balance. *Id.*

The holding in *Burns* that it can be misleading to report a monthly payment obligation does not apply in this case because PenFed did not continue reporting a monthly payment obligation after it charged off the loans. Bruce's opposition expressly concedes the point: "this case has nothing to do with a monthly payment being reported[.]" (Opp'n at 30.) Indeed, as demonstrated in PenFed's opening memorandum, the credit reports included in Exhibit A to Bruce's complaint clearly show that PenFed did not continue reporting monthly obligations. (Def.'s Mem [ECF 106-1] at 12.) Instead, the table reflecting Bruce's payment history uses the acronym "CO" for "Charge Off" instead of listing the number of days by which any monthly payments were late. (*Id.*)

Bruce cites *Meeks v. Equifax Info. Servs., LLC*, No. 118CV03666TWTWEJ, 2019 WL 1856411 (N.D. Ga. Mar. 4, 2019), for the proposition that a creditor is required to report "a zero balance" after charging off a loan. (Opp'n at 30.) *Meeks*, however, did not hold that a credit report

3

was misleading because it showed a balance due. Rather, it held that a credit report was not misleading because it did not show a current balance. *Id.* at *7. While the *Meeks* court suggested, in dicta, that reporting a balance could be misleading in some circumstances, its rationale was based on the potential for "mislead[ing] a prospective lender on whether plaintiff still had a monthly payment obligation." *Id.* at *6. Since Bruce admits that PenFed did not report the existence of a monthly payment obligation, the dicta in *Meeks* is not applicable to this case.

Moreover, any suggestion that it would be inaccurate to report a balance after charging off a loan as bad debt cannot be reconciled with this Court's holding that "the total amount of the loan remains due and owing" after it has been charged off. *Burns*, 2019 WL 3890833. If a balance "remains due and owing" it cannot be inaccurate to report the amount that is due and owing. *Id.*

2.  Bruce's Allegations Regarding Sold Loans Do Not State a Viable Claim.

Bruce's allegation that PenFed reported loans after selling them to debt collectors is not sufficient to state a viable claim under the FCRA for two reasons. First, Bruce did not raise the issue with a credit reporting agency before suing. *See*, *e.g.*, *Ausar-El v. Barclay Bank Del.*, PJM-12-082, 2012 WL 3137151, at *3 (D. Md. July 31, 2012).

Bruce appears to concede that he did not specifically inform a credit reporting agency that PenFed was reporting a loan it had sold. Nevertheless, he argues that he sufficiently raised the issue by asking credit reporting agencies to investigate "every piece of information" in his credit report. (Opp'n at 28 (quotation omitted).)

Bruce is wrong because a request to investigate "every piece of information" is too vague to trigger a duty to investigate a specific issue. A "furnisher of information need investigate only what is contained in the CRA's dispute notice as to the nature of the dispute." *Edeh v. Midland Credit Management, Inc.*, 413 F. App'x 925, 926 (8th Cir. 2011); *Alston v. United Collections*

4

*Bureau, Inc.*, No. CIV.A. DKC 13-0913, 2014 WL 859013, at *8 (D. Md. Mar. 4, 2014) (citing *Johnson v. MBNA Am Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004)); *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (furnisher's investigation was "reasonable given the scant information it received regarding the nature of [the consumer's] dispute").

Second, reporting inaccurate information, even if the information is patently incorrect, is not actionable if it cannot be expected to cause any actual harm to the debtor. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016) (harmless inaccuracies are not actionable ); *see Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (quotations omitted) ("A report is inaccurate when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect.") In the absence of any other inaccuracies, listing the wrong creditor in an otherwise accurate credit report is harmless. Bruce's opposition does not plausibly explain how listing the wrong creditor could, standing alone, possibly harm a debtor.

## II.     BRUCE'S DEFAMATION CLAIM FAILS.

Bruce's opposition confirms that his defamation claim is predicated on the exact same factual allegations as his FCRA claim. (Opp'n at 37-40.) Accordingly, Bruce's defamation claim fails for the reasons discussed in Section I above.

## III.    BRUCE'S UCC CLAIM FAILS.

Bruce alleges that PenFed violated the UCC by not providing a compliant "accounting" upon request. (2d Am. Compl. ¶¶ 145-149.) PenFed's opening memorandum argues that the UCC claim fails because Bruce has never clearly identified the specific information he believes he is missing or established a basis for standing by providing a rational explanation of how he has been harmed by PenFed's alleged noncompliance with the UCC. (Def.'s Mem. at 16-17.)

Bruce's opposition does not provide clarity. The opposition admits that PenFed responded to his requests for information, but claims those responses are deficient as follows:

> PenFed has provided a repeated general response which also included information that accounts were sold, assigned, transferred to third parties. It is clear that the information plaintiff believes is missing from PenFed's response is an authenticated accounting as defined under 36-9-102(4)(A)(B) and (C) which the failure to provide such information establishes a basis for standing in this court for damages related to the harm caused by PenFed's failure to comply and produce an authenticated accounting. … PenFed has failed to comply with the U.C.C. and state equivalent even when they know that they have no authority to report any accounting of accounts balances as a result of a charge-off, and or sale and or assignment/transfer to a third party as no debts are owed to PenFed as evidenced by their charging of accounts off and crediting the accounts in an amount from another account that is put in place to cover any and all uncollectible debt losses and or as evidenced by PenFed's April 11, 2022 letter directing plaintiff to reach out to the third party to satisfy any alleged balances[.]

(Opp'n at 41.)

Bruce's explanation is incoherent. In fact, Bruce appears to suggest that PenFed is not even authorized to provide the accounting he claims it failed to provide: "they know that they have no authority to report any accounting[.]" (*Id.*) He also seems to take issue with the accuracy of the substantive information PenFed provided in response to his request. (*See id.*) The fact that Bruce disagrees with information does not mean, however, that PenFed did not comply with an obligation to provide information. The opposition does not identify any specific information Bruce claims PenFed did not provide, let alone plausibly explain how he could have suffered any actual damages flowing from his non-receipt of such information. The Court should dismiss his UCC claim.

### IV.     BRUCE'S SCUTPA CLAIM FAILS.

The Court previously recommended dismissing Bruce's SCUTPA claim because the first amended complaint did not allege that PenFed engaged in actions that adversely affected the public

6

interest, as opposed to affecting Bruce's personal interests. (R&R [ECF 66] at 15-17 citing *Morgan v. HSBC Bank USA, Nat'l Ass'n*, No. 6:13-CV-03593-JMC, 2015 WL 3888412, at *4 (D.S.C. June 25, 2015) (other citations omitted).) Neither the second amended complaint nor Bruce's opposition cure that fatal defect.

Nevertheless, Bruce contends that the cases that impose a public interest requirement have "misinterpret[ed] the SCUTPA as written which this court is hereby directed to take judicial notice of[.]" (Opp'n at 43.) Without citing any case law, Bruce argues that the plain language of SCUTPA does not support the imposition of a public interest requirement. (*Id*.)

Bruce's statutory interpretation argument fails because the public interest requirement is a matter of clearly-established, binding precedent. The Supreme Court of South Carolina has repeatedly held that "[p]laintiffs must allege and prove that the defendant's actions adversely affected the public interest." *Singleton v. Stokes Motors, Inc.*, 595 S.E.2d 461, 466 (S.C. 2004) (citing *Daisy Outdoor Adver. Co., Inc. v. Abbott*, 473 S.E.2d 47, 49 (S.C. 1996). This Court is bound by those precedents. *Wetzel v. Edwards*, 635 F.2d 283, 289 (4th Cir. 1980) ("[F]ederal courts are bound by the interpretation placed on state statutes by the highest courts of the state.")

DATED: August 21, 2023.                **Respectfully submitted,**

 

**PENTAGON FEDERAL CREDIT UNION**

s/ G. Troy Thames
G. Troy Thames (Federal ID No.: 07713)
WILLSON JONES CARTER & BAXLEY, P.A.
4922 O'Hear Avenue, Suite 301
North Charleston, SC 29405
Telephone: (843) 284-0832
Facsimile: (843) 606-3300
Email: tthames@wjcblaw.com

Michael A. Graziano  (*pro hac vice*)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
1717 Pennsylvania Avenue, N.W., Suite 1200
Washington, D.C. 20006
Telephone: 202.659.6671
Facsimile: 202.659.6699
E-mail: mgraziano@eckertseamans.com

*Attorneys for Pentagon Federal Credit Union*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of August, 2023, I served the foregoing via first class mail on:

Nelson L. Bruce
P.O. Box 3345
Summerville, SC 29484
*Pro Se Plaintiff*

                                             s/ G. Troy Thames
                                             G. Troy Thames (Federal ID No.: 07713)