**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| Nelson L. Bruce, | ) | Civil Action No. 2:22-cv-02211-BHH-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Pentagon Federal Credit Union, *et. al*., | ) | |
| | ) | |
| Defendants. | ) | |

Nelson L. Bruce, proceeding *pro se* and *in forma pauperis*, filed this civil action on July 12, 2022, asserting claims pursuant to the Fair Credit Reporting Act ("FCRA"), among others.[1] (Dkt. No. 1; 31; 98.) On May 25, 2023, Plaintiff filed a Second Amended Complaint. (Dkt. No. 98.) On June 6, 2023, Defendant LexisNexis Risk Solutions, Inc. ("LexisNexis") filed a Motion to Dismiss. (Dkt. No. 103.) For the reasons discussed below, the undersigned recommends LexisNexis's Motion to Dismiss be granted in part and denied in part.

## BACKGROUND

This action arises from, *inter alia*, allegedly inaccurate and misleading information Defendant Pentagon Federal Credit Union[2] ("PENFED" or "PenFed") provided to consumer reporting agencies ("CRA"), which the CRAs published in consumer reports and failed to properly investigate. The Second Amended Complaint ("SAC") brings claims against Defendants PenFed; Equifax Information Services, LLC ("Equifax"); Experian Information Solutions, Inc.; Trans Union, LLC; and LexisNexis. (Dkt. No. 98.) The SAC alleges that, with respect to different factual

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Local Rule 73.02(B)(2)(e), D.S.C.

[2] Plaintiff refers to Defendant Pentagon Federal Credit Union as both "PENFED" and "PenFed."

allegations, LexisNexis acted as both a CRA[3] and a furnisher within the meaning of the FCRA. (*Id*. at 4.)

First, Plaintiff alleges that LexisNexis, acting as a CRA, "prepared and issued credit reports concerning the Plaintiff that included inaccurate, incomplete, untrue, incorrect and materially misleading information relating to PENFED, and/or REV[4] accounts being reported." (*Id*. at 6.) According to Plaintiff, the CRAs "have been reporting the . . . PenFed accounts and information through the issuance of false, incomplete, untrue, incorrect and inaccurate credit information and consumer reports that it has disseminated to various third parties, persons and credit grantors." (*Id*. at 9.) More specifically, Plaintiff alleges the CRAs published inaccurate information about "the balance allegedly owed to PENFED and REV." (*Id*. at 8.) He alleges that the

> publishing of PENFED's inaccurate . . . information are [sic] misleading to lenders because it gives the false impression that a debt and/or account balance is owed or still owed to PENFED, that the accounts are paid or not paid as the information reported does not match what the other reporting agencies are reporting or were reporting which negatively affects plaintiff's credit score which lenders look at to approve or deny credit to a consumer and is also confusing to a lender who sees a balance on one consumer report and a zero balance on another consumer report.

(*Id*. at 19.) He similarly alleges "Defendants . . . had substantial evidence by which to have verified that the Plaintiff's debt was sold, assigned and/or transferred, therefore no longer due or owing to the person reporting the accounts." (*Id*. at 32.)

According to Plaintiff, "[a]ccounts are required to be reported to the credit reporting agencies in Metro 2 Format which the bureaus have all adopted. The reported accounts are considered inaccurate, incomplete, incorrect if not in compliance with Metro 2 Standard Format."

---

[3] "The term 'consumer reporting agency' means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

[4] Here, Plaintiff is referring to REV Federal Credit Union. REV is not a named defendant—the record indicates Plaintiff had an account with REV separate from his accounts with PenFed.

(*Id.* at 20.) Plaintiff alleges that to comply with "Metro 2 reporting standards," LexisNexis's policy "require[s] PENFED" to accurately report "balance information, open date, date of first delinquency, [and] whether an account is sold." (*Id.* at 20–21.) Plaintiff alleges that the Metro 2 reporting standards require that any accounts that have been sold or transferred are reported with a "zero balance." (*Id.* at 21.) The SAC expressly incorporates as an exhibit excerpts from the Metro 2 guidelines, which discuss furnisher reporting duties when accounts are transferred or sold.[5] (Dkt. No. 98 at 5; Dkt. No. 77-1 at 4–5.)

Plaintiff alleges he "notified both the [CRAs] and data furnishers that he disputed the accuracy, completeness, correctness of the information the [CRAs] were reporting." (*Id.* at 9.) He further alleges LexisNexis "received [] verbal dispute[s] (over the phone) from Plaintiff" disputing the alleged inaccuracies in the PenFed accounts on June 2, 2022 and August 15, 2022. (Dkt. No. 98 at 10–11.) Plaintiff alleges that his "updated consumer credit file/report from LexisNexis" evidence[ed] the same exact information disputed" in June and August of 2022 and "did not show that any accounts disputed [were] removed as alleged by LexisNexis." (*Id.*) The SAC alleges that the foregoing conduct by LexisNexis violated sections 1681e(b) and 1681i of the FCRA, constituted defamation under South Carolina law, and violated the South Carolina Financial Identity Fraud and Identity Theft Protection Act. (*Id.* at 25–28; 31–35.)

Separately, Plaintiff alleges that LexisNexis was "acting as a 'furnisher' of the information submitted to Trans Union . . . for inclusion in a consumer report." (*Id.* at 7.) Plaintiff alleges that LexisNexis was not acting as a CRA "with respect to credit reports/consumer reports maintained

---

[5] The website for the Consumer Data Industry Association ("CDIA") states, "If your company furnishes consumer credit account data on a regular basis to credit reporting agencies, you have duties under the . . . [FCRA] to correct and update that consumer credit history information. To assist data furnishers in this process, the credit reporting industry has adopted a standard electronic data reporting format called the Metro 2® Format." *See* CDIA, https://www.cdiaonline.org/metro-2/ (last visited Sept. 22, 2023).

by Trans Union." (*Id.* at 7.) Here, the SAC references Exhibit E as evidence of LexisNexis' role as furnisher of information relating to Plaintiff and his creditworthiness to Trans Union, "which then used that information to generate consumer reports/credit reports." (*Id.*; Dkt. No. 31-1.) According to Plaintiff,

> LexisNexis failed to do a reasonable investigation/reinvestigation as a 'furnisher' furnishing information related to a bankruptcy to Trans Union because it failed to verify all filings on the record in the court as the court record evidences that the bankruptcy was withdrawn by the plaintiff before any final judgments in the case.

(*Id.*) He later alleges "All data Furnishers . . . us[ed] a standardized system for receiving and processing consumer disputes from the CRAs [and] . . . understood the consumer's disputes because of this system." (*Id.* at 14.) Plaintiff alleges that "the Furnishers ignored the information in the reporting system and 'simply regurgitated the same information it had previously reported to' the CRAs." (*Id.*) The SAC alleges that the foregoing conduct by LexisNexis violated section 1681s-2(b) of the FCRA. (*Id.* at 28–31.)

On June 6, 2023, LexisNexis filed a Motion to Dismiss. (Dkt. No. 103.) On June 7, 2023, this Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 104.) Plaintiff filed a response in opposition on August 14, 2023. (Dkt. No. 116.) LexisNexis filed a reply on August 28, 2023. (Dkt. No. 125.) Plaintiff thereafter filed an 8-page sur-reply. (Dkt. No. 129-1.) LexisNexis's Motion to Dismiss has been fully briefed and is ripe for review.

## STANDARD OF REVIEW

LexisNexis seeks dismissal of Plaintiff's claims against it under Rule 12(b)(6) of the Federal Rules of Civil Procedure. On a motion to dismiss pursuant to Rule 12(b)(6), a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on

its face.'" *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) . . . [a court] must determine whether it is plausible that the factual allegations in the complaint are 'enough to raise a right to relief above the speculative level.'" *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "In considering a motion to dismiss, [the court] accept[s] the complainant's well-pleaded allegations as true and view[s] the complaint in the light most favorable to the non-moving party." *Stansbury v. McDonald's Corp.*, 36 F. App'x 98, 98-99 (4th Cir. 2002) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).

"Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider exhibits, without converting the motion to dismiss to one for summary judgment." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 501 (D. Md. 2019) (citing *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015)). "In particular, a court may consider documents that are 'explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits.'" *Id.* (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)). Where a plaintiff attaches an exhibit to a complaint, such exhibits are incorporated into the complaint, and "in the event of a conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c) . . . the exhibit prevails." *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see also Jeffrey M. Brown Assocs., Inc. v. Rockville Ctr. Inc.*, 7 F. App'x 197, 202 (4th Cir. 2001) ("While construing those facts in a light most favorable to [plaintiff], we need not accept as true "the legal conclusions drawn from the

facts . . . . [or] unwarranted inferences, unreasonable conclusions, or arguments," . . . such as conclusory allegations in the complaint that are contradicted by the attachments.").

Because Plaintiff is representing himself, these standards must be applied while liberally construing his filings in this case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## DISCUSSION

### A.     Claims against LexisNexis as a CRA

#### 1.     Alleged FCRA violations under § 1681i and 1681e(b)

The SAC's First Cause of Action alleges LexisNexis, while acting as a CRA, violated sections 1681i and 1681e(b) of the FCRA by "failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notices of such inaccuracies . . . ," and by "failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files [it] publish[ed] . . . ." (Dkt. No. 98 at 25–28.) The undersigned considers these claims below.

##### a.     Standards

###### 1.     § 1681i

The FCRA is "a comprehensive statutory scheme designed to regulate the consumer reporting industry." *Ross v. F.D.I.C.*, 625 F.3d 808, 812 (4th Cir. 2010). "Section 1681i of the FCRA outlines the procedure to be followed in cases in which consumers dispute the completeness or accuracy of information contained in their file." *Spitzer v. Trans Union LLC*, 140 F. Supp. 2d 562, 565 (E.D.N.C. 2000), *aff'd*, 3 F. App'x 54 (4th Cir. 2001). To state a claim for violation of § 1681i, a plaintiff must allege "(1) that he disputed the accuracy of an item in his . . . credit file; (2) the CRA failed to conduct a reasonable reinvestigation; and (3) that a reasonable reinvestigation by the CRA could have uncovered the inaccuracy." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-

CV-1064 AJT/TRJ, 2011 WL 1085874, at *3 (E.D. Va. Mar. 18, 2011) (citing *Cahlin v. Gen Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991)).

"The reasonableness of a reinvestigation under these circumstances depends on the facts of each case, . . . but multiple courts have explained that a CRA has no obligation to resolve legal disputes between a consumer and a creditor." *Alston v. Branch Banking & Tr. Co.*, No. GJH-15-3100, 2016 WL 4521651, at *10 (D. Md. Aug. 26, 2016) (collecting cases in other circuits); *see also Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 150, 142, (4th Cir. 2008) (noting that claims under both §§ 1681e(b) and 1681i "brought against CRAs based on a legal dispute of an underlying debt raise concerns about 'collateral attacks' because the creditor is not a party to the suit"); *Perry v. Toyota Motor Credit Corp.*, No. 1:18-cv-00034, 2019 WL 332813, at *5 (W.D. Va. Jan. 25, 2019) ("A number of courts have found that to make the required showing of inaccurate reporting under FCRA §§ 1681e(b) and 1681i, 'a complaint's allegations must dispute facts underlying a purported inaccuracy, as the presentation of legal defenses to payment will not suffice." (quoting *Mamisay v. Experian Info. Sols., Inc* 2017 WL 1065170, at * 3 (N.D. Cal. Mar. 21, 2017)).

Also, "if a consumer later sues a CRA for a violation of its reinvestigation duty under § 1681i(a), he or she may only sue based on alleged violations of which the consumer provided notice to the CRA." *Petty v. Equifax Info. Servs., LLC*, No. CCB-10-694, 2010 WL 4183542, at *3 (D. Md. Oct. 25, 2010). Such notice is required because without it the CRA cannot have been expected to know what information to reinvestigate, how to reinvestigate it, or whether upon reinvestigation the information is indeed inaccurate or incomplete. *Id*. "If the consumer raises additional alleged violations in his or her lawsuit for which the consumer had not previously provided notice of the dispute to the CRA, those claims must be dismissed." *Id*.

2.    § 1681e(b)

Relatedly, section 1681e(b) states that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). "Thus, a [CRA] violates § 1681e(b) if (1) the consumer report contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001).

To establish the first prong of a § 1681e(b) violation, "a consumer must present evidence tending to show that a [CRA] prepared a report containing inaccurate information." *Id.* at 415 (citing *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995)). "A report is inaccurate when it is 'patently incorrect' or when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse [ ]' effect." *Id.* (alterations in original) (quoting *Sepulvado v. CSC Credit Servs.*, 158 F.3d 890, 895 (5th Cir. 1998)). To establish the second prong, "the plaintiff bears the burden under § 1681e(b) to show that the [CRA] did not follow reasonable procedures." *Dalton*, 257 F.3d at 416. "The issue of whether the agency failed to follow 'reasonable procedures' will be a 'jury question[ ] in the overwhelming majority of cases.'" *Id.* (alteration in original) (quoting *Guimond*, 45 F.3d at 1333).

b.    **Analysis**

LexisNexis argues for the dismissal of both claims against it under the FCRA because Plaintiff fails to plausibly allege that LexisNexis reported factually inaccurate information. (Dkt. No. 106-1 at 103-1 at 5–11.) Plaintiff alleges that LexisNexis's reporting of a balance on his charged off PenFed accounts was inaccurate and misleading, especially where the balance owed was inconsistent with that reported by other CRAs. He has alleged that this inaccurate reporting

"negatively affects plaintiff's credit score, which lenders look at to approve or deny credit to a consumer and is also confusing to a lender who sees a balance on one report and a zero balance on another consumer report." (Dkt. No. 98 at 19.)

Here, the allegations in the SAC create confusion as to whether LexisNexis reported the accounts at issue with a zero balance in addition to failing to expressly note the accounts as sold and/or assigned. However, the arguments by LexisNexis in its briefing indicate it did not report the accounts at issue with a zero balance. Further, the consumer reports provided by LexisNexis to Plaintiff in response to his disputes indicate that the accounts were not reported with a zero balance and were instead listed as "UNPAID BALANCE REPORTED AS A LOSS BY CREDIT GRANTOR/CHARGE OFF." (Dkt. No. 31-1 at 26–40.) Because these consumer reports are directly incorporated into the SAC and referenced therein, the undersigned finds they can be relied on to plausibly allege LexisNexis's failure to report the charged-off PenFed accounts with a zero balance was inaccurate and misleading both because the accounts at issue had been sold and/or assigned and because the accounts were listed as charged off. Plaintiff does not allege that these accounts were simultaneously reported by a third party elsewhere in the consumer reports published by LexisNexis.

LexisNexis argues that these allegations are not "sufficient to allege a viable inaccuracy to support Plaintiff's claims against" LexisNexis. (Dkt. No. 103-1 at 8.) First, LexisNexis argues that Plaintiff's claim of inaccuracy stemming from the failure to accurately report certain PenFed accounts as sold and/or assigned with a zero balance presents a legal dispute to the underlying debt, which LexisNexis, acting as a CRA, is not obligated to resolve. (*Id.* at 6–8.) In support, it relies on the Seventh Circuit case, *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 569 (7th Cir. 2021), in which the court found the plaintiffs' dispute about the ownership of its debts could

9

not support a claim against the defendant CRAs under the FCRA. Specifically, in *Chuluunbat*, the plaintiffs had credit card debts which were sold and assigned to other companies—creditors—and this change appeared on plaintiffs' credit reports. 4 F.4th at 565. When those creditors attempted to collect the debts from plaintiffs, the plaintiffs requested the CRAs "reinvestigate the accuracy of their credit reports to determine if the purported creditors owned these debts." *Id.* The court found that because the dispute at issue required the CRAs to determine "the legal relationship of different parties to these debts" and to "interpret[] the legal validity of any assignment agreement," it necessarily required the CRAs to "mak[e] legal judgments." *Id.* at 568–69.

Here, Plaintiff's dispute centers on LexisNexis's failure to accurately report the information about the charged off accounts as sold and/or assigned by PenFed in accordance with the Metro 2 Guidelines. Relevant here, there are documents expressly incorporated into the complaint indicating it was undisputed that PenFed sold and/or assigned the accounts at issue. (Dkt. No. 1-4 at 3.) Thus, it is not clear that this dispute necessarily required LexisNexis to determine whether PenFed currently owned the debts at issue. Rather, a full record is needed to determine whether the identity of the current owner of the PenFed accounts at issue was already resolved at the time Plaintiff brought his dispute to LexisNexis, such that LexisNexis's reinvestigation would have been limited to whether PenFed complied with the Metro 2 Guidelines in reporting these sold and/or assigned accounts, which presents a factual dispute. For these reasons, the undersigned cannot find that this alleged inaccuracy necessarily required a legal determination by LexisNexis, such that it cannot support a claim under the FCRA. *Cf. Saunders*, 526 F.3d at 142 (noting that claims under both §§ 1681e(b) and 1681i "brought against CRAs based on a legal dispute of an underlying debt raise concerns about 'collateral attacks' because the creditor is not a party to the suit").

LexisNexis next argues that Plaintiff's claim of inaccuracy stemming from the failure to report charged off accounts with a zero balance also raises a legal inaccuracy and does not present a "viable factual inaccurac[y]." (Dkt. No. 103-1 at 8–11.) Here, LexisNexis relies on non-binding authority to argue that reporting a balance owed on a charged off account is factually accurate and not misleading as a matter of law. (*Id*.) Specifically, in *Artemov v. TransUnion, LLC,* a federal court in the Eastern District of New York dismissed the plaintiff's FCRA claims for failure to allege an inaccuracy where the plaintiff claimed two of his accounts were reported "as charged off' and 'closed' and contained a non-zero past due balance" because "listing a past due balance for a charged off account was factually accurate and not misleading." 2020 WL 5211068, at *2– *5 (E.D.N.Y. Sept. 1, 2020).

Notably, courts in this circuit "generally have deemed the question of accuracy, in FCRA cases, ill-suited for pre-discovery resolution." *Newman v. Am. Honda Fin. Corp*., No. 1:21-cv-3, 2022 WL 657630, at *6 (M.D.N.C. Mar. 4, 2022); *Price v. Equifax Info. Servs*., No. 5:19-cv-00886, 2020 WL 2514885, at *5 (S.D.W. Va. May 15, 2020) ("[W]hether technically accurate information is sufficiently misleading to qualify as inaccurate for purposes of the FCRA is generally a question to be determined by the trier of fact."). Courts in this circuit have further "rejected, at the motion-to-dismiss stage, arguments by furnishers regarding the accuracy of reporting historical information on closed accounts." *Newman*, 2022 WL 657630, at *6 (collecting cases); *see also Short v. Experian Info. Sys., Inc*., No. 2:16-cv-09294, 2017 WL 2296887, at *4 (S.D.W. Va. May 25, 2017) (denying motion to dismiss where furnisher argued that "it is not an FCRA violation for a creditor to accurately report negative historical information about a paid account"; noting that court "lack[ed] facts necessary to determine whether [furnisher]'s reporting accurately reflected the history of [p]laintiff's account").

11

While most of those cases involve allegations of reporting a monthly payment on a closed account, the undersigned cannot find Plaintiff's claim here fails merely because it is not specific to that issue. Indeed, the fact that a different CRA reported the charged off accounts with a zero balance indicates it may have been misleading for LexisNexis to have reported the same charged off accounts with an unpaid balance. Upon a full development of the factual record, the out-of-circuit case law cited by LexisNexis could prove convincing on this issue. However, given the current allegations in the record, the undersigned cannot find that LexisNexis's argument here compels dismissal of Plaintiff's FCRA claims at this time.

Further, as discussed above, Plaintiff has alleged LexisNexis's failure to report certain accounts that PenFed had sold or assigned with a zero balance violated Metro 2 standards. Another court in this circuit recently recognized that "inaccuracies . . . which derive from purported deviations from the Metro 2 Guidelines" fall under the "category" of "those inaccuracies that are . . . misleading in such a way and to such an extent that they can be expected to adversely affect credit decisions." *Arriaza v. Experian Info. Sols., Inc.*, No. 20-cv-3073, 2021 WL 1019937, at *4 (D. Md. Mar. 17, 2021) (quoting *Dalton*, 257 F.3d at 415 (internal quotations omitted)). Per the Metro 2 Guidelines, the sale or assignment of an account necessarily affects how the credit information of the consumer is reported by the prior owner of the account, including the listing of a zero balance both as the current balance and the amount past due.

Here, Plaintiff has alleged that LexisNexis's failure to report a zero balance on the charged off PenFed accounts "negatively affects plaintiff's credit score, which lenders look at to approve or deny credit to a consumer and is also confusing to a lender who sees a balance on one report and a zero balance on another consumer report." (Dkt. No. 98 at 19.) In other words, Plaintiff alleges that LexisNexis's reporting of an unpaid balance on the charged off accounts that had been

12

sold and/or assigned may prompt those making credit decisions to draw a more negative inference than if LexisNexis had reported a zero balance on these accounts. Plaintiff alleges he has suffered, *inter alia*, "a diminished credit score, . . . a chilling effect on credit applications, and the mental and emotional distress and pain, anguish, humiliation and embarrassment caused by the inability to obtain financing for everyday expenses." (*Id.* at 26–35.)

Plaintiff's allegations about damage to his credit based on the inaccurate and misleading information in his credit report, which was shared with third parties, sufficiently alleges he suffered concrete harm. *See*, *e.g.*, *Gaillard v. Cap. One Auto Fin.*, No. 3:21-cv-02228-SAL, 2022 WL 18495862, at *8 (D.S.C. Sept. 29, 2022) (plaintiff's FCRA claim alleged "qualifying concrete injury under Article III" where she claimed defendant's "report of an adverse charge off" caused her " to lose funds and damage her credit"); *Evans v. Am. Collection Enter.*, 624 F. Supp. 3d 593, 600 (D. Md. 2022) (noting "alleged dissemination [of inaccurate information on credit report] to a third party is enough to constitute a concrete injury"); *Burns v. Trans Union, LLC*, No. 4:18-cv-03120-MGL, 2019 WL 3890833, at *3 (D.S.C. Aug. 19, 2019) (finding allegations that plaintiff "experienced both credit and emotional damages, undue stress, and anxiety" establishes "the injury in fact requirement" because "the threat of harm bad credit imposes is cognizable and does actually exist"); *Phillips v. Trans Union, LLC*, No. 3:16-cv-00088, 2017 WL 3911018, at *3 (W.D. Va. Sept. 6, 2017) (allegation that furnisher falsely reported the date of first delinquency on a loan was a "sufficiently concrete injury because 'ensuring the accuracy of the information inaccurately reported by [furnisher] seems directly and substantially related to the FCRA's goals."); *cf. Arriaza*, 2021 WL 1019937, at *4 (allegation that Experian deviated from Metro 2 Guidelines could not be expected to adversely affect credit decisions because "correcting [alleged inaccuracy of reporting

13

a lower past due balance on a charged-off account] would further harm, not improve, [plaintiff's] creditworthiness").

In sum, the undersigned finds Plaintiff has alleged sufficient facts to support a prima facie showing that LexisNexis's reporting is inaccurate or misleading when assuming all of Plaintiff's factual allegations are true, and construing them in the light most favorable to him. To prove his case, Plaintiff will need to establish "through admissible evidence that [updating the status of a charged off account as sold or assigned with a zero balance] is in fact the industry standard, that [LexisNexis] deviated from it, and that this particular deviation might adversely affect credit decisions ." *Nissou-Rabban v. Cap. One Bank (USA), N.A.*, 2016 WL 4508241, at *5 (S.D. Cal. June 6, 2016) (finding plaintiff plausibly alleged a claim under the FCRA violation based on furnisher's failure to comply with Metro 2 reporting guidelines). Alternatively, Plaintiff will need to establish through admissible evidence that reporting a charged off account with an unpaid balance, regardless of its status as sold and/or assigned, would mislead lenders and adversely affect credit decisions when those same charged off accounts were reported by other CRAs with a zero balance. Whether Plaintiff's allegations on these issues turn out to be true is a question of proof that is not suited for resolution in a motion to dismiss.

Aside from the foregoing arguments, LexisNexis offers no other basis for the dismissal of Plaintiff's claims against it under the FCRA. Having found those arguments without merit, the undersigned recommends the Court deny LexisNexis's motion to dismiss the claims against it under sections 1681i and 1681e(b) of the FCRA.

### 2. Defamation Claim

The SAC's Third Cause of Action alleges LexisNexis's publishing of inaccurate credit information to third parties constituted defamation under South Carolina common law. (Dkt. No.

98 at 31–33.) Plaintiff's defamation claim is preempted by the FCRA absent an allegation of malice or willful intent to injure Plaintiff. *See* 15 U.S.C. § 1681h(e) ("[N]o consumer may bring any action or proceeding in the nature of defamation . . . with respect to the reporting of information . . . except as to false information furnished with malice or willful intent to injure such consumer."); *Ross*, 625 F.3d at 814 ("The only exception to this bar is a narrow one, requiring proof of 'malice or willful intent to injure [the] consumer.'"). Under South Carolina law, "'[m]alice' is established only if 'the defendant acted with ill will toward the plaintiff or acted recklessly or wantonly, meaning with conscious indifference toward the plaintiff's rights.'" *Beattie v. Nations Credit Fin. Servs. Corp.*, 69 Fed. App'x. 585 (4th Cir. 2003) (citing *Murray v. Holnam, Inc*., 542 S.E.2d 743, 750 (S.C. 2001)).

The SAC alleges that even after Plaintiff told LexisNexis that he disputed the accuracy of his accounts, LexisNexis continued to publish the alleged inaccuracies to third parties. (Dkt. No. 98 at 23–24, 31–33.) Plaintiff alleges that LexisNexis acted "with malice, willful intent to injure the plaintiff." (*Id*. at 32) At this early stage in proceedings, the undersigned recommends these allegations plausibly allege malice or willful intent under Rule 12(b)(6). *See*, *e.g. Hoback v. Synchrony Bank*, No. 6:19-CV-18, 2019 WL 2438794, at *4 (W.D. Va. June 11, 2019) ("Courts assessing defamation claims brought in the context of credit reporting errors and FCRA violations tend to permit such claims to proceed to discovery if plaintiffs assert any allegations beyond 'merely reciting the legal standard.'"); *Potter v. FIA Card Servs., N.A*., No. 2:12-cv-1722-RMG, 2012 WL 13005806, at *2 (D.S.C. Sept. 28, 2012) (denying motion to dismiss defamation claim where plaintiff alleges he "repeatedly told the Defendants he was not an obligor on the account, but they continued to tell [credit reporting agencies] for two years that he was").

### 3.    Claim under the South Carolina Financial Identity Fraud And Identity Theft Protection Act

The SAC's Fourth Cause of Action alleges a claim against LexisNexis under the South Carolina Financial Identity Fraud and Identity Theft Protection Act (the "Act"), S.C. Code Ann. § 37-20-170.[6] (Dkt. No. 98 at 33–34.) Under this claim, the SAC alleges, *inter alia*, LexisNexis "failed to correct, delete information found to be inaccurate, unauthorized, unverified, and in a reasonable time instead reinserted the information and failed to reasonably and properly reinvestigate Plaintiff's disputes." (*Id.*)

Here, LexisNexis argues in a footnote that this claim fails "for the same reasons that . . . Plaintiff cannot state a claim against [LexisNexis] under section 1681i." (Dkt. No. 103-1 at 5 n.3.) However, given the undersigned's foregoing recommendations, this argument is without merit.

---

[6] S.C. Code Ann. § 37-20-170 provides, in part:

> (A) If a consumer disputes the accuracy of an item in the consumer's records with a consumer reporting agency, the consumer may give notice in writing to the consumer reporting agency specifying in what manner the report is inaccurate and the consumer reporting agency shall reinvestigate the inaccuracy at no charge to the consumer, provide the consumer with sufficient evidence that the information is true and accurate information as it relates to that consumer, and record the current status of the disputed information. The consumer reporting agency shall provide forms for that notice and shall assist a consumer in preparing the notice when requested.

> (B) Within thirty days after receiving a notice of inaccuracy, a consumer reporting agency shall deny or admit the inaccuracy to the consumer in writing. If the consumer reporting agency denies the inaccuracy, the consumer reporting agency shall include the following information with the written results of the reinvestigation:

> (1) the basis for the denial;

> (2) a copy of the consumer's file that is based on the consumer's file as revised as a result of the reinvestigation, including the business name and address of any furnisher of information who was contacted in connection with that information and, if reasonably available, the telephone number of the furnisher;

> (3) a notice that, if requested by the consumer, the consumer reporting agency shall provide the consumer with a description of the procedure used by the consumer reporting agency to determine the accuracy and completeness of the information; and

> (4) sufficient evidence that the information is true and accurate information as it relates to that consumer.

> (C) If the consumer reporting agency admits that the item is inaccurate, it shall correct the item in its records and, on request by the consumer, it shall inform any person who within the last six months has previously received a report containing that inaccurate information.

LexisNexis offers no separate argument for dismissal of this claim, and the undersigned recommends Plaintiff has sufficiently alleged a claim against LexisNexis under the Act.

## B.    Alleged Violation of FCRA as a Furnisher under § 1681s-2(b)

Finally, the SAC's Second Cause of Action alleges LexisNexis, while acting as a furnisher, violated section 1681s-2(b) of the FCRA. (Dkt. No. 98 at 28–31.)

### 1.    Standard

Section 1681s-2(b) imposes requirements upon persons who provide information to agencies, upon receiving notice by an agency of a dispute by a consumer or reseller involving that information. *See* 15 U.S.C. §§ 1681s-2(b), 1681i(a)(2). After receiving notice, such a furnisher must investigate the disputed information; review all relevant information provided by the agency; report the results of the investigation to the agency; report any inaccurate or incomplete information to all other agencies; and modify, delete, or block an inaccurate or incomplete item of information for the purposes of reporting to agencies. *Id.* § 1681s-2(b)(1). In short, this provision "requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a reasonable investigation of their records to determine whether the disputed information can be verified." *Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004).

"To prevail on a claim under § 1681s-2(b), a plaintiff must demonstrate that (1) she notified a consumer reporting agency of the disputed information, (2) the consumer reporting agency notified the furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information." *Shulman v. Lendmark Fin.*, No. 3:21-cv-1887-CMC-SVH, 2021 WL 4691027, at *4 (D.S.C. Oct. 6, 2021) (quoting *Wilson v. Wells Fargo Bank, N.A.*, No. 2:20-cv-2780-BHH-MHC, 2021 WL 2003524, at *4 (D.S.C. Apr. 30, 2021)), *adopted by*, 2021 WL 5141118 (D.S.C. Nov. 4, 2021).

2.    **Analysis**

In its Motion, LexisNexis first briefly argues that Plaintiff "cannot plausibly allege that [LexisNexis] is both a furnisher and a CRA." (Dkt. No. 103-1 at 12.) In support, LexisNexis relies entirely on language from 16 C.F.R. § 660.2(c)(2) stating that "[a]n entity is not a furnisher when it . . . is acting as a 'consumer reporting agency.'" (*Id.*) Notably, another court recently rejected the same argument from LexisNexis in arguing for dismissal of a claim under § 1681s-2(b). *See Alston v. LexisNexis Risk Sols. Inc.*, 2022 WL 17735808, at *4 (D.D.C. Dec. 16, 2022). After discussing the relevant regulations, the court in *Alston* noted that "the regulations do not state that an entity may not *at different times and in regards to different information* sometimes act as a consumer reporting agency and sometimes act as a furnisher of information to other agencies." *Id.* (emphasis in original). The court found "the key question here is whether the plaintiff has alleged that LexisNexis is acting as a furnisher—rather than a consumer reporting agency—with respect to the particular information that was allegedly provided to the" CRAs named in the amended complaint. *Id.*

Here, the particular information at issue in Plaintiff's claim against LexisNexis under § 1681s-2(b) is the information related to Plaintiff's bankruptcy proceeding that was provided by LexisNexis to Trans Union, a CRA. This is entirely separate from Plaintiff's claims against LexisNexis as a CRA, stemming from its alleged preparation of consumer reports that included inaccurate credit account information furnished by PenFed. While LexisNexis may be able to provide more compelling arguments on this issue, its mere citation to § 660.2(c)(2) does not convince the undersigned dismissal is appropriate on this basis under Rule 12(b)(6).

LexisNexis next argues that Plaintiff's claim under § 1681s-2(b) fails because Plaintiff has not alleged that he sent a dispute to a CRA and the CRA then forwarded that dispute to LexisNexis.

(Dkt. No. 103-1 at 11–12.) Upon careful review, the SAC is entirely devoid of any allegation that Plaintiff notified Trans Union of the disputed bankruptcy information reported by LexisNexis. (Dkt. No. 98.) The SAC also fails to expressly allege that Trans Union then notified LexisNexis of the dispute. Rather, the SAC states that:

> LexisNexis failed to do a reasonable investigation/reinvestigation as a 'furnisher' furnishing information related to a bankruptcy to Trans Union because it failed to verify all filings on the record in the court as the court record evidences that the bankruptcy was withdrawn by the plaintiff before any final judgments in the case.

(*Id*.) It later alleges "All data Furnishers . . . us[ed] a standardized system for receiving and processing consumer disputes from the CRAs [and] . . . understood the consumer's disputes because of this system." (*Id*. at 14.) There are additional allegations under the Second Cause of Action, which alleges claims under the FCRA against LexisNexis, PenFed, and Experian "as Data Furnishers." (Dkt. No. 28–30.) While some of those allegations indicate notice of a dispute by a CRA, they can only reasonably be construed as specific to PenFed. (*Id*. at 29–30.)

In response to LexisNexis's argument here, Plaintiff has attached an exhibit to his response brief that he claims shows "that plaintiff disputed the bankruptcy with Trans Union to which dispute results [were] completed as of 7-2-2019." (Dkt. No. 116 at 16; Dkt. No. 116-2.) Specifically, Exhibit G-2 contains "Investigation Results" from Trans Union, dated July 2, 2019. (Dkt. No. 116-2.) It states that that the disputed information has been verified as accurate and shows that the dismissal of a Chapter 13 Bankruptcy will continue to appear on Plaintiff's Trans Union credit report. (*Id*.) It does not reference LexisNexis.

According to Plaintiff, this exhibit is a "continuation of the Trans Union report filed on the record as Exhibit B," which was attached to the initial complaint. (Dkt. No. 116 at 16.) Exhibit B comprises 76 pages of documents, three of which appear to be a separate portion of the same Trans Union "Investigation Results," dated July 2, 2019. (Dkt. No. 1-3 at 73–76.) The portion attached

to the initial complaint only shows that certain PenFed accounts were deleted from Plaintiff's Trans Union credit report in response to Plaintiff's dispute. (*Id*.)

Plaintiff further cites language from Trans Union's website as evidence that Trans Union would have received the disputed bankruptcy information from LexisNexis. (Dkt. No. 116 at 16 (citing Trans Union, *Public Records*, https://www.transunion.com/legal/public-records (last visited, Sept. 22, 2023) ("For bankruptcy public records collected through November 30, 2018, Trans Union obtained information about your bankruptcy from third-party vendor, LexisNexis.").)

LexisNexis disputes consideration of Exhibit G-2 by the Court, arguing that "Plaintiff cannot introduce new allegations or exhibits in opposition to a motion to dismiss." (Dkt. No. 125 at 4.) The undersigned agrees. While a portion of the same Trans Union record was included as part of an exhibit attached to the initial complaint, the separate portion at issue here involves entirely different disputed information supplied by a different furnisher. The SAC did not rely on that Trans Union record to support Plaintiff's claims against LexisNexis under § 1681s-2(b). The undersigned does not consider Exhibit G-2 to have been incorporated into the SAC by reference, such that it can support the allegations in the SAC.

By submitting this exhibit with his response in opposition to the Motion to Dismiss, Plaintiff is essentially attempting to amend the SAC to allege that he notified Trans Union of the disputed information. "However, this is a new allegation that does not appear in her Complaint and cannot be considered for purposes of ruling on the Motion." *Wilson v. Wells Fargo Bank, N.A.*, No. 2:20-cv-2780-BHH-MHC, 2021 WL 2003524, at *5 (D.S.C. Apr. 30, 2021) (finding plaintiff could not establish a claim under § 1681s-2(b) through argument in response brief "that after she notified Experian of the disputed information, Wells Fargo was then notified by Experian of the dispute"), *adopted by*, 2021 WL 2003184 (D.S.C. May 19, 2021); *see also See Deas v. Prudential*

*Ins. of Am.*, No. 2:17-cv-03016-DCN, 2018 WL 1993869, at *3 (D.S.C. Apr. 26, 2018) ("The court cannot consider these arguments on a motion to dismiss if they or the facts upon which they are based were not raised in the complaint[.]"); *Chewning v. Ford Motor Co.*, 35 F. Supp. 2d 487, 488 (D.S.C. 1998) ("It is also well-settled that a complaint cannot be amended by plaintiff's briefs in opposition to a motion to dismiss.") (citing *Mylan Laboratories, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991)).

Based on the foregoing, the undersigned finds that even if the SAC could be reasonably construed to allege that Trans Union forwarded Plaintiff's dispute to LexisNexis, it does not allege any facts showing that he sent a dispute to Trans Union. "Thus, there is no allegation from which to infer that [LexisNexis's] duties under § 1681s-2(b) were ever triggered." *Wilson*, 2021 WL 2003524, at *4 (dismissing claim under § 1681s-2b because "Plaintiff does not allege any facts showing that Wells Fargo received notice of a dispute from Experian or any other consumer reporting agency, such as to establish the second prong of a § 1681s–2(b) claim"); *cf. Shulman*, 2021 WL 4691027, at *4 (finding plaintiff sufficiently alleged notice under § 1681-2(b) where the plaintiff alleged "he first contacted Experian to dispute Defendant's reports in July 2020" and "Experian 'presumably contacted' Defendant, which 'had a chance to review properly an impact of loan modification on reporting's accuracy to Credit Bureaus,' but 'failed to do it, and reaffirmed prior balance on account'").

Accordingly, the undersigned recommends Plaintiff's claim against LexisNexis under § 1681s-2(b) be dismissed. Further, given the proceedings in this case, the undersigned recommends this dismissal be with prejudice. Plaintiff filed this case on July 12, 2022. (Dkt. No. 1.) He filed an amended complaint on November 2, 2022, adding LexisNexis as a named defendant. (Dkt. No. 31.) Then, almost one year after first filing this action, without any

compelling justification for the delay, he again sought to amend the complaint. (Dkt. No. 96.)

When granting Plaintiff's motion to amend, the undersigned stated,

> [G]iven the procedural history of this case, the Court does not make this decision lightly. This case has been pending almost one year, and Plaintiff has had ample time to amend his complaint. Further, entering the proposed Amended Complaint impacts the previously filed dispositive motions. Thus, this is Plaintiff's final opportunity to amend his complaint. Absent extraordinary circumstances, the Court will not entertain further requests from Plaintiff to amend his complaint.

(Dkt. No. 97.)

Plaintiff's filings in this action indicate he knows how to properly plead a claim against a furnisher under § 1681s-2(b). Further, it appears the exhibit he now relies on to support this claim against Trans Union has been in his possession since 2019. This Court and the parties have devoted significant time and resources to addressing Plaintiff's claims in this action, as currently plead. Plaintiff's prior amendments to his pleadings have already significantly delayed entry of a scheduling order, which will be entered after the District Judge provides a final ruling on the pending dispositive motions. For these reasons, the undersigned recommends that Plaintiff should not be afforded yet another opportunity to amend his complaint. *See Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (finding "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile").

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that LexisNexis's Motion to Dismiss (Dkt. No. 103) be GRANTED IN PART AND DENIED IN PART. Plaintiff's claims against LexisNexis for violation of the FCRA under sections 1681i and 1681e(b) should remain pending, as well as his claims for defamation and violation of the South Carolina Financial Identity Fraud

and Identity Theft Protection Act. Plaintiff's claim against LexisNexis under section 1681s-2(b) of the FCRA should be dismissed, with prejudice.

**IT IS SO RECOMMENDED**.

September 25, 2023
Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).