IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| NELSON L. BRUCE,<br><br>    Plaintiff,<br><br> v.<br><br>PENTAGON FEDERAL CREDIT UNION a.k.a. PENTAGON FEDERAL CREDIT UNION FOUNDATION ("collectively" PENFED), EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, EQUIFAX INFORMATION SERVICES, LLC, all unknown Does 1-100, et al.,<br><br>    Defendants. | Case No. 2:22-cv-02211-BHH-MGB<br><br>**DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S PARTIAL OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION TO DENY EQUIFAX'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C)** |

   Defendant Equifax Information Services LLC ("Equifax"), by Counsel, hereby submits its Partial Objections to the Magistrate's Report and Recommendation (Doc. 131) that Equifax's Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure be denied, and shows the Court as follows.

### INTRODUCTION

   Plaintiff, a serial *pro se* litigant in this District,[1] filed his Complaint on July 12, 2022. (Doc. 1.) He filed an Amended Complaint on November 2, 2022, (Doc. 31), and second Amended Complaint on May 25, 2023, (Doc. 98). On June 5, 2023, Equifax filed a Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c).[2] Plaintiff filed his Response in Opposition to

---

   [1] A search of the Court's PACER system suggests that Plaintiff has been a litigant in no less than ***fifteen*** federal lawsuits in this District against various consumer-facing companies.

   [2] Equifax's Motion should have been filed as a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and Equifax apologizes to the Court for this oversight. However, as the same standard of review is applicable to both 12(b)(6) and 12(c) motions, *Conner v. Cleveland County, North Carolina*, 22 F.4th 412,416 (4th Cir. 2022) (noting that courts "apply the same standard for Federal

- 2 -

Equifax's Motion on July 10, 2023. (Doc. 114.) On September 25, 2023, the Magistrate Judge issued a Report and Recommendation, recommending that Equifax's Motion be denied. (Doc. 131.) As an initial matter, Equifax does not object to the Magistrate's recommendation that Plaintiff's May 3, 2022 letter to Equifax and June 17, 2022 communication to undersigned counsel did not directly notify Equifax of a disputed inaccuracy as required to trigger § 1681i of the Fair Credit Reporting Act ("FCRA"), (*id.* at 10-12), and requests that portion of the recommendation stand. However, as set forth herein, Equifax lodges objections to the remainder of the Magistrate's recommendation.

**STANDARD**

Pursuant to Fed. R. Civ. P. 72(b)(2), within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.

Pursuant to Fed. R. Civ. P. 72(b)(3), the district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to.

A district court need conduct a *de novo* review of only those portions of a magistrate judge's report-recommendation to which objection is made. *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992).

**ARGUMENT**

I. **The Magistrate Read A Claim Of Inaccuracy Regarding The PenFed Accounts Into Plaintiff's Amended Complaint That Does Not Expressly Appear Therein**

The Magistrate characterized Plaintiff's Amended Complaint as making two claims of inaccuracy regarding the PenFed accounts: "Plaintiff appears to argue that the failure to report the

---

Rule of Civil Procedure 12(c) motions for judgment on the pleadings as for motions made pursuant to Rule 12(b)(6)"), Equifax believes the error to be harmless.

- 2 -

305153772v.1

- 3 -

PenFed accounts with a zero balance was misleading both because the accounts at issue had been sold and/or assigned *and because the accounts were listed as charged off.*" (Doc. 131, at 13) (emphasis added). This was error.[3]

In his Amended Complaint, Plaintiff does allege that the PenFed accounts were inaccurate because they had been sold and/or assigned. In Paragraph 71 of the Amended Complaint, he alleges "PENFED knew that [Plaintiff] was not liable to pay them anything after the accounts was sold, assigned and/or transferred . . . ." (Doc. 98 ¶ 71.)  In Paragraph 77, he continues: "The reporting and publishing of PENFED's inaccurate, incomplete, incorrect accounts and information are misleading to lenders because it gives the false impression that a debt and/or account balance is still owed to PENFED[.]" (*Id.* ¶ 77.)

But no such comparable express pleadings appear in the Amended Complaint regarding any claim that the PenFed accounts were inaccurate because they should have been reporting with a $0 balance they had been charged off. While Plaintiff included this contention in this September 2021 dispute to Equifax (*see* Doc. 1-2, at 3), he did not expressly include this frivolous[4] claim of inaccuracy in the Amended Complaint. (*See generally* Doc. 98.)

---

[3] The Magistrate omitted a (frivolous) claim of inaccuracy that Plaintiff did advance. Specifically, he claimed that the PENFED accounts were inaccurate, even after a September 2021 reinvestigation by Equifax, because "the date of last payment is showing 2-1-2017," but the "date of delinquency cannot be the date of last payment." (Doc. 98 ¶ 56.)  As Equifax noted in its Motion for Judgment on the Pleadings, this did not plausibly state an inaccuracy, as the referenced Exhibit B (i.e., Doc. 1-3) belies this claim in its entirety: on none of the three PENFED accounts was the "date of last payment showing 2-1-2017." (*See* Doc. 1-3, at 5-7).

[4] "Charged-off debt is deemed uncollectable and treated as a loss for accounting purposes. But charging off a debt does not diminish the legal right of the original creditor to collect the full amount of the debt." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1297 (11th Cir. 2016) (citing *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1188 n.5 (11th Cir. 2010); Fed. Trade Comm., *The Structure and Practices of the Debt Buying Industry*, 2013 WL 419348, at *10 (2013)). As explained by one court:

305153772v.1

The Magistrate's reading of that claim into the Amended Complaint appears to have been premised upon the following statement from Paragraph 68 of the Amended Complaint: "After January 22, 2018, the date of sale, assignment and or transfer of the credit card and line of credit accounts, PenFed to be in compliance with the FCRA and Metro 2 reporting standard for maximum possible accuracy, they are required to report the accounts as sold, transferred, charged-off with a zero balance and zero amount past due to be accurate . . . ." (*See* Doc. 131, at 2 (citing Doc. 98 at 16)). But it is clear that Plaintiff's express pleadings in his Amended Complaint are concerned with the transfer/sale/assignment of the accounts, and that he does not press his frivolous claim that charged off accounts must report with a $0 balance. (*See generally* Doc. 98.) *Pro se* litigants' filings are to be construed liberally, but the Court cannot insert into them what is not there.

## II. The Magistrate's Application of FCRA § 1681i Is At Odds With The Plain Language Of The Statute And The Allegations In The Amended Complaint

The Magistrate characterized Plaintiff's September 24, 2021 letter as "disputing the accuracy of two PenFed accounts because they were inconsistent with the zero balance reported by Experian," (Doc. 131, at 12), and determined that because it "is unclear of the inconsistencies between the Experian and Equifax accounts . . . arose from Experian's adherence to [Metro 2]

---

Banks are in fact required under Federal Regulations to charge off debt that is past due by over 180 days. Otherwise, their balance sheets would misleadingly reflect accounts as assets that have little chance of achieving their full valuation. Thus, the generally accepted accounting principle is codified into federal regulations adopted by the Federal Reserve Board and the Office of the Comptroller of Currency. Because it is not a voluntary act, the creditor has no choice in the matter.

*Artemov v. TransUnion, LLC*, 2020 WL 5211068, at *3 (E.D.N.Y. Sept. 1, 2020) (citations omitted. Accordingly, numerous courts have rejected the claim that charged off accounts must report with a $0 balance. *See, e.g.*, *Artemov*, 2020 WL 5211068, at *4 ("Having laid this foundation, it should be obvious that, even though the banks labeled plaintiff's accounts as charged off, they had no obligation to zero out the overall or past due balance.") (granting motion to dismiss); *Erenthal v. Experian Info. Sols., Inc.*, 2021 WL 941404, at *4 (C.D. Cal. Feb. 26, 2021) (same).

- 5 -

guidelines [regarding transferred/sold accounts]," therefore, "the undersigned cannot find that notice of these additional alleged inaccuracies would have borne no relationship to the purported inaccuracies underlying Plaintiff's claims here," (*id*., at 13-14).

While the Magistrate's R&R favorably cited case law holding that a CRA's duty to reinvestigate is cabined by the dispute the consumer presents, (*see id*. at 8-9 (citing *Petty v. Equifax Info. Servs., LLC*, No. CCB-10-694, 2010 WL 4183542, at *3 (D. Md. Oct. 25, 2010), the Magistrate's recommendation stretches the text of § 1681i too far. As set forth in Equifax's Motion for Judgment on the Pleadings, § 1681i requires a consumer who wishes to dispute the accuracy of any item of information in his credit file to "notif[y] the agency directly, or indirectly through a reseller, *of such dispute*[.]" 15 U.S.C. § 1681i(a)(1)(A) (emphasis added). The plain language of the statute requires the consumer to tell the consumer reporting agency *why* he thinks the item of information is inaccurate, and the consumer reporting agency is just as plainly *not* required to investigate other reasons the item of information might be inaccurate. *See Aldaco v. RentGrow, Inc*., 921 F.3d 685, 690 (7th Cir. 2019) (where consumer's dispute "contended only that the battery record wasn't hers," CRA had a duty to "investigate and confirm with its sources the only information that was disputed: whether the battery record pertained to Aldaco" and not "the reported length of the sentence or the omission of the charge's dismissal").

The Magistrate cited *Lao v. Green Tree Fin. Corp*., 2012 WL 12055044, at *4 (C.D. Cal. Oct. 16, 2012) for the proposition that "the law should compel [plaintiff] to send ongoing, never-ending letters with respect to every iteration of [furnisher's] error." (Doc. 131, at 14.) But even if *Lao* may be considered persuasive, it is distinguishable. In *Lao*, it was plausible that this "alleged inaccuracy [was] simply part-and-parcel of the same dispute—i.e., Green Tree wrongly reported that the account had been 'charged off' and, *as part of Green Tree's mistaken understanding of*

- 5 -

*the account status*, later reported that Lao's last payment was made in August 2011." 2012 WL 12055044, at *4 (emphasis added).

Here, by contrast, the claim that the PenFed account was inaccurately reporting a balance because it was sold, assigned, or transferred, is very different from the claims of inaccuracy that Plaintiff made in his September 2021 dispute to Equifax. The Magistrate strained to find a potential link, surmising that "the inconsistencies . . . highlighted" by Plaintiff's dispute of the PenFed accounts as reporting on the Experian file with a $0 balance but on the Equifax file with a balance might have arisen "from Experian's adherence to [the Metro 2 guidelines regarding transferred/sold accounts]." (Doc. 131 at 13.)

This conclusion is not plausible in light of the allegations in Plaintiff's Amended Complaint. Plaintiff alleges that the PenFed accounts were sold, assigned or transferred on "January 22, 2018," (Doc. 98 ¶ 68), but the purported Experian report he appended to his September 2021 dispute to Equifax indicates that Experian updated the balances on the accounts on June 13, 2017, (Doc. 1-2, at 9, 10). It is not clear from Plaintiff's allegations why Experian might have done so, but it is clear that it could not be because of the January 2018 sale, assignment or transfer that he alleges.

Because Plaintiff did not directly notify Equifax of the inaccuracy he claims in the Amended Complaint, the Magistrate's recommendation that Plaintiff's FCRA § 1681i claim not be dismissed was erroneous. Likewise, the Magistrate's recommendation regarding the disposition of Plaintiff's FCRA § 1681e(b) claim, which hinged on the analysis of the § 1681i claim, (Doc. 131 at 18), was also erroneous.

### III. The Magistrate Erred In Recommending That Plaintiff's Amended Complaint Adequately Pled Facts Supporting His Allegation Of Malice

In the Report and Recommendation, the Magistrate recommended that Plaintiff's Defamation claim not be dismissed because "[t]he SAC alleges that even after Plaintiff told

Equifax that he disputed the accuracy of his accounts, Equifax continued to publish the alleged inaccuracies to third parties" and "Plaintiff alleges that Equifax acted 'with malice . . . .'" (Doc. 131 at 20.) But, as set forth above, and as set forth in Equifax's motion, Plaintiff's September 2021 dispute plainly belies any allegation that he told Equifax of the alleged inaccuracy that he now presents in his Amended Complaint.

Accordingly, Plaintiff's factual contention that Equifax published a consumer report containing a balance on the PenFed accounts after he had disputed—the factual contention supporting his malice claim—is belied by the very exhibit (Doc. 1-2) he relies on, which trumps his allegation to the contrary. *See Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) ("In the event of a conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c) . . . the exhibit prevails."); *Jeffrey M. Brown Assocs., Inc., v. Rockville Ctr Inc.*, 7 F. App'x 197, 202 (4th Cir. 2001) (court need not accept as true "conclusory allegations in the complaint that are contradicted by the attachments").

Accordingly, Plaintiff's Amended Complaint is left solely with a "formulaic recitation of the elements of a cause of action" which "will not do," *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). He cannot escape the FCRA's preemption provision. His Defamation claim is, therefore, due to be dismissed.

### IV.    The Magistrate Erred In Not Recommending Dismissal Of Plaintiff's South Carolina Financial Identity Fraud and Identity Theft Protection Act Claim

Plaintiff's last claim against Equifax is brought under a South Carolina state statute, the South Carolina Financial Identity Fraud And Identity Theft Protection Act. (Doc. 98 ¶¶ 138-144.) Specifically, Plaintiff points to § 37-20-170 of the Act, which is a provision that allows a consumer to dispute information on his or her credit file, *in pari materia* with FCRA § 1681i. Because the Magistrate's application of § 1681 was erroneous, as set forth above, so too was the Magistrate's

305153772v.1

- 8 -

disposal of the Amended Complaint's Fourth Cause of Action against Equifax. Plaintiff's claims here fail for the same reason that his § 1681i claim fails: he did not "give notice in writing to the consumer reporting agency specifying" the alleged inaccuracy that he now claims in his Complaint, i.e., that the PENFED accounts had been sold or transferred and, therefore, inaccurately reflected a balance. S.C. Code Ann. § 37-20-170(A).

## CONCLUSION

For the reasons set forth therein, Equifax respectfully requests the Court dismiss Plaintiff's Complaint, enter Judgment in its favor, and grant all other relief as the Court deems appropriate.

DATED:  October 6, 2023                             Respectfully submitted,


                                                    By:  */s/ Rita Bolt Barker*
                                                         Rita Bolt Barker (Fed. ID No. 10566)
                                                         WYCHE, P.A.
                                                         200 East Broad Street, Suite 400
                                                         Greenville, South Carolina 29601
                                                         Telephone: (864) 242-8235
                                                         Facsimile:  (864) 235-8900
                                                         E-mail:  rbarker@wyche.com

                                                         ***Counsel for Defendant***
                                                         ***Equifax Information Services LLC***

305153772v.1

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2023, I presented the foregoing **PARTIAL OBJECTIONS TO REPORT AND RECOMMENDATION** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record. A copy has also been sent via U.S. Mail to the following:

> Nelson L. Bruce *(plaintiff pro se)*
> c/o P.O. Box 3345
> Summerville, South Carolina  29484
> Telephone:  (843) 437-7901
> Email:  leonbruce81@yahoo.com

*/s/ Rita Bolt Barker*
Rita Bolt Barker
***Counsel for Defendant***
***Equifax Information Services LLC***

305153772v.1