**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

_____
                                                                    )
Nelson L. Bruce,                                              )
                                                                    )
              Plaintiff,                              )
                                                                    )
              v.                                              )     Civil Action No.: 2:22-cv-02211-BHH-MGB
                                                                    )
Pentagon Federal Credit Union; *et al.*         )     District Judge Bruce Howe Hendricks
                                                                    )     Magistrate Judge Mary Gordon Baker
              Defendants.                        )
_____)

**DEFENDANT PENTAGON FEDERAL CREDIT UNION'S**
**OBJECTIONS TO THE REPORT AND RECOMMENDATION ON ITS**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Pentagon Federal Credit Union ("PenFed") filed a motion [ECF 106] seeking dismissal with prejudice of all claims asserted against it in Nelson Bruce's second amended complaint [ECF 98] ("the complaint"). The Court issued a Report and Recommendation on September 25, 2023 [ECF 132] ("the R&R"). The R&R recommends granting PenFed's motion in part and denying it in part. Specifically, the R&R recommends that the Court dismiss the complaint except with respect to the following claims: (I) alleged violations of the Fair Credit Reporting Act ("FCRA"); (II) defamation; and (III) alleged violations of the Uniform Commercial Code ("UCC"). PenFed respectfully objects to the extent the R&R recommends against dismissing those claims.

Bruce alleges that PenFed violated the FCRA by continuing to report the outstanding balance of an account after charging off the account due to nonpayment. The R&R found that it could be misleading to report the balance of a charged-off account. (R&R at 8-11.) Courts throughout the country have held to the contrary, however, because charging off an account does not release the underlying obligation. *Artemov v. TransUnion, LLC*, No. 20-CV-1892 (BMC),

1

2020 WL 5211068, at *5 (E.D.N.Y. Sept. 1, 2020); *Makela v. Experian Info. Sols., Inc.*, No. 6:21-cv-00386-MC, 2021 WL 5149699, at *3 (D. Or. Nov. 4, 2021); *Christian v. Equifax Info. Servs., LLC*, No. 18-13862, 2020 WL 2087869, at *4 (E.D. Mich. Apr. 30, 2020); *cf. Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1297 (11th Cir. 2016); *Kelly v. Wolpoff & Abramson, L.L.P.*, 634 F. Supp. 2d 1202, 1210 (D. Colo. 2008). This Court should apply the same rationale and dismiss Bruce's FCRA claim because it is not misleading to report a balance that is still owed.

Bruce also alleges that PenFed continued to report an account after selling the account. The R&R made two dispositive errors in finding that the complaint states a viable FCRA claim based on the allegation that PenFed reported an account it had sold. First, the R&R does not address, at least directly, PenFed's argument that naming the wrong creditor in an otherwise accurate report is a harmless inaccuracy that cannot give rise to standing or a viable FCRA claim. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016). Neither Bruce nor the R&R have identified any specific harm that could have resulted from the wrong entity being identified as the creditor for an account listed in Bruce's credit report. As such, Bruce lacks standing, and he has not alleged a viable claim.

Second, the R&R found that Bruce can maintain an FCRA claim despite the fact that he did not submit a dispute to a credit reporting agency ("CRA") based on PenFed reporting a loan it had sold. (R&R at 13-17.) Many courts have held, however, that a "furnisher of information need investigate only what is contained in the CRA's dispute notice as to the nature of the dispute." *Edeh v. Midland Credit Management, Inc.*, 413 F. App'x 925, 926 (8th Cir. 2011); *Alston v. United Collections Bureau, Inc.*, No. CIV.A. DKC 13-0913, 2014 WL 859013, at *8 (D. Md. Mar. 4, 2014) (citing *Johnson v. MBNA Am Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004)); *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005). So too should this Court.

2

As explained below, PenFed also objects to the extent the R&R recommends against dismissing Bruce's defamation and UCC claims. The complaint should be dismissed in its entirety.

## STANDARD

A magistrate judge can make a recommendation as to the resolution of a motion to dismiss, but the responsibility for making a final determination remains with the district judge. 28 U.S.C.A. § 636(b)(1); Fed. R. Civ. P. 72. When a party objects to a magistrate judge's recommendation, the district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). The magistrate judge's recommendation does not have "presumptive weight." *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## ARGUMENT

As previously explained, the R&R recommends that the Court dismiss the complaint as asserted against PenFed except with respect to the following claims: (I) alleged violations of the FCRA; (II) defamation; and (III) alleged violations of the UCC. PenFed objects to the R&R to the extent it recommends against dismissing those claims.

### I.    BRUCE'S FCRA CLAIM FAILS.

The R&R finds that the complaint states viable claims under the FCRA based on two separate and distinct factual predicates. First, Bruce claims PenFed was required to report that certain accounts had a "'zero balance'" because PenFed had charged off the accounts. (R&R at 8-10.) Second, Bruce claims that PenFed continued to a report a debt after it had already sold the relevant account. (*Id*. at 13-17.) Both claims, which are addressed separately below, fail.

### A. Bruce's FCRA Claim Involving Charge Offs Is Not Viable.

Bruce claims PenFed violated the FCRA because it did not report a "zero balance" for a charged-off loan. (Compl. ¶ 68.) Bruce's claim is predicated on the assumption that charging off a loan reduces the balance to "zero" and releases the debtor. That assumption is wrong, however, because the act of charging off a loan does not affect the balance of the debt or release the debtor. To the contrary, this Court recently held that "the total amount of the loan remains due and owing" after it has been charged off. *Burns v. Trans Union*, LLC, No. CV 4:18-03120-MGL, 2019 WL 3890833, at *2 (D.S.C. Aug. 19, 2019).

Since charging off a loan does not eliminate the debt, it is not inaccurate to continue reporting the balance of the debt. For that reason, several courts have held that the FCRA does not preclude creditors from reporting the outstanding balance of a charged-off loan as a matter of law.[1] *Artemov*, 2020 WL 5211068, at *6; *Makela*, 2021 WL 5149699, at *3; *Christian*, 2020 WL 2087869, at *4; *cf. Hinkle*, 827 F.3d at 1297; *Kelly*, 634 F. Supp. 2d at 1210.

In fact, requiring creditors to report charged-off loans as having been paid in full would directly undermine the entire purpose of the credit reporting industry—*i.e.*, to provide lenders with accurate information about potential borrowers. The *Artemov* court explained the issue as follows:

> If I were to adopt plaintiff's reasoning—that a charge off categorically precludes a creditor from reporting the total past due amount—it would vitiate the entire existence and purpose of credit reporting companies: to present an evenhanded and fair representation of a particular consumer's ability and willingness to pay off debt, so as to encourage a creditor to take a risk and extend a line of credit to a particular consumer.

---

[1] In *Burns*, this Court found that it could be misleading to continue to report an ongoing monthly payment, as opposed the total balance, after charging off a loan. 2019 WL 3890833, at *3. That holding is not relevant in this case because Bruce does not allege that PenFed reported an ongoing monthly payment, and his exhibits prove it did not do so. (*See* Pl.'s Ex. A.)

2020 WL 5211068, at *6 (citation omitted).

The R&R acknowledges the foregoing cases and does not dispute their rationale. (R&R at 9.) In fact, the R&R finds that the cases "could prove convincing on this issue" at a later stage in the proceedings (*Id*. at 10.) Nevertheless, the R&R recommends against dismissal at this stage because cases from other jurisdictions have held that "'the question of accuracy, in FCRA cases, [is] ill-suited for pre-discovery resolution.'" (*Id*. (quoting *Newman v. Am. Honda Fin. Corp.*, No. 1:21-cv-3, 2022 WL 657630, at *6 (M.D.N.C. Mar. 4, 2022)) (citing *Price v. Equifax Info. Servs.*, No. 5:19-CV-00886, 2020 WL 2514885, at *5 (S.D.W. Va. May 15, 2020); *Short v. Experian Info. Sys., Inc.*, No. 2:16-cv-09294, 2017 WL 2296887, at *4 (S.D.W. Va. May 25, 2017).)

Respectfully, the cases that the R&R cites are inapposite. The defendant in *Price* reported an account as charged off despite the defendant's earlier promise in a settlement agreement to delete the tradeline. 2020 WL 2514885, at *5. The court held that reporting the account as charged off, even if technically accurate, could be misleading in light of the settlement agreement. *Id*. Similarly, *Short* held that it could be misleading to report that an account was charged off after a settlement agreement. 2017 WL 2296887, at *3-4. The only other case the R&R cites, *Newman*, did not address when or how it is appropriate to report a charged-off account.

By contrast, Bruce does not claim PenFed violated any settlement agreement or promised to delete a tradeline. Instead, he claims the mere act of charging off a loan eliminates the debt. Since he is indisputably wrong, no rational factfinder could possibly conclude that it was inaccurate for PenFed to report the balance after charging off the loan. Accordingly, the Court should hold that Bruce's FCRA claim fails to the extent it is based on PenFed reporting the balance of a charged-off loan. *Artemov*, 2020 WL 5211068, at *6; *Makela*, 2021 WL 5149699, at *3; *Christian*, 2020 WL 2087869, at *4; *cf. Hinkle*, 827 F.3d at 1297; *Kelly*, 634 F. Supp. 2d at 1210.

Finally, the R&R points to Bruce's allegation that one of his credit reports showed a zero balance for the relevant account. (R&R at 8-10.) The R&R then infers that "those making credit decisions [could] draw a more negative inference from PenFed reporting a balance on the charged off accounts[.]" (*Id.*) The only negative inference a creditor could draw, however, would be that the account was charged off and a balance remained due and owing. Since such an inference would be true, the creditor would not be misled, and there would no violation of the FCRA.

### B.     Bruce's FCRA Claim Involving an Account That Was Sold Is Not Viable.

The R&R makes two errors—each of which is independently dispositive—in finding that the complaint states a viable FCRA claim based on allegations about PenFed continuing to report an account it had sold. First, the R&R does not directly address PenFed's argument that naming the wrong creditor is a harmless inaccuracy that cannot give rise to standing or a viable FCRA claim. Second, the R&R incorrectly finds that Bruce notified a CRA of his dispute.

#### i.     *Harmless Inaccuracies Are Not Actionable*.

The mere fact that a credit report is inaccurate does not mean the debtor has standing to assert an FCRA claim in federal court. In *Spokeo*, the Supreme Court held that plaintiffs do not automatically have standing to sue for every technical violation of the FCRA because "not all inaccuracies cause harm or present any material risk of harm." 578 U.S. at 342. Using "an incorrect zip code" as an example, the Court noted "[i]t is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.* Even before *Spokeo*, the Fourth Circuit held that, to be actionable, a report must be inaccurate or misleading in such a manner that it "can be expected to have an adverse effect." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (quotations omitted).

PenFed's motion argued that naming the wrong creditor does not, by itself, violate the FCRA as a matter of law because it cannot be expected to have an adverse effect on credit decisions by other lenders. (Mot. at 7-8.) Like the "zip code" example in *Spokeo*, it is difficult to imagine how a report naming the originator of a loan instead of a subsequent holder could cause any harm.

Of course, a debtor could potentially be harmed if a single account appears in the same credit report twice because it is reported by both the originator and a subsequent holder. Bruce does not allege, however, that the loan at issue in this case was reported twice. Indeed, the R&R expressly notes Bruce's critical omission: "Plaintiff does not allege that these accounts were simultaneously reported by a third party elsewhere in any of the consumer reports published by the CRAs." (R&R at 8.)

The R&R does not directly address PenFed's argument that listing the wrong creditor was not, by itself, likely to have an adverse effect on Bruce's ability to obtain credit. Nor does the R&R identify any specific type of harm that could have resulted from the wrong entity being identified as the creditor for an account listed in Bruce's credit report.

The R&R appears to suggest that a deviation from industry reporting standards could, by itself, serve as an injury sufficient to create standing. (R&R at 10 (citing *Arriaza v. Experian Info. Sols., Inc.*, No. 20-cv-3073, 2021 WL 1019937, at *4 (D. Md. Mar. 17, 2021).) The case that the R&R cites, however, held to the contrary. *Arriaza* held that the plaintiff had adequately alleged that the defendant deviated from industry reporting standards. *Id*. at *3. The Court held that the plaintiff lacked standing, however, because following the standards would have had a negative impact on her creditworthiness. *Id*. at *4. In other words, she benefitted from the inaccuracy.

As in *Arriaza*, the only potential inaccuracies identified in the R&R would likely have no impact or a positive impact on Bruce's creditworthiness. Bruce's allegation that the loan is listed

7

as having a zero balance in one report could only improve his creditworthiness. The fact that the wrong name is listed for the creditor would not likely have had any impact on creditworthiness whatsoever. Under *Arriaza*, therefore, Bruce lacks standing.

Finally, the R&R cites Bruce's conclusory allegations that he suffered harm. Allegations that are "conclusory [and] devoid of any reference to actual events … need not be credited[.]" *Id.* at *3. Accordingly, the Court should not allow Bruce's FCRA claim to survive dismissal based only on allegations about harm that are conclusory and implausible.

> ii. *Bruce Did Not Notify a CRA of the Dispute.*

The R&R correctly acknowledges that the first element of an FCRA claim requires a plaintiff to establish that "she notified a consumer reporting agency of the disputed information" before suing. *Shulman v. Lendmark Fin.*, No. 3:21-cv-1887-CMC-SVH, 2021 WL 4691027, at *4 (D.S.C. Oct. 6, 2021) (quotation and other citations omitted). The R&R is incorrect, however, in finding that the complaint adequately alleges that Bruce can satisfy the first element with respect to his claim that PenFed violated the FCRA by continuing to report an account it had sold.

The R&R does not identify any allegations in the complaint or any statements in Bruce's exhibits indicating that Bruce told a CRA that PenFed had sold an account it was reporting. (*See* R&R at 14-15.) Instead, the R&R focuses on a letter that, in the R&R's own words, "did not directly dispute PenFed's failure to report the sale and/or transfer of certain accounts[.]" (*Id.*) The R&R points out that the letter raised disputes about two credit reports reflecting different account numbers and different dates on which the account first became delinquent. (*Id.*) The R&R suggests that PenFed should have corrected other matters when it investigated those issues. (*See id.*)

Several courts have held that a "furnisher of information need investigate only what is contained in the CRA's dispute notice as to the nature of the dispute." *Edeh*, 413 F. App'x at 926;

8

*Alston*, 2014 WL 859013, at *8 (citing *Johnson*, 357 F.3d at 431); *Westra*, 409 F.3d at 827. This Court should adopt the rationale of those cases and hold that Bruce cannot maintain an FCRA claim because he did not notify a CRA that he disputed PenFed's reporting of loans it sold.

## II.     BRUCE'S DEFAMATION CLAIM FAILS.

The R&R correctly states that Bruce's defamation claim "is preempted by the FCRA absent an allegation of malice or willful intent to injure Plaintiff." (R&R at 17 (citing 15 U.S.C. 1681h(e)) (other citations omitted).) The R&R finds that Bruce has adequately alleged malice "[a]t this early stage in the proceedings" because the complaint alleges that "even after Plaintiff told PenFed that he disputed the accuracy of his accounts, PenFed failed to investigate and reported the alleged inaccuracies to third parties." (*Id*. at 17-18.) The complaint does not contain any specific factual allegations that suggest PenFed acted with malice.

The Court should find that Bruce's bare, conclusory allegations of malice are insufficient even during the pleadings stage. *See*, *e.g.*, *Alston v. United Collections Bureau, Inc.*, No. CIV.A. DKC 13-0913, 2014 WL 859013, at *11 (D. Md. Mar. 4, 2014); *Martirosyan v. Chase Bank USA, N.A.*, CV 12-8902-GW(MANx), 2013 WL 12324599 (C.D. Cal. Jan. 28, 2013); *Clark v. Saxon Mortg. Co.*, No. 11–0065–JJB–SCR, 2011 WL 2682435 (M.D. La. July 8, 2011). Setting that issue aside, however, Bruce's defamation claim fails for the same reasons that his FCRA claim fails because the two claims are based on the same facts.

As explained in Section I.A. above, neither the complaint nor the R&R have identified any potential inaccuracies in the information PenFed reported about charged off accounts. As explained in Section I.B., Bruce did not notify the CRAs of a dispute about PenFed reporting loans it had sold, and, in any event, listing the wrong entity as the creditor on a valid account is harmless.

Under the circumstances, no rational factfinder could possibly conclude that PenFed acted maliciously. Accordingly, the Court should also dismiss Bruce's defamation claim.

### III.     BRUCE'S UCC CLAIMS FAILS.

The R&R finds that the complaint states a claim for violations of the UCC based on the allegation that PenFed did not comply with an April 4, 2022, request for an "'authenticated record of accounting[.]'" (R&R at 18-19 (quoting Pl.'s Ex. A at 53).) The April 4, 2022, letter is far from a model of clarity. For example, it confusingly states that Bruce is "not requesting a statement of account, for an authenticated record of the accounting." (Pl.'s Ex. A at 53.) Neither Bruce's complaint nor the briefs he filed in opposition to PenFed's motion to dismiss clearly identify the specific information Bruce believes he is missing or provide a rational explanation of how Bruce has been harmed by PenFed's alleged noncompliance with the UCC. Accordingly, PenFed respectfully requests that the Court dismiss Bruce's UCC claim.[2]

### CONCLUSION

PenFed respectfully objects to the R&R to the extent it recommends against dismissing the complaint in its entirety as asserted against PenFed. The bottom line is that the complaint and its exhibits do not show that PenFed violated the FCRA, let alone plausibly allege that PenFed acted with the type of malice required to avoid the FCRA's preemption clause. Accordingly, PenFed requests that the Court dismiss all claims asserted against PenFed with prejudice.

---

[2] In the event that the Court decides to dismiss Bruce's other claims against PenFed, and eventually dismisses his claims against the other defendants for the same reasons, the Court should decline to exercise supplemental jurisdiction over Bruce's UCC claim. The complaint does not, and cannot, allege that Bruce suffered any damages as a result of PenFed's alleged noncompliance with the UCC, and, therefore, the amount in controversy will not come close to exceeding the $75,000 threshold for diversity jurisdiction if the only claim pending is the UCC claim.

Signature block page

DATED: October 9, 2023.     **Respectfully submitted,**

**PENTAGON FEDERAL CREDIT UNION**

s/ G. Troy Thames
G. Troy Thames (Federal ID No.: 07713)
WILLSON JONES CARTER & BAXLEY, P.A.
4922 O'Hear Avenue, Suite 301
North Charleston, SC 29405
Telephone: (843) 284-0832
Facsimile: (843) 606-3300
Email: tthames@wjcblaw.com

Michael A. Graziano  (*pro hac vice* pending)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
1717 Pennsylvania Avenue, N.W., Suite 1200
Washington, D.C. 20006
Telephone: 202.659.6671
Facsimile: 202.659.6699
E-mail: mgraziano@eckertseamans.com

*Attorneys for Pentagon Federal Credit Union*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of October, 2023, I served the foregoing via first class mail on:

Nelson L. Bruce
P.O. Box 3345
Summerville, SC 29484
*Pro Se Plaintiff*

                                                   s/ G. Troy Thames
                                                   G. Troy Thames (Federal ID No.: 07713)

12