IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Nelson L. Bruce, | ) | Civil Action No. 2:22-cv-02211-BHH-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Pentagon Federal Credit Union, *et. al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Nelson L. Bruce, proceeding *pro se* and *in forma pauperis*, filed this action on July 12, 2022, bringing claims pursuant to the Fair Credit Reporting Act ("FCRA"), among others. (Dkt. Nos. 1; 171.) Currently before the Court are two motions filed by Plaintiff seeking discovery purportedly related to his claims against Defendant Pentagon Federal Credit Union ("PenFed"). Specifically, Plaintiff's Motion to Compel Discovery from PenFed (Dkt. No. 225) and Plaintiff's Motion for Issuance of a Subpoena (Dkt. No. 241).[1] For the reasons stated below, both motions are denied.

**BACKGROUND**

Plaintiff has amended his complaint three times since filing this action.[2] Most recently, Plaintiff filed a Third Amended Complaint on May 30, 2024. (Dkt. No. 171.) The latest amendments to the pleading only affect Defendants LexisNexis Risk Solutions, Inc.; LexisNexis Risk Solutions FL Inc,; and LexisNexis Risk Data Management Inc. (*Id.*) The allegations specific to PenFed are largely unchanged from the prior version of the complaint, filed on May 25, 2023.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Local Rule 73.02(B)(2)(e), D.S.C.

[2] Here, the Court incorporates by reference the procedural background exhaustively detailed in the Order granting Plaintiff's motion for leave to file a third amended complaint. (Dkt. No. 170 at 2–5.)

1

(Dkt. No. 98.) The Third Amended Complaint alleges that "PENFED intended not to furnish accurate . . . information related to the current status of the accounts to the reporting agencies because their internal records prior to about January 22, 2018, show that": (1) "PENFED knew that the credit card account being reported and published on [Plaintiff's] consumer reports . . . allegedly belonging to the Plaintiff, was sold and transferred" by PenFed to United Holding Group"; and (2) "PENFED knew the line of credit account being reported and published on [Plaintiff's] consumer reports . . . allegedly belonging to the Plaintiff was assigned and transferred to National Credit Corporation." (Dkt. No. 171 at 19–20.) It further alleges, *inter alia*, under the "Federal Reserve Act, Plaintiff's 'Promissory Note' is the 'Collateral Security' for the loan of credit he received and when he deposited with the Local Federal Reserve agent, Federal Reserve Notes are issued to the bank, in this case PenFed, therefore PenFed has been paid on" Plaintiff's account at issue." (*Id*. at 21–22.) On June 13, 2024, PenFed filed an Answer to the Third Amended Complaint and asserted Counterclaims for the first time.[3] (Dkt. No. 186.)

Relevant here, on July 16, 2024, Plaintiff moved for issuance of subpoenas to certain non-parties, including the Federal Reserve Bank of Richmond Virginia ("Federal Reserve Bank"), to obtain information "relevant information related to the claims in Plaintiff's 3rd amended complaint." (Dkt. No. 202 at 1.) On July 19, 2024, the Court denied Plaintiff's motion as to the Federal Reserve Bank because "Plaintiff offers no compelling reason why the documents sought from [this entity] are relevant and proportional to this case, and the proposed subpoena does not clarify this issue." (Dkt. No. 211 at 4.) The Court also noted that Plaintiff "does not offer any reason for his delay in seeking this discovery, which appears specific to his claims against PenFed.

---

[3] Plaintiff's motion to dismiss these counterclaims is currently pending. (Dkt. No. 209.)

Plaintiff's allegations against PenFed have remained substantially the same since May 25, 2023." (*Id*. at 3.)

On July 30, 2024, Plaintiff filed a Motion to Compel Discovery from PenFed, asking for the Court to compel "PenFed to sufficiently respond to his 1st set of discovery (interrogatories 1 through 17 and request for production no.'s 1, 2, 4–22) and second set of discovery (all of the 2nd set of discovery interrogatories and requests for production presented)." (Dkt. No. 225 at 3 (verbatim).) PenFed then filed a response in opposition, opposing the motion as: (1) untimely; (2) deficient for failing to address any substantive issues related to PenFed's discovery responses; and (3) seeking responses to discovery requests that are "confusing, vague, and unclear." (Dkt. No. 234.) PenFed claims that it answered some of Plaintiff's interrogatories and "produced numerous documents, including [Plaintiff's] account statements, the promissory note for his vehicle loan, his membership application, and the relevant internal policies and procedures." (*Id*. at 4.) Citing Plaintiff's discovery requests that mention the Federal Reserve, PenFed asserts that such requests "appear to be premised on a fundamental misunderstanding of the federal government's role in the banking system." (*Id.* at 5–6.) PenFed maintains that this case "arises from simple credit reporting disputes involving three credit accounts [Plaintiff] opened with PenFed and failed to repay. It has nothing to do with any transactions between PenFed and any federal agency or any other consumer." (*Id*. at 6.)

In his reply brief, Plaintiff disputes PenFed's arguments, stating this his requests, "while broad, are aimed at uncovering the truth behind PenFed's financial practices and their impact on Plaintiff's accounts," which "is crucial for establishing the factual basis of Plaintiff's claims." (Dkt. No. 245 at 3–4.) Plaintiff asserts that PenFed's "obstructionist behavior justifies the imposition of sanctions under Rule 37(b)(2)." (*Id.* at 4.)

On August 14, 2024, Plaintiff filed another Motion for Issuance of Subpoena as to the Federal Reserve Bank "for the production of documents relevant to Plaintiff's claims against [PenFed] . . . in this action." (Dkt. No. 241 at 1.) Plaintiff asserts his renewed motion provides the "relevance and proportionality" that was missing from his prior briefing. (*Id*. at 1–3.) On relevance, Plaintiff asserts that the "documents sought from the Federal Reserve Bank are critical to establishing the accuracy of PenFed's reporting." (*Id*. at 2.) Citing PenFed's 2016 "Call Report," Plaintiff states that "PenFed reported over $19.9 billion in total assets, with a significant portion in loans and other financial instruments that could have involved transactions processed through the Federal Reserve Bank." (*Id*.) Plaintiff maintains that the "records held by the Federal Reserve Bank would likely include detailed information on these transactions, which is essential for verifying whether PenFed accurately reported the status of Plaintiff's accounts in compliance with the FCRA." (*Id.*)

On proportionality, Plaintiff states his "request focuses specifically on documents related to PenFed's transactions with the Federal Reserve Bank concerning Plaintiff's accounts" and that "obtaining this information is vital to substantiate the allegations that PenFed reported incorrect or misleading information." (*Id*.) Plaintiff states that "despite efforts to obtain relevant information directly from PenFed, Plaintiff has been unable to secure the necessary documentation, thereby justifying the need for this subpoena." (*Id*. at 3.) Plaintiff has provided a proposed subpoena with his motion. (Dkt. No. 241-1.)

The undersigned has carefully reviewed Plaintiff's motions (Dkt. Nos. 225; 241) and issues the following findings.

## **STANDARD**

All civil discovery, whether sought from parties or nonparties, is limited in scope by Rule 26(b)(1) which provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).[4]

"When discovery is sought from nonparties, however, its scope must be limited even more." *Virginia Dep't of Corr. V. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019). "Bystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery." *Id.* "For example, a party's email provider might well possess emails that would be discoverable from the party herself. But unless the email provider can offer important information that cannot be obtained from the party directly, there would be no cause for a subpoena against the provider." *Id*.

Rule 37 of the Federal Rules of Civil Procedure provides that if a party fails to respond to discovery, the party seeking discovery may move for an order compelling production. The decision to grant or to deny a motion to compel discovery rests within the broad discretion of the trial court. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion.") (citations omitted);

---

[4] Subpoenas issued to nonparties are governed by Rule 45 of the Federal Rules of Civil Procedure, which "adopts the standard codified in Rule 26" in determining what is discoverable. *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005).

*LaRouche v. Nat'l Broad. Co.*, 780 F.2d 1134, 1139 (4th Cir. 1986) ("A motion to compel discovery is addressed to the sound discretion of the district court." (citation omitted)).

Pursuant to Local Rule 37.01, D.S.C., motions to compel discovery must be filed within twenty-one (21) days after receipt of the discovery response to which the motion to compel is directed or, where no response has been received, within twenty-one (21) days after the response was due. L.R. 37.01(A), D.S.C.

## DISCUSSION

Upon careful review, the Court finds no basis to grant either discovery motion.[5] As an initial matter, Plaintiff's Motion to Compel offers no explanation of how any discovery responses from PenFed are deficient other than stating PenFed has not "respond[ed] sufficiently to Plaintiff's discovery requests." (Dkt. No. 225.) Even in his reply brief, Plaintiff only mentions PenFed's "demonstrably inadequate" responses to Interrogatory Number 20 and Request for Production ("RFP") Number 8, claiming "these requests seek information related to PenFed's pledging of collateral to the Federal Reserve, which is directly relevant to Plaintiff's claims concerning PenFed's handling of his accounts." (Dkt. No. 245 at 3.)

Interrogatory No. 20 asks PenFed to "explain in full completed detail whether you ever pledged any collateral with any Federal Reserve Bank and or its affiliates successors or assigns [sic] as collateral is defined on the Federal Reserve Bank website [] related to any consumer since you were granted access and service on 7-11-1994?" (Dkt. No. 225-4 at 2–3.) PenFed objected to this request "on the grounds that the information it seeks is irrelevant as to Plaintiff's claims or

---

[5] As PenFed recognizes in its briefing, Plaintiff's Motion to Compel was untimely filed under the Local Civil Rules by, at most, seven days. (Dkt. No. 234 at 3.) In his motion, Plaintiff indicates he "exercised multiple attempts in good faith to work with PenFed to resolve the discovery issues" prior to filing his motion and it was delayed for this reason. Given Plaintiff's *pro se* status and the brief period of delay at issue, the Court will not deny Plaintiff's Motion to Compel as untimely filed. Instead, the Court considers the merits of Plaintiff's Motion to Compel, below.

6

defenses in this matter. PenFed further objects to this Request as it is expansively overbroad, unduly burdensome, and not reasonably limited in time or scope." (*Id*.) RFP No. 8 asks PenFed to "produce any and all documents and electronically stored information related to your master account with any and all federal reserves. This would include your account number, any and all agreement, applications, transactions and balances transacted through this account from September 2016 to September 2017." (225-1 at 10.) PenFed objected to this request "as it is vague, confusing in its syntax, expansively overbroad, unduly burdensome, and seeks documents that are irrelevant to Plaintiff's claims or defenses in this matter. Moreover, seeking confidential and highly confidential financial information from PenFed is wholly disproportionate to the needs of this case." (*Id*.)

The undersigned finds PenFed's objections to these specific discovery requests are reasonable given the limited scope of Plaintiff's claims against PenFed and the expansive and overbroad information and documents sought here. As for Plaintiff's remaining discovery requests, Plaintiff has not articulated the deficiency of any particular response from PenFed and, on review, the undersigned does not independently find reason to compel any further responses from PenFed. Indeed, many of Plaintiff's remaining discovery requests to which PenFed objected are similarly confusing, vague, and overbroad. For example, RFP 10 seeks "all documents and electronically stores data that has you deductions you received from the IRS related to any and all uncollectible worthless business bad debts from 2016 to present." (Dkt. No. 225-2 at 19.) To the extent PenFed can discern the exact documents that would be responsive to this discovery request, it is unclear how the past eight years of deductions PenFed has received from the IRS is relevant to Plaintiff's claims and proportional to the needs of this case. Based on the foregoing, the Court denies

Plaintiff's Motion to Compel (Dkt. No. 225) and denies Plaintiff's request to impose sanctions on PenFed.

Turning to Plaintiff's Motion for Issuance of Subpoena (Dkt. No. 241), the requests directed to the Federal Reserve Bank are equally confusing, vague, and overbroad. As an initial matter, the relevance of the subpoena requests directed to this non-party is entirely speculative. Indeed, Plaintiff insists these requests are relevant because in 2016, PenFed "reported over $19.9 billion in total assets, with a significant portion in loans and other financial instruments that *could have involved* transactions through the Federal Reserve Bank" and this entity "*would likely* include detailed information on these transactions." (Dkt. No. 241 at 2 (emphasis added).) The overbreadth of Plaintiff's requests are self-evident (*see* Dkt. No. 241-1) and PenFed "should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it." *Jordan*, 921 F.3d at 190. In short, the Court continues to find that the documents sought directly from the Federal Reserve Bank are not relevant and proportional to this case and therefore denies Plaintiff's Motion for Issuance of Subpoena (Dkt. No. 241).

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion to Compel (Dkt. No. 225) is DENIED and Plaintiff's Motion for Issuance of Subpoena (Dkt. No. 241) is DENIED.

IT IS SO ORDERED.

August 26, 2024

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE