# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| NELSON L. BRUCE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PENTAGON FEDERAL CREDIT UNION a.k.a. PENTAGON FEDERAL CREDIT UNION FOUNDATION ("collectively" PENFED), EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, EQUIFAX INFORMATION SERVICES, LLC, all unknown Does 1-100, et al.,<br><br>　　　　Defendants. | Case No. 2:22-cv-02211-BHH-MGB<br><br>**DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S OBJECTIONS TO MAGISTRATE JUDGMENTS ORDER GRANTING PLAINTIFF'S "MOTION FOR RELIEF"** |

Defendant Equifax Information Services LLC ("Equifax"), by Counsel, hereby submits its Objections to the Magistrate Judge's Order (Doc. 292) granting Plaintiff's "Motion for Relief" (Doc. 220), which the Magistrate Judge construed as a Motion for Reconsideration pursuant to Rule 54(b). Despite citing the correct standard applicable to Rule 54(b) motions, and correctly noting that such motions should not be used "to raise new arguments or evidence that could have been raised previously," (Doc. 292, at 7 (quoting *South Carolina v. United States*, 232 F. Supp. 3d 785, 793 (D.S.C. 2017)), the Magistrate Judge considers the same arguments by Plaintiff that were ***previously available*** to him, ***previously raised***, and ***previously rejected*** by this Court – and then arrives at a conclusion not only different from what the Court had previously decided, but which is also clearly erroneous and contrary to law.

The issue that the Magistrate Judge had previously decided, a decision which this Court had adopted, was whether the May 3, 2022 dispute letter (both alleged in and attached to Plaintiff's Complaint) could support a claim, under 15 U.S.C. § 1681i of the Fair Credit Reporting Act, for

314054777v.1

failure to make a reasonable reinvestigation of a consumer dispute. Section 1681i is triggered "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer *and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute*[.]" 15 U.S.C. § 1681i(a)(1).

Previously, the Magistrate Judge decided (a decision this Court adopted) that the May 3, 2022 letter did not trigger FCRA § 1681i "because it does not allege inaccurate or incomplete reporting by PenFed," since, in the letter, "Plaintiff indicates that the accounts reported by PenFed may be correct, he just is 'not 100 percent sure if they are,'" which did "not provide Equifax notice of a dispute sufficient to trigger its reinvestigation duty under § 1681i." (Doc. 131, at 10.) This Court correctly adopted this conclusion. (Doc. 154, at 14.)

Plaintiff moved for relief from this conclusion, arguing that a dispute "was triggered as a result of [his] May 3, 2022 dispute with Equifax" because, instead of sending him a frivolousness determination, Equifax "produced dispute results related to th[at] dispute[.]" (Doc. 220, at 5.) In the Order that Equifax now objects to, the Magistrate Judge found this argument persuasive:

> Upon careful review, the undersigned agrees that, based on the exhibits attached to the TAC (Dkt. No. 1-2 at 2–6, 48; Dkt. No. 1-3 at 22–32), and the requirements of § 1681i(a)(3), it cannot be found, as a matter of law, that the May 3, 2022 letter did not provide Equifax the requisite notice to support any claim under § 1681i. This Court has previously found that Plaintiff's September 24, 2021 letter "disputed directly to Equifax the specific alleged inaccuracies in his consumer report." (Dkt. No. 131 at 12; see Dkt. No. 1-2 at 2–6.) In his May 3, 2022 letter, Plaintiff identified the same disputed PenFed accounts, and he asked Equifax to "re-investigate if every piece of information" for these accounts "is correct." (Dkt. No. 1-2 at 48.) Plaintiff asked that, upon re-investigation, Equifax "remove" any inaccurate information from his "credit report immediately." (Id.) The record indicates Equifax found Plaintiff's letter sufficient to reinvestigate the accounts at issue. (Dkt. No. 1-3 at 22–32); see also § 1681i(a)(3).

> Based on the foregoing, the Court cannot say, as a matter of law, that Equifax did not view the May 3, 2022 letter as "part and parcel" of the specific disputes raised in Plaintiff's September 24, 2021 letter, and conducted their reinvestigation accordingly. *See Lao v. Green Tree Fin. Corp.*, 2012 WL 12055044, at *4 (C.D.

- 2 -

> Cal. Oct. 16, 2012) (rejecting argument that inaccuracies raised in underlying dispute letter were not specific enough to establish the requisite notice for the inaccurate statements alleged in the complaint; noting "the facts may show that the alleged inaccuracy is simply part-and-parcel of the same dispute . . . . To the extent this statement represents a continuation of the same disputed inaccuracy, the law should not compel [plaintiff] to send ongoing, never-ending letters with respect to every iteration of [furnisher's] error"). While the Court recognizes these arguments are similar to what has already been presented by Plaintiff, because manifest injustice would occur were the Court were to deny this aspect of Plaintiff's § 1681i claim under Rule 12(b)(6), the Court grants this portion of Plaintiff's motion to reconsider.

(Doc. 292, at 19-20.)

Because this part of the Magistrate Judge's Order is clearly erroneous and contrary to law, Equifax files the instant objections.

## STANDARD

Pursuant to Fed. R. Civ. P. 72(a), when a party objects to a Magistrate Judge's Order, it "may serve and file objections to the order within 14 days after being served with a copy." Fed. R. Civ. P. 72(a). Thereafter, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.* "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Blackledge*, 751 F.3d 188, 194 (4th Cir. 2014) (internal quotation marks omitted) (quoting *United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012)). "[A]n order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *King v. Marriot Intern., Int.*, 2006 WL 2092592, at *3 (D.S.C. Jul. 26, 2006) (quoting *Tompkins v. R.J. Reynolds Tobacco Corp.*, 92 F.Supp .2d 70, 74 (N.D.N.Y. 2000)).

## ARGUMENT

This case was filed over two years ago. Despite warning Plaintiff, over a year ago, when granting him leave to file his Second Amended Complaint, that it was his "final opportunity to amend his complaint," and that, "[a]bsent extraordinary circumstances, the Court will not entertain further requests from Plaintiff to amend his complaint," (Doc. 97, at 3), the Magistrate Judge has seen fit to give Plaintiff leave to amend two more times—the *Fourth* Amended Complaint was just filed September 26, 2024. (Doc. 291.) Despite all of these amended filings, Plaintiff's averments do not get better with age. For example, among other things, he continues to allege that "PenFed has been paid on both the Auto Loan and Line of Credit Accounts" because PenFed deposited the promissory notes he signed with the Federal Reserve and "Federal Reserve notes [were] issued to the bank." (Doc. 291 ¶ 82.) What this word salad really means was made crystal clear at Plaintiff's deposition:

> A. Well, the issue is, is when you sign a promissory note they don't keep it as a promissory note. They convert it. The conversion changes it into a draft instrument.
> Q. Who converts it?
> A. The banks.
> Q. What are you basing that on?
> A. The law.
> Q. The law, what, tell me.
> A. It's all on the record. I don't know why – it's on the record. All you got to do is review the record.
> Q. I have reviewed everything in this case. You're getting deposed right now. I need you to tell me that what you base that statement on.
> A. The Federal Reserve Act, the information that relates to that.
> Q. So according to you, Mr. Bruce, anyone in America, if they sign a promissory note they don't have to pay it back? The government will cover that cost; is that what you're saying?
> A. That's what the law says.

(Bruce Depo. 213:13-214:12) (attached hereto as **Exhibit A**.) This appears to be a new twist on a long line of frivolous legal arguments regarding the Federal Reserve.

- 5 -

It is as frivolous as the dispute presented by Plaintiff's dispute letter to Equifax dated September 24, 2021 that "[c]harge-offs/write-offs are to be reported with a '0' (zero) balance as paid in full[.]" (Doc 1-2, at 3.) Equifax moved to dismiss the Second Amended Complaint to the extent that it incorporated this alleged "inaccuracy," noting that it is incorrect as a matter of law, but the Magistrate found Equifax had "offer[ed] no compelling argument"[1] and that she "cannot find that Plaintiff has more generally failed to plausibly allege an inaccuracy stemming from Equifax's failure to report the charged off PenFed accounts with a zero balance." (Doc. 131, at 14.)

Equifax recognizes that these are issues the Court has deemed will be decided at summary judgment, but cannot help but express its frustration at how Plaintiff has consumed its and the Court's resources—not to mention the countless hours expended by the other parties—in this litigation for over two years now.

Equifax now turns to why the Magistrate Judge's decision to reverse course on her prior determination that Plaintiff's May 3, 2022 letter did not trigger FCRA § 1681i was clearly erroneous and contrary to law:

---

[1] Equifax now proffers a more fulsome explication: "'Charge off' is a term of art for credit providers, understood as writing off a debt as a loss because payment is unlikely." *Makela v. Experian Info. Sols., Inc.*, 2021 WL 5149699, at *3 (D. Or. Nov. 4, 2021) (citing Charge Off, Black's Law Dictionary (11th ed. 2019)). "Federal regulations require banks to 'charge off' debt that is past due by over 180 days." *In re Anderson*, 884 F.3d 382, 386 n.2 (2d Cir. 2018) (citing Uniform Retail Credit Classification and Account Management Policy, 65 Fed. Reg. 36,903, 36,904 (June 12, 2000)). Otherwise, a bank's "balance sheets would 'misleadingly reflect accounts as assets that have little chance of achieving their full valuation.'" *Makela*, 2021 WL 5149699, at *3 (quoting *Artemov v. TransUnion, LLC*, 2020 WL 5211068, at *3 (E.D.N.Y. Sept. 1, 2020)). However, "[s]ince financial institutions are required to comply with this federal requirement, it follows that charging off an account does not equate to debt forgiveness." *Artemov*, 2020 WL 5211068, at *4. Thus, "charging off a debt does not diminish the legal right of the original creditor to collect the full amount of the debt." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1297 (11th Cir. 2016); *accord Dye v. TransUnion, LLC*, 2013 WL 5663094, at *3 (D. Nev. Oct. 15, 2013) ("[Charged off] debt is still enforceable."). In sum, Plaintiff's contention that charged off debt must report with a zero balance is frivolous.

1. **The Argument Made In Plaintiff's Motion For Relief Was Previously Available To Him, And, In Fact, Was Made By Him, And Did Not Provide Grounds For A Motion For Reconsideration.**

The argument made in Plaintiff's "Motion for Relief," that a dispute "was triggered as a result of [his] May 3, 2022 dispute with Equifax" because Equifax "produced dispute results related to th[at] dispute[,]" (Doc. 220, at 5), was not only previously available to him, but was actually made by him to this Court. In his Objections to the Magistrate Judge's original determination that the May 3, 2022 letter did not trigger FCRA § 1681i, Plaintiff argued that "the Magistrates decision conflicts with what has transpired as . . . the record clearly evidence that a reinvestigation was triggered[,] evidenced by Equifax results." (Doc. 137, at 2.)  The Court considered this argument, concluded that it did not "find any merit to Plaintiff's objections," and overruled them. (Doc. 154, at 15-16.)

Nonetheless, despite that Plaintiff previously presented this argument, the Court rejected it, *and* the Magistrate recognized that motions for reconsideration "should not be used to rehash arguments the court has already considered" or "to raise new arguments or evidence that could have been raised previously," (Doc. 292, at 7) (quotations and citation omitted), the Magistrate gives Plaintiff a second bite at the apple with this previously rejected argument. This was clearly erroneous and contrary to law because "the discretion afforded by Rule 54(b) is not limitless . . . such discretion is subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *U.S. Tobacco Cooperative Inc. v. Big South Wholesale of Virginia, LLC*, 899 F.3d 236, 256-57 (4th Cir. 2018).

2. **The Magistrate Judge's Decision That, If A CRA Takes Action On A Dispute, Therefore § 1681i Is Triggered, Even If The Dispute Objectively Fails To Identify An Inaccuracy, Is Contrary To Law.**

314054777v.1

- 7 -

The Magistrate Judge got it right the first time. The May 3, 2022 dispute letter alleged in, and attached to, the Complaint did not put Equifax on notice of any specific inaccuracy with regard to the PenFed accounts. Contrary to the arguments Plaintiff has repeatedly made, FCRA § 1681i requires more than just an identification of the item of information. The plain language of the statute requires that "the completeness or accuracy" of the item be "disputed" and that the consumer notify the consumer reporting agency "*of such dispute*." 15 U.S.C. § 1681i(a)(1). In other words, that the consumer say *what* is inaccurate about the identified item of information. Plaintiff's May 3, 2022 letter clearly fails to specify—in even the most general terms—what the alleged inaccuracy is.

This plain command of the statute has long been well understood: "The statute requires that a consumer notify a CRA of the existence and nature of a dispute for an obvious reason: Without notice of a consumer's dispute, including an explanation of why a consumer believes his or her report is inaccurate or incomplete, a CRA generally would not know what information to reinvestigate, how to reinvestigate it, or whether upon reinvestigation the information is indeed inaccurate or incomplete." *Petty v. Equifax Info. Servs. LLC*, 2010 WL 4183542, at *3 (D. Md. Oct. 25, 2010).

Indeed, the Fourth Circuit's test for whether a reinvestigation of a dispute is reasonable necessarily requires that the entity obligated to reinvestigate be informed of the alleged inaccuracy, not just the item of information. In *Johnson v. MBNA America Bank, NA*, 357 F.3d 426, 432-433 (4th Cir. 2004), the Fourth Circuit approved the district court's "balancing test" jury instruction on reasonableness: "weighing the cost of verifying disputed information against the possible harm to the consumer." This test necessarily focuses on the "disputed information" presented to the reinvestigating entity *in the dispute*, and asks the jury to weigh the cost to the reinvestigating entity

of verifying the disputed information against the possible harm to the consumer. This test is impossible to apply if the dispute does not actually present the claimed inaccuracy to the consumer reporting agency.

That Equifax may have reached out to PenFed and notified it of Plaintiff's May 3, 2022 letter does not, *cannot*, render that letter legally sufficient to support a § 1681i claim. Equifax can go above and beyond what it is obligated to do under the FCRA.[2] It can send a dispute that does not notify it of an inaccuracy to the creditor, in hopes that the creditor may correct some error unknowable to Equifax. But that fact that Equifax may do so does not mean that it was *obligated* to do so. The question of whether it was obligated to do so is an objective one: did the consumer directly notify Equifax of their dispute of the accuracy or completeness of an item of information? If the answer to that objective question is "No," then § 1681i did not obligate Equifax to do *anything*, even to make a frivolousness determination.[3] Equifax cannot change the answer to that objective question into a "Yes" by virtue of having taken some action, even if it was not obligated to do so.

**3. The Magistrate Judge Cited To Case Law, *Lao v. Green Tree Fin. Corp*, That Was Inapplicable To The Question Before Her.**

The question before the Magistrate was whether the May 3, 2022 letter, incorporated by referenced into the Complaint, plausibly alleged legally sufficient notification by Plaintiff to Equifax of his dispute of the accuracy of an item of information in his credit file. The letter is plain

---

[2] *See, e.g.*, *Keefer v. Ryder Integrated Logistics, Ltd.*, 2023 WL 1442891, at *4 n.5 (N.D. Cal. Feb. 1, 2023) (defendant argued that because it had provided an FCRA-compliant background investigation disclosure, the court need not consider additional subsequent disclosures "because the FCRA does not limit what can be sent after and beyond the compliant disclosure").

[3] The section of FCRA § 1681i that allows a consumer reporting agency to make a frivolousness determination is subsequent to the triggering of the initial reinvestigation obligation. Section 1681i(a)(3) reads "[n]otwithstanding paragraph (1), a consumer reporting agency may terminate a reinvestigation . . . ." 15 U.S.C. § 1681i(a)(3)(A).

- 9 -

on its face. It identifies the three items of information, the PenFed accounts, but does not specify—in even the most generalized manner—what is the dispute of the accuracy of those items.

In reversing course from her prior, correct, determination that the May 3, 2022 letter was not legally sufficient to put Equifax on notice of a disputed inaccuracy, the Magistrate cited to *Lao v. Green Tree Fin. Corp.*, 2012 WL 12055044, at *4 (C.D. Cal. Oct. 16, 2012). But that unpublished case, which has been cited by only one other court, considered a situation in which a consumer had identified an item of information (a Green Tree account) **and** had identified a specific dispute regarding its accuracy (she disputed that the account was charged off) <u>in her dispute letter</u>. The question before the court was whether the specific dispute in the letter adequately put the defendant on notice of some other specific claims of inaccuracy identified even more specifically in the Complaint. The court held that it was possible that the "alleged inaccuracy [i.e., identified even more specifically in the Complaint] is simply part-and-parcel of the same dispute [i.e., that the account was charged off]" and declined to dismiss the part of the consumer's cause of action premised on the other, even more specifically identified claims of inaccuracy. *Id.*, at *4.

That is a fundamentally different question from the one that was before the Magistrate Judge: did the May 3, 2022 letter identity a dispute of accuracy <u>at all</u>? It did not. The Court has already held that it did not. The Magistrate Judge should not have revisited that decision, and *Lao v. Green Tree Fin. Corp* did not provide any grounds to do so.

## CONCLUSION

For the reasons set forth herein, Equifax respectfully requests the Court sustain its objection to the Magistrate Judge's decision to overturn that part of the District Judge's Order overruling Plaintiff's Objections to that part of the Magistrate Judge's original Report and Recommendation

concluding that Plaintiff's May 3, 2022 letter to Equifax did not trigger any obligation of Equifax to reinvestigate under 15 U.S.C. § 1681i.

DATED: October 4, 2024

Respectfully submitted,

WYCHE, P.A.

By: */s/ Rita Bolt Barker*
Rita Bolt Barker (Fed. ID No. 10566)
WYCHE, P.A.
200 East Broad Street, Suite 400
Greenville, South Carolina 29601
Telephone: (864) 242-8235
Facsimile: (864) 235-8900
E-mail: rbarker@wyche.com

*Counsel for Defendant*
*Equifax Information Services LLC*

314054777v.1

## CERTIFICATE OF SERVICE

I hereby certify that on October 4, 2024, I presented the foregoing DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S OBJECTIONS TO MAGISTRATE JUDGMENTS ORDER GRANTING PLAINTIFF'S "MOTION FOR RELIEF" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record. A copy has also been sent via U.S. Mail to the following:

> Nelson L. Bruce *(plaintiff pro se)*
> c/o P.O. Box 3345
> Summerville, South Carolina  29484
> Telephone:  (843) 437-7901
> Email:  leonbruce81@yahoo.com

*/s/ Rita Bolt Barker*
Rita Bolt Barker
*Counsel for Defendant*
*Equifax Information Services LLC*

314054777v.1