# EXHIBIT A

**PenFed's Status Report Dated November 4, 2024**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Nelson L. Bruce, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 2:22-cv-02211-BHH-MGB |
| ) | |
| Pentagon Federal Credit Union; *et al*. ) | District Judge Bruce Howe Hendricks |
| ) | Magistrate Judge Mary Gordon Baker |
| Defendants. ) | |

### SECOND DECLARATION OF CRAIG OLSON

1. I, Craig Olson, am over the age of eighteen and can competently testify in the above-captioned case.

2. Unless otherwise stated, I have personal knowledge of the matters stated herein.

3. I am currently employed by Pentagon Federal Credit Union ("PenFed") as Vice President, Legal Operations, and have held that position since May 2024.

4. From December 2017 to May 2024, I was employed by PenFed as Vice President, Credit Risk Operations.

5. Prior to December 2017, I was employed by PenFed in various additional positions beginning in February 2009.

6. As part of its regular business activities, PenFed creates, receives, and keeps records related to accounts opened by its members, including but not limited to signature cards, account agreements, promissory notes, checks and other financial instruments, account statements, and communications related to collections activities, including communications involving third-parties PenFed engages to collect past due debts owed by members.

1

7. In connection with my current position with PenFed as Vice President, Legal Operations, as well as the previous positions I held with PenFed from February 2009 until May 2024, I have access to the records described in paragraph 6 above.

8. Nelson L. Bruce opened three credit accounts with PenFed: (1) a vehicle loan with an account number ending in 3812 (the "vehicle loan"); (2); a personal line of credit with an account number ending in 6770 (the "PLOC"); and (3) a credit card account with an account number ending in 1336 (the "credit card account").

9. As of the date of this declaration, PenFed has never sold, assigned, or transferred its ownership rights with respect to any of the accounts referenced in paragraph 8.

10. As of the date of this declaration, PenFed has retained sole legal ownership over the accounts referenced in paragraph 8.

11. An April 11, 2022, letter from PenFed to Bruce, which is attached hereto as Exhibit 1, advised Bruce that the vehicle loan, PLOC, and credit card account are legally established debts that he is liable to repay, and PenFed had charged off the accounts as bad debt due to nonpayment.

12. The April 11, 2022, letter from PenFed to Bruce indicated that PenFed sold the credit card account to United Holdings Group, LLC ("UHG").

13. While PenFed planned to sell Bruce's credit card account to UHG, the sale was never completed, and PenFed still owns the credit card account as of the date of this declaration.

14. In general, when a loan account becomes the subject of a lawsuit, PenFed's routine practice is to refrain from selling the loan account while the lawsuit is pending.

15. My understanding is that UHG's response to a subpoena Bruce issued in this case confirms that UHG did not acquire the credit card account.

16. Specifically, UHG's response to Bruce's subpoena, which is attached hereto as Exhibit 2, states as follows: "After a thorough search of all records, UHG is unable to locate an account with the information provided."

17. The April 11, 2022, letter from PenFed to Bruce also indicated that PenFed had "assigned" Bruce's PLOC to Nationwide Credit Corporation ("NCC").

18. My understanding is that NCC is a debt collection agency that specializes in recovering past-due accounts for others.

19. PenFed "assigned" the PLOC to NCC so that NCC could collect the past due debt on behalf of PenFed.

20. Although PenFed "assigned" NCC as the debt collector for the PLOC, PenFed did not assign its ownership rights with respect to the PLOC to NCC.

21. A copy of check that PenFed issued to Chapman BMW to fund Bruce's vehicle loan is attached hereto as Exhibit 3.

22. My understanding is that the Federal Reserve Bank ("FRB"), as a general matter, assists in the process of clearing a check by acting as an intermediary to facilitate the flow of funds between the financial institutions that are involved in drawing and negotiating the check.

23. The FRB does not pay or settle debts owed to PenFed by consumers, does not fund loans PenFed issues to its members, and does not reimburse PenFed for issuing loans to consumers.

24. When another financial institution negotiates a check drawn on a PenFed account and presents the check to the FRB for clearing, the FRB debits PenFed's account with the FRB and credits the account of the financial institution that negotiated the check.

25. Conversely, when PenFed negotiates a check drawn on another financial institution and presents the check to the FRB for clearing, the FRB credits PenFed's account with the FRB in the amount of the check.

26. The FRB submits checks and other items to PenFed electronically in batches instead of settling items on an individual basis.

27. PenFed received the copy of the check attached hereto as Exhibit 3 from the FRB as part of its check-clearing process after another financial institution negotiated the check.

28. The FRB included the check in a batch with other items that were not related to Bruce or any of his accounts with PenFed.

29. Since the check was drawn on a PenFed account, the FRB debited PenFed's account with the FRB in the amount of the check so that the FRB could issue a credit in the same amount to the account of the financial institution that negotiated the check.

30. PenFed did not receive any credits or payments from the FRB, or anybody else, in connection with the check PenFed issued to Chapman BMW.

31. To the contrary, the FRB debited PenFed's account in the amount of the check so that it could credit the account of the other financial institution that negotiated the check.

32. The bottom of the document containing the copy of the check that PenFed received from the FRB references a "Credit Amount" of $353,252.34.

33. The reference to $353,252.34 reflects the aggregate amount of the items in the batch that included the check PenFed issued to Chapman BMW as well as other items unrelated to Bruce.

34. PenFed has not been compensated by the FRB, Bruce, or anybody else, for the debt Bruce owes in connection with the vehicle loan, the PLOC, or the credit card account.

4

35. PenFed has never created or otherwise opened any accounts with the FRB in Bruce's name.

36. After a reasonable inquiry, PenFed is not aware of any current employees, other than the attorneys working on this case, having personal knowledge related to Bruce, Bruce's accounts with PenFed, or the transactions involving Bruce that are at issue in this case beyond the information available in PenFed's business records, including the records described in this declaration and my first declaration, which is dated August 19, 2024.

37. PenFed's general financial condition, its general financial reporting, its general accounting practices, and its general collections practices are not relevant to the credit reporting disputes Bruce has raised because those matters do not have any bearing on the accuracy of the information PenFed furnished to credit reporting agencies about Bruce's accounts.

38. The documents and information Bruce has requested with respect to PenFed's interactions with the FRB are not relevant to the credit reporting disputes Bruce has raised because, as explained in paragraphs 23-35, the FRB does not fund loans PenFed issues to consumers generally, and the FRB has not paid off or settled Bruce's loans.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED: November 1, 2024.

Craig Olson
Vice President, Legal Operations
Pentagon Federal Credit Union

# EXHIBIT 1

**Second Declaration of Craig Olson**

**PENFED CREDIT UNION**

April 11, 2022

Nelson L. Bruce
144 Pavilion Street
Summerville, SC 29483

Re:  Pentagon Federal Credit Union (PenFed) Obligations

Dear Mr. Bruce:

Pentagon Federal Credit Union (PenFed) is in receipt of your recent correspondence dated April 4, 2022 and addressed to its various officers. It was received by me on April 11, 2022.

Your dispute of this and other obligations to PenFed were previously investigated, and we promptly responded to prior correspondence multiple times. In this correspondence, we provided evidence substantiating the obligations.

Please be advised that your used vehicle loan ending in 3-81-2, Personal Line of Credit ending in 6-77-0, and Visa Platinum Card ending in 1336 referenced in your correspondence with PenFed are legally established debts for which you are liable to repay. Having validated your obligations owed, PenFed will continue to report payments received in relation to when due as required by the Fair Credit Reporting Act (FCRA). To confirm, PenFed has not filed any IRS forms for any of the aforementioned obligations.

PenFed denies and rebuts your claims as appropriate.

Similar claims and demands will be considered frivolous and will be ignored as allowed for under the FCRA.

Mr. Bruce, as previously communicated, the subject accounts are now charged off. The Visa Platinum Credit Card has been sold to UHG. They may be contacted at 844-511-2047 to make arrangements to satisfy the balance. The Personal Line of Credit ending in 6-77-0 has been assigned to Nationwide Credit Corporation for resolution. They may be contacted at 800-880-7271. The auto loan ending in 3-81-2 is still owned and serviced by PenFed. I urge you to contact PenFed at 1-800-451-7269 to confirm the status.

Sincerely,

*John Dorn*
John Dorn
Vice President, Collections

Box 1432, Alexandria, VA 22313-2032 | 800-247-5626 | PenFed.org

# EXHIBIT 2

**Second Declaration of Craig Olson**



08/08/2024

Nelson L. Bruce
Leonbruce81@yahoo.com

6400 Sheridan Dr., STE 138
Williamsville, NY 14221
844-511-2047

Dear Nelson L. Bruce,

We are in receipt of your subpoena served upon United Holding Group ("UHG") for Case No. 2:22-cv-02211-BHH-MGB. After a thorough search of all records, UHG is unable to locate an account with the information provided. Therefore, UHG is unable to provide any information or documentation regarding this matter.

Sincerely,

*Katherine O'Brien*

Katherine O'Brien, Esq.
General Counsel
United Holding Group

Enclosure: Notice of Subpoena-Demand for Production_Bruce

# NOTICE OF SUBPOENA - DEMAND FOR PRODUCTION
## CHARLESTON DIVISION

Nelson L. Bruce,

Plaintiff(s),

vs.

PENTAGON FEDERAL CREDIT UNION ("PENFED"), et al.

Defendant(s).

CASE NO.: 2:22-cv-02211-BHH-MGB

RECEIVED
2024 JUL 30  AM 11: 04
US MARSHALS SERVICE
WESTERN NEW YORK

1. My name is __Katherine O'Brien__. I am competent to testify and have personal firsthand knowledge of the facts stated herein.

2. I am employed by and am a member of United Holdings Group, LLC their affiliates, successors and or assigns. Attached hereto are __0__ pages of records asked of me to produce.

3. The attached records were made at or near the time of the occurrence of the matters set forth in the attached records by, or from information transmitted by, a person with personal firsthand knowledge of those matters. The attached records were kept by United Holdings Group, LLC their affiliates, successors and or assigns in the regular course of its business, and as a regular practice.

4. The attached records were made in the course of the regularly conducted business activities of United Holdings Group, LLC their affiliates, successors and or assigns and as a regular practice.

5. The records attached hereto are exact duplicates of the originals.

6. I declare under penalty of perjury that the forgoing is true and correct.

Print Name: __Katherine O'Brien__

Signature: __[DocuSigned by: CD1AA950CCBE442...]__

Dated: __Aug-08-2024 | 1:27 PM EDT__

## NOTICE OF SUBPOENA – DEMAND FOR PRODUCTION

RECEIVED
2024 JUL 30 AM 11:04
US MARSHALS SERVICE
WESTERN NEW YORK

I Nelson L. Bruce, the consumer and Plaintiff in the associated case as defined below hereby demand with this subpoena that you produce for my inspection the following:

1. Any and all information and documentation and media in your Possession, custody and/or control associated with your communications with the Bank regarding the alleged debts of the initial accounts of the Plaintiff with the bank or with the bank name associated with it from January 1, 2017 to present which include the exact dates associated with each communication (See...Definitions Below)

2. Any and all documents in your Possession, custody and/or control which support whether the accounts referenced in this case that are associated with the bank and the plaintiff were purchased by you, assigned/transferred to you by the bank or another third party person from January 1, 2017 to present which you relied on to attempt to collect an alleged debt related to the plaintiff.

3. Any and all documents in your Possession, custody and/or control associated with your communications with the plaintiff regarding the alleged debts related to the initial accounts of the bank or with the bank name associated with it related to the accounts associated with the plaintiff's from January 1, 2017 to present which include the exact dates associated with each communication. (See...Definitions Below)

4. Any and all documents in your Possession, custody and/or control associated with any and all accounts assigned transferred and/or sold to you relate to the alleged debts of the plaintiff for initial accounts related to the bank or with the bank name associated with it from January 1, 2017 to present which include the exact dates the accounts were initially assigned/transferred and or sold to you.

5. Any and all documents in your Possession, custody and/or control associated with any and all your collection attempts related to the collection of the alleged debts associated with the initial accounts related to the plaintiff and the bank from January 1, 2017 to present which include all documents referencing the exact dates associated with each collection attempts. (See...Definitions Below)

6. Any and all documents in your Possession, custody and/or control associated with who you were collecting on behalf of as a result of an assignment/transfer or sale of the alleged debts related to the initial accounts of the plaintiff from January 1, 2017 to Present which include documents referencing the exact dates you agreed to collect on their behalf.

7. Any and all documents in your Possession, custody and/or control related to the persons you communicated with to purchase debts from PenFed from January 1, 2016 to present. Please also produce the person names, addresses and phone numbers where they can be reached.

8. Any and all documents in your Possession, custody and/or control associated with any and all agreements/contracts you have or had with the bank, or any other third party person, third party debt buyer, third party collection to collect on their behalf an alleged

## NOTICE OF SUBPOENA - DEMAND FOR PRODUCTION

debt associated with the plaintiff related to initial accounts of the bank from January 1, 2017 to present to include agreements to collect, purchase, transfer/assign the debts related to the initial accounts of the bank to third parties. (See...Definitions Below)

9. Any and all documents in your Possession, custody and/or control associated with any and all transfers/assignments and or sales of the accounts back to the bank which include the exact dates transferred/assigned and sold the accounts back to the bank thereby returning the alleged debts and accounts back to the bank.

10. Any and all documents in your Possession, custody and/or control that documents whether or not you are affiliated with the bank.

If you claim that any portion of this request for production is subject to any privilege or is otherwise objectionable or protected from discovery, you are to identify the subject matter, proof that such information is privileged from the consumer as it relates to the consumer, objection, or protection is thought to apply, and state the ground or basis of each such claim, objection, privilege or protection, including any statutory or decisional reference; and identify all documents, including the author and date thereof, or other information, including contracts and communications which you believe to be embraced by the privilege involved.

Should you have any question of what is being demanded for production, you have permission to reach me on my cell phone at 843-437-7901. I do hereby place you on notice that to the extent that these records exist and are accurate in documenting the facts I incorporate each directly and or indirectly, specifically and generally by reference!

## DEFINITIONS

1. **"You"** and **"your"** shall include and or relate to the party to who these discovery requests are directed to, shall include **United Holdings Group, LLC** their members, representatives, partners, affiliates, successors and or assigns as well as current and former attorneys, agents, investigators, consultants, accountants, officers, directors, subsidiaries, holding companies, partners, assignors, assignees, investors, and employees.

2. **"Bank"** or **"Banks"** shall mean and or relate to Pentagon Federal Credit Union ("A.K.A." Pentagon, PenFed, its affiliates, its holding companies, partners, trustees, denture trustees, agents in fact under a power of attorney and assigns).

3. **"Person"** or **"entity"** means and or relate to any natural person, firm, corporation, partnership, proprietorship, joint venture, organization, group of natural persons or other association separately identifiable, whether or not such association has a separate juristic existence in its own right.

4. **"Case"** shall mean matters related to Case No. 2:22-cv-02211-BHH-MGB.

5. The terms **"relate to"**, **"related to"**, **"relating to"**, **"pertain to"**, and **"pertaining to"** are used in the broadest sense and mean to refer to, discuss, involve, reflect, deal with, include, consist of, represent, constitute, emanate from, directed at, support, evidence, describe or mention.

## NOTICE OF SUBPOENA - DEMAND FOR PRODUCTION

6. "**Accounts**" shall mean and or relate to any and all debts related to Credit Card account No. ▆▆▆▆▆1366, Auto Loan No. ▆▆▆▆3812 and Line of Credit No. ▆▆▆▆, whether sold, assigned, and or transferred from the bank that are or was associated with Nelson L. Bruce in the past, present and future.

7. "**Plaintiff**" shall mean and or relate to "**Nelson L. Bruce**" with the following associated identifying information:

   | | |
   |---|---|
   | Name: | Nelson Leon Bruce and any derivatives there of this name |
   | Current Address: | P.O. Box 3345, Summerville, SC 29484 |
   | Previous Addresses: | 1605 Central Avenue, Suite 6, Summerville, SC 29483 |
   | | 144 Pavilion Street, Summerville, SC 29483 |
   | Social Security #: | ▆▆▆▆▆▆▆▆ |
   | Date of Birth: | ▆▆▆▆▆ |

8. "**Document**" or "**media**" shall mean and or relate to recorded material in any form, including the original and all non-identical copies (whether different from the originals by reason of any notation made on such copies or otherwise), picture of any original notes/promissory notes signed by plaintiff (front and back pictures), Master notes/promissory notes, including, without limitation, correspondence, writings, drawings, records, photographs, electronically stored computer files, recordings, images, memoranda, account statements, loan applications, corresponding documents or paperwork accompanying the application, credit reports reviewed, interest rates offered, contracts/agreements executed, credit decisions, loan officer working file, all disputes and correspondences to and from plaintiff or anyone acting on behalf of plaintiff, letters, purchase agreements, third party debt buyers, repurchase agreements, assignments/transfers of the debts, collections attempts, power of attorneys, applications, checks, invoices, receipts, returns, recordings, images, memoranda, emails, loan applications, corresponding documents or paperwork associated with the accounts, phone records.

9. "**Third Party Debt Buyer**" shall mean and or relate to any agency, person, corporation, bank, financial institution, who purchases any type of debts from you related to plaintiff's accounts.

10. "**Third Party Collection**" shall mean and or relate to any agency, person, corporation, bank, financial institution, entity, or organization who a debt has been transferred to external collection to for the purposes of collecting a payment from the plaintiff on behalf of you.

11. "**Affiliate**" means any company that controls, is controlled by, or is under common control or ownership with another company.

12. "**Sold**" shall mean and or relate to any debts related to the plaintiff's alleged account(s) that have been sold to a third party debt buyer as a result of a sale between you and the buyer or a sale has been mediated between you and the third party debt buyer.

## NOTICE OF SUBPOENA - DEMAND FOR PRODUCTION

13. "Possession, custody and/or control" shall mean and or relate to the joint or several possessions, to whom this subpoena is addressed, but also the joint or several possessions, custody and/or control by each or any other person, entity or affiliate, contractor, successor or assign acting or purporting to act on behalf of you.

RESPECTFULLY PRESENTED

"Without Prejudice"

*Nelson L. Bruce*

Nelson L. Bruce, Propria Persona, Sui Juris
All Rights Explicitly Reserved and Retained
U.C.C. 1-207/1-308, 1-103
c/o P.O. Box 3345, Summerville, South Carolina 29483
Ph.: 843-437-7901
Email: leonbruce81@yahoo.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
 (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
 (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
 (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or

  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
 (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
 (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT 3

**Second Declaration of Craig Olson**

Pentagon Federal Cr Union

**Pentagon Federal Credit Union**
Box 1432, Alexandria, Virginia 22313

**PREAPPROVED AUTO LOAN**
VALID FOR 90 DAYS FROM DATE OF ISSUE

Pay to the order of: Chapman BMW
$33,478.00
thirty-three thousand four hundred seventy eight DOLLARS
Amount in words - not to exceed $50,000.00
Amount not to exceed $50,000.00

For the purchase of a:
Year: 2010  Make: BMW  Model: 7 SERIES
Body Type: 4DR SDN 750LI X  Mileage: 59,976
VIN: WBAKC8C54ACY68697

Member Name: NELSON L BRUCE
Member Number: [redacted]
Issue Date: 3/26/2016

Nelson L. Bruce
SIGNATURE OF MEMBER - REQUIRED

DRAFT ENDORSEMENT
The payee/endorser, having a legal interest in the property described on the front of this draft guarantee that:
1. This instrument constitutes payment in full for the property;
2. The payee/endorser will deliver to PenFed, P.O. Box 255483, Sacramento, CA 95865 a lien-free title, or assist PenFed in securing a title, including providing a statement of lien release if necessary and
3. Payee/endorser will assist, as appropriate, in having PenFed's lien on the property properly perfected.

Additionally, by endorsement above, the member accepts and agrees to the terms and conditions of the Promissory Note and Security Agreement in use by PenFed, receipt of which is hereby acknowledged. Additionally the member appoints PenFed's Assistant Treasurer as attorney-in-fact to do all the acts and things which PenFed may deem necessary to perfect and continue perfected a security interest to protect its interest in the property. Further, PenFed may appoint a substitute attorney-in-fact, without necessity of any formality other than designation by PenFed in writing.

ACH AUTHORIZATION
I authorize PenFed to debit my account at the financial institution as stated on my loan application for my loan payment on my payment due date. I may revoke this authorization, orally, by contacting PenFed at least 3 days prior to my scheduled payment date.

ENDORSE CHECK HERE
x Nelson L. Bruce
MEMBER'S ENDORSEMENT
x
SELLERS/DEALERS/LENDER'S ENDORSEMENT

Electronic Endorsements:

Header Information:
Deposit Time:
SAN:
PAN:
Credit Amount: $353,252.34
Type: Inclearings Deposit
Device: INCL


DEFENDANT'S EXHIBIT 3

Page 1 of 1