**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

|  |  |  |
|---|---|---|
| Nelson L. Bruce, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO.: 2:22-cv-02211-BHH-MGB |
| Pentagon Federal Credit Union; *et al.* | ) ) ) | |
| Defendants. | ) ) | |

**PENTAGON FEDERAL CREDIT UNION'S OPPOSITION TO NELSON L. BRUCE'S MOTION FOR LEAVE TO FILE A FIFTH AMENDED COMPLAINT**

The parties are close to completing discovery with respect to the narrow claims arising from a credit reporting dispute that Nelson L. Bruce has asserted against Pentagon Federal Credit Union ("PenFed"). Bruce now wants to amend his complaint for a fifth time to add a new party, the Federal Reserve Bank of Richmond ("FRB"), that is not affiliated with any of the current parties, and to transform the subject matter of the case from a simple credit reporting dispute into a fantastical conspiracy theory. Bruce apparently believes the FRB hands out free money whenever a financial institution issues a loan to a consumer, and that he is somehow entitled to that free money. He claims PenFed and the FRB conspired to deprive him of that non-existent money.

The Court should deny Bruce's motion because his proposed fifth amended complaint is not just futile; it is frivolous. Bruce's conspiracy theory has no basis in fact, law, logic, or reality. PenFed has already produced irrebuttable evidence proving the FRB did not fund the loans PenFed issued to Bruce. (2d Olson Decl. [ECF 345-1].) Bruce cannot point to any law that would entitle PenFed or Bruce to reimbursement from the FRB, and Bruce's theory simply does not make sense.

1

Moreover, Bruce's motion is untimely because the deadline to move for leave to add parties and amend pleadings was April 22, 2024, more than six months before Bruce filed his motion. (Scheduling Order [ECF 156] at ¶ 1.) Bruce's motion does not—and cannot—establish "good cause" to modify the Scheduling Order, as required under Rule 16(b)(4) of the Federal Rules of Civil Procedure. Bruce could have included his "conspiracy" theory in any of the five complaints he has already filed in this case, but he knowingly chose not to do so.

## FACTUAL AND PROCEDURAL BACKGROUND

Bruce filed his original complaint on July 12, 2022. (Compl. [ECF 1].) He has already amended the complaint four separate times. (Am. Compl. [ECF 31]; 2d Am. Compl. [ECF 98]; 3d Am. Compl. [ECF 171]; 4th Am. Compl. [ECF 291].) As of the date of this opposition, Bruce's active pleading is the fourth amended complaint that he filed September 26, 2024. (*See id.*)

When it granted Bruce's motion for leave to file his second amended complaint on May 25, 2023, the Court warned Bruce that it was his "final opportunity" to amend his complaint:

> However, given the procedural history of this case, the Court does not make this decision lightly. This case has been pending almost one year, and Plaintiff has had ample time to amend his complaint. Further, entering the proposed Amended Complaint impacts the previously filed dispositive motions. Thus, this is Plaintiff's final opportunity to amend his complaint. Absent extraordinary circumstances, the Court will not entertain further requests from Plaintiff to amend his complaint.

(5/25/2023 Order [ECF 97] at 2-3.)

The Court entered a Scheduling Order on March 21, 2024. (Scheduling Order [ECF 156].) The Scheduling Order established a deadline of April 22, 2024, for the parties to file "[m]otions to join other parties and amend the pleadings[.]" (*Id.* at ¶ 1.) The Court entered a First Amended Scheduling Order on June 24, 2024. (1st Am. Scheduling Order [ECF 193].) The First Amended Scheduling Order did not modify the deadline to join parties and amend pleadings, which had

2

already passed. (*Id*.) The First Amended Scheduling Order contained the following warning: **<u>ABSENT EXTRAORDINARY CIRCUMSTANCES, NO FURTHER EXTENSIONS WILL BE GRANTED</u>**. (*Id*. (emphasis in original).)

Despite the Court's repeated warnings, Bruce did not take any steps to add the FRB as a party to the case or to amend his complaint to include a conspiracy claim against PenFed at any time before November 1, 2024. (*See* Pl.'s Mot. [343].) It appears, however, that Bruce had been planning to assert such a claim since May 6, 2024, at the latest, because he served discovery requests on that date addressing his misguided theory about the FRB. (*See* Pl.'s Mot. to Compel [ECF 225] at Ex. 1 [ECF 225-1].) For example, Interrogatory Nos. 2 and 3 presumed that PenFed had received money from the FRB and then asked if PenFed notified Bruce of those non-existent transactions or ceased attempting to collect from Bruce thereafter. (*Id*. at Interrog. Nos. 2 &3.)

Bruce continued pursuing his theory about the FRB during the rest of the discovery period. On July 16, 2024, he moved the Court to issue a subpoena to the FRB. (Pl.'s Notice re Subpoenas [ECF 205].) The Court denied that motion on July 19, 2024. (7/19/2024 Order [ECF 211].) The July 19, 2024, Order explained that the documents Bruce sought from the FRB were not relevant to the matters at issue in the case at that time: "Plaintiff offers no compelling reason why the documents sought from the Federal Reserve Bank of Richmond Virginia are relevant and proportional to this case, and the proposed subpoena does not clarify this issue." (*Id*. at 4.) Despite that clear holding, Bruce did not seek leave to amend his complaint at that time to expand the scope of the case to include any issues related to the FRB.

Bruce moved the Court to issue a subpoena to the FRB for a second time on August 14, 2024. (Pl.'s 2d Mot. for Subpoenas [ECF 241].) The Court denied that motion on August 26, 2024, finding that "the relevance of the subpoena requests directed to this non-party is entirely

speculative." (8/26/2024 Order [ECF 250] at 8.) Bruce, however, once again did not move for leave to amend his complaint to expand the scope of the case to include issues related to the FRB.

Bruce filed a third motion to issue a subpoena to the FRB on September 23, 2024. (Pl.'s 3d Mot. for Subpoenas [ECF 284].) The third motion included an explanation of Bruce's incorrect theory that the FRB paid off his PenFed loans. (*Id.* at 2-5.) On the same day he filed the third motion to issue a subpoena to the FRB, Bruce filed a petition for an evidentiary hearing that also explained his unsupported theory that the FRB paid off his loans. (Mot. for Mis. Relief [ECF 283] at 2-10.) The Court denied both motions on October 17, 2024. (10/17/2024 Order [ECF 336] at 5.)

While he was filing motions to issue subpoenas to the FRB, Bruce also continued pursuing discovery from PenFed related to the FRB. (*See* Pl.'s Mot. to Compel [ECF 225].) The Court initially denied the motion to compel that Bruce filed against PenFed. (8/26/2024 Order [ECF 250].) On reconsideration, however, the Court ordered PenFed to provide an affidavit by November 4, 2024, explaining "the basis for PenFed's belief that it has not been compensated by the Federal Reserve Bank for any debt owed by Plaintiff" and confirming that PenFed has not opened any bank accounts in Bruce's name with the FRB. (10/17/2024 Order [ECF 336] at 2.)

In compliance with the October 17, 2024, Order, PenFed filed and served the Second Declaration of Craig Olson on November 4, 2024 ("Olson Declaration"). (2d Olson Decl. [ECF 345-1].) The Olson Declaration confirms that the FRB does not fund loans PenFed issues to consumers, the FRB does not reimburse or otherwise compensate PenFed for issuing such loans, the FRB did not make any payments to PenFed in connection with the specific loans it issued to Bruce, and PenFed did not open any accounts in Bruce's name with the FRB. (*Id.* at ¶¶ 21-35.)

The declaration also explains the reason that a copy of a check PenFed produced during discovery contains a reference to the amount of $353,252.34. (*Id.*) The check was issued by PenFed

4

to fund a vehicle loan it provided to Bruce. (*Id.*) After the car dealership negotiated the check at another financial institution, that financial institution sought reimbursement through the FRB's check-clearing process. (*Id.*) The FRB debited PenFed's account for the check plus other, unrelated items that were included in a batch in the aggregate amount of $353,252.34. (*Id.*) Accordingly, PenFed did not receive $353,252.34, or any other amount, in connection with Bruce's loans. (*Id.*)

## ARGUMENT

The Court should deny Bruce's motion for leave to file a fifth amended complaint for two reasons: (1) the motion is untimely, and Bruce cannot demonstrate good cause to modify the Scheduling Order; and (2) the proposed amendment is futile.

### 1.  Bruce's Motion Is Untimely.

As previously explained, the deadline to move for leave to join parties and amend pleadings passed more than six months ago on April 22, 2024. (Scheduling Order [ECF 156] at ¶ 1.) Bruce, therefore, must satisfy "the good cause standard" in Rule 16(b)(4) "to justify leave to amend the pleadings." *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (citations omitted).

"Rule 16(b)'s good cause standard emphasizes the diligence of the party seeking amendment." *RFT Mgmt. Co., LLC v. Powell*, 607 F. App'x 238, 242 (4th Cir. 2015) (quoting *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 155 (1st Cir. 2004)). "'Good cause' requires 'the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence,' and whatever other factors are also considered, 'the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule.'" *Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012) (quoting 6A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal

5

Practice and Procedure Civ. 3d § 1522.2 (3d ed. 2010) (citing 3 Moore's Federal Practice § 15.14[1][b], at 16–72 (Matthew Bender 3d ed. 2010)).

The bar should be especially high at this stage of this case because Bruce has already amended his complaint four times, and the Court has warned him that further requests to amend will be subject to heightened scrutiny. When it granted Bruce's motion for leave to file his second amended complaint on May 25, 2023, the Court warned Bruce that it was his "final opportunity" to amend his complaint, and that, "[a]bsent extraordinary circumstances, the Court will not entertain further requests from Plaintiff to amend his complaint." (5/25/2023 Order [ECF 97] at 2-3.) When the Court amended the Scheduling Order on June 24, 2024, it did not revive the deadline to join parties or amend pleadings, and it again warned Bruce as follows: **ABSENT EXTRAORDINARY CIRCUMSTANCES, NO FURTHER EXTENSIONS WILL BE GRANTED**. (1st Am. Scheduling Order [ECF 193] (emphasis in original).)

Bruce cannot show "good cause," let alone "extraordinary circumstances," justifying leave to amend his complaint for a fifth time. The motion for leave does not explain why Bruce waited until more than two years after he filed his original complaint before he tried to assert a "conspiracy" claim against PenFed or add the FRB as a party to the case. (*See* Pl.'s Mot. [ECF 343].) Nor does the motion explain why Bruce did not include the "conspiracy" claim or the FRB in any of the four amended complaints he filed during the last two years. (*See id*.)

The motion does state, in a conclusory manner, that Bruce "became aware" through "recent discovery" of "specific documents and transactions that reveal a coordinated relationship between PenFed and the Federal Reserve in the handling of Plaintiff's funds and the alleged conspiracy to withhold credits or payments owed to Plaintiff." (*Id*. at 6.) To the contrary, the only document produced in "recent discovery" directly rebuts Bruce's claim. Specifically, the Olson Declaration

6

confirms that "PenFed did not receive any credits or payments from the FRB" in connection with any of the loans PenFed issued to Bruce.[1] (2d Olson Decl. [ECF 345-1] at ¶ 21-34.)

Moreover, Bruce's own filings show that he was dilatory. Bruce concocted his theory about the FRB by May 6, 2024, at the latest, when he served discovery requests that were predicated on his belief that the FRB had paid off his loans. (*See* Pl.'s Mot. to Compel [ECF 225] at Ex. 1 [ECF 225-1] at Interrog. Nos. 2-3.) The fact that Bruce did not file his motion for leave to add a related claim to his complaint until nearly six months after he served those discovery requests proves he did not act diligently, and therefore cannot show good cause to modify the Scheduling Order.

Significantly, Bruce knew the issues addressed by his discovery requests were irrelevant to the claims asserted in his prior complaints long before he moved for leave. (7/19/2024 Order [ECF 211] at 4; 8/26/2024 Order [ECF 250] at 8.) The orders the Court entered on July 19 and August 26, 2024, held that the issues Bruce raised in relation to the FRB were irrelevant to the claims asserted in the pleadings. (*Id.*) Thus, Bruce was on notice by July 19, 2024, that the Court did not consider his theories regarding the FRB to be relevant to any of the claims or defenses in dispute.

Finally, Bruce cannot claim he was still developing his theory at any point after September 23, 2024. On that date, Bruce filed two separate motions laying out his theory that the FRB had paid off his loans. (Pl.'s 3d Mot. for Subpoenas [ECF 284] at 2-5; Mot. for Mis. Relief [ECF 283] at 2-10.) Setting aside the fact that Bruce had concocted the theory by May 6, 2024, there is no excuse for his decision to wait nearly six weeks after he filed two motions explaining his theory in detail before finally moving for leave to add the FRB as a party and amend his complaint.

---

[1] Bruce has argued that the Olson Declaration is inadmissible because Olson was not personally involved in the underlying transactions. The Olson Declaration demonstrates, however, that Olson has been employed by PenFed for 15 years, and therefore has extensive personal knowledge of PenFed's operations, and he relied on records of regularly conducted business activities that are admissible under Rule 803(6) of the Federal Rules of Evidence. (*Id.* at ¶¶ 2-7.)

### 2. Bruce's Proposed Amendment Is Futile.

Amendments are not appropriate if "doing so would be prejudicial to the opposing party, have been made in bad faith, or would be futile." *Loyola v. Baker*, No. 6:22-CV-00058-JD-KFM, 2022 WL 22266030, at *1 (D.S.C. Feb. 23, 2022) (citing *Jones v. Lexington Cnty. Det. Ctr.*, 586 F. Supp. 2d 444, 450 (D.S.C. 2008)). "If the proposed amended complaint fails to state a claim under Rule 12(b)(6), amendment would be futile, and denial of a motion to amend is appropriate. *Id.* (citing *United States v. Kellogg Brown & Root Inc.*, 525 F.3d 370, 376 (4th Cir. 2008)).

Bruce's proposed amendment is not just futile; it is frivolous and made in bad faith. Bruce seeks leave to assert a civil conspiracy claim against PenFed and the FRB based on an indisputably false factual predicate. The motion states in conclusory fashion that Bruce "became aware" through "recent discovery" of "specific documents and transactions that reveal a coordinated relationship between PenFed and the Federal Reserve in the handling of Plaintiff's funds and the alleged conspiracy to withhold credits or payments owed to Plaintiff." (Pl.'s Mot. [ECF 343] at 6.) Bruce, however, does not provide any support whatsoever for his contention that he recently discovered "specific documents and transactions" that support his claim. (*Id.*)

Bruce's theory that the FRB paid off his loans lacks any basis in fact, evidence, law, or logic. The only relevant evidence is the Olson Declaration, which proves that PenFed did not receive any money from the FRB to fund the loans PenFed issued to Bruce. (2d Olson Decl. [ECF 345-1] at ¶ 21-34.) Moreover, Bruce does not—and cannot—cite any legal authority that entitled PenFed or Bruce to be reimbursed by the FRB for the loans.

The lack of any evidentiary or legal support for Bruce's "conspiracy" claim is not surprising because his theory that financial institutions can create new money by issuing loans to consumers and seeking reimbursement from the FRB does not make sense. If the FRB flooded the

economy with new dollars every time a financial institution issued a loan, the dollar would be devalued to the point of worthlessness and the United States economy would collapse.

Bruce's "conspiracy" claim is not viable for several additional reasons. For example, the proposed amendment cites 42 U.S.C. § 1983 but fails to adequately allege that PenFed was acting under color of state law for purposes of that statute. *See West v. Atkins*, 487 U.S. 42, 49-50 (1988). The proposed amendment also does not state a viable claim for civil conspiracy under South Carolina law because, among other reasons, it does not adequately allege that PenFed and the FRB had an agreement to "commit an unlawful act or a lawful act by unlawful means[.]" *Paradis v. Charleston Cnty. Sch. Dist.*, 861 S.E.2d 774, 780 (S.C. 2021). While the proposed amendment states in a conclusory manner that the FRB and PenFed committed an unlawful act, it fails to identify any law that they supposedly violated. (Pl.'s Mot. at Ex. 17 [ECF 343-2] at ¶¶ 176-182.)

PenFed will address the deficiencies in Bruce's proposed fifth amended complaint in greater detail in a motion to dismiss if the Court grants Bruce's motion for leave to amend. The Court should not need to reach those issues, however, in light of the indisputable evidence proving that Bruce's "conspiracy" claim is based on a factual predicate that Bruce now knows is wrong.

## CONCLUSION

Bruce's motion for leave to amend is untimely and frivolous. The Court should deny the motion so that the parties can focus on completing the limited discovery that remains following the October 17, 2024, Order, and then file dispositive motions.

Dated: November 13, 2024.  Respectfully submitted,

**PENTAGON FEDERAL CREDIT UNION**

*/s/G. Troy Thames*
G. Troy Thames (Federal ID No.: 07713)
WILLSON JONES CARTER & BAXLEY, P.A.
4922 O'Hear Avenue, Suite 301
North Charleston, SC 29405
Telephone: (843) 284-0832
Facsimile: (843) 606-3300
Email: tthames@wjcblaw.com

Michael A. Graziano  (*pro hac vice*)
Sarah A. James (*pro hac vice*)
ECKERT SEAMANS CHERIN & MELLOTT, LLC
1717 Pennsylvania Avenue, N.W., Suite 1200
Washington, D.C. 20006
Telephone: 202.659.6671
Facsimile: 202.659.6699
E-mail: mgraziano@eckertseamans.com
          sjames@eckertseamans.com

*Attorneys for Pentagon Federal Credit Union*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of November 2024, I served the foregoing via first-class mail on:

>Nelson L. Bruce
>P.O. Box 3345
>Summerville, SC 29484
>*Pro Se Plaintiff*

>/s/ G. Troy Thames_____