**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Nelson L. Bruce, | ) | Civil Action No. 2:22-cv-02211-BHH-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Pentagon Federal Credit Union, *et. al*., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Nelson L. Bruce, proceeding *pro se* and *in forma pauperis*, filed this action on July 12, 2022, bringing claims pursuant to the Fair Credit Reporting Act ("FCRA"), among others. (Dkt. Nos. 1; 291.) Before the Court is Plaintiff's fifth Motion to Amend (Dkt. No. 343) and Plaintiff's Motion to Compel (Dkt. No. 348).[1] For the reasons set forth below, Plaintiff's motions are denied.

## **BACKGROUND**

Plaintiff has amended his complaint four times in this action. Per the scheduling order, motions to amend were due by April 22, 2024. (Dkt. No. 156.) While discovery ended on September 20, 2024 (Dkt. No. 279), the Court has allowed the parties to conduct limited discovery through January 22, 2025, in accordance with the Court's prior Orders. (*See* Dkt. Nos. 292; 336.) Dispositive motions are due by March 3, 2025. (*See* Dkt. No. 336.)

On October 16, 2024, the Court held a hearing on various non-dispositive motions filed by the parties. (Dkt. No. 335.) At the hearing, the Court considered, *inter alia*, Plaintiff's arguments that he was entitled to discovery from Defendant Pentagon Federal Credit Union ("PenFed") and

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B) and Local Rule 73.02(B)(2)(e), D.S.C.

certain third-party entities, including the Federal Reserve Bank of Richmond ("FRB"), to support his assertion that PenFed has been compensated by the FRB for any debt owed by Plaintiff. (*See* Dkt. Nos. 283; 284; 335; 336.) Notably, the Court expressly considered Plaintiff's claim that the FRB "credited" PenFed in the amount of $353,525.34, and that Plaintiff does not owe any debt to PenFed as a result of that transaction. (*See* Dkt. Nos. 283; 284; 335.) Relevant here, the Court ordered PenFed to supplement its responses to certain discovery requests from Plaintiff by producing,

> in the form of an affidavit, explanation as to why the documents/information Plaintiff seeks on the issues of PenFed's . . . interactions with the Federal Reserve Bank are not relevant and/or not in their possession. This affidavit must state, with sufficient explanation, the basis for PenFed's belief that it has not been compensated by the Federal Reserve Bank for any debt owed by Plaintiff. The affidavit should also clarify whether PenFed opened any accounts with the Federal Reserve Bank in Plaintiff's name.

(Dkt. No. 336 at 2.)

The record shows PenFed served Plaintiff with the requisite affidavit, the Second Declaration of Craig Olson, on November 4, 2024. (Dkt. No. 345.) In this sworn declaration, Mr. Olson avers that he has been employed by PenFed since February 2009, including, most recently as the Vice President of Legal Operations. (Dkt. No. 345-1 at 2.) Mr. Olson avers,

> As part of its regular business activities, PenFed creates, receives, and keeps records related to accounts opened by its members, including but not limited to signature cards, account agreements, promissory notes, checks and other financial instruments, account statements, and communications related to collections activities, including communications involving third-parties PenFed engages to collect past due debts owed by members.

(*Id.*) Mr. Olson avers that he has "access to the records described . . . above" in connection with his current and past positions at PenFed.[2] (*Id.* at 3.) In his declaration, Mr. Olson discusses the

---

[2] The Court rejects Plaintiff's assertion that Mr. Olson lacks personal knowledge of the matters on which he testifies in his declaration. (Dkt. Nos. 348 at 1–2; 351 at 4.) *See* Fed. R. Evid. 602 ("Evidence to prove personal knowledge may consist of the witness's own testimony."); *Sanchez Carrera v. EMD Sales, Inc.*, 402 F. Supp. 3d 128, 140 (D. Md.

"check that PenFed issued to Chapman BMW to fund [Plaintiff's] vehicle loan," in the amount of

$33,478.00 (*Id*. at 4, 18.) He avers that PenFed received a copy of this check from FRB

> as part of its check-clearing process after another financial institution negotiated
> the check. The FRB included the check in a batch with other items that were not
> related to [Plaintiff] or any of his accounts with PenFed. Since the check was drawn
> on a PenFed account, the FRB debited PenFed's account with the FRB in the
> amount of the check so that the FRB could issue a credit in the same amount to the
> account of the financial institution that negotiated the check.
>
> PenFed did not receive any credits or payments from the FRB, or anybody else, in
> connection with the check PenFed issued to Chapman BMW. To the contrary, the
> FRB debited PenFed's account in the amount of the check so that it could credit the
> account of the other financial institution that negotiated the check.
>
> The bottom of the document containing the copy of the check that PenFed received
> from the FRB references a "Credit Amount" of $353,252.34. The reference to
> $353,252.34 reflects the aggregate amount of the items in the batch that included
> the check PenFed issued to Chapman BMW as well as other items unrelated to
> [Plaintiff]. PenFed has not been compensated by the FRB, [Plaintiff], or anybody
> else, for the debt [Plaintiff] owes in connection with the vehicle loan, the PLOC, or
> the credit card account.

(*Id*. at 5.)

Plaintiff signed the instant Motion to Amend on October 29, 2024, and it was filed on

November 1, 2024. (Dkt. No. 343.) Defendant PenFed filed a response in opposition, to which

Plaintiff filed a reply. (Dkt. Nos. 349; 351.) Plaintiff signed the instant Motion to Compel on

November 4, 2024, and it was filed on November 8, 2024. (Dkt. No. 348.) Defendant PenFed filed

a response in opposition, to which Plaintiff filed a reply. (Dkt. Nos. 350; 356.) Both motions are

ready for review.

---

2019) ("an affiant's personal knowledge may be based on review of files, if the testimony states facts reflected by the
files"); *Mundo-Violante v. Kerry*, 180 F. Supp. 3d 442, 448 (W.D. Va. 2016) (in regard to business records submitted
with an affidavit, "[i]t is well established that employees who are familiar with the record-keeping practices of a
business are qualified to speak from personal knowledge that particular documents are admissible business records,
and affidavits sworn by such employees constitute appropriate . . . evidence") (quoting *Nader v. Blair*, 549 F.3d 953,
963 (4th Cir. 2008) (citing Fed. R. Evid. 803(6))).

## DISCUSSION

**A.     Plaintiff's Motion to Amend (Dkt. No. 343)**

In his Motion to Amend, Plaintiff seeks: (1) "to add the Federal Reserve Bank of Richmond and its affiliates or assigns as defendants"; and (2) to allege a new "conspiracy claim" against PenFed and the FRB. (Dkt. No. 343 at 1.) Plaintiff also asks that the Court issue subpoenas to third parties "Chapman BMW and Wells Fargo for relevant discovery," in "light of the conspiracy allegations." (*Id*. at 1, 8.) Plaintiff has submitted with his Motion a proposed fifth amended complaint, a completed summons, and USM-285 form for the FRB. (Dkt. Nos. 343-2; 344.)

**1.     Standards**

Rule 15(a) of the Federal Rules of Civil Procedure allows a plaintiff, subject to certain time limitations, to amend a pleading once as a matter of course. *See* Fed. R. Civ. P. 15(a). Otherwise, a plaintiff may amend the complaint only with leave of the court or with the consent of the defendant. *See id.*; *see also Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). Rule 15(a) provides that courts "should freely give leave [to amend] when justice so requires." Leave should be granted "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

A party who requests leave to amend after a deadline set by a court's scheduling order must meet the requirements of Rule 15, but also show that there is good cause to modify the scheduling order under Rule 16(b)(4) of the Federal Rules of Civil Procedure. *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987); *see also Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) ("Given their heavy case loads, district courts require the effective case management tools

4

provided by Rule 16. Therefore, after the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings.").

The good cause standard under Rule 16 "focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party." *Montgomery v. Anne Arundel Cnty., Maryland*, 182 F. App'x 156, 162 (4th Cir. 2006). Moreover, "the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W. Va. 1995) (citations omitted). "If the moving party knew of the underlying conduct giving rise to a claim but simply failed to raise it in an initial complaint, then the party cannot establish good cause under Rule 16." *Faulconer v. Centra Health, Inc*., 808 F. App'x 148, 152 (4th Cir. 2020); *see id.* at 153 n.2 (noting this case involved a counseled plaintiff's motion to amend his complaint and therefore did not require the panel "to consider the application of Rule 16's good cause standard in the context of a *pro se* complaint"). Courts in this circuit have found that "[a] court may hold *pro se* plaintiffs to this bright-line rule in appropriate cases." *Peterson v. Black Body Corp*., No. 3:23-cv-00034, 2024 WL 3272548, at *1 (W.D. Va. June 28, 2024) (collecting cases).

### 2.    Analysis

After careful consideration, as detailed further below, the Court finds that Plaintiff has failed to satisfy the "good cause" standard for amending the complaint under Rule 16(b)(4). The Court further finds that Plaintiff's proposed amendment would be futile under Rule 15(a). The Court considers these issues in turn.

### a. Good Cause

As noted above, the scheduling order set a deadline of April 22, 2024 for motions to amend. (Dkt. No. 156.) Plaintiff submitted the instant Motion to Amend approximately six months after that deadline, on October 29, 2024. (Dkt. No. 343.) Plaintiff asserts that good cause exists for the delay because his "proposed amendment is based on evidence obtained during discovery." (Dkt. No. 351 at 2.) Relevant here, Plaintiff's proposed conspiracy claim centers on a "disputed financial transaction with PenFed and the Federal Reserve Bank of Richmond, related to a deposit of $353,525,34 that allegedly affected Plaintiff's accounts." (Dkt. No. 343 at 3; 343-2 at 44–45.) More specifically, Plaintiff alleges PenFed and the FRB "engaged in a conspiracy to deprive Plaintiff of access to funds by failing to provide adequate notice of the deposit, failing to offset or apply credits to Plaintiff's account as required, and withholding information regarding the handling of financial instruments involved in the transaction." (Dkt. No. 343 at 3; 343-2 at 44–45.) Plaintiff alleges he has "suffered substantial financial harm, including being denied access to the $353,525.34 deposit, impacting Plaintiff's ability to manage personal finances." (Dkt. No. 343-2 at 45.)

Upon review, the record indicates that Plaintiff became aware of this $353,525.34 "deposit," at the latest, on or about August 19, 2024, when a copy of the check referencing this information was served on Plaintiff by PenFed as part of PenFed's responses to Plaintiff's discovery requests. (Dkt. No. 305-1; 305-3.) Plaintiff offers no compelling explanation as to why he waited nearly three months after receiving this discovery to allege a conspiracy claim arising from this alleged transaction between PenFed and the FRB. The only discovery Plaintiff expressly mentions is "the Second Declaration of Craig Olson," discussed *supra*. (Dkt. No. 345-1; 351 at 2.) While Plaintiff asserts this "declaration revealed the FRB's involvement in processing the

transactions central to this dispute," the declaration does not include any information that would support the conspiracy claim alleged by Plaintiff. Additionally, Plaintiff received this declaration *after* filing the instant Motion to Amend.

In sum, while Plaintiff may not have known about the alleged $353,525.34 "deposit" prior to the April 22, 2024 motions to amend deadline, he still has not provided adequate justification for waiting approximately three months after receiving the relevant discovery to file the instant motion. Under the Rule 16(b) good cause standard, "the primary consideration is the diligence of the moving party." *Montgomery*, 182 F. App'x at 162. Given the current record, the Court cannot find that Plaintiff was diligent in seeking this amendment. *See Grant v. Lowe's Home Centers, LLC*, No. 9:20-cv-00764-DCN, 2021 WL 5882005, at *3 (D.S.C. Apr. 8, 2021) (denying motion to amend under Rule 16(b)(4) because although plaintiffs "were justified" in failing to seek the amendment prior to the scheduling order deadline, plaintiffs "failed to articulate any reason why they waited five months after [defendant'] interrogatory response to file the [motion to amend]"); *see also Peterson*, 2024 WL 3272548, at *7 (recommending denial of *pro se* plaintiff's motion to amend under Rule 16(b)(4) when plaintiff knew about the facts giving rise to his proposed claims, but failed to raise them in a timely motion to amend); *Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 590 (D. Md. 2018) (finding the movant had not shown good cause for the delay when it had "not adequately explained why it waited five months [after discovering the new information underlying its proposed amendment] before moving to amend"); *Jones v. Hoffberger Moving Servs. LLC*, 2014 WL 6892164, at *3 (D. Md. Dec. 3, 2014) ("Plaintiffs' assessment of Defendants' documents in April 2014 does not present good cause for Plaintiffs' motion for leave to amend the complaint in September 2014. The time between Plaintiffs' discovery of new evidence and Plaintiffs' motion for leave to amend the complaint is simply too great to permit a

conclusion that Plaintiffs were 'diligent.'"). Plaintiff has not demonstrated that the reasons for the tardiness of his Motion to Amend justify a departure from the rules set by the Court in its scheduling order. Accordingly, Plaintiff's Motion to Amend (Dkt. No. 343) is denied for failure to establish good cause under Rule 16(b)(4).

### b.    Futility

Alternatively, the Court denies Plaintiff's Motion to Amend (Dkt. No. 343) for futility under Rule 15(a). A motion to amend is futile when the proposed amendment is "'clearly insufficient or frivolous on its face.'" *Johnson v. Peaden*, CNo. 4:06-cv-214-D, 2007 WL 9718396 at *3 (E.D.N.C. July 9, 2007) (quoting *Johnson v. Oroweat Foods Co*., 785 F.2d 503, 510 (4th Cir. 1986)). As PenFed argues, Plaintiff's conspiracy claim ultimately rests on the fantastical theory that financial institutions can create new money by issuing loans to consumers and seeking reimbursement from the FRB. Such a claim lacks an arguable basis in fact or law, and it is therefore futile. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (noting that, in considering a complaint under Rule 8(a) of the Federal Rules of Civil Procedure, the reviewing court must "draw on its judicial experience and common sense"); *Pugh v. McDonald*, 266 F. Supp. 3d 864, 866 (M.D.N.C. 2017) ("A motion to amend a complaint is futile 'if the proposed claim would not survive a motion to dismiss.'" (quoting *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996))); *see Van Dyke v. Davis*, No. 1:05-cv-357, 2006 WL 1582396, at *1 n.6 (W.D.N.C. June 6, 2006) (explaining that a court "is permitted to apply common sense and reject the fantastic") (internal citations omitted).

Having found Plaintiff cannot amend the complaint to add the proposed conspiracy claim against the FRB, there is no basis to issue the third-party subpoenas sought by Plaintiff.[3] Plaintiff's Motion to Amend (Dkt. No. 343) is therefore denied in its entirety.

**B.    Plaintiff's Motion to Compel (Dkt. No. 348)**

In his Motion to Compel, Plaintiff asks that the Court compel PenFed to fully respond to Plaintiff's Fourth Set of Requests for Production ("RFP") Nos. 46, 47, 49, 51, 52, 54, and 59. (Dkt. No. 348.) The record shows Plaintiff served these discovery requests on PenFed on September 13, 2024, and PenFed served its responses on Plaintiff on October 14, 2024. (Dkt. Nos. 348-1; 348-2.) PenFed asserts that Plaintiff's Fourth Set of Requests for Production were untimely under the operative scheduling order. (Dkt. No. 350.) PenFed further argues that its initial responses to these RFPs are appropriate under the Federal Rules of Civil Procedure. (*Id.*)

**1.    Standards**

Federal district courts are vested with broad discretion in resolving discovery disputes. *Erdmann v. Preferred Research, Inc., of Ga.*, 852 F.2d 788, 792 (4th Cir. 1988). Rule 26 of the Federal Rules of Civil Procedure governs this discovery dispute and provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

---

[3] Regarding these subpoenas, Plaintiff essentially seeks reconsideration of the Court's October 17, 2024 Order (Dkt. No. 336), in which the Court expressly denied Plaintiff's prior motion seeking the issuance of subpoenas to Chapman BMW and Wells Fargo (Dkt. No. 284). Plaintiff offers no compelling basis to reconsider this ruling. *See Filtration Corp. LLC*, 599 F.3d 403, 407 (4th Cir. 2010) ("Rule 59(e) provides that a court may alter or amend the judgment if the movant shows either (1) an intervening change in the controlling law, (2) new evidence that was not available at trial, or (3) that there has been a clear error of law or a manifest injustice."); *see also Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc*., 674 F.3d 369, 378 (4th Cir. 2012) "[Rule 59(e)] is an extraordinary remedy that should be applied sparingly.").

Fed. R. Civ. P. 26(b)(1). Discovery under the Federal Rules of Civil procedure "is broad in scope and freely permitted." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003).

####    2.    Analysis

Upon careful review, the Court agrees that Plaintiff's Fourth Set of Requests for Production were untimely under the operative scheduling order.[4] The First Amended Scheduling Order explained that "[a]ll discovery requests shall be served in time for the responses thereto to be served by" the September 20, 2024 discovery deadline.[5] (Dkt. No. 193 at 1.) Based on the September 13, 2024 service date, PenFed's responses to Plaintiff's Fourth Set of Requests for Production were not due until after this discovery deadline. *See* Fed. R. Civ. P. 34(b)(2)(A) ("The party to whom the request is directed must respond in writing within 30 days after being served . . . ."). Plaintiff's Motion to Compel can be denied as untimely.

Even assuming Plaintiff's discovery requests were timely, Plaintiff's motion still fails on the merits. The RFPs at issue, and PenFed's responses are recounted, below:

> 46. Produce all documents, correspondence, or policies demonstrating PenFed's treatment or classification of promissory notes and other negotiable instruments, including the reasons such instruments are or are not considered valid tender for payment.
>
> **OBJECTION: PenFed objects to this request because the documents it seeks are not relevant to the claims and defenses asserted in this case, and because the request is confusing, vague, unclear, overbroad, unduly burdensome, and disproportionate to the needs of the case.**

---

[4] PenFed also argues Plaintiff's Motion to Compel is untimely under Local Civil Rule 37.01, D.S.C. (Dkt. No. 350.) The record shows Plaintiff signed the instant Motion to Compel on November 4, 2024, which was within 21 days of receiving PenFed's responses to Plaintiff's Fourth Set of Requests for Production. Accordingly, given Plaintiff's *pro se* status, the Court does not find the Motion was untimely. *See* Local Civil Rule 37.01(A), D.S.C. ("Motions to compel discovery must be filed within twenty-one (21) days after receipt of the discovery response to which the motion to compel is directed . . . .").

[5] As noted *supra*, the Court's extension of this discovery deadline was limited to specific issues (Dkt. No. 279; 292; 336) and that later discovery deadline is not applicable here.

47. Produce all documents, correspondence, or legal authority demonstrating that promissory notes, drafts (such as checks), or bills of exchange are not backed by Federal Reserve Notes and cannot be deposited with a Federal Reserve Bank under the Federal Reserve Act or other regulations.

**OBJECTION: PenFed objects to this request because the documents it seeks are not relevant to the claims and defenses asserted in this case, and because the request is confusing, vague, unclear, overbroad, unduly burdensome, and disproportionate to the needs of the case.**

49. Produce all documents, policies, or internal guidelines evidencing that PenFed does not engage in fractional-reserve banking.

**OBJECTION: PenFed objects to this request because the documents it seeks are not relevant to the claims and defenses asserted in this case, and because the request is confusing, vague, unclear, overbroad, unduly burdensome, and disproportionate to the needs of the case.**

51. Produce PenFed's policies and procedures regarding the types of collateral pledged to the Federal Reserve Bank in connection with consumer transactions, and any documentation showing what PenFed receives in return for these collateral pledges.

**OBJECTION: PenFed objects to this request because the documents it seeks are not relevant to the claims and defenses asserted in this case, and because the request is confusing, vague, unclear, overbroad, unduly burdensome, and disproportionate to the needs of the case.**

52. Produce PenFed's procedures for pledging collateral to the Federal Reserve Bank, including any internal policies and regulatory compliance documentation.

**OBJECTION: PenFed objects to this request because the documents it seeks are not relevant to the claims and defenses asserted in this case, and because the request is confusing, vague, unclear, overbroad, unduly burdensome, and disproportionate to the needs of the case.**

54. Produce all documents identifying the owner of PenFed account number [redacted] 990, including records showing the sources, transfers, and credits of any funds associated with this account.

**OBJECTION: PenFed objects to this request because it is duplicative of Request No. 38 (which Bruce incorrectly numbered as Request No. 30). PenFed incorporates its objections to Request No. 38 and, subject to its objections, refers Bruce to the documents PenFed previously produced in relation to the vehicle loan, including the promissory note, the check PenFed issued to the relevant car dealership, and the account statements.**

59. Produce all documents and transaction records that demonstrate PenFed funded any alleged loans to Plaintiff, including records showing the source of the funds used to finance the alleged loans and any transfers of funds into Plaintiff's accounts.

**OBJECTION: PenFed refers Bruce to the documents it previously produced in relation to the loans it issued to Bruce, including the account statements and the check PenFed issued to a car dealership to fund Bruce's vehicle loan.**

(Dkt. No. 348-2 at 4–8.)

After careful consideration, the Court finds that the documents sought in RFP Nos. 46, 47, 49, 51, and 52 are not proportional to the needs of the case given the limited scope of Plaintiff's claims against PenFed. *See* Fed. R. Civ. P. 26(b)(1). As it stands, Plaintiff's claims against PenFed arise from an uncomplicated credit reporting dispute and are rather limited in scope. As alleged in the Fourth Amended Complaint, Plaintiff claims PenFed violated the Fair Credit Reporting Act by failing to consistently report information about three credit accounts with a zero balance and by failing to properly investigate and modify this information after it was disputed. (Dkt. No. 291.) According to Plaintiff, PenFed's reporting here was inaccurate and misleading because the accounts at issue had been sold and/or assigned and because the accounts were listed as charged off. Plaintiff alleges a defamation claim arising from the same credit reporting dispute. Plaintiff also claims PenFed violated South Carolina's version of the Uniform Commercial Code by not providing an authenticated accounting of his outstanding debts upon request. Plaintiff offers no argument, and it is otherwise not clear, how the documents sought in RFP Nos. 46, 47, 49, 51, and 52 would support Plaintiff's claims against PenFed. As for RFP Nos. 54 and 59, the record indicates PenFed has produced the documents in its possession that are responsive to these discovery requests. (Dkt. Nos. 305-1; 348-2 at 6, 8.)

For the foregoing reasons, Plaintiff's Motion to Compel (Dkt. No. 348) is denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Amend (Dkt. No. 343) and Motion to Compel (Dkt. No. 348) are DENIED.

December 9, 2024

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

13