# EXHIBITS – 30

RECEIVED
USDC CLERK CHARLESTON, SC
2025 JAN 16   AM 8: 26

**Federal Reserve Banks**
**Operating Circular No. 10**

# LENDING

**Effective July 16, 2013**

**FEDERAL RESERVE BANKS**
**OPERATING CIRCULAR NO. 10**
**Effective July 16, 2013**

# LENDING

(Click CTRL + section or page number to go directly to the section)

| | | |
|---|---|---|
| 1.0 | SCOPE | 1 |
| 2.0 | DEFINED TERMS | 1 |
| 3.0 | ADVANCES | 5 |
| 4.0 | INTEREST | 5 |
| 5.0 | REPAYMENT OF ADVANCE | 5 |
| 6.0 | GRANT OF SECURITY INTEREST | 6 |
| 7.0 | COLLATERAL | 6 |
| 8.0 | MAINTENANCE OF LENDING DOCUMENTS | 9 |
| 9.0 | REPRESENTATIONS AND WARRANTIES | 10 |
| 10.0 | COVENANTS | 11 |
| 11.0 | WAIVER OF IMMUNITY; SUBMISSION TO JURISDICTION | 13 |
| 12.0 | REMEDIES UPON DEFAULT | 14 |
| 13.0 | INDEMNIFICATION | 16 |
| 14.0 | MISCELLANEOUS | 16 |
| 15.0 | AMENDMENT | 17 |
| 16.0 | NOTICE | 17 |
| 17.0 | TERMINATION | 18 |
| 18.0 | GOVERNING LAW | 19 |
| 19.0 | WAIVER OF JURY TRIAL | 19 |

**20.0    STATUS OF PREVIOUS LENDING AGREEMENT** ........................................... 19

**APPENDIX 1: FINANCING STATEMENT COLLATERAL DESCRIPTION**

**APPENDIX 2: TERMS OF CONTROL AGREEMENT**

**APPENDIX 3: APPLICATION PACKAGE FOR U.S. BORROWERS**
  **FORM OF LETTER OF AGREEMENT**
  **FORM OF CERTIFICATE**
  **FORM OF AUTHORIZING RESOLUTIONS FOR BORROWERS**
  **FORM OF OFFICIAL OC-10 AUTHORIZATION LIST**

**APPENDIX 4: APPLICATION PACKAGE FOR BRANCHES OR AGENCIES OF NON-U.S. BORROWERS**
  **FORM OF LETTER OF AGREEMENT**
  **FORM OF CERTIFICATE**
  **FORM OF AUTHORIZING RESOLUTIONS FOR BORROWERS**
  **FORM OF OFFICIAL OC-10 AUTHORIZATION LIST**
  **FORM OF OPINION OF FOREIGN OUTSIDE COUNSEL**
  **FORM OF OPINION OF UNITED STATES OUTSIDE COUNSEL**

**APPENDIX 5: ANCILLARY AGREEMENTS**
  **FORM OF AGREEMENT FOR THIRD PARTY CUSTODIAN TO HOLD COLLATERAL**

  **FORM OF CORRESPONDENT CREDIT AND PAYMENT AGREEMENT**

   **EXHIBIT 1: LETTER OF AGREEMENT TO CORRESPONDENT CREDIT AND PAYMENT AGREEMENT**

**APPENDIX 6: PROHIBITION AGAINST FEDERAL ASSISTANCE TO ANY SWAPS ENTITY**

**CREDIT AND SECURITY TERMS**

### 1.0   SCOPE

**1.1**   This Operating Circular is issued by each Reserve Bank and sets forth the terms under which an entity may, in accordance with the Federal Reserve Act and regulations promulgated thereunder by the Board of Governors of the Federal Reserve System, obtain Advances from, incur Obligations to, or pledge Collateral to a Federal Reserve Bank.

### 2.0   DEFINED TERMS

**2.1**   The capitalized terms used hereafter in this Operating Circular have the meanings defined below:

**Account** means a master account at a Reserve Bank, as defined in the Operating Circular No. 1 issued by such Reserve Bank.

**Advance** means an extension of credit to the Borrower (not including a discount of paper) pursuant to Regulation A, including any renewal or extension thereof.

**Advance Repayment Amount** means the amount of an Advance, plus all accrued and unpaid interest thereon.

**Adverse Claim** has the meaning set forth in Section 9.1(d).

**Application Package** means the Application Package, substantially in the form of Appendix 3 or 4, as appropriate, which the Borrower submitted in connection with its agreement to this Operating Circular.

**Bank** means the Federal Reserve Bank in whose district the Borrower is located (determined in accordance with 12 C.F.R. Section 204.3(b)), or such other Reserve Bank with which the Borrower has entered into a borrowing relationship under this Operating Circular.

**Board of Governors** means the Board of Governors of the Federal Reserve System.

**Borrower** means an entity that incurs an Obligation to the Bank.

**Borrower-in-Custody or BIC Arrangement** means an arrangement whereby the Bank authorizes a Borrower, or an affiliate of the Borrower, to retain possession of the Collateral, as described in Section 7 of this Operating Circular.

**Business Day** means any day the Bank is open for conducting all or substantially all its banking functions.

**Certificate** means the certificate, substantially in the form set forth in the appropriate Application Package, provided to the Bank by the Borrower.

**Collateral** means:

    (i)    all the Borrower's rights, title, and interest in property (wherever located, now owned or hereafter acquired), including, but not limited to, accounts, chattel paper, inventory, equipment, instruments, investment property, general intangibles, documents, deposit accounts, commercial tort claims and, real property that is (a) identified on a Collateral Schedule, (b) identified on the books or records of a Reserve Bank as pledged to, or subject to a security interest in favor of, the Bank or any other Reserve Bank or (c) in the possession or control of, or maintained with, the Bank or any other Reserve Bank including, but not limited to, investment property, but excluding any investment property in any Unrestricted Securities Account maintained at any Reserve Bank that the Borrower may not encumber under applicable law;

    (ii)    all documents, books and records, including programs, tapes, and related electronic data processing software, evidencing or relating to any or all of the foregoing; and

    (iii)    to the extent not otherwise included, all proceeds and products of any and all of the foregoing and all supporting obligations given by any person with respect to any of the foregoing, including but not limited to interest, dividends, insurance, rents and refunds.

**Collateral Schedule** means the written, electronic or other statement(s) listing Collateral in effect at any time.  Each statement of Collateral shall be in the form required by the Bank and shall identify the items of Collateral with the specificity required by the Bank.  The removal of an item from a statement of Collateral will not be effective and will not affect the Bank's security interest in the item unless such removal is made in accordance with this Operating Circular and the Bank's procedures, including prior Bank approval or authorization.

**Event of Default** means any of the following:

    (i)    the Borrower fails to repay or satisfy any Obligation when due;

    (ii)    the Borrower fails to perform or observe any of its obligations or agreements under the Lending Agreement or under any other instrument or agreement delivered or executed in connection with the Lending Agreement or under any other agreement with the Bank or another Reserve Bank;

    (iii)    any representation or warranty made or deemed to be made by the Borrower under or in connection with the Lending Agreement, or that is contained in any certificate, document or financial or other statement delivered by it or in connection with the Lending Agreement, is inaccurate in any material respect on or as of the date made or deemed made;

    (iv)    the Insolvency of the Borrower;

    (v)    the Lending Agreement or any other agreement delivered or executed in connection with the Lending Agreement ceases, for any reason, to be in full force and effect, or any person so asserts or any security interest or lien created hereby ceases to be enforceable or have the same effect and priority purported to be created hereby;

    (vi)    the creation of an encumbrance upon Collateral, or placement of a levy, judicial seizure of, or an attachment upon Collateral;

    (vii)    whenever the Bank deems itself insecure with respect to the financial condition of the Borrower or the Borrower's ability to perform its Obligations.

**FRB Lending Documents** has the meaning set forth in Section 8 of this Operating Circular.

**Indebtedness** means the total of the Borrower's overdrafts (whether intraday or overnight) in its Account(s) and any penalties and charges thereon.

**Insolvency** means:

    (i)    the condition of insolvency;

    (ii)    that a proceeding relating to bankruptcy, insolvency, reorganization or relief of debtors, seeking to adjudicate an entity bankrupt or insolvent or seeking reorganization, adjustment, dissolution, liquidation or other relief with respect to the Borrower or the Borrower's debt is commenced;

    (iii)    that an assignment for the benefit of the Borrower's creditors occurs;

    (iv)    that a receiver, custodian, conservator, or the like is appointed for the Borrower or for any of its United States or foreign branches or agencies;

    (v)    that the Borrower has been closed by order of its supervisory authorities, or a public officer has been appointed to take over such entity;

    (vi)    that the Borrower ceases or refuses to make payments in the ordinary course of business, or admits in a record its inability to pay its debt as they become due;

    (vii)    the Borrower's business is suspended, or any party has presented or filed a petition for winding-up or liquidating the Borrower; or

    (viii)    any other circumstances that evince the Borrower's inability to pay its debts when due.

**Lending Agreement** means this Operating Circular, any Collateral Schedule, each document in the Application Package executed or furnished to the Bank by the Borrower, and any other agreement or document executed by the Borrower in connection with this Operating Circular, in each case as the same may be amended, supplemented or otherwise modified from time to time.

**Letter of Agreement** means the Letter of Agreement, substantially in the form found in Appendix 3 or 4, as appropriate, pursuant to which the Borrower agrees to be bound by the terms of this Operating Circular.

**Obligation**, whether now existing or hereafter incurred, means:

     (i)     Advance Repayment Amounts;

     (ii)    Indebtedness;

     (iii)   any other liabilities of the Borrower to the Bank or any other Reserve Bank, including without limitation, any service fees, whether due or to become due; and

     (iv)   any expense the Bank or its designee(s) may incur to:

         a.    obtain, preserve and/or enforce the Lending Agreement or the Bank's security interest in Collateral and the Borrower's Obligations under the Lending Agreement,

         b.    collect any or all of the foregoing, or

         c.    assemble, transport, maintain or preserve Collateral (including, without limitation, taxes, assessments, insurance premiums, repairs, reasonable attorneys' fees, rent, transportation, storage costs, and expenses of sale).

**Regulation A** means the Board of Governors' Regulation A, 12 C.F.R. part 201, as amended and supplemented from time to time.

**Reserve Bank** means any one of the Federal Reserve Banks (including the Bank).

**UCC** means the Uniform Commercial Code.

**Unrestricted Securities Account** has the meaning set forth in Operating Circular No. 7.

The following terms are used herein as defined in Articles 8 and 9 of the UCC: account, chattel paper, control, deposit account, documents, equipment, financial assets, financing statement, general intangibles, instruments, inventory, investment property, record, securities account and securities intermediary.

## 3.0   ADVANCES[*]

**3.1**   A request for an Advance shall be made to the Bank in a form and time acceptable to the Bank. An Advance must be secured by Collateral acceptable to the Bank. Upon the Bank's request, the Borrower shall submit a written application for an Advance. The Bank may also require the Borrower to execute a promissory note and/or additional relevant agreements or documents at any time with respect to an Advance.

**3.2**   The Bank's making of an Advance is subject to the terms of the Federal Reserve Act as implemented by Regulation A.

**3.3**   The Bank's approval of a request for an Advance shall be evidenced by, and the Advance shall be deemed made at the time of, the Bank's record of the credit of the amount of the Advance to an Account agreed upon by the Borrower and the Bank.

## 4.0   INTEREST

**4.1**   The interest rate applicable to an Advance shall be the rate, as from time to time established by the Bank subject to the determination of the Board of Governors, that applies to the particular credit program described under Regulation A under which the Bank made the Advance. Interest on an Advance shall accrue from the day the Advance is credited to the Account and shall be payable at the applicable rate in effect on that day, except that if the interest rate changes while an Advance is outstanding, the new rate shall apply as of the day on which the rate change is effective. Interest shall be computed on the basis of 365 days in a year.

**4.2**   If all or any portion of an Advance Repayment Amount is not paid when due (whether by acceleration or otherwise), interest on the unpaid portion of the Advance Repayment Amount shall be calculated at a rate 500 basis points higher than the applicable rate then in effect until the unpaid Advance Repayment Amount is paid in full.

## 5.0   REPAYMENT OF ADVANCE

**5.1**   The Borrower promises to pay an Advance Repayment Amount when due in actually and finally collected funds. An Advance Repayment Amount is immediately due and payable

    (a)   on demand;

    (b)   without any demand, notice or other action:

---

[*] Although a Reserve Bank almost always extends credit in the form of an Advance, a Reserve Bank may extend credit by discounting paper that meets the requirements described in the Federal Reserve Act and Regulation A if the Reserve Bank concludes that a discount more effectively would meet the needs of the situation. A loan in the form of a discount would be subject to a separate agreement between the Reserve Bank and the Borrower. Such agreement may be based on this Circular and, if so, may vary or supplement the terms of this Circular as appropriate.

      (i)    on the due date and time specified by the Bank in writing (provided that if such date falls on a day that is not a Business Day, the due date shall be extended to the next Business Day). If no due date and time is specified, then an Advance Repayment Amount is due 24 hours after the Advance was made (provided that if such time falls on a day that is not a Business Day, the time shall be extended to such time on the next Business Day); or

      (ii)   upon the occurrence of any Event of Default described in clause (iv), (v) or (vii) of the definition of such term; or

  (c)    at the Bank's option, upon the occurrence of any other Event of Default; or

  (d)    at the Bank's option, if the Borrower, in whole or in part, is acquired, merged, dissolved, or nationalized, or sells or otherwise disposes of substantially all of its assets, or if the Borrower is taken over in any other way by any other person or entity.

**5.2**    Operating Circular No. 1 issued by the Reserve Bank maintaining the Account where Indebtedness is incurred governs when such Indebtedness is due and payable; provided, however, that if an Advance Repayment Amount becomes due under Sections 5.1(a), (b)(ii), (c) or (d), all other Obligations shall become due and payable immediately, without any demand, notice, or other action.

**5.3**    The Borrower waives any right to presentment, notice of dishonor, protest, and any other notice of any kind except as expressly provided for herein.

**5.4**    The Borrower may prepay an Advance Repayment Amount, in whole or in part, without penalty.

**5.5**    The Bank or the appropriate Reserve Bank will debit the Borrower's Account for the Advance Repayment Amount and all other Obligations when due. If the Borrower does not have an Account, the Borrower must make arrangements satisfactory to the Bank for paying the Advance Repayment Amount prior to requesting any Advance, such as making payment through a correspondent.

## 6.0   GRANT OF SECURITY INTEREST

For value received and in consideration of the Bank permitting the Borrower to obtain Advances or incur Indebtedness, the Borrower hereby transfers and assigns to the Bank and grants to the Bank for itself and as agent for each other Reserve Bank to which an Obligation is or becomes owing, a continuing security interest in and lien on the Collateral as collateral security for the timely and complete payment and performance when due (whether at stated maturity, by acceleration or otherwise) of all Obligations.

## 7.0   COLLATERAL

**7.1**    The Borrower shall ensure that the Collateral meets the requirements as the Bank may from time to time prescribe and shall deliver, hold, store or otherwise

maintain Collateral on such terms and conditions as the Bank may from time to time prescribe. Borrower must keep all Collateral Schedules current and updated in accordance with the Bank's instructions.

**7.2**    The Bank may at any time request the Borrower to replace any item of Collateral or to grant a lien and security interest in additional assets of a type and in an amount acceptable to the Bank, and the Borrower shall promptly do so.

**7.3**    Unless otherwise specified by the Bank in writing, the Borrower shall promptly withdraw from the Collateral Schedule:

(a)    any Collateral that has a payment of principal or interest past due, in whole or in part, for more than 30 days (or 60 days past due for mortgage notes, and other types of consumer debt, including student loans);

(b)    any Collateral that has been paid in full by the obligor; or

(c    )any Collateral if the obligor on such Collateral becomes insolvent, or if a receiver, custodian, or the like is appointed for the obligor.

Prior to such withdrawal, however, the Borrower shall update any relevant Collateral Schedule and pledge substitute Collateral acceptable to the Bank by submitting an updated Collateral Schedule or otherwise pledging such Collateral to the Bank.

**7.4**    Except as may be the case for book-entry securities held on a Reserve Bank's books pursuant to Operating Circular No. 7 issued by the Bank, the Bank has no duty to collect any income accruing on Collateral or to preserve any rights relating to Collateral.

**7.5**    The Borrower hereby:

(a)    authorizes the Bank at any time to file or record in any filing office in any jurisdiction which the Bank determines appropriate to perfect the security interests set forth hereunder, financing statements, and any amendments or continuation statements related thereto without the signature of the Borrower therein, that describes the Collateral substantially as set forth on Appendix 1 hereto, and the Borrower shall, promptly at the Bank's request, provide any additional information required by Article 9 of the UCC, as in effect in any relevant jurisdiction, for the sufficiency or acceptability of any financing statement;

(b)    ratifies its authorization for the Bank to have filed any financing statement, including any  amendment or continuation statement related thereto, in any jurisdiction, where the same has been filed prior to the date on which the Letter of Agreement is signed by the Borrower;

(c)    authorizes the Bank, at any time, to take any and all other actions that may be necessary or, in the Bank's sole discretion, desirable to obtain, preserve, perfect or enforce the Bank's security interest in the Collateral;

(d)   authorizes the Bank to endorse or assign as the Borrower's agent any item of Collateral, to cause Collateral consisting of uncertificated securities to be marked on the books of the securities issuer as pledged to the Bank or its nominee as pledgee, and to inspect Collateral held by the Borrower and copy any relevant records and/or documents.

**7.6**   If the Bank approves, the Borrower may hold certain Collateral in a BIC Arrangement ("BIC-held Collateral") subject to the following:*

(a)   BIC-held Collateral shall be prominently identified as Pledged to the Bank and subject exclusively to the Bank's written instructions. At the Bank's request, the Borrower shall, without delay, prominently and conspicuously affix a legend to items of BIC-held Collateral indicating that such items are subject to a security interest in favor of the Bank.

(b)   The Borrower shall mark its records to show that BIC-held Collateral has been pledged to the Bank and is subject exclusively to the Bank's written instructions. Any computer generated list or report containing BIC-held Collateral must incorporate a legend indicating that such Collateral is pledged to the Bank.

(c)   Upon the Bank's request, the Borrower shall at all times segregate BIC-held Collateral from its own assets or the assets of any other party and shall hold Collateral in such location(s) approved by the Bank. BIC-held Collateral shall not be removed from such location(s) without the prior written approval of the Bank.

(d)   The Borrower may withdraw or replace BIC-held Collateral only with the approval of the Bank and on terms acceptable to the Bank.

(e)   The Bank may from time to time notify Borrower of additional requirements on BIC-held Collateral. The Borrower's failure to comply with such requirements shall disqualify the Borrower from participation in the BIC Arrangement.

**7.7**   With respect to any item of Collateral not delivered or transferred to the Bank or its custodian, including BIC-held Collateral, the Borrower shall hold such item of Collateral in trust for the Bank until the Collateral is delivered or transferred in accordance with the Bank's instructions. The Borrower bears the risk of loss for any Collateral held in the Borrower's possession, at any custodian, maintained in an account at a securities intermediary other than a Reserve Bank, or in transit to or from the Bank. The Borrower also bears the risk of any accidental loss or damage to Collateral in the Bank's possession to the extent the Bank exercised reasonable care.

---

* If Collateral is held by an affiliate of the Borrower, the Borrower must comply with (or compel such affiliate's compliance with) the provisions in this Operating Circular pertaining to BIC-held Collateral. In addition, such affiliate must execute an Agreement for Third Party Custodian to Hold Collateral, the form of which is in Appendix 5. Finally, the Bank may require the affiliate to complete Collateral Schedules and participate or comply with inspection and certification requirements related to the BIC-held Collateral. For purposes of this Circular, affiliate means a parent, direct or indirect subsidiary of the Borrower or any entity having the same parent or ultimate parent as the Borrower.

**7.8**     Unless an Event of Default occurs or the Bank expressly directs otherwise, any proceeds, dividend, interest, rent, proceeds of redemption, and/or any other payment received by the Borrower regarding any Collateral may be retained by the Borrower.  If the Bank directs that any of the foregoing be paid to the Bank, the Borrower shall remit those payments, or cause such payments to be remitted, promptly to the Bank and, until receipt by the Bank, such payments are deemed to be held in trust for the Bank.

**7.9**     The Bank is under no obligation to allow for the withdrawal of any item of Collateral from the pledge to the Bank, or to allow the removal of any item of Collateral from the Collateral Schedule or otherwise release its security interest in any item of Collateral unless:

    (a)    the Borrower has provided substitute Collateral acceptable to the Bank; or

    (b)    the Bank has verified, in accordance with its normal customs and procedures, that all Obligations have been unconditionally repaid in full and that the Borrower is not currently in default under another agreement with the Bank or any other Reserve Bank.

**7.10**    In order to perfect its security interest in property, whether now owned or hereafter acquired, maintained with any other Reserve Bank including, but not limited to, any deposit account, investment property in any Unrestricted Securities Account, and items in the process of collection and their proceeds, but excluding any investment property in any Unrestricted Securities Account maintained at any Reserve Bank that the Borrower may not encumber under applicable law, Bank will enter, or has entered, a control agreement, substantially in the form of Appendix 2, with any other Reserve Bank with respect to any accounts of Borrower maintained at such Reserve Banks.  Borrower hereby agrees to and consents to be bound by the terms of any such control agreement.  It is understood that any such control agreement creates in favor of the Bank and for the benefit of the other Reserve Banks, a legal, valid, and enforceable security interest, perfected by control, within the meaning of the UCC, in Collateral described in this section.  The Bank will not exercise its rights in such accounts under such agreement except upon the occurrence of an Event of Default.

**7.11**    Unless Bank notifies the Borrower otherwise, the Borrower shall be permitted to Transfer Collateral consisting of securities held in the Borrower's Unrestricted Securities Account as provided for in Operating Circular No. 7.  Securities that the Borrower Transfers shall be free and clear of any security interest of the Bank created hereunder.  The term "Transfer" as used in this Section, has the meaning set forth in Operating Circular No. 7.

## 8.0    MAINTENANCE OF LENDING DOCUMENTS

The documents specified below ("FRB Lending Documents") must be maintained continuously as official records of the Borrower.  The documents listed in subparagraph (a) shall at all times be kept together in one place (in the case of a foreign Borrower, at the office of its branch or agency in the Federal Reserve District in which the Borrower may obtain an Advance or incur Indebtedness), while the document listed in

subparagraph (b) may be kept in any accessible and secure location on the Borrower's premises.  The FRB Lending Documents mean:

(a)     a copy of the Lending Agreement; and

(b)     a current statement of outstanding Advances and Indebtedness.

## 9.0     REPRESENTATIONS AND WARRANTIES

**9.1**     The Borrower represents and warrants that:

(a)     (i) the Borrower has the power and authority, and the legal right, to make, deliver and perform the Lending Agreement and to obtain an Advance or otherwise incur Indebtedness; (ii) the Borrower has taken all necessary organizational action to authorize the execution, delivery and performance of the Lending Agreement and to authorize the obtaining of an Advance on the terms and conditions of the Lending Agreement; (iii) no consent or authorization of, filing with, notice to or other act by or in respect of, any governmental authority or any other person is required in connection with the obtaining of Advances hereunder or with the execution, delivery, performance, validity or enforceability of the Lending Agreement; and (iv) the Lending Agreement has been duly executed and delivered on behalf the Borrower;

(b)     the Borrower is duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and is not in violation of any laws or regulations in any respect which could have any adverse effect whatsoever upon the validity, performance or enforceability of any of the terms of the Lending Agreement;

(c)     the Lending Agreement constitutes a legal, valid and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms;

(d)     the Borrower has rights in Collateral sufficient to grant an enforceable security interest to the Bank and its rights in Collateral are free of any assertion of a property right that would adversely affect a Reserve Bank's right to Collateral, including but not limited to any claim, lien, security interest, encumbrance, preference or priority arrangement or restriction on the transfer or pledge of Collateral (an "Adverse Claim"), except as created by, or otherwise permitted under, the Lending Agreement or by the Bank;

(e)     all information set forth on the Certificate is accurate and complete and there has been no change in such information since the date of the Certificate;

(f)     (i) the Lending Agreement is effective to create in favor of the Bank for itself and for the benefit of the other Reserve Banks, if applicable, a legal, valid, and enforceable security interest in the Collateral described in the Lending Agreement and proceeds thereof; (ii) when financing statements are filed in the state filing offices located in the jurisdictions specified on the Certificate, those security interests shall constitute a fully and validly perfected lien on, and security interest in, all rights, title and interest of the Borrower in such Collateral as to which perfection can be obtained by filing, as security for the Obligations, in each case prior and superior in right to any other person (except for liens that arise by operation of law); and (iii) no financing statement or other public notice with respect to all or any part of the Collateral is on file or of record in any public office, except such as have been filed in favor of the Bank pursuant to the Lending Agreement, are permitted by the Lending Agreement, or are otherwise permitted by the Bank;

(g)     no statement or information contained in the Lending Agreement or any other document, certificate, or statement furnished by the Borrower to the Bank or any other Reserve Bank for use in connection with the transactions contemplated by the Lending Agreement, on and as of the date when furnished,  is untrue as to any material fact or omits any material fact necessary to make the same not misleading, and the representations and warranties in the Lending Agreement are true and correct in all material respects;

(h)     the Borrower has evaluated the potential risks and liabilities accruing to the Borrower under applicable Federal and State environmental laws, rules, and regulations and has determined, to the best of the Borrower's knowledge that under applicable laws, rules, or regulations that impose environmental liability on a creditor or lender or an owner or manager of the real property that secures Collateral, the Borrower does not have and has not assumed any liability of any person thereunder; and

(i)     no Event of Default has occurred or is continuing.

9.2     Each time the Borrower requests an Advance, incurs any Indebtedness, or grants a security interest in any Collateral to a Reserve Bank, the Borrower is deemed to make all of the foregoing representations and warranties on and as of the date such Advance or Indebtedness is incurred or security granted.  Such representations and warranties shall be true on and as of such date and shall remain true and correct so long as the Lending Agreement remains in effect, any Obligation remains outstanding, or any other amount is owing to the Bank.

## 10.0  COVENANTS

The Borrower covenants that so long as the Lending Agreement remains in effect or any Obligation remains outstanding or any other amount is owing to the Bank:

(a)     the Borrower shall provide to the Bank any reports or statements that the Bank requests;

(b) the Borrower shall permit the Bank or its designee to inspect or copy any documents or evidence in the Borrower's possession or control relating to Collateral and any Obligation;

(c) except for the security interest herein granted or otherwise permitted hereunder or by the Bank, the Borrower shall have rights in the Collateral free from any Adverse Claim, and shall maintain the security interest created hereby as a perfected security interest with the priority set forth in Section 9.1(f) and shall take all actions necessary or prudent to defend against Adverse Claims;

(d) except as otherwise permitted hereunder or by the Bank, the Borrower shall not (i) sell or otherwise dispose of, or offer to sell or otherwise dispose of, the Collateral or any interest therein, or (ii) pledge, mortgage, or create, or permit the existence of any right of any person in or claim to, the Collateral other than the security interest granted herein;

(e) the Borrower shall pay promptly when due (or before they become delinquent) all taxes, assessments, governmental charges, and levies imposed upon the Collateral or any income or profits therefrom, and any claims of any kind against Collateral;

(f) upon the Bank's request, the Borrower shall promptly reimburse the Bank for any expense incurred by the Bank with respect to enforcing or administering the Lending Agreement and any item of Collateral, including perfecting or maintaining perfection of the Borrower's and/or the Bank's security interest in Collateral, and assembling, transporting, safekeeping, managing, inspecting, or liquidating Collateral, whether Collateral is held by the Bank, its custodian, or the Borrower;

(g) the Borrower shall not perform any act with respect to any Collateral that would impair the Bank's rights or interests therein, nor will the Borrower fail to perform any act that would reasonably be expected to prevent such impairment or that is necessary to preserve the Bank's rights;

(h) at the Bank's request, the Borrower shall promptly execute any agreement or document and take any other actions that the Bank deems necessary or desirable, including but not limited to the execution and delivery of any document the Bank deems necessary to grant, perfect or otherwise protect the Bank's security interest in any existing or additional Collateral;

(i) the Borrower shall promptly notify the Bank if the Borrower is or is about to become an undercapitalized depository institution or a critically undercapitalized depository institution, as such terms are defined in Regulation A;

(j) the Borrower shall renew or keep in full force and effect its organizational existence or take all reasonable action to maintain all rights, privileges, licenses and franchises necessary or desirable in the normal conduct of its business;

(k)     without providing at least 30 days' prior written notice to the Bank and submitting an updated Certificate to the Bank, the Borrower shall not cause or permit any of the information provided in the Certificate, including its jurisdiction of organization, to become untrue;

(l)     the Borrower shall continuously maintain the FRB Lending Documents in the same manner as it maintains all other official corporate records, and the FRB Lending Documents shall be immediately and routinely available to any examiner authorized to examine the Borrower;

(m)     in any BIC Arrangement, the Borrower shall provide for periodic audits of BIC-held Collateral pledged to the Bank, shall notify the Bank immediately of any irregularities discovered during any audits, shall certify periodically, as determined by the Bank, that it is complying with the requirements of the BIC Arrangement, and shall ensure risk ratings assigned to any Collateral subject to Borrower's internal loan ratings are accurate;

(n)     the Borrower shall promptly notify the Bank of the occurrence or impending occurrence of any Event of Default; and

(o)     the Borrower shall promptly notify the Bank of any change in applicable law, the regulations or policies of its chartering and/or licensing authority, or its charter, bylaws, or other governing documents, or any legal or regulatory process asserted against the Borrower, that materially affects or may materially affect the Borrower's authority or ability to lawfully perform its obligations under the Lending Agreement.

## 11.0   WAIVER OF IMMUNITY; SUBMISSION TO JURISDICTION

11.1     If the Borrower or its property is now, or in the future becomes, entitled to any immunity, whether characterized as sovereign or otherwise (including, without limitation, immunity from set-off, from service of process, from jurisdiction of any court or tribunal, from attachment in aid of execution, from attachment prior to the entry of a judgment, or from execution upon a judgment) in any legal proceeding in Federal or State courts in the United States of America, or in the courts of the country where the Borrower is chartered, or in the courts of the country in which the Borrower principally conducts its business, then the Borrower expressly and irrevocably waives, to the maximum extent permitted by law, any such immunity. To the extent the Borrower receives any such entitlement in the future, the Borrower shall promptly notify the Bank of such entitlement.

11.2     The Borrower submits in any legal action or proceeding relating to or arising out of the Lending Agreement, or the conduct of any party with respect therefor or for recognition and enforcement of any judgment in respect thereof, to the nonexclusive general jurisdiction of the Federal District Court sitting where the Bank's head office is located and any appellate court thereof.  In the case of a foreign Borrower, such Borrower also submits to the non-exclusive jurisdiction of the courts of the country where the Borrower is chartered or in which it principally conducts its business over any suit, action or proceeding arising out of or relating to the Lending Agreement. The Borrower agrees that service of process in any

such action or proceeding may be effected by mailing a copy thereof by registered or certified mail (or any substantially similar form of mail), postage prepaid, to the address provided in the Letter of Agreement; and agrees that nothing herein shall affect the right to effect service of process in any other manner permitted by law or shall limit the right to sue in any other jurisdiction. The Borrower irrevocably waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the venue of any such suit, action, or proceeding brought in any such court and any claim that any such suit, action or proceeding brought in such a court has been brought in an inconvenient forum. The Borrower also agrees that a final judgment in any such suit, action, or proceeding brought in such court shall be conclusive and binding upon the Borrower.  The foregoing does not diminish or otherwise affect the Bank's rights under Section 25B of the Federal Reserve Act, 12 USC § 632.

## 12.0   REMEDIES UPON DEFAULT

**12.1**   Upon the occurrence of, and at any time during the continuance of, an Event of Default, the Bank may pursue any of the following remedies, separately, successively, or concurrently:

(a)   debit the Borrower's Account, or cause the Borrower's Account to be debited (in the case of an Account at another Reserve Bank), in an amount up to the Borrower's unpaid Obligations;

(b)   set off any Obligation against any amount owed by the Bank or any other Reserve Bank to the Borrower, whether or not such amount owed is then due and payable;

(c)   exercise any right of set-off or banker's lien provided by applicable law against the Borrower's property in the possession or control of, or maintained with, the Bank or any other Reserve Bank, including but not limited to items in process of collection and their proceeds and any balance to the credit of the Borrower with a Reserve Bank;

(d)   take possession of any Collateral not already in the Bank's possession, without demand and without legal process.  Upon the Bank's demand, the Borrower shall assemble and make Collateral available to the Bank as the Bank directs.  The Borrower grants to the Bank the right, for this purpose to enter into or on any premises where Collateral may be located; and

(e)   pursue any other remedy available to collect, enforce, or satisfy any Obligation, including exercising its rights as a secured creditor to collect income on the Collateral, or to sell, assign, transfer, lease or otherwise dispose of Collateral whether or not Collateral is in the Bank's possession.

**12.2**   If the Bank exercises its rights in Collateral upon an Event of Default:

(a)   the Bank may sell, assign, transfer, and deliver, at the Bank's option, all or any part of Collateral at private or public sale, at such prices as the Bank may, in good faith, deem best, without advertisement, and the

Borrower waives notice of the time and place of the sale, except any notice that is required by law and may not be waived;

(b)    the Bank has no obligation to prepare Collateral for sale, and the Bank may sell Collateral and disclaim any warranties without adversely affecting the commercial reasonableness of the sale;

(c)    the Bank has no obligation to collect from any third party or to marshal any assets in favor of the Borrower to satisfy any Obligation; and

(d)    the Bank or another Reserve Bank may purchase any or all of Collateral and pay for it by applying the purchase price to reduce amounts owed by the Borrower to the Bank or any other Reserve Bank.

12.3    The Borrower appoints the Bank, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of the Borrower, to endorse, assign, transfer, and deliver Collateral to any party, and to take any action deemed necessary or advisable by the Bank either to protect the Bank's interests or exercise its rights under the Lending Agreement, including taking any action to perfect or maintain the Bank's security interest (including but not limited to recording an assignment of a mortgage or filing a financing statement). This power of attorney is coupled with an interest and as such is irrevocable and full power of substitution is granted to the assignee or holder. As attorney-in-fact, the Bank may take any lawful action to collect all sums due in connection with Collateral, the Bank may release any Collateral, instruments or agreements securing or evidencing the Obligations as fully as the Borrower could do if acting for itself, and the Bank may take any action set forth in Section 7.5, but the Bank has no obligation to take any such actions or any other action in respect of the Collateral.

12.4    The proceeds realized by the Bank upon selling or disposing of Collateral, to the extent actually received in cash by the Bank or another Reserve Bank, will be applied toward satisfaction of the Obligations. The Bank shall apply such proceeds first to any fees, other charges, penalties, indemnities, and costs and expenses of, collection, or realizing on interests in Collateral (including reasonable attorneys' fees), next to accrued but unpaid interest, and last to the unpaid principal balance. The Bank will account to the Borrower for any surplus amount realized upon such sale or other disposition, and the Borrower shall remain liable for any deficiency.

12.5    No delay or failure by the Bank to exercise any right or remedy accruing upon an Event of Default shall impair any right or remedy, waive any default or operate as an acquiescence in the Event of Default, or affect any subsequent Event of Default of the same or of a different nature.

12.6    On complying with the provisions of the Lending Agreement and applicable law, the Bank is fully discharged from any liability or responsibility to any person regarding Collateral.

## 13.0  INDEMNIFICATION

**13.1**  The Borrower shall indemnify the Bank and its officers, directors, employees and agents (each, an "Indemnified Party") for any loss, claim, damage, liability, and expense (including, without limitation, reasonable attorneys' fees, court costs and expenses of litigation) incurred by an Indemnified Party in the course of or arising out of the performance of the Lending Agreement, any action related to Collateral, or any action to which an Indemnified Party may become subject in connection with the Bank's exercise, enforcement or preservation of any right or remedy granted to it under the Lending Agreement, except to the extent that such loss, claim, damage, liability, or expense results, as determined by a court, from the Bank's gross negligence or willful misconduct.

**13.2**  The Bank will give the Borrower written notice of any claim that the Bank or any other person may have under this indemnity.  The Borrower is not liable for any claim that is compromised or settled by the Bank or such persons without the Borrower's prior written consent, provided that the Borrower responded promptly and in the Bank's judgment, adequately, to the Bank's notice of such claim.  This indemnity remains an obligation of the Borrower notwithstanding termination of the Lending Agreement, and is binding on the Borrower's successors and assigns.  Upon written demand from the Bank, the Borrower shall pay promptly amounts owed under this indemnity, free and clear of any right of offset, counterclaim or other deduction, and the Bank's reasonable determination of amounts owing hereunder is binding.  If not promptly paid by the Borrower, such obligation becomes an Obligation secured under the Lending Agreement.

## 14.0  MISCELLANEOUS

**14.1**  The Bank is not obligated by the Lending Agreement or otherwise to make, increase, renew, or extend any Advance to the Borrower.

**14.2**  The amount of any Advance Repayment Amount and/or Obligation reflected on the books and records of a Reserve Bank is presumptive evidence of the amounts due and owing by the Borrower to such Reserve Bank.

**14.3**  The Borrower's obligations under the Lending Agreement shall be performed by it at its own cost and expense.

**14.4**  Unless expressly agreed otherwise by the Bank, the time zone of the Bank's head office shall be used to determine any deadline hereunder, including the time an Advance Repayment Amount is due and payable.

**14.5**  The Bank may record telephone communications between the Bank and the Borrower and such recordings may be submitted in evidence to any court or in any proceeding for the purpose of establishing any matters pertinent to the Lending Agreement.

**14.6**  The Bank may rely on any record used by the Borrower to endorse or pledge Collateral to the Bank.

**14.7**  The Bank's rights and remedies under the Lending Agreement are in addition to any others agreed to by the Borrower or that may exist at law or in equity.

**14.8**  Any provision of the Lending Agreement that is unenforceable or invalid under any law in any jurisdiction is ineffective to the extent of such unenforceability or invalidity without affecting the enforceability or validity of any other provision, and any such unenforceability or invalidity shall not invalidate or render unenforceable such provision in any other jurisdiction.

**14.9**  The Lending Agreement is binding on the receivers, administrators, permitted assignees and successors, and legal representatives of the Borrower and inures to the benefit of the Bank, its assignees and successors.

**14.10**  The Bank may sell, transfer, assign or participate to any other Reserve Bank(s) any or all of its interest in repayment of any Obligation and may purchase any Obligation from any other Reserve Bank.  The Borrower may not assign its rights or obligations hereunder.

**14.11**  The Bank is not required to provide a written advice to the Borrower for any Advance or Advance Repayment Amount.

**14.12**  The Bank has no liability for acting in reliance upon any communication (including a fax, telex, electronic communication, or similar communication) reasonably believed by the Bank to be genuine or to be sent by an individual acting on behalf of the Borrower.

**14.13**  The Section headings used herein are for convenience only and are not to affect the construction hereof or be taken into consideration in the construction hereof.

## 15.0  AMENDMENT

The Bank, in its sole discretion, may amend the Lending Agreement without prior notice at any time.  The Bank shall notify the Borrower of any such amendment and, thereafter, any pledge of Collateral, request for any Advance or incurrence of any other Obligation shall constitute the Borrower's agreement to such amendment as of the effective date of such amendment.  An amendment does not modify, except for a change in interest rate or other charges, the terms of an outstanding Advance.

## 16.0  NOTICE

**16.1**  Any notice or other communication in respect of this Agreement may be given in any manner set forth below to the addresses or numbers or in accordance with the e-mail or electronic messaging system details provided in or pursuant to this Agreement with respect to the receiving party (the "recipient") and will be deemed effective as indicated:

(a)  if in writing and delivered in person or by courier, on the date it is delivered;

(b)  if sent by facsimile transmission, on the date that transmission is received in legible form (it being agreed that the burden of proving receipt will be

on the sender and will not be met by a transmission report generated by the sender's facsimile machine);

(c)    if sent by certified or registered mail (airmail, if overseas) or the equivalent (return receipt requested), on the date that mail is delivered or its delivery is attempted;

(d)    if sent by electronic messaging system, on the date that electronic message is received;

(e)    if sent by e-mail, on the date that e-mail is delivered; or

(f)    if by telephone or other oral communication, on the date that oral communication occurred, provided that such oral communication either is confirmed promptly in writing by at least one of the methods specified in (a) to (e) above or is recorded,

unless the date of the delivery (or attempted delivery), the receipt or the occurrence, as applicable, is not a Business Day or that communication is delivered (or attempted), received or shall have occurred, as applicable, after the close of business on a Business Day, in which case that communication shall be deemed given and effective on the first following day that is a Business Day.

16.2    If sent to the Borrower, the notice must be addressed as indicated by the Borrower in the Letter of Agreement, or as otherwise specified by the Borrower in a record. If sent to the Bank, the notice must be addressed to the credit function at the Bank's head office or as otherwise specified by the Bank.

## 17.0   TERMINATION

17.1    The Borrower may terminate its consent to be bound by the Lending Agreement by giving written notice to the credit function at the Bank's head office or as otherwise specified by the Bank, so long as no Advance is then outstanding.[*] Notice of termination does not release the Borrower or affect the Bank's rights, remedies, powers, security interests or liens against Collateral in existence prior to the Bank's receipt of the notice, nor does notice of termination affect any provision of the Lending Agreement which by its terms survives termination of the Lending Agreement.

17.2    Upon termination, the Bank may retain Collateral until the Bank has had a reasonable opportunity to verify, in accordance with its normal customs and procedures, that all of the Borrower's Obligations, contingent or otherwise, to the Bank or any other Reserve Bank have been fully satisfied and discharged.

---

[*]   Collateral arrangements, including arrangements with securities intermediaries, such as Euroclear or Clearstream, and third-party custody and Borrower-in-Custody arrangements may have their own termination provisions.

## 18.0  GOVERNING LAW

**18.1**  The Lending Agreement, including any Advance or any other transaction entered into pursuant thereto, is governed by the law of the State in which the Bank's head office is located.  The Lending Agreement is a security agreement for purposes of the UCC, as in effect in any relevant jurisdiction, and other applicable law.

## 19.0  WAIVER OF JURY TRIAL

THE BORROWER AND THE BANK EACH HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, COUNTERCLAIM, OR CROSS CLAIM ARISING IN CONNECTION WITH, OUT OF, OR OTHERWISE RELATING TO THE LENDING AGREEMENT, THE COLLATERAL, OR ANY TRANSACTION OR AGREEMENT ARISING THEREFROM OR RELATED THERETO.

## 20.0  STATUS OF PREVIOUS LENDING AGREEMENT

This Operating Circular amends and restates the Bank's Operating Circular governing Lending dated January 2, 1998.

## APPENDIX 1: FINANCING STATEMENT COLLATERAL DESCRIPTION

All accounts, chattel paper, inventory, equipment, instruments, investment property, general intangibles, documents, and all assets, now owned or hereafter acquired, that are identified, from time to time, by Debtor to Secured Party in writing, by electronic means (including by CD-ROM) or by any other means agreed by the parties, as collateral securing the obligations of Debtor to Secured Party under a written agreement between the parties, and all proceeds thereof; and all collateral, guarantees, letters of credit, surety bonds and other supporting obligations pertaining to the foregoing, and all proceeds thereof.

## APPENDIX 2: TERMS OF CONTROL AGREEMENT

Reference is made to Operating Circular No. 10 as issued by each of the Federal Reserve Banks, as the same may be amended, supplemented or otherwise modified from time to time ("OC-10"; capitalized terms used but not defined herein have the meaning assigned them in OC-10).

**Whereas**, by agreeing to OC-10, each Borrower has given the Federal Reserve Bank with which it has agreed to OC-10 (an "OC-10 Reserve Bank"), for itself and as agent for each other Federal Reserve Bank, a security interest in property, whether now owned or hereafter acquired, maintained with any other Federal Reserve Bank (an "Account Maintaining Reserve Bank") including, but not limited to, any deposit account, investment property in any securities account, and items in the process of collection and their proceeds (but excluding any investment property in any Unrestricted Securities Account maintained at any Federal Reserve Bank that the Borrower may not encumber under applicable law) (each an "Account");

**Whereas** each OC-10 Reserve Bank would like to perfect its security interest in each Account now or hereafter maintained at any Account Maintaining Reserve Bank by control, as such term is used in Articles 8 and 9 of the Uniform Commercial Code in effect in the relevant jurisdictions; and

**Whereas**, by agreeing to OC-10, each Borrower has agreed to and consented to be bound to the terms of this Control Agreement;

**Now, therefore**, each Account Maintaining Reserve Bank agrees with each OC-10 Reserve Bank, for itself and as agent for each other Federal Reserve Bank, that with respect to any Borrower maintaining an Account at such Account Maintaining Reserve Bank, it will follow the instructions of an OC-10 Reserve Bank as to the withdrawal or disposition of funds or securities from time to time credited to any such Account, or as to any other matters pertaining to such Account without further consent or instruction from Borrower, subject only to the interest that the Account Maintaining Reserve Bank may also have in such Account.

This Agreement is governed by the law of the State in which the Account Maintaining Reserve Bank's head office is located.

FEDERAL RESERVE BANK OF ATLANTA

By: _____
Name:
Title:
Date:

FEDERAL RESERVE BANK OF MINNEAPOLIS

By: _____
Name:
Title:
Date:

FEDERAL RESERVE BANK OF BOSTON

By: _____
Name:
Title:
Date:

FEDERAL RESERVE BANK OF NEW YORK

By: _____
Name:
Title:
Date:

Appendix 2
to Operating Circular No. 10

FEDERAL RESERVE BANK OF CHICAGO

By: _____
Name:
Title:
Date:

FEDERAL RESERVE BANK OF
PHILADELPHIA

By: _____
Name:
Title:
Date:

FEDERAL RESERVE BANK OF CLEVELAND

By: _____
Name:
Title:
Date:

FEDERAL RESERVE BANK OF RICHMOND

By: _____
Name:
Title:
Date:

FEDERAL RESERVE BANK OF DALLAS

By: _____
Name:
Title:
Date:

FEDERAL RESERVE BANK OF SAN
FRANCISCO

By: _____
Name:
Title:
Date:

FEDERAL RESERVE BANK OF KANSAS CITY

By: _____
Name:
Title:
Date:

FEDERAL RESERVE BANK OF ST. LOUIS

By: _____
Name:
Title:
Date:

Appendix 2
to Operating Circular No. 10

## APPENDIX 3: APPLICATION PACKAGE FOR U.S. BORROWERS

U.S. Borrowers desiring capacity to request to borrow funds from their local Federal Reserve Bank should submit the following documents, forms of which are included in this appendix:

Letter of Agreement
Certificate
Authorizing Resolutions
Official OC-10 Authorization List

Before submitting such documentation, a Borrower should consult with its Reserve Bank for any special instructions.

**FORM OF LETTER OF AGREEMENT**
[Letterhead of the Borrower]


Date:     _____

Federal Reserve Bank of _____
Address
City, State, Zip

Attention:

In consideration of being able to request Advances from and incur Indebtedness to you and in consideration of your making Advances to us we agree to the provisions of your Operating Circular No. 10, effective October 15, 2006, as amended and supplemented from time to time thereafter ("Circular;" capitalized terms used but not defined herein shall have the meaning specified in the Circular).

[Enclosed are (1) certified copies of the Certificate, (2) certified copies of the resolutions that you requested and (3) documents(s) containing the name, title, and signature of those persons authorized to request Advances from and to pledge our assets to you.][1]

Any notices required under the Lending Agreement may be directed to the following department(s): [list department(s) and address(es)].


_____
Full Legal Name of Borrower

By:  _____ [2]
     Authorized signature(s)


_____
Name(s)


_____
Title(s)

---

[1]  Each Borrower should contact the Bank for instructions as to whether this paragraph and the referenced documents, forms of which are provided as part of this Appendix 3, must be submitted.

[2]  The signatory or signatories should be authorized to sign documents on behalf of the Borrower as provided in the Authorizing Resolutions for Borrowers required by OC-10.

**Appendix 3**
**to Operating Circular No. 10**

**SCHEDULE A**
**To Letter of Agreement**

### FORM OF CERTIFICATE[1]

The undersigned, the _____ and _____ of
 (Title)                                        (Title)

_____ (the "Borrower") hereby certifies, with reference to Operating Circular
 (Name of Borrower)

No. 10, effective as of October 15, 2006, as amended or supplemented from time to time thereafter ("OC-10"; terms used but not defined herein have the meaning specified therein), as agreed to by the Borrower by Letter of Agreement dated _____, _____ to the

 (Date of Letter of Agreement)

Bank as follows:

(a)     attached hereto are true, correct and complete, as of the date of this Certificate, copies of the official document that specifies the official name or names of the Borrower in its jurisdiction of organization ("Organizational Document").

(b)     The information listed below is true and correct as of the date of this certificate:

1.     Borrower's current mailing address is:

2.     Borrower's jurisdiction of organization is[2]:

3.     Borrower's Organizational number is (indicate n/a if not applicable):

4.     Borrower's ABA number is :

IN WITNESS WHEREOF, the undersigned has signed this Certificate on _____ __, 2___.

_____[3]
Name:
Title:

_____[4]
Name:
Title:

---

[1]   Borrowers that have previously provided the documents and information requested in this Certificate need only certify that the previously provided documents and information have not changed.

[2]   Borrowers operating under a Federal charter (*e.g.*, national banks or Federal savings banks or associations) (*see* 12 U.S.C. §§ 22 and 1464(a), and 12 C.F.R. § 552.3), please specify the State of the Borrower's main office or home office.

[3]   One signatory should be someone authorized to sign documents on behalf of the Borrower as provided in the Authorizing Resolutions for Borrowers required by OC-10.

[4]   The other signatory should be in-house or outside counsel to the Borrower.

Appendix 3
to Operating Circular No. 10

## FORM OF AUTHORIZING RESOLUTIONS FOR BORROWERS

As evidenced by my signature below, I certify that the following are correct and complete copies of the resolutions duly adopted on _____ at a meeting[5] of _____

        (Date)                     (Type of governing body, e.g. board of directors)

of the _____ ("Borrower"), a _____

    (Official name of the Borrower)             (Commercial bank, mutual savings bank, savings bank and loan association, credit
                      union, or other charter type)

duly established and operating under the laws of _____, with its head office located at _____ in accordance with applicable law and the Borrower's chartering documents. I also certify that the resolutions have not been modified, remain in effect, are not in conflict with any provisions of the Borrower's certificate of incorporation, bylaws, or chartering and/or licensing statutes or requirements, and are reflected in the minutes of the meeting at which these resolutions were approved:

1.    RESOLVED, that the Borrower is authorized to request advance(s) from, incur indebtedness, including overdrafts, to and pledge and grant a security interest in the Borrower's property, whether now owned or hereafter acquired, to a Federal Reserve Bank.

2.    RESOLVED, that the persons with the following titles:

_____

                             (Exact titles of authorized persons)

and each of their successors in office, any _____ of whom _____ authorized to

                           (one/two)             (is/are)

(1) take each of the actions listed in paragraphs (a)-(e) immediately below and (2) send the names, titles, and signatures of individuals authorized to take such actions in the name and on behalf of the Borrower:[6]

(a)    to borrow money from a Federal Reserve Bank on the terms and security that such Federal Reserve Bank requires;

(b)    to discount, rediscount, or sell (with or without the Borrower's agreement to repurchase) and, for any of those purposes, to endorse and assign notes, drafts, bills of exchange, acceptances, other bills receivable, evidences of indebtedness, and securities, now or hereafter acquired by the Borrower;

(c)    to make, execute, and deliver any application, note, agreement, certificate, power of attorney, and any other document that any Federal Reserve Bank requires in connection with any transaction authorized by this resolution;

(d)    to grant, assign, pledge, and transfer to any Federal Reserve Bank security interests in any or all property of the Borrower, whether now owned or hereafter acquired, and to endorse, assign, deliver, deposit, and/or pledge any of such property to any Federal Reserve Bank as collateral to secure payment or performance of any obligation of the Borrower to a Federal Reserve Bank; and

(e)    to do any and all other acts and things that may be necessary or incidental to any transaction authorized by the relevant resolution, or that may be designed or intended to carry out the purpose of such resolution.

3.    RESOLVED, that a Federal Reserve Bank making an extension of credit to the Borrower is appointed as the Borrower's attorney-in-fact for it and in its place and stead, to endorse, assign, transfer and sell, set over and deliver collateral pledged to such Federal Reserve Bank, and to take any other action deemed necessary or advisable by the Federal Reserve Bank to exercise its rights with respect to any advance or indebtedness owed by the Borrower, in its capacity as secured party, including but not limited to accepting and endorsing payments on loans, preparing and/or filing of any documents necessary to perfect, protect, preserve, or release the interest of the Federal Reserve Bank or the Borrower in such collateral, or compromising disputes or handling insurance issues related to such collateral. The power of attorney is coupled with an interest and as such is irrevocable, and full power of substitution is granted to the

---

5    The language of this certification should be modified if the resolutions were adopted by written consent or otherwise.
6    If certain persons are authorized to undertake only some of these activities, e.g., to borrow, but not to pledge on behalf of the Borrower, this resolution should be split to so specifically identify who is authorized to undertake which activit(y)(ies).

**Appendix 3**
**to Operating Circular No. 10**

assignee or holder.  The Borrower ratifies any and all action authorized herein and taken by any such Federal Reserve Bank as the Borrower's attorney-in-fact.  The rights, powers, and authority of the attorney-in-fact to perform any and all act(s) whatsoever necessary remains in full force and effect and binds the Borrower, its legal representatives, successors, and assigns until all indebtedness of the Borrower to any such Federal Reserve Bank has been fully satisfied and discharged.

4.      RESOLVED, that we approve and consent to be bound by the provisions of the Federal Reserve Bank of
        _____'s Operating Circular No 10, effective October 15, 2006, as amended and supplemented from time to time thereafter ("OC-10").

5.      RESOLVED, that the Borrower is authorized and approved to use any record (as such term is used in OC-10) to endorse or pledge to a Reserve Bank the notes and other obligations offered as collateral to secure payment or performance of any obligations of the Borrower to a Reserve Bank. The record will have the full force and effect of a manual endorsement.

6.      RESOLVED, that these resolutions and the powers and authorizations granted or confirmed by them continue in effect until written notice of revocation is received by each Reserve Bank that has relied or is relying on such resolutions and the Borrower shall continue to be bound with respect to any outstanding obligations and pledges to any Reserve Bank at the time the notice of revocation is received by such Reserve Bank.

7.      RESOLVED, that a duly certified copy of these resolutions be furnished to each Reserve Bank to which the Borrower applies for an advance or has an account.

IN WITNESS WHEREOF, I have hereunto subscribed my name.

_____
Signature of certifying official[7]

_____
Name and Title

_____
Date

---

[7]     The certifying official must be the secretary of the Borrower or another person authorized to certify the statements in this document and, in any case, may not be a person authorized in Paragraph 2.

**Appendix 3**
**to Operating Circular No. 10**

## FORM OF OFFICIAL OC-10 AUTHORIZATION LIST

Routing (ABA) No. _____
Page _____ of _____

This supersedes our previous Official OC-10 Authorization List:
(circle:) **YES or NO**
If neither is circled, previous list will also remain in effect.

| Name of Borrower: | Date: |
|---|---|
| Street Address: | Telephone: |

**To the Federal Reserve Banks**: Below are the names, titles and signatures of the individuals authorized to pledge collateral to/ request to borrow money from the Federal Reserve Banks on behalf of the Borrower identified above.

| Name and Title (printed): | Telephone No. and E-Mail Address: | Signature: | Borrow[1] | Pledge[1] |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Authorizing Officer** (must be identified by title in Borrower's Authorizing Resolutions):

Signature:_____

_____
(Printed Name and Title)

_____
(Telephone)

_____
(E-Mail Address)

State of _____ )
County of _____ )
Subscribed and sworn to before me on _____,
20____, by _____.

_____
Notary Public

*(Notary Seal)*

**Secretary's Certification**:

I, _____, Secretary (or Assistant
Secretary) of the above Borrower do hereby certify that
_____ is a
_____ of such Borrower.

Signature: _____

_____
(Printed Name and Title)

State of _____ )
County of _____ )
Subscribed and sworn to before me on _____,
20____, by _____.

_____
Notary Public

*(Notary Seal)*

---

[1] Check as appropriate. For instance, check both if authorized to pledge <u>and</u> to make borrowing requests on behalf of the borrower.

Appendix 3
to Operating Circular No. 10

## APPENDIX 4: APPLICATION PACKAGE FOR BRANCHES OR AGENCIES OF NON-U.S. BORROWERS

Non-U.S. Borrowers desiring capacity to request to borrow funds from their local Federal Reserve Bank should submit the following documents, forms of which are included in this appendix:

Letter of Agreement
Certificate
Authorizing Resolutions
Official OC-10 Authorization List
Legal Opinion of Foreign Outside Counsel
Legal Opinion of United States Outside Counsel

Before submitting such documentation, a Borrower should consult with its Reserve Bank for any special instructions.

Appendix 4
to Operating Circular No. 10

**FORM OF LETTER OF AGREEMENT**
[Letterhead of the Borrower]

Date: _____

Federal Reserve Bank of _____
Address
City, State, Zip

Attention:

In consideration of being able to request Advances from and incur Indebtedness to you and in consideration of your making Advances to us through our branch/agency located in _____ [1] and/or allowing us to incur Indebtedness, _____ [2] as a whole (and not merely its offices in the United States of America) agrees to the provisions of your Operating Circular No. 10, effective October 15, 2006, as amended and supplemented from time to time thereafter ("Circular;" capitalized terms used but not defined herein shall have the meaning specified in the Circular).

[Enclosed are (1) certified copies of the Certificate, (2) certified copies of the resolutions that you requested and (3) documents(s) containing the name, title, and signature of those persons authorized to request Advances from and to pledge our assets to you.] [3]

Any notices required under the Lending Agreement may be directed to the following department(s): [list department(s) and address(es)].

_____
Full Legal Name of Borrower [2]

By: _____ [4]
        Authorized signature(s)

_____
Name(s)

_____
Title(s)

---

[1]   Specify the branch or agency through which Advances will be requested.
[2]   Specify the name of the institution (not the branch or agency).
[3]   Each Borrower should contact the Bank for instructions as to whether this paragraph and the referenced documents, forms of which are provided as part of this Appendix 4, must be submitted.
[4]   The signatory or signatories should be authorized to sign documents on behalf of the Borrower as provided in the Authorizing Resolutions for Borrowers required by OC-10.

**Appendix 4**
**to Operating Circular No. 10**

FORM OF CERTIFICATE[1]

The undersigned, the _____ and _____ of
                            (Title)                                    (Title)

_____ (the "Borrower") hereby certifies, with reference to Operating Circular
(Name of Borrower)

No. 10, effective as of October 15, 2006, as amended or supplemented from time to time thereafter ("OC-10"; terms used but not defined herein have the meaning specified therein), as agreed to by the Borrower by Letter of Agreement dated _____ __, _____ to the Bank as follows:
                              (Date of Letter of Agreement)

    (a)    attached hereto are true, correct and complete, as of the date of this Certificate, copies of (1) the official document that specifies the official name or names of the Borrower in its jurisdiction of organization ("Organizational Document") and (2) the official filing in each State office in the United States in which the Borrower is doing business that authorizes the Borrower to do business in that State.

    (b)    The information listed below is true and correct as of the date of this certificate:

        5.    Borrower's current mailing address is:

        6.    Borrower's jurisdiction of organization is[2]:

        7.    Borrower's Organizational number is (indicate n/a if not applicable):

        8.    Borrower's ABA number, if any, is :

    (c)    [Check one]:

    ☐    Borrower's name as it appears in the Organizational Document is in Standard Roman,

    ☐    Borrower's name as it appears in the Organizational Document is not in Standard Roman, and the government of Borrower's home country has official rules for transliterating words into Standard Roman. Borrower's name, transliterated according to such rules into Standard Roman is _____.
                                           (Insert official transliterated name)

---

[1]  Borrowers that have previously provided the documents and information requested in this Certificate need only certify that the previously provided documents and information have not changed.

[2]  Please specify the home State and State of the branch/agency location, as well. The Bank may file financing statements in the state filing office of each such jurisdiction, as well as in the filing office in Washington, D.C.

**Appendix 4**
**to Operating Circular No. 10**

☐     Borrower's name as it appears in the Organizational Document is not in Standard Roman, and the government of Borrower's home country does not have official rules for transliterating words into Standard Roman. Borrower's preferred transliteration of its name into Standard Roman is _____.
(Insert preferred transliterated name)

IN WITNESS WHEREOF, the undersigned has signed this Certificate on _____ \_\_, 2\_\_\_.

_____ [3]
Name:
Title:

_____ [4]
Name:
Title:

---

[3]   One signatory should be someone authorized to sign documents on behalf of the Borrower as provided in the Authorizing Resolutions for Borrowers required by OC-10.

[4]   The other signatory should be in-house or outside counsel to the Borrower.

**Appendix 4**
**to Operating Circular No. 10**

## FORM OF AUTHORIZING RESOLUTIONS FOR BORROWERS

As evidenced by my signature below, I certify that the following are correct and complete copies of the resolutions duly adopted on _____ at a meeting[1] of _____
(Date)                      (Type of governing body, e.g. board of directors)
of the _____ ("Borrower"), a _____
(Official name of the Borrower )        (Commercial bank, mutual savings bank, savings bank and loan association, credit union, or other charter type)
duly established and operating under the laws of _____, with its head office located at _____ in accordance with applicable law and the Borrower's chartering documents. I also certify that the resolutions have not been modified, remain in effect, are not in conflict with any provisions of the Borrower's certificate of incorporation, bylaws, or chartering and/or licensing statutes or requirements, and are reflected in the minutes of the meeting at which these resolutions were approved:

1.      RESOLVED, that the Borrower is authorized to request advance(s) from, incur indebtedness, including overdrafts, to and pledge and grant a security interest in the Borrower's property, whether now owned or hereafter acquired, to a Federal Reserve Bank.

2.      RESOLVED, that the persons with the following titles:

_____<br>(Exact titles of authorized persons)

and each of their successors in office, any _____ of whom _____ authorized to
(one/two)           (is/are)
(1) take each of the actions listed in paragraph (a)-(e) immediately below and (2) send the names, titles, and signatures of individuals authorized to take such actions in the name and on behalf of the Borrower: [2]

    (a)    to borrow money from a Federal Reserve Bank and to incur indebtedness to a Federal Reserve Bank on the terms and security that such Federal Reserve Bank requires;

    (b)    to discount, rediscount, or sell (with or without the Borrower's agreement to repurchase) and, for any of those purposes, to endorse and assign notes, drafts, bills of exchange, acceptances, other bills receivable, evidences of indebtedness, and securities, now or hereafter acquired by the Borrower;

    (c)    to make, execute, and deliver any application, note, agreement, certificate, power of attorney, and any other document that any Federal Reserve Bank requires in connection with any transaction authorized by this resolution;

    (d)    to grant, assign, pledge, and transfer to any Federal Reserve Bank security interests in any or all property of the Borrower, whether now owned or hereafter acquired, and to endorse, assign, deliver, deposit, and/or pledge any of such property to any Federal Reserve Bank as collateral to secure payment or performance of any obligation of the Borrower to a Federal Reserve Bank; and

    (e)    to do any and all other acts and things that may be necessary or incidental to any transaction authorized by the relevant resolution, or that may be designed or intended to carry out the purpose of such resolution.

---

[1]    The language of this certification should be modified if the resolutions were adopted by written consent or otherwise.

[2]    If certain persons are authorized to undertake only some of these activities, e.g., to borrow, but not to pledge on behalf of the Borrower, this resolution should be split to so specifically identify who is authorized to undertake which activit(y)(ies).

**Appendix 4**
**to Operating Circular No. 10**

3.  RESOLVED, that a Federal Reserve Bank making an extension of credit to the Borrower is appointed as the Borrower's attorney-in-fact for it and in its place and stead, to endorse, assign, transfer and sell, set over and deliver collateral pledged to such Federal Reserve Bank, and to take any other action deemed necessary or advisable by the Federal Reserve Bank to exercise its rights with respect to any advance or indebtedness owed by the Borrower, in its capacity as secured party, including but not limited to accepting and endorsing payments on loans, preparing and/or filing of any documents necessary to perfect, protect, preserve, or release the interest of the Federal Reserve Bank or the Borrower in such collateral, or compromising disputes or handling insurance issues related to such collateral. The power of attorney is coupled with an interest and as such is irrevocable, and full power of substitution is granted to the assignee or holder. The Borrower ratifies any and all action authorized herein and taken by any such Federal Reserve Bank as the Borrower's attorney-in-fact. The rights, powers, and authority of the attorney-in-fact to perform any and all act(s) whatsoever necessary remains in full force and effect and binds the Borrower, its legal representatives, successors, and assigns until all indebtedness of the Borrower to any such Federal Reserve Bank has been fully satisfied and discharged.

4.  RESOLVED, that we approve and consent to be bound by the provisions of the Federal Reserve Bank of _____'s Operating Circular No 10, effective October 15, 2006, as amended and supplemented from time to time thereafter ("OC-10").

5.  RESOLVED, that the Borrower is authorized and approved to use any record (as such term is used in OC-10) to endorse or pledge to a Reserve Bank the notes and other obligations offered as collateral for any advance or other indebtedness of the Borrower to a Reserve Bank. The record will have the full force and effect of a manual endorsement.

6.  RESOLVED, that these resolutions and the powers and authorizations granted or confirmed by them continue in effect until written notice of revocation is received by each Reserve Bank that has relied or is relying on such resolutions and the Borrower shall continue to be bound with respect to any outstanding obligations and pledges to any Reserve Bank at the time the notice of revocation is received by such Reserve Bank.

7.  RESOLVED, that a duly certified copy of these resolutions be furnished to each Reserve Bank to which the Borrower applies for an advance or has an account.

8.  RESOLVED, that the Borrower, with respect to any Reserve Bank and the Borrower's obligations to any Reserve Bank, to the maximum extent permitted by law, expressly and irrevocably waives any immunity that the Borrower now has or that in the future it may become entitled to, whether characterized as sovereign or otherwise (including, without limitation, immunity from set-off, from services of process, from jurisdiction of any court or tribunal, from attachment in aid of execution, from attachment prior to the entry of a judgment, or from execution upon a judgment), in any legal proceeding in the United States of America, the country where the Borrower is chartered, and the country in which the Borrower principally conducts its business and expressly submits to jurisdiction in Federal or State courts in the United Stares of America or in the courts of the Borrower's chartering country, or the country where the Borrower principally conducts its business.

Appendix 4
to Operating Circular No. 10

IN WITNESS WHEREOF, I have hereunto subscribed my name.

_____

Signature of certifying official[3]

_____

Name and Title

_____

Date

EMBASSY OF THE UNITED STATES OF AMERICA[4]

[SEAL]

_____

City, Country

On _____, _____ personally appeared before me, adequately identified
      Date        Name of official signing above

[himself/herself], and, after being duly sworn by me, stated that [he/she] is the _____
                                                                       Title

of _____ whose governing body adopted the resolutions set forth in this
      Official name of foreign Borrower

document and that [he/she] executed this document by authority of that governing body.

_____]

Signature of U.S. Consul

[SEAL]

_____

[3]    The certifying official must be the secretary of the Borrower or another person authorized to certify the
    statements in this document and, in any case, may not be a person authorized in Paragraph 2.

[4]    If appropriate, an apostille may be substituted for this consular certificate.  Generally, if this consular
    certificate is used, it must be executed by an ambassador, a minister plenipotentiary, a minister
    extraordinary, a minister resident, a charge d'affaires, a consular agent, a consul general, a vice-consul
    general, a deputy consul general, a consul, a vice-consul, a deputy consul, a consular agent, a vice-consular
    agent, a commercial agent, or a vice-commercial agent of the United States of America within his or her
    jurisdiction.  The seal or stamp of his or her office or the seal or stamp of the consulate or legation to which
    he or she is attached must be affixed as must the seal or stamp of the appropriate U.S. embassy.

**Appendix 4**
**to Operating Circular No. 10**

## FORM OF OFFICIAL OC-10 AUTHORIZATION LIST

Routing (ABA) No. _____
Page _____ of _____

This supersedes our previous Official OC-10 Authorization List:
(circle:)   **YES or NO**
If neither is circled, previous list will also remain in effect.

| Name of Borrower: | Date: |
|---|---|
| Street Address: | Telephone: |

**To the Federal Reserve Banks**:  Below are the names, titles and signatures of the individuals authorized to pledge collateral to/ request to borrow money from the Federal Reserve Banks on behalf of the Borrower identified above.

| Name and Title (printed): | Telephone No. and E-Mail Address: | Signature: | Borrow[1] | Pledge[1] |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Authorizing Officer** (must be identified by title in Borrower's Authorizing Resolutions):

Signature:_____

_____
(Printed Name and Title)

_____
(Telephone)

_____
(E-Mail Address)

State of _____ )
County of _____ )
Subscribed and sworn to before me on _____,
20___ , by _____ .

_____
Notary Public

*(Notary Seal)*

**Secretary's Certification**:

I, _____, Secretary (or Assistant
Secretary) of the above Borrower do hereby certify that
_____ is a
_____ of such Borrower.

Signature: _____

_____
(Printed Name and Title)

State of _____ )
County of _____ )
Subscribed and sworn to before me on _____,
20___ , by _____ .

_____
Notary Public

*(Notary Seal)*

---

[1] Check as appropriate.  For instance, check both if authorized to pledge <u>and</u> to make borrowing requests on behalf of the borrower.

**Appendix 4**
**to Operating Circular No. 10**

**FORM OF OPINION OF FOREIGN OUTSIDE COUNSEL**
[Letterhead of the Borrower's Outside Counsel]

Date: _____

Federal Reserve Bank of _____
Address
City, State, Zip

Attention:

In re: [Foreign Bank's name]

In connection with the authorization for [foreign Borrower's name] ("Borrower"), through its [city/cities] [branch/agency], to request advances from, incur indebtedness to, and pledge collateral to any Federal Reserve Bank in the United States of America, you have requested us to furnish you with an opinion of counsel regarding the authority of the Borrower and its [city/cities] [branch/agency] to engage in those activities under the laws of [chartering jurisdiction].[1]

We are legal counsel to the Borrower in [city, country], its place of [incorporation or chartering or formation] and in that capacity are familiar with its affairs and the laws of [chartering jurisdiction] affecting it.

We are of the opinion that:

(1)     The Borrower, a [describe type of entity--e.g., corporation], including its branches and agencies in the United States of America, has been duly [incorporated/chartered/formed] and is validly existing and in good standing as a [corporation] under the laws of [chartering jurisdiction].

(2)     Under the laws of [chartering jurisdiction], the Borrower, including its branches or agencies located in the United States of America, (i) has the [corporate] power and authority to execute and deliver the Letter of Agreement, dated _____ __, 200_, to your Operating Circular No.10 ("Circular"), effective October 15, 2006, as amended and supplemented from time to time thereafter and [list other executed agreements] (together the "Lending Agreement"), and to obtain advances from, incur indebtedness to, and perform its obligation under the Lending Agreement and pledge its collateral and grant security interests in its assets to any Federal Reserve Bank, whether now owned or hereafter acquired, as collateral security for the payment or performance of any obligation of the Borrower to any Federal Reserve Bank and (ii) has duly authorized, executed and delivered the Lending Agreement.[2]

(3)     The Lending Agreement constitutes the valid and legally binding obligation of the Borrower in its entirety as a juridical entity and not merely as its branches or agencies located in the United States of America.

---

[1]     If the foreign Borrower principally conducts its business in a jurisdiction other than its chartering jurisdiction then the Borrower should also get an opinion of outside counsel with respect to Paragraphs 2, 3, 4, and 6 hereto·for the jurisdiction in which the Borrower principally conducts its business. Each reference to the chartering jurisdiction in these paragraphs should be replaced with a reference to the country in which the Borrower principally conducts its business.

[2]     An opinion of counsel from a jurisdiction in which the Borrower principally conducts its business should also address whether any office of the Borrower licensed to operate in such jurisdiction can pledge its assets to secure an Obligation of the Borrower to a Reserve Bank.

**Appendix 4**
**to Operating Circular No. 10**

(4)    Regarding the Borrower's obligations to any Federal Reserve Bank, the Borrower and its assets are entitled to _____

List immunities which the Borrower's assets may be entitled to, including immunity from set-off, service of process, jurisdiction

_____

of any court or tribunal, attachment in aid of execution, attachment prior to the entry of a judgment, or execution upon a judgment

in any legal proceeding in the United States of America or the country where the Borrower is chartered. The Borrower has effectively waived such immunity/immunities it is now entitled to as well as any other immunity that, in the future, it may become entitled to in such jurisdictions[3] and has effectively submitted to jurisdiction in the courts of its chartering country.

(5)    The resolutions of the governing body of the Institution, dated _____, that authorize requesting advances from, incurring indebtedness to, and pledging and granting security interests in the Institution's assets to any Federal Reserve Bank, have been duly adopted.

(6)    The chartering jurisdiction [does] [does not] have a system for filing or recording a security interest. [The chartering jurisdiction has a system for filing or recording a security interest, and a filing or recording has been made on behalf of the Federal Reserve Banks. That filing or recording [is not subject to renewal][must be renewed _____.][4]

(7)    In any action or proceeding arising out of or relating to the Lending Agreement in any court in [chartering jurisdiction], such court would give effect to the governing law provisions of the Lending Agreement which provide that the Lending Agreement shall be governed by the law of the State of _____ or Federal laws. However, if a court were to hold that the Lending Agreement is governed by, and is to be construed in accordance with the laws of [chartering jurisdiction], the Lending Agreement would be, under such laws, enforceable against the Borrower in its entirety as a juridical entity and not merely as its branches or agencies created in the United States of America.

There are no other material issues relevant to the issues addressed by this opinion which we wish to draw to your attention.

---

[3]    If there are any limitations on the Borrower's ability to waive any immunity, please identify and discuss those limitations.

[4]    Specify how frequently the filing or recording must be renewed.

**Appendix 4**
**to Operating Circular No. 10**

**FORM OF OPINION OF UNITED STATES OUTSIDE COUNSEL**
[Letterhead of the Borrower's United States Outside Counsel]

Date: _____

Federal Reserve Bank of _____
Address
City, State, Zip

Attention:

In re:    _____
                    Foreign bank

          _____
                    City

You have requested our opinion on certain matters in connection with the authorization for _____

                                                                                                        Foreign bank's name

("Borrower"), through its _____ [branch/agency], to request advances from, incur indebtedness to,

                                    City

and pledge and grant security interests in its assets to, any Federal Reserve Bank.

We are legal counsel to the _____ [branch/agency] of the Borrower and in that capacity are familiar

                                        City

with its affairs and the laws of _____ and the United States of America affecting it.[1]  We have

                                            State

investigated those laws to the extent we believe necessary to render the opinions expressed in this letter.

We are of the opinion that:

(1)    The Borrower, through its _____ [branch/agency], is authorized to request advances from,

                                            City

        incur indebtedness to, and pledge and grant security interests in its assets to, any Federal Reserve Bank.

(2)    The Borrower and its assets are entitled to _____

                                                            List immunities, if any, which the Borrower's assets may be entitled to, including

        _____

        immunity from set-off, service of process, jurisdiction of any court or tribunal, attachment in aid of execution, attachment prior to the

        _____ in any legal proceeding brought in the Federal or State courts in

        entry of a judgment or execution upon a judgment.

        the United States of America.  The Borrower has effectively waived such immunity/immunities it is now entitled
        as well as any other immunity that, in the future, it may become entitled to and has effectively submitted to the
        jurisdiction of the United States courts.

(3)    The agreement of the Borrower to the terms of your Operating Circular No. 10, effective October 15, 2006, as
        amended from time to time, is valid and binding on the Borrower.

In rendering our opinion, we have assumed the correctness of the opinion(s) addressed to you dated
_____, from _____, legal counsel to the Borrower at its

_____ in _____.

    place of incorporation or chartering/principal place of business                    Country

---

[1]    If the office is a Federal branch or agency, the reference to State law should be omitted.  Opinions of counsel must be
        obtained for all branches and agencies which may seek an Advance or incur Indebtedness.

Appendix 4
to Operating Circular No. 10

## APPENDIX 5: ANCILLARY AGREEMENTS

Form of Agreement for Third Party Custodian to Hold Collateral
Form of Correspondent Credit and Payment Agreement
    Exhibit 1:  Form of Letter Agreement for Obtaining Advances Through Correspondent

## FORM OF AGREEMENT FOR THIRD PARTY CUSTODIAN TO HOLD COLLATERAL[1]

[Third Party Custodian Letterhead]

[Date]

Federal Reserve Bank of _____
Address
City, State, Zip

Re: [Insert Borrower's name](the "Borrower")

      We hereby acknowledge that the Borrower has entered into an agreement with you and has granted you a first priority security interest in certain specified assets of the Borrower and proceeds thereof (such assets and proceeds, together with any related documentation, "Collateral"). We further acknowledge that, pursuant to our agreement with the Borrower, from time to time we receive and maintain possession of certain of the Collateral, which are presently kept at our premises located at [insert address of facilities]. We further acknowledge that we have received and hold possession of the Collateral for your benefit until we receive notice from you that your security interest has been terminated.

      We hereby waive, surrender and relinquish any rights in or to the Collateral, including, without limitation, any security interests or liens provided by applicable law to which we may otherwise be entitled. We further acknowledge and agree that we have not acquired any rights in the Collateral sufficient to transfer an interest or grant a security interest in or to the Collateral or will not exercise any such rights with respect to Collateral consisting of negotiable instruments.

      We further acknowledge that, according to the terms of your agreement with the Borrower, you have the right to inspect the Collateral, and, upon default, the right to remove and take possession of the Collateral. We agree (1) to permit you to exercise these rights and to permit you access to the Collateral in order to exercise these rights at your request, (2) to copy you on any reports pertaining to the Collateral that we provide to the Borrower, (3) to ignore instructions from the Borrower at your request, and (4) to follow any other of your instructions with regard to the Collateral to the extent the instructions would have been within the scope of the Borrower's power as set forth in our agreement with the Borrower, all without first receiving the consent or permission of the Borrower. We further agree that, at your request, all representations, warranties and covenants, and agreements regarding access to the Collateral or information about the Collateral, made by us in our agreement with the Borrower shall inure to your benefit, without the consent of the Borrower.

                    Sincerely,

                    [insert third party custodian name]

                    By: _____
                    Name:
                    Title

Cc:    [insert Borrower name]

        Borrower confirms and agrees to the foregoing.

        [insert Borrower name]

---

[1] If the third-party custodian is an affiliate of the Borrower, it must execute this Agreement. In all cases, prior to asking its third-party custodian to sign this agreement, a Borrower should consult with the Reserve Bank, which, depending upon the specifics of the third-party custodial arrangement, may require additions to or modifications of this form of agreement.

**Appendix 5**
**to Operating Circular No. 10**

By: _____
Name:
Title:

Appendix 5
to Operating Circular No. 10

FORM OF CORRESPONDENT CREDIT AND PAYMENT AGREEMENT

**1.0     SCOPE**

**1.1**     This Appendix sets forth the agreement ("Correspondent Agreement") among the Bank, a Borrower, and another depository institution that maintains an Account and is designated by the Borrower as its Correspondent ("Correspondent") under which the Bank may make an Advance to and obtain repayment from the Borrower through the Correspondent.

**1.2**     For the Borrower to receive an Advance under the Correspondent Agreement, the Borrower and the Correspondent must obtain the prior approval of the Bank and execute a letter of agreement in the form of Exhibit 1 of this Appendix.

**1.3**     The Correspondent Agreement supplements the Lending Agreement and the terms of the Lending Agreement are incorporated herein.  Capitalized terms in the Correspondent Agreement have the same meaning as defined in the Circular.

**1.4**     In the event of a conflict between the other provisions of the Lending Agreement and the provisions of the Correspondent Agreement, the provisions of the Correspondent Agreement control.  The terms of the Correspondent Agreement shall also prevail over any inconsistent terms in any other account agreement between the Correspondent's Reserve Bank and the Correspondent regarding the operation of the Correspondent's Account.

**2.0     ADVANCE**

**2.1**     If the Borrower applies for an Advance, the Borrower authorizes the Correspondent to provide any information requested by the Bank regarding the Borrower's credit position and any extension of credit made by the Correspondent to the Borrower.  The Correspondent shall provide such information promptly.

**2.2**     Any credit entry made to the Correspondent's Account by the Bank for the benefit of the Borrower constitutes an Advance to the Borrower in accordance with the terms of the Lending Agreement, and such Advance shall be held in trust by the Correspondent for the Borrower and shall not be subject to any lien or right of set-off by the Correspondent.

**2.3**     The Borrower is solely responsible for notifying the Correspondent of any incoming credit to the Correspondent's Account for an Advance on the day the Advance is requested.  The Borrower's failure to give such notice does not affect the rights and obligations of the Bank and the Correspondent with respect to each other under this Correspondent Agreement.

## 3.0    NOTICE OF DEBIT AND CREDIT

**3.1**    The Bank shall send to the Borrower and the Correspondent an advice of any credit or debit posted to the Correspondent's Account made pursuant to the Correspondent Agreement by the next Business Day following the credit or debit.  The advice to the Correspondent shall be sent to an employee identified by the Correspondent in Exhibit 1.  If the Correspondent does not furnish a list of employees to the Bank, or if in the Bank's opinion it is not feasible to direct a notice to a named individual due to the medium used (e.g., a computer-generated notice), then the Bank may give an advice or notice required under this Agreement to any officer of the Correspondent.

**3.2**    Any credit or debit posted to the Correspondent's Account by the Bank under this Correspondent Agreement constitutes authority for the Correspondent, consistent with applicable law, to credit or debit, respectively, the Borrower's account on its books for the amount of the credit or debit.

## 4.0    REPAYMENT

**4.1**    An Advance Repayment Amount is due in accordance with Paragraph 5.1 of the Credit and Security Terms.  This obligation remains notwithstanding nonreceipt of the Advance by the Borrower after the Advance is credited to the Correspondent's Account.

**4.2**    Any funds deposited with the Correspondent by the Borrower for the purpose of repaying an Advance Repayment Amount are held in trust for the Bank and are not subject to any lien or right of set-off by the Correspondent.

**4.3**    Except as otherwise agreed by the Bank in writing, the Borrower and the Correspondent authorize the Bank, or the appropriate Reserve Bank, to debit the Correspondent's Account for the Advance Repayment Amount in full when the Advance Repayment Amount is due.  The Borrower shall ensure that sufficient funds are made available to the Correspondent to pay this amount.  Unless otherwise agreed, the Borrower shall promptly reimburse the Correspondent for the amount of any debit made to the Correspondent's Account hereunder.

**4.4**    Unless the Correspondent in writing irrevocably waives all rights to contest a debit to its Account to pay the Borrower's Advance Repayment Amount, the repayment is considered provisional and the Bank retains an unimpaired security interest in Collateral Pledged by the Borrower to secure the Advance Repayment Amount until the Correspondent is deemed to have unconditionally approved the debit under Paragraph 5.

## 5.0    CORRESPONDENT'S APPROVAL OF A DEBIT

**5.1**    If, after making a good faith effort, the Correspondent has not received the full amount of the Advance Repayment Amount from the Borrower, then the Correspondent may instruct the Bank, up until one hour before the Advance Repayment Amount is due, not to debit the Correspondent's Account for the amount that the Correspondent has not received.

Appendix 5
to Operating Circular No. 10

**5.2** In addition, if the date and time an Advance Repayment Amount is due is accelerated pursuant to Paragraph 5.1 of the Credit and Security Terms and becomes immediately payable, and if the Correspondent is not provided with advance notice of said acceleration, then the Correspondent may instruct the Bank to reverse the debit by giving the Bank notice before the close of Fedwire on the day the Advance Repayment Amount becomes immediately payable.

**5.3** Upon receiving such an instruction, the Bank will not debit the Correspondent's Account for the amount the Correspondent states it has not received from the Borrower, or will reverse the debit, as the case may be. The Bank is not required to inquire into the basis for or validity of any such instruction before acting upon it.

**5.4** Upon receiving such an instruction from the Correspondent, the Advance Repayment Amount is immediately due and payable and the Bank may exercise any remedies available to it, including any remedies available under the Lending Agreement, to obtain full repayment of the Advance Repayment Amount.

**5.5** If the Correspondent fails to instruct the Bank not to debit the Correspondent's Account before the Advance Repayment Amount is due as provided in Paragraph 5.1, or to reverse the debit as provided in Paragraph 5.2, the Correspondent is deemed to have unconditionally approved the debit and the Correspondent has no right to refuse or contest the debit.

**5.6** If the Correspondent receives funds from the Borrower to pay the Advance Repayment Amount after the Correspondent instructed the Bank to not debit the Correspondent's Account, then the Correspondent shall promptly revoke its instruction.

## 6.0 MISCELLANEOUS

**6.1** Unless otherwise agreed by the Bank, the time zone of the Bank's head office is used to determine whether any deadline set forth herein has been met.

**6.2** No delay or failure by the Bank to exercise any right or remedy accruing upon any Event of Default shall impair any right or remedy, waive any default or operate as an acquiescence to the Event of Default, or affect any subsequent default of the same or of a different nature.

**6.3** The Bank or the Correspondent's Reserve Bank may record telephone communications between it and the Correspondent or the Borrower regarding any debit or credit to the Correspondent's Account made hereunder.

**6.4** The Correspondent Agreement is binding on the receivers, administrators, successors, assigns and legal representatives of the Borrower and the Correspondent, and inures to the benefit of the Bank and its successors and assigns. The rights and obligations hereunder, however, may not be assigned by the Borrower or the Correspondent without the prior written consent of the Bank.

Appendix 5
to Operating Circular No. 10

## 7.0  AMENDMENT

**7.1**  The Bank, in its sole discretion, may amend this Correspondent Agreement without prior notice at any time. Any amendment applies only to a transaction under this Correspondent Agreement made on or after the effective date of the amendment.

## 8.0  NOTICE

**8.1**  Unless otherwise specified in the Correspondent Agreement or by the Bank, all notices required under the Correspondent Agreement shall be: (a) sent by first-class mail, postage prepaid; (b) personally delivered; or (c) sent by telecopy, facsimile, or electronic means to a number or electronic address identified in writing by the intended recipient (and, in such case, confirmed by prepaid, first-class mail). If sent by the Bank, the notice must be addressed as indicated to the Bank in writing by the Borrower or the Correspondent. If sent by the Borrower or the Correspondent, the notice must be addressed to the credit function at the Bank's head office.

**8.2**  The Borrower or the Correspondent is deemed to have delivered any notice required hereunder when the notice is received by the credit function at the Bank's head office. The Bank is deemed to have delivered any notice required hereunder when the notice is sent. If the notice is sent by the Bank only via first-class mail, however, the notice is effective three days after it is deposited in any United States postal box.

## 9.0  TERMINATION

**9.1**  Any party may terminate this Correspondent Agreement by giving written notice to the other parties. The rights and liabilities of the parties under the Correspondent Agreement survive any termination of it until such time as all Advance Repayment Amounts owed by the Borrower hereunder and the Correspondent's obligations to the Bank under this Agreement have been satisfied in full.

## 10.0  GOVERNING LAW

**10.1**  The Correspondent Agreement, including any Advance or any other transaction entered into pursuant thereto, is governed by Federal law and, to the extent not inconsistent therewith, the law of the State in which the Bank's head office is located, excluding that State's law regarding conflicts of law.

## 11.0  EFFECTIVE DATE/STATUS OF PREVIOUS AGREEMENTS

**11.1**  The Correspondent Agreement is effective when the Bank receives the letter of agreement in the form of Exhibit 1 to this Appendix. At that time, the Correspondent Agreement supersedes any and all previous agreements, if any, relating to a Reserve Bank making any Advance to and obtaining payment from the Borrower through the Correspondent.

Appendix 5
to Operating Circular No. 10

**Exhibit 1**
**Letter of Agreement**
**To Correspondent Credit and Payment Agreement**

**EXHIBIT 1:FORM OF LETTER OF AGREEMENT TO**
**CORRESPONDENT CREDIT AND PAYMENT AGREEMENT** [Letterhead of Depository Institution]

Date: _____

Federal Reserve Bank of _____
Address
City, State, Zip

Attention:

In order to request advances from you through a correspondent and in order to make payments to you through a correspondent, we agree to the provisions of the Correspondent Credit and Payment Agreement, currently an ancillary agreement appended to your Operating Circular No. 10, effective October 15, 2006, as amended and supplemented from time to time thereafter. We designate _____ as the Correspondent under that agreement.

_____
Name of depository institution

By: _____ [1]
     Authorized signature(s)

_____
Names(s)

_____
Title(s)

---

[1]   The signatory or signatories should be authorized to sign documents on behalf of the Borrower as provided in the Authorizing Resolutions for Borrowers required by OC-10.

Appendix 5
to Operating Circular No. 10

We agree to act as Correspondent for _____ and, as

Name of depository institution

such, to be bound by the provision of the Correspondent Credit and Payment Agreement, currently an ancillary agreement attached to your Operating Circular No. 10, effective October 15, 2006, as amended from time to time ("Correspondent Agreement"). Pursuant to paragraph 3.1 of the Correspondent Agreement, we are furnishing below a list of individuals to whom the Federal Reserve Bank of _____ may provide an advice of credit or debit entries made under the Correspondent Agreement. These individuals are also authorized to instruct the Reserve Bank not to debit our account or to reverse a debit in accordance with Paragraph 5 of the Correspondent Agreement. We may amend this list from time to time.

_____

Name of Correspondent

By:    _____

Authorized signature(s)

_____

Names(s)

_____

Title(s)

_____

Date

Individuals permitted to receive notification of credit or debit entries described in the Correspondent Credit and Payment Agreement and authorized to instruct the Reserve Bank not to debit the Correspondent Account or to reverse a debit: [list between 3 and 5 employees]

| Name | Title |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**Appendix 5**
**to Operating Circular No. 10**

## APPENDIX 6 TO OPERATING CIRCULAR No. 10
## PROHIBITION AGAINST FEDERAL ASSISTANCE TO ANY SWAPS ENTITY

Reference is made to Operating Circular No. 10 as issued by each of the Federal Reserve Banks, as the same may be amended, supplemented or otherwise modified from time to time ("OC-10"). This Appendix amends, supplements and becomes a part of OC-10 as issued by each Federal Reserve Bank and the Lending Agreement of each depository institution that has agreed to OC-10 prior to the date of this Appendix, and will supplement and be a part of OC-10 for purposes of the Letter of Agreement executed by each institution that agrees to the provisions of OC-10 after the date this Appendix is issued.

## 1. DEFINED TERMS

All capitalized terms used but not defined herein have the meaning assigned them in OC-10. The other capitalized terms used herein are limited to this Appendix 6 and have the meanings set out below. The terms branch, agency, and foreign bank are defined in section 1 of the International Banking Act of 1978 (12 U.S.C. 3101), except that, for purposes of Appendix 6, a bank organized under the laws of a territory of the United States, Puerto Rico, Guam, American Samoa or the Virgin Islands shall not be deemed a foreign bank.

**Borrower** means an entity that incurs an Obligation to the Bank; provided that, for purposes of the representations in section 2 below, in the case of a foreign bank, "Borrower" means the U.S. branch or agency that has requested an Advance.

**Commodity Exchange Act** means the Commodity Exchange Act (7 U.S.C. 1, et. seq.), as amended.

**Dodd-Frank Act** means the Dodd-Frank Wall Street Reform and Consumer Protection Act.

**Federal assistance** has the same meaning as in section 716 of the Dodd-Frank Act (12 U.S.C. 8305).

**Insured Depository Institution** includes any insured depository institution as defined in section 3 of the Federal Deposit Insurance Act (12 U.S.C. 1813) and any uninsured U.S. branch or agency of a foreign bank.

**Securities Exchange Act** means the Securities Exchange Act of 1934 (15 U.S.C. 78a, et seq.), as amended.

**Swaps Entity** means:
1. any person that is registered as a swap dealer under the Commodity Exchange Act;

2. any person that is registered as a security-based swap dealer under the Securities Exchange Act;

Appendix 6
to Operating Circular No. 10

3. any person that is registered as a major swap participant under the Commodity Exchange Act and is not an Insured Depository Institution; and

4. any person that is registered as a major security-based swap participant under the Securities Exchange Act and is not an Insured Depository Institution.

## 2. REPRESENTATIONS BY BORROWERS

Each time on or after July 16, 2013 that the Borrower requests an Advance that qualifies as Federal assistance, and on each date thereafter on which that Advance remains outstanding, the Borrower must be, and is deemed to represent that it is:

a. Not a Swaps Entity; or

b. A Swaps Entity that is eligible to receive the Advance pursuant to one or more subsections of 716 of the Dodd-Frank Act.

For purposes of this representation, a Borrower that is a U.S. branch or agency of a foreign bank is a Swaps Entity if the foreign bank is registered as a swap dealer under the Commodity Exchange Act or as a security-based swap dealer under the Securities Exchange Act.

## 3. COVENANTS; ACKNOWLEDGEMENT; AGREEMENT BY BORROWER

a. If any representation herein becomes untrue, incorrect, or inaccurate while an Advance remains outstanding, Borrower shall notify Bank promptly.

b. Borrower acknowledges that any failure to comply with a requirement herein or any representation or warranty contained herein that is inaccurate on or as of the date it is deemed to be made or on any date on which an Advance remains outstanding is an Event of Default under OC-10.

c. Any pledge of Collateral, request for an Advance or incurrence of any other Obligation by the Borrower after it has been notified of this Appendix 6 shall constitute the Borrower's agreement to the terms set forth herein.