RECEIVED USDC CLERK CHARLESTON SC RECEIVED USDC CLERK CHARLESTON SC
2025 MAR 14 AM 8:51 2025 MAR 14 AM 8:51

Record/FILE ON DEMAND U.S.P.S. PRIORITY MAIL TRACKING NO. 94055301093551158707124

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Nelson L. Bruce,<br><br>Plaintiff,<br><br>v.<br><br>Pentagon Federal Credit Union; et al.<br><br>Defendants. | **Case No.: 2:22-cv-02211-BHH-MGB**<br><br>**PLAINTIFF'S RULE 54(b) PETITION FOR RELIEF FROM ORDER DENYING REISSUANCE OF SUBPOENA AND REQUEST TO SEAL DEPOSITION EXHIBIT 1.7 UNDER THE CONFIDENTIAL ORDER (ECF NO. 179)** |

COMES NOW, Plaintiff **Nelson L. Bruce**, pro se, and respectfully moves this Honorable Court for relief from its Order dated **March 5, 2025** (ECF No. 395), which denied Plaintiff's Emergency Petition for Reissuance of a Subpoena against **Nationwide Credit Corporation ("NCC")**, and an extension of discovery time. Plaintiff invokes **Rule 54(b) of the Federal Rules of Civil Procedure**, as the Order in question adjudicates fewer than all claims and does not represent a final judgment.

## I. INTRODUCTION

1. Plaintiff previously had multiple subpoenas issued by this Court, with compliance instructions similar to those in the subpoena issued to NCC. For example, the court fully reviewed at least 3 subpoenas in case no. 22-cv-01292 before granting them and did not see any issues with how they were drafted and issued (see…ECF No. 137-1, ECF No. 138 at 3 and ECF No. 139 which are hereby incorporated by reference). The parties in those instances with the exception of one party produced documents related to the subpoenas without raising any issue to the place of production, even after the Court granted motions to compel production. The other 2 courts in 2 different jurisdictions also did not raise any issue to the place of production when granting the petitions to compel (Case No.'s 24-cv-01157-CDS-NJK (ECF No.18) and 24-cv-05721-MEF-CLW (ECF No. 9) which are hereby incorporated by reference). Further, Exhibit 39 shows that even the subpoenas drafted by the attorney in the referenced case has drafted their subpoenas with the place of production being the address of the party served (T-Mobile and Bank of America) and the documents requested was produced by the party served without an issue.

2. Plaintiff provided **documentary evidence** that NCC's registered agent was served via **certified mail, signed by NCC's registered agent three separate times**, establishing service of the **Petition to Compel Discovery** and the **subpoena itself**.

3. The Virginia District Court's ruling that Plaintiff **failed to properly serve both the subpoena and Petition to Compel Discovery on NCC** is clearly erroneous, as it ignores material evidence on the record proving otherwise.

4. The Virginia Court's additional finding that **Plaintiff did not appear at NCC's office on the day of compliance to receive a response to the subpoena** misapplies the law. The subpoena served was a demand for **production of documents**, not an in-person request requiring the recipient's presence.

5. PenFed's alleged ownership rights have no bearing on their duties and obligations as data furnishers to report accurate and complete information related to the account under Appendix E to Part 1022 section I(b)(4)(i) which clearly requires PenFed to update the information it furnishes as necessary to reflect the current status of the consumer's account or other relationship, including, Any transfer of an account (e.g., by sale or assignment for collection) to a third party, which is also incorporated with the reporting requirements of the "Credit Reporting Resource Guide ("CRRG")" which directs PenFed to report transferred accounts as transferred, with a "zero" balance and "zero" amount past due amongst other reporting requirements (See...Exhibit 40). When PenFed assigns/transfers or sales the accounts, rather internally or to a third party, they are required as a data furnisher, reporting regulations, the CRRG adopted by Metro 2 standards to report the accounts referencing the "transfer" of the accounts to internal or external third party collections which they agreed to follow evidenced by their own credit reporting policies (see...deposition Exhibit 1.7 - 224-Credit Bureau Reporting And Dispute Policy at paragraph 6 (Policy Statement)). This further supports the relevancy of the materials sought from NCC because as referenced by the magistrate, "the Third Amended Complaint alleges that Defendant Pentagon Federal Credit Union ("PenFed") "knew the line of credit account being reported and published on [Plaintiff's] consumer reports . . . allegedly belonging to the Plaintiff was assigned and transferred to NCC." (See...ECF No. 385 at 3). The reporting requirements related to a sale, assignment/transfer for collection is one of the issues that are material to the claims in this case as it represents PenFed's requirements and obligations under the **FCRA, CRRG, CDIA, Metro 2, the reporting regulations under Appendix E to Part 1022 section I(b)(4)(i) (12 CFR Part 1022 - Fair Credit Reporting (Regulation V)) as a data furnisher** which they agreed to follow to report the accounts in question with accurate and complete information related to the accounts and the requirements to report with maximum possible accuracy under the FCRA as PenFed's own records reflects such transactions that took place which they have clearly admitted to in their "November 1, 2024" Affidavit as paragraph 19, PenFed admits to assigning the PLOC to NCC so that NCC could collect the past due debt on behalf of PenFed (see...ECF No. 345-1 at 3 which are hereby incorporated by reference).

6. This court has been placed on judicial notice as of January 16, 2025 (see...ECF No. 373) of material facts labeled as Exhibits 21 to Exhibits 32 (see...ECF No. 373-1 to 373-12) which evidence that the affidavit filed by PenFed on November 1, 2024 related to the ownership of the accounts appear to be false and included misleading statements to the court of their alleged ownership interest as the evidence produced by the plaintiff to the court under judicial notice evidences a clear controversy with PenFed's statements in their affidavit by their Vice President of Legal Operations as the referenced exhibits evidence that PenFed only retained rights to service the accounts (see…ECF No. 373-4, 373-6, and 373-8 which are hereby incorporated by reference) which gave the Federal Reserve ownership interest in the collateral including the accounts, not PenFed as evidenced by the exhibits presented to the court (see…ECF No. 373-1 to 373-12 which are hereby incorporated by reference in their entirety). The UCC filings presented to the court where the Federal Reserve perfected their interest in the associated accounts referenced in PenFed's Call Reports further support that PenFed has no ownership rights. Plaintiff's Exhibit 28 (ECF No. 373-8) even evidences that there were sales of the accounts into a trust, pool of securities where there are trustee's associated and also labels PenFed as only a servicer in that ucc filing, it does not evidence that PenFed has any ownership rights. Plaintiff again re-introduces to this court to take judicial notice of plaintiff's new evidence filed on the record in this case (ECF No. 373, 373-1 to 373-12) as evidence on 1-16-2025 as they support the relevancy of the need for the materials in the possession of NCC, and the federal reserve and the relevancy for relief of the courts prior orders denying the compelling of discovery and subpoenas related to information from third parties and the federal reserve, including the orders that this petition is directed to.

## II. BASIS FOR RELIEF UNDER RULE 54(b)

5. **Avoidance of Procedural Delay:** This petition is filed to prevent **unnecessary delays** caused by an appeal and to **preserve judicial efficiency**. Plaintiff, however, reserves the right to request a **stay of proceedings** should this Court refuse to grant the reissuance of the subpoena.

6. **Relevance of Discovery Requests:** The Court's ruling (ECF No. 395) that the discovery sought is **irrelevant** is unsupported by the factual record. Defendant **PenFed** submitted an affidavit on **November 1, 2024** (ECF No. 345-1 at 3), asserting that **it never sold, assigned, or transferred ownership rights to the accounts at issue**. However, this court was to take judicial notice of the evidence produced on the record by the plaintiff which contradicts the averments presented in the referenced affidavit by PenFed evidencing that the federal reserve and other third parties have an ownership interest in the referenced accounts (see…ECF No. 373, 373-1 to 373-12 referencing exhibits). Further, PenFed's own policies support that they have a **Metro 2 reporting obligations** and contract with **Credit Reporting Agencies (CRAs)** to follow the **Credit Reporting Resource Guide (CRRG)**, and reporting regulations which mandates **accurate and complete information to be reported.** The fact that this court has used the allegations

of PenFed's alleged ownership rights in the accounts as a means to deny plaintiff's emergency petition is sufficient evidence that all of the discovery plaintiff requested during discovery related to the federal reserve is clearly relevant to the claims and defenses in this matter as such discovery would prove that PenFed did not and does not have any ownership rights in any accounts of the plaintiff, they only possess a right to service the accounts evidenced by Exhibits presented to this court on the record (see...ECF No. 373-4, 373-6, and 373-8 which are hereby incorporated by reference) which they have assigned/ transferred those rights to third party collections to collect the alleged debts receivable balances. The assignment/transfer to NCC, the third party debt collector to collect the alleged receivable balance triggered reporting requirements under the CRRG, Metro 2, reporting regulations for accuracy and completeness of the information which is at issue in this matter.

7. The CRRG adopted by the CRA's under **Metro 2 guidelines** require that when an account is assigned/transferred to a third party for such actions like collections, it must be reported as follows, "For internal transfers, report Special Comment AT (Account closed due to transfer), or for transfers to another company or servicer, report Special Comment O (Account transferred to another company/servicer), report with a **zero balance** and a **zero past due amount (see...Exhibit 40 and Appendix E to Part 1022 section I(b)(4)(i) of 12 CFR 1022)**, as the right to collect on any alleged balance is transferred by assignement to another party regardless of any alleged ownership rights in an account as the alleged ownership does not take precedence over the reporting requirements that PenFed agreed to follow as **PenFed assigned/transferred the right to collection any alleged debt to NCC, thereby relinquishing collection rights and the right to report a balance.**

8. **Affidavit Admissions by PenFed Contradicting Their Claims:** In the **November 1, 2024 affidavit**, PenFed admits **in paragraph 19** that it assigned the **Personal Line of Credit (PLOC) to NCC for collection**. In **paragraph 20**, it denies transferring ownership of the **PLOC** but **fails to address the Credit Card and Auto Loan Accounts**, which remain at issue.

9. **Exhibit 41** evidences that **NCC was still attempting to collect on the Credit Card accounts as of November 3, 2022**, which PenFed originally alleged was sold to United Holdings Group however this exhibit evidences that collection of the Credit Card Account was assigned/transferred to NCC, a third party collection agency to collect the alleged debt balance.

## III. LEGAL PRECEDENTS SUPPORTING RELIEF

10. **Misleading Credit Reporting as Debt Collection:** The **Sixth Circuit in *Purnell v. Arrow Financial Services, LLC,* 303 F. App'x 297 (6th Cir. 2008)** held that reporting a debt to CRAs is a **debt collection activity** under the **Fair Debt Collection Practices Act (FDCPA)**. PenFed's continued reporting of the debt with a balance after transferring collection rights to NCC is **misleading and unlawful.**

11. **Effect of Assignment on Rights to Collect:** ***Continental Casualty Co. v. Ryan Inc. Eastern*, 974 So. 2d 368 (Fla. 2008)** and ***Pony v. County of Los Angeles*, 433 F.3d 1138 (9th Cir. 2006)** confirm that once an assignment is made, the assignor **loses all rights to enforce collection**.

12. **Judicial Notice of Inconsistent PenFed Statements:** This Court was placed on **judicial notice on January 16, 2025 (ECF No. 373)** regarding evidence that **PenFed falsely asserted ownership rights** to the accounts while the records indicate they were pledged to the **Federal Reserve under the Borrower-In-Custody Program (BIC)**, with UCC filings reflecting ownership by the **Federal Reserve and other third parties and converted into securities, Penfed does not have ownership rights.**

## IV. REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

1. **Vacate or modify its March 5, 2025 Order (Dkt. No. 395)** and **grant Plaintiff's request to reissue the subpoena to NCC**;

2. **Extend the discovery period by 30-60 days** to allow Plaintiff to perfect service of the subpoena;

3. **Take judicial notice of ECF No. 373 and exhibits 21-32**, evidencing that PenFed's affidavit contains **false statements** regarding its alleged ownership rights;

4. SEAL the documents presented under "DEPOSITION EXHIBIT 1.7" UNDER THE CONFIDENTIAL ORDER (ECF NO. 179);

5. **Grant any further relief** as this Court deems just and proper in the interest of justice.

**Dated:** March 13th, 2025

RESPECTFULLY PRESENTED,

Nelson L. Bruce

Nelson L. Bruce, Propria Persona, Sui Juris
"All Secured Natural Rights Explicitly Reserved and Retained"
c/o P.O. Box 3345, Summerville, South Carolina 29484
Phone: 843-437-7901
Email: leonbruce81@yahoo.com