IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| NELSON L. BRUCE, | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO.: 2:22-cv-02211-BHH-MGB |
| PENTAGON FEDERAL CREDIT UNION, ("PENFED), et al., | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT TRANS UNION LLC'S**
**MEMORANDUM IN SUPPORT OF ITS SUMMARY JUDGMENT**

COMES NOW Defendant Trans Union LLC ("Trans Union"), by and through the undersigned counsel, files its Memorandum In Support of its Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and would respectfully show the Court as follows:

## I.     NATURE OF CASE

On July 12, 2022, Plaintiff Nelson L. Bruce ("Plaintiff"), a serial *pro se* litigant, filed his third lawsuit against Trans Union under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* Plaintiff also makes claims against Trans Union for common law Defamation and under the South Carolina Consumer Protection Act ("SCCPC") § 37-20-110, *et seq*.

Plaintiff's claims relate to Trans Union's reporting of his accounts with Defendant Pentagon Federal Credit Union ("PenFed") and Trans Union's reinvestigation conducted in response to Plaintiff's disputes regarding same. Despite Plaintiff's attempts to obfuscate the facts,

all of his claims ultimately fail because the PenFed accounts at issue were reported accurately and were not misleading[1], in any respect. This undeniable fact disposes of all of Plaintiff's claims.

## II.        STATEMENT OF FACTS

### A.  Plaintiff's Pentagon Federal Accounts

Plaintiff was the holder of three PenFed accounts which PenFed reported on Plaintiff's Trans Union credit file in accordance with the FCRA. It is undisputed that Plaintiff opened and utilized these accounts, but within a year, ceased making payments, resulting in default.  Second Declaration of Craig Olson ("2nd Olson Dec."), Ex. C, at ¶ 11.  In 2017, Plaintiff attempted to avoid liability for the debts by submitting "payment in full" letters accompanied by fake money orders,[2] which PenFed appropriately rejected.  First Declaration of Craig Olson ("1st Olson Dec."), Ex. D, D-10.[3] When this effort proved unsuccessful, Plaintiff turned to disputing the accuracy of the accounts with Trans Union in an attempt to evade responsibility for the outstanding debts. Declaration of Don Wagner ("Wagner Dec."), Ex. A-1, A-6.

---

[1] *Roberts v. Carter-Young, Inc*., 131 F.4th 241, 250 (4th Cir. 2025) (a report is inaccurate when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect). Without proof that a creditor was actually misled, any claim based on Plaintiff's "misleading" argument fails as a matter of law. *Jones v. Equifax Info. Servs., LLC*, No. 2:18-cv-2814, 2019 WL 5872516, at *4 (W.D. Tenn. Aug. 8, 2019). Similarly, any claim based on the argument that Trans Union's reporting was inaccurate or misleading because of an alleged failure to comply with Metro 2 cannot support a claim against Trans Union. *Gibson v. Equifax Info. Servs., LLC*, No. 5:18-cv-00465-TES, 2019 WL 4731957, at *3 (M.D. Ga. Jul. 2, 2019).

[2] "Attached are the money orders [$40,000.00, $7,000.00, and $16,000.00] presented to the payoff department which was received by them on May 15, 2017 under certified mail . . . to set-off and discharge the balances stated in Penfed's statements.  The bottom half of the documents are the money orders and are to be processed through my private treasury direct account setup with the U.S. Treasury."   1st Olson Dec., Ex. 10 (The entire declaration and exhibits can be found at ECF No. 305-1).

[3] The entire declaration and exhibits can be found at ECF No. 345-1.

As outlined below, PenFed has consistently maintained that the debts remain valid. 2nd Olson Dec. at ¶ 11. PenFed is a reputable and experienced data furnisher that has provided accurate and reliable information regarding its accounts to Trans Union for approximately 20 years. Wagner Dec. at ¶ 9. Under the contract between Trans Union and PenFed, PenFed agreed that all information furnished to Trans Union shall be complete and accurate. Wagner Dec. at ¶ 4.

Trans Union also sends annual reminders to each of its data furnishers regarding the data furnisher's obligations to furnish complete and accurate information under the FCRA. Wagner Dec. at ¶ 9. Trans Union has never had reason to doubt the accuracy, completeness, or reliability of the credit data furnished by PenFed. *Id*. PenFed has never reported its accounts sold, assigned, or transferred its ownership rights with respect to any of Plaintiff's PenFed accounts. Wagner Dec. at ¶ 17. As a matter of fact, the PenFed accounts were never sold, assigned, or transferred. 2nd Olson Dec. at ¶ 9.

### i.     Plaintiff's Vehicle Loan

In April 2016, Plaintiff entered into an agreement with PenFed for a loan in the amount of $33,478, account ending #....3812, for the purchase of a BMW. Deposition of Nelson Bruce ("Pltf's. Depo."), B-1, 22: 8-21. Plaintiff signed a promissory note for this purchase (the "Vehicle Loan"). Pltf's. Depo., 21: 20-24. Plaintiff made several payments on the Vehicle Loan and then stopped. Pltf's. Depo., 24: 10-11. Plaintiff alleges that he stopped making payments to [PenFed] based on his theory that PenFed was already in possession of payment from the Federal Reserve. Pltf's. Depo., 24: 15-18.

### ii.     Plaintiff's Credit Card Loan

Plaintiff had a credit card with PenFed (the "Credit Card") ending in account #....1336. Pltf's. Depo., 41: 12-18. Plaintiff made several payments and then stopped making payments on

the Credit Card. Pltf's. Depo., 42: 12-20. Plaintiff did not pay the remaining balance on the Credit Card. Pltf's. Depo., 42: 21-24, 43: 1-4.

### iii.    Personal Line of Credit

Plaintiff had a personal line of credit with PenFed (the "PLOC Loan") ending in account #....6770. Pltf's. Depo., 33:16-24. Plaintiff utilized the PLOC Loan for real estate. Pltf's. Depo., 35:9-15. Plaintiff made several payments on the PLOC account and then defaulted. Pltf's. Depo., 35: 24, 36: 1-5. PenFed retained third party debt collector National Credit Corporation ("NCC") to assist in collecting the outstanding debt. 2nd Olson Dec. at ¶ 20.

### B.  Plaintiff's Disputes to Trans Union

In June 2018 Plaintiff disputed the accuracy of three PenFed accounts reporting on his Trans Union credit file. Wagner Dec. at ¶ 11. For each account, Plaintiff's dispute stated: "Disputes Current Balance and/or Amount Past Due. Verify Current Balance or Amount Past Due" and Plaintiff included a comment that read "The full amount of this account was tendered and has been discharged by the principle of law related to tender of payment which may have been refused by the creditor I request that this account be deleted." *Id.* Trans Union reviewed and considered Plaintiff's dispute and on June 11, 2018, an ACDV for each disputed account was sent by Trans Union to PenFed. Each ACDV included the full text of Plaintiff's dispute and his comment. *Id.* at ¶ 12. In response to each ACDV, PenFed verified the accuracy of each disputed account and updated the effective date to the date of their ACDV response. *Id.* at ¶ 13. Trans Union's reinvestigation results were sent to Plaintiff on July 4, 2018. *Id.*

On June 5, 2019, Plaintiff submitted another online dispute of his PenFed accounts. *Id.* at ¶ 14. For each account, Plaintiff's dispute stated: "Claims true identity fraud, account fraudulently opened. Provide or confirm complete ID" and Plaintiff included a comment that read "I disputed

with furnisher they never responded in 30 days we have no contract reporting incorrectly with a balance charge-offs have a zero balance I request that this account be deleted removed immediately." *Id*. Trans Union reviewed and considered Plaintiff's dispute and on June 4, 2019, an ACDV for each disputed account was sent by Trans Union to PenFed. Each ACDV included the full text of Plaintiff's dispute and his comment. *Id*. at ¶ 15. Because Plaintiff disputed the PenFed accounts as true identity fraud and PenFed did not verify Plaintiff's current address, each of the PenFed accounts was deleted from Plaintiff's credit file. *Id*. at ¶ 16. Trans Union's reinvestigation results were sent to Plaintiff on July 2, 2019. *Id*.

## III.    LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Evans v. Techs. Apps. & Serv. Co.,* 80 F.3d 954, 958-59 (4th Cir.l996). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248. Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant also meets its summary judgment burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. 317, 325. The nonmovant must provide more than "conclusory allegations or mere speculation,"

and must present specific facts that demonstrate genuine issues for trial.  *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4h Cir. 2002).

IV.    <u>ARGUMENT AND AUTHORITIES</u>

**A. Trans Union is Entitled to Summary Judgment on All Causes of Action Because It's Reporting was Accurate**

Plaintiff's Fourth Amended Complaint alleges that Trans Union inaccurately reported his PenFed accounts because they were not reported as sold, assigned, or transferred notation.  ECF No. 291 at ¶ 54.  Plaintiff further alleges that Trans Union's reporting of the PenFed accounts is misleading to potential third parties because after the accounts were allegedly sold, assigned, or transferred, the reporting should have also included a zero balance and zero amount past due.  *Id.* at ¶ 77.  As a threshold matter, to succeed under §§ 1681e(b) and 1681i of the Fair Credit Reporting Act (FCRA), Plaintiff must prove that information in his credit report was inaccurate.  *Ritchie v. TRW, Inc., et al.*, No. 91-2208, 1992 U.S. App. LEXIS 1913, at *5-*6 (10th Cir. Feb. 3, 1992) (quoting *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991)); *Nagim v. Equifax Info. Servs., LLC*, 2011 U.S. Dist. LEXIS 49424 *11 (D. Colo. 2011).  Similarly, Plaintiff's claim under the South Carolina Code Ann § 37-20-170, paralleling § 1681i of the FCRA, also requires that Plaintiff prove an inaccuracy in his credit report.  Finally, under South Carolina law, Plaintiff must prove that Trans Union's reporting was false or misleading. Moreover, the truth or substantial truth, i.e., accuracy, of Trans Union's reporting, is a complete defense to Plaintiff's claim for defamation.  *A Fisherman's Best, Inc. v. Recreational Fishing Alliance*, 310 F.3d 183 (4th Cir. 2002); *Parrish v. Allison*, 656 S.E.2d 382 (S.C. Ct. App. 2007).

Plaintiff has no evidence to support his allegation that his PenFed accounts were reported inaccurately or in a misleading way. Instead, the competent summary judgment evidence in front

of the Court demonstrates that the accounts were reported accurately at all times. Those facts alone dispose of all of Plaintiff's claims.

**B. Plaintiff's Claims Based on 2018 and 2019 Alleged Conduct are Time-Barred**

Plaintiff's claims fall into two distinct periods of time. The first relates to his disputes submitted to Trans Union in 2018 and 2019. The second relates to an alleged "reinsertion" of his PenFed revolving line of credit account #...6770 that he discovered in January 2022. *See* Plaintiff's Second Supplemental Responses to Trans Union's First Set of Interrogatories ("Pltf's 2nd Supp. Interrogs"), No. 2, Ex. B-2, ("Actual damages related to failure to do a reasonable reinvestigation of plaintiff's 6-11-2018… re-inserting the PenFed Line of credit account in November 2022 after it was deleted on or about July 2019…"); Plaintiff's Rule 26(a)(1) Initial Disclosures ("Pltf's Initial Discls") at pp. 9-13, B-3. Any claims asserted by Plaintiff based on 2018 and 2019 conduct, whether based on federal or state law, are barred by limitations.

Plaintiff's FCRA claims are governed by the two-year statute of limitation provided by 15 U.S.C. § 1681p. See *Bruce v. Bank of Am., NA*, 2020 WL 7249876, at*3 (D.S.C. October 22, 2020), *report and recommendation adopted*, 2020 WL 6737647 (D.S.C. November 17, 2020); *Croft v. Bayview Loan Servicing, LLC*, 166 F. Supp. 3d 638 (D.S.C. 2016) ("A plaintiff alleging an FCRA claim need not be fully aware of the specific failures of the furnisher's investigation before the two-year statute of limitation commences. Rather, plaintiff discovered the alleged FCRA violation when she received Defendant's … letter informing her that it would not change the credit entry."). Plaintiff's SCCPC is governed by the three-year statute of limitation provided by S.C. Code Ann. § 15-3-540(2). *See Tilley v. Pacesetter Corp.*, 508 S.E. 2d 16, 20 (S.C. Sup. Ct. 1998) (applying a three-year statute of limitation of § 15-3-540(2) to SCCPC chapter that contained no other limitation period). Finally, Plaintiff's common law defamation claim is governed by the two-year statute of limitations provided by *S.C. Code Ann. § 15-3-550.*

Plaintiff acknowledges that he received the reinvestigation results from his 2018 dispute on or about July 4, 2018, and that the disputed accounts remained on his file. Pltf's Depo., 256: 17-24. Plaintiff acknowledges that he received the reinvestigation results from his 2019 dispute on or about July 2, 2019, and that the disputed PenFed accounts were deleted from his credit file. *Id.*, 265: 3-19, 286: 1-17. Plaintiff did not file the instant action until July 12, 2022. ECF No. 1. Accordingly, any claims based on 2018 and 2019 conduct alleged in the Complaint are barred by the applicable statute of limitations.

### C. Plaintiff's 1681e(b) Claim Fails as a Matter of Law

As stated above, Plaintiff claims that Trans Union inaccurately reported his PenFed accounts without including a sold, assigned, or transferred notation. ECF No. 291 at ¶ 54. To succeed under § 1681e(b), "a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information." *Dalton v. Capital Associated Industries, Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (quoting *Guimond v. Trans Union Credit Info. Co.*, 45 F.3D 1329, 1333 (9th Cir. 1995)). A consumer must plead and prove that: (1) inaccurate information was included in his consumer report; (2) an inaccurate consumer report was provided to a third party; (3) the inaccuracy was due to Trans Union's failure to follow reasonable procedures; (4) he suffered damages; and (5) his damages were caused by Trans Union's failure to follow reasonable procedures. *See, e.g., Trans Union LLC v. Ramirez, 141 S. Ct. 2190, 2210 (2021); Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995).* Plaintiff's claims fail because he cannot prove any of the elements of his claims.

i.        **The Reporting of Plaintiff's PenFed Accounts Was Accurate**

Plaintiff contends that his PenFed accounts inaccurately reported with a balance without a notation that they were sold, assigned, or transferred.[4]  Pltf's 2nd Supp. Interrogs No.3.  Plaintiff bases his assertion on an alleged phone call he had with PenFed in December 2021 and a letter he received from PenFed on or around April 11, 2022.  Plft's Depo., 229: 2-7, 55: 2-13.  Plaintiff believes that the PenFed accounts were sold, assigned, or transferred, and because of that mistaken belief, he maintains that Trans Union was "required to report the accounts as sold, transferred, charged-off with a zero balance and zero amount past due."  ECF No. 291 at ¶ 77.

Plaintiff's assertion is incorrect.  Plaintiff has no personal knowledge regarding the alleged sale, assignment, or transfer of the PenFed loans, the only relevant knowledge can come from PenFed.  In the Second Declaration of Craig Olson, PenFed explained that none of the PenFed accounts was ever sold, assigned, or transferred:

> As of the date of this declaration, PenFed has never sold, assigned, or transferred its ownership rights with respect to any of the accounts referenced in paragraph 8. As of the date of this declaration, PenFed has retained sole legal ownership over the accounts referenced in paragraph 8.  An April 11, 2022 letter from PenFed to Bruce, which is attached hereto as Exhibit 1, advised Bruce that the vehicle loan, PLOC, and credit card account are legally established debts that he is liable to repay, and PenFed had charged off the accounts as bad debt due to nonpayment. The April 11, 2022, letter from PenFed to Bruce indicated that PenFed sold the credit card account to United Holdings Group, LLC ("UHG").  While PenFed planned to sell Bruce's credit card account to UHG, the sale was never completed, and PenFed still owns the credit card account as of the date of this declaration. . . . My understanding is that UHG's response to a subpoena Bruce issued in this case confirms that UHG did not acquire the credit card account. . . . PenFed "assigned"

---

[4] Initially, Plaintiff alleged the PenFed accounts reported inaccurately because they reported with a balance owed even though the accounts were charged off.  While Plaintiff's current theory of inaccuracy may have changed, his original claim was also meritless because reporting a charge-off account with a balance is not inaccurate.  *Mitchell Bank v. Schanke*, 676 N.W.2d 849, 854 n.7 (2004) ("A 'write off' does not mean that the institution has forgiven the debt or that the debt is not still owing."); *e.g. Artemov v. TransUnion, LLC*, 2020 WL 5211068, at *4 (E.D.N.Y Sept 1, 2020) (even though banks labeled plaintiff's accounts as charged off, they had no obligation to zero out the overall or past due balance.").

the PLOC to NCC so that NCC could collect the past due deb on behalf of PenFed. Although PenFed "assigned" NCC as the debt collector for the PLOC, PenFed did not assign its ownership rights with respect to the PLOC to NCC.

2nd Olson Dec. at ¶¶ 9-13, 19-20.

It is clear PenFed's interests in the accounts were never sold, assigned, or transferred. Plaintiff has not produced any evidence to the contrary. Thus, the inaccuracy alleged by Plaintiff never existed and furthermore, his contention regarding the balance and past due amounts must necessarily fail as well. Accordingly, his § 1681e(b) claims fail as a matter of law and summary judgment should be granted.

### ii.     Plaintiff Has No Evidence That an Inaccurate Credit Report was Published to a Third Party

The only credit report Plaintiff alleges that Trans Union published is one to Capital One on January 20, 2023. Pltf's Depo., 270: 5-7, Pltf's 2nd Supp. Interrogs No. 2, Pltf's Initial Discls. No. 3. As discussed above, Plaintiff's credit report did not contain the inaccuracy he alleged and Plaintiff has no evidence as to what Capital One received; much less, that it was inaccurate.

"Consumer reports" are generated by a CRA and delivered to a third party for use in deciding whether the consumer is eligible for credit or for other purposes. *Pettway v. Equifax Info. Servs., LLC*, No. 08-0618-KD-M, 2010 U.S. Dist. LEXIS 13800, at *22 (S.D. Ala. Feb. 12, 2010) (citing 15 U.S.C. § 1681a(d)). Liability only arises under § 1681e(b) when a CRA issues an inaccurate consumer report to a third party. *TRW Inc. v. Andrews*, 534 U.S. 19, 28-31 (2001); *Acton v. Bank One Corp.*, 293 F. Supp. 2d 1092, 1097 (D. Ariz. 2003). This Court previously held that dissemination of inaccurate information on a credit report to a third party is enough to constitute a concrete injury, but *inaccuracy* is needed. *Burns v. Trans Union, LLC*, No. 4:18-cv-03120-MGL, 2019 WL 3890833, at *3 (D.S.C. Aug. 19, 2019) (emphasis added).

Plaintiff has no evidence that a Trans Union credit report containing an inaccuracy was published to a third party. Without proof of the actual report provided to Capital One, Plaintiff's claim fails.

### iii.    Plaintiff Cannot Prove that Trans Union Failed to Follow Reasonable Procedures

Putting the accuracy of the PenFed accounts aside, Trans Union is entitled to summary judgment because Plaintiff has no evidence demonstrating that Trans Union failed to follow reasonable procedures. Plaintiff bears the burden of proof to establish that the procedures followed by Trans Union were unreasonable. *Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1080-81 (D. Or. 2007); *Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 416 (4th Cir. 2001). The FCRA does not impose strict liability on CRAs. See *Guimond*, 45 F.3d at 1333. Instead, it requires that Trans Union follow reasonable procedures to ensure the maximum possible accuracy of its reports. *See id.* Plaintiff must show more than a mere inaccuracy; he must show that an inaccuracy resulted from Trans Union's negligent or willful failure to follow reasonable procedures when it prepared his reports. *See id.* Plaintiff has no such evidence, and therefore, his § 1681e(b) claim fails, as a matter of law.

Furthermore, the affirmative evidence offered by Trans Union defeats Plaintiff's § 1681e(b) claim, as a matter of law. As set forth in the Declaration of Don Wagner:

> Virtually every action undertaken by Trans Union is designed to ensure that Trans Union maintains reasonable procedures to ensure maximum possible accuracy of the data in its consumer files and reports. Information is accepted only from data furnishers and public records vendors that have passed Trans Union's membership standards and are under contract to provide complete and accurate data.

> Most data is contributed by electronic data transfer in the Metro Format, and all data is reviewed for format errors (for example, data with numeric fields that contain alpha characters, data with mandatory fields that are blank, or data with an improper number of fields), and for anomalies in content (such as a creditor who normally reports 10% of its accounts as in collection suddenly reporting 90% of its accounts in collection, or a creditor reporting all its accounts with the same current balance) prior to the data being loaded to

the database.  These procedures were utilized in connection with the data reported on Plaintiff's consumer file and reports.

When the data is loaded, it is processed by complicated and proprietary algorithms, which are designed to combine data received from different creditors into a single credit file for an individual consumer.  Trans Union monitors data provided by creditors to detect anomalies and patterns of inaccuracies and works with creditors to ensure any problems are corrected.  The foregoing policies and procedures were followed in connection with the credit data received from PenFed and the handling of Plaintiff's Trans Union credit file and disputes.

All of the information contained in Plaintiff's Trans Union credit file related to the PenFed Accounts was reported to Trans Union by PenFed. Based on Trans Union's experience, PenFed is a reputable and experienced data furnisher that has provided accurate and reliable information regarding its accounts to Trans Union for approximately 20 years. Trans Union also sends annual reminders to each of its data furnishers regarding the data furnisher's obligations to furnish complete and accurate information under the FCRA.  PenFed was vetted by Trans Union, and Trans Union has never had reason to doubt the accuracy, completeness, or reliability of the credit data furnished by PenFed, including the information related to Plaintiff's PenFed Accounts.

Trans Union maintains billions of pieces of data in the form of consumer files on its computer system and has spent decades developing and perfecting its policies and procedures. Trans Union followed its procedures in connection with Plaintiff's consumer files and reports.

Wagner Dec. at ¶¶ 4-6.

Plaintiff has no evidence that Trans Union did not follow reasonable procedures to ensure the maximum possible accuracy of its consumer reports.  The affirmative evidence offered by Trans Union demonstrates that it maintained and followed reasonable procedures in the preparation of its consumer reports in compliance with § 1681e(b).  Accordingly, Plaintiff's § 1681e(b) claims fail, as a matter of law.

### iv.    Plaintiff Cannot Establish the Existence of Recoverable Damages

In the Fourth Circuit, a plaintiff asserting claims under the FCRA must demonstrate actual damages resulting from the alleged violation. See *Dalton v. Capital Associated Indus., Inc.*, 257

F.3d 409, 418 (4th Cir. 2001) ("To recover under the FCRA, a consumer must present evidence of actual damages sustained as a result of the failure to comply with the Act.").

While Plaintiff listed a variety of damages in his Complaint, after discovery, his damage claims consist of the following: (1) a diminished credit score, (2) unspecified loss of the ability to purchase and benefit from credit and unspecified chilling effect on credit applications, and (3) a higher interest rate and credit limit on his Capital One credit card. Plaintiff admits he is not seeking emotional damages from Trans Union. *See* Pltf's 2nd Supp. Interrogs No. 2: Pltf's Initial Discls at pp. 9-11, Pltf's Depo.: at 280: 9-24, 280: 1-19. Plaintiff has failed to support any of his allegations with competent summary judgment evidence.

A plaintiff must present specific, admissible evidence demonstrating actual damages were sustained as a result of Trans Union's conduct. *See Dalton* 257 F.3d 409, 418 (4th Cir. 2001). Without any evidence, Plaintiff cannot demonstrate that any of the claimed damages were proximately caused by a violation of the FCRA. As a result, his claims fail, as a matter of law.

### 1.  Plaintiff Has No Evidence of a Diminished Credit Score

Plaintiff vaguely alleges that his credit score diminished as a result of the inaccuracies of the PenFed accounts. Pltf's Depo., 96: 13-23.  He further alleges "the information [on his PenFed accounts] was used to determine plaintiff's credit score and; ultimately, was used to determine plaintiff's interest rate and amount to loan plaintiff based on the debt amount reported." Pltf's 2nd Supp. Interrogs No. 2.

While courts have routinely held that a consumer's lower credit score is enough to satisfy injury-in-fact, that allegation *alone* is insufficient to establish damages at the summary judgment stage. *See Miller v. Dish Network, L.L.C.*, 326 F. Supp. 3D 51, 61 (E.D. Va. 2018); *See also Green v. RentGrow, Inc.*, Action No. 2:16cv421, 2016 WL 7018564, at *7-8 (E.D. Va. Nov. 10, 2016)

(Report & Recommendation) (diminished credit score may establish injury-in-fact). A claim cannot stand alone on allegations of a diminished score, there must be a connection to a tangible harm—such as emotional distress or credit denials—or adverse action, "[T]he question of whether Dalton can prove damages for emotional distress or loss of reputation under his FCRA claims may be considered in summary judgment proceedings." *Dalton,* 257 F.3d 409, 415 (4th Cir. 2001).

Even assuming Plaintiff's credit score did, in fact, decrease—which Plaintiff cannot prove—Plaintiff has not shown that this decrease was caused by Trans Union or was the direct cause of any tangible harm. A lower credit score alone is not sufficient to support an FCRA damages claim. Plaintiff vaguely alleges that his credit score diminished as a result of the inaccuracies; however, when asked, he could not provide any evidence regarding his credit score. Pltf's Depo., 267: 11-14.

### 2. Plaintiff Has No Evidence of His Speculative Damages

To the extent Plaintiff alleges that the inaccurate reporting of the PenFed accounts kept him from being eligible to receive offers for credit products, his claim still fails.[5] Plaintiff testified that he did not have actual knowledge of any credit denials but speculated "I think at that point they wasn't giving me any offers, so in a way . . . No specific denials, no." Pltf's Depo., 267-268: 4-8. Despite his lack of certainty, he assumes—without any evidence—that Credit Karma relied on his Trans Union credit report to determine his eligibility for third-party credit offers. *Id.*

Speculative damages have been rejected by the Fourth Circuit, "A plaintiff must prove damages with reasonable certainty; speculative or conjectural damages will not suffice." *Price v. City of Charlotte*, 93 F.3d 1241, 1250 (4th Cir. 1996); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.,*

---

[5] Although not specifically pleaded, Plaintiff's discovery responses suggest additional speculative damages for not receiving pre-screened credit offers from Credit Karma. Pltf's 2nd Supp. Interrogs No. 5.

*Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (requiring plaintiff to establish non-speculative connections between the defendant and the alleged injury).  Speculative damages have also been rejected by other courts in FCRA cases. *Myers v. Bennett L. Offs*., 238 F. Supp. 2d 1196, 1205 (D. Nev. 2002) (striking down Plaintiff's assertion that he was damaged because he *may not* have received pre-screen promotions) (emphasis added).  Courts have routinely dismissed attempts to recover lost opportunity damages as "too speculative" without any actual evidence of loan denials.  *Garrett v. Trans Union, LLC*., No. 2:04-cv-00582, 2006 WL 2850499, at *12 (S.D. Ohio Sept. 29, 2006).  As in *Price*, *Myers*, and *Garrett*, here, Plaintiff has provided no evidence to support his claim that he was entitled to, but did not receive, pre-screened offers, much less that he applied for and was denied credit due to Trans Union's reporting.  Plaintiff's damage claims are based on nothing more than Plaintiff's personal belief that the credit offers—or lack thereof—would have been different if the disputed information was reported as Plaintiff desires.

Plaintiff alleges that he lost the ability to purchase and benefit from credit and had a chilling effect on credit applications, but has provided absolutely no evidence of same. As other courts have held, this claim for damages is too speculative to withstand summary judgment. *See Casella v. Equifax Credit Info. Servs.,* 56 F.3d 469, 475 (2d Cir. 1995) (affirming summary judgment in favor of the defendant on the grounds that the plaintiff's " 'lost opportunity' damages ... were too speculative," despite evidence indicating that the plaintiff was "actively seeking to purchase a home" but "refrained from making any credit applications in order not to tarnish further his credit history"); *Rambarran v. Bank of Am., N.A., 609* F. Supp. 2d 1253, 1265 (S.D. Fla. 2009).  Plaintiff cannot recover on the basis of such speculative damages.

### 3. Alleged Higher Interest Rate and Credit Limit on His Capital One Credit Card

Plaintiff admits that he did not receive any credit denials and was actually approved for a Capital One business card he applied for. Pltf's Depo., 270: 1-6., Pltf's 2nd Supp. Interrogs No. 4. He further testified that the card was a Capital One Spark Business credit card with a $5,000.00 spending limit. Pltf's Depo., 270: 18-24, 272: 4-6. Plaintiff admits that the card was going to be used for "business expenses" and was not for personal use. *Id*. 271: 20-21; 272: 4-6. Plaintiff alleges that he received a higher interest rate due to the alleged inaccuracies reporting on his Trans Union credit file. *Id*. 270: 5-7.

Courts have widely held that recovery under the FCRA does not extend to an individual's business endeavors, even when their personal credit report is obtained. *See, e.g.*, *Bacharach v. Suntrust Mortg., Inc*., 827 F.3d 432, 435 (5th Cir. 2016); *see also Ippolito v. WNS, Inc., 864 F.2d 440, 452 (7th Cir. 1988)* ("In enacting the FCRA, Congress sought to regulate the dissemination of information used for consumer purposes, not business purposes."); *Stich v. BAC Home Loans Servicing*, No. 10-cv-01106, 2011 WL 1135456, at*4 (D. Colo. Mar. 29, 2011) ("Where an individual's credit information is used to obtain credit for business purposes . . . the credit report does not fall within the realm of the FCRA, which was implemented to protect consumers."); *Sizemore v. Bambi Leasing*, 360 F.Supp. 252, 255 (N.D. Ga. 1973) ("[T]he Act was not enacted to protect consumers in the procuring of business (i.e. commercial) credit but was expressly put into law to assist the consumer in his individual and personal capacity."). Accordingly, Plaintiff cannot recover for the alleged higher interest rate on his business credit card.

Furthermore, Plaintiff's claim fails because he has no evidence of what his interest or credit limit "should have been" and whether any alleged difference is attributable to Trans Union. *Rambarran v. Bank of Am., N.A.,* 609 F. Supp. 2d 1253, 1265–66 (S.D. Fla. 2009); *See Ashcraft v.*

*Welk Resort Group Corp.,* 2021 WL 950658, at *11 (D. Nev. March 12, 2021); *see also Hariton v. Chase Auto Finance Corp.,* 2010 WL 3075609, at *5 (C.D. Cal. August 4, 2010).

### 4. Plaintiff Has No Evidence that Trans Union Caused His Alleged Damages

A plaintiff must show a casual connection between the allegedly inaccurate credit report and the claimed harm. *Dalton*, 257 F.3d 409, 418 (4th Cir. 2001). In the absence of a causal link, Plaintiff cannot survive summary judgment because not only has he failed to provide any evidence to support his alleged damages, Plaintiff cannot demonstrate that he suffered any actual injury or damage caused by Trans Union.

### D. Plaintiff's § 1681i Claims Fail as a Matter of Law

Plaintiff alleges that Trans Union failed to reasonably reinvestigate his 2018 dispute pertaining to the PenFed accounts.[6] Pltf's 2nd Supp. Interrogs No. 2, Pltf's Initial Discls"), pp 8-9, Pltf's Depo., 283: 14-22. To survive summary judgment, Plaintiff must provide sufficient evidence to show: (1) his credit report contains inaccurate or incomplete information; (2) he notified Trans Union of the alleged inaccuracy; (3) the dispute is not frivolous or irrelevant; (4) Trans Union failed to respond or conduct a reasonable reinvestigation of the disputed items; and (5) the failure to reinvestigate caused him to suffer actual damages. *See Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 451 (E.D. Va. 2009); *Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1330, 1334 (S.D. Fla. 2011) (citing *Bermudez v. Equifax Info. Servs., LLC*, No. 607CV-1492-ORL-31GJK, 2008 WL 5235161, at *4 (M.D. Fla. Dec. 15, 2008)). Plaintiff cannot prove

---

[6] Plaintiff's 2018 dispute differs from his current alleged inaccuracies. In 2018, P alleged "[t]he full amount of this account was tendered and has been discharged by the principle of law related to tender of payment which may have been refused by the creditor." Wagner Dec. at ¶ 11. Plaintiff further explained that he believed the PenFed accounts should have been reporting with a zero balance and zero past due because they were charged off. *See* ECF No. 1. Plaintiff's claims now are premised on the argument that they should be reporting with a zero balance and zero past due because they were allegedly sold, assigned, or transferred. Pltf's Depo., 245: 15-24, 246: 1.

his Trans Union credit report contained an inaccuracy, he did not notify Trans Union of the alleged inaccuracy prior to filing suit, and finally, Plaintiff cannot prove that Trans Union failed to respond or conduct a reasonable reinvestigation.  Therefore, all of his claims must fail.

### i.   Plaintiff Cannot Establish the Existence of an Inaccuracy

Plaintiff's § 1681i claim fails for the same reasons stated above in Section IV.C.i.  Plaintiff has no evidence to support his claim that the PenFed accounts were reported inaccurately on his Trans Union credit report.  In order to prevail on his § 1681i claim, Plaintiff must show the existence of an inaccuracy. *Nagim v. Equifax Info. Servs., LLC*, 2011 U.S. Dist. LEXIS 49424 *11 (D. Colo. 2011). Further, the affirmative evidence offered by Trans Union disproves that the PenFed accounts were reported inaccurately or were, in any way, misleading.  *See* 2nd Olson Dec.

### ii.   Plaintiff Did Not Notify Trans Union of the Alleged Inaccuracy

The plain language of § 1681i requires the consumer to tell the credit reporting agency why he thinks the item of information is inaccurate.  "[I]f a consumer later sues a CRA for a violation of its reinvestigation duty under § 1681i(a), he or she may only sue based on alleged violations of which the consumer provided notice to the CRA."  *Petty v. Equifax Info. Servs., LLC*, No. CCB-10-694, 2010 WL 4183542, at *3 (D. Md. Oct. 25, 2010).   Such notice is required because without it the CRA cannot have been expected to know what information to reinvestigate, how to reinvestigate it, or whether upon reinvestigation the information is indeed inaccurate or incomplete. *Id*.  "If the consumer raises additional alleged violations in his or her lawsuit for which the consumer had not previously provided notice of the dispute to the CRA, those claims must be dismissed." *Id*.

Plaintiff's 2018 dispute cannot serve as the requisite notice to support his claim under § 1681i because Plaintiff did not make the same dispute that the accounts were inaccurately reporting

as sold, assigned, or transferred. Plaintiff's 2018 dispute did not mention any inaccuracy related to the PenFed accounts being sold, assigned, or transferred. Despite Plaintiff's perceived dissatisfaction with the outcome of his 2018 dispute, Plaintiff did not submit a dispute based on his current legal theory. Therefore, Plaintiff cannot prevail on his §1681i claim and Trans Union's Motion should be granted.

### iii.     Trans Union Reasonably Reinvestigated Plaintiff's 2018 Dispute

If the Court examines the merits of Plaintiff's claims, Plaintiff still has no evidence to suggest that Trans Union failed to conduct a reasonable reinvestigation of his dispute in accordance with § 1681i. Liability is only incurred under § 1681i if a CRA fails to conduct a reasonable reinvestigation. 15 U.S.C. § 1681i. To overcome summary judgment, Plaintiff must present competent summary judgment evidence to support a claim that Trans Union's reinvestigation procedures were unreasonable. *See Davis v. Equifax Info. Servs. LLC*, 346 F. Supp. 2d 1164, 1176 (N.D. Ala. 2004) (stating that the plaintiff's § 1681i claim was dismissed because the plaintiff failed to produce any evidence that the procedures followed by Equifax were insufficient to comply with § 1681i as a matter of law); *Bermudez*, No. 607CV-1492-ORL-31GJK, 2008 WL 5235161, at *4 (stating that to prevail on a claim under 15 U.S.C. § 1681i, "a consumer must show that … the agency failed to respond or conduct a reasonable reinvestigation of the disputed items …") (*citing Thomas v. Trans Union LLC*, 197 F.Supp.2d 1233 (D.Or. 2002)).

Here, Plaintiff submitted an online dispute on June 11, 2018. Pltf's Depo. at ¶ 11. An ACDV for each disputed account was sent by Trans Union to PenFed on June 11, 2018. *Id*. at ¶ 12. In response to each ACDV, PenFed verified the accuracy of each disputed account and updated the effective date to the date of their ACDV response. *Id*. at ¶ 13. Trans Union's reinvestigation results were sent to Plaintiff on July 4, 2018. *Id*.

Plaintiff has not and cannot produce any evidence that Trans Union's reinvestigation of his 2018 dispute was unreasonable. In fact, circuit courts from around the country have held that use of an ACDV is reasonable, as a matter of law. In *Kelly v. SunTrust Bank*, the E.D. VA district court granted summary judgment in favor of the defendants, holding that the CRA defendants responding to plaintiff's disputes using the ACDV process was reasonable as a matter of law (with each investigation reaching the same conclusion – that the information was accurate) and that the plaintiff provided no evidence, aside from pure speculation, that the CRA defendants acted unreasonably. *Kelly v. SunTrust Bank*, No. 3:14-CV-121, 2016 WL 775781, at *5 (E.D. Va. Feb. 25, 2016), aff'd, No. 16-1310, 2016 WL 7030641 (4th Cir. Dec. 2, 2016)): *Dickens v. Trans Union Corp.*, 18 F. App'x 315, 319 (6th Cir. 2001);. Therefore, Plaintiff cannot prevail on his §1681i claim, and Trans Union's Motion should be granted.

### E. Plaintiff Has No Evidence that Trans Union Failed to Include an Account In Dispute Notation

It is unclear whether Plaintiff is asserting that Trans Union failed to indicate that Plaintiff was disputing his PenFed accounts in violation of the FCRA. ECF No. 291 at ¶ 115(f). To the extent Plaintiff is making such a claim, it fails as a matter of law. The plain reading of § 1681s-2 instructs a furnisher to identify an account as "disputed by the consumer" when disputes are received. Trans Union's obligation to report the account as "disputed" under section § 1681(c)(f) is triggered only if a consumer reporting agency is notified pursuant to section 1681s-2(a)(3). "If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer." 15 U.S.C. § 1681s-2(a)(3). Accordingly, to the extent Plaintiff is asserting such a claim against Trans Union, the claim fails.

**F.  Plaintiff's Alleged Reinsertion Claim Fails as a Matter of Law**

When Plaintiff's PenFed revolving line of credit account #6770 was deleted on July 2, 2019, ("First Version") it was also suppressed in Trans Union's computer system to keep it from reappearing on Plaintiff's credit file. Even though PenFed continued to report the First Version to Trans Union, Trans Union's system was successful in keeping it from reappearing in Plaintiff's credit file. Three and a half years later, in December 2022, PenFed reported what appeared to be a new account to Trans Union ("Second Version") that Plaintiff contends was "reinserted" into his credit file. While there were some similarities between the Versions, Trans Union's system viewed the Second Version as a new account because of significant differences between the two accounts:

| Data Field | First Version | Second Version |
|---|---|---|
| First Reported Date | 4/4/2016 | 12/5/2022 |
| First Delinquency | 12/5/2016 | 2/4/2017 |
| Closed Date | 9/27/2017 | 11/30/2022 |
| Portfolio Type | "R" (revolving) | "LC" (line of credit) |

Because of the differences between the two Versions, Trans Union's system did not identify the Second Version as being the same account as the First Version. Trans Union does not expect a creditor to change the First Reported Date, First Delinquency, Closed Date, and Portfolio Type on a closed account, charged off account, and the First Version was closed by PenFed on September 30, 2017. PenFed continued to report the First Version to Trans Union (which successfully remained suppressed) and PenFed gave no indication to Trans Union that the two Versions were the same account. When this reporting came to Trans Union's attention, the Second Version was promptly deleted (and suppressed) from Plaintiff's file on February 3, 2023. Plaintiff

never disputed the Second Version directly with Trans Union. Trans Union had no reason to doubt the accuracy, completeness, or reliability of the Second Version when it was reported to Trans Union.

Trans Union also has a separate process to allow a data furnisher to "reinsert" a previously deleted item of information to a consumer's credit file. This process requires the data furnisher to certify to Trans Union that the information is complete and accurate. If an appropriate certification is received, Trans Union may reinsert the item of information in the consumer's file and send notice to the consumer within five business days after the reinsertion. PenFed never requested the reinsertion of any information in Plaintiff's credit file and Trans Union never reinserted any item of information from PenFed in Plaintiff's credit file.

### i.   Plaintiff Cannot Establish a 1681i(a)(5)(B) Claim

Plaintiff incorrectly alleges that Trans Union violated § 1681i(a)(5)(B) of the FCRA because it:

> a) Failed to notify plaintiff that an account and information that was deleted was *reinserted*.
>
> b) Failed to have reasonable policies and procedures to prevent information that was deleted from being *re-inserted* on a consumer report.

ECF No. 291 at ¶ 115, l) - m) (emphasis added); Pltf's 2nd Supp. Interrogs No. 3; Pltf's Depo., 268: 21-24. While not clearly stated in his Complaint, Plaintiff is referring to his PenFed revolving line of credit account #...6770. Pltf's 2nd Supp. Interrogs No. 3.  Plaintiff's claims fail because 1) the information he is complaining about was not inaccurate or incomplete, 2) the information was not "reinserted" within the meaning of the FCRA, and 3) Plaintiff has not suffered any damages that were caused by Trans Union's alleged violation.

Section 1681i(a)(5)(B) provides:

**(B) Requirements relating to reinsertion of previously deleted material**

**(i) Certification of accuracy of information**

If any information is deleted from a consumer's file pursuant to subparagraph (A), the information may not be reinserted in the file by the consumer reporting agency unless the person who furnishes the information certifies that the information is complete and accurate.

**(ii) Notice to consumer**

If any information that has been deleted from a consumer's file pursuant to subparagraph (A) is reinserted in the file, the consumer reporting agency shall notify the consumer of the reinsertion in writing not later than 5 business days after the reinsertion or, if authorized by the consumer for that purpose, by any other means available to the agency.

In order to prevail on such a claim, a consumer must prove the following elements: 1) inaccurate or incomplete information was deleted from his credit file after being disputed by the consumer, 2) the inaccurate or incomplete information was reinserted in his credit file, 3) the CRA did not obtain certification from the data furnisher that the information is complete and accurate or the CRA failed to provide notice of the reinsertion to the consumer within five business days, 4) the consumer suffered damages, and 5) such damages were caused by the CRA's violation. *See* 15 U.S.C. §§ 1681i(a)(5)(B); 1681o.

## 1. The information was not inaccurate or incomplete

For the reasons set forth above in Section IV.F., it is clear that the information which Plaintiff claims was reinserted was not inaccurate or incomplete. Accordingly, his reinsertion claim fails, as a matter of law.

## 2. The information was not "reinserted" within the meaning of the FCRA

Plaintiff mistakenly believes that Trans Union's reporting of the Second Version constituted a "reinsertion" of previously deleted information. He is wrong. Reinsertion for the purpose of this section of the FCRA refers to the process by which a CRA makes the conscious decision to report information after receiving a certification from the data furnisher that the information is accurate and complete. That is not what occurred in this case. PenFed never

requested the reinsertion of any information in Plaintiff's credit file and Trans Union never reinserted any item of information from PenFed in Plaintiff's credit file. Wagner Dec. ¶ 21.

By contrast, as set forth in section IV.F. above, PenFed reported Plaintiff's revolving line of credit account #...6770 a second time in a manner which resulted in Trans Union's system's failure to recognize it as the same account. Wagner Dec, ¶ 20. Where the same account was reported twice by the data furnisher, with slightly different account details, a reinsertion claim cannot be asserted. *See Jordan v. Trans Union*, LLC, 2006 WL 1663324 (N.D. Ga. June 12, 2006) (finding no reinsertion where the data furnisher reported an account twice); *Okocha v. Trans Union LLC*, No. 08-CV-3107, 2011 WL 2837594, at *7–8 (E.D.N.Y. Mar. 31, 2011), aff'd, 488 F. App'x 535 (2d Cir. 2012) (finding no reinsertion when two data furnishers reported an account twice).

### 3. Plaintiff has not suffered any damages that were caused by Trans Union's alleged violation.

Plaintiff claims that he has been damaged in the following ways: 1) the "interest rate and amount to loan plaintiff" related to Plaintiff's Capital One credit card and 2) unidentified opportunities he missed through Credit Karma "to apply for other financial services from third parties." For the reasons set forth above in Section IV.C.iv., the damages claimed by Plaintiff are not recoverable.

### ii. Plaintiff Cannot Establish a 1681i(a)(5)(C) Claim

Plaintiff has asserted only a "reinsertion" claim under § 1681i(a)(5)(B) and not a "reappearance" claim under§ 1681i(a)(5)(C). ECF No. 291, ¶ 115, l) – m). The two are distinct claims. Compare, § 1681i(a)(5)(B) and § 1681i(a)(5)(C). The text of § 1681i(a)(5)(C) even calls out the difference – "other than information that is reinserted in accordance with subparagraph (B)(i)." Nonetheless, should the Court interpret Plaintiff's Complaint as asserting such a claim, it fails as well because 1) the information he is complaining about was not inaccurate or incomplete,

2) the information did not "reappear" within the meaning of the FCRA, 3) Trans Union did not fail to follow reasonable procedures, and 4) Plaintiff has not suffered any damages that were caused by Trans Union's alleged violation.

Section 1681i(a)(5)(C) provides:

**(C) Procedures to prevent reappearance**

A consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph (other than information that is reinserted in accordance with subparagraph (B)(i)).

In order to prevail on such a claim, a consumer must plead and prove the following elements: (1) inaccurate or incomplete information was deleted from his credit file after being disputed by the consumer, 2) the inaccurate or incomplete information reappeared in his credit file, (3) the reappearance was due to the CRA's failure to follow reasonable procedures; (4) he suffered damages; and (5) his damages were caused by the CRAs failure to follow reasonable procedures. *See* 15 U.S.C. §§ 1681i(a)(5)(C); 1681o; s*ee, e.g., Trans Union LLC v. Ramirez, 141 S. Ct. 2190, 2210 (2021); Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995).*

### 1. The information was not inaccurate or incomplete

For the reasons set forth above in Section IV.C.i., the information that Plaintiff claims reappeared was not inaccurate or incomplete. *See Jianqing Wu v. Trans Union*, No. CIVA AW-03-1290, 2006 WL 4729755, at *10 (D. Md. May 2, 2006), *aff'd sub nom. Jianqing Wu v. Equifax*, 219 F. App'x 320 (4th Cir. 2007) (the court concludes that because Plaintiff has not provided evidence, such as an affidavit or documents from that account, that the actual credit limit on his Fleet account was not $8,700 in June 2001, he has not met his burden of proving a violation of 15 U.S.C. § 1681i(a)(5)(c) for this account.) Accordingly, any reappearance claim fails, as a matter of law.

### 2. The information did not "reappear" within the meaning of the FCRA

Plaintiff mistakenly believes that Trans Union's reporting of the Second Version constituted a "reappearance" of previously deleted information. He is wrong. Reappearance for the purpose of this section of the FCRA refers to the re-reporting of information that the CRA knew or had reason to believe was the same information. That is not what occurred in this case.

> Because of the differences between the two Versions, Trans Union's system did not identify the Second Version as being the same account as the First Version. Trans Union does not expect a creditor to change the First Reported Date, First Delinquency, Closed Date, and Portfolio Type, on a closed, charged off account, and the First Version was closed by PenFed on September 30, 2017. PenFed continued to report the First Version to Trans Union (which successfully remained suppressed) and PenFed gave no indication to Trans Union that the two Versions were the same account. When this reporting came to Trans Union's attention, the Second Version was promptly deleted (and suppressed) from Plaintiff's file on February 3, 2023. Plaintiff never disputed the Second Version directly with Trans Union. Trans Union had no reason to doubt the accuracy, completeness, or reliability of the Second Version when it was reported to Trans Union.

Wagner Dec. ¶ 20.

Where the same account is reported twice by the data furnisher, with slightly different account details, a reappearance claim cannot be asserted. *See Jordan v. Trans Union*, LLC, 2006 WL 1663324,*6 (N.D. Ga. June 12, 2006) (finding no reappearance where the data furnisher reported the account twice); *see also*, *Okocha v. Trans Union LLC*, No. 08-CV-3107, 2011 WL 2837594, at *7–8 (E.D.N.Y. Mar. 31, 2011), aff'd, 488 F. App'x 535 (2d Cir. 2012) (finding no liability when two data furnishers reported the same account).

### 3. Trans Union did not fail to follow reasonable procedures

First, Plaintiff bears the burden of proving that Trans Union failed to follow reasonable procedures. Plaintiff has no such evidence. As noted regarding Plaintiff's § 1681e(b) claim, the FCRA does not require error free consumer reports, but instead requires that consumer reporting agencies, like Trans Union, to follow reasonable procedures to insure the maximum possible

accuracy of their reports – or here, maintain reasonable procedures designed to prevent the reappearance of previously deleted information. To defeat summary judgment on a reasonable procedures claim, a plaintiff must present some evidence the consumer reporting agency failed to follow reasonable procedures in preparing a credit report.  Merely demonstrating an inaccuracy, or the reappearance of deleted information, is insufficient to shift the burden to Trans Union to prove the reasonableness of its procedures.  *See Smith v. Auto Mashers, Inc.*, 85 F. Supp. 2d 638, 641 (W.D. Va. 2000).

Second, the affirmative evidence offered by Trans Union demonstrates that it had reasonable procedures in place, and but for the differences between the two versions of Plaintiff's revolving line of credit account #6770, the Second Version would not have been added to his file.

When an account is deleted from a consumer's file, it is also "suppressed" on Trans Union's computer system.  If a suppressed account is re-reported by a data furnisher, Trans Union's system is designed to recognize that and prevent the account from reappearing on the consumer's file. Trans Union's system reviews each transmission of data from a data furnisher before it is loaded to Trans Union's computer system to prevent suppressed accounts from reappearing on the consumer's file by comparing a combination of data points (e.g., subscriber number, account number, portfolio type, open date, etc.). Wagner Dec. at ¶ 18. These procedures have been found reasonable as a matter of law and the reporting of a second account does not support a finding that the CRA failed to maintain reasonable procedures. *See Jordan v. Trans Union*, LLC, 2006 WL 1663324,\*7 (N.D. Ga. June 12, 2006) (finding the reporting of a second account insufficient to support a finding that the CRA failed to maintain reasonable procedures); *see also*, *Okocha v. Trans Union* LLC, No. 08-CV-3107, 2011 WL 2837594, at \*7–8 (E.D.N.Y. Mar. 31, 2011), aff'd,

488 F. App'x 535 (2d Cir. 2012) (recognizing that differences in account details made it "extremely difficult" to identify a previously deleted account, "regardless of the set of procedures utilized").

> **4.  Plaintiff has not suffered any damages that were caused by Trans Union's alleged violation.**

Plaintiff claims that he has been damaged in the following ways: 1) the "interest rate and amount to loan plaintiff" related to Plaintiff's Capital One credit card and 2) unidentified opportunities he missed through Credit Karma "to apply for other financial services from third parties. Pltf's 2nd Supp. Interrogs No. 3.  For the reasons set forth above in Section IV.C.iv., the damages claimed by Plaintiff are not recoverable.

## G.  Plaintiff's Reinsertion Claims were Released in a Prior Settlement Agreement

Plaintiff previously sued Trans Union, alleging violations of the FCRA.  Case No.:2:21-cv-03603-BHH-MGB.    Plaintiff and Trans Union entered into a Settlement Agreement and Release Agreement on July 5, 2023 ("Settlement Agreement"), Ex. B-4.

In the Settlement Agreement, Plaintiff explicitly released all claims against Trans Union, except for those already presented in cases 2:22-cv-01292-BHH-MGB and 2:22-cv-02211-BHH-MGB this case.  The language of the agreement was clear that any claim not expressly preserved within those cases was waived and barred from future litigation.

The Agreement expressly excluded sub-claims from the settlement; to wit:

> "Excluded from the scope of this Agreement are the claims and causes of action relating to Trans Union's: 1) alleged reporting of Plaintiff's alleged private information without consent, 2) alleged selling of Plaintiff's consumer report without a permissible purpose and allegedly without consent 3) alleged preparation and issuance of consumer reports that included allegedly inaccurate, incomplete, untrue, incorrect, misleading and unverified information about Plaintiff, 4) alleged failure to conduct reasonable and lawful reinvestigations of Plaintiff's disputes and 5) alleged failure to provide specific procedures used to verify disputed accounts or public records when requested by Plaintiff, such claims having been previously asserted by Plaintiff in Cases 2:22-cv-01292-BHH-MGB and 2:22-cv-02211-BHH-MGB in the U.S. District Court for the District of South Carolina. Any other claims

and causes of action not yet asserted by Plaintiff in the aforementioned Cases are
covered by this Agreement."  (emphasis added).

Notably absent from the list of excluded claims is any reference to Plaintiff's
reinsertion/reappearance claim. Plaintiff was indisputably aware of his reinsertion claim on May
25, 2023, when he filed his Second Amended Complaint, adding reinsertion allegations against
unspecified "defendants."  ECF No. 98.  Despite his knowledge of the claim and his drafting of
the "exclusions," Plaintiff failed to explicitly preserve the reinsertion/reappearance claim in the
June 26, 2023, Settlement Agreement, barring the assertion of that claim in this case.  This failure
to exclude the claim from the release constitutes a waiver of this claim, as the Settlement
Agreement's plainly bars any claim not specifically excepted.  For these reasons, the Settlement
and Release Agreement bar Plaintiff's reinsertion/reappearance claim.

## H.  Plaintiff Cannot Prove That Trans Union Willfully Violated The FCRA

Because Trans Union did not negligently violate the FCRA, it could not have willfully
violated the FCRA. Willfulness under the FCRA encompasses both intentional and reckless
violations of the law.  *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 58-59 (2007).  To prove
willfulness, Plaintiff must show (1) Trans Union had a practice or policy that was objectively
unreasonable in light of the FCRA's statutory language; and (2) how Trans Union ran a risk of
violating the FCRA that was substantially greater than the risk associated with a reading that it
was merely careless.  *Id.*  Further, neither the failure to correct alleged errors after receiving
notification of an alleged inaccuracy in a consumer's file, nor the mere existence of inaccuracies
in a consumer's report alone, can amount to willful noncompliance with the FCRA.  *See Barrepski
v. Capital One Bank (U.S.A.) N.A.*, No. 11-30160-NMG, 2014 WL 9355983, at *12 (D. Mass. Jan.
24, 2014).

Plaintiff has no evidence to show either required element of his willfulness claim. He has no evidence that Trans Union had a practice or policy that was objectively unreasonable or that Trans Union ran a risk of violating the FCRA that was substantially greater than the risk associated with a reading that it was merely careless. Further, the affirmative evidence offered by Trans Union disproves those elements. The FCRA is not a strict liability statute and the fact that Trans Union had procedures in place, standing alone, defeats a willfulness claim.

Here, the facts and circumstances complained of by Plaintiff, i.e. accounts not reporting as sold, assigned, or transferred or an account re-reporting on his file, simply do not rise to the level of willfulness under the FCRA. Not only did Trans Union reinvestigate both of Plaintiff's disputes, Trans Union deleted the disputed PenFed accounts in 2019. Wagner Dec. at ¶ 16. Conducting an investigation by contacting the data furnisher through the ACDV process, standing alone, will defeat a willfulness claim. *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 947 (11th Cir. 2021).

When one of the accounts re-reported, that was only because the account details were changed in a way that Trans Union's system did not recognize it as the same account. The account was promptly removed when discovered by Trans Union. Wagner Dec. at ¶ 20. Accordingly, summary judgment should be granted for Trans Union as to Plaintiff's willfulness claims.

## I. Plaintiff's Common Law Defamation Claim Cannot Be Sustained

Plaintiff's Third Cause of Action asserts a claim for common law defamation/libel against Trans Union. ECF No. 291 ¶ 138-146. Plaintiff alleges that Trans Union's reporting was false because Trans Union: 1) "did not have a reasonable basis to believe that the Plaintiff was responsible for the account reported to Trans Union, and 2) "had substantial evidence by which to have verified that the Plaintiff's debt was sold, assigned and/or transferred therefore no longer do are owing to the person reporting the accounts." ECF No. 291 ¶ 142.

Under South Carolina law, a party asserting a claim of defamation must prove: (1) a false and defamatory statement was made; (2) the unprivileged publication of the statement to a third party; (3) the publisher was at fault; and (4) either the statement was actionable irrespective of harm or the publication of the statement caused special harm. *Williams v. Lancaster Cty. Sch. Dist.,* 369 S.C. 293, 302–03, 631 S.E.2d 286, 292 (Ct. App. 2006). Plaintiff cannot satisfy any of the elements of his defamation claim.

### i. Plaintiff's Defamation Claim is Preempted by the FCRA

As a threshold matter, Plaintiff's defamation claim is preempted by section 1681h(e) of the FCRA. *See* 15 U.S.C. § 1681h(e). Specifically, § 168lh(e), states "[n]o consumer may bring any action or proceeding in the nature of *defamation,* invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency ... except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 168lh(e) (emphasis added).

The United States Courts of Appeals for the Fourth Circuit has held that "Congress intended [1681h(e)]'s general bar on defamation . . . to be the quid pro quo for providing full disclosure under the FCRA." *Ross v. F.D.I.C.*, 625 F.3d 808, 814 (4th Cir. 2010) (citing *Thornton v. Equifax, Inc.*, 619 F.2d 700, 703 (8th Cir.1980)). The only exception to this bar is a narrow one, requiring proof of "malice or willful intent to injure [the] consumer." *Id.* (quoting 15 U.S.C. § 1681h(e)). The FCRA does not define "malice," and the federal courts are split on whether state or federal law governs the meaning of "malice" in § 1681(e). *Id.* at 815. The Fourth Circuit has used both South Carolina's definition of malice and the Supreme Court's definition of malice for the purpose of interpreting use in a federal statute. See *Beattie v. Nations Credit Fin. Servs. Corp.*, 69 F. App'x 585, 591 (4th Cir. 2003) (Court used the South Carolina definition of malice). But see

*Ross v. F.D.I.C.*, 625 F.3d 808, 814 (4th Cir. 2010) (citing *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1168 (9th Cir.2009); (Court utilized the Supreme Court's definition of malice, finding it to be appropriate when analyzing malice as used in a federal statute).

South Carolina defines "malice" as only established if "the defendant acted with ill will toward the plaintiff, or, acted recklessly or wantonly, meaning with conscious indifference toward the plaintiff's rights." *Beattie, 69 F.* App'x at 591 (4th Cir. 2003) (citing *Murray v. Holnam, Inc.*, 344 S.C. 129, 542 S.E.2d 743, 750 (2001)). The Supreme Court's standard of malice states that "malice" is only found when the statement in question was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 280-81 (1964). Under either definition, Plaintiff's defamation claim is foreclosed because Plaintiff cannot show that Trans Union acted with malice or willful intent to injure.

While Plaintiff's unsupported allegation of malice may have been sufficient to survive the initial pleading stages of this case, it is clear that after extended discovery, Plaintiff has no evidence that Trans Union acted with malice or willful intent in its reporting. On the other hand, the summary judgment evidence before the Court demonstrates that Trans Union followed reasonable procedures in preparing Plaintiff's credit reports and conducted reasonable reinvestigations of each of Plaintiff's disputes. At no time did anyone at Trans Union knowingly, intentionally or willfully violate any law or Plaintiff's rights or treat Plaintiff or his credit file with conscious or reckless disregard. Wagner Dec ¶ 22. No inaccurate or misleading information was ever placed or kept on Plaintiff's credit file by anyone at Trans Union who knew the information to be false or had doubts about its accuracy. *Id*.

Because Plaintiff cannot prove that Trans Union acted with malice or willful intent to injure when reporting his PenFed accounts, Plaintiff's defamation claim is preempted by § 1681h(e) of the FCRA.

### ii.   Trans Union's Reporting is Privileged under Qualified Immunity

Even if Plaintiff's defamation claim is not preempted by the FCRA, Trans Union is still entitled to qualified immunity under South Carolina law.  It is well-settled law that a defendant in a defamation action may assert the defense of conditional or qualified privilege. *Swinton Creek Nursery v. Edisto Farm Credit, ACA*, 334 S.C. 469, 484, 514 S.E.2d 126, 134 (1999). "Under this defense, one who publishes defamatory matter concerning another is not liable for the publication if (1) the matter is published upon an occasion that makes it conditionally privileged, and (2) the privilege is not abused." *Id*. The party asserting a qualified privilege must prove the following elements: (1) good faith, (2) an interest to be upheld, (3) a statement limited in its scope to this purpose, (4) a proper occasion, and (5) publication in a proper manner and to proper parties only. *Manley v. Manley*, 291 S.C. 325, 331, 353 S.E.2d 312, 315 (Ct. App. 1987). Other courts have held that credit reporting agencies were statutorily entitled to qualified immunity, absent proof that the agency furnished false information with malice or willful intent to injure.  See *Yeager v. TRW, Inc*., 984 F. Supp. 517 (E.D. Tex. 1997).  See also *Thornton v Equifax, Inc.* 619 F2d 700,  (8th Cir. 1980).

"Where the occasion gives rise to a qualified privilege, there is a prima facie presumption to rebut the inference of malice, and the burden is on the plaintiff to show actual malice or that the scope of the privilege has been exceeded." *Swinton Creek Nursery*, 334 S.C. at 484, 514 S.E.2d at 134. "To prove actual malice, the plaintiff must show that the defendant was activated by ill will in what he did, with the design to causelessly and wantonly injure the plaintiff; or that the

statements were published with such recklessness as to show a conscious disregard for [the] plaintiff[']s rights." *Id.* at 485, 514 S.E.2d at 134. If the plaintiff fails to present evidence of a genuine issue of fact as to actual malice and the qualified privilege is otherwise applicable, summary judgment may be granted. *See Wright v. Sparrow*, 298 S.C. 469, 474, 381 S.E.2d 503, 507 (Ct. App. 1989) (affirming the trial court's grant of summary judgment based on the qualified privilege applying to the alleged defamatory statements and the plaintiff failing to establish a genuine issue of material fact as to actual malice). *Harris v. Tietex Int'l Ltd.*, 417 S.C. 533, 540–41, 790 S.E.2d 411, 415–16 (Ct. App. 2016).

Plaintiff has no evidence to show that Trans Union furnished false information or acted with malice or willful intent to injure. Without evidence to the contrary, Plaintiff cannot rebut the presumption that Trans Union's reporting of his PenFed accounts is privileged and protected by qualified immunity. Therefore, Plaintiff's defamation claim fails, and Trans Union's Motion for Summary Judgment should be granted.

### iii.    Trans Union's Reporting was Not False and Defamatory

Plaintiff cannot show that Trans Union's reporting of his PenFed accounts was both false and defamatory. Plaintiff acknowledges that he had unpaid debts with PenFed. Pltf's Depo., 43: 21-24, 43: 1, 58: 17-23, 95: 17-20. Given that these facts are objectively true, under South Carolina law, such reporting by Trans Union cannot be considered defamatory. *See WeSav Financial Corp. v. Linge*felt, 316 S.C. 442,(S.C. 1994) (creditor's statements to local credit agencies regarding debtors' nonpayment of loan installments were true, and thus not defamatory.).

Even if the Court were to entertain Plaintiff's novel theories regarding the alleged inaccuracy or incompleteness of Trans Union's reporting, Plaintiff cannot prove that the reporting was defamatory. To be deemed defamatory, a statement must "tend to harm the reputation of

another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Fleming v. Rose*, 350 S.C. 488, 494, 567 S.E.2d 857, 860 (2002). Based solely on his own interpretation of the FCRA, Plaintiff contends that the reporting of his debts to PenFed were inaccurate or incomplete. However, Plaintiff has failed to produce any evidence that the community's perception of him would change if his credit report displayed these details in the way that he wishes. Pltf's Depo., 105: 4-14 . In fact, by his own admission, he has not discussed the matter with anyone else. Pltf's Depo., 112: 1-3. Without such evidence, Plaintiff cannot prove that Trans Union's reporting was defamatory.

The summary judgment evidence confirms that Trans Union's reporting of Plaintiff's PenFed accounts was objectively true. Moreover, Plaintiff has no evidence that Trans Union's reporting was defamatory. Therefore, because Plaintiff cannot prove that Trans Union's reporting was both false _and_ defamatory, his defamation claim fails, and Trans Union is entitled to summary judgment.

### iv.   Trans Union's Reporting was True or Substantially True, Providing a Complete Defense

Trans Union's reporting of Plaintiff's PenFed accounts was true or substantially true, and therefore, Trans Union's reporting is protected under South Carolina law. Courts in South Carolina recognize that the "truth or substantial truth" of an allegedly defamatory statement serves as a complete defense against a defamation claim. *See A Fisherman's Best, Inc. v. Recreational Fishing Alliance*, 310 F.3d 183 (4th Cir. 2002); *Parrish v. Allison*, 656 S.E.2d 382 (S.C. Ct. App. 2007).

Trans Union accurately reported that Plaintiff owed debts to PenFed. Pltf's Depo., 287: 15-20. Plaintiff cannot dispute the objective truth of this information, nor has he come forward with any evidence to the contrary. Consequently, Trans Union is entitled to summary judgment.

### v. Plaintiff Cannot Show That He Suffered Damages Caused by Trans Union

Plaintiff has not produced any evidence that he suffered recoverable damages or that such damages were caused by Trans Union's conduct. Accordingly, Trans Union is entitled to summary judgment on Plaintiff's defamation claim.

### J. Plaintiff's SCCPC Claims Fail as a Matter of Law

Plaintiff's Fourth Cause of Action asserts that Trans Union violated §§ 37-20-170 and 37-20-200[7] of the South Carolina Consumer Protection Code ("the SCCPC"). It is readily apparent that the cause of action is based on the same allegations underlying his FCRA claims. ECF No. 291 at ¶ 150. Plaintiff's claim fail because 1) it is barred by the statute of limitations, 2) the SCCPC is preempted by the FCRA, and 3) Plaintiff cannot show that Trans Union violated the SCCPC or that he suffered recoverable damages.

### i. Plaintiff's State Law SCCPC Claim is Time-Barred

Plaintiff's SCCPC claim is time-barred. Plaintiff's SCCPC claim is based on Trans Union's reinvestigation of his disputes, which occurred in 2018 in 2019. ECF No. 291 at ¶ 150, Wagner Dec. at ¶¶ 13, 16. Claims arising under the SCCPC are subject to a three-year statute of limitation. S.C. Code Ann. § 15-3-540(2). Because Plaintiff's initial complaint was filed on July 12, 2022, his SCCPC claim is plainly barred by the statute of limitation.

### ii. Plaintiff's SCCPC Claim Is Preempted by the FCRA

The SCCPC generally requires that a CRA reinvestigate information that a consumer identifies as inaccurate and send the results of the reinvestigation to the consumer within 30 days like the FCRA. SCCPC § 37-20-170. However, the Code goes further than the FCRA by requiring

---

[7] Any claim based on § 37-20-200 can be easily disposed of by the Court because that Section expressly states that "Damages provided in this section do not apply to section 37-20-170."

that the CRA "deny or admit the inaccuracy" and that the investigation results contain "the basis

for denial" and "sufficient evidence that the information is true and accurate."  SCCPC § 37-20-

170(A).  These additional requirements are inconsistent with the FCRA and are therefore

preempted under 15 U.S.C. § 1681t:

> Except as provided in subsections (b) and (c), this subchapter does not
> annul, alter, affect, or exempt any person subject to the provisions of this
> subchapter from complying with the laws of any State with respect to the
> collection, distribution, or use of any information on consumers, or for the
> prevention or mitigation of identity theft, except to the extent that those laws
> are inconsistent with any provision of this subchapter, and then only to the
> extent of the inconsistency. Except to the extent that those laws are
> inconsistent with any provision of this subchapter, and then only to the
> extent of the inconsistency.

15 U.S.C. § 1681t.

Congress is the ultimate touchstone in determining whether a state statute is preempted.

*Eller v. Trans Union LLC*, No. 09-cv-0040-WJM-KMT, 2012 WL 786283, at *3 (D. Colo. Mar.

9, 2012), *citing Retail Clerks Int'l Ass'n v. Schermerhorn*, 375 U.S. 96, 103 (1963).  "Congress

may indicate pre-emptive intent through a statute's express language or through its structure and

purpose." *Id*.  Although the SCCPC was drafted with the aim of standardizing and unifying

consumer reporting laws across jurisdictions, the requirement that the CRA "deny or admit the

inaccuracy"; and, that the investigation results contain "the basis for denial" and "sufficient

evidence that the information is true and accurate", are clearly inconsistent with the FCRA.

Requiring Trans Union to interpret and comply with the vague requirements of the SCCPC, would

be "an obstacle to the accomplishment and execution of the full purposes and objectives of

Congress" and should be preempted by the FCRA. *See Pearce v. Oral & Maxillofacial Assoc.*

*LLC*, No. CIV-10-0705-HE, 2011 WL 1325597, at *4 (W.D. Okla. Apr. 6, 2011) (inconsistent

state law claims are expressly preempted based on the language of the FCRA and because allowing

such claims would interfere with the balance designed by Congress and that their application

would be an obstacle to the accomplishment and execution of the full purposes and objectives of Congress).

Here, it is clear that the SCCPC is inconsistent with the requirements of the FCRA. It is for this reason that the SCCPC is preempted and summary judgment should be granted.

### iii. Plaintiff Cannot Show that Trans Union Violated the SCCPC

If the Court reaches the merits of Plaintiff's SCCPC claims, they fail as a matter of law. Plaintiff alleges that Trans Union violated § 37-20-170 because it failed to: 1) properly investigate the disputed accounts, 2) provide Plaintiff with the basis for the denial of his dispute, 3) provide a description of the procedure used to determine the accuracy, and 4) provide sufficient evidence that the information is true and accurate. ECF No. 291 ¶ 98. As demonstrated in Section IV.D.iii. above, Trans Union conducted reasonable reinvestigations and provided the reinvestigation results to Plaintiff in compliance with the FCRA. Those same steps satisfied any non-preempted sections of the SCCPC.

The SCCPC § 37-20-170 provides, in relevant part:

(A) If a consumer disputes the accuracy of an item in the consumer's records with a consumer reporting agency, the consumer may give notice in writing to the consumer reporting agency specifying in what manner the report is inaccurate and the consumer reporting agency shall reinvestigate the inaccuracy at no charge to the consumer, provide the consumer with sufficient evidence that the information is true and accurate information as it relates to that consumer, and record the current status of the disputed information. The consumer reporting agency shall provide forms for that notice and shall assist a consumer in preparing the notice when requested.

(B) Within thirty days after receiving a notice of inaccuracy, a consumer reporting agency shall deny or admit the inaccuracy to the consumer in writing. If the consumer reporting agency denies the inaccuracy, the consumer reporting agency shall include the following information with the written results of the reinvestigation:

(1) the basis for the denial;

(2) a copy of the consumer's file that is based on the consumer's file as revised as a result of the reinvestigation, including the business name and address of any furnisher of information who was contacted in connection with that information and, if reasonably available, the telephone number of the furnisher;

(3) a notice that, if requested by the consumer, the consumer reporting agency shall provide the consumer with a description of the procedure used by the consumer reporting agency to determine the accuracy and completeness of the information; and

(4) sufficient evidence that the information is true and accurate information as it relates to that consumer.

Plaintiff's claims under the SCCPC fail for several reasons. First, as set forth in Section II.B. above, Plaintiff cannot prove the reporting of allegedly inaccurate information on his Trans Union credit file after July 2019.

Second, Plaintiff did not notify Trans Union, in writing, of the specific inaccuracies *he now* alleges in his Complaint. The plain language of the SCCPC requires the consumer to "[specify] in what manner the report is inaccurate" and, to tell the CRA why he thinks the item of information is inaccurate. *See* § 37-20-170. In his Complaint, Plaintiff now alleges that the PenFed accounts were inaccurate and misleading because "they are required to report the accounts as sold, transferred, charged-off with a zero balance and zero amount past due to be accurate, complete, true, correct, and not misleading." ECF No. 291 ¶ 77. Thus, Plaintiff's multiple disputes with Trans Union cannot serve as the requisite notice to support any claim under the SCCPC because he admits that he did not specifically notify Trans Union as to what was allegedly inaccurate about the reporting of his PenFed accounts. Pltf's Depo., 269: 13-24. (emphasis added).

Third, despite the demonstrated reasonableness of Trans Union's reinvestigation of his disputes as shown in Section IV.D.iii. above, Plaintiff claims that Trans Union "failed to promptly investigate the truthfulness and accuracy" of the disputed accounts. ECF No. 291 ¶ 150. However,

it is not subject to dispute that Trans Union's reinvestigations were completed in compliance with the timeline set forth in both the FCRA and the SCCPC.

Fourth, Plaintiff's other claim under the SCCPC hinges on his opinion that Trans Union did not: 1) provide Plaintiff with the basis for the denial of his dispute, 2) provide a description of the procedure used to determine the accuracy, and 3) provide sufficient evidence that the information is true and accurate. ECF No. 291 ¶ 150. Although the phrases "basis for the denial" and "sufficient evidence" were not defined by the legislature, the undisputed evidence shows that in response to each dispute, Trans Union sent Plaintiff reinvestigation results that set forth a basis for the results of Trans Union's reinvestigation, a description of the procedures used, and the evidence available to Trans Union that the information is true and correct. Wagner Dec., ¶¶ 13, 16. For example, each reinvestigation result contained the outcome of the reinvestigation ("basis for the denial"), a description of the reinvestigation procedures[8] used, and the information obtained from the consumer and a data furnisher in the reinvestigation ("sufficient evidence"). *Id*.

Courts have found the content, format and delivery of such reinvestigation results to be sufficient as the final component of a reasonable investigation under the FCRA. *See Anderson v. TransUnion, LLC*, 367 F. Supp. 2d 1225, 1236 (W.D. WI 2005) (holding §1681(a)(6) does not require a CRA to provide notice of specific responses [from furnishers] but only the results of the

---

[8] If we were able to make changes to your credit report based on information you provided, we made those changes. Otherwise, we asked the company reporting the information you disputed to do the following:
1. Review relevant information we sent them, including any documents you gave us as part of your dispute
2. Investigate your dispute and verify whether the information they report is accurate
3. Provide us a response to your dispute and update any other information 4. Update their records and systems, if necessary. Exs. A-5, A-10.

reinvestigation.) Accordingly, even though the SCCPC is preempted, Trans Union nonetheless complied.

### iv. Plaintiff Cannot Prove that Trans Union Acted Willfully or Negligently

In the unlikely event the Court concludes that Trans Union failed to comply with any non-preempted aspect of the SCCPC, Plaintiff's claim still fails because he cannot show that Trans Union acted willfully or negligently in its reinvestigation of Plaintiff's disputes and the preparation and delivery of the reinvestigation results.

Section 37-20-170 explicitly states that it is not intended, and must not be construed, to impose liability on a person who acts reasonably and who does not act willfully or negligently. Plaintiff's mere conclusory assertions are not enough to survive summary judgment. Plaintiff has no evidence of what industry standards are or that Trans Union acted willfully or negligently. And Trans Union's affirmative evidence of its policies and procedures and reinvestigations disprove any such assertion.

## V.     CONCLUSION

For the foregoing reasons, Trans Union respectfully requests this Court grant its Motion for Summary Judgment and, thereby, dismiss, in their entirety, all of Plaintiff's claims asserted against Trans Union.

**< SIGNATURE BLOCK IS ON NEXT PAGE >**

7932882.19

Respectfully Submitted,


s/ *Wilbur E. Johnson*
_____

Wilbur E. Johnson
wjohnson@ycrlaw.com
Federal ID No.: 2212
Clement Rivers, LLP
25 Calhoun Street, Suite 400
Charleston, SC 29401
(843) 724-6659
(843) 579-1332 Fax
***Counsel for Trans Union LLC***

Date: April 11, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of April 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which then sent a notification of such filing (NEF) to counsel of record registered to use the CM/ECF system in this action, as follows:

G. Troy Thames
tthames@wjlaw.net
Willson Jones Carter and Baxley
421 Wando Park Boulevard, Suite 100
Mt Pleasant, SC 29464
(843) 284-0832
  *and*
Michael A. Graziano
mgraziano@eckertseamans.com
Sarah A. James
sjames@eckertseamans.com
Eckert Seamans Cherin & Mellott LLC
1717 Pennsylvania Avenue NW, Suite 1200
Washington, DC 20006
(202) 659-6671
***Counsel for Pentagon Federal Credit Union a/k/a Pentagon Federal Credit Union Foundation***


Rita Bolt Barker
rbarker@wyche.com
Wyche PA
200 E. Broad Street, Suite 400
Greenville, SC 29601-2892
(864) 242-8235
  *and*
Eric F. Barton
ebarton@seyfarth.com
Seyfarth Shaw LLP
1075 Peachtree Street NE, Suite 2500
Atlanta, GA 30309
(404) 885-1500
***Counsel for Equifax Information Services, LLC***

Lyndey Ritz Zwing Bryant
lyndey.bryant@arlaw.com
Grant Edward Schnell
gschnell@jonesday.com
Adams & Reese LLP
1221 Main Street, Suite 1200
Columbia, SC 29201
(803) 212-4958
***Counsel for Experian Information Solutions, Inc.***


William Joseph Farley, III
will.farley@troutman.com
Troutman Sanders LLP
301 S Tryon Street, Suite 3400
Charlotte, NC 28202
(704) 998-4099
  *and*
Derek Michael Schwahn
derek.schwahn@troutman.com
Troutman Pepper Hamilton Sanders LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308
(404) 885-3124
  *and*
Celeste Tiller Jones
ctjones@burr.com
Burr & Forman
1221 Main Street, Suite 1800
Columbia, SC 29201
(803) 799-9800
***Counsel for LexisNexis Risk Solutions, Inc., and LexisNexis Risk Data Management Inc.***

I further certify that I forwarded a copy of the foregoing by U.S. First Class Mail to the

following non-CM/ECF participants:

Nelson L. Bruce
PO BOX 3345
Summerville, SC 29484-3345
***Pro Se Plaintiff***

s/ *Wilbur E. Johnson*

**WILBUR E. JOHNSON**