**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| NELSON L. BRUCE,<br><br>               Plaintiff,<br><br>    v.<br><br>PENTAGON FEDERAL CREDIT UNION,<br>A/K/A. PENFED; EXPERIAN<br>INFORMATION SOLUTIONS, INC.;<br>TRANS UNION, LLC; EQUIFAX<br>INFORMATION SERVICES, LLC;<br>LEXISNEXIS RISK SOLUTIONS, INC.,<br>LEXISNEXIS RISK SOLUTIONS FL INC.;<br>LEXISNEXIS RISK DATA<br>MANAGEMENT INC.; ALL UNKNOWN;<br>and DOE'S 1-100,<br><br>               Defendants. | Case No. 2:22-cv-02211-BHH-MG |

**EXPERIAN INFORMATION SOLUTIONS, INC.'S**
**MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................ 7

II.     FACTUAL BACKGROUND ...................................................................... 9

    A.    Plaintiff's General Allegations and Claims Against Experian ............... 9

    B.    Experian's Business as a Consumer Reporting Agency ..................................... 11

    C.    Experian's Policies and Procedures for Maintaining Maximum Possible Accuracy .................................................................................................. 12

    D.    Experian's Policies and Procedures for Handling Consumer Disputes ............... 12

    E.    Plaintiff's Relevant Disputes to Experian ............................................. 14

III.    LEGAL STANDARDS ............................................................................. 16

IV.     ARGUMENT AND CITATION OF AUTHORITY .................................. 18

    A.    Plaintiff's FCRA Claims Fail Because There is No Competent Evidence Experian's Reporting Was Inaccurate ................................... 18

        1.    Plaintiff's "Assignment" Inaccuracy Theory Fails Factually and Legally. ................................................................................ 20

        2.    Plaintiff's Inaccuracy Theory Regarding Charge-Offs Has No Legal Basis. .................................................................................. 22

        3.    Plaintiff's Inaccuracy Theory That the Federal Reserve Paid His Loans is Frivolous. ......................................................... 23

    B.    Plaintiff's Count I Fails Because Plaintiff Cannot Rebut That Experian's Procedures or Reinvestigations Were Reasonable. .............................. 24

        1.    Plaintiff Has No Evidence that Experian's Procedures Are Unreasonable. .............................................................................. 24

        2.    Plaintiff Has No Evidence that Experian's Reinvestigations Were Unreasonable. ...................................................................... 26

    C.    Plaintiff's Count II Claim Fails Because Experian is Not a Furnisher of Information ............................................................................................ 27

    D.    Plaintiff's FCRA Claims Also Fail Because He Cannot Prove Publication or Damages ............................................................................................ 28

    E.    Plaintiff's State Law Claims Fail As a Matter of Law. ........................ 30

        1.    Plaintiff's Defamation Claim Fails on the Merits and, In Any Event, is Preempted by the FCRA. ............................................... 30

        2.    Plaintiff's Statutory State Claims Fail for the Same Reasons as His FCRA Claims. ..................................................................... 31

V.      CONCLUSION ......................................................................................... 31

## <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Aldaco v. RentGrow, Inc.*,
    921 F.3d 685 (7th Cir. 2019) ...............................................................................15

*In re Anderson*,
    884 F.3d 382 (2d Cir. 2018)................................................................................16

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)......................10, 11, 13, 16

*Angel Med. Ctr., Inc. v. Abernathy*,
    1 F. App'x 217 (4th Cir. 2001) ...........................................................................13

*Arriaga v. Logix*,
    No. 18-cv-9128, 2021 WL 4459759 (C.D. Cal. May 21, 2021)............................14

*Artemov v. TransUnion, LLC*,
    No, 20-cv-1892 (BMC), 2020 WL 5211068 (E.D.N.Y. Sept. 1, 2020)............................16, 17

*Baird v. Ammiyhuwd*,
    No. 1:16-cv-1152, 2017 WL 430772 (S.D. Ohio Jan. 31, 2017)...........................17

*Beale v. Hardy*,
    769 F.2d 213 (4th Cir. 1985) ..............................................................................11

*Beattie v. Nations Credit Fin. Servs. Corp.*,
    69 Fed. App'x. 585 (4th Cir. 2003) ....................................................................24

*Bendeck v. U.S. Bank Nat'l Ass'n*,
    No. 17-00180, 2017 WL 2726692 (D. Haw. June 23, 2017)...............................18

*Benz-Puente v. Transunion LLC*,
    No. 24-cv-2835, 2024 WL 3276411 (E.D. Pa. July 2, 2024) ...............................22

*Bettcher v. Experian Info. Sols., Inc.*,
    No. 20-CV-0319, 2021 WL 4290907 (D. Minn. Sept. 21, 2021)..........................22

*Brown v. Experian Credit Reporting*,
    No. JKB-12-2048, 2012 WL 6615005 (D. Md. Dec. 17, 2012) ...........................12

*Burke v. Experian Info. Sols.*,
   No. 1:10-CV-1064, 2011 WL 1085874 (E.D. Va. Mar. 18, 2011).........................................19

*Burns v. Bank of Am.*,
   655 F. Supp. 2d 240 (S.D.N.Y. 2008).......................................................................................23

*Butnick v. Experian Info. Sols., Inc.*,
   No. 20-1631, 2021 WL 395808 (E.D.N.Y. Feb. 4, 2021) ........................................................17

*Cahlin v. Gen. Motors Acceptance Corp.*,
   936 F.2d 1151 (11th Cir. 1991) ...............................................................................................23

*Caltabiano v. BSB Bank & Trust Co.*,
   387 F. Supp. 2d 135 (E.D.N.Y. 2005) ......................................................................................23

*Casella v. Equifax Credit Info. Servs.*,
   56 F.3d 469 (2d Cir. 1995)........................................................................................................23

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)..........................................................11

*Chaitoff v. Experian Info. Sols., Inc.*,
   79 F.4th 800 (7th Cir. 2023) .....................................................................................................22

*Chiang v. Verizon New England Inc.*,
   No. CIV.A.06-CV-12144DPW, 2009 WL 102707 (D. Mass. Jan. 13, 2009),
   *aff'd* 595 F.3d 26 (1st Cir. 2010) ............................................................................................23

*Christian v. Equifax Info. Servs., LLC*,
   No. 18-cv-13682, 2020 WL 2087869 (E.D. Mich. Apr. 30, 2020) ..........................................16

*Crabill v. Trans Union, L.L.C.*,
   259 F.3d 662 (7th Cir. 2001) ....................................................................................................23

*Dalton v. Cap. Associated Indus., Inc.*,
   257 F.3d 409 (4th Cir. 2001) ...............................................................................................12, 14

*Demmler v. Bank One NA*,
   No. 2:05-cv-322, 2006 WL 640499 (S.D. Ohio Mar. 9, 2006) ................................................17

*DiMezza v. First USA Bank, Inc.*,
   103 F. Supp. 2d 1296 (D.N.M. 2000) .......................................................................................21

*Eastridge v. Fifth Third Bank*,
     No. SAG-19-1516, 2021 WL 1530175 (D. Md. Apr. 19, 2021) ..............................................11

*Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*,
     53 F.3d 55 (4th Cir. 1995) ....................................................................................................11

*Gadson v. Experian Info. Sols., Inc.*,
     No. 23-cv-00029, 2024 WL 3745476 (D.S.C. Jul. 18, 2024)............................................12, 19

*Gannon v. IC Sys., Inc.*,
     No. 09-60302-CIV, 2009 WL 3199190 (S.D. Fla. Sept. 25, 2009)........................................19

*Gregg v. Am. Coll. Of Med. Genetics & Genomics*,
     No. 22-cv-01218, 2023 WL 2047504 (D.S.C. Feb. 16, 2023)................................................24

*Henson v. CSC Credit Servs.*,
     29 F.3d 280 (7th Cir. 1994) .............................................................................................19, 20

*Herisko v. Bank of America*,
     367 F. App'x 793 (9th Cir. 2010) ..........................................................................................15

*Jianqing Wu v. Trans Union*,
     No. CIVA AW-03-1290, 2006 WL 4729755 (D. Md. May 2, 2006), *aff'd sub*
     *nom. Jianqing Wu v. Equifax*, 219 F. App'x 320 (4th Cir. 2007)...............................12, 18, 19

*Johnson v. Experian Info. Sols., Inc.*,
     Civ. No. PWG-15-558, 2015 WL 7769502 (D. Md. Nov. 17, 2015), *aff'd* 670
     F. App'x 778 (4th Cir. 2016) ................................................................................................12

*Kohen v. Equifax Inf. Servs., LLC*,
     No. 21-CIV-61952-RAR, 2022 WL 507603 (S.D. Fla. Feb. 18, 2022) .................................16

*Konter v. CSC Credit Servs., Inc.*,
     606 F. Supp. 2d 960 (W.D. Wis. 2009) .................................................................................23

*Lasher v. Day & Zimmerman Int'l, Inc.*,
     516 F. Supp. 2d 565 (D.S.C. 2007).......................................................................................23

*Losch v. Nationstar Mortg. LLC*,
     No. 22-12421, 2024 WL 1282459 (11th Cir. Mar. 26, 2024)................................................18

*Makela v. Experian Info. Sols., Inc.*,
     No. 6:21-cv-00386, 2021 WL 5149699 (D. Or. Nov. 4, 2021) ..............................................16

*Martinez v. Wells Fargo Bank*,
No. 12-cv-802, 2014 WL 12026058 (S.D. Cal. Sept. 11, 2014)...............................................17

*Marvin v. Capital One*,
No. 1:15-cv-1310, 2016 WL 4548382 (W.D. Mich. Aug. 16, 2016 ) .....................................17

*McDaniel v. Hunter Warfield, Inc.*,
No. 5:23-CV-752-D, 2024 WL 1812135 (E.D.N.C. Apr. 25, 2024) ......................................21

*Nat'l Enterprises, Inc. v. Barnes*,
201 F.3d 331 (4th Cir. 2000) ................................................................................................13

*Pulliam Inv. Co. v. Cameo Props.*,
810 F.2d 1282 (4th Cir. 1987) ..............................................................................................11

*Rambarran v. Bank of Am., N.A.*,
609 F. Supp. 2d 1253 (S.D. Fla. 2009) .................................................................................23

*Ransom v. Equifax Inc.*,
No. 09-80280-CIV, 2010 WL 1258084 (S.D. Fla. Mar. 30, 2010) .........................................23

*Symeonidis v. Paxton Cap. Grp., Inc.*,
220 F. Supp. 2d 478 (D. Md. 2002)......................................................................................12

*Teamsters Joint Council No. 83 v. Centra, Inc.*,
947 F.2d 115 (4th Cir. 1991) ................................................................................................11

*West v. TransUnion LLC*,
No. 2:23-cv-04051-JDW, 2024 WL 2925959 (E.D. Pa. June 10, 2024) ................................22

*Westbrook v. Equifax Info. Servs. LLC*,
No. 23-cv-477, 2025 WL 399940 (M.D. Fla. Feb. 5, 2025)...................................................19

*White v. Trans Union*,
No. 24-cv-324, 2025 WL 409660 (E.D. Va. Feb. 5, 2025) ....................................................25

*Young v. Equifax Credit Info. Servs., Inc.*,
294 F.3d 631 (5th Cir. 2002) ................................................................................................21

**STATUTES**

15 U.S.C.

§ 1681e ...................................................................................................5, 12, 18, 19

§ 1681i ...........................................................................................................5, 12, 20

§ 1681i(a)(1), (iii) ....................................................................................................5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56 .............................................................................................1, 10, 11

Defendant Experian Information Solutions, Inc. ("Experian"), pursuant Federal Rule of Civil Procedure 56, files this Memorandum of Law in Support of its Motion for Summary Judgment, and respectfully requests the Court issue an Order granting summary judgment in favor of Experian on all claims asserted by Plaintiff Nelson L. Bruce because there are no issues of material fact remaining for trial.

## I.     <u>INTRODUCTION</u>

This lawsuit arises out of disputes made by Plaintiff Nelson L. Bruce ("Plaintiff"), proceeding *pro se*, to Experian in 2021 and 2022 concerning debts that Plaintiff undisputedly failed to pay.  The reason Plaintiff did not pay on these and other credit accounts in his name is as audacious as it is frivolous.  He contends that all of his underlying loans are secured by payments from the Federal Reserve, which are somehow made by the Federal Reserve to the creditor who has been left holding the bag by Plaintiff when that creditor charges off the uncollectible debt on its books.  In Plaintiff's economy, there is no reason at all to ever pay back a debt: the Federal Reserve covers your default and all related expenses owed to the lender of the credit, the consumer keeps whatever asset is secured by the loan, the debt no longer exists, and the defaulted tradeline does not appear on a credit report so that the consumer can start the process over with his next victim, er, creditor.  Plaintiff's claims against Experian fail for the following reasons:

*First*, Plaintiff's claims under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* (the "FCRA") all fail because he cannot show with competent evidence that any Experian credit report contained inaccurate information.  Experian's reporting of each of the disputed tradelines reflected data that was verified by Plaintiff's creditors.  His theory that the debts were "assigned" to other entities fails because there is no evidence of assignment.  His theory that an account cannot report as charged off with no balance is unsupported by the law.  And, his theory that the Federal Reserve paid his debts is frivolous.

- 7 -

*Second*, Plaintiff has no evidence supporting his claim that Experian's procedures to assure maximum possible accuracy or that Experian's reinvestigations into his disputes were unreasonable under Sections 1681e(b) or 1681i of the FCRA. Plaintiff intentionally chose to not take the deposition of an Experian representative during discovery, and he is therefore now unable to rebut any of the sworn testimony provided by Experian with this motion regarding Experian's procedures and reinvestigations, which is fatal to his case. Thus, the unrefuted evidence shows that Experian properly processed, handled, and reinvestigated each of Plaintiff's disputes.

*Third*, Plaintiff has not presented any evidence that Experian is a "furnisher" of information, which is required to sustain his claim under FCRA Section 168ls-2(b). Indeed, the only record evidence is that Experian is a "consumer reporting agency" as defined by the FCRA. A wealth of federal case law supports this uncontroversial fact.

*Fourth*, Plaintiff's FCRA claims also fail because he cannot prove publication or damages. There is no record evidence demonstrating that any document which any creditor may or may not have looked at in considering to lend credit to Plaintiff (i) was an Experian credit disclosure, or (ii) even referenced the reporting of the accounts Plaintiff complains of. To the extent Plaintiff intends to rely on some adverse action letter or alleged credit denial from a third-party, he has no evidence. Plaintiff never deposed any such entity in discovery and therefore his argument concerning what actions that entity took and why are nothing more than speculation piled on top of unauthenticated hearsay.

*Fifth*, Plaintiff's South Carolina state law claims fail as a matter of law. Not only does Plaintiff have no evidence to show an inaccurate statement was published by Experian to support any defamation claim, that claim is specifically preempted by the FCRA in any event. Plaintiff's state law statutory claim fails as a matter of law for the same reasons his Section 1681i claim fails.

Experian respectfully requests the Court grant its Motion for Summary Judgment and enter judgment in favor of Experian and against Plaintiff Nelson L. Bruce on all claims.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff's General Allegations and Claims Against Experian

In his operative Fourth Amended Complaint (the "FAC"), (ECF No. 291), Plaintiff alleges that Experian reported "false, inaccurate, incomplete, untrue, incorrect and misleading" information on Plaintiff's Experian credit reports relating to a Pentagon Federal Credit Union ("PenFed") and a REV Federal Credit Union ("REV FCU").  (FAC, ¶ 45). Plaintiff alleges that he disputed PenFed's and REV FCU's reporting to Experian in or around September 2021, June 2022, and September 2022.  (*Id.*, ¶¶ 51, 54, 67).  While Plaintiff made vague allegations that Plaintiff identified in his disputes to Experian "multiple inaccuracies and in consistencies, account balance, account status, High Credit, Credit Limit, Payment Status, Last Report Date, Comments such as the consumer requested the line of credit be closed when he didn't, Date Last Active, Date of Last Payment, Past Due Amount, Account Type, Date Opened and Monthly Terms," (*id.*, ¶ 92), there has been no evidence produced by Plaintiff supporting those claims.

During this timeframe, Plaintiff maintained three accounts with PenFed.  (*See* Deposition of Plaintiff (a true and accurate copy of which is attached hereto as **"Exhibit A"**), 22:11–14, 33:16–18, 41:12–14).  Plaintiff admitted at his deposition that he stopped making payments on each of his PenFed accounts altogether due to his farfetched theory that the Federal Reserve would step in and somehow compensate PenFed for Plaintiff's failure to abide by his obligations to the credit union.  (*Id.*, 214:7–12, 215:12–22).  PenFed's records produced in this case reflect that Plaintiff stopped making payments on these accounts in 2016 and 2017.  *See* (Composite Exhibit of PenFed Account Statements for Plaintiff) (a true and accurate copy of which is attached hereto as **"Exhibit B"**) (showing Plaintiff stopped making payments on his PenFed auto loan in

- 9 -

September 2016, line of credit in December 2016, and credit card in January 2019).

Likely realizing the frivolity of his theory that the Federal Reserve guaranteed his personal loans, Plaintiff shifted his case during the course of this litigation to instead argue that Experian's reporting is inaccurate because PenFed sold one or all of Plaintiff's accounts. (FAC, ¶ 76). But Plaintiff has no evidence to support this theory either. And, in fact, the affirmative evidence gathered in discovery shows this is conclusively untrue. PenFed's corporate representative stated under oath that PenFed has never sold, assigned, or transferred its ownership rights with respect to any of Plaintiff's PenFed accounts. (*See* Second Declaration of Craig Olson ("Olson Decl."), ¶¶ 1–9) (filed on the Court's docket as ECF No. 345-1 and re-attached hereto as "**Exhibit C**")). At all times relevant to this lawsuit, PenFed has retained sole legal ownership over Plaintiff's accounts. (*Id.*, ¶ 10). While Plaintiff repeatedly points to a letter from PenFed in April 2022, which he believes shows one or more of his PenFed accounts was sold to United Holdings Group ("UHG"), that never occurred because PenFed never completed the sale. (*Id.*, ¶¶ 12–13). UHG confirmed, in a response to a subpoena served in this litigation, that it did not acquire Plaintiff's account. (*Id.*, ¶¶ 15–16.)

Plaintiff also believes that the same letter from PenFed shows that it "assigned" the line of credit account to Nationwide Credit Corporation ("NCC"). But NCC is a debt collection agency that recovers past due accounts for others, and the line of credit account was "assigned" to NCC so that NCC could collect the past due debt on behalf of PenFed because Plaintiff failed to make payments. (*Id.*, ¶¶ 17–19.) The April 11, 2022 letter from PenFed to Plaintiff informed Plaintiff that the auto loan account was "still owned and serviced by PenFed" and urged Plaintiff to contact PenFed. (*Id.*, Ex. 1).

Unsurprisingly, PenFed has never been compensated by the Federal Reserve in connection

with Plaintiff's failure to pay his debts. (*Id.*, ¶ 34). Nor has PenFed ever created or otherwise opened accounts with the Federal Reserve in Plaintiff's name. (*Id.*, ¶ 35).

In his FAC, Plaintiff alleges that Experian (i) negligently and willfully violated the FCRA by failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's consumer file pursuant to 15 U.S.C. § 1681e(b) and by failing to conduct reasonable reinvestigations of Plaintiff's disputes pursuant to 15 U.S.C. § 1681i ("Count I"), (ii) negligently and willfully violated "15 U.S.C. § 168ls-2(b) by failing to fully and properly investigate" Plaintiff's disputes ("Count II"), (iii) defamed Plaintiff in violation of South Carolina state law ("Count III"), and (iv) violated the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-20 ("Count IV").

## B.     Experian's Business as a Consumer Reporting Agency

Experian is a "consumer reporting agency" as defined by the FCRA. (*See* Declaration of Christina Hamilton ("Experian Decl."), ¶¶ 1–7) (a true and accurate copy of which is attached hereto as **"Exhibit D"**). Experian is not a "furnisher of information," nor is it a "reseller" of information as those terms are defined and used in the FCRA. (*Id.*, ¶ 8). Experian does not originate or create any credit information. (*Id.*, ¶ 9). Rather, Experian stores data supplied by credit grantors and public record vendors, also called "furnishers." (*Id.*). Furnishers report "tradelines" to Experian, which generally consist of data relating to individual credit accounts such as account number, status, and balance. (*Id.*). This data also includes certain identifying information that is used to match particular accounts to the appropriate consumer. (*Id.*). Experian only provides a consumer's credit information upon request to the consumer or to subscribers authorized by law to receive it, like a credit grantor for the purpose of evaluating the consumer's credit. (*Id.*, ¶ 10).

## C.     Experian's Policies and Procedures for Maintaining Maximum Possible Accuracy

Experian has expended, and continues to expend, significant time and resources to research and develop reasonable procedures to assure maximum possible accuracy in all aspects of its consumer credit reporting business.  (*Id.*, ¶ 11). Experian has implemented procedures to govern its entire process of handling consumer credit information. (*Id.*). To begin with, Experian only accepts credit information from furnishers that have been vetted through Experian's stringent membership process. (*Id.*, ¶ 12). Experian utilizes procedures designed to verify the reliability of the furnishers, including on-site inspections, audits of furnishers' credit data, and a requirement that furnishers certify they will comply with the FCRA and Experian's policies and provide only accurate information.  (*Id.*).  Incoming credit data is also subject to rigorous manual and automated quality control and statutory compliance procedures.  (*Id.*, ¶ 13).  For example, incoming data is analyzed for unusual trends and aberrations that might suggest reporting errors and data supplied by individual furnishers is periodically audited to ensure that the data complies with Experian's policies and the FCRA.  (*Id.*).  Experian also employs other safeguards, including continually reviewing and refining its computer systems to assure data accuracy.  (*Id.*).

Data furnishers routinely update the data they report to Experian through a normal monthly reporting process.  (*Id.*, ¶ 14).  Data furnishers may also request Experian to update their reporting outside of that normal process.  To do so, data furnishers may submit Automated Universal Data Forms ("AUDs") to Experian.  (*Id.*).  Submission of an AUD constitutes a request for Experian to change reporting on the relevant tradeline(s) as identified in the AUD.  (*Id.*).

## D.     Experian's Policies and Procedures for Handling Consumer Disputes

Experian has developed reinvestigation procedures not just to satisfy the requirements under the FCRA, but also to provide consumers with easy access to user friendly tools for their credit reporting needs.  (*Id.*, ¶ 15).  Experian provides consumers with easy and secure access to

their credit information and multiple means to dispute items in their credit files.  (*Id.*, ¶ 16).

Consumers can initiate a dispute free of charge by telephone, by mail, by visiting Experian's secure

website, or through the Consumer Financial Protection Bureau.  (*Id.*).

Upon receiving notice of a dispute from a consumer, Experian initiates its "reinvestigation"

process.  (*Id.*, ¶ 17).  As part of that process, Experian reviews all relevant information provided

by the consumer and uses it, if possible, to verify the identity of the consumer, to identify the

item(s) being disputed, and to determine the nature of any alleged inaccuracies.  (*Id.*).  When

Experian receives a bona fide dispute from a consumer regarding a possible inaccuracy in that

consumer's credit file, Experian generally proceeds by contacting the furnisher who was the source

of the disputed information, describing the nature of the dispute, and requesting a response from

the furnisher.  (*Id.*, ¶ 18).  This is normally done by Experian electronically sending an Automated

Consumer Dispute Verification ("ACDV") to the furnisher.  (*Id.*).  An ACDV identifies the

consumer and account involved, describes the basis for the dispute, and requests that the furnisher

respond by verifying or modifying the credit information as appropriate.  (*Id.*, ¶ 19).  The furnisher

then returns the ACDV to Experian, and based upon the furnisher's own investigation, requests

that Experian either leave the disputed credit information as is, delete it, or change it in some

specified manner.  (*Id.*).

Experian does not issue a judgment regarding the validity of the consumer's dispute, nor

does Experian deny or render a "denial" of a consumer's dispute letter.  (*Id.*).  Experian acts in

accordance with the furnisher's response and its own internal procedures, and Experian then sends

the consumer a summary reflecting the results of the reinvestigation.  (*Id.*, ¶ 20).  The summary

contains a statement describing the options available should the consumer disagree with the results

of the reinvestigation.  (*Id.*).  Those options include contacting the furnisher of the disputed

- 13 -

information directly and adding a statement to the consumer's credit file disputing the accuracy or completeness of the account at issue. (*Id.*).

Experian does not have access to furnishers' records. (*Id.*, ¶ 21). When an ACDV either (1) is not timely returned, (2) does not verify the reported information, or (3) contains information that Experian determines renders the response unreliable, the disputed information is removed from the consumer's credit file or updated as requested by the consumer. (*Id.*). Experian is unable to determine the reasons a consumer disagrees with information that Experian is reporting unless the consumer specifically identifies the credit information being disputed and explains why he or she is disputing that information. (*Id.*, ¶ 22). These policies and procedures maintained and utilized by Experian to assure maximum possible accuracy of the information it reports and to conduct reinvestigations of consumer disputes are consistent with the requirements as written in the FCRA and are reasonable. (*Id.*, ¶ 23).

## E.    Plaintiff's Relevant Disputes to Experian

Experian's records show that on or around September 28, 2021, Plaintiff contacted Experian to dispute the following accounts: "PENTAGON FEDERAL CR UN" Account Number XXXXXXXXXXXX1336 (the "PenFed Account"); "REV FCU" Account Number XXXXXXXXXXXXX0121 (the "REV FCU Account") (together, the "Disputed Accounts"); "CARRINGTON MORTGAGE SER" Account Number XXXXXX4554 (the "Carrington Account"); and "BK OF AMER" Account Number XXXXXX5786 (the "BoA Account"). (*Id.*, ¶ 24 & Ex. D-1) (the "First Dispute"). In the First Dispute, Plaintiff claimed that each of the Disputed Accounts were "inaccurate, unauthorized, unverified, [and] incorrect," although Plaintiff provided no supporting documentation or proof supporting that assertion. (*Id.*, ¶ 25 & Ex. D-1, p. 1). In addition, many of the statements contained in Plaintiff's First Dispute were inconsistent on their face. (*Id.*, ¶ 26). For example, although not at issue in this case, with respect to the Carrington

- 14 -

Account, Plaintiff somehow claimed at the same time that: (1) he did "not have a contract with this company" and (2) that the "alleged balance" on the same account was "incorrect" because it included late fees. (*Id.* & Ex. D-1, p. 2). Those statements do not make sense and appear cannot both be true. (*Id.*, ¶ 26).

Upon receipt of the First Dispute, Experian reinvestigated each of the Disputed Accounts identified by Plaintiff. (*Id.*, ¶ 27). As a part of its reinvestigations, Experian sent an ACDV form along with a copy of Plaintiff's correspondence separately to PenFed and REV FCU, respectively. (*Id.*, ¶ 28). Each of these furnishers responded to the respective ACDVs sent by Experian, each updating certain account information and verifying the reported status of their respective accounts as accurate. (*Id.*, ¶ 29). Experian sent a consumer disclosure informing Plaintiff of the results of Experian's reinvestigations on October 25, 2021, a redacted copy of portions of which Plaintiff filed on the docket in this case at ECF No. 1-3, pp. 37–64. (*Id.*, ¶ 30 & Ex. D-2).

On or around May 5, 2022, Experian received additional correspondence from Plaintiff concerning the Disputed Accounts. (*Id.*, ¶ 31 & Ex. D-3) (the "Second Dispute"). In the Second Dispute, Plaintiff requested for both the PenFed Account and the REV FCU Account that Experian "re-investigate if every piece of information for this account is correct." (*Id.*, ¶ 32 & Ex. D-3, p. 1). But Plaintiff again provided no supporting documentation or proof supporting his request that Experian reinvestigate each of these tradelines because they were inaccurate. (*Id.*, ¶ 32). In fact, Plaintiff himself appeared not to know whether any information was actually inaccurate on his Experian report at that time. *See* (*Id.*, ¶ 32 & Ex. D-3, p. 1) (stating "I am not saying they are reporting right or wrong."). Nonetheless, upon receipt of Plaintiff's Second Dispute, Experian reinvestigated both the Disputed Accounts identified by Plaintiff in his letter. (*Id.*, ¶ 33). As a part of its reinvestigation, Experian again sent an ACDV form along with a copy of Plaintiff's

correspondence separately to Carrington and REV FCU. (*Id.*, ¶ 34). Both furnishers of information responded to the respective ACDVs sent by Experian, each updating certain account information and verifying the reported status of their respective accounts as accurate. (*Id.*, ¶ 35). Experian sent a consumer disclosure informing Plaintiff of the results of Experian's reinvestigations on May 26, 2022. (*Id.*, ¶ 36 & Ex. D-4).

On or around August 18, 2022, Experian was contacted through LexisNexis® Risk Solutions, a reseller of information under the FCRA, to dispute the Disputed Accounts on behalf of Plaintiff. (*Id.*, ¶ 37 & Ex. D-5) (the "Third Dispute"). In Plaintiff's Third Dispute, Plaintiff stated that the Disputed Accounts were "incorrect," although Experian again received no supporting documentation or proof supporting that assertion. (*Id.*, ¶ 38 & Ex. D-5). Upon receipt of Plaintiff's Third Dispute, Experian once again reinvestigated both the Disputed Accounts. (*Id.*, ¶ 39). As a part of its reinvestigation, Experian sent another ACDV form along with a copy of any correspondence included with the dispute separately to PenFed and REV FCU. (*Id.*, ¶ 40). Each of these furnishers of information responded to the respective ACDVs sent by Experian, each updating certain account information and yet again verifying the reported status of their respective accounts as accurate. (*Id.*, ¶ 41). Experian sent a consumer disclosure informing Plaintiff of the results of Experian's reinvestigations on September 7, 2022. (*Id.*, ¶ 42 & Ex. D-6).

### III.    LEGAL STANDARD

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in her favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The moving party has the burden of proving that summary judgment is appropriate. Once the moving

- 16 -

party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

"[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "Summary judgment is proper only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S. Ct. 2505.

Finally, although *pro se* pleadings are "held to less stringent standards than formal pleadings drafted by lawyers," *Green v. TransUnion*, No. 2:22-cv-01546-RMG-MHC, 2022 WL 22879267, at *1 (D.S.C. Sept. 22, 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.

Ct. 594, 30 L. Ed. 2d 652 (1972)), courts in this Circuit still hold that "the requirement of liberal construction does not mean that the Court . . . can the Court assume the existence of a genuine issue of material fact where none exists." *Tyler v. Ray*, No. ___, 2018 WL 4017684, at *5 (D.S.C. July 27, 2018) (citing *Weller v. Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990)). *See also Eastridge v. Fifth Third Bank*, No. SAG-19-1516, 2021 WL 1530175, at *3 (D. Md. Apr. 19, 2021) ("*pro se* status does not lessen a party's burden with respect to the court's consideration of a summary judgment motion."). Accordingly, *pro se* litigants "must still set forth facts sufficient to withstand summary judgment." *Symeonidis v. Paxton Cap. Grp., Inc.*, 220 F. Supp. 2d 478, 480 n.4 (D. Md. 2002).

## IV. <u>ARGUMENT AND CITATION OF AUTHORITY</u>

### A.    Plaintiff's FCRA Claims Fail Because There is No Competent Evidence Experian's Reporting Was Inaccurate

Each of Plaintiff's FCRA claims require him to prove there was some inaccuracy or falsity with respect to Experian's reporting of the Disputed Accounts. *See Gadson v. Experian Information Solutions, Inc.*, No. 2:23-cv-00029-BHH-MHC, 2024 WL 3745476, at *6 (D.S.C. July 18, 2024); *see also Johnson v. Experian Info. Sols., Inc.*, Civ. No. PWG-15-558, 2015 WL 7769502, at *8 (D. Md. Nov. 17, 2015), *aff'd*, 670 F. App'x 778 (4th Cir. 2016) (stating that "[t]o establish either a Reasonable Procedures Claim [under 15 U.S.C. Section 1681e] or a Reinvestigation Claim [under 15 U.S.C. Section 1681i], a plaintiff must demonstrate that the consumer report prepared by the credit reporting agency contains inaccurate information."); *Brown v. Experian Credit Reporting*, No. JKB-12-2048, 2012 WL 6615005, at *3 (D. Md. Dec. 17, 2012) (holding "[i]n order to state a claim for failure to comply with § 1681e(b), Plaintiff must allege that a consumer report contained inaccurate information. The same is true of § 1681i(a).").

In other words, accuracy is a complete defense to all of Plaintiff's claims against Experian.

*See Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (stating "[t]o make out a violation under § 1681e(b), a consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate information.") (internal quotations omitted); *Jianqing Wu v. Trans Union*, No. CIVA AW-03-1290, 2006 WL 4729755, at *4 (D. Md. May 2, 2006), *aff'd sub nom. Jianqing Wu v. Equifax*, 219 F. App'x 320 (4th Cir. 2007) (finding that a showing of inaccurate information is necessary). "A report is inaccurate when it is 'patently incorrect' or when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse []' effect." *Dalton*, 257 F.3d at 415 (citing *Sepulvado v. CSC Credit Servs.*, 158 F.3d 890, 895 (5th Cir. 1998)).

While Plaintiff makes conclusory assertions and allegations in his FAC about purported inaccuracies regarding accounts balances, statuses, payments, etc., with respect to Experian's reporting of the Disputed Accounts, (FAC, ¶ 92), he has failed to support those allegations with any actual evidence. Plaintiff's unsupported and bare bones allegations will not defeat summary judgment. *See Angel Med. Ctr., Inc. v. Abernathy*, 1 F. App'x 217, 218 (4th Cir. 2001) (finding plaintiff "presented no evidence of such an accord apart from his own bald and self-serving allegations, which contradict his previous response to an interrogatory and are insufficient to avoid summary judgment") (citing *White v. Boyle*, 538 F.2d 1077, 1080 (4th Cir. 1976)); *Nat'l Enters., Inc. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000) (finding "[t]he appellants are unable to produce any evidence indicating that the repurchase agreements in question create the obligations that they claim . . . [because they] have not produced the repurchase agreements in question. [A] self-serving affidavit describing the content of the repurchase agreements is not enough to defeat [a] motion for summary judgment.") (citing *Anderson*, 477 U.S. at 249 (holding that to withstand a motion for summary judgment, the non-moving party must proffer sufficient evidence on which a

- 19 -

reasonable jury could find in its favor)).  Rather, the record evidence shows that in response to Experian's reinvestigation, each of the furnishers of information responded to the respective ACDVs sent by Experian, each updating certain account information and verifying the reported status of their respective accounts was *accurate*. (Experian Decl., ¶¶ 24–42).

      1.      <u>Plaintiff's "Assignment" Inaccuracy Theory Fails Factually and Legally.</u>

One of Plaintiff's primary inaccuracy arguments is that Experian incorrectly reported a balance on Plaintiff's PenFed Account after it had been transferred or sold.  (FAC, ¶ 77).  However, as set forth above, although Plaintiff may have been mistakenly informed that one or more of his PenFed accounts had been sold, at all times relevant to this lawsuit, PenFed has never sold, assigned, or transferred its ownership rights with respect to any of Plaintiff's three PenFed accounts, and PenFed has retained sole legal ownership over the accounts.  (Olson Decl., ¶¶ 9–10).  Further, PenFed has never been compensated by the Federal Reserve, Plaintiff, or anybody else, for the debt Plaintiff owes in connection with his PenFed auto loan, line of credit, or credit card accounts.  (*Id.*, ¶ 34).  Thus, Plaintiff's claims of inaccuracy—that the accounts were inaccurate because they were not marked transferred or sold, with a $0 balance—are unsupported as a factual matter.

Also, the fact that PenFed may have "assigned" one of the accounts to a third-party debt collector to collect the past-due balance on PenFed's behalf—due to Plaintiff's undisputed failure to pay—neither renders PenFed's continued reporting of the accounts with a balance "patently incorrect" nor "misleading in such a way and to such an extent that it can be expected to have an] adverse effect."  *Dalton*, 257 F.3d at 415.  Put simply, the alleged reporting of a balance is not "patently incorrect" because Plaintiff still owed PenFed a balance where he failed to pay; it was not "misleading" because, although the debt may have been "assigned" to a third-party debt collector for collection purposes, Plaintiff makes no allegation that the debt collector was also

reporting a debt or tradeline on Plaintiff's credit file, which might otherwise cause creditors to believe Plaintiff owed twice the amount he actually did.  *Cf. Arriaga v. Logix*, No. 18-cv-9128, 2021 WL 4459759, at *3 (C.D. Cal. May 21, 2021) (denying motion for reconsideration of summary judgment denial that had "acknowledged Logix's argument that it was not required to report a zero balance for its account since its account had only been assigned to Fidelity for collection, and not sold, and therefore the $5,196 balance it reported was not inaccurate since Plaintiff still owed the balance to Logix" but "found that double reporting of balances owed by Plaintiff on the same debt could be misleading.").

Regardless, Plaintiff did not present this claim of inaccuracy in any of his disputes to Experian, and, therefore, Experian had no duty to reinvestigate it.  (Experian Decl., Exs. 1, 3, & 5).  Under Section 1681i of the FCRA, a consumer reporting agency ("CRA") like Experian is required to conduct a reasonable reinvestigation of the accuracy of an item of information on a consumer's credit file "if . . . the consumer notifies the agency . . . of such dispute." 15 U.S.C. § 1681i(a)(1)(A).  Under this provision, a CRA's duty to reinvestigate is cabined to the dispute the consumer presents, even where the consumer's dispute identifies generally the piece of information they wish to dispute—a conviction, an account, etc.—they cannot bootstrap a Section 1681i claim based on one alleged inaccuracy from their dispute of a different alleged inaccuracy.  *See Aldaco v. RentGrow, Inc.*, 921 F.3d 685, 690 (7th Cir. 2019) (where consumer's dispute "contended only that the battery record wasn't hers," CRA had duty to "investigate and confirm with its sources the only information that was disputed: whether the battery record pertained to Aldaco" and not "the reported length of the sentence or the omission of the charge's dismissal"); *accord Herisko v. Bank of America*, 367 F. App'x 793 (9th Cir. 2010) (where "the only notice Plaintiff provided to Experian about his dispute was a letter [that] . . . did not put Experian on

notice that Plaintiff was claiming a different purported inaccuracy [which was] . . . . the alleged inaccuracy underlying the present suit[,] Plaintiff's dispute letter was therefore insufficient to trigger Experian's duty under § 1681i").

      2.    <u>Plaintiff's Inaccuracy Theory Regarding Charge-Offs Has No Legal Basis.</u>

Plaintiff also alleges that Experian's reporting was inaccurate because his PenFed accounts "were charged off/written off therefore no accounts nor debts existed as an asset of [PenFed]." (FAC, ¶ 76).  Plaintiff is wrong that a "charged off" debt ceases to exist.

A "charge off" is an accounting term of art for credit providers and is understood as writing off a debt as a financial loss because payment is unlikely.  *See Makela v. Experian Info. Sols., Inc.*, No. 6:21-cv-00386, 2021 WL 5149699, at *3 (D. Or. Nov. 4, 2021) (citing Black's Law Dictionary (11th ed. 2019)).  "The law is well settled that a charge-off is the correct reporting when a creditor writes off a debt it is unlikely to collect and converts its accounting from a receivable to a loss." *Kohen v. Equifax Inf. Servs., LLC*, No. 21-CIV-61952-RAR, 2022 WL 507603, at *2 (S.D. Fla. Feb. 18, 2022) (citations omitted); *see also Christian v. Equifax Info. Servs., LLC*, No. 18-cv-13682, 2020 WL 2087869, at *4 (E.D. Mich. Apr. 30, 2020) (explaining that charging off a debt "is a business practice where a creditor writes off a debt and no longer considers the account balance an asset for accounting purposes.").

In fact, "[f]ederal regulations require banks to 'charge off' debt that is past due by over 180 days." *In re Anderson*, 884 F.3d 382, 386 n.2 (2d Cir. 2018) (citations omitted).  Otherwise, a bank's "balance sheets would 'misleadingly reflect accounts as assets that have little chance of achieving their full valuation.'" *Makela*, 2021 WL 5149699, at *3 (quoting *Artemov v. TransUnion, LLC*, No. 20-cv-1892 (BMC), 2020 WL 5211068, at *3 (E.D.N.Y. Sept. 1, 2020)). However, "[s]ince financial institutions are required to comply with this federal requirement, it follows that charging off an account does not equate to debt forgiveness." *Artemov*, 2020 WL

- 22 -

5211068, at *4. Thus, "charging off a debt does not diminish the legal right of the original creditor to collect the full amount of the debt." *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1297 (11th Cir. 2016); *accord Dye v. TransUnion, LLC*, 2013 WL 5663094, at *3 (D. Nev. Oct. 15, 2013) (holding "[charged off] debt is still enforceable."); *Butnick v. Experian Info. Sols., Inc.*, No. 20-1631, 2021 WL 395808, at *4 (E.D.N.Y. Feb. 4, 2021) ("Plaintiff's contention that it was *per se* inaccurate for [Defendant] to report that he still owed a balance on an account that the bank had charged off . . . conflates two unrelated concepts: namely, Plaintiff's legal responsibility to pay . . . [and Defendant's] internal estimate of his likelihood to do so.")).

Because a charged off debt still exists, "it should be obvious that, even though [PenFed] labeled plaintiff's accounts as charged off, they had no obligation to zero out the overall or past due balance." *Artemov*, 2020 WL 5211068, at *4.

3.   <u>Plaintiff's Inaccuracy Theory That the Federal Reserve Paid His Loans is Frivolous.</u>

Plaintiff also claims that "[u]nder the law, the Federal Reserve Act, Plaintiff's 'Promissory Note' is the 'Collateral Security' for the loan of credit he received and when deposited with the Local Federal Reserve agent, Federal Reserve Notes are issued to the bank, in this case PenFed, therefore PenFed has been paid on both the Auto Loan and Line of Credit Accounts." (FAC, ¶ 82). This appears to be a wild new twist on a *pro se* legal theory that has been widely rejected by courts as absurd and patently frivolous. *See, e.g., Baird v. Ammiyhuwd*, No. 1:16-cv-1152, 2017 WL 430772, at *2–3 (S.D. Ohio Jan. 31, 2017) (dismissing case where defendants attempted to pay court filing fee with "promissory note" they had created themselves); *Marvin v. Capital One*, No. 1:15-cv-1310, 2016 WL 4548382, at *5 (W.D. Mich. Aug. 16, 2016 ) (stating that plaintiff could not pay the debt owed to the defendant by use of a purported promissory note "because such a note is not legal tender"); *Demmler v. Bank One NA*, No. 2:05-cv-322, 2006 WL 640499, at *3 (S.D. Ohio Mar. 9, 2006) (dismissing as "utterly frivolous" claims based on the premise that a

"promissory note he executed [was] the equivalent of 'money' "); *see also Bendeck v. U.S. Bank Nat'l Ass'n*, No. 17-00180, 2017 WL 2726692, at *4 (D. Haw. June 23, 2017) (dismissing claims based on plaintiff's "absurd and frivolous" premise that "a promissory note is money"); *accord Martinez v. Wells Fargo Bank*, No. 12-cv-802, 2014 WL 12026058, at *5 (S.D. Cal. Sept. 11, 2014)).  Plaintiff's new gloss is that the Federal Reserve somehow created the money and paid PenFed in connection with the underlying notes after Plaintiff defaulted.  However, PenFed has undisputedly never been compensated by the Federal Reserve, Plaintiff, or anybody else, for the debt Plaintiff owes in connection with his auto loan, the line of credit, or credit card account. (Olson Decl., ¶ 34).  And PenFed has never created or opened any accounts with the Federal Reserve in Plaintiff's name.  (*Id.* ¶ 35).

**B.      Plaintiff's Count I Fails Because Plaintiff Cannot Rebut That Experian's Procedures or Reinvestigations Were Reasonable**

1.      Plaintiff Has No Evidence that Experian's Procedures Are Unreasonable.

Plaintiff's Section 1681e(b) claim in Count II fails as a matter of law because Plaintiff has no evidence to rebut Experian's affirmative showing that its procedures are reasonable.  As detailed in Christina Hamilton's Declaration, Experian has robust procedures for ensuring the maximum possible accuracy of consumer credit files and for processing and handling consumer disputes. (Experian Decl., ¶¶ 7–23). This unrebutted evidence shows that Experian processed Plaintiff's Dispute in accordance with these detailed policies and procedures. (*Id.*, ¶¶ 24–42).

"Construing Section 1681e(b), the Fourth Circuit precedent makes clear that *a plaintiff bears the burden* of showing that a CRA . . . did not follow reasonable procedures." *Jianqing Wu*, 2006 WL 4729755, *6 (emphasis added).  Thus, it is *Plaintiff's* burden to show that Experian failed to follow reasonable procedures in this case. *Losch v. Nationstar Mortg. LLC*, No. 22-12421, 2024 WL 1282459, at *2 (11th Cir. Mar. 26, 2024) (collecting cases).  Plaintiff cannot do so.  Indeed,

in situations like this where a consumer's dispute to a CRA contests the ownership of an account or requires verification of an account's status and details, Experian's use of the ACDV process, which it utilized in connection with each of Plaintiff's disputes, is reasonable as a matter of law. *Westbrook v. Equifax Info. Servs. LLC*, No. 23-cv-477, 2025 WL 399940, at *8 (M.D. Fla. Feb. 5, 2025) (concluding that "Equifax's response to the First Dispute was reasonable as a matter of law" where the consumer made an ownership dispute and Equifax "asked Capital One to verify whether the Account existed in Plaintiff's name").

Nor is Plaintiff capable of testifying about Experian's procedures or challenging them in response to this Motion for Summary Judgment since he deliberately chose not to take Experian's deposition during discovery. *See Gadson*, 2024 WL 3745476, at *8–11 (granting summary judgment to Experian where plaintiff failed to depose Experian in discovery and thus could not rebut Experian's procedures or reinvestigations were reasonable); *cf. Gannon v. IC Sys., Inc.*, No. 09-60302-CIV, 2009 WL 3199190, at *1–2 (S.D. Fla. Sept. 25, 2009) (finding "Plaintiff is not the custodian of the information and is not qualified to testify regarding the procedures for compilation and creation of the information on the [credit] report").

While the reasonableness of a CRA's procedures is ordinarily a question of fact, the implementing regulations for the FCRA explain that a CRA follows reasonable procedures where it relies on "information that it receives from a source that it reasonably believes to be reputable" unless "the information furnished appears implausible or inconsistent" or the CRA has some notice of systemic problems with the accuracy of information from a particular source. *Jianqing Wu*, 2006 WL 4729755, *7 (citing Commentary on the Fair Credit Reporting Act, 16 C.F.R. pt. 600 app.). Consistent with these regulations, "courts have found with respect to the initial collection of information that, absent reason to believe information from generally credible sources is

- 25 -

inaccurate, a CRA is not required under Section 1681e(b) to go beyond its initial source of information to verify that information." *Burke v. Experian Info. Sols.*, No. 1:10-CV-1064 (AJT/TRJ), 2011 WL 1085874, *5 (E.D. Va. Mar. 18, 2011) (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 286–86 (7th Cir. 1994)).

Plaintiff has no evidence that any of the Disputed Accounts involved furnishers who were not "reputable," that any of the information furnished by those entities appeared "implausible or inconsistent," or that Experian had some notice of systemic problem with the accuracy of information received from these furnishers. *See id.* Experian is therefore entitled to summary judgment on Plaintiff's reasonable procedures claim in Count I.

2.    Plaintiff Has No Evidence that Experian's Reinvestigations Were Unreasonable.

Also in Count I, Plaintiff alleges that Experian violated 15 U.S.C. Section 1681i by failing to conduct a proper reinvestigation. But, same as above, Plaintiff has no knowledge as to whether Experian's reinvestigation into her disputes was reasonable. And as the Christina Hamilton Declaration demonstrates, Experian did in fact conduct a reasonable reinvestigation into of each of the Disputed Accounts, utilizing Experian's reasonable procedures to do so.

Experian has provided testimony setting forth its handling and reinvestigations of Plaintiff's First, Second, and Third Disputes, which included timely sending all relevant documentation concerning the Disputed Accounts to the appropriate data furnishers, as well as the responses that Experian received from the furnishers verifying the accuracy of the reporting. (Experian Decl., ¶¶ 24–42). To the extent Plaintiff alleges that that Experian did not "review and consider all relevant information submitted," (FAC, ¶ 128), in connection with his disputes, this too fails. Experian has set forth the specific manner in which it handled each of Plaintiff's disputes in great detail and explained its procedures, including that "Experian reviews all relevant information provided by the consumer and uses it, if possible, to verify the identity of the

consumer, to identify the item(s) being disputed, and to determine the nature of any alleged inaccuracies." (Experian Decl., ¶ 17). This evidence is unrebutted. Plaintiff also cannot demonstrate that Experian failed to comply with Section 1681i(a)(5)(A) in her Count I because he has presented no evidence that Experian failed to promptly delete information that was incomplete or could not be verified following a reinvestigation. (FAC, ¶ 115). Again, as set forth in the Christina Hamilton Declaration, the underlying data in the Disputed Accounts was verified by the furnishers in response to Plaintiff's Dispute, so there was no valid basis for Experian to delete any information. (Experian Decl., ¶¶ 24–42).

In sum, Experian conducted reasonable reinvestigations into each of Plaintiff's disputes serving as the basis for his reinvestigation claims in the FAC, and Plaintiff has presented no evidence that Experian failed or refused to conduct a reinvestigation of any of the Disputed Accounts. Thus, Experian is entitled to summary judgment on Plaintiff's Count I.

## C.     Plaintiff's Count II Claim Fails Because Experian is Not a Furnisher of Information

Plaintiff's Count II against Experian fails because 15 U.S.C. Section 1681s-2(b) applies only to "furnishers of information," not CRAs. *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002) (holding "Section 1681s-2(b) imposes duties on furnishers of information . . . ."); *McDaniel v. Hunter Warfield, Inc.*, No. 5:23-CV-752-D, 2024 WL 1812135, at *3 (E.D.N.C. Apr. 25, 2024) (holding "[a] private right of action exists under section 1681s-2(b), but this section applies only to furnishers of information, not credit reporting agencies."). "[T]he term 'furnisher of information' is generally understood to include various types of creditors, such as banks and other lenders, that provide credit information about their customers to other entities that issue consumer reports about the customers' credit worthiness." *DiMezza v. First USA Bank, Inc.*, 103 F. Supp. 2d 1296, 1299 (D.N.M. 2000).

While Plaintiff inconsistently alleges in his FAC that Experian is both a "furnisher" of

information and a "consumer reporting agency" under the FCRA, *compare* (FAC, ¶ 11) (alleging "Experian is a nationwide consumer reporting agency as that term is defined by 15 U.S.C. § 168la(f)"), *with* (*id.*, ¶ 12) (alleging "Experian is a "furnisher" of consumer credit information"), he has provided no evidence supporting his allegation that Experian is a furnisher.  Instead, the unrefuted record evidence demonstrates that Experian a CRA and not a "furnisher of information." (Experian Decl., ¶¶ 7–8); *see also Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 812 (7th Cir. 2023) ("But Experian is not a furnisher, so § 1681s-2 is, by its own terms, inapplicable."); *West v. TransUnion LLC*, No. 2:23-cv-04051-JDW, 2024 WL 2925959, at *3 (E.D. Pa. June 10, 2024) ("Experian is not a furnisher; it's a CRA. So Mr. West cannot maintain a claim under this provision."); *Bettcher v. Experian Info. Sols., Inc.*, No. 20-CV-0319, 2021 WL 4290907, at *1 (D. Minn. Sept. 21, 2021) (explaining that Experian is a CRA under 15 U.S.C. § 1681a(f)); *cf. Benz-Puente v. Transunion LLC*, No. 24-cv-2835, 2024 WL 3276411, at *2 n.3 (E.D. Pa. July 2, 2024) ("As state above, a CRAs like Transunion collect consumer credit data from furnishers, such as banks and other lenders. A CRA is not itself a furnisher.").[1]

Because Experian is not a furnisher under the FCRA, Plaintiff's Section 1681s-2(b) claim fails and Experian is entitled to summary judgment on Count II.

**D.     Plaintiff's FCRA Claims Also Fail Because He Cannot Prove Publication or Damages**

"It is well established that a plaintiff suing under the FCRA shoulders the burden of

---

[1] To the extent Plaintiff believes Experian was acting as a "furnisher" in connection with correspondence involving LexisNexis® Risk Solutions ("LexisNexis"), *see, e.g.* (ECF No. 31-1), Plaintiff is again wrong.  As that correspondence confirms, LexisNexis acts a reseller of information.  (*Id.*, pp. 12) (informing Plaintiff to contact LexisNexis at "Attention: Reseller"). Therefore, even this or other similar correspondence does not support Plaintiff's claims as it otherwise remains undisputed that Experian was conducting a reinvestigation as a CRA under Section 1681i.  *See* 15 U.S.C. § 168li (stating a CRA must conduct a reinvestigation if information contained in a consumer's file is disputed by the consumer and the "the consumer notifies the agency *directly, or indirectly through a reseller*, of such dispute.") (emphasis added).

NAI-1538460894v2

demonstrating the existence of damages resulting from an alleged FCRA violation; and, thus, the failure of an FCRA plaintiff 'to produce evidence of damage resulting from a FCRA violation mandates summary judgment." *Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253, 1262–63 (S.D. Fla. 2009) (quoting *Nagle v. Experian Info. Sols., Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002)).  Thus, summary judgment is proper in an FCRA case when the plaintiff cannot present evidence establishing that a defendant caused her damages.  *See, e.g., Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 250 (S.D.N.Y. 2008); *Caltabiano v. BSB Bank & Trust Co.*, 387 F. Supp. 2d 135, 141 (E.D.N.Y. 2005) (citing *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 473 (2d Cir. 1995)).  Without a causal relationship between the alleged violation of the FCRA and the loss of credit, or some other harm, a plaintiff cannot obtain an award of damages.  *See Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001); *Casella*, 56 F.3d at 473; *Cahlin v. Gen. Motors Acc. Corp.*, 936 F.2d 1151, 1160-61 (11th Cir. 1991); *Konter v. CSC Credit Servs., Inc.*, 606 F. Supp. 2d 960, 967 (W.D. Wis. 2009).

Like most everything else in this case, Plaintiff's damages claims are less than clear. Nonetheless, each of his damages claims against Experian fail because there is no record evidence demonstrating that any document which any creditor may or may not have looked at and considered (i) was an Experian credit disclosure, or (ii) even referenced the reporting of the Disputed Accounts.  To the extent Plaintiff comes forward with any adverse action letter or alleged credit denial communication from some third-party in response to this motion, Plaintiff never deposed any such entity and therefore his argument concerning what actions that entity took and why would be nothing more than pure speculation couched in multiple levels of hearsay.  *Ransom v. Equifax Inc.*, No. 09-80280-CIV, 2010 WL 1258084, *4 (S.D. Fla. Mar. 30, 2010) (holding in an FCRA case that letters from creditors are hearsay documents); *Chiang v. Verizon New England*

*Inc.*, No. CIV.A.06-CV-12144DPW, 2009 WL 102707, at *5 (D. Mass. Jan. 13, 2009), *aff'd*, 595 F.3d 26 (1st Cir. 2010) (sustaining objection to letters sent from financial institutions to consumer "regarding the basis for their denials of his loan applications . . . ."). And, as the Court knows, in analyzing a motion for summary judgment, a district court cannot consider such hearsay evidence that would be inadmissible at trial. *Lasher v. Day & Zimmerman Int'l, Inc.*, 516 F. Supp. 2d 565, 569 (D.S.C. 2007) (holding "[h]earsay evidence may not be considered on a motion for summary judgment.").

**E.     Plaintiff's State Law Claims Fail As a Matter of Law**

    1.     <u>Plaintiff's Defamation Claim Fails on the Merits and, In Any Event, is Preempted by the FCRA.</u>

In Count III, Plaintiff alleges that Experian's publishing of inaccurate credit information to unidentified third parties constituted defamation under South Carolina common law.  (FAC, ¶ 140).  But not only does this claim fail because Experian's reporting was accurate, as explained above, *Gregg v. Am. Coll. Of Med. Genetics & Genomics*, No. 22-cv-01218, 2023 WL 2047504, at *3 (D.S.C. Feb. 16, 2023) (holding "[t]ruth of the matter or substantial truth is a complete defense to a claim for defamation,"), Plaintiff has no evidence that Experian furnished anything to a third party "with malice or willful intent to injure" him, and, therefore, his defamation claim is specifically preempted by the FCRA regardless.  15 U.S.C. § 1681h(e) (stating "no consumer may bring any action or proceeding in the nature of defamation . . . with respect to the reporting of information . . . except as to false information furnished with malice or willful intent to injure such consumer.").  Under South Carolina law, "'[m]alice' is established only if 'the defendant acted with ill will toward the plaintiff or acted recklessly or wantonly, meaning with conscious indifference toward the plaintiff's rights.'"  *Beattie v. Nations Credit Fin. Servs. Corp.*, 69 Fed. App'x. 585 (4th Cir. 2003) (citing *Murray v. Holnam, Inc.*, 542 S.E.2d 743, 750 (S.C. 2001)).  As

set forth above, Experian three times reasonably reinvestigated Plaintiff's disputes regarding the Disputed Accounts—a far cry from "malice or willful intent to injure."

      2.     <u>Plaintiff's Statutory State Claims Fail for the Same Reasons as His FCRA Claims.</u>

In his Count IV, Plaintiff alleges that Experian violated the South Carolina Financial Identity Fraud and Identity Theft Protection Act (the "Act"). (FAC, ¶ 150). Specifically, Plaintiff points to Section 37-20-170 of the Act, (*id.*), which is a provision that allows a consumer to dispute information on their credit file, in *pari materia* with Section 1681i of the FCRA. Thus, Plaintiff's state law statutory claim fails as a matter of law for the same reasons his Section 1681i claim fails. To the extent the state law might be construed to include reinvestigation obligations beyond those imposed by Section 1681i, it is expressly preempted by 15 U.S.C. Section 1681t(b)(1)(B), which forbids any state regulation "with respect to any subject matter regulated under . . . [Section 1681i] . . . in any procedure related to the disputed accuracy of information in a consumer's file." *See White v. Trans Union*, No. 24-cv-324, 2025 WL 409660, at *3 (E.D. Va. Feb. 5, 2025) (holding that Section 1681t(b)(1)(B) applies to "subject matter regulated by FCRA as it pertains to actions taken by a consumer reporting agency related to the disputed accuracy of information in Plaintiffs' file").

## V.     CONCLUSION

For the foregoing reasons, Experian respectfully requests that this Honorable Court grant its Motion for Summary Judgment, enter summary judgment in favor of Experian and against Plaintiff on all claims, and award Experian any additional relief the Court deems just and proper.

NAI-1538460894v2

NAI-1538460894v2

Respectfully submitted this 11th day of April, 2025.


    */s/ Lyndey R. Z. Bryant*

Lyndey R. Z. Bryant (Fed. ID No. 11506)
Adams & Reese LLP
1221 Main Street, Suite 1200
Columbia, South Carolina 29201
Telephone: 803-212-4958
lyndey.bryant@arlaw.com

Grant Edward Lavelle Schnell
Florida Bar No. 108109
(*Admitted Pro Hac Vice*)
JONES DAY
1221 Peachtree Street N.E., Suite 400
Atlanta, Georgia 30361
Phone: (404) 581-8023
Email: gschnell@jonesday.com

*Attorney for Defendant Experian
Information Solutions, Inc.*