# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | |
|---|---|
| NELSON L. BRUCE,<br><br>          Plaintiff,<br><br>v.<br><br>PENTAGON FEDERAL CREDIT UNION a.k.a. PENTAGON FEDERAL CREDIT UNION FOUNDATION ("collectively" PENFED), EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, EQUIFAX INFORMATION SERVICES, LLC, all unknown Does 1-100, et al.,<br><br>          Defendants. | Case No. 2:22-cv-02211-BHH-MGB<br><br>**DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |

Defendant Equifax Information Services LLC ("Equifax"), by Counsel, hereby submits its Reply in Support of its Motion for Summary Judgment.

## ARGUMENT & CITATION TO AUTHORITY

### I.     PLAINTIFF'S ARGUMENTS REGARDING HIS CLAIMS OF INACCURACY ARE FRIVOLOUS

Plaintiff's Response in Opposition to Equifax's Motion for Summary Judgment makes inconsistent, inaccurate, and frivolous arguments regarding his claims of inaccuracy at issue in this litigation. He attempts to conflate credit reporting—the reporting of *his* credit obligations—with a financial institution's accounting practices. He purports to assert this claim is based on "Material Inaccuracy," but he really argues about perceived noncompliance with technicalities of industry standards. He cites case law in support of propositions for which they do not stand. Plaintiff's Opposition is, at best, rambling and inconsistent. Equifax attempts to respond here as best it can.

### a. The Majority Of Plaintiff's Chief Argument Regarding Inaccuracy Is Tantamount To A Scam; The Remainder Is Unsupported In Fact

As best as Equifax can synthesize it, Plaintiff's chief argument appears to be that it is inaccurate for potential creditors to know that he owes PenFed money on the three outstanding accounts because, either as a result of or as demonstrated by some combination of PenFed's internal accounting practices and use of an outside collection agency, PenFed was not *actively* seeking to collect the balances. (*See, e.g.*, Doc. 421, at 16[1], 17,[2] 20,[3] 23,[4] etc.)

There appear to be two separate arguments here. One of them can be both acknowledged as viable in theory, and then quickly disposed of under the facts of this case. And that is the idea that it *could in theory* be "inaccurate" to report a balance on an account that had been sold, or transferred without being sold, to another entity—either as technically inaccurate in the first instance (because the former account holder no longer owned the debt) or as technically accurate but unfairly misleading in the second (if both the owner and collector each reported the balance to the credit bureau, which could mislead a potential creditor into thinking the consumer owed twice the amount he really did[5]).  This argument—to the extent Plaintiff continues to make it—can be

---

[1] Plaintiff argues that "[a] tradeline can be misleading by omission, particularly where it fails to disclosure that a debt has been charged off, transferred, or is no longer *actively* owed to the reporting institution" (emphasis added).

[2] Plaintiff argues that "continuing to show delinquent balances without disclosing PenFed's internal accounting resolution or use of collection agents, created the impression that Plaintiff was still liable to PenFed for a *live* account, in *active* default…" (emphasis added).

[3] Plaintiff takes issue with the PenFed accounts "appear[ing] as if [the] debts were still *active* obligations in default" (emphasis added).

[4] Plaintiff argued that "PenFed booked the debts to its loss reserved and made no *active* attempts to collect them directly" (emphasis added).

[5] This second instance was the fact pattern before the court in *Arriaga v. Logix*, No. 18-cv-9128, 2021 WL 4459759, at *3 (C.D. Cal. May 21, 2021) (denying motion for reconsideration of summary judgment denial that had "found that double reporting of balances owed by Plaintiff on the same debt could be misleading.") (quotations omitted).

318319881v.1

quickly disposed of because neither of the factual developments occurred that could *in theory* render such reporting inaccurate. PenFed did *not* transfer ownership of the account. (Second Declaration of Craig Olson ("Olson Decl.") ¶¶ 9-10.)  And while PenFed may have "assigned" one of the accounts to a third party debt collector to collect the past-due balance on PenFed's behalf, the debt collector was *not* reporting a tradeline to Equifax. (*See* Barber Decl. ¶¶ 26, 37.)[6]

This leaves the second argument, the one to which Plaintiff devotes the majority of his efforts: that PenFed's internal accounting practices following its charge off of the accounts somehow required it to report Plaintiff's debts as $0 balance because the debts were no longer "active." This argument is tantamount to a scam: wait a few months until the account is charged off, and, after the internal accounting, the amount of the debt is forever hidden from the eyes of future potential creditors. Equifax can put it no better than Judge Cogan of the Eastern District of New York did in the *Artemov* case when rejecting a similar argument:

> Any other conclusion would be illogical; it would simply encourage a consumer to take out massive amounts of debt and wait around six months for it to be wiped away.
> . . .
>
> If I were to adopt plaintiff's reasoning–that a charge off categorically precludes a creditor from reporting the total past due amount–it would vitiate the entire existence and purpose of credit reporting companies: to present an evenhanded and fair representation of a particular consumer's ability and willingness to pay off debt . . . [.]

*Artemov v. TransUnion, LLC*, 2020 WL 5211068, at *4, *6 (E.D.N.Y. Sept. 1, 2020). *Artemov* was an FCRA case. Equifax was a defendant, and had brought a Rule 12(c) motion , which was granted. *Id.*, at *1 & n.1. Thus, Plaintiff's assertion that *Artemov* "*merely* reaffirm[ed] that the legal obligation to repay remains after a charge off," (Doc. 421, at 20) (emphasis added), is unavailing.

---

[6] Due to an oversight, Shetonjela Barber's declaration was not filed with Equifax's Motion for Summary Judgment on April 11, 2025, and is filed herewith.  However, the entire substantive content of Ms. Barber's declaration was included, verbatim, within Equifax's Memorandum in Support, (Doc. 410-1, at pg. 3-8), and, therefore, Plaintiff was apprised thereof and not prejudiced by the oversight.

Finally, to the extent Plaintiff claims it was misleading to report the balances without *some* indication of the "internal accounting," his claim is belied by the evidence. It is undisputed that Equifax was reporting the accounts as "charged off." (*See* Exs. B, D to Equifax's Motion.)  This was sufficient to put potential creditors on notice of the status of the accounts. *See Artemov*, at *5. Simply put, Plaintiff borrowed tens of thousands of dollars from PenFed that he did not repay. If Equifax were required to report those balances as "$0," it would, in fact, be reporting inaccurate information and misleading Plaintiff's potential creditors that he is a good credit risk when, in fact, he is not. Such a result is not required by the FCRA.

### b.  Plaintiff's Arguments About Industry Standards Do Not Suffice To Create An Inaccuracy Where One Did Not Exist

In his Opposition, Plaintiff harps upon perceived noncompliance with technicalities of industry standards for credit reporting, as detailed in the Consumer Data Industry Association's Credit Reporting Resource Guide ("CRRG"). (*See* Doc. 421, at 7, 12, 17, 20, etc.)  Regardless of whether the particular technicalities of the CRRG were complied with here, the CRRG is neither the law nor the arbiter of accuracy. Simply showing that some aspect of the CRRG was not complied with does not suffice to state a claim of inaccuracy, as numerous courts have recognized. *See, e.g.*, *Thomas v. Equifax Info. Servs. LLC*, 2020 WL 1987949, at *5 (S.D. Ohio Apr. 27, 2020) ("[A]lleged failure to abide by the requirements of the CRRG is insufficient to establish a violation of the FCRA."); *Gibson v. Equifax Info. Servs., LLC*, 2019 WL 4731957, at *3 (M.D. Ga. July 2, 2019) ("Failure to comply with the CRRG does not create a federal claim where one does not already exist."); *Cowley v. Equifax Info. Servs., LLC*, 2019 WL 5310205, at *2 (W.D. Tenn. Oct. 21, 2019) (holding that the CRRG "does not control the outcome of this Court's accuracy finding" because, *inter alia*, "[t]he FCRA does not mandate perfect compliance with the [CRRG]—it prohibits false and misleading credit reports."); *Hupfauer v. Citibank*, 2016 WL 4506798, at *4

n.5 (N.D. Ill. Aug. 19, 2016) ("Plaintiff's argument that Experian's reporting deviated from guidelines set by the Consumer Data Industry Association is beside the point, as these guidelines do not establish the standards for accuracy under the FCRA and cannot form the basis for FCRA liability."); *Mortimer v. Bank of Am., N.A.*, 2013 WL 1501452, at *12 (N.D. Cal. Apr. 10, 2013) (stating that "failure to comply with the CDIA guidelines does not render the report incorrect").

Rather, whether a credit item is "inaccurate" under the FCRA hinges on whether it is "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Dalton v. Capital Associated Industries, Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (cleaned up). As set forth above, it is not "patently incorrect" to report balances on the PenFed accounts—it is undisputed that Plaintiff borrowed the money and did not repay it.[7] Nor could it be "materially misleading" to report the balances, or to omit reference to a collections department or agency, where no internal collections department or third party collections agency was reporting a separate tradeline. *Cf. Arriaga v. Logix*, 2021 WL 4459759, at *3 ("[D]ouble reporting of balances owed by Plaintiff on the same debt could be misleading.")

### c. Plaintiff's Remaining Arguments Regarding Inaccuracy Are Frivolous

In his Response, Plaintiff argues that "whether PenFed was 'compensated' by the Federal Reserve is not a claim of debt extinguishment by fiat, but rather a factual predicate to show that continued reporting of balances as 'due and payable' was misleading under 15 U.S.C. § 1681e(b) after PenFed treated the debt as financially resolved and transferred/assigned it out for collections." (Doc. 421, at 22.) This is absolutely frivolous argument, a new twist on the "vapor money" theory

---

[7] Plaintiff admitted he took out all three loans. (N. Bruce Depo. 22:11-14; 33:16-18; 41:12-14) (Ex. E to Equifax's Motion for Summary Judgment). Subsequently, Plaintiff stopped making payments because, according to him, the promissory notes or agreements he entered into are a form of payment backstopped by the Federal Reserve. (*Id.* 25:10-26:21; 41:6-41:11; 42:16-43:1 & 48:14-49:9 & 58:3-59:20.)

that has been repeatedly rejected by the federal courts. *See Wilson v. GMFS Mortgage*, 2023 WL 1542431, at *7 (M.D. La. Jan. 9, 2023) (collecting cases). Plaintiff's new twist is that the Federal Reserve created the money and paid PenFed. PenFed, however, has never been compensated by the Federal Reserve, Plaintiff, or anybody else, for the debt Plaintiff owes in connection with the auto loan, the line of credit, or the credit card account. (Olson Decl. ¶ 34.)

Plaintiff also argues, with respect to his September 2021 dispute's reference to PenFed's alleged failure to respond to a Fair Credit Billing Act dispute that he "provided Equifax with factual disputes: misreported balances, incorrect charge-off status, and failure to reflect that the accounts had been transferred with a zero balance. The FCBA reference merely underscored that PenFed had not responded to prior verification requests—a fact that should have prompted Equifax to investigate the validity, current status, and source of the tradeline more carefully." (Doc. 421, at 27.) To the extent that Plaintiff acknowledges that Equifax had no duty to assess PenFed's compliance with the FCBA, Equifax welcomes his admission. There were no misreported balances (because Plaintiff owed them), incorrect charge off status (they were charged off), or failure to reflect that the accounts had been transferred (PenFed still owned the accounts).

Plaintiff also claims that "Experian's reporting is probably of inaccuracy and supports the existence of a factual dispute." (*Id.* at 29.) He is wrong. Experian may have been reporting zero balances, but before this Court is evidence that PenFed has never been compensated by the Federal Reserve, Plaintiff, or anybody else, for the debt Plaintiff owes in connection with the auto loan, the line of credit, or the credit card account. (Olson Decl. ¶ 34.) Before this Court is Plaintiff's admission that he did <u>not</u> repay the debts because of his frivolous belief that the Federal Reserve would pay it for him. (N. Bruce Depo. 25:10-26:21; 41:6-41:11; 42:16-43:1 & 48:14-49:9 & 58:3-59:20.) Experian's misreporting of the debts as $0 balance does not change these facts.

Finally, Plaintiff's arguments regarding the Date of First Delinquency are completely unsubstantiated. (Doc. 421, at 32.) In his September 2021 dispute, Plaintiff had asserted two of the accounts were inaccurate because the "Date of Last Payment" reported by PenFed was *after* the "Date of First Delinquency." (*See* Ex. A to Equifax's Motion, at pgs. 3-4.)[8] However, this, in itself, is not the basis for any claim of inaccuracy. After the accounts went delinquent, PenFed either applied funds seized from Plaintiff's share account or reduced the balance on the account by waiving financing charges. (Ex. G, at 46, 48.) In his Opposition, Plaintiff claims this is inaccurate because it would "mislead creditors into believing Plaintiff voluntarily resumed payments on a charged-off account when he did not." (Doc. 421, at 34.) This is nonsense, and, as Plaintiff himself *does not challenge the dates of first delinquency* and concedes in his brief that the "DOFD determines when a delinquent account will age off a consumer's report," (*id.*, at 33), he has no basis to claim that the dates of last payment post-dating the dates of first delinquency would "artificially extend [the] negative impact" of the tradelines, as he frivolously claims, (*id.*). In short, this claim of "inaccuracy " is patently frivolous. [9]

## II.    PLAINTIFF'S ARGUMENTS REGARDING THE REASONABLENESS OF EQUIFAX'S REINVESTIGATION ARE FALSE

In his Opposition, Plaintiff argues that the Fourth Circuit Court of Appeals, in *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426 (4th Cir. 2004), "held that 'a reinvestigation that merely shifts the burden back to the furnisher and relies on its assertion of accuracy, without further inquiry, is insufficient,'" claiming that this purportedly quoted holding appears at page 431 of the Fourth

---

[8] Plaintiff also falsely claims that his September 2021 dispute "specifically objected to this inconsistency *as materially misleading and unsupported by any actual consumer-initiated payment*." (Doc. 421, at 33.) No such specific objection appears in his September 2021 dispute.

[9] Any remaining quibbles presented by the various "Reasons" listed in Plaintiff's September 2021 dispute fail to present a colorable inaccuracy in light of the tradeline "as a whole." *Sanchez v. JPMorgan Chase Bank*, 643 F.Supp.3d 1025, 1033 (D. Ariz. 2022).

Circuit's opinion. (Doc. 421, at 36.)  There is just one problem. That language appears nowhere in the Fourth Circuit's opinion in *Johnson*, and, in fact, appears nowhere in any opinion issued by any appellate panel or district court within the Fourth Circuit. That language comes from the Third Circuit's opinion in *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997). It is not binding on this Court, and to the extent it is persuasive, and is inapplicable given that the undisputed facts show that Equifax did more than merely rely on PenFed "without further inquiry."

The undisputed facts show that once Equifax receives the ACDV back from the data furnisher, its policy is to review the ACDV response, then look to its own internal policies and procedures to see if they require a specific action. (Barber Decl. ¶ 22.) Here, in light of PenFed's specific responses to the ACDVs for Plaintiff's specific accounts, Equifax's policies and procedures did not require it to take any specific action. (*Id.* ¶¶ 34, 42.)  Therefore, it is undisputed that Equifax looked to its own policies and procedures prior to accepting PenFed's verification. It cannot be said that Equifax relied on PenFed "without further inquiry."

Moreover, Plaintiff's Opposition fails entirely to engage with the body of case law on when use of the ACDV process is reasonable as a matter of law. Plaintiff's dispute letter was sent to PenFed along with the ACDV and PenFed was required to view the image of the dispute letter before responding. (*Id.* ¶¶ 21, 30.) Because Equifax apprised PenFed of the nature of Plaintiff's dispute, it was reasonable as a matter of law for Equifax to rely on PenFed's verification of the account details, as other courts have held. *See, e.g.*, *Ghazaryan v. Equifax Info. Servs., LLC*, 740 Fed. App'x 157, 158 (9th Cir. Oct. 18, 2018) ("Equifax's investigation was reasonable as a matter of law. Equifax notified Discover that Ghazaryan disputed being late on her credit card . . . using ACDV, the 'automated system' envisioned by the FCRA[.]"); *Jianqing Wu v. Trans Union*, 2006 WL 4729755, at *8-9 (D. Md. May 2, 2006) *aff'd* 219 F. App'x 320 (4th Cir. Feb. 27, 2007) ("The

only way for Equifax to verify Plaintiff's claims was for Equifax to contact these creditors directly. While the CDVs did not include all of Plaintiff's arguments to justify his late payments, these forms contained enough information for the creditors to investigate Plaintiff's disputes. . . . Defendant's reliance upon Plaintiff's creditors' investigations of Plaintiff's accounts in this case was reasonable."); *cf. Alston v. Equifax Info. Servs. LLC*, 2016 WL 5231708, at *12 (D. Md. Sep. 21, 2016) ("Equifax's timely and appropriate use of ACDVs … stand in contrast to CRA reinvestigations in cases where the question of reasonableness was submitted to a jury. In such cases, the CRA typically fails to include in its ACDV critical information about the dispute. . . .").

## III.    PLAINTIFF'S REMAINING FCRA ARGUMENTS ARE NONSENSICAL

### a.    Plaintiff's Argument That Equifax Is Liable Under The FCRA For Deleting An Account He Disputed – The REV FCU Account – Is Nonsensical

As noted in Equifax's Motion for Summary Judgment, as a result of Plaintiff's September 27, 2021 dispute, an Equifax agent sent an ACDV to REV Federal Credit Union, but REV did not respond to the ACDV, and, as a result, Equifax suppressed the REV account from the credit file. (Barber Decl. ¶¶ 28-29.) Equifax sent dispute results dated October 24, 2021 informing him of the account's deletion. (Ex. B to Equifax's Motion for Summary Judgment.) In his Opposition, Plaintiff argues "Equifax's deletion of the REV FCU account . . . triggers liability under § 1681i(a). (Doc. 421, at 39.) This is patently frivolous. Because Equifax did not hear back from REV, it was required by 15 U.S.C. § 1681i(a)(5)(A)(i) to delete the account. Compliance with the FCRA in this manner cannot give rise to liability under the FCRA. *See Denton v. JP Morgen Chase & Co.*, 2020 WL 5909153, at *13 (E.D. Va. Oct. 6, 2020) ("In fact, with regard to the LFCU Account, Plaintiff asserts that Experian did delete the inaccurate information that Plaintiff disputed after a reinvestigation. . . . Therefore, Plaintiff has failed to allege facts giving rise to a 15 U.S.C. § 1681(i) violation regarding the LFCU Account.") (citation omitted).

### b. Plaintiff's Argument That Equifax Is Liable For Publication Of The REV FCU Account Prior To Its Deletion Is Nonsensical As He Makes No Claim For Prior Publication

Plaintiff also argues, with respect to the REV account, that its deletion "does not erase Equifax's liability for its inclusion in prior reports" and that he "has consistently alleged that prior to October 24, 2021, the REV FCU tradeline was published." (Doc. 421, at 40.) There is just one problem for Plaintiff. He has *not* alleged any prior publication by Equifax. Equifax asked Plaintiff specifically, in discovery, to identify the credit denials allegedly "based upon the contents of your Equifax credit file" and, in response, he identified four instances of inability to obtain credit, ***all*** of which occurred *after* the deletion of the REV FCU account in October 2024:

> [P]laintiff states at this time that he has been denied a Cash Back Visa credit card from SECU on or about **12-9-2021**, that Plaintiff sought to acquire at least $30,000 of credit to use towards his real estate business. That on **11-27-2021** plaintiff was denied a Premier cash reward visa signature credit card from U.S. Bank that plaintiff sought to acquire at least $20,000 of credit to use towards his real estate business. That on **5-3-2022/5-4-2022/5-5-2022**, plaintiff was denied a mortgage loan with AmeriSave Mortgage Corporation that plaintiff sought to acquire a minimum of $200,000 to acquire real estate investment property with. That between **May 17, 2022 and May 24, 2022** plaintiff applied for a credit limit increase on his Visa Signature Cash Rewards credit card with Navy Federal Credit Union and was denied for the increase of $12,000 that plaintiff sought to acquire to use towards both his everyday expenses and Capital Return Investments business.

(Plaintiff's Response to Interrogatory No. 6) (Ex. H to Motion for Summary Judgment, at pg. 4.) (emphasis added). When Equifax specifically asked Plaintiff, in discovery, to identify all instances wherein he alleged Equifax "made a report that contained inaccurate information," he referred Equifax back to this response. (Plaintiff's Response to Interrogatory No. 17) (*Id.*, at pg. 7.)

### c. Plaintiff's Argument That He Has Evidence From Which The Contents Of Consumer Reports Can Be Inferred Is Nonsensical As He Does Not Reference Or Attach The Claimed Evidence

Equifax pointed out in its Motion that Plaintiff has no evidence regarding the contents of the consumer reports allegedly published by Equifax (which does not generally keep copies of the

consumer reports it issues), and therefore cannot meet his burden to show that Equifax prepared a consumer report containing inaccurate information. In his Response, Plaintiff argues that "direct evidence of publication is not required where circumstantial evidence shows that a report containing prior information was disclosed to a third party and caused adverse action," citing case law that does not actually appear to support that contention. (Doc. 421, at 42.) He further claims he has "submitted" such circumstantial evidence in the form of "letters of credit denial citing Equifax" and "sworn declarations,"[10] but he does not identify where in the record such circumstantial evidence can be found nor does he attach it to his Response in Opposition.  It is Plaintiff's duty, not Equifax's or this Court's, to cite to particular parts of materials in the record.

### d.  Plaintiff's Argument That Equifax Failed To Follow Reasonable Procedures Is Nonsensical Where It Parrots His Frivolous Claims Of Inaccuracy

In his Opposition, Plaintiff claims that he "has submitted ample evidence that Equifax failed to follow reasonable procedures," (Doc. 421, at 44), but grounds he points to are simply the same frivolous arguments he makes in support of his claims of inaccuracy, which do not provide any support for the claim that Equifax failed to follow reasonable procedures. The closest Plaintiff gets to making a coherent argument is his claim that Equifax "continued to report delinquent balances post-charge-off without applying required Metro 2 compliance codes," citing Exhibit 43. (Doc. 421, at 44.)  But that exhibit is an excerpt from the CRRG, which instructs *data furnishers* on how to report transferred accounts. But *Equifax* could not have acted unreasonably by not marking the PenFed accounts as "transferred" where Plaintiff did not so apprise Equifax.

---

[10] Plaintiff also claims the dispute results and other nonspecific "evidence that Equifax continued to report inaccurate PenFed tradelines during the period of denial" are circumstantial evidence of what was included in the consumer reports he alleges Equifax published to third parties. (Doc. 421, at 43.)  But he "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

318319881v.1

The undisputed record evidence shows that Plaintiff testified at his deposition that he first came to believe that one or more of his accounts with PenFed may have been transferred or sold to another entity was in a December 2021 telephone call with PenFed. (N. Bruce Depo. 229:2-230:2.) Prior to this, Plaintiff believed that the accounts were being held and serviced by PenFed. (*Id*. 230:2-7.) Thus, he *could not* have made that claim of inaccuracy in a September 2021 dispute letter to Equifax. While Plaintiff later obtained a letter from PenFed stating (erroneously) that his credit card had been sold to UHG and that his line of credit had been assigned to NCC for collection, (Doc. 1-4, at 3), he did not include that letter with his May 2022 dispute to Equifax. (*See* Ex. C to Equifax's Motion.) Equifax cannot possibly have acted unreasonably in failing to mark the accounts as transferred if it had no reason to believe that the accounts had been transferred.

> ### e. Plaintiff's Argument That He Was Denied Personal Credit From Discover And Capital One Is Nonsensical Because He Does Not Claim Those Denials Were Caused By Equifax; His Other Business Damages Arguments Also Fail

In his Opposition, Plaintiff claims that the "actual record shows" that he applied for personal credit with Discover and Capital One, and, therefore, Equifax's Motion should be denied to the extent that it argues his business credit denials are not recoverable under the FCRA. (Doc. 421, at 47.) But the undisputed record reflects that Plaintiff claimed only four credit denials were caused by Equifax, none of which were from Discovery or Capital One. (Plaintiff's Response to Equifax's Interrogatory No. 6) (Ex. H to Equifax's Motion, at pg. 4.) Plaintiff also argues that the "FCRA" covers consumer reports used in assessing business credit applications, citing several cases. But two of the cases he cites, *Matthews* and *Crabill*, contain no relevant discussion at all. One of the cases, *Comeaux*, is inapposite because it deals with the FCRA's privacy provisions—i.e., an end user that "requested the report under false pretenses, thereby violating section 1681q," 915 F.2d at 1273—and not with whether business damages were recoverable. While the last case,

- 12 -

*Boothe*, does contain the statement that "if the report was collected for one of the purposes listed in section 1681a(d), it is a consumer report, regardless of the reason for which it is subsequently disseminated," Plaintiff's claim that this 1981 case (with rather unique facts) constitutes the "modern approach," (Doc. 421, at 46), is unavailing.

In fact, the overwhelming authority holds that even if a report on a consumer's personal credit may appear to be "nominally" a consumer report, if it was obtained for a business purpose, it falls outside the scope of the FCRA. In the influential case *Grigoryan v. Experian Info. Sols., Inc.*, 84 F.Supp. 1044 (C.D. Cal. 2014), the court determined that "any credit report [the plaintiff] may have used to secure financing for [business] purchases, even though nominally a consumer credit report, was for a 'business purpose,'" and, therefore, "not deemed a consumer credit report for purposes of the FCRA[.]"

The FCRA is a consumer protection law. It was not intended to allow the recovery of *business-related damages* merely because a business owner allows his personal credit report to be accessed. For example, in *Podell v. Citicorp Diners Club, Inc.*, 914 F.Supp. 1025, 1036 (S.D.N.Y. 1996) aff'd 112 F.3d 98 (2d Cir. 1997), the court considered the issue of damages in the form of "a quintessential example of a business transaction," and, relying on the FCRA's legislative history, determined that the claimed damages were not "of the sort that would be cognizable under the FCRA." *Id.* at 1037. Accordingly, any damages claimed by Plaintiff due to his inability to supply his real estate business, Capital Returns Investments, with credit are not cognizable under the FCRA. *Wisdom v. Wells Fargo Bank*, No. 10-cv-2400, 2012 WL 170900, at *2 (D. Ariz. Jan. 20, 2012) ("Nor can Plaintiffs claim personal damages predicated upon the losses of an independent corporation which it was their custom to supply with personal credit.").

- 13 -

Finally, Plaintiff claims that his "emotional distress stemmed not from a denied business investment per se, but from harm to his personal name, credit reputation, humiliation and financial standing." (Doc. 421, at 48.) However, at his deposition, he testified that his alleged emotional distress damages were caused *by the claimed credit denials*. (N. Bruce Depo. 232:24-243:5.) Plaintiff cannot claim personal emotional distress because his business was unable to obtain credit.

## IV.     PLAINTIFF'S ARGUMENTS REGARDING DEFAMATION FAIL

In his Opposition, Plaintiff again trots out the same frivolous arguments regarding his claims of inaccuracy in support of his state-law defamation claim. But his arguments here are even thinner, for two reasons. *First*, as set forth in Equifax's Motion, since "[t]ruth of the matter or substantial truth is a complete defense to a claim for defamation," *Gregg v. Am. Coll. Of Med. Genetics & Genomics*, No. 22-cv-01218, 2023 WL 2047504, at *3 (D.S.C. Feb. 16, 2023), Equifax is entitled to summary judgment. Plaintiff responds by arguing that he "does not merely dispute ownership of the debt—he disputes how the debt was portrayed in Equifax's reports: as active, collectible, past-due obligations, when PenFed had effectively resolved the accounts...." (Doc. 421, at 50.) *As an initial matter, Plaintiff has no evidence of how Equifax portrayed the PenFed accounts in any report that it allegedly published to a third party*. But even if Equifax published reports that say what Plaintiff claims (but cannot prove) they said, his defamation claim fails. Putting aside that his claim of falsity—"as active, collectible, past-due obligations, when PenFed had effectively resolved the accounts"—is pure nonsense,[11] in South Carolina "substantial truth is a complete defense" and it was "substantially" true to report that Plaintiff owed PenFed the tens of thousands of dollars that he had not repaid.

---

[11] Because the accounts *were* collectible, they *were* past due, and PenFed had not "effectively" resolved them—it had merely engaged in an accounting practice, charging them off.

*Second*, the undisputed facts show that Plaintiff cannot possibly overcome the FCRA's preemption of his state-law defamation claim. Plaintiff has no evidence that Equifax furnished anything to a third party "with malice or willful intent to injure" him, and, therefore, his defamation claim is pre-empted by 15 U.S.C. § 1681h(e). The Fourth Circuit previously rejected a consumer's claim of malice under the FCRA where the defendant published what it believed to be accurate. *See Beattie v. Nationsl Credit Financial Services Corp.*, 69 Fed. App'x 585, 590-91 (4th Cir. Jun. 27, 2003) ("NationsCredit did not report the alleged foreclosure 'with malice' because, as we have noted, such a report was, at least in NationsCredit's view, accurate."). Here, the undisputed evidence shows that Equifax maintains procedures designed to properly address consumer disputes, and that those procedures were followed in Plaintiff's disputes. (*See generally* Barber Decl.) Here, as in *Beattie*, "[t]here is simply no … evidence" of malice. 69 Fed. App'x at 591.

## V.     PLAINTIFF'S S.C. CODE § 37-20-170 CLAIM FAILS AS A MATTER OF LAW

In his Opposition, Plaintiff argues that his state law claim is not preempted, citing *Ross v. F.D.I.C.* and *Gorman v. Wolpoff & Abramson, LLP*. But, in *Ross*, the Fourth Circuit held that the state law *was* preempted. *Ross*, 625 F.3d at 812-813 ("[T]he original preemption provision, 15 U.S.C. § 1681t(a), preempted state laws only 'to the extent that those laws are inconsistent with any provision of [the FCRA].' As part of the ongoing process of fine-tuning this statutory scheme, Congress … added a strong preemption provision, 15 U.S.C. § 1681t(b), to this comprehensive legislative framework.[12]"). And *Gorman* concerned a California statute that was expressly *exempted* from § 1681t(b)'s strong preemption provision. *Gorman*, 584 F.3d at 1169. In any event, Plaintiff's S.C. Code. § 37-20-170 claim fails because it is *in pari materia* with his § 1681i claim; because there was no inaccuracy and because Equifax reasonably reinvestigated his disputes and provided him results confirming that PenFed had verified the accounts, the claim necessarily fails.

---

[12] For this reason, Plaintiff's argument at pages 54-55 of his Opposition is simply inapposite.

318319881v.1

## CONCLUSION

Accordingly, Equifax respectfully requests the Court grant summary judgment in its favor.

DATED:  June 12, 2025                         Respectfully submitted,


By:  */s/ Rita Bolt Barker*
     Rita Bolt Barker (Fed. ID No. 10566)
     WYCHE, P.A.
     200 East Broad Street, Suite 400
     Greenville, South Carolina 29601
     Telephone: (864) 242-8235
     Facsimile:  (864) 235-8900
     E-mail:  rbarker@wyche.com

     ***Counsel for Defendant***
     ***Equifax Information Services LLC***

- 16 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 12, 2025, I presented the foregoing **REPLY IN SUPPORT**

**OF MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF

system, which will send notification of such filing to all counsel of record.   A copy has also been

sent via U.S. Mail to the following:

> Nelson L. Bruce *(plaintiff pro se)*
> c/o P.O. Box 3345
> Summerville, South Carolina  29484
> Telephone:  (843) 437-7901
> Email:  leonbruce81@yahoo.com


> */s/ Rita Bolt Barker*
> Rita Bolt Barker
> ***Counsel for Defendant***
> ***Equifax Information Services LLC***

318319881v.1