**DECLARATION OF SHETONJELA BARBER**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| NELSON L. BRUCE,<br><br>　　　　Plaintiff,<br><br>v.<br><br>PENTAGON FEDERAL CREDIT UNION a.k.a. PENTAGON FEDERAL CREDIT UNION FOUNDATION ("collectively" PENFED), EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, EQUIFAX INFORMATION SERVICES, LLC, all unknown Does 1-100, et al.,<br><br>　　　　Defendants. | Case No. 2:22-cv-02211-BHH-MGB<br><br>**DECLARATION OF SHETONJELA BARBER IN SUPPORT OF DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S MOTION FOR SUMMARY JUDGMENT** |

I, Shetonjela Barber, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct.

1. I am over the age of twenty-one and otherwise competent to testify to the matters stated herein.

2. I am an employee of Equifax, Inc. I am authorized to provide this declaration in support of Equifax Information Services LLC's Motion for Summary Judgment.

3. I am currently employed as a Legal Support-Lead for Equifax.

4. I have personal knowledge of the facts stated herein based on my work experiences at Equifax and my review of documents and records kept by Equifax in the ordinary course of its business.

5. I have reviewed Equifax's records concerning the credit file of Plaintiff Nelson Bruce.

316184935v.1

6. I have also reviewed Mr. Bruce's Fourth Amended Complaint and am generally familiar with the allegations made therein.

7. I am familiar with Equifax's documents and records created or stored as part of its dispute process, and created or stored as part of its regular credit reporting activities.

8. I have personal knowledge of Equifax's procedures for creating and storing these records.

9. I use the systems for creating and storing these records frequently as part of my job. These documents are kept in the course of Equifax's regularly conducted business activities.

10. Equifax is a consumer reporting agency ("CRA") that creates and maintains credit files on more than 200 million consumers in the United States.

11. Equifax gathers information about consumers from various sources, including banks, collection agencies, and lenders, as well as court records, which it uses to create credit files.

12. Equifax's credit files are used to prepare consumer reports, requested by its subscribers, when they need to evaluate whether to extend credit to a consumer, among other permissible purposes.

13. Equifax maintains procedures designed to assure the maximum possible accuracy of the information it reports to its subscribers regarding consumers, to correct errors that are brought to its attention, and to properly address consumer disputes.

14. When Equifax receives a dispute from a consumer, Equifax's process is to open a dispute case that tracks the progress of the reinvestigation in a system known as "CCMS," at times also referred to by the acronym for its predecessor, "ACIS."

15. The CCMS record reflects, among other things, when the dispute was received, how it was received, the steps taken in response to the dispute, and the date(s) any correspondence was sent to the consumer.

16. Upon receipt of a dispute from a consumer, Equifax's policy is to review and consider all of the relevant information, if any, that the consumer provides regarding the nature of the dispute and the contents of the consumer's credit file.

17. If, upon review of the dispute, the contents of the file, and the information provided, Equifax is able to make updates, Equifax's policy is to undertake those immediately.

18. If further investigation of the consumer's dispute is required, Equifax's policy is to notify the source of the information and advise it of the consumer's dispute, describe all relevant information (if the dispute is by mail, this includes providing a digital image of its contents to aid the data furnisher in their investigation), provide the consumer's account information as it then appears in the consumer's Equifax credit file, and ask the data furnisher to investigate the consumer's dispute and to advise Equifax if the account information is inaccurate.

19. The data furnisher is in the best position to investigate a dispute, as it has the applications for credit, account history, or other direct information concerning the account.

20. Communications between Equifax and the data furnisher are generally made through a process wherein Equifax electronically transmits a form called an Automated Consumer Dispute Verification ("ACDV") to the data furnisher.

21. The ACDV process is an industry standard used by all three of the nationwide consumer reporting agencies (Equifax, Experian, and Trans Union), and is

implemented by a system called E-OSCAR, which requires a data furnisher to view the ACDV and any associated images before providing a response.

22. Once Equifax receives the ACDV back from the data furnisher, Equifax's policy is to review the ACDV response, then look to its own internal policies and procedures to see if they require a specific action, depending on the type of dispute, and, if not, then to make no changes to the account if the data furnisher verifies that the account is being reported accurately or take any necessary action if the data furnisher advises Equifax to delete or otherwise update the account information.

23. Following the completion of its reinvestigation, Equifax's policy is to send the consumer the results of the reinvestigation.

24. Equifax's policy is that the aforementioned steps are to be completed within the time frame provided by the FCRA.

25. On or around September 27, 2021, Equifax received a dispute package from Mr. Bruce. A copy of the dispute package is included with this Declaration to be submitted with Equifax's Motion for Summary Judgment as Exhibit A.

26. Mr. Bruce's September 27, 2021 dispute package disputed four accounts appearing on his Equifax credit file: a Pentagon Federal Credit Union auto account, a Pentagon Federal Credit Union line of credit account, a Pentagon Federal Credit Union credit card account, and a REV Federal Credit Union account. At the time of the dispute, these four accounts did appear on Plaintiff's Equifax credit file; however, there was no separate collections agency tradeline related to any of the accounts.

27. Mr. Bruce's September 27, 2021 dispute package contained multiple "Reason" paragraphs as to why he claimed each account was inaccurate. *See id*.

28. As a result of Mr. Bruce's September 27, 2021 dispute, an Equifax agent sent an ACDV to REV Federal Credit Union, which included digital images of the dispute letter and documents Mr. Bruce submitted with the dispute, the account information as it then appeared in Mr. Bruce's Equifax credit file, and a request that REV Federal Credit Union investigate the dispute.

29. REV Federal Credit Union did not respond to the ACDV sent to it by Equifax, and, as a result, Equifax suppressed the REV Federal Credit Union account from Mr. Bruce's credit file.

30. As a result of Mr. Bruce's September 27, 2021 dispute, an Equifax agent sent three ACDVs to Pentagon Federal Credit Union (one for each account), which included digital images of the dispute letter and documents Mr. Bruce submitted with the dispute, the account information as it then appeared in Mr. Bruce's Equifax credit file, and a request that Pentagon Federal Credit Union investigate the accounts, specifically noting that Mr. Bruce had disclaimed ownership of the accounts.

31. On October 15, 2021 Pentagon Federal Credit Union responded to Equifax's ACDV for the line of credit account, verifying that it belonged to Mr. Bruce and that the account was accurate as reported: as a charged off account with a balance of $4,427, a date of first delinquency of February 2017, and a date of last payment of September 2017.

32. On October 15, 2021 Pentagon Federal Credit Union responded to Equifax's ACDV for the auto account, verifying that it belonged to Mr. Bruce and that the account was accurate as reported: as a charged off account with a balance of $31,794, a date of first delinquency of October 2016, and a date of last payment of October 2017.

316184935v.1

-6-

33. On October 18, 2021 Pentagon Federal Credit Union responded to Equifax's ACDV for the credit card account, verifying that it belonged to Mr. Bruce and that the account was accurate as reported: as a charged off account with a balance of $13,777, a date of first delinquency of January 2017, and a date of last payment of December 2016.

34. In light of Pentagon Federal Credit Union's specific responses to the ACDVs for Mr. Bruce's specific accounts, Equifax's policies and procedures did not require it to take any specific action, and, as a result, Equifax made no changes to the accounts as they appeared on Mr. Bruce's credit file.

35. On October 24, 2021, Equifax concluded its reinvestigation of Mr. Bruce's September 27, 2021 dispute, and sent him a reinvestigation results letter, which is included with this Declaration to be submitted with Equifax's Motion for Summary Judgment as Exhibit B.

36. On or around May 17, 2022, Equifax received another letter from Mr. Bruce. A copy of the letter is included with this Declaration to be submitted with Equifax's Motion for Summary Judgment as Exhibit C.

37. Mr. Bruce's May 17, 2022 identified the three Pentagon Federal Credit Union accounts referenced above, but did make any specific allegation of inaccuracy regarding any of them. *See id*. At the time of the dispute, these three accounts did appear on Plaintiff's Equifax credit file; however, there was no separate collections agency tradeline related to any of the accounts.

38. As a result of Mr. Bruce's May 17, 2022 letter, an Equifax agent sent three ACDVs to Pentagon Federal Credit Union (one for each of the three accounts referenced above), which included digital images of the letter and documents Mr. Bruce submitted with

the letter, the account information as it then appeared in Mr. Bruce's Equifax credit file, and a request that Pentagon Federal Credit Union investigate the accounts, specifically noting a request for PenFed to verify all account information.

39. On June 8, 2022 Pentagon Federal Credit Union responded to Equifax's ACDV for the line of credit account, verifying that it belonged to Mr. Bruce and that the account should report as a charged off account with a balance of $4,427, a date of first delinquency of February 2017, and a date of last payment of September 2017.

40. On June 8, 2022, Pentagon Federal Credit Union responded to Equifax's ACDV for the auto account, verifying that it belonged to Mr. Bruce and that the account should report as a charged off account with a balance of $31,794 and a date of first delinquency of October 2016. Pentagon Federal Credit Union changed the date of last payment from October 2017 to December 2017.

41. On June 8, 2022 Pentagon Federal Credit Union responded to Equifax's ACDV for the credit card account, verifying that it belonged to Mr. Bruce and that the account should report as a charged off account with a balance of $13,777, a date of first delinquency of January 2017, and a date of last payment of December 2016.

42. In light of Pentagon Federal Credit Union's specific responses to the ACDVs for Mr. Bruce's specific accounts, Equifax's policies and procedures did not require it to take any specific action, and, as a result, Equifax made no changes to the accounts as they appeared on Mr. Bruce's credit file. On June 8, 2022, Equifax sent Mr. Bruce a reinvestigation results letter, which is included with this Declaration to be submitted with Equifax's Motion for Summary Judgment as Exhibit D.

-8-

Executed on April 8, 2025 in Atlanta, Georgia.

                                                                 */s/ Shetonjela Barber*
                                                                      Shetonjela Barber