Record/FILE ON DEMAND                    U.S.P.S. Priority Mail Tracking No. 9405 5301 0935 5181 4320 24

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| Nelson L. Bruce,<br><br>     Plaintiff,<br><br>v.<br><br>Pentagon Federal Credit Union; et al.<br><br>     Defendants. | Case No.: 2:22-cv-02211-BHH-MGB<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT PENTAGON FEDERAL CREDIT UNION'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT (ECF NO.'S 413 and 413-1)** |

### I. INTRODUCTION

COMES NOW Plaintiff Nelson L. Bruce, and respectfully presentes this Memorandum in Opposition to Defendant Pentagon Federal Credit Union's ("PenFed") Motion for Summary Judgment. As demonstrated herein, Defendant's Motion fails to establish that there is no genuine dispute of material fact, and summary judgment must be denied. PenFed continues to misrepresent the nature of Plaintiff's claims, misconstrue the governing legal standards, and ignore the extensive factual record developed in this case.

Defendant Pentagon Federal Credit Union ("PenFed") seeks summary judgment based on a series of unsupported factual conclusions, irrelevant character attacks, and misapplications of the Fair Credit Reporting Act ("FCRA"). Their memorandum mischaracterizes the central issues of this case and introduces materials that are not part of Plaintiff's complaint, including allegations related to Plaintiff's promissory notes and money orders. These instruments are not mentioned in any claim for relief, are not presented as part of any defense by Plaintiff, and are

Page **1** of **20**

wholly irrelevant to the dispute. The Defendant's attempt to frame Plaintiff as a frivolous litigant or suggest that the financial instruments are "phony" frivolous" or anything negative lacks legal foundation and factual merit. Plaintiff objects and dispute such allegations. The alleged instruments are not as alleged by PenFed. PenFed never processed, validated, nor lawfully rejected the instruments by attempting to process them through the federal reserve, thereby disqualifying them from making such an assertion as this is just hearsay. These instruments are outside of the claims in this case, are irrelevant and has no effect on the claims that plaintiff presented in this case. This is an unsuccessful attempt by PenFed to deflect from the main issues at hand against them as the complaint presents.

Further, PenFed's assertion of certain facts as "undisputed" is not legally accurate. Genuine issues of material fact remain regarding the reporting of charged-off debts, the status of transferred accounts in accords with industry standards when transferred via assignment and the failure to properly code consumer disputes in accordance with Metro 2 and Appendix E to Regulation V. The Plaintiff has produced evidence showing that PenFed continued to report balances and account statuses after assigning, pledging, or disposing of the debts without applying the required "transferred" status zeroing out the balances as required. Their reporting is misleading, incomplete, false, reported with the reckless and malicious in intent to injure the plaintiff, his creditworthiness, credit score, credit term, and reputation and also affecting plaintiff emotionally a presented in his 4th Amended Complaint which violates the standards imposed under the FCRA. Pleinaitff hereby incorporates by reference this courts prior ruling in its R&R, and order granting plaintiff's case to proceed (see…ECF No.'s 132 and 154) his memorandum in opposition to Equifax motion for summary judgment, his sur-reply to their reply and attached exhibits by reference to support any claims and allegations to support his claims against PenFed.

Accordingly, summary judgment is not appropriate, and PenFed's motion must be denied in its entirety.

Plaintiff has properly pled and presented evidence in support of the three remaining claims, the Fair Credit Reporting Act ("FCRA"), including 15 U.S.C. § 1681s-2(b), as well as state defamation laws, and the Uniform Commercial Code ("UCC") § 9-210 and state equivalent 36-9-210. (See…ECF No. 291 4th amended complaint) filed on the record. Each claim presents material factual disputes precluding summary judgment. Defendant Pentagon Federal Credit Union's ("PenFed") Motion for Summary Judgment must be denied in full because it fails to refute the core factual and legal issues raised in Plaintiff's Fourth Amended Complaint, and instead relies on conclusory denials, mischaracterization of the pleadings, and disputed factual assertions that require resolution by a jury.

## II. STANDARD OF REVIEW

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. It is appropriate only if the moving party can demonstrate that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. **See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).** The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. ***Tolan v. Cotton*, 572 U.S. 650, 657 (2014).**

A dispute is genuine if a reasonable jury could return a verdict for the non-moving party. *Id.* A fact is material if it might affect the outcome of the suit under the governing law. ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).** Even where the moving party asserts that material facts are not in dispute, the court may not weigh the evidence or make credibility determinations; that role is reserved exclusively for the factfinder. *Reeves v.*

*Sanderson Plumbing Prods., Inc.*, **530 U.S. 133, 150 (2000).**

In this case, PenFed bears the burden of demonstrating the absence of genuine issues of material fact. Plaintiff, as the nonmoving party, is entitled to every reasonable inference that can be drawn from the record. Because significant factual disputes exist—including but not limited to the actual ownership status of the accounts, the reporting of balances post-charge-off, the application of dispute codes, and the treatment of financial instruments—summary judgment must be denied.

### III.   UNDISPUTED FACTS

Judicial Notice is respectfully requested for the following material facts, which are either undisputed by the Defendant or supported by record evidence, and which form the basis of Plaintiff's claims allowed to proceed by the Court:

1. PenFed reported balances on Plaintiff's credit file following charge-off, without identifying the accounts as transferred as a result of assignments or sold in compliance with Metro 2 standards and **Appendix E to Regulation V.** Under **Regulation V, Appendix E** when an account is sold or assigned to collections, it is required to be reported as transferred.
   **See…https://www.consumerfinance.gov/rules-policy/regulations/1022/e/**

2. PenFed failed to report a "zero balance" and/or apply the "transferred" or "sold" account status codes "05 (Account Transferred) and "O" (Transferred to another company/servicer), as mandated by industry-standard reporting requirements under the Credit Reporting Resource Guide (CRRG) which required a zero balance be reported to evidence the transfer to third party collections who is collecting on the alleged debt balances. (See…ECF No. 421-2)

3. Plaintiff submitted disputes through the consumer reporting agencies concerning these accounts (see…ECF No. 1-2, Exhibit A), and PenFed failed to apply the required Compliance Condition Codes "XE" (under investigation) or "XG" (consumer disagrees), as mandated by Metro 2. (See…ECF No. 421-2)

4. PenFed has not attempted to collect the alleged debts from Plaintiff directly following their charge-off and has not shown any lawful ownership or servicing of the accounts thereafter.

5. Plaintiff submitted valid financial instruments promissory notes and Bills of Exchanges (money orders/negotiable instruments) in lawful tender, which PenFed chose not to

negotiate therefore dishonored, rejected without processing or legal evaluation. These instruments are not addressed in the operative complaint and are irrelevant to the FCRA and state law claims; however, they were improperly introduced by Defendant as a character attack. Plaintiff objects.

6. Plaintiff made a formal request under **UCC § 9-210** et seq. and **S.C. Code § 36-9-210** et seq. for an authenticated record of accounting (See...ECF No. 1-2) of collateral and a statement of obligations, directed to PenFed. This request was issued in accordance with secured transaction law, and PenFed failed to respond as required, producing an authenticated record of accounting. Plaintiff's claim under these statutes remains active and unchallenged in the current proceeding and PenFed has not proven that they properly responded to this request as the has already determined that PenFed violated this section of the law (See...ECF No. 132 at 19)

7. Defendant's summary judgment motion mischaracterizes these facts and fails to account for their legal consequences under federal and state law, including the FCRA, Metro 2 (see...ECF No. 421-2, Exhibit 43), Appendix E, UCC 9-210 and 36-9-210 and common law defamation. (See...ECF No. 291)

8. There is a genuine dispute of material fact as to **whether and when National Credit Control (NCC)** transferred its right to collect on Plaintiff's auto loan and line of credit accounts back to PenFed. Plaintiff contends that these accounts were previously assigned or transferred to NCC, yet PenFed continued reporting an outdated status and asserting ownership without clearly establishing when, or if, those rights were legally reacquired. This dispute affects standing, enforcement rights, and the accuracy of credit reporting. Plaintiff is entitled to inspect the relevant assignment and reassignment contracts to determine the legal status of these obligations at each reporting interval should there it be lawfully decided that a furnisher and ownership rights are distinct from each other affecting the requirements to report the current status of the accounts correctly and accurately.

9. As to the credit card account, Plaintiff acknowledges that documentary evidence in the record shows NCC returned that account to PenFed in or around **December 2022 (See...ECF No. 421-1)**. This specific timeline, however, only reinforces the material factual dispute regarding the **auto loan and line of credit**, for which no such timeline or contract production has yet been made.

10. Plaintiff has had several credit denials where the PenFed account has been disseminated to which adversely effected the lenders decisions and plaintiff's credit scores supporting his damages as presented in his 4th amended complaint. (See...Exhibit 59).

11. PenFeds own records evidence that they assign and transferred all accounts debts for collections through NCC since 2018. (see...ECF No. 421-5, exhibit 46).

12. PenFed under their own internal policies and statement evidence that they comply with consumer laws such as the FCRA, that they follow the Credit Reporting Resource Guide "CRRG" as standard for furnishing data to the CRA's which ensure compliance with

applicable regulation, the same regulations that require them to report the current status of an account, which when assigned, is reported as transferred however they deviated from this reporting leaving it incomplete and inaccurate. (See...Exhibit 59-1 and 59-2).

13. PenFed as a data furnisher has contractually agreed and are regulatory obligated under **Regulation V, Appendix E** to be in compliance with industry standards, therefore are obligated to report in Metro 2 form and follow guidelines of the CRRG however with this knowledge and understanding, deviated from it by failing to update the current status of the account, as transferred to external collections with a zero balance to support a transfer to third party collections, indicating that another party is collecting and not PenFed. (see...Exhibit 59-3 and 59-4).

14. PenFed is and or has been reporting a zero balance on the auto loan and line of credit accounts with Experian but balances with Equifax and Trans Union, clearly evidencing inconsistent, inaccurate, and incomplete information (see...ECF No. 1-3, Exhibit B)

15. PenFed received ACDV's created for plaintiff's directing them to respond and conduct an investigation therefore they received the disputes of the plaintiff were required to conduct a reasonable investigation of their records and failed to do so as reasonable investigation could have resulted in uncovering the inaccuracies and incomplete information by looking into the charged off accounts and the transactions in their own database that could have resulted in uncovering that the accounts have been assigned to 3rd party collections. (See...Exhibit 59-8)

16. Plaintiff's December 27, 2021 call to PenFed asking about charge-off's resulted in uncovering that accounts have been assigned and or sold to third parties. If this can be uncovered by a simple call, there is no excuse that anyone conducting in investigation could not discover this especially if it is part of their own records.

17. This court granted plaintiff's relief from its prior ruling that his May 2022 dispute letter did not trigger a duty to investigate therefore is actionable and PenFed along with Equifax was required to and have conducted an investigation as there were results produced as a result of the re-investigation. See...ECF No. 292 at 17-20 and Exhibits 59-3-59-4.

## IV. STATEMENT OF MATERIAL FACTS IN DISPUTE

Plaintiff respectfully presents that genuine disputes of material fact exist as to the following, precluding summary judgment under Fed. R. Civ. P. 56:

1. **Whether PenFed Furnished Inaccurate, incomplete or Materially Misleading Information to the CRA defendants.**

   - PenFed reported Plaintiff's three accounts including a credit card, a line of credit, and an auto loan as delinquent, charged-off, and collectible with balances due directly to PenFed, even after (a) the accounts had been internally charged-off, (b) PenFed transfers/assigned

collections to third parties, and (c) Plaintiff presented multiple disputes notifying both PenFed and the CRA defendants of inaccurate, incomplete information being reported. **Disputes**: See Exhibit A ECF No. 1-2 which is hereby incorporated by reference;

- **Reporting Misstatements**: PenFed continued to report the accounts without required Metro 2 dispute codes (e.g., "XC" [FCRA direct dispute investigation completed — consumer disagrees with the results of the data furnisher's investigation], "XG" [FCBA dispute investigation completed — consumer disagrees with the results of the data furnisher's investigation], "05" [Account transferred, Requires Current Balance and Amount Past Due = zero] and "O" [Account Transferred to Another Company/Servicer]), See…ECF No. 421-3, despite knowing that Plaintiff actively disputed the accounts and the balances reported (see…ECF 1-2, Exhibit A).

- **PenFed's Own Statements**: A PenFed letter misidentifies that the status of the credit card account as "sold to UHG" when it was assigned to NCC along with the other 2 accounts since April 2018 (see…. Craig Olson's Second Declaration, ¶¶'s 17–20 (ECF No. 410-10 at 1-7) admitting that NCC was collecting, not PenFed since April of 2018 The line of credit was "assigned to NCC for collection." (See ECF No. 1-4, at pg. 3). However, PenFed also internally contradicts this, leading to ambiguity over who legally owned the accounts. This is a material factual dispute for jury determination.

2. **Whether PenFed Failed to Conduct a Reasonable Investigation under 15 U.S.C. § 1681s-2(b).**

- PenFed received Plaintiff's disputes both directly and via ACDV communications from the CRA defendants and failed to investigate the basis of the disputes, respond with documentary evidence, or apply correct dispute indicators.

- The FCBA dispute incorporated in Plaintiff's January 2021 letter (ECF No. 1-2, Exhibit A) and subsequent follow-up putting PenFed on notice of specific factual challenges concerning balance accuracy, charge-off dates, and failure to reflect assignments to external collections.

- No evidence has been produced by PenFed showing that it conducted a meaningful investigation or reviewed the substance of Plaintiff's dispute, including any authenticated records of accounting, account ownership records, transactional ledgers, or audit trails. See **Barber Decl.**, ECF No. 427-1 (generally parrots PenFed's verification without deeper review).

3. **Whether PenFed Knew or Should Have Known the Accounts Were Inaccurate or Misleading Based on Plaintiff's Disputes and PenFed's Own Records.**

- As stated, PenFed issued a letter to Plaintiff stating the accounts had been assigned or sold (see…ECF No. 1-4 at 3, Exhibit C), but later denies that those sales occurred, creating a credibility issue and disputed factual record.

- The failure to apply dispute codes, to acknowledge receipt of FCBA disputes, and to explain the basis for continued balance reporting after assigning/transferring the collections supports the inference that PenFed acted with willful disregard or recklessness and malice against the consumer plaintiff. **See: *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007)** (reckless disregard standard); ***Beattie v. NationsCredit Fin. Servs. Corp.*, 69 Fed. App'x 585, 590–91 (4th Cir. 2003)** (recklessness under the FCRA satisfies malice).

4. **Whether the Factual Ambiguities Concerning Account Ownership, Assignments, and Charge-Off Status Were Properly Disclosed to all CRA defendants.**

    - The evidence reflects that PenFed (a) internally charged off Plaintiff's accounts, (b) communicated assignments to third parties, and (c) failed to reflect those material account status changes in reports to the CRA defendants despite clear Metro 2/CRRG and Regulation V, Appendix E guidelines requiring notation of "Account Transferred" (Compliance Condition Code "05") (see…ECF No. 421-2) and a balance being reported as zero and past due amount as zero to show that a third party was collecting and that PenFed was not the party collecting or attempting to collect on the alleged debt balances. Reporting a zero balance indicates that the collections have been transferred not that the account has been paid as there is a compliance condition code for that.

    - The Consumer Data Industry Association's Credit Reporting Resource Guide (CRRG), while not law, is the recognized industry standard incorporated into Metro 2 reporting and provides the framework for determining whether information reported by furnishers is "accurate" and "complete" under the FCRA. The CRRG/Metro 2 is relevant to the inquiry of reasonableness and material accuracy.

5. **Whether Plaintiff Suffered Concrete Damages as a Result of Inaccurate Credit Reporting.**

    - Plaintiff presented evidence of credit denials occurring **after** the disputed reporting of the PenFed tradelines (see…Exhibit 59-1).

    - Plaintiff also suffered **emotional distress,** reputational harm, and impaired financial opportunities due to the continued publication of disputed, inaccurate and incomplete tradelines.

These material facts are **genuinely disputed,** are supported by evidence in the record, and must be resolved by a jury. Accordingly, summary judgment is inappropriate and must be denied.

V. **LEGAL ARGUMENT**

   A. **PenFed Violated the FCRA by Failing to Report Accurate and Complete Account Information Post-Assignment**

Under 15 U.S.C. § 1681s-2(b), any furnisher of information who receives notice of a consumer dispute must conduct a reasonable investigation and update or delete any information that is inaccurate or incomplete. The Fourth Circuit has held that credit reporting is inaccurate not only when "patently incorrect," but also when "misleading in such a way and to such an extent that it can be expected to have an adverse effect." ***Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001)** (*"A report is inaccurate not only when it is patently incorrect, but also when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect."*)

PenFed reported Plaintiff's accounts with active balances after the accounts had been charged off, transferred to via assignment to National Credit Control (NCC), or otherwise reassigned, without updating the Metro 2 account status to reflect "Transferred," "Assigned," or "Sold." Under Metro 2 (ECF No. 421-2, CRRG 2020, FAQ 46 at Exhibits 6 & 7), furnishers must report zero balances on transferred accounts as the code for federl regulations appear to treat them As supported by the record, Plaintiff presented written disputes to Equifax, Experian, Trans Union and PenFed in January 2021and March of 2021, in September 2021 and May of 2022 including correspondence invoking re-investigations under the Fair Credit Billing Act (FCBA) and requesting investigation, validation and verification of the alleged debts (see **ECF No. 291 at ¶¶'s 51, 70, 71, 72, 93-95**) These disputes were ignored or insufficiently addressed. as, along with the correct Special Comment Codes. PenFed failed to do so.

PenFeds Own internal transactions evidence that when they deducts full or partial charge-offs of financial assets from the allowance for loan losses, that any recoveries are credited to the Allowance account evidencing that there is an internal transaction that offsets the charged-off account balance and the balance in now associated with the allowance account which is a totally

separate account from what's being reported and that there is no balance to offset once this transaction takes place otherwise the charged-off account would be the account credited to offset the alleged balance. Further supporting a transaction that effectively transfers the balance to a different account, the allowance account (See…Exhibit 59-5, 59-6, 59-7)

**B.    PenFed Failed to Apply Required Dispute Codes XE and or XG as Mandated by Metro 2 Standards**

When Plaintiff submitted consumer disputes to the credit reporting agencies, PenFed was required to apply Compliance Condition Code "XE" to indicate an open investigation or "XG" to indicate that the consumer disagrees with the outcome. See…***Hansen v. Mountain America FCU*, No. 2:22-cv-00254, 2023 WL 2920080 (D. Utah 2023)**, where it was inferred that, "the reporting standards for credit unions like MACU are encoded in the Metro 2 guidelines published by the Consumer Data Industry Association. But the guidelines were not before the court. That is not the case here. Plaintiff has provided the court the entire guideline to support his claims of inaccuracy and incomplete information reported by PenFed who had sufficient knowledge of their records and still did not update nor correct them. PenFed's failure to code Plaintiff's disputes accordingly caused inaccurate impressions that the accounts were undisputed, and therefore violated § 1681s-2(b) and the duty of integrity under Appendix E to Regulation V.

**C.    PenFed's Labeling of Promissory Notes and Bills of Exchanges (Money Orders) as "fake, phony, Frivolous" Is Legally and Factually Deficient**

Defendant improperly introduced Plaintiff's promissory notes and money orders into its motion as irrelevant allegations not tied to any claim or defense in this case. These instruments are not part of the complaint and were not used to allege payment under the FCRA or any statutory obligation.

Regardless, Plaintiff objects to the assertion of fraud. These are lawful financial

instruments that were never processed, reviewed, or formally denied by PenFed providing a reason why they could not be processed. Defendant lacks standing or authority to assert they are "frivolous" or "fake, phony." Plaintiff has also provided evidence that the Federal Reserve recognizes promissory notes as lawful collateral and security for credit facilities. See, e.g., Fed. Res. Collateral Guidelines. Assertions of fraud made without investigation or evidentiary process are improper and legally immaterial to the issues before the Court and have been presented to distract from the main issues in this case.

**D.     PenFed's Refusal to Comply with UCC § 9-210 / S.C. Code § 36-9-210 Constitutes a Violation of Commercial Rights**

Plaintiff made a lawful request to PenFed for a statement of account, and authenticated record of accounting under Uniform Commercial Code § 9-210 and South Carolina Code § 36-9-210. The statute mandates that a secured party must respond to such a request when holding an interest in a security agreement. PenFed failed to comply. This failure supports Plaintiff's commercial law claims and shows continued concealment of material account disposition facts relevant to this case. The defendants

**E.     PenFed's Continued Reporting of Post-Assignment Balances Constitutes Defamation**

Defendant's argument misrepresents the legal standard and misapplies the preemption clause of the FCRA. While § 1681h(e) preempts common-law defamation claims generally, it explicitly preserves liability where the plaintiff demonstrates "malice or willful intent to injure." Plaintiff's allegations and factual showing meet this standard.

PenFed knowingly furnished inaccurate, incomplete, false and misleading information to consumer reporting agencies by reporting charged-off and assigned debts with active balances and failing to update the accounts as "transferred," "assigned," or "sold" in accordance with

Metro 2 and Appendix E to Regulation V. These misrepresentations were not clerical errors or innocent mistakes. They followed actual notice, repeated disputes, and documented communication from Plaintiff contesting the reporting and requesting correction. PenFed disregarded those communications, ignored dispute codes they themselves by agreed by contract and their own policies to follow which is an industry standard, and continued furnishing inaccurate and damaging information indicating a prior status that is not current. Such conduct satisfies the standard of "conscious indifference" and "reckless disregard" under South Carolina law. In ***Murray v. Holnam, Inc.,* 542 S.E.2d 743, 750 (S.C. 2001),** the Supreme Court of South Carolina held that malice may be inferred where a party demonstrates reckless indifference to another's legal rights. Plaintiff's repeated disputes and legal notices placed PenFed on actual notice of inaccuracy, gave them the opportunity to update and correct the reporting in accords with their records and policies following industry standards. Their willful continuation constitutes actionable malice. No case requires a plaintiff to produce a confession of ill will or a smoking gun. Malice may be inferred from conduct, intent, and pattern. Plaintiff's call to PenFed on December 27, 2021 confirms that reviewing a charge-off uncovers transfers to third parties so receiving a dispute about charge-off's requiring to be reported with a zero balance triggers the investigation needed to determine how an account should be reported once transferred or sold to a third party which their records document.

Additionally, the court in ***Ross v. F.D.I.C.,* 625 F.3d 808, 814 (4th Cir. 2010),** explicitly upheld the malice exception under § 1681h(e), clarifying that FCRA does not insulate furnishers from liability where they act with willful indifference.

The "Truth" Defense Fails When the Reported Information Was Incomplete, Misleading, or Contextually False. PenFed's invocation of the "truth" defense is legally insufficient. Under

South Carolina defamation law, truth is a defense only where the published statement is fully accurate and not misleading by omission or implication. **See...*Parrish v. Allison*, 656 S.E.2d 382, 391 (S.C. Ct. App. 2007).**

PenFed's credit reporting omitted key information: it did not reflect that certain accounts had been assigned/transferred to NCC or placed into non-collection status. It continued reporting balances and statuses after charge-off, in contradiction to industry standards. The Fourth Circuit and other courts recognize that incomplete or misleading publication can sustain defamation even if discrete facts are technically true. See Dalton v. Capital Associated Indus., Inc., 257 F.3d 409, 415 (4th Cir. 2001): "A report is inaccurate not only when it is patently incorrect, but also when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect."

The argument that PenFed "retained ownership" is itself disputed. There is a genuine issue of material fact as to whether and when PenFed reassumed the accounts from NCC. As shown earlier, the credit card account was returned to PenFed in December 2022, the line of credit is still assigned to NCC but the auto loan remains in factual dispute. Thus, even if "ownership" were relevant to defamation (which it is not), that question is unresolved and cannot be used as a factual defense on summary judgment.

Finally, PenFed's refusal to mark the accounts with correct status codes, refusal to apply dispute indicators, and continued publication of disputed data after multiple notices constitute actual malice under § 1681h(e) with willful intent to injure the consumer it is adversely affecting and actionable defamation under South Carolina law.

### F. Plaintiff's Claim Under S.C. Code § 36-9-210 Is Valid, Actionable, and Jurisdictionally Proper

PenFed admits that its response to Plaintiff's April 4, 2022 letter **did not comply with**

**the statutory definition of an "accounting"** under S.C. Code § 36-9-210 and § 36-9-102(a)(4). This alone constitutes a violation. Their only defense is a claim of "reasonable cause" to disregard the request, based on prior litigation history and PenFed's **subjective belief** that Plaintiff was not serious.

However, the statute does **not excuse noncompliance based on subjective beliefs** or prejudgments about a debtor's intent. Section 36-9-625(f) imposes liability unless the secured party proves that it failed to respond **"with reasonable cause."** Courts applying this standard have held that **failure to furnish the required accounting is actionable if the request is facially legitimate,** regardless of the secured party's opinions or assumptions. See *In re McKnight*, **136 B.R. 891, 892 (Bankr. S.D. Ga. 1992)** (Secured creditor's refusal to provide § 9-210 statement was improper where the request complied with statutory terms).

Here, Plaintiff's request was:

- Clearly dated and signed.
- Issued pursuant to UCC § 9-210 and South Carolina Code § 36-9-210.
- Specific to the obligation, identifying the debt and demanding an accounting as defined by law.

Nowhere in § 36-9-210 does the statute allow a creditor to disregard a request based on **allegations of litigation, settlement proposals, or prior disputes**. Such allegations are irrelevant to the statutory obligation. **PenFed's excuse that Plaintiff "wasn't serious" is both extralegal and defamatory,** as it accuses Plaintiff of impropriety in the exercise of a codified right. If a creditor could disregard § 36-9-210 notices based on litigation animus or subjective opinions, the statute would be nullified. If anything, by bring up prior litigations, it further supports that plaintiff was serious as it suggests that a lawsuit would be brought if not complied with.

**The "Call Us" Excuse Does Not Satisfy the Law**

PenFed claims that Plaintiff could have "just called" to learn the account balance. This argument ignores the statute's definition of "accounting," which mandates an **authenticated written record** detailing aggregate unpaid obligations and their components. A phone call does not qualify as compliance. See…§ 36-9-102(a)(4), (a)(7).

**Concrete Harm and Standing Are Established**

Contrary to PenFed's assertion, Plaintiff has standing under Article III. In *TransUnion LLC v. Ramirez*, **594 U.S. 413 (2021)**, the Supreme Court held that concrete injury can include reputational harm, denial of information, and economic loss. Plaintiff's inability to obtain the accounting:

- Impaired his ability to verify the accuracy of PenFed's credit reporting;
- Obstructed his ability to cure or challenge debt status;
- Led to reputational and legal harm through continued misreporting as it led to PenFed finally admitting that accounts were with third parties whether sold or assigned.

The harm is neither abstract nor procedural. It is specific and traceable to PenFed's unlawful refusal to provide the statutory accounting.

**Supplemental Jurisdiction Must Be Retained**

PenFed's argument under 28 U.S.C. § 1367(c)(3) is premature. Plaintiff's FCRA and defamation claims remain active and are not dismissed. Supplemental jurisdiction applies **as long as at least one federal claim remains. See…*Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995).** Even if only the § 36-9-210 claim survives, it warrants adjudication as it is part of the same case or controversy under Article III.

Further, the $500 statutory penalty is a **legislatively defined injury** actionable by itself. *Spokeo, Inc. v. Robins*, **578 U.S. 330, 340 (2016),** confirms that **Congress and state legislatures may create statutory rights**, and violations of those rights may constitute injury in fact. Plaintiff is also entitled to Loss caused by a failure to comply may include loss resulting

from the debtor's inability to obtain, or increased costs of, alternative financing as presented in this case.

## VI. NO DISTINCTION UNDER FCRA BETWEEN OWNERSHIP AND REPORTING RIGHTS

Under the Fair Credit Reporting Act (FCRA), there exists no statutory distinction between ownership rights and the right to report consumer account data. The law applies obligations to any party who furnishes information to a consumer reporting agency regardless of whether that party owns the underlying account or merely services, collects, or manages it. **See *15 U.S.C. § 1681s-2(a)-(b)*.**

The Code of Federal Regulations similarly defines a "furnisher" as any entity that "provides information to a consumer reporting agency" about a consumer **(12 C.F.R. § 1022, Appendix E).** Thus, the act of furnishing itself not ownership triggers the legal duties of accuracy, integrity, and completeness. This is further confirmed by Metro 2 standards, which require that data furnishers update all reporting fields to reflect changes in status, including transfers, assignments, and collections.

A party in possession of a debt or account, whether by sale, assignment, securitization, or internal transfer, inherits the corresponding duty to report that account accurately. This includes reporting it as "transferred," "sold," "assigned," or "returned," and updating balance and status fields accordingly. Any contrary reporting misleads downstream users and violates both FCRA § 1681e(b) and § 1681s-2(b).

Therefore, PenFed's reliance on a contested claim of "continued ownership" is legally irrelevant. It does not negate their status as a data furnisher under the FCRA. Their obligations to report with integrity—under federal law, Metro 2, and the CRRG exist regardless of whether the account was legally transferred or reassigned. If PenFed no longer had control of the account, it

had a duty to mark the account "transferred" and cease reporting balances. If PenFed resumed furnishing after reassignment, it had a duty to reflect the accurate date of reassignment and account status.

To allow a furnisher to sidestep liability by invoking a vague or contested ownership claim would nullify the statutory framework Congress enacted. The FCRA imposes duties upon the act of furnishing information to CRA's, not upon holding title to the debt.

## VII. THE EXISTENCE OF MATERIAL CONTROVERSY WARRANTS JURY DETERMINATION

This case is not suitable for summary judgment because the record reflects multiple **genuine disputes of material fact**—each of which must be resolved by a jury. Rule 56 does not empower the Court to weigh evidence or resolve factual disagreements. Instead, where reasonable minds could differ on the inferences to be drawn from the facts, the matter must be submitted to a jury. See ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).**

The controversies in this case include, but are not limited to:

1. Whether and when the auto loan was assigned/ transferred from PenFed to third-party entities (such as National Credit Control), and if or when it was returned to PenFed;

2. Whether PenFed violated the Fair Credit Reporting Act and Metro 2 reporting standards by continuing to report balances, omitting required transfer status, and failing to apply proper dispute codes supporting the current status;

3. Whether PenFed's refusal to provide a proper UCC § 36-9-210 accounting was reasonable or constituted willful noncompliance;

4. Whether PenFed's continued publication of disputed and potentially transferred account data constitutes defamation made with malice or willful intent to injure;

5. Whether Plaintiff suffered reputational, economic, emotional or legal harm as a result of PenFed's credit reporting and refusal to comply with federal and state legal obligations.

Each of these issues contains disputed facts, unresolved questions of credibility, and

conflicting evidence, making summary judgment improper. As such, this Court must preserve the function of the jury as the constitutional trier of fact.

> See...***Tolan v. Cotton*, 572 U.S. 650, 657 (2014):** *"By weighing the evidence and reaching factual inferences contrary to [the nonmovant's] competent evidence, the court below neglected to adhere to the fundamental principle that at the summary judgment stage, reasonable inferences are to be drawn in favor of the nonmoving party."*

This controversy is neither speculative nor collateral. It concerns federally protected consumer rights, statutory compliance by financial institutions, and the reputational standing of a living person. A jury must decide.

## VIII.   CONCLUSION

Defendant Pentagon Federal Credit Union has failed to meet its burden under Rule 56 to show that no genuine issues of material fact exist. Plaintiff has established, with evidentiary support, that PenFed:

- Reported materially misleading and inaccurate credit information in violation of the Fair Credit Reporting Act and industry standards;
- Disregarded federal Metro 2 guidelines and Appendix E to Regulation V;
- Failed to apply required dispute coding, continued furnishing after assignment or charge-off, and omitted "transferred" statuses for sold and assigned accounts current statuses;
- Willfully ignored a lawful UCC § 36-9-210 request for accounting, without reasonable cause;
- Publicly disseminated damaging and disputed account data with malice or reckless disregard for the truth;
- Triggered concrete harm in the form of reputational damage, legal obstruction, and denial of statutorily protected commercial rights.

Each of these claims remains supported by lawfully preserved evidence and raises factual controversies that must be resolved by a jury. Defendant's attempt to rewrite the facts, shift the burden, and misrepresent the law cannot shield it from judicial accountability. Summary judgment must be denied in its entirety. Plaintiff has demonstrated both the legal basis and material factual disputes necessary to proceed to trial on all claims.

Dated this 14th day of May, 2025.

RESPECTFULLY PRESENTED,

*Nelson L. Bruce*

Nelson L. Bruce, Sui Juris
All Secured Natural Rights Explicitly Reserved and Retained "with prejudice"
P.O. BOX 3345, Summerville, South Carolina [29484]
Phone: 843-437-7901
Email: leonbruce81@yahoo.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served to all parties on the service list **via the CM/ECF system.** Dated this 14th day of May, 2025.

**SENT TO:**

Willson Jones Carter & Baxley, P.A.
**Attention: G. Troy Thames**
4922 O'Hear Avenue, Suite 301
North Charleston, SC 29405
*Attorney for Pentagon Federal Credit Union*

Eckert Seamans Cherin & Mellott, LLC
**Attn.: Michael A. Graziano & Sarah A. James**
1717 Pennsylvania Avenue, N.W., Suite 1200
Washington, D.C. 20006
*Attorney for Pentagon Federal Credit Union*

Wyche PA
**Attention: Rita Bolt Barker**
200 E Broad Street, Suite 400
Greenville, SC 29601-2892
*Attorney for Equifax*

Seyfarth Shaw, LLP
**Attention: Eric F Barton**
1075 Peachtree Street NE, Suite 2500
Atlanta, GA 30309
*Attorney for Equifax*

Adams and Reese LLP
**Attention: Lyndey Ritz Zwing Bryant**
1221 Main Street, Suite 1200
Columbia, SC 29201
*Attorney for Experian*

Clement Rivers LLP
**Attention: Wilbur Eugene Johnson**
25 Calhoun Street, Suite 400
Charleston, SC 29401
*Attorney for Trans Union, LLC*

Jones Day
ATTN: **Grant Edward Schnell**
1221 Peachtree Street NE, Suite 400
Atlanta, GA 30361
*Attorney for Experian*

William J. Farley III
**Attention: Troutman Pepper Hamilton Sanders LLP**
301 S. College Street, Suite 3400
Charlotte, NC 28202
*Attorney for Defendant LexisNexis Risk Solutions, Inc.*

Troutman Pepper
**Attn: Susan Jean Lloyd**
One Wachovia Center
301 South College Street, Suite 3400
Charlotte, NC 28202
*Attorney for Def. LNRS*

_____
Nelson L. Bruce, Sui Juris
All Secured Natural Rights Explicitly Reserved and Retained "with prejudice"
c/o P.O. Box 3345, Summerville, South Carolina 29484
Phone: 843-437-7901
leonbruce81@yahoo.com