Record/FILE ON DEMAND       U.S.P.S. Priority Mail Tracking No. 9405 5301 0935 5188 8660 37

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Nelson L. Bruce, <br><br>          Plaintiff, <br><br> v. <br><br> Pentagon Federal Credit Union; et al. <br><br>          Defendants. | Case No.: 2:22-cv-02211-BHH-MGB <br><br> **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC. ("EXPERIAN") MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT (ECF NO.'S 415 and 415-1)** |

## I.    INTRODUCTION

COMES NOW Plaintiff Nelson L. Bruce respectfully opposes the Motion and

Memorandum for Summary Judgment (ECF No. 415 and 415-1) filed by Defendant Experian

Information Solutions, Inc. ("Experian"). Experian's motion fails as a matter of law and fact. Its

33-page submission is premised on materially incomplete assertions, unsupported factual

conclusions, and misapplications of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§

1681–1681x. The FCRA is a remedial statute designed to protect consumers. See...**Sullivan v.**

**Greenwood Credit Union, 520 F.3d 70, 73 n.3 (1st Cir. 2008).**

At the core of this action is Experian's repeated and ongoing publication of materially

inaccurate, misleading, and incomplete tradelines regarding Plaintiff's former accounts with

Pentagon Federal Credit Union ("PenFed"). Experian reported charged-off balances and past-due

statuses on accounts that had already been assigned and transferred to third-party collectors and

whose balances should have been zeroed per Metro 2, CRRG guidelines and as Regulated under

Regulation V, Appendix E to accurately and completely reflect the current status of the accounts post charge-off. These inaccuracies directly resulted in credit denials, reputational harm, and systemic noncompliance with Experian's duty to assure maximum possible accuracy under § 1681e(b), its duties to investigate and correct errors under § 1681i and its duties as a data furnisher when furnishing information to third parties under 1681s-2(b).

Experian attempts to dismiss these facts by mischaracterizing the legal standards, misstating Plaintiff's evidentiary submissions, and selectively omitting binding case law and CRRG/Metro 2/Regulation V obligations. Experian further ignores Plaintiff's federal reserve-based evidence demonstrating that PenFed no longer retained ownership of the alleged debt and that Experian continued reporting false ownership and balances after assignment/transfer to a third party. Under the Fair Credit Reporting Act (FCRA), there exists no statutory distinction between ownership rights and the right to report consumer account data. The law applies obligations to any party who furnishes information to a consumer reporting agency regardless of whether that party owns the underlying account or merely services, collects, or manages it. See 15 U.S.C. § 1681s-2(a)-(b). The Code of Federal Regulations similarly defines a "furnisher" as any entity that "provides information to a consumer reporting agency" about a consumer (12 C.F.R. § 1022, Appendix E). Thus, the act of furnishing itself not ownership triggers the legal duties of accuracy, integrity, and completeness. In this case, Regulation V requires PenFed, the data furnisher who transferred the accounts to third party collections to report the current status of the assigned accounts the same as if it was sold, it must be reported as transferred, and Metro 2/CRRG required the transferred accounts to be reported with a zero balance, zero amount past due to reference the transfer to third party collections as the current status. Further, Experian failed to re-investigate plaintiff's specific FCBA dispute while being in possession of

information and communications supporting that plaintiff disputed directly with PenFed on or about 1-28-2021 which it appears that PenFed failed to notify the CRA of this dispute, and that as of March 2021, plaintiff disagreed with the results however they failed to indicate that in plaintiff's consumer report which Experian had knowledge of further supporting that their investigation was unreasonable. These material disputes must be resolved by a jury.

Experian seeks summary judgment based on assertions of accurate reporting, reasonable procedures, absence of damages, and FCRA preemption. Plaintiff refutes these assertions with sworn evidence, certified disputes, Regulation V guidance, Metro 2 standards, and precedent from the Fourth Circuit and other jurisdictions. Plaintiff's FCRA §1681i claims against Experian remain live and were never challenged at the pleading stage, making summary judgment improper in the face of the evidentiary record. Accordingly, for the reasons set forth herein and in the documentary record including Experian's failure to accurately and completely report assigned accounts as transferred, accounts disputed under the FCBA, failure to include compliance condition codes, resulting from a failure to conduct a reasonable reinvestigation after multiple disputes summary judgment must be denied.

## II.    STANDARD OF REVIEW

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper only when the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one that might affect the outcome of the suit under governing law. ***Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).** A dispute of fact is "genuine" when the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id.

In ruling on summary judgment, the court must construe the evidence and all reasonable

inferences in the light most favorable to the non-moving party. *Tolan v. Cotton,* **572 U.S. 650,**

**657 (2014).** The court may not weigh evidence or make credibility determinations. *Reeves v.*

*Sanderson Plumbing Prods., Inc.,* **530 U.S. 133, 150 (2000).** When a pro se litigant such as

Plaintiff opposes summary judgment, the court must apply the standards "with special

solicitude," recognizing the non-movant's limited legal training and affording liberal

interpretation to the facts and pleadings. *Erickson v. Pardus,* **551 U.S. 89, 94 (2007);** *Gordon v.*

*Leeke,* **574 F.2d 1147, 1151 (4th Cir. 1978).**

Experian bears the burden of establishing that there are no triable issues of fact with

respect to Plaintiff's FCRA claims under 15 U.S.C. §§ 1681e(b), 1681i and 1681s-2(b). Because

Plaintiff has introduced direct and circumstantial evidence of Experian's inaccurate reporting,

failure to properly reinvestigate, failure to correct reporting when in possession of specific

information evidencing a transfer of accounts by assignment to third parties and Metro 2

noncompliance, summary judgment is inappropriate and must be denied.

## III.     STATEMENT OF UNDISPUTED FACTS

Judicial Notice is respectfully requested for the following material facts, which are

undisputed by the Defendant and or supported by record evidence, and which form the basis of

Plaintiff's claims allowed to proceed by the Court:

1.  Plaintiff Nelson L. Bruce is a natural person and "consumer" as defined in 15 U.S.C. §
    1681a(c), residing in South Carolina during all relevant times referenced in the claims;

2.  Defendant Experian Information Solutions, Inc. is a consumer reporting agency ("CRA") as
    defined under 15 U.S.C. § 1681a(f);

3.  **§ 1022.41** Defines **a furnisher** as an entity that furnishes information relating to consumers to
    one or more consumer reporting agencies for inclusion in a consumer report.   That Experian
    has not proven that it did not provide information to a consumer reporting agency solely to
    obtain a consumer report in accordance with sections 604(a) and (f) of the FCRA, that LNRS
    included the information obtained from Experian as part of their consumer report as evidenced

by plaintiff's exhibit which would exclude them from being a furnisher; (ECF No. 77.1 Exhibit E, LNRS June 20, 2022 dispute results)

4.  **§ 1022.41 Regulation V** prescribes that, "For purposes of this subpart and **appendix E** of this part, the following definitions apply (a) **Accuracy** means that information that a furnisher provides to a consumer reporting agency about **an account** or other relationship with the consumer **correctly**: (2) Reflects the consumer's performance **and other conduct with respect to the account** or other relationship; Assignment to a collection agency is part of the account's history and falls under "other conduct" with respect to the account, and thus is required to be reported under **Regulation V and Appendix E standards of accuracy and integrity** rendering the information reported inaccurate and incomplete also supported by the CFPB. (See…Exhibit 60)

5.  Experian makes it a mandatory requirement that Data Furnishers such as PenFed report consumer account information to them in Metro 2 format which is incorporated from the CRRG, that this is the industry standard to be able to report consumer information to Experian. See…      https://www.experian.com/business/solutions/data-furnisher-reporting/report-to-credit-bureau (Exhibit 60-3, Experian acknowledging that Metro 2 and the CRRG are the industry standard for reporting accurate and complete information about consumer accounts.)

6.  Plaintiff held consumer credit tradelines reported by Pentagon Federal Credit Union ("PenFed") on his Experian credit reports during the periods relevant to this litigation.

7.  PenFed charged off Plaintiff's accounts and subsequently assigned those accounts to third-party collectors, including United Holding Group and Nationwide Credit Corporation. The accounts were transferred via assignment.

8.  Upon transfer via assignment, PenFed ceased to own or service the accounts, as documented in the record and consistent with the definition and treatment of account assignment under Regulation V, Appendix E Guidance, which mandates that an assigned account be reported as transferred. **See…https://www.consumerfinance.gov/rules-policy/regulations/1022/e/**

9.  Pursuant to Metro 2 Format and the Credit Reporting Resource Guide (CRRG), and in accordance with Regulation V, Appendix E Guidance, accounts that are transferred via assignment must be reported with a zero balance and designated with Transfer Status Code "05" (Account transferred) and Special Comment Code "O" (Account transferred to another office) to inform the parties of the current status of the accounts. (see…ECF No. 421-2, Exhibit 43)

10. The FCRA as codified under 15 U.S. Code § 1681i(a)(1)(A) requires the "current status of the disputed information" be reported.

11. Reporting a charge-off ("status code"is a completely different status that reporting an account as being transferre/assigned to third party collections.  (see…Exhibit 60-2

12. Defendant Experian declaration of Christina Hamilton supports that PenFed is required to

update and verify the current **"status"** of the accounts in order for the information to be accurate, as she has stated that as a result of the ACDV and Penfed, "updating certain account information and verifying the reported **"status"** of their respective accounts as accurate". (see...Experian Exhibit D, ECF No. 415-5 at 7 ¶ 29) In this case, the current status as evidenced by the record and at the time of the plaintiff's September 2021 and April 30, 2022 disputes was **"Transferred"** to third party collections via assignment which triggers the requirement to report the accounts with a zero balance and zero amount past due to indicate current transfer status of the accounts to another company/servicer in order to be an accurate status reported. The absence of is materially misleading in evaluating a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living;

13. PenFed assigned all 3 accounts in question to NCC since April 2018; (see...ECF No. 421-5 Exhibit 46 ¶¶ 23,24 (Craig Olson 1st Declaration) and Experian Exhibit C, ECF No. 415-4 at 5 ¶ 19 (Craig Olson 2nd Declaration)).

14. It is the industry standard to report a transferred/assigned account that are transferred/assigned to third parties with a zero balance, and zero amount past due to completely and accurately reflect the current status of the accounts as being transferred regardless of whether the account is paid or not. (see...Exhibit 60-4 and ECF No. 421-9, Exhibit 50).

15. Experian continued to report the PenFed accounts with non-zero balances and past-due amounts after the transfer via assignment, without updating the Transfer Status to "05" or including the Special Comment Code "O," omitting the current status of the accounts in violation of established industry standards and Regulation V, Appendix E Guidance.

16. Following the October 2021 dispute response from Experian, Plaintiff contacted PenFed on or about December 27, 2021, and during this call PenFed rep. confirmed that accounts had been charged-off and are in the possession of third parties for collection, specifically directing Plaintiff to contact Nationwide Credit Corporation and another third parties for payment and affirming that PenFed was no longer collecting on the accounts nor any balances as they are reporting as if they are. This December 27, 2021 call directly undermines the adequacy of Experian's reinvestigation under 15 U.S.C. § 1681i, as any reasonable investigation into the charge-off could have uncovered that the accounts was externally transferred to another company/servicer for collections via assignment according to PenFed's records and should no longer reflect active balances and/or charge-off status. By omitting information such as the current status as transferred/assigned which would trigger the requirement to report the accounts with zero balances, zero amount past due to indicate that a third party was collecting, not PenFed (see...Exhibit 60-4 and ECF No. 421-9, Exhibit 50). A reasonable re-investigation into the charge-offs would uncovered that the current status of the accounts the same as uncovered during plaintiff's December 27, 2021 phone call to PenFed which supports that a reasonable investigation into PenFed's charge-off records could uncovere that a third party was collecting, not PenFed as the same contact information that PenFed provided to plaintiff in their April 11, 2022 correspondence was the same contact information provided on the call for plaintiff to reach out to for payment. (see...ECF No. 1-4, Exhibit C and Dec. 27, 2021 recorded call – ready for production upon request).

17. Plaintiff provided written disputes to Experian, including a dispute dated September 25, 2021, which included additional documentation evidencing Plaintiff's disagreement with the outcome of the dispute directly with PenFed which included a Fair Credit Billing Act ("FCBA") dispute, disputing the continued reporting of a charge-off status and non-zero current balance on the PenFed accounts. (see…ECF No. 1-2 at 23-32, 36-42, Exhibit A).

18. A second dispute was Presented on or about April 30, 2022, which challenged any and all items of information currently being reported requesting a re-investigation of inaccurate or incomplete information, although that dispute did not include attachments, it clearly requests that all information report be re-investigated and if anything is missing from the report (see…ECF No. 1-2 at 50-52, Exhibit A), as it pertained to the entirety of the information then being furnished to Experian by PenFed.

19. Plaintiff notified Experian through their legal representation at the time in a prior lawsuit (see…ECF No. 1-5 at 3-4, Exhibit D), which documented and included the PenFed written correspondence dated April 11, 2022, confirming that the accounts in question had been either sold or transferred via assignment to third-party collection agencies or debt buyers. As of Discovery, it is clear that all 3 accounts were transferred to NCC with the only proof of return as of December 14, 2022 was the credit card (see…ECF No. 421-1, Exhibit 42). Despite being in possession and having knowledge of a third party transfer/assignment, Experian continued to furnish plaintiff's consumer reports on a monthly basis with the inaccurate, incomplete information as there is no record of them ever updating these accounts or deleting them therefore failed to report with maximum possible accuracy 1681e(b), failed to update the reporting to indicate the current status of the accounts evidencing willful, negligent, and reckless conduct with the intent to injure the plaintiff as they had been further informed of their unreasonable re-investigation, of the accounts current statuses. Experian was aware that the reporting is injuring the plaintiff by his first dispute further evidencing their willful, negligent, and reckless/malicious conduct further supporting their intent to injure the plaintiff. (see…ECF No. 1-2 at 36-42, Exhibit A)

20. Experian verified the disputed tradelines as accurate and failed to investigate the current status of the accounts requiring the Transfer Status Code "05," Special Comment Code "O," or Compliance Condition Codes "XBC", "XC," or "XE," which denote unresolved or pending disputes under Metro 2 and CRRG standards. (see…ECF No. 1-3 at 37-72 Exhibit B, ECF No. 421-2 Exhibit 43, ECF No. 421-9 Exhibit 50, Exhibit 60-1, and Exhibit 60-4). Experian's own record evidence that they incorporate Metro 2 and the CRRG which include the required status codes to be reported (Exhibit 60-2).

21. Experian, in its capacity as a furnisher to LexisNexis, failed to notify LexisNexis that the tradelines were the subject of a consumer dispute, thereby violating its duty under 15 U.S.C. § 1681s-2(b)(1)(D) to inform third-party recipients of disputed information.

22. Plaintiff received credit denials during the time period Experian continued furnishing an inaccurate status, with inaccurate or incomplete information, including from lenders who relied on Experian-generated data. (see…ECF No. 432-1 at 16-24, 27-33, 37, Exhibit 59)

23. Experian has not submitted any evidence that it corrected, updated, or deleted the PenFed account tradelines as a result of any re-investigations triggerd by plaintiff's disputes.

24. Plaintiff's 4th amended complaint is verified by plaintiff and therefore is considered an affidavit for summary judgment purposes therefore any claims for example his claims that plaintiff did not request that line of credit be closed is supported by his complaint, Equifax and Trans Union's consumer disclosure reports, PenFed's charge-off policy, and the fact that no notice has been produced by PenFed that supports this allegation. See...ECF No. 415-1 at 10.

## IV.     FACTUAL BACKGROUND

Plaintiff Nelson L. Bruce is a natural person and "consumer" as defined under 15 U.S.C.

§ 1681a(c), and has at all times relevant resided in the State of South Carolina. Defendant

Experian Information Solutions, Inc. ("Experian") is a "consumer reporting agency" (CRA)

under 15 U.S.C. § 1681a(f). Experian also acted as a data furnisher when it disclosed Plaintiff's

consumer information to LexisNexis Risk Solutions ("LNRS"), another CRA, thereby subjecting

Experian to dual obligations under 15 U.S.C. §§ 1681e(b), 1681i, and 1681s-2(b).  During the

relevant time periods, Plaintiff's consumer report maintained by Experian included tradelines

from Pentagon Federal Credit Union ("PenFed"), which had been charged off and then assigned

to third-party collectors including Nationwide Credit Corporation and United Holding Group.

Upon transfer, PenFed ceased owning the right to collect and/or service the accounts, and under

Regulation V and Appendix E of 12 C.F.R. Part 1022, Metro 2/CRRG the accounts were

required to be reported as "Transferred" with zero balances and Special Comment Code "O" to

indicate the current status.  Experian instead continued reporting these accounts as charged-off,

with non-zero balances and past-due amounts, without applying Transfer Status Code "05,"

thereby violating Metro 2, CRRG standards, and the FCRA's accuracy mandate.

Plaintiff presented written disputes to Experian in **September 2021** and again in **April

2022**, both explicitly contesting the status, accuracy, incomplete and missing information and

balance of the PenFed tradelines. Plaintiff provided supporting documents, including an **April**

**11, 2022 letter from PenFed confirming transfer of the accounts**, continues disputes under the FCBA. These materials were sufficient to trigger Experian's duty to conduct a reasonable reinvestigation under 15 U.S.C. § 1681i. A December 27, 2021 recorded call where a PenFed representative instructed Plaintiff to contact outside collectors, thereby confirming PenFed no longer held the accounts for collections further evidencing Experian's re-investigation was unreasonable.

Despite this evidence, Experian verified the accounts as accurate and did not update the tradelines to reflect the correct current status of the accounts as transferred. Experian failed to annotate the accounts as disputed and or the consumer disagrees with the results under required Compliance Codes "XBC," "XC," or "XE," and also **furnished the disputed tradelines to LNRS without notification of the disputes**, in violation of § 1681s-2(b)(1)(D). Based on experian's own words, they conducted another investigation on or about August 18, 2022 that they received form LNRS which was also unreasonable (see...ECF No. 415-1 at 17 and 415-5 as 60-76). Experian's reinvestigation process, as revealed in their declarations, consisted solely of relaying Automated Consumer Dispute Verification (ACDV) data from PenFed without independent verification or consideration of Plaintiff's provided documentation rendering the reinvestigation unreasonable under the FCRA and established case law.

Plaintiff suffered multiple credit denials as a result of Experian's conduct. These include:

- NAVY FEDERAL ($20,000 business credit card) – Denied May 13, 2022
- AMERISAVE MORTGAGE ($200,000 mortgage loan) – Denied May 3–4, 2022
- PA STATE EMPLOYEES CREDIT UNION ($5,000 personal loan) – Denied May 5, 2022
- WELLS FARGO ($5,000 credit line) – Denied December 7, 2021
- DISCOVER FINANCIAL ($5,000 credit line) – Denied September 7, 2021
- DESERVE INC./BLOCKFI ($5,000 each) – Denied September 1 and November 23, 2021
- EXPERIAN CREDIT MATCH – 12 failed attempts between September 2021 and May 2022

Plaintiff's verified Fourth Amended Complaint serves as an affidavit for summary judgment purposes. The complaint, along with Experian's own declarations, further confirm that the investigations are centered around investigating the current status of the accounts therefore the continued reporting of the PenFed accounts as charged-off with balances omitting their transferred status is materially misleading, patently incorrect, and not reported with "maximum possible accuracy" as required by § 1681e(b).Experian has submitted no evidence of updating, deleting, or correcting these tradelines by PenFed or Rev. following Plaintiff's disputes. Experian's practices also show a reckless disregard of Metro 2 formatting standards which they acknowledge as binding in their own publications.

Furthermore, Plaintiff incorporates by reference his opposition briefs against Equifax and PenFed,(see…ECF No. 421, 431, 432 and 434) especially those addressing ACDV limitations, the systemic deficiencies of E-OSCAR dispute processing, Regulation V including Appendix E and the materiality of omitted Metro 2/CRRG compliance codes. Plaintiff also preserves his rights related to limited discovery on the Federal Reserve funding of alleged PenFed accounts, where authorization and ownership of the account used to process Plaintiff's auto loan draft remain unresolved. Plaintiff has raised credible evidence suggesting the draft was signed solely by Plaintiff, with no record of PenFed's authorization, creating unresolved factual disputes that bear on the validity and legality of balances reported by PenFed and relayed by Experian. The record shows that plaintiff never shifted his case as suggested by Experian (see…ECF No. 415-1 at 11). Plaintiff has multiple claims which included claims that the PenFed accounts was transferred/assigned and or sold to third parties as evidenced by the 4th amended complaint and the judge's order see…ECF No. 154. PenFed has admitted to assigning the collection of the account including its alleged debt balances which the record supports. Therefore, their rights to

collect the debt has been transferred and assigned a third party, NCC. And as a result of this other conduct and as a data furnisher, which they voluntarily signed up for was required by regulation V, and the industry standard of Metro 2/CRRG which supports the reporting of accurate and complete statuses to report the current status of the PenFed accounts regardless of any alleged retaining of legal ownership rights. Plaintiff's responses to Equifax and PenFed supports this which are incorporated by reference in their entirety with this response. Experians own policies and procedures show that they adopted Metro 2/CRRG as the industry standard for reporting complete and accurate information with maximum possible accuracy however their dispute procedures appear to not be reasonable enough as it only checks for formatting errors, not actual inaccuracies or incomplete information evidenced by their ACDV's. Plaintiff provided Experian with the same documentation sent to Equifax and vise versa evidenced by his Exhibit A filed with his complaint as the September 2021 dispute clearly evidences that documents were attached (see…ECF No. 415-5 at 12, reasons 4-7 (Heritage Trust account) and ECF No. 415-5 at 13, reasons 4-6 (PenFed account)). Experian admits that plaintiff disagrees with the results and reporting however has not reported these statuses (see…ECF No. 415-1 at 15). Further, it is clear by the record that plaintiff disagrees with the charge-off status, and the balance being reported.

Because genuine issues of material facts exist, material disputes remain as to the accuracy of reported tradelines, the reasonableness of the defendant Experian's reinvestigations, the furnishing of data to third parties, and the resulting damages and violations, summary judgment must be denied in its entirety.

## V.     RESPONSE TO DEFENDANT'S ARGUMENTS

**A. Plaintiff Has Presented Competent and Material Evidence That Experian Reported Inaccurate and Misleading Information, and That Such Reporting Violated the FCRA (ECF No. 415-1 at 19-21) (see… *Bibbs, Dalton, Chaitoff*)**

Contrary to Defendant Experian's assertion, Plaintiff has provided substantial competent, corroborated, and documentary evidence of material inaccuracies in Experian's reporting of the PenFed tradelines. These inaccuracies are not merely conclusory they are supported by evidence from Experian's own declarants, undisputed account histories, federal regulatory guidance, and the Plaintiff's verified pleadings.

Under the FCRA, a credit report is inaccurate not only when it is factually incorrect but also when it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions. See ***Dalton v. Capital Associated Industries, Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (citing *Sepulvado v. CSC Credit Servs.*, 158 F.3d 890, 895 (5th Cir. 1998)).** Experian's continued reporting of accounts as "charged-off" with active balances, despite the acknowledged assignment of those accounts to third-party collectors, misrepresents their current status and omits material information, rendering the reporting incomplete and misleading.

The evidence in the record clearly establishes that:

1. The Accounts Were Transferred via Assignment: As confirmed by PenFed's own letter dated April 11, 2022, and PenFed's December 27, 2021 call (recorded and referenced in Plaintiff's filings), the PenFed accounts were assigned to third-party debt collectors as early as 2018, ceasing PenFed's servicing and ownership. See ECF No. 1-4, Exhibit C; ECF No. 421-5, Exhibit 46; ECF No. 415-4, ¶ 19.

2. Regulatory and Industry Standards Require Reporting as "Transferred" with Zero Balances: Under Regulation V, Appendix E, and the Metro 2 and CRRG standards that Experian mandates its data furnishers use, once an account is transferred or assigned, it must be reported with Transfer Status Code "05," Special Comment Code "O," and a balance of $0.00. Experian continued reporting the accounts with balances and charge-off status, without reflecting the transfer, violating both industry and legal standards. See ECF No. 421-2, Exhibit 43; ECF No. 421-9, Exhibit 50; Exhibit 60-4 and Statement of Undisputed Facts ¶¶ 7–15, 19–20.)

3. Experian's Own Witness Confirmed Status Verification Responsibility: In her declaration, Christina Hamilton of Experian affirmed that part of the ACDV process includes verification of the "status" of the accounts. See ECF No. 415-5, ¶ 29. PenFed's own communications to Plaintiff show the "status" was "transferred," thus Experian's acceptance of a charge-off designation, without update or status correction, is unreasonable under § 1681i.

4. Plaintiff Provided Documentary Evidence in His Disputes: Experian was provided with documented disputes and supporting evidence, including PenFed's own letter, and the December 27 call was specifically described. These facts were incorporated into a verified complaint (Fourth Amended Complaint), which constitutes an affidavit for summary judgment purposes. See ***Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).**

5. Plaintiff Suffered Concrete Credit Denials Due to Inaccuracies: Plaintiff's credit applications were denied repeatedly during the time these inaccurate tradelines remained on his Experian report, including denials from Navy Federal, Amerisave Mortgage, PSECU, Wells Fargo, Discover, and others. (See ECF No. 432-1, Exhibit 59; Interrogatory No. 5 Response).

Experian attempts to characterize Plaintiff's claims as "conclusory," yet ignores that Plaintiff has:

- Identified specific tradelines
- Cited industry-specific compliance standards (Metro 2, CRRG)
- Documented regulatory mandates (Regulation V Appendix E)
- Cited experiential declarations
- Offered proof of disputes and resulting credit denials

Additionally, Plaintiff incorporates by reference in their entirety the expert analysis and arguments raised in his oppositions to Equifax and PenFed's motions (ECF Nos. 421, 431, 432, 434), which further establish that reporting transferred accounts as "charged-off" with balances violates accuracy mandates and constitutes a continuing FCRA violation.

Experian's defense relies solely on blind deference to ACDV responses and fails to address the content of Plaintiff's disputes or the independent verification obligations under § 1681i. Courts have repeatedly held that "parroting" furnishers without independent investigation violates the FCRA. See ***Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).** Therefore, Plaintiff has met and exceeded his burden to produce competent and material evidence of factual inaccuracies and misleading reporting, defeating Experian's

argument for summary judgment under §§ 1681e(b) and 1681i.

**1. Response to Defendant's Section: "Plaintiff's 'Assignment' Inaccuracy Theory Fails Factually and Legally" (ECF No. 415-1 at 21–23)**

Defendant Experian's claim that Plaintiff's "assignment inaccuracy theory" fails both

factually and legally is without merit and contrary to the factual record, statutory requirements,

and binding authority under the Fair Credit Reporting Act (FCRA), Regulation V, and the

standards governing Metro 2 data furnishing.

Contrary to Defendant's assertion that "PenFed has never sold, assigned, or transferred its

ownership rights," the record demonstrates otherwise:

1. PenFed's Declarations confirm assignment of Plaintiff's accounts to third-party collectors, including Nationwide Credit Corporation, since at least April 2018 (See Craig Olson 1st Decl., ¶¶ 23–24; 2nd Decl., ¶ 19; ECF No. 421-5, Ex. 46; ECF No. 415-4).

2. PenFed's correspondence to Plaintiff, including a letter dated April 11, 2022, explicitly directed Plaintiff to contact third-party collectors and confirmed PenFed was no longer collecting the accounts.

3. In a recorded phone call on or about December 27, 2021, PenFed representatives confirmed these accounts were "in the possession of third parties for collection" and that PenFed had no further involvement in collecting the balances.

4. Plaintiff's written disputes to Experian on September 25, 2021 and April 30, 2022 clearly requested investigation into the entire tradelines and the inaccuracy of reporting balances and charge-off status when the accounts were no longer being serviced or owned by PenFed (ECF No. 1-2 at 23–32, 50–52, Ex. A; ECF No. 1-5, Ex. D).

These facts constitute competent evidence of assignment and transfer, and when

coupled with Experian's duty under § 1681e(b) and § 1681i, place the disputed balances and

status reporting in legal controversy.

Experian, as a CRA and a dual-status data furnisher to LexisNexis, is subject to industry

reporting standards through the Metro 2 format and the CRRG, which require, Transfer Status

Code "05" (account transferred), Special Comment Code "O" (transferred to another office) and

zero balance and zero past-due amounts when ownership or servicing is transferred

Failure to report these codes when an account has been assigned, even without a sale, is materially misleading and does not reflect the "current status" as required by § 1681i(a)(1)(A). Experian's argument that no sale occurred is legally immaterial under Regulation V, Appendix E: assignment for collection purposes constitutes a change in status requiring reporting accuracy adjustments.

The definition of "inaccurate" under the FCRA includes reports that are "misleading in such a way and to such an extent that it can be expected to have an adverse effect" (***Dalton v. Cap. Associated Indus., Inc.,* 257 F.3d 409, 415 (4th Cir. 2001)).** Reporting a charge-off with a balance by PenFed, after it is no longer collecting or servicing the account is materially misleading in evaluating a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living. As presented in this matter, the inaccurate status which is include when evaluating a consumers report to determine the amount of credit that will be approved, the terms, the rates based on the credit score/credit worthiness are considered when applying or credit as evidenced by the denials. The denials are clear evidence of the information contained in plaintiff's consumer report having an adverse effect in the interest of the plaintiff/consumer (see…1681a(k)(1)(B)(iv)(II)). It suggests that there were no external transfers/assignment of collection to any third parties thereby incorrectly being reflected in plaintiff's consumer report, it omits required information as to the truth of the accounts current status and who has the right to collect and is collecting, the true nature of the furnisher's records at the time it is furnished, it does not include the information in the furnisher's possession about the account. It violates Regulation V, which defines accuracy as information that reflects "conduct with respect to the account," including assignment and or transfer history.

Experian falsely asserts that Plaintiff's disputes did not identify this inaccuracy. However:

- Plaintiff's September 2021 and April 2022 disputes explicitly contested the charge-off status and balances on PenFed accounts and included additional documentation referencing disagreement with direct dispute results under the FCBA.
- Plaintiff's April 2022 dispute explicitly contested whether the information reported was true, correct and accurate and that noting was missing from the report requesting re-investigation.
- Plaintiff provided PenFed's own April 11, 2022 letter as part of his formal notice, informing Experian of the assignment and or sale to third-party collectors.
- Under 15 U.S.C. § 1681i(a)(1)(A), this was sufficient to place Experian on notice of the inaccuracy and incomplete information related to the status of the accounts being reported.
- It is not mandatory under the FCRA for a dispute to be specifically detailed only that the item of information disputed be reasonably investigated 1681i et seq.

Experian cites cases rejecting summary judgment where no evidence was offered beyond the plaintiff's own declaration. That is not the case here. Plaintiff offers:

- Verified Fourth Amended Complaint, which functions as an affidavit.
- Documentary evidence (PenFed letters, declarations, PenFed policies and procedures, PenFeds agreements to follow regulations, Metro 2/CRRG, NCC proof of attempts to collect the debt, recorded calls, CFPB guidance, Data Furnisher regulations (regulation V and Appendix E to regulation V), Metro 2/CRRG industry standards adopted and mandated by Experian to be eligible to furnish consumer information to the CRA's in this case).
- Dispute results and Experian's own failure to apply Metro 2 codes.
- Credit denials caused by inaccurate status which triggers a change in the reporting of the balance and past due amount.

Thus, Experian's assertion that Plaintiff relies only on "self-serving allegations" is factually and legally unsupported. Additionally, Plaintiff incorporates by reference in their entirety the expert analysis and arguments raised in his oppositions to Equifax and PenFed's motions (ECF Nos. 421, 431, 432, 434), which further supports this opposition.

Experian's continued reporting of balances and charge-off status for accounts it failed to reasonable investigate and eventually was in possession of therefore it knew had been assigned, without updating the status codes and without disclosing the third-party servicing or ownership transfer, is materially inaccurate and misleading in violation of FCRA §§ 1681e(b) and 1681i in

such a way that it has an adverse effect as presented throughout this opposition and plaintiff's 4th amended complaint. Therefore, Defendant's motion must be denied as genuine issues of material fact remain regarding, the assignment and servicing of Plaintiff's accounts, the accuracy of Experian's reporting, the reasonableness of Experian's reinvestigation, the impact on Plaintiff's creditworthiness and damages suffered.

## 2. Response to Defendant's Section: "Plaintiff's Inaccuracy Theory Regarding Charge-Offs Has No Legal Basis" (ECF No. 415-1 at 23–24)

Defendant Experian's argument grossly oversimplifies and misrepresents the nature of Plaintiff's allegations. Plaintiff has never contended that the existence of a "charge-off" eliminates a debt in a legal vacuum. Rather, Plaintiff challenges Experian's failure to report the accurate and complete current status of accounts that had been assigned to third-party collectors, thereby misrepresenting PenFed's ongoing interest and falsely implying it retained ownership, servicing control, or authority to collect.

Experian relies on general definitions of "charge-off" to distract from the actual legal issue: the misleading inaccurate and incomplete credit reporting by Experian under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq. Plaintiff does not dispute that a creditor may charge-off a delinquent account per financial regulations. However, once an account has been assigned to a third party for collection and no longer serviced by the original creditor, the reporting of a continuing charge-off status and balance by the original creditor without referencing a zero balance, zero amount past due to support a transfer/assignment is inaccurate, false and materially misleading in a way that it has an adverse effect on the interest of the consumer and credit decisions as it provides an untrue current status. This practice violates FCRA's requirement to report with "maximum possible accuracy" (§ 1681e(b)), adopted procedures 1681(b) and to report the "current status" of disputed accounts and information (§

1681i(a)(1)(A)).

The crux of Plaintiff's claim is that the charge-off status ceased to reflect the "current status" once PenFed assigned the accounts to third-party collectors. Under Regulation V, Appendix E, and Metro 2 standards (which Experian mandates for data furnishers), when accounts are transferred via assignment and that a reserve account (ALLL) offsets the balance as a result of a charge-off which is an internal transaction that ultimately eliminates the balance of the original account as a result of the charged-off receivable and associates the balance with a separate account to which recoveries will be credited to as evidenced by PenFeds own records, policies and procedures. They are not credited to the original account as no balances exist to offset as the transaction from the reserve account accomplished this.  Craigs opposition testimony supports that the Reserve account is an actual account with funds to which charge-offs are associated. )See…ECF No. 421 at 4-9).  Regulation V, Appendix E, Metro 2/CRRG require the data furnisher to report the current status of the accounts which include:

- A zero balance, zero amount past due to support the transfer/assignment of collections of an alleged balance;
- The Transfer Status Code "05" (account transferred) must be applied;
- The Special Comment Code "O" (account transferred to another office) must be used.

Failure to report these accurately and completely is materially misleading because it misstates the current status of the account, suggests PenFed has not assigned/transferred its collection rights in the collection of an alleged debt balance which in not true, Obscures the identity of the actual collecting entity ultimately causing an adverse effect.

This is not a theoretical issue. Experian knew from Plaintiff's disputes or should have known and by receipt of a copy of PenFed's own April 11, 2022 letter that the accounts had been transferred to third parties yet continued reporting of a charge-off status and non-zero balance by PenFed without reflecting that transfer is incomplete, inaccurate, and deceptive to users of the

report and a reasonable reader. Experian ignores not only the governing Metro 2/CRRG protocol, but also binding precedent such as **Bibbs v. TransUnion LLC, 43 F.4th 832, 843–46 (3d Cir. 2022),** which held that credit reports must be accurate "not in isolation but in context" and must not mislead a reasonable user/reader. The information provided by PenFed to the CRA's defendants who has included the information in plaintiff's consumer report and disseminated it to third parties who denied plaintiff credit after obtaining these consumer reports is open to an interpretation that is directly contradictory to the true information as to the current status of the accounts. See...***Krausz v. Equifax Info. Servs., LLC,* No. 21-CV-7427 (KMK), 2023 WL 1993886, at \*11 (S.D.N.Y. Feb. 14, 2023).**

Incomplete information creates a materially misleading impression when it can be expected to "adversely affect credit decisions." ***Sepulvado v. CSC Credit Servs., Inc.,* 158 F.3d 890, 895 (5th Cir. 1998); see also *Chiang,* 595 F.3d at 37.** It is clear by the record that PenFed and the CRA defendants are reporting incomplete information that has an adverse effect on the plaintiff and credit decisions however, whether technically accurate information is sufficiently misleading to qualify as inaccurate for the purposes of the FCRA is generally a question to be submitted to the jury. See...***Seamans v. Temple Univ.* 744 F.3d 853, 865 (3d Cir. 2014); *Dalton ,* 257 F.3d at 415.** Whether an omission was "misleading in such a way and to such an extent that it can be expected to have an adverse effect," and thus is an "inaccuracy," is generally a question for the jury. See...**Cebrynski v. Wells Fargo Bank No. CV-21-01965-PHX-DJH (D. Ariz. Jun. 24, 2022)** Quoting ***Valentine,* 2009 WL 4349694, at \*8; see also *Beseke v. Equifax Info. Servs. LLC,* 420 F.Supp.3d 885, 891-92 (D. Minn. 2019)** ("Whether technically accurate information is sufficiently misleading to qualify as inaccurate for the purposes of the FCRA is generally a question to be submitted to the jury.")

The Fourth Circuit recognizes that credit reporting may be inaccurate where it is "misleading in such a way and to such an extent that it can be expected to have an adverse effect." (***Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001)).** Experian is well aware of the industry standards and how an account should be reported when assigned/transferred to third parties as evidence by their own policies and procedures adopting the CRRG reporting statuses and codes however acts as if it doesn't (see...Exhibit 60-2). Experian's omission of the assigned status and continued use of the charge-off designation misleads creditors into believing an inaccurate status.  Credit balances on a consumer report have a direct and substantial impact on credit decisions. The more reported debt, the lower the applicant's capacity to take on new credit, triggering denials or lower credit limits. FICO and VantageScore are effected a they are the most commonly used scoring models, assign significant weight to balances. 30% of a FICO score is based on amounts owed i.e. being reported. See...https://www.experian.com/blogs/ask-experian/credit-education/score-basics/what-affects-your-credit-scores/.  High balances (even if not delinquent) can lower the score aversely causing less than favorable terms and higher interest rates, or outright denial of credit applications. A tradeline showing a charge-off with an unpaid balance suggests the no collections was transferred.  This is materially misleading if the actual status is "transferred."  To support a transfer of collection rights.  Under the FCRA and Regulation V, furnishers and CRAs are required to report information with maximum possible accuracy. Inaccurate balances can result in violations of federal law, especially where balances are inflated or should be zero due to assignment or transfer.   Credit balances are not just numbers; they form a foundational input for automated decision-making systems and human judgment across lending, housing, employment, and insurance. Any inaccurate reporting of a balance, especially where the account has been

transferred and is no longer collectible by the original creditor, is materially misleading, affects creditworthiness evaluations, and is grounds for a claim under the FCRA.

These misstatements and omissions impact adversely affects creditworthiness, capacity, credit scores, credit terms, and eligibility precisely what FCRA was designed to guard against. Defendant's cited cases (e.g., Makela, Kohen, Christian, Artemov, Hinkle) are distinguishable:

- None address omission of a transfer/assignment after charge-off;
- None involve failure to update the current status post-assignment;
- All stand only for the general principle that charge-off does not eliminate legal obligation, which Plaintiff does not contest.
- None address credits being applied to the account internally as a result of the charged off receivable balances which offset the reported accounts balances and transferred the balance to a completely different account, the ALLL account to which any recoveries are to be credited to, no the charged-off account.

Here, Plaintiff does not assert that charge-off equals forgiveness, but that continued reporting without acknowledging the account's transfer is inaccurate and materially misleading under Metro 2/CRRG, Regulation V, and FCRA. Defendant's argument that a charge-off account may still be reported with a balance is legally irrelevant to the issue at hand and misrepresents the current status of the accounts. The FCRA requires not just general accuracy but maximum possible accuracy and disclosure of the current status of accounts as they concern the consumer, the plaintiff. Experian failed to meet this requirement by Misreporting PenFed as the current servicer after assignment, Omitting the transfer status from Plaintiff's credit file, misleading creditors about who owns, collects and or have the right to collect the debts. Additionally, Plaintiff incorporates by reference in their entirety the expert analysis and arguments raised in his oppositions to Equifax and PenFed's motions (ECF Nos. 421, 431, 432, 434), which further supports this opposition. These omissions and inaccuracies violate the FCRA and demonstrate a triable issue of fact. Defendant's motion for summary judgment must therefore be denied.

**3. Response to Arguments related to the Federal Reserve (ECF No. 415-1 at 24-25)**

The defendants continue to bring up the Federal Reserve however plaintiff has been limited relevant discovery to defend and produce evidentiary material facts to support his claims and defenses, to present a complete record. Plaintiff continues to reserve his right to a full and complete discovery to support his claims including subpoenas being issued where originally denied and to have the actual transactions and production of the original signed note no copies on the record that proves that PenFed is the actual holder in due course of the note, are the lenders that funded the loans to the plaintiff, and that there are no modifications, endorsements added that was not originally disclosed supporting a deposit with the Federal Reserve and PenFed was not just the mediators, depository institutions. (see…ECF No. 421 (plaintiff's memorandum in opposition to Equifax section III at 21-25 and ECF No. 434, sur-reply to Equifax reply sections VI at 19-21 and section XV at 39-40). Especially if the legal standing of a debt and its balances are considered when making a decision related to and affecting plaintiff's FCRA, SCCPC, UCC/state equivalent and Defamation claims. That the Federal Reserve Account, the account that the draft that allegedly was negotiated for the auto loan is an account in PenFed's name, who is the actual owner and authorized person on the account the draft was written from (see…ECF No. 415-4 at 18), actual statement/account ledgers showing how this account was funded and all transactions to and from this specific account to support that PenFed used its own funds, not funds from another source advanced to it which includes the federal reserve advances as PenFed has already admitted that that the plaintiff's loans were funded through an account with the federal reserve however, has not proven that the account is actually in their names to support that they are the actual lenders, that they are the authorizing party to this account for deposits and withdrawals of funds. It is a legal requirement and common banking practice that drafts such as

checks like the one in question in this case be signed by the authorized person in order to be processed and funds released. It is clear by reviewing the draft on the record that that the only signature of authorization is the plaintiff's. This creates a clear controversy and conflict as to the truth and nature of PenFed's statements and declarations related to the draft and the account associated such as ownership and authorization for which this draft was created that funded the alleged vehicle loan. It appears the authorized person on the account as no other signatures of authorization are located anywhere on the draft is the plaintiff therefore is still a material unrebutted fact that was presented at the hearing held on 10-16-2024 to which PenFed had not response to as such evidence requires more than just a declaration to be sufficient as plaintiff has a due process right to have and see actual facts showing proof of transactions not just copies of agreement or statements associated with the actual funding of a loan as plaintiff, as a result of signing the draft associated with the account appears to have some sort of authorization and or interests in which has not been disclosed, is being concealed but is directly related to the claims in this case that can directly affect the reporting of an alleged balance.

Defendant cites irrelevant case law involving fake promissory notes or refusal to use legal tender. None of those apply here, as Plaintiff's promissory note was accepted, the signed draft was actually processed raising material fact issues concerning payment, consideration, and ownership, not baseless pseudo-legal theories. Moreover, PenFed's own declarations confirm that funds flowed through a Federal Reserve account, but they provide no evidence as to the true nature, control, or authorization of that account, nor any disclosure of ledger entries, settlement records, or account-level activity. Without such evidence, Defendant cannot claim that Plaintiff's factual claims are unfounded. At minimum, Plaintiff is entitled to discovery on these material issues which may affect the accuracy of the balances reported post-assignment, the current status

of the debt, and the standing of PenFed as a data furnisher. Therefore, Experian's argument does not defeat Plaintiff's claim and the motion for summary judgment should be denied on this issue as well.

### A. Response to Section B(1), Defendant's Argument (ECF No. 415-1 at 25–27): Count I – Experian's Procedures and Reasonableness

Defendant's assertion that Plaintiff lacks evidence to rebut the reasonableness of Experian's procedures is contrary to both the record and established law under 15 U.S.C. § 1681e(b) and § 1681i(a). The argument oversimplifies Experian's statutory obligations by treating its adherence to general ACDV procedures as dispositive, while failing to account for its actual implementation and application to the facts in this case, which are central to the FCRA inquiry.

1. **Experian's Procedures Were Unreasonable Under the Circumstances:**
Experian continued to report Plaintiff's PenFed accounts with balances and a charge-off status after being put on notice by Plaintiff through multiple disputes and a third-party furnished PenFed letter that the accounts had been transferred to third-party collections. Under the FCRA, Experian must report the "current status" of the disputed item (15 U.S.C. § 1681i(a)(1)(A)), and reporting a charge-off rather than a transferred status materially misstates the tradeline.

2. **The Failure to Apply Metro 2 Status and Compliance Codes Violates Industry Standards:**
Experian's own standard requires reporting of accurate status codes under Metro 2. Despite having documentation from PenFed that the accounts were no longer being collected by them, Experian failed to apply the required Transfer Status Code "05", Special Comment Code "O", or Compliance Codes such as "XB", "XC" or "XC" to reflect an active consumer dispute and transferred status. This is a violation of their own CRRG procedures, and not reasonably designed to ensure maximum possible accuracy.

3. **Experian's Reinvestigation Was Incomplete and Non-Independent:**
Plaintiff's disputes specifically contested both the balance and charge-off status. Rather than investigate the validity of the balance in light of third-party collection transfers and available documents, Experian merely parroted back the ACDV responses from PenFed, which were incomplete and contradicted by PenFed's own correspondence. Experian's failure to go beyond a mere automated response, especially when documents presented inconsistencies such as copies of consumer reports or disclosures from Equifax, renders its investigation unreasonable. See *Johnson v. MBNA*, 357 F.3d 426, 430 (4th Cir. 2004).

4. **Plaintiff Presented Ample Evidence:**
   Experian's argument that Plaintiff did not depose its witnesses or is not a "custodian" of their systems is a red herring. Plaintiff has presented:

   - Certified PenFed correspondence confirming transfer/assignment;
   - Letters from PenFed, recorded calls evidencing that PenFed is not the party collecting.
   - Dispute letters and communications served upon Experian;
   - Exhibits establishing Metro 2/CRRG compliance as the industry standards;
   - Documents supporting Data Furnishers duties;
   - PenFed policies and procedures;
   - PenFed's signed data furnisher agreements;
   - Experian polices and adopted Metro 2/CRRG compliance and status codes;
   - Prior court rulings and declarations confirming reporting inaccuracies.

   This constitutes **concrete rebuttal evidence** under Rule 56(c) sufficient to create a triable

fact issue on the reasonableness of Experian's procedures.

5. **Reasonableness is a Fact Issue for the Jury**:
   Contrary to Experian's claim, reasonableness is not automatically decided at summary judgment. Courts routinely hold that whether a CRA acted reasonably under § 1681e(b) and § 1681i is a question for the jury when the facts show a CRA ignored relevant evidence or failed to conduct a reasonable reinvestigation. See ***Guimond v. Trans Union***, **45 F.3d 1329, 1333 (9th Cir. 1995).**

   Additionally, Plaintiff incorporates by reference in their entirety the expert analysis and

arguments raised in his oppositions to Equifax and PenFed's motions (ECF Nos. 421, 431, 432,

434), which further supports this opposition. Thus, Plaintiff has raised material factual disputes

as to whether Experian's procedures were reasonable, making summary judgment inappropriate.

B. **Response to section B(2), Defendant's Argument (ECF No. 415-1 at 27–28):**
   **Reasonableness of Experian's Reinvestigation (Count I)**

   Defendant's claim that Experian's reinvestigations were reasonable is refuted by both the

record and governing law. Under 15 U.S.C. § 1681i(a)(1)(A), a consumer reporting agency must

"conduct a reasonable reinvestigation to determine whether the disputed information is

inaccurate." Experian's failure to meet this standard is well-documented in this case:

1. **Experian Failed to Conduct an Independent Reinvestigation**:
   Despite Plaintiff's disputes expressly identifying inaccuracies in PenFed's reporting of charge-off balances on accounts that were no longer held or serviced by PenFed, that were offset by the ALLL account, Experian did not conduct an independent inquiry. Instead, it merely parroted back ACDV responses from the furnisher, even after being presented with PenFed's own correspondence (April 11, 2022) confirming assignment of the accounts to third parties. See *Johnson v. MBNA Am. Bank*, **357 F.3d 426, 431 (4th Cir. 2004)** (finding a reinvestigation inadequate where the CRA failed to look beyond the furnisher's statement). A reasonable re-investigation into the charge-off, and independent investigation by Experian which include but is not limited to receiving sufficient evidence that the information is true and accurate information from PenFed as required by state law (see…37-20-170(A) and (B)(4)) which improves upon the FCRA the CRA's including Experian could have uncovered this. 37-20-170 et seq. is not inconsistent with any provision of the FCRA as 37-20-170 et seq. which prescribes for the CRA's to provide to the consumer sufficient evidence used in the investigation that proves the information reported is true and accurate information therefore is not pre-empted under 15 U.S. Code § 1681t(a). Section 1681t(b)(1)(B) only prescribes pre-emption only to the extent, "relating to the time by which a consumer reporting agency must take any action, including the provision of notification to a consumer or other person, in any procedure related to the disputed accuracy of information in a consumer's file and 1681t(c) only provides pre-emption related to "Firm offer of credit or insurance", neither pre-emptions apply here. By Experian parroting what the furnisher allegedly verified as accurate, supports that their re-investigations were unreasonable. E-OSCAR, the industry standard system where the ACDV's are created is an online resolution of disputes for complete and accurate reporting is a browser-based Metro 2 compliant system incorporates Any allegations that plaintiff's disputes were not specific enough does not preclude relief.

2. **Experian Ignored Critical Evidence Provided by Plaintiff**:
   Plaintiff presented written disputes and supporting documents demonstrating that the accounts had been transferred and no longer carried collectible balances with PenFed. Experian's failure to consider these materials, including PenFed's direct admissions and the absence of status code "05" or zero balances, constitutes an unreasonable reinvestigation under § 1681i. A reasonable investigation would have included reconciling PenFed's correspondence with reported tradeline data, investigating PenFed's charge-off records which are readily available which would determine third parties are involved.

3. **The Law Does Not Require Consumer Expertise—Only Evidentiary Sufficiency**:
   Defendant's assertion that Plaintiff cannot "testify" about Experian's reinvestigation fails legally. Plaintiff need not be an insider to demonstrate that Experian's actions fell short of statutory duties. The record includes clear evidence written disputes, third-party documentation, and inconsistent reporting (balances reported with Equifax and trans union but zero balances reported with Experian see…ECF No. 415-5 at 67 and 72) showing that a reinvestigation should have resulted in updated tradelines or deletions. The existence of conflicting or incomplete information triggers Experian's duty to verify or correct the tradeline (15 U.S.C. § 1681i(a)(5)(A)).

**4. Verification of Inaccurate Information Does Not Excuse Liability**:
The FCRA does not permit Experian to rely blindly on furnishers when the disputed
information is facially inconsistent with documentary evidence submitted by the consumer.
Verification of data alone is not a defense when that data is demonstrably inaccurate or
misleading.

Accordingly, Plaintiff has presented sufficient evidence that Experian failed to conduct a

reasonable reinvestigation under § 1681i(a), rendering summary judgment improper.

**C. Response to section C, Defendant's Argument (ECF No. 415-1 at 28–29): Count II –
Experian as a Furnisher Under 15 U.S.C. § 1681s-2(b)**

While Defendant correctly cites the general rule that 15 U.S.C. § 1681s-2(b) applies to

furnishers, it fails to address the core of Plaintiff's specific claim: that Experian, in

transmitting tradeline data to LexisNexis Risk Solutions (LNRS), functioned as a furnisher

of information and thereby triggered a separate statutory duty under § 1681s-2(b)(1)(D) to

notify LNRS of ongoing consumer disputes.  Contrary to Defendant's assertion, Plaintiff has

presented record evidence (see ECF No. 77.1, Exhibit E) showing that Experian transmitted

disputed data to LNRS, which LNRS then included in its consumer reports. Under 12 C.F.R. §

1022.41(c), any entity that "furnishes information relating to consumers to one or more

consumer reporting agencies for inclusion in a consumer report" is a furnisher for purposes of §

1681s-2(b). This legal classification is not nullified by Experian's general status as a CRA it can

act in dual roles depending on its function in a transaction.

Additionally, Experian failed to mark the PenFed tradelines it transmitted to LNRS

as disputed, a direct violation of its duty under § 1681s-2(b)(1)(D). The omission of this dispute

indicator is actionable, and the FCRA imposes liability where the failure to flag disputed

information causes consumer harm or the reporting of materially misleading data. Experian's

own declaration fails to rebut this specific violation. Their citation to general CRA duties under §

1681i is irrelevant to Plaintiff's § 1681s-2(b) claim, which is based not on reinvestigation, but on

furnishing data to LNRS, a consumer reporting agency while omitting required dispute notations a fact supported by the record.  Therefore, Defendant's claim that Experian cannot be a furnisher under any circumstances is legally and factually incorrect. Plaintiff's Count II is properly grounded in § 1681s-2(b) and should proceed to trial and they are liable for the same reason as PenFed for not reporting the current status of these accounts as at the time of the disputes with LNRS, PenFed was in clear possession of information supporting a transfer/assignment of the PenFed accounts and did not correct, delete, or update any of its reporting further showing willfulness, neglect, reckless/malicious conduct.

### D.  Response to section D, Defendant's Argument (ECF No. 415-1 at 29–31): Damages and Publication Under FCRA

Defendant's assertion that Plaintiff has not produced competent evidence of publication or damages is contradicted by both the factual record and controlling precedent. Plaintiff has presented direct documentation via discovery disclosures (see…section III STATEMENT OF UNDISPUTED FACTS ¶ 22 and section IV, Factual Background of this memorandum in opposition) demonstrating specific denials of credit following Experian's inaccurate reporting.

The language of these denials clearly indicate the following, that "The credit decision was based in whole or part on information obtained in a report from the credit reporting agency listed below and a credit score that they obtained from the consumer reporting agency".  Further evidencing that each of these credit decisions were based on an Experian consumer report obtained and occurred while Experian was publishing materially inaccurate tradelines current statuses, including charged-off and misclassified balances, and failing to flag them as disputed, thus satisfying the FCRA's publication requirement.

Defendants Exhibit 6 (see…ECF No. 415-5 at 64-76) evidences that the PenFed accounts were still being report as of an Experian September 7, 2022 re-investigation where Experian

admits to provided an updated consumer discloser based on the results. It even shows that there was an update on the auto loan account further supporting the inaccuracy of their reporting. This account was updated from a zero balance without any additional documentation nor specific dispute further supporting the ability to re-investigate and correct any alleged inaccuracy and/or incomplete reporting based on a simple dispute of incorrect information Exhibit 5 (see…ECF No. 415-5 at 60-63).

Plaintiff further identified specific damages in response to Interrogatory No. 5, including denial of credit, inability to obtain matched credit offers, and the ongoing impact of erroneous balance reporting on his creditworthiness and financial access. Defendant's suggestion that Plaintiff's claims are unsupported ignores this record and the foundational rule that "[a] plaintiff may recover statutory or actual damages without economic loss, where emotional distress, denial of credit, or reputational harm are shown." See *Sloane v. Equifax Info. Servs., LLC*, **510 F.3d 495, 500–01 (4th Cir. 2007).**

Moreover, the law does not require deposition of the third-party creditors for admissibility of adverse action when Plaintiff can authenticate denial letters as part of his personal records and testimony. The hearsay argument fails under FRE 803(6) (business records) and FRE 801(d)(2) (admissions when offered not for the truth but to prove the fact of denial). Therefore, Defendant's argument fails. Plaintiff has met his burden on damages and publication under the FCRA. Summary judgment must be denied.

### E. Response to section E(1), Defendant's Argument (ECF No. 415-1 at 31–32): Defamation and FCRA Preemption

Defendant's assertion that Plaintiff's defamation claim under South Carolina law fails is both factually inaccurate and legally unsupported. Contrary to Experian's contention, Plaintiff has presented sufficient evidence of Experian's knowing publication of materially false and

incomplete status information which is inaccurately reported and has been disseminated to third

parties omitting transferred via assignment of accounts, and misrepresentations of account

statuses despite clear disputes presented directly by Plaintiff. Experian continued publishing

these inaccuracies to third parties even after being put on specific notice, (see...ECF No. 1-5 at

3-4, Exhibit D) notice satisfying the standard for "willful intent to injure" or

"conscious indifference" under both 15 U.S.C. § 1681h(e) and South Carolina law.

In *Beattie v. Nations Credit Fin. Servs. Corp. Fin. Servs. Corp.,* **No. 02-1744, 2003 WL**

**21480586, at \*5 (4th Cir. June 27, 2003),** the Fourth Circuit acknowledged that malice includes

reckless disregard of a consumer's rights. Here, the repeated transmission of false tradeline data

including current status even after multiple disputes, statutory notice, and Plaintiff's provision of

clarifying documentation rises to that threshold. Further, Plaintiff's complaint and record

evidence, including credit denials linked to Experian's reports, establish "publication" and

resulting injury.  Importantly, FCRA preemption under § 1681h(e) is limited where malice or

willful intent is at issue. Defendant's blanket pre-emption claim is misplaced and ignores the

qualifying language within the statute itself. See...*Gorman v. Wolpoff & Abramson, LLP,* **584**

**F.3d 1147, 1173 (9th Cir. 2009)** ("Claims of defamation... based on willful and malicious

conduct are not preempted.").  Therefore, Plaintiff's defamation claim withstands summary

judgment.

   **F.  Response to section E(2) Defendant's Argument (ECF No. 415-1 at 32): State**
       **Statutory Claim under South Carolina Financial Identity Fraud and Identity Theft**
       **Protection Act**

   Defendant's assertion that Plaintiff's Count IV under the South Carolina Financial

Identity Fraud and Identity Theft Protection Act (S.C. Code § 37-20-170) must fail for the same

reasons as Plaintiff's FCRA claims is incorrect both factually and legally also because the CRA's

including Experian, failed to produce sufficient evidence that the information reported was true and accurate information as required by 37-20-170(A) and (B)(4). Plaintiff's claims under the FCRA have not failed; rather, Plaintiff has presented credible evidence demonstrating Experian's failure to reasonable re-investigate and resolve multiple disputes related to erroneous tradelines, including required reporting based on procedures they have adopted and made mandatory to be followed which is also regulated to support a reporting of complete and accurate information reported with maximum possible accuracy to be in compliant with both state law and the FCRA. Any deviations from their duties, their own adopted procedures, the laws, regulations and reporting requirements results in clear violations resulting in liability to the consumer. Moreover, Defendant's pre-emption argument under 15 U.S.C. § 1681t(b)(1)(B) misrepresents the scope of preemption. Courts have held that FCRA preemption does not categorically eliminate all state law claims merely because they touch upon similar subject matter. Rather, where a state statute imposes independent duties or parallels federal obligations as does § 37-20-170 it is not necessarily preempted. **See *Ross v. FDIC*, 625 F.3d 808, 814 (4th Cir. 2010)** (recognizing that courts must carefully assess the scope and nature of the state statute before finding preemption). A reasonable re-investigation into the charge-off, and independent investigation by Experian which include but is not limited to receiving sufficient evidence that the information is true and accurate information from PenFed as they have the ability to receive as required by state law (see…37-20-170(A) and (B)(4)) which improves upon the FCRA, the CRA's including Experian could have uncovered that the PenFed accounts were transferred/assigned to external collections. Plaintiff's December 27, 2021 call proves that an investigation into the charge-off itself uncovered third party external transfers.  37-20-170 et seq. is not inconsistent with any provision

of the FCRA as 37-20-170 et seq. which prescribes for the CRA's to provide to the consumer sufficient evidence used in the investigation that proves the information reported is true and accurate information therefore is not pre-empted under 15 U.S. Code § 1681t(a). Section 1681t(b)(1)(B) only prescribes pre-emption only to the extent, "relating to the time by which a consumer reporting agency must take any action, including the provision of notification to a consumer or other person, in any procedure related to the disputed accuracy of information in a consumer's file and 1681t(c) only provides pre-emption related to "Firm offer of credit or insurance", neither pre-emptions apply here therefore defendant's arguments fail as a matter of law. Additionally, Plaintiff incorporates by reference in their entirety the expert analysis and arguments raised in his oppositions to Equifax and motions (ECF Nos. 421, 431, 434), which further supports this opposition. Accordingly, Count IV is valid and not preempted.

## VI.    STATEMENT OF DISPUTED MATERIAL FACTS AND GENUINE ISSUES FOR JURY DETERMINATION

Pursuant to Lawful Command, Plaintiff provides the following non-exhaustive list of disputed material facts and core legal controversies that are subject to factual resolution by a jury. As Plaintiff has properly demanded a trial by jury, and as Federal Rule of Civil Procedure 56 mandates denial of summary judgment where any genuine dispute of material fact exists, these questions must be reserved for determination by a jury of Plaintiff's peers:

1. Whether Experian's credit reporting regarding Plaintiff's PenFed and REV accounts was materially inaccurate, misleading, or false within the meaning of the Fair Credit Reporting Act (FCRA).

2. Whether Experian's reporting of balances on accounts alleged to be transferred via assignment, or charged-off was patently incorrect or misleading in a manner that adversely affected Plaintiff's creditworthiness.

3. Whether Experian received notice of Plaintiff's disputes that sufficiently identified the nature of the alleged inaccuracies and triggered its statutory duty to reinvestigate under 15 U.S.C. § 1681i.

4. Whether Experian conducted a reasonable reinvestigation of the disputed accounts, including whether it reviewed and considered all relevant information submitted by Plaintiff.

5. Whether Experian applied proper Metro 2 codes.

6. Whether Experian followed reasonable procedures to assure maximum possible accuracy of the information contained in Plaintiff's consumer reports as required under 15 U.S.C. § 1681e(b).

7. Whether Experian's reliance on ACDV responses alone without independent review was a reasonable method to verify disputed information in light of Plaintiff's documentation.

8. Whether Plaintiff suffered actual harm and damages including credit denials, reputational injury, and emotional distress as a proximate result of Experian's conduct and reporting.

9. Whether Experian's disclosure of inaccurate or incomplete information to third parties constituted "publication" under common law and whether such disclosure was made with malice or willful intent to injure.

10. Whether Experian's conduct violated the South Carolina Financial Identity Fraud and Identity Theft Protection Act, including its reinvestigation provisions as incorporated by reference.

11. Whether the reporting of charged-off balances and non-zero figures after account transfer or closure was misleading as it does not indicate the current status of the accounts in violation of FCRA standards.

12. Whether Experian is shielded from liability where Plaintiff has presented competent documentary evidence, and factual declarations disputing the truthfulness of Experian's records.

13. Whether Experian furnishes consumer data to third parties and acted as a data furnisher subject to the obligations set forth in 15 U.S.C. § 1681s-2(b).

14. Whether Plaintiff's sworn declaration, dispute records, credit denial documentation, and evidence of balance inconsistencies raise triable issues of material fact regarding Experian's liability.

Each of the above questions requires resolution of factual disputes supported by documentary evidence, discovery record, and the testimony of Plaintiff. Accordingly, these matters are properly reserved for a jury and summary judgment must be denied.

## VII.    CONCLUSION

Pursuant to Lawful Command, Plaintiff respectfully presents that Defendant Experian's Motion for Summary Judgment must be denied in its entirety. The record contains ample disputed issues of material fact that are squarely within the province of the jury to determine particularly concerning the accuracy of Experian's credit reporting, the reasonableness of its procedures and reinvestigations, and the damages Plaintiff suffered as a result of Experian's continued reporting of inaccurate and misleading information. Experian's own admissions, coupled with documentary exhibits and Plaintiff's sworn declaration, raise genuine disputes that cannot be resolved as a matter of law.

Experian's reliance on disputed declarations and unsupported denials particularly in light of evidence from the consumer disclosure reports, dispute records, and credit denial documentation further illustrates that summary judgment is inappropriate. Moreover, Plaintiff has sufficiently pled and supported his statutory and common law claims under the FCRA and South Carolina law, and Experian's arguments concerning preemption and legal insufficiency are unavailing under the governing standards.

Accordingly, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion for Summary Judgment in full and allow this matter to proceed to trial by jury as demanded.

Dated this 29th day of July, 2025.

RESPECTFULLY PRESENTED,

_Nelson L. Bruce_
Nelson L. Bruce, Sui Juris
All Secured Natural Rights Explicitly Reserved and Retained "with prejudice"
P.O. BOX 3345, Summerville, South Carolina [29484]
Phone: 843-437-7901
Email: leonbruce81@yahoo.com