Record/FILE ON DEMAND                    U.S.P.S. Priority Mail Tracking No. 9405 5301 0935 5188 8660 37

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| Nelson L. Bruce,<br><br>    Plaintiff,<br><br>v.<br><br>Pentagon Federal Credit Union; et al.<br><br>    Defendants. | Case No.: 2:22-cv-02211-BHH-MGB<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT TRANS UNION, LLC ("TRANS UNION") MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT (ECF NO.'S 414 and 414-1)** |

## I.    INTRODUCTION

Plaintiff Nelson L. Bruce ("Plaintiff"), proceeding pro se, submits this memorandum in opposition to the Motion for Summary Judgment (ECF No. 414 and 414-1) filed by Defendant Trans Union LLC ("Trans Union"). Defendant's motion must be denied because it rests on mischaracterized facts, a flawed application of law, and a deliberate disregard of judicially cognizable evidence already on record. Plaintiff hereby incorporates by reference all applicable facts, arguments, and evidentiary assertions raised in his sur-reply and oppositions to the motions for summary judgment (see…Equifax (ECF No. 421, 431 and 434), and PenFed (ECF No. 432).

Plaintiff's claims arise under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., the South Carolina Consumer Protection Code ("SCCPC"), and the common law of defamation. Contrary to Trans Union's assertions, genuine disputes of material fact remain as to whether Trans Union willfully or negligently violated its duties under §§ 1681e(b), 1681i, and 1681s-2(b) of the FCRA. Specifically, Trans Union's continued publication of outdated and

inaccurate tradelines relating to Plaintiff's accounts with Pentagon Federal Credit Union ("PenFed"), its failure to apply Metro 2 standard codes reflecting transfer of those accounts, and its failure to conduct reasonable reinvestigations—all support a denial of summary judgment.

Most critically, Trans Union engaged in the **unauthorized reinsertion** of previously removed PenFed LOC account data **without providing Plaintiff the required notice under 15 U.S.C. § 1681i(a)(5)(B)(ii)**. This unlawful reinsertion discovered through Plaintiff's consumer disclosure and documentation after applying for credit constitutes an independent FCRA violation and further undermines any claim by Trans Union that its reporting and reinvestigation efforts were conducted in good faith or accordance with law. This fact alone mandates denial of summary judgment, as it raises a clear jury question regarding willfulness and damages.

Because the reinsertion, the misreporting of tradeline status, and the denial of dispute accuracy and completeness raise material factual disputes, summary judgment is both inappropriate and premature. This case must proceed to trial to resolve the credibility, willfulness, and factual accuracy of Trans Union's reporting and conduct.

## II.     STANDARD OF REVIEW (REVISED)

Summary judgment is only appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(a)*; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is material if it could affect the outcome of the case under governing law, and a dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248.

In reviewing a motion for summary judgment, the court must construe all evidence and draw all reasonable inferences in favor of the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). Courts are not permitted to weigh evidence or make credibility determinations. *See*

*also Reeves v. Sanderson Plumbing Prods., Inc.*, **530 U.S. 133, 150–51 (2000).** Where the nonmovant presents evidence that a reasonable jury could rely upon to find in its favor, summary judgment must be denied. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986).**

This standard is especially strict in cases under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., which imposes clear statutory obligations on consumer reporting agencies ("CRAs"), including duties of accuracy, reinvestigation, notification, and procedural safeguards. Courts have routinely held that questions regarding the reasonableness of procedures, accuracy of reporting, and adequacy of reinvestigation are factual matters for the jury. See *Cushman v. Trans Union Corp.*, **115 F.3d 220, 223–25 (3d Cir. 1997); *Dennis v. BEH-1, LLC*, 520 F.3d 1066, 1071 (9th Cir. 2008).**

Importantly, the FCRA, codified at 15 U.S.C. § 1681i(a)(5)(B), requires that if a consumer reporting agency reinserts previously deleted information into a consumer's file, it must notify the consumer in writing within five business days of the reinsertion. The failure to provide such notification, particularly when the reinsertion results in continued harm or prejudice to the consumer, constitutes a separate actionable violation under the statute. In this case, Plaintiff has alleged and provided supporting evidence that Trans Union reinserted the PenFed line-of-credit account after deletion without providing the required notice, further evidencing the unreasonableness and noncompliance of Trans Union's procedures and triggering liability under § 1681i(a)(5)(B). Accordingly, because material facts remain in dispute regarding Trans Union's failure to adhere to its statutory duties—including but not limited to §§ 1681e(b), 1681i, 1681s-2(b), and 1681i(a)(5)(B)—summary judgment in its favor must be denied.

## III. STATEMENT OF UNDISPUTED FACTS

Judicial notice is respectfully requested for the following material facts, which are either

admitted by Defendant Trans Union, supported by record evidence, or are otherwise undisputed and form the foundation of Plaintiff's claims that have survived dismissal and remain at issue in this litigation:

1. Plaintiff Nelson L. Bruce is a natural person and "consumer" as defined in 15 U.S.C. § 1681a(c), and at all times relevant resided in the State of South Carolina.

2. Defendant Trans Union, LLC is a "consumer reporting agency" ("CRA") as defined by 15 U.S.C. § 1681a(f), and it engaged in the preparation, maintenance, and dissemination of consumer credit reports concerning Plaintiff.

3. On or about June 11, 2018, Plaintiff presented a formal dispute to Trans Union concerning alleged inaccuracies in three Pentagon Federal Credit Union ("PenFed") accounts: (1) a credit card, (2) an auto loan, and (3) a line-of-credit account, all of which were being reported on Plaintiff's consumer report. (See ECF No. 1-2, Exhibit A, ECF No. 414-2 at 10-12, ACDV's Trans. Exhibits A-1).

4. As of July 4, 2018 the re-investigation results came back verifying the balance and past due amount.(See…ECF No. 412-2 at 13-35, Trans. Exhibit A-2, A-3, A-4, A-5, ACDV's)

5. Following a reinvestigation prompted by another online dispute presented by Plaintiff on or about June 4, 2019, Trans Union deleted the PenFed accounts from Plaintiff's credit report without providing any explanation or confirmation of the reinvestigation outcome outside of being deleted. (See ECF No. 1-2, Exhibit B, ECF No. 414-2 at 36-38, ACDV's Trans. Exhibit A-6).

6. As of July 2, 2019 the re-investigation results came back verifying the balance and past due amount.(See…ECF No. 412-2 at 39-61, Trans. Exhibit A-7, A-8, A-9, A-10, ACDV's)

7. Subsequent to the deletion, Trans Union reinserted at least the PenFed line-of-credit account into Plaintiff's credit file on or about December 6, 2022 without providing written notice of the reinsertion within five business days, as required by 15 U.S.C. § 1681i(a)(5)(B). (see…ECF No. 291-1, Exhibit A-1). No evidence has been submitted by Trans Union demonstrating that such notification was provided. And then deleted again on or about 2-3-2022 again without notice (see…ECF No. 291, Exhibit A-1).

8. TransUnion has not provided any documentary evidence or legal justification explaining why the PenFed line-of-credit tradeline was reinserted, nor evidence that they fulfilled their statutory duty to notify Plaintiff within the mandated timeframe under § 1681i(a)(5)(B)(ii).

9. The account data reported by Trans Union concerning PenFed was materially inconsistent with the data reported by other CRAs. For example, Experian and LexisNexis reported the PenFed Auto and Line-of-Credit accounts as having zero balances, while Trans Union and

Equifax reported those same accounts with outstanding balances. (See ECF No. 31-1 at 5, 20, 23, 32, 33, 39, 40 Exhibit E").

10. PenFed's had internally recorded and confirmed by written correspondence dated April 11, 2022, that the relevant accounts were sold, assigned, or otherwise transferred to third-party collectors including United Holding Group and National Credit Corporation which later was discovered it was not sold but indeed assigned to NCC who continued to attempt to collect as of November 3, 2022 and stopped on or about December 14, 2022. (See ECF No. 1-4, Exhibit C and ECF No. 421-1, Exhibit 42).

11. Trans Union failed to ensure the "maximum possible accuracy" of Plaintiff's credit information by continuing to report the PenFed line-of-credit account as active or with a balance, despite having notice that the account was transferred and should have been reported with a zero balance per Metro 2 Format and Credit Reporting Resource Guide ("CRRG") standards. (See…ECF No. 1-5 at 2, Exhibit D, April 17, 2022 letter)

12. Plaintiff did not receive any written confirmation that Trans Union had deleted, corrected, or lawfully verified the information, nor did Trans Union provide the method or sources relied upon in the reinvestigation.

13. As a direct result of Trans Union's continued reporting of inaccurate, incomplete, and unverified information including reinsertion without proper notification Plaintiff suffered emotional distress, reputational damage, and other quantifiable economic injuries such as higher interest rates (See ECF No. 291-2, Exhibit A-2) as plaintiff's credit score was lowered by about 41 points as a result of the re-insertion evidenced by the February 3, 2023 report showing a score of 611 as the score continued to be adversely effected and once removed, on or about February 6, 2023 the score was went up to 652. (See ECF No. 291-1 at 8 and 11).

14. The Declaration of Craig Olson submitted by co-defendant PenFed confirms PenFed's knowledge that the accounts were charged off and subsequently assigned for collection, thereby triggering TransUnion's duty to report those accounts as transferred and no longer active (See Exhibit C, Exhibit D, incorporated by reference).

15. As admitted to by Trans Union, Plaintiff and Trans Union entered into a settlement agreement on July 5, 2023, the date of execution when both parties signed making the agreement valid and enforceable. Any claims after this execution date is barred however it is clear by Trans Trans Unions own admission that plaintiff filed a second amended complaint on May 28, 2023 before the agreement was executed. By their own admission, the agreement did not take effect until after July 5, 2023 therefore the re-insertion claims having been previously asserted in case no. 2:22-cv-02211-BHH- MGB on May 28, 2023 before plaintiff signed on 6-23-2023 and fully executed on July 5, 2025, these claims are not barred by the settlement agreement. (See…ECF No. 414-1 at 28-29 and ECF No. 414-3 at 305-312, Trans. Exhibit B-4)

16. Neither credit reporting agencies have denied that a transferred/assigned account is required to be reported as transferred, with a Zero Balance, Zero amount past due to be in

compliance with Metro 2 requirements/CRRG and Regulation V, Appendix E and therefore is a undisputed fact material to this case. Plaintiff's evidence by both Equifax and Experian referencing 2 different account that were transferred to third parties supports the required reporting of a sold/transferred/assigned account and the industry standard for reporting them further proving that the PenFed accounts are being reported inaccurately and without complete information. (See...Exhibit 61 and ECF No. 421-9, Exhibit 50)

17. The ACDV's produced by Trans Union supports that the accounts current "status" section of a consumer report is a required item of information which adversely effects how the balance and past due amounts which supports a complete transfer to a third party for the reporting to be accurate and complete when transferred or sold to third parties. (See... ECF No. 414-2 at 10-12, ACDV's Trans. Exhibits A-1, ECF No. 412-2 at 13-18, Trans. Exhibit A-2, A-3, A-4, ACDV's, ECF No. 414-2 at 36-38, ACDV's Trans. Exhibit A-6, ECF No. 412-2 at 39-44, Trans. Exhibit A-7, A-8, A-9, ACDV's)

18. Plaintiff's Fourth Amended Complaint is a verified complaint and is therefore treated as an affidavit under Federal Rule of Civil Procedure 56(c)(4) for summary judgment purposes. (See...ECF No. 291)

19. Plaintiff has PenFed as a witness for trial. Plaintiff intends to have the individual employed by PenFed who utilizes their Metro 2 system to report consumer accounts demonstrate to the court and jury in multiple reporting scenarios what type of compliance errors they get when they report a transferred/assigned account status with a balance and past due amount, rather than with a zero balance and zero amount past due to further prove to the court without a doubt that it is the industry standard to report the current status of a Transferred/assigned account with a zero balance and zero past due amount when transferred or sold to an external third party in order to be accurate and complete. To provide further proof that an assigned/transferred/sold account are reported the same way, as transferred, with a zero balance, zero amount past due. These are continuous genuine issues of material fact that cannot be resolve on summary judgment, only at trial in front of a full jury to resolve this current controversy.

## IV. FACTUAL BACKGROUND

Plaintiff Nelson L. Bruce is a natural person and "consumer" as defined under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681a(c), and has resided in South Carolina at all times relevant. Defendant Trans Union, LLC is a nationwide "consumer reporting agency" (CRA) as defined under 15 U.S.C. § 1681a(f) and is engaged in the preparation and distribution of consumer reports bearing on creditworthiness, including Plaintiff's.

On or about June 11, 2018, Plaintiff initiated a formal dispute with Trans Union

concerning inaccurate and incomplete data related to three tradelines furnished by Pentagon Federal Credit Union (PenFed): a credit card, an auto loan, and a line-of-credit account (See ECF No. 1-2, Exhibit A; ECF No. 414-2 at 10–12, ACDV's, Trans. Ex. A-1). As of July 4, 2018, Trans Union's re-investigation returned results that continued to verify the balance and past-due amounts despite Plaintiff's dispute (See ECF No. 412-2 at 13–35, Trans. Ex. A-2 to A-5).

A subsequent online dispute by Plaintiff on or about June 4, 2019, prompted another reinvestigation, after which Trans Union deleted the PenFed accounts without furnishing any statement of reasons, source information, or method of verification (See ECF No. 1-2, Exhibit B; ECF No. 414-2 at 36–38, ACDV's, Trans. Ex. A-6). Yet, despite this deletion, the PenFed line-of-credit account was later **reinserted** into Plaintiff's file on or about **December 6, 2022**, without the mandatory written notice to Plaintiff within five business days, in direct violation of 15 U.S.C. § 1681i(a)(5)(B). No evidence has been presented by Trans Union showing any such notice was issued (See ECF No. 291-1, Exhibit A-1). The account was again deleted without notice around February 3, 2023 (See ECF No. 291, Exhibit A-1).

The reinsertion caused Plaintiff's credit score to decrease by approximately 41 points, from 652 to 611, adversely affecting his credit standing and causing quantifiable economic and emotional damages. Once the account was removed again, Plaintiff's score returned to 652, evidencing the material impact of Trans Union's wrongful conduct (See ECF No. 291-1 at 8, 11; ECF No. 291-2, Exhibit A-2).

Further, Trans Union continued to report inaccurate balance data for the PenFed accounts even after PenFed, through a written communication dated **April 11, 2022**, confirmed that the accounts had been either sold or transferred to third-party entities, including United Holding Group and National Credit Corporation (See ECF No. 1-4, Exhibit C; ECF No. 421-1, Exhibit

42). Despite that information, Trans Union failed to update its reporting in accordance with industry-standard Metro 2 Format and the Credit Reporting Resource Guide (CRRG), which would require a zero balance and designation of the account status as "transferred."

Compounding these failures, Trans Union did not update the current status as transferred with a zero balance zero amount past due. Such marking does not mean paid as there are different codes to utilize for that. This indication would evidence that all collections have been transferred to a third party, that PenFed is not the party collecting. Plaintiff's disputes, including a letter dated April 17, 2022 (See ECF No. 1-5 at 2, Exhibit D), placed Trans Union on actual notice that the data being reported was inaccurate, unverified, and incomplete. Nonetheless, Trans Union failed to identify the method used in its reinvestigation or to disclose the source of verification, breaching its duties under 15 U.S.C. §§ 1681i(a)(6)(B)(iii) and 1681g(a). Significantly, discrepancies appeared between Trans Union's reporting and that of other consumer reporting agencies. Whereas Experian and LexisNexis reported the PenFed accounts with **zero balances**, Trans Union and Equifax reported **outstanding balances**, a material inconsistency that supports the allegation that Trans Union failed to maintain Plaintiff's file with maximum possible accuracy (See ECF No. 31-1 at 5, 20, 23, 32, 33, 39, 40, Exhibit E).

PenFed's own statements provided through sworn declarations by Craig Olson (See ECF No. 415-4; see also Exhibits C and D)—confirmed the accounts were charged off and subsequently assigned, not owned or collected on by PenFed post-transfer, making Trans Union's continued active balance reporting factually and legally untenable.

## III. Plaintiff response to Defendant section IV(A). Defendant's Accuracy Argument Is Factually and Legally Deficient (ECF No. 414-1 at 6-7)

Defendant Trans Union's claim that its reporting was accurate at all times is directly contradicted by documentary evidence, statutory requirements, and Defendant's own failures to

comply with federal law. First, the assertion that no inaccuracy exists collapses under scrutiny. Trans Union re-inserted the PenFed line-of-credit account into Plaintiff's file on or about **December 6, 2022**, without providing written notice to Plaintiff within the required five business days, in **violation of 15 U.S.C. § 1681i(a)(5)(B)** a statutory breach independent of substantive accuracy. Trans Union's failure to notify is undisputed and alone precludes summary judgment.

Second, Plaintiff's credit file materially contradicted industry reporting standards and other CRA records. **Experian** and **LexisNexis** reported the PenFed accounts with **zero balances**, consistent with accounts that had been transferred or assigned, while **Trans Union** continued to report outstanding balances and failed to reflect a transfer notation or furnish the required **Metro 2 Format Transfer Status Code "05"** and **Special Comment Code "O."** This reporting failed the "maximum possible accuracy" standard of **§ 1681e(b)** and created a materially misleading credit profile.

Third, sworn declarations and correspondence from PenFed confirm the accounts were transferred and no longer under PenFed's ownership or collection authority (See ECF No. 1-4, Exhibit C; ECF No. 421-1, Exhibit 42; Olson Decl.). Trans Union's continued reporting of these accounts as active with balances, without reflecting their transfer status, is factually inaccurate and misleading to third parties, has an adverse effect on the plaintiff, his credit score, credit terms, credit capacity and interest rates all apart of plaintiff's credit worthiness.

Finally, Defendant's reliance on general case law (**e.g., *Cahlin, Ritchie***) misapplies precedent. In contrast to those cases, Plaintiff has presented concrete evidence of: (1) conflicting account status across CRAs; (2) improper reinsertion without notice; and (3) failure to accurately report current statuses requiring zero balances post-assignment. These are not merely disputes over semantics they represent statutory violations and factual misstatements, rendering

Defendant's argument legally and evidentially deficient. Additionally, Plaintiff incorporates by reference in their entirety the expert analysis and arguments raised in his oppositions to Equifax and PenFed's motions (ECF Nos. 421, 431, 432, 434), which further supports this opposition. Accordingly, Trans Union's claim to accuracy as a matter of law fails, and summary judgment must be denied.

## IV.     Plaintiff's response to section IV(B): Plaintiff's Claims Are Timely Under the Law and Discovery Rule Ongoing ECF No. 414-1 at 7-8)

Defendant's claim that Plaintiff's allegations arising from 2018 and 2019 are time-barred under 15 U.S.C. § 1681p misstates both the factual timeline and the controlling legal standards. Under § 1681p, FCRA actions must be filed "within two years after the date of discovery by the plaintiff of the violation that is the basis for such liability" or within five years of the date on which the violation occurred, whichever is earlier.

Here, Plaintiff first became aware of the underlying factual inaccuracies regarding the status of the PenFed accounts in December 2021, when he personally contacted PenFed and was informed that the accounts had been assigned or transferred to third-party collectors, including United Holding Group and National Credit Corporation. (See ECF No. 421-1, Exhibit 42). Prior to this contact, PenFed never informed Plaintiff therefore plaintiff had no knowledge that PenFed had relinquished ownership rights in the servicing and collection authority over the accounts, information central to his claim that Trans Union's June 2018 reinvestigation was unreasonable and that the continued reporting of balances and charge-offs was materially inaccurate and misleading.

Further confirming the December 2021 discovery date, PenFed issued written confirmation by letter dated April 11, 2022, affirming that the accounts in question had been transferred via assignment and were no longer being serviced and collected by PenFed. (See ECF

No. 1-4, Exhibit C). This written acknowledgment serves as direct, corroborative evidence of Plaintiff's discovery of the underlying inaccuracy, thus triggering the statutory limitations period no earlier than December 2021.

Moreover, even under the alternate five-year window permitted by § 1681p from the date the violation occurred, Plaintiff's claims filed on July 12, 2022 amended on May 28, 2023 (ECF No. 98) remain timely. The 2018 and 2019 disputes form part of a continuous chain of reporting violations, culminating in the unauthorized reinsertion of the PenFed line-of-credit tradeline in December 2022, without notice, in breach of § 1681i(a)(5)(B). This act, alone, provides for a separate statute of limitations clock as the LOC account was not being reported as of 7-2-2019 but re-inserted on or about December 2022 and supports Plaintiff's entitlement to relief under both federal and state law. Plaintiff's verified complaint and evidence (ECF Nos. 291-1, 291-2) clearly reflect economic harm, including adverse score impacts and higher borrowing costs, directly caused by the December 2022 reinsertion. These are not stale claims they stem from fresh, actionable injury within the statutory window.

Accordingly, Defendant's statute of limitations defense fails. Plaintiff's claims are timely under the discovery rule, the five-year window permitted by statute, and the ongoing violation doctrine.


## V.     Plaintiff's Response to Argument C (ECF No. 414-1 at 8): Plaintiff's 1681e(b) Claim is Valid and Not Subject to Dismissal

Defendant Trans Union's claim that Plaintiff cannot sustain a claim under 15 U.S.C. § 1681e(b) fails as a matter of both fact and law. Plaintiff has presented competent summary judgment evidence including verified complaint allegations (ECF No. 291), exhibits incorporated by reference, and documented reinvestigation results demonstrating that:

1. **Inaccurate Information Was Included**: Trans Union reported the PenFed line-of-credit account with a balance and as past due, even after receiving confirmation that the account had been **assigned** to National Credit Corporation and was **no longer active** as a PenFed-held debt. Under Metro 2 Format and CRRG standards, such accounts are required to reflect **zero balances** and be marked as **transferred** a reporting obligation Trans Union failed to meet (See ECF No. 1-5 at 2, Exhibit D; ECF No. 421-9, Exhibit 50; ECF No. 414-2 at 10–12, Trans. Exhibit A-1).

2. **Report Dissemination to Third Parties**: Plaintiff provided proof of consumer report dissemination containing the inaccurate PenFed tradeline to third-party lenders, causing direct harm. (See ECF No. 291-2, Exhibit A-2 showing adverse credit score impact and Exhibit 42 evidencing continued collection communications by third parties).

3. **Failure to Follow Reasonable Procedures**: Trans Union's re-insertion of a previously deleted tradeline without notice (in violation of § 1681i(a)(5)(B)) and without verifying the current account status as transferred or inactive demonstrates a fundamental failure to follow procedures "to assure maximum possible accuracy." The absence of any indication that Trans Union verified or updated its reporting protocols per Regulation V and Metro 2 standards substantiates this element. (see…ECF No. 414-2 at 49, Trans. Exhibit A-10)

4. **Damages Were Suffered**: Plaintiff experienced quantifiable harm, including a **41-point drop** in credit score (See ECF No. 291-1 at 8 and 11) which directly influenced creditworthiness, increased interest rates, and resulted in emotional and reputational harm all traceable to the inaccurate reinsertion and continued false reporting.

5. **Causation Is Established**: The damages stem directly from Trans Union's inaccurate and misleading reporting, failure to conduct a lawful reinvestigation, and reinsertion of a tradeline without mandated consumer notice or verification.

Therefore, Plaintiff satisfies all required elements under § 1681e(b) and presents sufficient evidence to defeat summary judgment. Defendant's argument lacks merit when confronted with the factual record and applicable legal standards.

## VI.   Plaintiff's Response to Section C(i) (ECF No. 414-1 at 9): The Reporting of Plaintiff's PenFed Accounts Was Inaccurate and Misleading

Defendant Trans Union's claim that the reporting of Plaintiff's PenFed accounts was accurate is contradicted by substantial record evidence and lawful standards under the Fair Credit Reporting Act. Plaintiff's claims are not based on speculation but on **documented correspondence** and **factual inconsistencies** across CRA reports, as well as violations of

mandatory reporting Metro 2/CRRG and Regulation V, Appendix E and procedures under §

1681e(b).

1. Contrary to Trans Union's Assertions, PenFed's Own Letter Indicates Assignment and or Sale: The April 11, 2022 letter from PenFed confirms that the credit card account was "sold to United Holding Group" and the line-of-credit account was "assigned" to National Credit Corporation (ECF No. 1-4, Exhibit C). Regardless of PenFed's later attempt to "walk back" the language through a self-serving declaration, the contemporaneous letter provided actual notice to Plaintiff and is competent summary judgment evidence of a transfer or assignment. The fact that NCC attempted to collect supports the assignment of collections (see…ECF No. 421-1, Exhibit 42 and ECF No. 410-10 at 1-7Craig Olson's 2nd Decl. ¶¶'s 17–20) admitting NCC was collecting, not PenFed since April of 2018.

2. Assignment for Collection Requires Reporting Change: The Metro 2 Format/CRRG standards, and Regulation V which govern industry compliance for credit reporting by data furnishers, dictate that once an account is assigned for collection, it must be reported as "transferred" and/or "assigned," with a zero balance and no past due amount to prevent misleading representations of a consumer's obligations. Trans Union failed to implement these requirements, thus violating § 1681e(b). (ECF No. 421-2 Exhibit 43)

3. Discrepancy in CRA Reports Proves Inaccuracy: Experian and LexisNexis properly reported the PenFed accounts as having zero balances consistent with an assigned or transferred status. However, Trans Union continued to report outstanding balances and past due amounts, materially misleading to third parties (See ECF No. 31-1 at 5, 20, 23, 32, 33, 39, 40 Exhibit E), which alone satisfies the inaccuracy threshold under Dalton and Guimond.

4. Plaintiff's Personal Knowledge and PenFed Admissions Are Sufficient: Plaintiff's discovery of the assignment came directly from communications with PenFed and is supported by exhibits on record. Plaintiff is not required to demonstrate the legal finality of a transfer, only that the information reported was materially misleading and not updated to reflect accurate status, which Trans Union failed to do.

5. Charge-Off Reporting with Balance Does Not Absolve Misleading Reporting: While a charged-off account can report with a balance, that does not immunize the CRA from liability when that reporting fails to reflect a known assignment or transfer, misleads third parties, or contradicts industry standards by such omission that causes an adverse effect.

   Therefore, Plaintiff's § 1681e(b) claim is valid and supported by factual evidence, and

Trans Union's motion for summary judgment must be denied.

## VII.    Plaintiff's Response to Section C(ii) (ECF No. 414-1 at 10-11): Trans Union Published an Inaccurate Credit Report to a Third Party

Defendant Trans Union's assertion that Plaintiff has no evidence of publication of an inaccurate report to a third party is legally and factually incorrect. Plaintiff explicitly identified a Trans Union consumer report issued to Capital One on or about January 20, 2023, which contained materially inaccurate and misleading information regarding the PenFed line-of-credit account (see ECF No. 291-2, Exhibit A-2). This report reflected an active balance and past due amount on the PenFed account despite it having been previously deleted in 2019, and despite having been assigned for collection, which required a zero balance under Metro 2 and CRRG industry standards.

1. Trans Union's Own Records Show Reporting of the Account Post-Reinsertion: Trans Union reinserted the PenFed account on or about December 6, 2022 without notification to Plaintiff, violating § 1681i(a)(5)(B), and continued to report the account through at least February 3, 2023, as demonstrated by Plaintiff's personal credit report showing a credit score reduction of 41 points caused by the reinsertion and publication of the inaccurate tradeline (ECF No. 291-1 at 8, 11).

2. Inaccuracy is Demonstrated by Contradictory CRA Reporting and Verified Account Status: As previously referenced, Experian and LexisNexis reported the PenFed line-of-credit account with zero balances, while Trans Union reported it with outstanding obligations. Further, PenFed's April 11, 2022 letter confirmed assignment of the account to NCC (ECF No. 1-4, Exhibit C), which made the continued balance reporting inaccurate.

3. **Concrete Injury from Publication is Evidenced**: Plaintiff applied for credit with Capital One and suffered tangible harm reduction in credit score and exposure to higher credit terms due to the inaccurate report. Even if Trans Union argues no physical copy of the Capital One report is attached, Plaintiff's **testimony, documentation, and the adverse credit score event** serve as sufficient evidence under Rule 56 standards to support publication and injury.

4. **Legal Standard is Satisfied**: The Supreme Court in ***TRW v. Andrews*** and subsequent courts have held that publication of inaccurate data by a CRA suffices for FCRA liability under § 1681e(b). Plaintiff has met this threshold.

Accordingly, Plaintiff has provided **specific evidence** that an inaccurate Trans Union report was published to a third party (Capital One), causing concrete harm. Therefore, Defendant's argument fails, and summary judgment should be denied.

**VIII.     Plaintiff's Response to Section C(iii) (ECF No. 414-1 at 11-12): Trans Union Failed to Follow Reasonable Procedures Under § 1681e(b)**

Trans Union's argument that it followed "reasonable procedures" as required by §

1681e(b) is belied by the record evidence and specific statutory violations demonstrated by

Plaintiff. While the FCRA does not impose strict liability, it mandates that a CRA adopt

procedures that **assure maximum possible accuracy**, not merely formal compliance or blind

reliance on furnishers.

1.  Trans Union violated 15 U.S.C. § 1681i(a)(5)(B) by reinserting the PenFed line-of-credit tradeline in December 2022 without notifying Plaintiff within five business days a procedural lapse that directly contradicts its claimed policies and supports an inference of willfulness or negligence in failing to follow statutory requirements (see ECF No. 291-1, Exhibit A-1).

2.  Trans Union repeatedly accepted data from PenFed that conflicted with its own prior deletion, PenFeds records and with data from other CRAs. PenFed acknowledged in a letter dated April 11, 2022, that the LOC accounts was and still is "assigned" for collection, and as of December 2021, Plaintiff discovered the accounts were no longer serviced by PenFed. Nonetheless, Trans Union reported active balances and failed to include a transfer or dispute notation—clear evidence of failure to verify and reconcile critical account information (ECF No. 1-4, Exhibit C; ECF No. 421-1, Exhibit 42).

3.  Trans Union had multiple triggers Plaintiff's disputes, deletions, notice of transfer contradictory CRA reporting, and PenFed's own admissions that required heightened scrutiny. It failed to act on these red flags.

4.  Whether procedures are "reasonable" is ordinarily a question of fact for the jury. ***Dalton v. Capital Associated Industries, Inc.*, 257 F.3d 409, 416 (4th Cir. 2001).** Plaintiff has presented substantial evidence from verified complaints, exhibits, and documentary contradictions to raise genuine issues of material fact precluding summary judgment.

Thus, Trans Union's claim that it followed reasonable procedures cannot be resolved as a

matter of law, and Plaintiff's § 1681e(b) claim must proceed to trial.

## IX.     Plaintiff's Response to Section C(iv) (ECF No. 414-1 at 12-13): Plaintiff Has Established Recoverable Damages Under the FCRA

Contrary to Trans Union's assertion, Plaintiff has submitted competent summary

judgment evidence demonstrating actual damages proximately caused by Trans Union's statutory

violations, particularly its unlawful reinsertion and continued reporting of inaccurate PenFed

account information.

1. Plaintiff documented a measurable drop in his credit score due to the reinsertion of the PenFed line-of-credit tradeline on or about December 6, 2022, without notice. As of February 3, 2023, his score was reduced to 611 and subsequently rose to 652 once the tradeline was removed, illustrating a direct causative link between the reinsertion and credit score harm (See ECF No. 291-2, Exhibit A-2; ECF No. 291-1 at 8, 11). This decline qualifies as actual damage under FCRA precedent.

2. Plaintiff substantiated that the adverse reinsertion led to higher interest rates and suppressed credit limits from Capital One based on the report dated January 20, 2023 within the relevant period and traceable to Trans Union's erroneous reporting. Such unfavorable terms meet the threshold for compensable harm under 15 U.S.C. § 1681n and § 1681o.

3. The reinsertion of a previously deleted tradeline without compliance with § 1681i(a)(5)(B) not only constitutes an independent statutory violation but also foreseeably caused quantifiable economic harm, satisfying the proximate cause standard recognized in ***Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001).**

4. Plaintiff's Fourth Amended Complaint is verified and thus treated as a sworn affidavit under Rule 56(c)(4), supporting both the allegations of harm and their connection to Trans Union's conduct (ECF No. 291). Courts routinely accept verified complaints as competent summary judgment evidence.

Therefore, Plaintiff has demonstrated genuine issues of material fact as to actual damages proximately caused by Trans Union's conduct. Summary judgment is not appropriate.

### X.    Plaintiff's Response to Section C(iv)(1) (ECF No. 414-1 at 13-14): – Plaintiff Has Presented Evidence of a Diminished Credit Score and Tangible Harm

Defendant's assertion that Plaintiff has no evidence of a diminished credit score or resulting tangible harm is demonstrably incorrect and contradicted by the record.

1. Plaintiff has presented objective evidence demonstrating that his credit score dropped approximately **41 points from 652 to 611** as a direct result of Trans Union's unlawful **reinsertion** of the PenFed line-of-credit tradeline on or about **December 6, 2022**, in violation of 15 U.S.C. § 1681i(a)(5)(B). After the account was subsequently deleted, the score rose back to 652, directly correlating the reinsertion with a measurable and reversible score impact (See ECF No. 291-2, Exhibit A-2; ECF No. 291-1 at 8, 11).

2. The decrease in Plaintiff's credit score caused higher interest rates and lower credit limits, including with Capital One following a credit report issued by Trans Union on January 20, 2023 which included the inaccurate tradeline. This constitutes adverse action and tangible harm under FCRA jurisprudence, satisfying the standard in ***Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409 (4th Cir. 2001).**

Plaintiff has established both a factual diminution in credit score and resulting adverse credit impacts directly traceable to Trans Union's statutory violations. Summary judgment is improper on this basis.

## XI. Plaintiff's Response to Section C(iv)(2) (ECF No. 414-1 at 14-15): Plaintiff Has Shown Evidence of Specific Actual Damages—not Speculative Harm

Trans Union claims Plaintiff's allegations about lost credit offers or chilling effect on applications are speculative and unsupported. They cite Fourth Circuit precedent requiring reasonable certainty in damages.

1. Plaintiff has furnished documented proof of a 41-point credit score drop from 652 to 611 coinciding with Trans Union's reinsertion of the PenFed line-of-credit tradeline on December 6, 2022, and recovery when it was removed. This reversible, measurable harm is far more concrete than mere speculation.

2. The inclusion of the inaccurate tradeline in a credit report to Capital One (dated January 20, 2023) led to higher interest rates and reduced credit limits, as evidenced in Plaintiff's disclosure materials. These are actual adverse actions directly traceable to the inaccurate Trans Union report not hypothetical lost opportunities.

3. **Under *Dalton v. Capital Associated Industries*,** courts have recognized that credit score reduction and resulting adverse lender decisions are compensable under the FCRA. Here, Plaintiff's real-world experience credit score drop and interest-rate impact meets that standard.

4. Rather than relying on uncertain speculation, Plaintiff has provided specific depositions, disclosure statements, interrogatory responses, and credit-score reports substantiating the claimed harms. This constitutes precise evidence of actual injury, not conjecture.

Plaintiff's damages allegations are supported by concrete, documented evidence not mere speculation. The 41-point credit score drop coupled with confirmed adverse lender action are sufficient to sustain his claim under FCRA. There is no basis for summary dismissal on grounds of speculative damages.

## XII. Plaintiff's Response to Section C(iv)(3) (ECF No. 414-1 at 16-17): Plaintiff's Capital One Interest Rate and Limit Are Actionable Under the FCRA

Trans Union argues that any harm related to Plaintiff's Capital One Spark Business card

is non-compensable under the FCRA because it involves a business-purpose credit product, and that Plaintiff lacks evidence of causation or comparative interest rate data. The defense's argument ignores well-settled law and regulator guidance: where a consumer's personal credit report is used even for a business credit application—and the individual is made liable (such as via personal guarantee or as the account principal), FCRA protections are triggered. This includes the right to notice and to dispute inaccurate information where less favorable credit terms (i.e., higher interest or lower credit limit) result from that report. The fact that Plaintiff was "approved" does not defeat the adverse action claim: courts and the Supreme Court recognize that non-optimal terms caused by inaccurate credit reporting are actionable under the FCRA. The defendant's blanket reliance on outdated or inapposite "business-credit exemption" cases fails to account for modern agency and court guidance which applies FCRA in precisely this hybrid context.

1. Although the card is labeled for "business," it was issued to Plaintiff individually, based on his personal credit report, which Trans Union published to Capital One on January 20, 2023. Courts have held that where a consumer's personal credit is evaluated even for business-related extensions FCRA protections can still apply, particularly where adverse action results from inaccurate reporting. See **Bacharach** and **Stich** distinguishable where **solely** commercial data was involved.

2. Concrete Harm Documented
Plaintiff has shown that the reinserted inaccurate tradeline caused a 41-point credit score drop, demonstrably affecting the interest rate and credit limit offered by Capital One. This is not speculative; Plaintiff's documentation links the reinsertion date (December 6, 2022) with the adverse report and loan terms received in January 2023. Such injury meets the *Dalton* standard for actual FCRA damages.

3. Proximate Cause Established
Plaintiff does not need to show "what his interest rate should have been" in a vacuum. Rather, evidence of lowered credit score due to inaccurate reinsertion, combined with adverse credit terms, is sufficient to demonstrate harm proximately caused by Trans Union's violation of 15 U.S.C. § 1681e(b) and § 1681i(a)(5)(B).

The evidence establishes that Trans Union's reinsertion of inaccurate data led to a

measurable, adverse financial outcome, regardless of whether the card was labeled "business." The FCRA's consumer protection scope covers use of personal credit reports, and Plaintiff has met the burden of showing actual, traceable harm.

### XIII. Plaintiff's Response to Section C(iv)(4) (ECF No. 414-1 at 17): Trans Union's Actions Directly Caused Plaintiff's Damages

Trans Union claims Plaintiff has failed to show causation between its inaccurate reporting and the alleged harm, citing ***Dalton.*** Plaintiff has demonstrated a direct causal link between Trans Union's reinsertion of the inaccurate PenFed line-of-credit account without proper notice as required by 15 U.S.C. § 1681i(a)(5)(B) and tangible harm, including:

- A 41-point drop in Plaintiff's credit score after reinsertion (Dec. 6, 2022), as shown in Plaintiff's Trans Union credit reports.
- The publication of that inaccurate report to Capital One on January 20, 2023, prior to which Plaintiff had no such negative tradeline.
- Capital One then offering Plaintiff a higher interest rate and lower credit limit, substantiating economic damage traceable to the inaccurate reinsertion.

These facts, corroborated by ECF No. 291-1 at 8, 11 and Plaintiff's verified complaint, establish both injury and proximate causation under the FCRA's standards.

Plaintiff's damages are not speculative they flow directly from Trans Union's unlawful reinsertion and publication of disputed account data. Summary judgment is improper where material factual disputes exist regarding causation and damages.

### XIV. Plaintiff's Response to Section D (ECF No. 414-1 at 17-18): Plaintiff's § 1681i Claims Are Factually and Legally Supported

Trans Union asserts Plaintiff's 2018 dispute fails under § 1681i for lack of inaccuracy, notice, and proof of unreasonable reinvestigation.

Plaintiff satisfies all five elements under § 1681i:

1. Trans Union reported PenFed accounts with balances and no transfer notation despite PenFed's April 11, 2022 letter confirming the accounts were assigned to third parties, contradicting accurate status. (See ECF No. 1-4, Ex. C).

2. Plaintiff disputed the accounts directly and repeatedly, beginning June 11, 2018, then again in 2019 and 2022, as proven by ACDVs and dispute records (See ECF Nos. 414-2 at 10–12, 36–38).

3. Disputes addressed account balances, amount past due related to the accounts. (see…ECF No. 414-2 at 11-12) which as required by Metro 2/CRRG and Regulation V require the status to be reported as transferred with a zero balance, zero amount past due. (see…ECF No. 421-2 Exhibit 43) These are matters of substantive reporting obligations, not speculative claims.

4. Trans Union's own ACDVs reflect superficial checks returning "verified" responses without resolving contradictions between furnishers or updating account status per FCRA and Metro 2. No explanation was provided for reinsertion (Dec. 6, 2022) or deletion (Feb. 3, 2023), without mandatory notice under § 1681i(a)(5)(B).

5. Plaintiff's credit file documents show a 41-point score drop, leading to adverse credit terms (See ECF No. 291-1 at 8, 11). These injuries flow directly from Trans Union's failure to reasonably reinvestigate or ensure accurate reinsertion compliance.

Plaintiff has produced more than sufficient factual evidence to raise a genuine dispute

regarding Trans Union's failure to conduct a reasonable reinvestigation under § 1681i.

Defendant's motion should be denied.

## XV.  Plaintiff's Response to Section D(i) (ECF No. 414-1 at 18): Plaintiff Has Established the Existence of Inaccuracies

Defendant's claim that no inaccuracy exists is contradicted by record evidence:

1. Trans Union reported PenFed accounts as active with outstanding balances despite April 11, 2022 correspondence from PenFed confirming the accounts were assigned to NCC and United Holding Group for collection, triggering required status updates per Metro 2 Format and CRRG standards (See ECF No. 1-4, Exhibit C).

2. Trans Union did not mark the accounts as transferred/assigned, nor adjust the balance or past due amount to zero in violation of FCRA § 1681e(b), § 1681i,, Metro 2/CRRG and Regulation V, Appendix E to document the complete transfer to third party collections.

3. Conflicting Furnisher Data: LexisNexis and Experian reported the same PenFed accounts as having zero balances, directly contradicting Trans Union's reporting (See ECF No. 31-1, Exhibit E).

4. Trans Union reinserted the line-of-credit account on December 6, 2022, without the statutorily required five-day notice under § 1681i(a)(5)(B), further constituting a material inaccuracy and procedural failure.

The existence of an inaccuracy is well-supported by objective documents and statutory

obligations. Trans Union's continued reporting of transferred accounts as active with balances

absent proper notice or correction constitutes a clear violation under § 1681i. Summary

judgment is improper.

## XVI.  Plaintiff's Response to Section D(ii) (ECF No. 414-1 at 18-19): Plaintiff Provided Timely and Adequate Notice of the Inaccuracy

Defendant's assertion that Plaintiff failed to notify Trans Union of the inaccuracy

mischaracterizes the record:

1. Plaintiff presented disputes in both 2018 and 2019 challenging the accuracy of reporting related to balances and amounts past due. These disputes triggered Trans Union's reinvestigation duty under **15 U.S.C. § 1681i(a)(1)**.

2. The claim concerning sale, assignment, or transfer was based on **new facts discovered in December 2021** when PenFed first disclosed third party collections via transfer/assignment of accounts to NCC and/or UHG determined in discovery to be assigned/transferred to NCC and not sold. Plaintiff is not required to have disputed facts only that he dispute the items of information, the CRA is required to conduct the investigation to determine the current status of the disputed information 1681i(a)(1)(A). based on the results and discovery of third party assignments/transfers of accounts and also transfers of balances by credit and debit transactions to and from an allowance account, the 2018-2019 disputes with trans union were unreasonable. Under the FCRA's discovery rule, the reinvestigation duty remains applicable as Plaintiff acted promptly upon learning the full scope of the inaccuracy.

Plaintiff's § 1681i claim is grounded in both timely dispute submissions and newly

uncovered facts which Trans Union failed to address in its reinvestigations. Defendant's argument

disregards Plaintiff's statutory right to dispute newly discovered inaccuracies and is without merit.

## XVII.  Plaintiff's Response to Section D(iii) (ECF No. 414-1 at 19-20): Trans Union's Reinvestigation Was Unreasonable

Trans Union's claim of a "reasonable reinvestigation" is undermined by critical factual

developments and industry standards not captured by their cursory reliance on ACDV responses in 2018:

1.  While an ACDV response from PenFed may constitute *some* reinvestigation activity, **Cushman v. Trans Union** (3d Cir., adopted in 4th Cir.) and ***Wilson v. CoreLogic SafeRent*** make clear that CRAs **cannot blindly rely** on furnisher responses when a consumer provides documentation or when an issue is facially plausible. Plaintiff provided documentation to Trans Union about the PenFed Accounts on or about June 17, 2022. (see…ECF No. 1-5 at 3-4, Exhibit D) Trans Union re-inserted the PenFed LOC on or about December 6, 2022. (see…ECF No. 291-1, Exhibit A-1). Trans Union had knowledge of the transfer/assignment to collections well before they re-inserted the PenFed LOC which appears to be intentionally re-inserted since this was done when there was an active lawsuit pending against them see…ECF No. 414-3 at 306, case no. 2:2021cv03603) to which the attorney of record, the same attorneys in this matter received on trans unions behalf that no reasonable investigation could ignore.

2.  Plaintiff did not have any awareness of account transfers or assignments until the December 2021. The prior ACDV process, conducted before those facts were already part of PenFed's records to which could have been discovered if a reseanable re-investigation was conducted.

3.  According to industry guidance (Metro 2 / CRRG), assigned or transferred accounts must be reported with zero balance and Transfer Status Code "05" plus Special Comment Code "O." (see…ECF No. 421-2, Exhibit 43).

Even accepting that Trans Union sent standard ACDVs in 2018, its reinvestigation becomes unreasonable as a matter of law in light of the post-dispute evidence clearly showing transfer/assignment that Trans Union ignored. It failed to correct the transfer status, incorporate Metro 2 compliance codes. Summary judgment on § 1681i must be denied.

## XVIII. Plaintiff's Response to Section E (ECF No. 414-1 at 20): No claims against Trans Union for failure to Include an Account In Dispute Notation

Plaintiff clarifies that no claim is being asserted against Trans Union under § 1681s-2(a)(3) or any related provision for failure to mark the PenFed accounts as "disputed." Any reference by Defendant to such a claim is misplaced and irrelevant. As such, this issue is not before the Court, and Defendant's argument should be disregarded in its entirety.

XIX.    **Plaintiff's Response to Section F (ECF No. 414-1 at 21-22): F. Plaintiff's Reinsertion Claim Survives as a Matter of Law**

Plaintiff's reinsertion claim under 15 U.S.C. § 1681i(a)(5)(B) survives summary

judgment.

1.   Trans Union deleted the PenFed revolving line of credit account (#6770) from Plaintiff's file in July 2019 and suppressed it thereafter. However, the same account—despite cosmetic field variations—was reinserted by Trans Union in December 2022 without the required notice to Plaintiff within five business days, as mandated by § 1681i(a)(5)(B)(ii). No evidence exists that Trans Union provided the mandatory written notice upon this reinsertion. See ECF No. 414-1 at 21; ECF No. 291, ¶¶ 50, 77, 113; see also PenFed letter dated April 11, 2022 (ECF No. 414-3 at 309, Exhibit B-4).

2.   Trans Union's argument that the second tradeline was a new account is unavailing. Bothaccounts stem from the same PenFed obligation, and field differences (e.g., "portfolio type" or "first reported date") do not circumvent FCRA's notice requirement where a materially identical charged-off account reappears after deletion. Further, the account number did not change. Trans Union admits suppression mechanisms failed and that it removed the "second version" only after discovery in February 2023, acknowledging it did not receive certification for reinsertion under § 1681i(a)(5)(B)(i). ECF No. 414-1 at 21.

3.   Further, Plaintiff never received a notice of reinsertion and first discovered the reappearance through his January 2023 Capital One credit report—confirming that no compliance with § 1681i(a)(5)(B)(ii) occurred. Under the FCRA's 5-year statute of limitations and the discovery rule, this violation is timely. See ECF No. 291 at ¶¶ 50–52; ECF No. 414-3, Exhibit B-4.

TransUnion reinsertion of the PenFed line-of-credit account in December 2022, without

the statutorily required consumer notification, is actionable under § 1681i(a)(5)(B). There is no

evidence TransUnion complied with its notice obligations, and Plaintiff's claim falls within

statutory deadlines. Summary judgment should thus be denied on this claim

XX.    **Plaintiff's Response to Reinsertion Claim Under § 1681i(a)(5)(B) (ECF No. 414-1 at 22–23):**

Contrary to Defendant's assertions, Plaintiff has presented sufficient evidence to establish

a prima facie violation of 15 U.S.C. § 1681i(a)(5)(B). Trans Union deleted the PenFed revolving

line of credit account (#6770) on July 2, 2019. However, Trans Union subsequently allowed

materially identical information regarding this same account to reappear on Plaintiff's credit file in December 2022 without (1) obtaining a certification of accuracy from the furnisher and (2) providing written notice to Plaintiff within five business days of the reinsertion both statutory mandates under § 1681i(a)(5)(B)(i)-(ii). See ECF No. 414-1 at 21–22; ECF No. 291 at ¶ 115(l)-(m).

Defendant concedes the second tradeline had field variations (e.g., different "portfolio type," "first reported date," and "closed date") but does not dispute that the reappearing account originated from the same PenFed obligation. The argument that the reinsertion was "not the same account" is contrary to the factual continuity and industry reporting standards under Metro 2 and Regulation V, which mandate accuracy and completeness for reassigned or transferred accounts.

Plaintiff discovered the reinsertion in January 2023 when reviewing a Capital One credit pull and was never notified within five business days as required by § 1681i(a)(5)(B)(ii). Further, Trans Union has produced no evidence that PenFed certified the information's accuracy under § 1681i(a)(5)(B)(i). The reinserted tradeline caused reputational and economic harm by contributing to a lower credit score and higher lending terms, as outlined in Plaintiff's interrogatory responses and Capital One business account disclosures (ECF No. 291 at ¶¶ 77, 113; ECF No. 421-9, Exhibit 50). The evidence establishes that previously deleted information was reinserted without proper certification or timely notice in direct violation of 1681i(a)(5)(B). That none of the Second Version was verified therefore is inaccurate on its face contributing to additional inaccuracies. Plaintiff has demonstrated damages causally connected to this violation. Therefore, Trans Union's motion must be denied as to Plaintiff's reinsertion claim.

**XXI.**    **Plaintiff's Response to Defendant's Argument that the Reinserted Information Was Not Inaccurate or Incomplete (ECF No. 414-1 at 23):**

Defendant's assertion that the reinserted PenFed account was not inaccurate or incomplete is contradicted by both industry standards and the record. The second tradeline reported in December 2022 was materially identical to the account previously deleted on July 2, 2019, and originated from the same PenFed obligation (#6770). Despite cosmetic field changes, the core data elements (the "dates") account number, debt origin, and balance substantially overlapped, triggering § 1681i(a)(5)(B) reinsertion safeguards.

Metro 2 and Regulation V, Appendix E, require complete and accurate reporting, including proper designation of accounts that have been charged off, transferred, or assigned. The December 2022 tradeline lacked critical fields identifying it as a previously deleted, disputed account, thereby rendering the report materially incomplete and misleading to any third-party user evaluating Plaintiff's creditworthiness.

Furthermore, Trans Union's failure to provide the required five-day written notice of reinsertion, or to obtain a certifying statement from PenFed affirming the accuracy of the reinserted tradeline, constitutes a standalone violation of 15 U.S.C. § 1681i(a)(5)(B), irrespective of Defendant's subjective view of accuracy. Plaintiff has established that the reinserted account was incomplete and misleading under applicable law and industry standards. Defendant's failure to comply with § 1681i(a)(5)(B) procedures invalidates its claim that the information was lawfully reintroduced, and summary judgment must be denied accordingly.

**XXII.**    **Plaintiff's Compact & Strong Response to Defendant's Argument That the Conduct Did Not Constitute a "Reinsertion" (ECF No. 414-1 at 23):**

Defendant asserts that no reinsertion occurred under § 1681i(a)(5)(B) because Trans Union was merely processing a "new" account submission with different field data, not

reintroducing previously deleted information following a furnisher certification. This argument is both legally and factually flawed:

1. Under § 1681i(a)(5)(B), reinsertion encompasses any reappearance in the consumer report of information previously deleted following a dispute unless the CRA obtains proper certification from the furnisher and sends the consumer timely notice. It is irrelevant whether the furnisher expressly "requested" reinsertion; rather, the focus is on the CRA's action of allowing the previously deleted tradeline back into the report.

2. Trans Union's Automated System Treated the Reappearing Account as a New Entry, But It Was the Same Underlying Obligation. The December 2022 tradeline emanated from the same PenFed PLOC account (#6770) previously deleted in July 2019. Trans Union's system viewed this as a different account due to superficial changes in data fields, but this does not change the substance: the same obligation after deletion returned to the consumer file. That constitutes reinsertion under the FCRA.

3. In situations where a consumer reporting agency republishes substantially the same information previously removed regardless of minor differences the policy reasoning behind § 1681i(a)(5)(B) applies. The Court must protect consumers against exactly this sort of evasion through superficial formatting changes.

4. Regardless of whether the system flagged the tradeline as new, Trans Union never obtained a certification from PenFed nor provided Plaintiff written notice within five business days of its reappearance. These non-disclosures independently violate § 1681i(a)(5)(B)(i)–(ii), triggering liability even if the reinsertion claim could be dismissed on technical grounds.

Plaintiff sufficiently alleges that the December 2022 tradeline constituted a reinsertion: the account was already deleted and later republished without notice or certification by the furnisher. Whether or not the CRA's automated system classified it as new is immaterial under the statute. Defendant's claim to the contrary fails as a matter of law. Trans Union's motion for summary judgment should accordingly be denied on this ground.

## XXIII.   Plaintiff's Response to Section IV.F, Subsection 3: Damages and Reinsertion Claims (ECF No. 414-1 at pp. 22–23)

### a. Plaintiff Has Suffered Recoverable Damages Caused by Trans Union

Trans Union errs in asserting Plaintiff lacks recoverable damages. Plaintiff's factual showing includes:

- Credit score decline directly tied to the reinsertion of the PenFed PLOC: Trans Union's February 3, 2023 report showed a score of 611, which rose to 652 shortly after the tradeline's deletion, confirming a 41-point decline caused by the disputed tradeline (see ECF No. 291-1 at 8 & 11).
- Higher interest rate on his Capital One card that Plaintiff credibly attributes to the reinsertion, even though he was approved, resulting in quantifiable financial harm.
- Concrete harm as required under Dalton, not mere speculation the score drop and tangible impact on interest rates suffice for actual damages.

These injuries directly tie to Trans Union's alleged violations. Trans Union's refusal to treat them as recoverable ignores binding Fourth Circuit precedent allowing recovery for actual damages beyond emotional distress.

### b. Plaintiff's Reinsertion Claim Under § 1681i(a)(5)(C) Also States Viable Causes of Action

Trans Union claims Plaintiff did not assert a § 1681i(a)(5)(C) "reappearance" claim. While Plaintiff specifically pled a § 1681i(a)(5)(B) reinsertion claim, if the Court construes the Complaint to also encompass § 1681i(a)(5)(C), it remains viable:

1. Information reappeared in the consumer file despite deletion in July 2019, reinserted December 2022.

2. System misclassification of the December 2022 tradeline as a new account due to minor field differences does not defeat the substance of the reappearance claim. Trans Union *knew or had reason to know* this was the same obligation.

3. Procedural failure: Trans Union's "reasonable procedures" did not prevent this reappearance, as required by § 1681i(a)(5)(C). Its system misidentification reflects a procedural breakdown. Wagner Decl. ¶ 18.

4. Resulting damages are identical and causally linked to Trans Union's failure in maintaining adequate reinsertion controls.

Plaintiff demonstrates plausible and non-speculative damages attributable to Trans Union's conduct, satisfying § 1681i(a)(5)(B) and potentially § 1681i(a)(5)(C). Trans Union's arguments fail as matter of law. The re-insertion or reappearance of the PenFed tradeline caused measurable harm, and Plaintiff properly pled and supported each element. Summary judgment should be denied.

### XXIV.    Plaintiff's Response to Section IV.G: Plaintiff's Reinsertion Claims Not Released in a Prior Settlement Agreement (ECF No. 414-1 at pp. 28–29)

#### 1. The Reinsertion Claims Are Explicitly Preserved in the Settlement Agreement

- The Settlement Agreement (executed July 5, 2023) expressly preserved claims relating to "preparation and issuance of consumer reports that included allegedly inaccurate, incomplete, untrue, incorrect, misleading and unverified information," and "alleged failure to conduct reasonable and lawful reinvestigations of Plaintiff's disputes." These broad exclusions clearly encompass re-insertion or reappearance causes tied to disputed accuracy.
- Plaintiff filed his Second Amended Complaint on May 28, 2023, *before* the Settlement took effect, and included the reinsertion allegations (ECF No. 98). The Agreement's reference to "allegedly inaccurate … misleading … information," combined with reinvestigation failures, implicitly preserves the reinsertion/reappearance claims—even if "reinsertion" is not named verbatim.

#### 2. Trans Union's Own Drafting Confirms the Reinsertion Claims Were Intentionally Preserved

- Trans Union drafted the Agreement's exclusions after Plaintiff had already pled the reinsertion theory. Thus, any omission of the term "reinsertion" was deliberate and reflects mutual intent not to waive those claims. That intent should be honored and enforced.

#### 3. Settlement Contextual Interpretation Supports Preservation, Not Waiver

- Under contract interpretation principles, exceptions to a release are read expansively, and ambiguities are resolved *against the drafter*. When the release text excludes **inaccuracy**, **misleading content**, and **investigation failures**, it almost certainly includes claims arising from reinsertion of misleading data.
- Trans Union cannot rely on catch-all release language to bar reinsertion claims that materially derive from the same underlying misconduct.

#### 4. Even if Considered Waived, Summary Judgment on Reinsertion Is Premature Without Factual Findings

- By the time of settlement execution, the reinsertion claim remained pending in Plaintiff's operative pleadings. The release does not refer to case-numbers including reinsertion allegations (e.g., 2:22-cv-02211-BHH-MGB).
- Resolution of validity or scope of waiver requires factual findings not properly resolved on summary judgment alone.

Trans Union's argument that Plaintiff waived his reinsertion/reappearance claim fails.

The express exclusions for "inaccurate," "misleading," or "investigation failures" encompass

those claims. Further, Plaintiff raised the reinsertion allegations before the Settlement took

effect. Any reasonable interpretation of the Agreement favors preserving, not barring, those

claims. At minimum, the issue is fact-intensive and not ripe for summary judgment. Summary

judgment based on alleged waiver should be denied.

## XXV.    Plaintiff's Response to Section IV.H – Plaintiff Cannot Prove Willful Violation of the FCRA *(ECF No. 414-1 at pp. 29–30)*

TransUnion's summary judgment argument on willfulness severely mischaracterizes both

the legal standards and the facts. Plaintiff's evidence and binding precedent support a contrary

conclusion:

1. TransUnion's Conduct Was Not Reasonably Compliant with FCRA

- TransUnion asserts it followed standard ACDV procedures and data integrity protocols. However, once Plaintiff provided direct notice via phone call in December 2021 and PenFed's April 11, 2022 letter confirming that the PenFed accounts had been transferred/assigned, such conduct became objectively unreasonable. CRAs must not blindly rely on furnisher responses when clear discrepancies and evidence of transfer exist.
- Courts in the Fourth Circuit and beyond have held that failing to conduct meaningful reinvestigation when furnished data contradicts consumer-supplied documentation meets the definition of reckless disregard, not mere negligence.

2. TransUnion Acted with Reckless Disregard, Not Good Faith

   a. TransUnion claims it lacked reason to doubt PenFed's reporting. That claim collapses under scrutiny:
      - Plaintiff's December 2021 communication with PenFed and April 11, 2022 letter put TransUnion on clear notice before publishing that the PenFed accounts no longer belonged to the original furnisher nor serviced by.
      - Despite this, and during a pending litigation when the account was not being reported, TransUnion did not mark the accounts as assigned/transferred, did not zero out the balance, and continued reporting derogatory status knowing the current status before re-insertion.

That constitutes more than mere negligence: it is precisely the type of reckless inaction

Safeco and Fourth Circuit precedent describe when evaluated under an objective reasonableness

standard.

3. Jury Rather Than Court Must Resolve Disputed Facts

- Safeco makes clear: determinations regarding whether CRA procedures are objectively reasonable and whether conduct involves reckless disregard are generally questions for the jury, especially in light of consumer-supplied documentation and contradictory information.
- Here, the presence of Plaintiff's documentary evidence, PenFed's own correspondence, and TransUnion's failure to meaningfully update or verify the account status create genuine issues of material fact that preclude summary judgment.

Plaintiff has provided compelling evidence that TransUnion (a) continued to report materially misleading account information after explicit notice of assignment, and (b) failed to meaningfully reinvestigate, thereby acting in reckless disregard of its statutory and equitable responsibilities under the FCRA.  Given Fourth Circuit precedent and the factual disputes at issue, summary judgment on willfulness under § 1681e(b) and/or § 1681i is not appropriate. This claim must be presented to a jury for resolution.TransUnion's motion on this point should be denied in full.

## XXVI.  Plaintiff's response to Trans Unions' Memorandum (see…ECF No 414-1 at 30-35): Plaintiff's Common-Law Defamation Claim Must Be Submitted to a Jury

### A. FCRA Preemption (§ 1681h(e)) Does Not Bar Plaintiff's Defamation Claim

TransUnion contends that Plaintiff's defamation claim is foreclosed by 15 U.S.C. § 1681h(e). This defense fails because the FCRA's preemption clause applies only to false reporting made without "malice or willful intent to injure". ***Ross v. FDIC*, 625 F.3d 808, 814 (4th Cir. 2010); *Thornton v. Equifax, Inc.*, 619 F.2d 700, 703 (8th Cir.1980).**

1. Plaintiff has produced **direct evidence**: PenFed's December 2021 call confirming transfer of accounts to NCC, and an April 11, 2022 letter provided continuous notice during litigation before reinsertion with complete notice about the PenFed accounts which Trans Union references by presenting a portion of the settlement agreement (ECF No. 414-1 at 28-29, Exhibit B-4) further documenting the assignment information TransUnion allegedly ignored when continuing to report the accounts inaccurately via re-insertion, failed to certify and or receive certification of the account information before re-insertion and without notice to the plaintiff.  That evidence supports a reasonable inference that TransUnion acted with **reckless indifference or conscious disregard** for the truth, meeting the standard under South

Carolina and federal definitions of malice. *New York Times Co. v. Sullivan*, **376 U.S. 254, 280 (1964)**; *Beattie v. Nations Credit Fin. Servs. Corp.*, **69 F. App'x 585, 591 (4th Cir. 2003)**. Such credibility determinations belong with a jury.

**B. Qualified Privilege Does Not Protect TransUnion Where Publication Was Abusive**

TransUnion also claims the reporting is privileged under South Carolina law. Under the doctrine of qualified privilege, a defendant must show, "1) publication in **good faith**, 2) an interest or duty justifying publication, 3) limited scope of statement, 4) proper occasion, and 5) publication to proper parties only (*Swinton Creek Nursery*, **334 S.C. 469, 484, 514 S.E.2d 126, 134 (1999)**).

A privilege is abused and thus lost if the publisher acts with malice or reckless disregard of the plaintiff's rights. *Id. at 484–85*. TransUnion's continued publication of charge-off tradelines without disclaimers or transfer notations, despite repeated notice that accounts had been assigned to third parties, suggests conduct well beyond protection. Whether TransUnion exceeded the privilege is a factual question best decided by a jury.

**C. The Reporting Was Not "True or Substantially True" as Required**

Truth is a complete defense to defamation, but it requires **both factual accuracy and context**. *A Fisherman's Best, Inc. v. Recreational Fishing Alliance*, **310 F.3d 183 (4th Cir. 2002)**; *Parrish v. Allison*, **656 S.E.2d 382 (S.C. Ct. App. 2007)**. TransUnion accurately reported that Plaintiff owed a debt but omitted that the current status of the accounts as transferred, maintaining inaccuracies in balance status and servicer identity contrary to Metro 2 standards, a mandatory industry standard they contributed to, adopted as their reasonable procedures for reporting consumer and account information with maximum possible accuracy and make it mandatory for a data furnisher to follow. See…Exhibit 61-1, which Trans Union references by presenting a portion of the settlement agreement (ECF No. 414-1 at 28-29, Exhibit

B-4, 1681(b), and 1681e(b).

Such omission is materially misleading: even true facts, when presented in incomplete form that alters their meaning, are not "substantially true." Plaintiff's evidence indicates the lack of transfer coding misled creditors into believing PenFed still serviced the debts. That difference in context is legally significant has an adverse effect on the plaintiff, the reporting of the account and must be evaluated by a jury.

## D. Publication to a Third Party Occurred with Fault and Caused Harm

TransUnion undeniably published the tradelines to third parties including Capital One on January 20, 2023. Plaintiff has produced evidence of actual harm: a 41-point credit score reduction (from 652 to 611), mis-targeted interest rates, and reputational and emotional damage (ECF No. 291-2, Exhibit A-2). Under **South Carolina law**, damage does not require proof of defamation per se where falsity and publication with fault are shown. ***Williams v. Lancaster Cty. Sch. Dist.*, 369 S.C. 293, 302–03, 631 S.E.2d 286, 292 (Ct. App. 2006).** TransUnion's continued distribution despite red flags suggests fault and possible malice. All such issues are for the jury to determine.

## E. Genuine Factual Disputes Precluding Summary Judgment

At least the following issues are disputed and must be resolved by a jury:

| Issue | Description |
|---|---|
| Malice / Reckless Disregard | Whether TransUnion knowingly or recklessly ignored evidence of account transfers before re-insertion |
| Qualified Privilege Abuse | Whether TransUnion's conduct exceeded scope of a conditional privilege under South Carolina law and or whether such a privilege exists |
| Material Truthfulness | Whether reporting was materially misleading despite. |
| Causation & Damages | Whether Plaintiff's credit harm and resulting injuries were caused by TransUnion's publications. |

**XXVII.** **Plaintiff's response to Trans Unions' Memorandum (see...ECF No 414-1 at 36-41): Plaintiff Has Demonstrated Triable Damages Attributable to Trans Union**

Contrary to Defendant's assertion, Plaintiff has produced sufficient evidence to show that he suffered actual and recoverable damages caused by Trans Union's conduct. Specifically, Plaintiff experienced a substantial drop in his credit score over 40 points immediately following the republication of the PenFed tradelines in January 2023, as evidenced in his Credit Karma record and the delayed delivery of favorable financial terms on a Capital One card. Plaintiff's loss of access to credit opportunities, reputation harm, and emotional distress, as documented in ECF No. 291-2 at 9–11, are all recognized categories of damage under the FCRA and common law. See *Guimond v. Trans Union Credit Info. Co.*, **45 F.3d 1329, 1332–33 (9th Cir. 1995).** These damages, when causally linked to an act of willful or negligent misreporting, present issues of fact inappropriate for summary judgment. Accordingly, a jury must decide the extent and cause of damages.

**A. Plaintiff's SCCPC Claims Are Legally Viable and Not Preempted**

1. Plaintiff's SCCPC Claim Is Timely Under Continuing Violation Doctrine: Although Trans Union claims the statute of limitations bars Plaintiff's SCCPC claim, the relevant reporting and publication of inaccurate information occurred as late as January 2023. Because the republication doctrine applies in FCRA and related consumer protection actions, each republication constitutes a new violation and resets the limitations period. See *Larson v. Ford Credit*, **2007 WL 1875989, at \*2 (D. Minn. June 28, 2007) (applying republication doctrine to FCRA cases); see also *Broccuto v. Experian Info. Sols., Inc.*, 2008 WL 1969222 (E.D. Va. May 6, 2008).**

2. The SCCPC Is Not Preempted by the FCRA: Trans Union's preemption defense fails. Section 1681t(b) does not preempt 37-20-170 et seq. as is not inconsistent with any provision of the FCRA as 37-20-170 et seq. which prescribes for the CRA's to provide to the consumer sufficient evidence used in the investigation that proves the information reported is true and accurate information therefore is not pre-empted under 15 U.S. Code § 1681t(a). Section 1681t(b)(1)(B) only prescribes pre-emption only to the extent, "relating to the time by which a consumer reporting agency must take any action, including the provision of notification to a consumer or other person, in any procedure related to the disputed accuracy of information in a consumer's file and 1681t(c) only provides pre-emption related to "Firm offer of credit or insurance", neither pre-emptions apply here

therefore defendant's arguments fail as a matter of law. Additionally, Plaintiff incorporates by reference in their entirety the expert analysis and arguments raised in his oppositions to Equifax and motions (ECF Nos. 421, 431, 434, opposition to Experian sections E-F at 30-32), which further supports this opposition. Furthermore, the SCCPC's requirements to provide "sufficient evidence" and disclose "procedures used" are not inconsistent with the FCRA, but rather complement its reinvestigation requirements. Courts have repeatedly upheld similar parallel state consumer protection laws. **See Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1172–73 (9th Cir. 2009).** The SCCPC merely adds specificity to already-required FCRA duties.

3. **Plaintiff Presented Triable Facts of SCCPC Violations:** Plaintiff's verified disputes to Trans Union placed the agency on notice of specific inaccuracies concerning account ownership, charge-off status, and transfer. Trans Union failed to provide "sufficient evidence" that PenFed retained ownership of the account or a clear explanation for denying the dispute, contrary to SCCPC § 37-20-170(A)–(B). The reinvestigation responses were vague form letters with no attached documentation or procedure descriptions. These issues are material and present factual disputes that must be submitted to a jury.

4. **Trans Union's Conduct Was Negligent, if Not Willful:** Whether Trans Union acted willfully or negligently is a factual question. **See Safeco Ins. Co. v. Burr, 551 U.S. 47, 57 (2007).** Evidence of Trans Union's failure to detect obvious ownership conflicts, despite prior deletions and disputes, supports a jury finding of recklessness. Trans Union's own suppression system failed, allowing reappearance of previously deleted data without validation. These facts contradict any assertion of good faith or reasonable procedures.

Plaintiff's SCCPC and damages claims are timely, legally valid, and factually supported.

Summary judgment must be denied to allow a jury to resolve the material disputes regarding

Trans Union's statutory violations and the damages they caused.

## XXVIII. MOTION TO STRIKE IMPROPER ATTORNEY TESTIMONY AND DECLARATIONS

Plaintiff respectfully moves this Court to strike from the record any declarations, factual

assertions, or expert-style testimony submitted by counsel for Trans Union, on the basis that such

materials violate the well-established attorney-witness rule and are inadmissible as a matter of

law.

1. It is a foundational principle that an attorney may not act as both an advocate and a witness in the same proceeding. As the court held in **Trinsey v. Pagliaro, 229 F. Supp. 647, 649 (E.D. Pa. 1964)**, "Statements of counsel in brief or in argument are not facts before the court," and thus are insufficient to support dispositive relief such as summary judgment. This standard is

rooted in the rules of professional conduct, and in the Federal Rules of Evidence, which limit admissible testimony to witnesses with personal knowledge (Fed. R. Evid. 602) and qualifications (Fed. R. Evid. 702).

2. Declarations or testimonial statements offered by counsel—particularly those recounting alleged procedural operations of Trans Union, or conclusions concerning compliance or policy—amount to improper testimonial evidence. See *American Bar Association Formal Op. 97-407,* noting that an attorney functioning as a fact or expert witness waives privilege and improperly blurs the role of advocate and witness.

3. This dual-role presentation severely prejudices Plaintiff and impairs the integrity of the summary judgment process. The Supreme Court has emphasized the separation of factual evidence and argument. Counsel's attempt to supply essential facts through unsworn argument or improper declarations violates that boundary and must be stricken.

**WHEREFORE,** Plaintiff respectfully requests that the Court strike any and all factual statements or declarations submitted by Trans Union's counsel purporting to serve as testimony or evidentiary support under Fed. R. Civ. P. 56, including but not limited to any such statements that (1) lack foundation under Rule 602, (2) provide expert-style conclusions without qualification under Rule 702, and/or (3) violate the attorney-witness prohibition.

## XXIX. STATEMENT OF DISPUTED MATERIAL FACTS AND GENUINE ISSUES FOR JURY DETERMINATION

Plaintiff respectfully submits the following issues of material fact, contested by the parties, which must be resolved by a jury at trial:

1. Whether the PenFed tradelines had been transferred or assigned to third parties as of December 2021 / April 2022, based on Plaintiff's telephone communication with PenFed, letters from PenFed, Declarations and attempts to collect from NCCC.

2. Whether TransUnion accurately reported those tradelines as "charged-off" with outstanding balance instead of as transferred with a zero balance and zero past due.

3. Whether omission of the Transfer Status Code "05," Special Comment Code "O," or Metro-2 Compliance Codes such as "XE/XG", rendered the tradelines materially misleading to users of Plaintiff's credit report and in such a way it has an adverse effect on the consumers interest and credit decisions.

4. Whether TransUnion engaged in a meaningful, reasonable reinvestigation after Plaintiff's June 11, 2018 and June 4, 2019 disputes, given the documentation and notice Plaintiff

provided.

5. Whether TransUnion impermissibly relied solely on furnisher responses (PenFed ACDV) without verifying the accuracy of the status changes alleged by Plaintiff and provided via documentation.

6. Whether the December 2021 PenFed phone call and April 11, 2022 PenFed written notice required TransUnion to take active investigative steps beyond ACDV confirmation when preparing a consumer report 1681e(b).

7. Whether Metro 2 and the CRRG are the industry standards for reporting complete and accurate information about the consumer and the account current status.

8. Whether the line-of-credit account reappearing in December 2022 qualifies as a prohibited "re-insertion" under 15 U.S.C. § 1681i(a)(5)(B), given that TransUnion's system did not recognize it as identical to the prior version.

9. Whether TransUnion failed to provide the required 5-business-day written notice of reinsertion, and whether no such certification from PenFed was ever provided in accordance with § 1681i(a)(5)(B)(ii).

10. Whether Plaintiff's documented credit denials, lower credit score (611 vs. 652), and increased interest rates were caused by TransUnion's reporting practices.

11. Whether Plaintiff can tie Capital One's interest rate or credit limit decision to the status of the PenFed tradelines on his TransUnion report.

12. Whether speculative harms (e.g., foregone pre-screen offers via Credit Karma) constitute recoverable damages under FCRA standards or state law limitations.

13. Whether TransUnion's failure to update account status or to investigate documentation provided by Plaintiff constitutes willful or reckless disregard—not mere negligence—under Safeco Insurance Co. v. Burr, Dalton, and Fourth Circuit precedent.

14. Whether TransUnion had an objectively unreasonable procedure or policy, especially in light of its failure to recognize or act upon consumer-submitted evidence of account transfer, the current status of an account.

## XXX.    CONCLUSION

For the foregoing reasons, including genuine disputes of material fact, direct

contradictions between the evidentiary record and Defendant's assertions, and multiple legal

errors in Trans Union's reliance on inadmissible or preempted defenses, Plaintiff respectfully

submits that summary judgment is improper. The evidence presented—when viewed in the light most favorable to Plaintiff—supports viable claims under the Fair Credit Reporting Act (FCRA), the South Carolina Consumer Protection Code (SCCPC), and South Carolina common law for defamation. Furthermore, Defendant's improper reliance on attorney declarations and misrepresentations of fact render portions of its motion legally defective and procedurally improper.  Accordingly, Plaintiff respectfully requests that this Honorable Court deny Trans Union's Motion for Summary Judgment in its entirety and permit the issues herein to proceed to trial by jury.  **Dated this _29th_ day of July, 2025.**

RESPECTFULLY PRESENTED,

*Nelson L. Bruce*
_____
Nelson L. Bruce, Sui Juris
All Secured Natural Rights Explicitly Reserved and Retained "with prejudice"
P.O. BOX 3345, Summerville, South Carolina [29484]
Phone: 843-437-7901
Email: leonbruce81@yahoo.com
