**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

|                                           |      |                                          |
| ----------------------------------------- | ---- | ---------------------------------------- |
| Nelson L. Bruce,                          | )    |                                          |
|                                           | )    |                                          |
|                   Plaintiff,              | )    | Civil Action No. 2:22-cv-02211-BHH-MGB   |
|                                           | )    |                                          |
|         v.                                | )    | **ORDER**                                |
|                                           | )    |                                          |
| Pentagon Federal Credit Union, *et. al*., | )    |                                          |
|                                           | )    |                                          |
|                   Defendants.             | )    |                                          |
|                                           | )    |                                          |

Nelson L. Bruce ("Plaintiff" or "Bruce"), proceeding *pro se* and *in forma pauperis*, filed this civil action on July 12, 2022, asserting claims pursuant to the Fair Credit Reporting Act ("FCRA"), among others. (ECF. No. 1.) Before the Court is a motion for summary judgment filed by Defendant Trans Union LLC ("Trans Union"). (ECF No. 414.) For the reasons discussed below, the Court **GRANTS** Trans Union's motion.

## BACKGROUND

This action arises from allegedly inaccurate and misleading information that Defendant Pentagon Federal Credit Union ("PenFed") and third-party REV Federal Credit Union ("REV") provided to consumer reporting agencies ("CRA"), including Trans Union, about certain accounts belonging to Plaintiff, which information the CRAs published in consumer reports. (ECF No. 291.) Plaintiff has named as Defendants two of the other CRAs at issue: Equifax Information Services LLC ("Equifax") and Experian Information Solutions, Inc. ("Experian").[1] At the outset, the Court notes that Plaintiff has amended his complaint four times, including within the past year. (ECF

---

[1] LexisNexis Risk Solutions Inc., LexisNexis Risk Solutions Florida Inc., and LexisNexis Risk Data Management Inc. are also named Defendants in this civil action; however, pursuant to a Notice of Settlement filed with the Court on January 21, 2025, "the matters at issue" between Plaintiff and these Defendants "have been settled." (ECF No. 377.)

Nos. 31; 98; 171; 291.) The docket reflects the Court's efforts to grant Plaintiff every reasonable opportunity to develop his claims in this action. Four separate summary judgment motions have been filed, to which Plaintiff has responded with hundreds of pages of memoranda including lengthy sur-replies. Plaintiff has also submitted hundreds of pages of largely irrelevant exhibits with his briefings.

The fourth amended complaint ("FAC")[2] alleges that Trans Union "prepared and issued credit reports concerning the Plaintiff that included inaccurate, incomplete, untrue, incorrect and materially misleading information relating to [PenFed] and/or REV accounts being reported." (ECF No. 291 at 7.) More specifically, Plaintiff alleges that Trans Union inaccurately reported "the balance allegedly owed to [PenFed] and REV"[3] and failed "to report the [PenFed] accounts as sold, transferred, charged-off with a zero balance and zero amount past due." (*Id*. at 12, 20.)

According to Plaintiff, "[a]ccounts are required to be reported to the credit reporting agencies in Metro 2 Format which the bureaus have all adopted. The reported accounts are considered inaccurate, incomplete, incorrect if not in compliance with Metro 2 Standard Format." (*Id*. at 24.) Plaintiff alleges that to comply with "Metro 2 reporting standards," Trans Union's policy "require[s]" PenFed to accurately report "balance information, open date, date of first delinquency, [and] whether an account is sold." (*Id*. at 23–24.) Plaintiff alleges that the Metro 2 reporting standards require the reporting of "the accounts as sold, transferred, charged-off with a zero balance and zero amount past due to be accurate." (*Id*. at 20.)

---

[2] Plaintiff's FAC is verified. (*See generally* ECF No. 291.) "A complaint is 'verified' if it is 'signed, sworn, and submitted under penalty of perjury.'" *Goodman v. Diggs*, 986 F.3d 493, 495 (4th Cir. 2021) (quoting *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020)). A *pro se* litigant's verified submission must be considered as an affidavit and may create a genuine issue of fact to defeat a summary judgment motion. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). However, a verified complaint is only sufficient to create a genuine issue of fact where the allegations upon which that issue of fact relies are based on personal knowledge. *Id*.

[3] Here, Plaintiff is referring to REV Federal Credit Union. REV is not a named defendant—the record indicates Plaintiff had an account with REV separate from his accounts with PenFed.

Plaintiff alleges that the CRAs "have been reporting the . . . PenFed accounts and information through the issuance of false, incomplete, untrue, incorrect and inaccurate credit information and consumer reports that it has disseminated to various third parties, persons and credit grantors." (*Id*. at 12–13.) Plaintiff alleges he "notified both the [CRAs] and data furnishers that he disputed the accuracy, completeness, correctness of the information the [CRAs] were reporting." (*Id*. at 13.) Specifically, Plaintiff alleges that in June 2018, he "disputed credit card account, line of credit account and Auto account information reported by [PenFed] published by the bureaus allegedly belonging to Plaintiff with Trans Union." (*Id*. at 18.) "Trans Union received Plaintiff's dispute and request for reinvestigation on June 11, 2018." (*Id*.) Plaintiff alleges that "[a]s a result of another online dispute by [P]laintiff which triggered a reinvestigation by Tans Union on or about" July 4, 2019, "the [PenFed] accounts were deleted without any information nor explanation of why the accounts [were] deleted." (*Id*.) Plaintiff further alleges that Trans Union "fail[ed] to notify Plaintiff that an account and information that was deleted was reinserted" and "fail[ed] to have reasonable policies and procedures to prevent information that was deleted from being re-inserted on a consumer report." (*Id*. at 30.)

Relevant to Trans Union's reporting, Plaintiff alleges that PenFed "intended not to furnish accurate . . . information related to the current status of the accounts to the reporting agencies because their internal records prior to about January 22, 2018, show that": (1) PenFed "knew that the credit card account being reported and published on [Plaintiff's] consumer reports . . . allegedly belonging to the Plaintiff, was sold and transferred by PenFed to United Holding Group"; and (2) PenFed "knew the line of credit account being reported and published on [Plaintiff's] consumer reports . . . allegedly belonging to the Plaintiff was assigned and transferred to National Credit Corporation." (*Id*. at 19–20.) According to Plaintiff, these accounts "all were charged off/written

3

off therefore no accounts nor debts existed as an asset of PENFED that could have been validated and/or verified by PENFED." (*Id*. at 20.) He continues, verbatim:

> After January 22, 2018, the date of sale, assignment and or transfer of the credit card and line of credit accounts, PenFed to be in compliance with the FCRA and Metro 2 reporting standard for maximum possible accuracy, they are required to report the accounts as sold, transferred, charged-off with a zero balance and zero amount past due to be accurate, complete, true, correct and not misleading regardless of whether the third party is reporting it or not.

(*Id*.)

> Plaintiff alleges that as a result of Trans Union's actions, Plaintiff has suffered:

> a diminished credit score, loss of credit, loss of the ability to purchase and benefit from credit, a chilling effect on credit applications, and the mental and emotional distress and pain, anguish, humiliation and embarrassment caused by the inability to obtain financing for everyday expenses, bank account denials, denials of credit and credit card applications, [and] higher interest rates on loans and credit cards that [would] otherwise be affordable.

(*Id*. at 30–31.) Plaintiff alleges claims against Trans Union for violation of the FCRA, defamation, and violation of the South Carolina Financial Identity Fraud and Identity Theft Protection Act (the "Identity Protection Act").

Trans Union filed the instant motion for summary judgment on April 11, 2025. (ECF No. 414.) On April 14, 2025, the Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (ECF No. 416.) Plaintiff filed a response in opposition on August 1, 2025[4] (ECF No. 442), and Trans Union filed a reply on August 22, 2025[5]

---

[4] The Court notes that Plaintiff's response includes an attempt to "strike improper attorney testimony and declarations." (ECF 442 at 34.) Though Plaintiff does not specify the "improper attorney testimony and declarations" he opposes, the Court assumes Plaintiff is referring to the Declaration of Wilbur E. Johnson attached to Trans Union's summary judgment motion as Exhibit B. Because Plaintiff's arguments on this point lack merit, his request is denied. Regardless, the Court notes that it has not substantially relied on the disputed declaration (ECF No. 414-3) in reaching the conclusions contained in this Order.

[5] Upon Plaintiff's motions, the Court granted Plaintiff extensions of time to respond to Experian's motion for summary judgment. (ECF Nos. 418; 419; 428; 429.)

(ECF No. 460). Plaintiff filed a sur-reply on September 10, 2025.[6] (ECF No. 468.) As such, the motion before the Court has been fully briefed and is ripe for disposition.

### RELEVANT FACTUAL SUMMARY[7]

In February 2016, Plaintiff became a member of PenFed. (ECF No. 413-3.) Shortly thereafter, Plaintiff opened three separate accounts with PenFed: a personal line of credit ("PLOC"); a credit card account; and a vehicle loan (collectively, the "PenFed Accounts"). (ECF Nos. 413-4; 413-6; 413-7; 413-8.) Specific to the vehicle loan, Plaintiff signed a promissory note in April 2016 with a security agreement establishing a PenFed account to finance Plaintiff's purchase of a BMW. (ECF No. 413-4.) PenFed issued a cashier's check payable in the amount of $33,478.00 to Chapman BMW to fund Plaintiff's vehicle loan. (ECF No. 413-5.) Plaintiff endorsed, and Chapman BMW cashed, the check PenFed issued to fund the vehicle loan, resulting in a $33,478.00 debit from PenFed's account with the Federal Reserve Bank through which the check was negotiated. (*Id.*; ECF No. 413-13 at 4.)

On July 9, 2016, Plaintiff sent PenFed documents, including a notarized "Promissory Note" that Plaintiff drafted and signed, which purported to unilaterally modify the terms of the vehicle loan by reducing the amount of Plaintiff's monthly payments and the total amount due during the term of the loan. (ECF No. 413-9.) Plaintiff was advised by PenFed that the documents he provided "are not sufficient to serve as payment for the account," and Plaintiff is "responsible for making payment in United States Dollars." (ECF No. 413-10.) On May 9, 2017, Plaintiff sent three documents to PenFed that he labeled as "money orders" to pay off his accounts, which were purported to be issued by "The Nelson Bruce Estate a foreign state." (ECF No. 413-11.) Plaintiff

---

[6] Plaintiff moved for leave to file a sur-reply on September 10, 2025. (ECF No. 464.) The Court granted Plaintiff's motion, despite it being untimely filed. (ECF No. 470.)

[7] To provide an accurate history of the accounts at issue in this action, the Court relies in part on exhibit evidence provided by PenFed.

was advised that the submitted May 9, 2017 documentation "is not an acceptable form of payment to satisfy the subject obligations to PenFed."[8] (ECF No. 413-12.)

Relevant here, Plaintiff's credit card statements show that the credit card account went delinquent in January 2017, and no payment was made on the account thereafter. (ECF No. 413-8 at 34, 36–54). The credit card account showed a balance of $13,777.36 before the account was charged off in July 2017. (*Id.* at 52.) Plaintiff's combined account statements show that: the last full payment on the vehicle loan was made in September 2016 (ECF No. 413-7 at 15); the account went delinquent in October 2016 (*id.* at 17); and on October 24, 2017, PenFed reduced the balance by waiving accumulated finance charges, leaving only the principal balance of $13,794.99. (*Id.* at 48–67.) Plaintiff's combined account statements further show that: the last full payment on the PLOC was made in December 2016 (*id.* at 22); the account went delinquent in January 2017 (*id.* at 25); and, on September 27, 2017, PenFed closed Plaintiff's share account and transferred the remaining $5.00 to the PLOC, and then further reduced the balance by waiving accumulated finance charges, leaving only the principal balance of $4,427.20. (*Id.* at 46–67.)

In June 2018, Plaintiff submitted an online dispute with Trans Union regarding his PenFed Accounts. (ECF No. 414-2 at 5, 11–12.) For each account, Plaintiff claimed that "[t]he full amount of [the] account was tendered and has been discharged by the principles of law related to tender of payment . . . ." (*Id.*) Plaintiff requested that each account be deleted. (*Id.*) Upon receiving Plaintiff's dispute, Trans Union sent an Automated Credit Dispute Verification Form ("ACDV") for each disputed account to PenFed. Each ACDV included the full text of Plaintiff's dispute and his

---

[8] Plaintiff argues that these "money orders/negotiable instruments . . . are irrelevant to the FCRA and state law claims" and "were improperly introduced by [PenFed] as a character attack." (ECF No. 432 at 4–5.) The Court finds Plaintiff's objection without merit. It is undisputed that Plaintiff submitted these documents to PenFed in relation to the PenFed Accounts he claims to have disputed, and they appear relevant to Plaintiff's allegation that he was not obligated to pay the balances owed on those accounts.

comments. (*Id*. at 5, 14, 16, 18.) PenFed verified the accuracy of each disputed account and updated each effective date. (*Id*.) Trans Union sent the results to Plaintiff on July 4, 2018. (*Id*. at 5–6, 20–35.)

Plaintiff sent another online dispute of his PenFed Accounts to Trans Union in June 2019. (*Id*. at 6.) For each account, Plaintiff claimed, "true identity fraud, account fraudulently opened," and commented that he had disputed his accounts with PenFed directly, he had no contract with PenFed, and the PenFed Accounts were reported incorrectly with a balance after charge-off. (*Id*. at 6, 37–38.) Plaintiff again requested that Trans Union delete each of his PenFed Accounts. (*Id*.) After receiving Plaintiff's dispute, Trans Union sent ACDVs to PenFed for each of the disputed accounts. (*Id*. at 6, 40, 42, 44.) Each ACDV included the full text of Plaintiff's dispute and his comments. (*Id*.) PenFed verified the accuracy of each disputed account and updated each effective date. (*Id*.) Because Plaintiff disputed the PenFed Accounts as true identity fraud and PenFed did not verify Plaintiff's current address, each of the PenFed Accounts was deleted from Plaintiff's credit file with Trans Union. (*Id*. at 6.) Trans Union sent the results to Plaintiff on July 2, 2019. (*Id*. at 6, 46–61.)[9]

On January 28, 2021, Plaintiff submitted to PenFed a notarized document he labeled "Affidavit-Verified Cardholder Billing Error Dispute." (ECF No. 1-2 at 23–27.) In this document, Plaintiff identified the PenFed Accounts and stated:

> [t]he monthly statements are inaccurate and a possible violation of the GAAP[10] for refusing to credit my account because it should reflect a bank asset and liability (funds owed to me) per GAAP, and not a debt. . . . This Billing Error is limited to your failure to credit my account for credits received, as explained herein, and is not to be construed as alleging anything else. . . . PenFed accepted my signed promises to pay, receipts, notes or other similar instruments as bank money, creating and issuing new credits to my account that resulted in a bank asset and

[9] Plaintiff also sent a "Notice of Intent to Sue" letter to Trans Union's attorney in June 2022. (ECF No. 1-5 at 2.) The contents of this letter are not relevant here, except to the extent addressed in Footnote 22, below. (*See infra* at 23.)
[10] GAAP refers to "Generally Accepted Accounting Principles." (ECF No. 1-2 at 26.)

liability (funds owed to me) per GAAP. . . . ANY RESPONSE REGARDING THIS BILLING ERROR SHALL BE LIMITED TO THE ERROR ASSERTED AND MAY NOT EXTEND TO MATTERS WHICH THIS DISPUTE DOES <u>NOT</u> INVOLVE.

(*Id*. at 23–25.)

PenFed responded to the above correspondence on February 8, 2021, and explained that PenFed had previously investigated Plaintiff's disputes and had "provided evidence substantiating the obligations." (ECF No. 1-4 at 2.) PenFed advised Plaintiff that the PenFed Accounts "are legally established debts for which you are liable to repay" and stated, "your accounts are now charged off." (*Id.*)

During his deposition, Plaintiff testified that he "called PenFed" in December of 2021, wherein "they" stated the PenFed Accounts had been "transferred to a third party," and that prior to this point, he "thought that PenFed still was servicing and still held those loans." (ECF No. 415-2 at 230–31.)

On April 4, 2022, Plaintiff sent another letter to PenFed briefly stating that he is "disputing the alleged debts and all alleged balances" on the PenFed Accounts and purporting to request an authenticated record of the accounting pursuant to the UCC. (ECF No. 1-2 at 53–54.) PenFed responded to Plaintiff on April 11, 2022, stating that Plaintiff's PenFed Accounts "with PenFed are legally established debts for which you are liable to repay." (ECF No. 1-4 at 3.) In this letter, PenFed further stated that the PenFed Accounts "are now charged off," that the credit card account "has been sold to UHG [United States Holdings Group, LLC]," that the PLOC "has been assigned to Nationwide Credit Corporation ["NCC"] for resolution," and that the vehicle loan "is still owned and serviced by PenFed." (*Id.*)

Trans Union has provided a declaration from Craig Olson,[11] who avers that he has been employed by PenFed since February 2009, including, most recently, as the Vice President of Legal Operations. (ECF No. 414-4 at 2.) Mr. Olson avers:

> 6. As part of its regular business activities, PenFed creates, receives, and keeps records related to accounts opened by its members, including but not limited to signature cards, account agreements, promissory notes, checks and other financial instruments, account statements, and communications related to collections activities, including communications involving third-parties PenFed engages to collect past due debts owed by members.

(*Id.*) Mr. Olson, who is also PenFed's 30(b)(6) representative in this action, avers that he has "access to the records described . . . above" in connection with his current and past positions at PenFed.[12] (*Id.* at 3; *see also* ECF No. 421-13.)

In his November 1, 2024 declaration, Mr. Olson provides certain clarifications about the statements made by PenFed in its April 11, 2022 letter to Plaintiff. Mr. Olson avers that "[a]s of the date of this declaration, "PenFed has retained sole legal ownership over" the PenFed Accounts, and "PenFed has never sold, assigned, or transferred its ownership rights with respect to any of the" disputed PenFed Accounts. (ECF No. 414-4 at 3–4.) He continues, "[w]hile PenFed planned to sell Bruce's credit card account to UHG, the sale was never completed, and PenFed still owns the credit card account as of the date of this declaration." (*Id.*) "In general, when a loan account becomes the subject of a lawsuit, PenFed's routine practice is to refrain from selling the loan account while the lawsuit is pending." (*Id.*) The record also contains a subpoena Plaintiff served on UHG in this action seeking, *inter alia*, all documents in its possession "associated with any and

---

[11] While this declaration is not notarized, it has been signed and includes statements swearing its truth under penalty of perjury. *See* 28 U.S.C. § 1746 (allowing declarations to have full force and effect if the writer subscribes the statement as true under penalty of perjury).

[12] *See Sanchez Carrera v. EMD Sales, Inc.*, 402 F. Supp. 3d 128, 141 (D. Md. 2019) ("Affidavits 'contain sufficient information . . . to establish that the affiants' statements [a]re made based on personal knowledge' where the affidavits contain 'a description of the affiants' job titles and duties' and there is no evidence the 'affiants were not competent to testify.'" (quoting *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 135 n.9 (4th Cir. 2002))).

all [of the PenFed Accounts] assigned transferred and/or sold to you . . . from January 1, 2017 to present," to which UHG responded, "[a]fter a thorough search of all records, UHG is unable to locate an account with the information provided." (ECF No. 413-13 at 10–16.) Specific to NCC, Mr. Olson avers his "understanding is that NCC is a debt collection agency that specializes in recovering past-due accounts for others." (ECF No. 414-4 at 5.) According to Mr. Olson, "PenFed 'assigned' the PLOC to NCC so that NCC could collect the past due debt on behalf of PenFed," and "PenFed did not assign its ownership rights with respect to the PLOC to NCC." (*Id.*)

Here, the Court notes that Mr. Olson referenced and submitted with an earlier declaration certain letters sent by NCC to Plaintiff in April of 2018, stating that balances owed on the disputed PenFed Accounts are "marked unpaid on the creditor's records and sent to us for collection" and providing ways for Plaintiff to make payment. (ECF Nos. 413-2 at 4–5; 459-1; 459-2.) In these letters, PenFed is listed as the "creditor." (*Id.*) Additionally, the record includes a letter sent by NCC to Plaintiff on November 3, 2022, wherein NCC provides "information [Plaintiff] requested" pertaining to the PLOC account, which lists PenFed as the "creditor" and states that "[t]his communication is from a debt collector attempting to collect a debt." (ECF No. 421-1 at 2–3.) On December 14, 2022, NCC sent another letter to Plaintiff "confirm[ing] that [the PLOC account] . . . has been closed and returned to our client." (*Id*. at 7; *see also* ECF No. 413-2 at 5.)

## LEGAL STANDARDS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer*

*Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Sedar v. Reston Town Center Prop., LLC*, 988 F.3d 756, 763 (4th Cir. 2021) ("The requirement to construe the facts, and all reasonable inferences therefrom, in the light most favorable to the non-moving party does not require [the court] to accept cherry-picked snippets of the testimony divorced from their context."). Conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

Because Plaintiff is representing himself, these standards must be applied while liberally construing his filings in this case.[13] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## **DISCUSSION**

### I.     **Timeliness**

Before turning to the merits of Plaintiff's claims, the undersigned must consider whether Plaintiff's claims against Trans Union based upon his 2018 and 2019 online disputes are time-barred. For the reasons set forth below, the Court finds that Plaintiff's FCRA claims are barred by

---

[13] Although the Court must liberally construe Plaintiff's filings in light of his *pro se* status, it is worth noting that Plaintiff is a seasoned *pro se* litigant who has filed over fifteen civil actions in this Court.

the two-year statute of limitations outlined in 15 U.S.C. § 1681p. Therefore, the Court grants

Trans Union's motion for summary judgment (ECF No. 414) with respect to such claims.[14]

Section 1681p of the FCRA provides:

> An action to enforce any liability created under this subchapter may be brought in
> any appropriate United States district court, without regard to the amount in
> controversy, or in any other court of competent jurisdiction, not later than the earlier
> of—
>
> > (1) 2 years after the date of discovery by the plaintiff of the violation that is
> > the basis for such liability; or
> >
> > (2) 5 years after the date on which the violation that is the basis for such
> > liability occurs.

Here, it is undisputed that: (1) Plaintiff filed his online disputes with Trans Union in June

of 2018 and June of 2019, and (2) Plaintiff received the reinvestigation results from those disputes

in July of 2018 and July of 2019. (ECF No. 414-2 at 5–6.) As such, Plaintiff knew or should have

known of any potential causes of action based on Trans Union's responses to his disputes in July

of 2019, at the latest. *See Bruce v. Bank of Am., N.A.*, No. 2:19-cv-03456-BHH-KDW, 2020 WL

7249876, at *3 (D.S.C. Oct. 22, 2020) ("The pertinent question before the court is the date on

which Plaintiff knew or should have known, through the exercise of due diligence, that a cause of

action might exist."), *adopted*, 2020 WL 6737647 (D.S.C. Nov. 17, 2020). Still, he did not file the

instant litigation until July of 2022. (ECF. No. 1.) Thus, even assuming, *arguendo*, that Plaintiff's

2018 and 2019 disputes could provide a basis for the FCRA claims he brings against Trans Union

in his FAC (which, as described *infra*, they cannot), any such claims would be barred by the

applicable statute of limitations. *See Bruce*, 2020 WL 7249876, at *3–4 (finding Plaintiff's FCRA

---

[14] Defendant Trans Union also asserts that Plaintiff's Identity Protection Act claim is barred by the three-year statute of limitations provided in S.C. Code Ann. § 15-3-540(2) and that Plaintiff's state law defamation claim is barred by the two-year statute of limitations set forth in S.C. Code Ann. § 15-3-550. (ECF No. 414-1 at 7–8.) Because these claims clearly fail on the merits for the reasons set forth in Section III below, the undersigned declines to address Trans Union's timeliness arguments.

claims were time-barred and rejecting Plaintiff's arguments that "the statute of limitations is tolled until he discovers the report's reinvestigation was unreasonable" and that he could "create a new claim by making a second or renewed dispute"); *Croft v. Bayview Loan Servicing, LLC*, 166 F. Supp. 3d 638, 641 (D.S.C. 2016) (finding FCRA action barred where plaintiff brought it more than two years after she received notice of a letter indicating alleged erroneous credit reporting).

Regardless, even if these claims were not time-barred, the Court finds that Trans Union is entitled to summary judgment on each of Plaintiff's FCRA claims for the reasons set forth in Section II, below.

## II.    FCRA Claims

### A.  Legal Framework

The FCRA is "a comprehensive statutory scheme designed to regulate the consumer reporting industry." *Ross v. F.D.I.C.*, 625 F.3d 808, 812 (4th Cir. 2010). Relevant here, the FCRA imposes distinct requirements on the different entities within the consumer reporting industry. As the Fourth Circuit recently summarized:

> Under [the FCRA], a consumer reporting agency creates and provides credit reports. Consumer reporting agencies "compile . . . data [about consumers] into a comprehensible format," which allows providers of credit, landlords and other entities to evaluate individuals and make informed decisions. *Denan v. Trans Union LLC*, 959 F.3d 290, 294 (7th Cir. 2020). The data contained in those reports comes from furnishers like "banks, credit lenders, and collection agencies." *Id.* "Consumer reporting agencies and furnishers, though interrelated, serve discrete functions: furnishers report data to incentivize the repayment of debts, while consumer reporting agencies compile and report that data for a fee." *Id.* Consumer reporting agencies and furnishers thus work together as the two primary components of our credit reporting system to "produc[e] a vast flow and store of consumer information." *Id.*

> The FCRA requires furnishers to ensure that the information they provide to consumer reporting agencies is accurate. *See* 15 U.S.C. § 1681s-2(a). If a consumer believes information in her credit report is inaccurate or incomplete, she can dispute the information directly with the furnisher. *See id.* § 1681s-2(a)(8). But she can also dispute the accuracy of information in her report indirectly by notifying a consumer

> reporting agency rather than the furnisher. *See id.* §§ 1681i(a)(2), 1681s-2(b); *see also Ingram v. Experian Info. Sols., Inc.*, 83 F.4th 231, 237 (3d Cir. 2023) (explaining that direct disputes are made with the "person or entity that furnished the incorrect or incomplete information," while indirect disputes "are when a consumer instead disputes information with the consumer reporting agency . . . ."). If a consumer notifies a consumer reporting agency "that [she] disputes the accuracy of an item in [her] file, [the] FCRA requires the [consumer reporting agency] to notify the furnisher of the dispute." *Saunders v. Branch Banking And Tr. Co. Of VA.*, 526 F.3d 142, 148 (4th Cir. 2008).
>
> Once the consumer reporting agency notifies the furnisher of the consumer's dispute, it must "conduct an investigation with respect to the disputed information." § 1681s-2(b)(1)(A). The furnisher must also review "all relevant information provided by the consumer reporting agency" related to the dispute. *Id.* § 1681s-2(b)(1)(B). And it must "report the results of the investigation to the consumer reporting agency." *Id.* § 1681s-2(b)(1)(C). If the investigation reveals that the information is "incomplete or inaccurate," the furnisher must report those findings to the pertinent credit reporting agencies. *See id.* § 1681s-2(b)(1)(D). What's more, if part of the information disputed by the consumer is either (1) found to be inaccurate or incomplete, or (2) cannot be verified after the required reasonable investigation, the furnisher must "modify," "delete" or "permanently block" the reporting of the information. *Id.* § 1681s-2(b)(1)(E). . . .

*Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 245–46 (4th Cir. 2025). "[I]n the context of an indirect dispute against a furnisher," the inaccuracy or incompleteness must be "objectively and readily verifiable." *Id.* at 250–253. In the context of a claim against a CRA, "a report is inaccurate when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (cleaned up) (explaining that reports containing technically accurate information can still be inaccurate if the information is presented in a misleading way); *see also Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008) ("[A] credit report is not accurate under FCRA if it provides information in such a manner as to create a materially misleading impression.").

Here, Plaintiff alleges that Trans Union negligently and willfully violated the FCRA by (i) failing to establish or follow reasonable procedures to assure the maximum possible accuracy of

Plaintiff's consumer file pursuant to 15 U.S.C. § 1681e(b); (ii) failing to conduct a reasonable reinvestigation of Plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a)(1); (iii) failing to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised Trans Union to delete pursuant to § 1681i(a)(5)(A); and (iv) failing to implement reasonable procedures preventing account information from being reinserted into Plaintiff's credit file and failing to notify Plaintiff of any such reinsertion pursuant to § 1681i(a)(5)(A). (ECF No. 291 at 29–30.)

Section 1681e(b) states that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). "Thus, a [CRA] violates § 1681e(b) if (1) the consumer report contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy." *Dalton*, 257 F.3d 409, 415 (4th Cir. 2001). To establish the first prong of a § 1681e(b) violation, "a consumer must present evidence tending to show that a [CRA] prepared a report containing inaccurate information." *Id.* at 415 (citing *Guimond v. Trans Union Credit Info. Co*., 45 F.3d 1329, 1333 (9th Cir. 1995)). "A report is inaccurate when it is 'patently incorrect' or when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse []' effect." *Id.* (alterations in original) (quoting *Sepulvado v. CSC Credit Servs*., 158 F.3d 890, 895 (5th Cir. 1998)). To establish the second prong, "the plaintiff bears the burden under § 1681e(b) to show that the [CRA] did not follow reasonable procedures." *Dalton*, 257 F.3d at 416. "The issue of whether the agency failed to follow 'reasonable procedures' will be a 'jury question[] in the overwhelming majority of cases.'" *Id.* (alteration in original) (quoting *Guimond*, 45 F.3d at 1333).

Relatedly, "[s]ection 1681i requires consumer reporting agencies to conduct reinvestigations of allegedly inaccurate information contained in credit reports in certain circumstances . . . ." *Campbell v. Experian Info. Sols., Inc.*, No. 3:24-cv-5772-JFA-SVH, 2024 WL 5498104, at *3 (D.S.C. Dec. 30, 2024). More specifically:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer . . . .

15 U.S.C. § 1681i(a)(1)(A).

To prevail on a claim for a violation of § 1681i, Plaintiff must allege "(1) that [he] disputed the accuracy of an item in [his] credit file; (2) the [credit reporting agency] failed to conduct a reasonable reinvestigation; and (3) that a reasonable reinvestigation by the [credit reporting agency] could have uncovered the inaccuracy." *Davis v. Trans Union LLC*, No. 1:24-cv-02338-JRR, 2025 WL 886173, at *3 (D. Md. Mar. 21, 2025). "The reasonableness of a reinvestigation under these circumstances depends on the facts of each case, . . . but multiple courts have explained that a CRA has no obligation to resolve legal disputes between a consumer and a creditor." *Alston v. Branch Banking & Tr. Co.*, No. GJH-15-3100, 2016 WL 4521651, at *10 (D. Md. Aug. 26, 2016) (collecting cases in other circuits); *see also Saunders*, 526 F.3d at 142 (noting that claims under both §§ 1681e(b) and 1681i "brought against CRAs based on a legal dispute of an underlying debt raise concerns about 'collateral attacks' because the creditor is not a party to the suit"); *Perry v. Toyota Motor Credit Corp.*, No. 1:18-cv-00034, 2019 WL 332813, at *5 (W.D. Va. Jan. 25, 2019) ("A number of courts have found that to make the required showing of inaccurate reporting under FCRA §§ 1681e(b) and 1681i, a complaint's allegations must dispute facts underlying a

purported inaccuracy, as the presentation of legal defenses to payment will not suffice." (internal quotation marks and citation omitted)). Indeed, the Fourth Circuit recently reiterated that CRAs "are not expected to function like full tribunals." *Roberts*, 131 F.4th at 252, n.8.

Also, "if a consumer later sues a CRA for a violation of its reinvestigation duty under § 1681i(a), he or she may only sue based on alleged violations of which the consumer provided notice to the CRA." *Petty v. Equifax Info. Servs., LLC*, No. CCB-10-694, 2010 WL 4183542, at *3 (D. Md. Oct. 25, 2010). Such notice is required because without it the CRA cannot have been expected to know what information to reinvestigate, how to reinvestigate it, or whether upon reinvestigation the information is indeed inaccurate or incomplete. *Id*. "If the consumer raises additional alleged violations in his or her lawsuit for which the consumer had not previously provided notice of the dispute to the CRA, those claims must be dismissed." *Id*.

## B. Analysis

Trans Union moves for summary judgment on all of Plaintiff's FCRA claims, arguing, *inter alia*, that Plaintiff's claims fail as a matter of law because Plaintiff cannot prove Trans Union reported inaccurate information or failed to properly investigate and/or reinvestigate Plaintiff's disputes. (ECF No. 414-1 at 6–20.) For the reasons set forth below, the Court agrees and grants Trans Union's motion for summary judgment (ECF No. 414) with respect to all of Plaintiff's FCRA claims against it.

At the outset, the Court notes that Plaintiff's FAC is premised upon Plaintiff's mistaken belief that his PLOC was sold and/or that PenFed relinquished its right to recover Plaintiff's credit card debt by enlisting a third-party debt collector.[15] (*See generally* ECF No. 291 (detailing factual

---

[15] To the extent Plaintiff attempts to use his briefings to change his claims and/or to assert new claims not previously presented in his FAC, he may not do so. As noted, Plaintiff has been afforded every reasonable opportunity to develop his claims throughout this litigation, and it is well settled that "[a] plaintiff may not argue a new claim in response to a motion for summary judgment." *Haggwood v. Magill*, No. 5:15-cv-3271-RMG, 2016 WL 4149986, at *6 (D.S.C.

allegations centered around the sale, assignment, and/or transfer of Plaintiff's accounts and specifying the "basis for [] liability" under the FAC as "knowing that PENFED accounts [were] sold, assigned and/or transferred").) Specific to Trans Union, the FAC alleges that Trans Union inaccurately reported balances on Plaintiff's PenFed Accounts after PenFed had sold or assigned those accounts.[16] (*Id.*) In Plaintiff's view, reporting a balance on those accounts was inaccurate because PenFed's alleged sale, transfer, and/or assignment of such accounts meant that PenFed no longer had a right to recover the balance owed. (*Id.*) However, these claims are based solely upon unsupported and misguided assumptions that are belied by the record evidence. (*See, e.g.*, ECF Nos. 410-13 at 3–4, 10–16; 413-2 at 4–5; 414-4 at 3–4; 415-4 at 4–5; 459-1; 459-2); *see also Peoples v. Equifax Info. Sols.*, No. 3:23-cv-495-MOC-DCK, 2023 WL 6883650, at *2 (W.D.N.C. Oct. 18, 2023) (noting that the plaintiff's "subjective belief is not sufficient to plead an inaccuracy" because the FCRA evaluates accuracy under an objective standard). Indeed, as discussed *supra*, PenFed never sold any of Plaintiff's accounts, nor did it relinquish its right to recover Plaintiff's outstanding debt(s) by enlisting a third-party debt collector. (*See supra* at 9–10.) Accordingly, Trans Union could not have "inaccurately" reported a balance on any of Plaintiff's PenFed

---

Aug. 3, 2016) (citing *White v. Roche Biomedial Labs., Inc.*, 807 F. Supp. 1212, 1216 (D.S.C. 1992)); *see also S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) (parties cannot amend their complaints through briefing or oral advocacy); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312 (11th Cir. 2004) (plaintiff may not amend complaint through argument in brief opposing summary judgment); *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (a party may not expand its claims to assert new theories in response to summary judgment); *Bryan v. Def. Tech., U.S.*, No. 1:10-cv-2834-TLW-SVH, 2011 WL 4435597, at *4 (D.S.C. Aug. 10, 2011) ("A plaintiff may not amend his pleadings to avoid summary judgment."), *adopted*, 2011 WL 4435579 (D.S.C. Sept. 23, 2011), *aff'd*, 466 F. App'x 208 (4th Cir. 2012). Accordingly, the undersigned has considered only the discernable claims raised in Plaintiff's FAC. (ECF No. 291.)

[16] Plaintiff appears to have abandoned any claims against Trans Union with respect to his REV account. (*See generally* ECF Nos. 441; 470); *see also Ludwick v. Urb. Nirvana, LLC*, No. 2:23-cv-03372-BHH-MHC, 2023 WL 9065095, at *6 (D.S.C. Dec. 12, 2023) (finding that plaintiff abandoned claim where she did not make any argument regarding the claim in her response in opposition to defendant's motion to dismiss, or in her sur-reply), *adopted*, 2024 WL 38739 (D.S.C. Jan. 3, 2024); *Jones v. Family Health Ctr., Inc.*, 323 F. Supp. 2d 681, 690 (D.S.C. 2003) (noting that a claim not addressed in opposition memorandum had been abandoned); *Sawyers v. United Parcel Serv., Inc.*, C/A No. 1:18-cv-1037, 2019 WL 4305771, at *3 (M.D.N.C. Sept. 11, 2019) (collecting cases showing that "[t]his district and others within the Fourth Circuit agree that failing to respond to an argument constitutes an abandonment of a claim"). To the extent Plaintiff intended to maintain claims based upon Trans Union's reporting of his REV account, any such claims would fail for many of the same reasons as Plaintiff's FCRA claims based upon his PenFed Accounts.

Accounts under this theory.[17] Thus, because the record does not support a finding that Trans Union *inaccurately* reported any of Plaintiff's PenFed Accounts with balances after they had been transferred and/or sold, Plaintiff's FCRA claims against Trans Union fail. *See Henderson v. Source for Pub. Data, L.P.*, 53 F.4th 110, 125–26 (4th Cir. 2022) (noting that "Fourth Circuit precedent requires that a plaintiff bringing a claim under . . . § 1681e(b) . . . show the defendant's 'consumer report contains inaccurate information'"); *Campbell*, 2024 WL 5498104, at *4 ("As courts in this circuit [have] repeatedly held, in asserting an FCRA claim under 15 U.S.C. §§ 1681e(b) and 1681i, 'a plaintiff must make a threshold showing of inaccuracy.'" (quoting *Dawkins v. Experian Info. Sols., Inc.*, No. 6:22-cv-774-TMC-JDA, 2022 WL 17668425, at *7 (D.S.C. Oct. 19, 2022))); *Peoples*, 2023 WL 6883650, at *2 ("[W]ithout pleading an inaccuracy Plaintiff does not have a valid claim under either § 1681[i] or § 1681e(b)."); *Alston v. Equifax Info. Servs., LLC*, C/A No. TDC-13-1230, 2016 WL 5231708, at *10 (D. Md. Sept. 21, 2016) (noting that "all of [the plaintiff's] claims are again made pursuant to § 1681s-2, § 1681e, and § 1681i, each of which has a threshold inaccuracy requirement").[18]

_____

[17] As described in greater detail in the Court's Order granting Defendant PenFed's summary judgment motion, Plaintiff cannot support his FCRA claims by asserting that reporting a balance on an account assigned to a third-party debt collector was "misleading." Indeed, the record contains no evidence indicating that a collections agency ever reported a separate tradeline on any of Plaintiff's PenFed Accounts (which could, in theory, cause creditors to believe that Plaintiff owed twice the amount he actually owed). In fact, the record evidence conclusively shows that no such collection tradeline was reported on Plaintiff's credit file. (ECF No. 427-1 at 3, 7.) Further, to the extent the FAC attempts to allege any other purported inaccuracies or theories of liability, the Court has addressed the FAC's discernable allegations in its Order granting Defendant PenFed's summary judgment motion and finds that all purported inaccuracies and/or theories of liability lack merit for the reasons set forth therein. Specific to Trans Union, Plaintiff's contention that his debts were forgiven when PenFed "charged off" his accounts is premised upon a misguided economic theory not based in law or fact.

[18] Because the record does not contain sufficient evidence from which a reasonable factfinder could conclude that Trans Union published inaccurate information on Plaintiff's consumer report under the theories set forth in Plaintiff's FAC, any attempted "reinsertion" and/or "reappearance" claims against Trans Union under 15 U.S.C. §§ 1681i(a)(5)(B)–(C) necessarily fail. *See Campbell v. Experian Info. Sols., Inc.*, No. 3:24-cv-5772-JFA-SVH, 2024 WL 5498104, at *4 (D.S.C. Dec. 30, 2024) ("As courts in this circuit [have] repeatedly held, in asserting an FCRA claim under 15 U.S.C. §§ 1681e(b) and 1681i, 'a plaintiff must make a threshold showing of inaccuracy.'" (quoting *Dawkins v. Experian Info. Sols., Inc.*, No. 6:22-cv-774-TMC-JDA, 2022 WL 17668425, at *7 (D.S.C. Oct. 19, 2022))); *Peoples v. Equifax Info. Sols.*, No. 3:23-cv-495-MOC-DCK, 2023 WL 6883650, at *2 (W.D.N.C. Oct. 18, 2023) ("[W]ithout pleading an inaccuracy Plaintiff does not have a valid claim under either § 1681[i] or § 1681e(b)."); *Alston v. Equifax Info. Servs., LLC*, C/A No. TDC-13-1230, 2016 WL 5231708, at *10 (D. Md. Sept. 21, 2016) (noting that "all of [the

Even assuming, *arguendo*, that the record contained sufficient admissible evidence from which a reasonable factfinder could conclude that Trans Union published inaccurate information on Plaintiff's consumer report under the theory set forth in Plaintiff's FAC, Plaintiff's FCRA claims against Trans Union would still fail. As noted above, Plaintiff must show that Trans Union "did not follow reasonable procedures to assure maximum possible accuracy" to prevail on his FCRA claims under § 1681e(b). *Dalton*, 257 F.3d 409, 415–16 (4th Cir. 2001) (noting that "the plaintiff bears the burden under § 1681e(b) to show that the consumer reporting agency did not follow reasonable procedures"). Based on the record before the Court, Plaintiff cannot make this showing.

"While the 'reasonableness' of a [consumer reporting agency's] procedures is ordinarily a question of fact, the implementing regulations for the FCRA clarify that a [consumer reporting agency] follows reasonable procedures if it relies on information from a reputable source unless it has some notice of systemic problems with the accuracy of its reports," "the information furnished appears implausible or inconsistent," or there have been "numerous problems regarding information from a particular source." *Jianqing Wu v. Trans Union*, No. CIV. A. AW-03-1290, 2006 WL 4729755, at *6–7 (D. Md. May 2, 2006) (citing Commentary on the Fair Credit Reporting Act, 16 C.F.R. pt. 600 app.), *aff'd sub nom. Jianqing Wu v. Equifax*, 219 F. App'x 320 (4th Cir. 2007). In support of its summary judgment motion, Trans Union has provided detailed evidence indicating that it follows reasonable procedures for ensuring the maximum possible accuracy of consumer credit files. (ECF No. 414-2 at 3–5.)

---

plaintiff's] claims are again made pursuant to § 1681s-2, § 1681e, and § 1681i, each of which has a threshold inaccuracy requirement"). Regardless, Plaintiff has provided no admissible evidence indicating that he was harmed by any alleged reinsertion or reappearance, as opposed to his undisputed failure to repay his debts. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985) (noting that conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion).

This evidence demonstrates that "[v]irtually every action undertaken by Trans Union is designed to ensure that Trans Union maintains reasonable procedures to ensure maximum possible accuracy of the data in its consumer files and reports," including vetting all of its data furnishers and accepting information only from data furnishers who have passed "Trans Union's membership standards and are under contract to provide complete and accurate data." (*Id.*) Further, Trans Union processes data from its furnishers through "complicated and proprietary algorithms, which are designed to combine data received from different creditors into a single credit file for an individual consumer," and "monitors [the] data provided [] to detect anomalies and patterns of inaccuracies and works with creditors to ensure any problems are corrected." (*Id.*) In addition, "Trans Union has hundreds, if not thousands, of procedures in place, all designed to assure the maximum possible accuracy of the information contained in its consumer files and reports," taking "a comprehensive, collaborative team approach to processing and maintaining its consumer credit data to assure the maximum possible accuracy of its consumer files and reports." (*Id.*)

In sum, this evidence shows, *inter alia*, that Trans Union has implemented processes in accordance with industry standards and the FCRA. (*Id.*) Plaintiff has not provided any admissible evidence showing otherwise, nor has he provided evidence indicating that Trans Union did not follow its typical procedures in investigating and reinvestigating the disputes at issue here.

In fact, as described *supra*, the record reveals that Trans Union did follow its established procedures when investigating and reinvestigating Plaintiff's disputes.[19] (*See supra* at 6–7.) Specifically, Trans Union sent an ACDV for each disputed account to PenFed following its receipt of Plaintiff's June 2018 dispute, ensuring that each ACDV included the full text of Plaintiff's dispute, as well as his comments. (ECF No. 414-2 at 5, 14, 16, 18.) PenFed responded to Trans

---

[19] Trans Union reinvestigated Plaintiff's disputes, even when—as noted *infra*—it had no duty to do so.

Union's ACDV, and Trans Union communicated PenFed's verification of the accuracy of each disputed account to Plaintiff. (*Id*. at 5–6, 20–35.) Following its receipt of Plaintiff's June 2019 dispute, Trans Union again sent an ACDV for each disputed account to PenFed, ensuring that each ACDV included the full text of Plaintiff's dispute and his comments. (*Id*. at 6, 40, 42, 44.) After PenFed responded to Trans Union's ACDV, Trans Union again communicated PenFed's verification of the accuracy of each disputed account to Plaintiff. (*Id*. at 6, 46–61.)

Here, Plaintiff has simply failed to submit admissible evidence that could create a genuine dispute as to whether Trans Union followed reasonable procedures to assure maximum possible accuracy when reporting his PenFed Accounts. Indeed, Plaintiff has submitted no admissible evidence from which a reasonable factfinder could conclude that: (1) Trans Union did not follow the procedures outlined above; (2) Trans Union was on notice of systemic problems with its procedures; (3) Trans Union had reason to doubt the accuracy of the information received from PenFed; (4) PenFed should not have been considered a "reputable source"; or (5) the information furnished by PenFed appeared implausible or inconsistent. *See Gadson v. Experian Info. Sols., Inc.*, No. 2:23-cv-00029-BHH-MHC, 2024 WL 3745476, at *7–8 (D.S.C. July 18, 2024) (referencing *Jianqing Wu*, 2006 WL 4729755, at *6–7), *adopted*, 2024 WL 3742464 (D.S.C. Aug. 9, 2024). Accordingly, the Court finds that Trans Union is entitled to summary judgment as to Plaintiff's claims under § 1681e(b) on this basis, as well. *See Sarver v. Experian Info. Sols.*, 390 F.3d 969, 973 (7th Cir. 2004) (affirming summary judgment for defendant on § 1681e(b) claim upon finding that "there is nothing in this record to show that [the consumer reporting agency's] procedures are unreasonable").

Further, Trans Union is entitled to summary judgment on Plaintiff's FCRA claims under § 1681i because Plaintiff did not properly inform Trans Union that he disputed the sale, transfer,

22

and/or assignment of his PenFed Accounts such that Trans Union knew what or how to reinvestigate. *See Davis*, 2025 WL 886173, at *3; *Petty*, 2010 WL 4183542, at *3. Indeed, Plaintiff cannot rely on the June 2018 and 2019 disputes he sent to Trans Union because the evidence proves that Plaintiff did not yet know that PenFed intended to sell and/or assign his accounts in 2018 or 2019.[20] Plaintiff testified that he "called PenFed" in December of 2021, wherein "they" stated the PenFed Accounts had been "transferred to a third party," and that prior to this point, he "thought that PenFed still was servicing and still held those loans." (ECF No. 415-2 at 230–31.) The record also clearly indicates that Plaintiff did not receive written confirmation that PenFed planned to sell his PLOC until he received a letter from PenFed in April of 2022.[21] (ECF Nos. 1-4; 415-2 at 230.) Thus, Plaintiff could not have disputed the purported sale and/or transfer of the relevant accounts until, at the earliest, December of 2021.[22] Accordingly, the record provides no legitimate support for Plaintiff's claims that he properly disputed any of his PenFed Accounts on the basis set forth in his FAC. Trans Union is therefore entitled to summary judgment on Plaintiff's FCRA claims under § 1681i for this alternative reason.[23]

---

[20] Further, the 2018 and 2019 disputes clearly oppose Plaintiff's legal obligations under his PenFed Accounts, which Trans Union had no obligation to resolve. (*See* ECF No. 414-2 at 5–6, 11–12, 37–38); *see also Alston v. Branch Banking & Tr. Co.*, No. GJH-15-3100, 2016 WL 4521651, at *10 (D. Md. Aug. 26, 2016) (noting that a CRA has "no obligation to resolve legal disputes between a consumer and a creditor" and collecting cases in other circuits finding the same); *see also Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 150, 142, (4th Cir. 2008) (noting that claims under both §§ 1681e(b) and 1681i "brought against CRAs based on a legal dispute of an underlying debt raise concerns about 'collateral attacks' because the creditor is not a party to the suit").

[21] As noted *supra*, Plaintiff's PLOC account was never actually sold. (*See supra* at 9–10.)

[22] In addition, as this Court has previously explained in the context of the letter Plaintiff sent to Equifax's attorney in June of 2022, Plaintiff's June 2022 letter to Trans Union's lawyer cannot support his § 1681i claims because this letter did not independently trigger a duty to investigate. (ECF Nos. 131 at 9–10; 154 at 14.)

[23] Because Plaintiff's disputes did not trigger Trans Union's duty to reinvestigate the issues raised in the FAC, any purported claim under 15 U.S.C. § 1681i(6)(a) (*i.e.*, that Trans Union was required to provide him with the results of those investigations and/or reinvestigations) necessarily fails.

Based on the foregoing,[24] Trans Union is entitled to summary judgment on all of Plaintiff's FCRA claims against it, and the Court, therefore, grants Trans Union's motion for summary judgment (ECF No. 414) as to all such claims.

### III. State Law Claims

Defendant Trans Union is similarly entitled to summary judgment on Plaintiff's state law claims against it. As such, the Court grants Trans Union's motion for summary judgment (ECF No. 414), and Plaintiff's claims against Trans Union are **DISMISSED IN FULL**.

### A. Defamation

With respect to Plaintiff's defamation claim against Trans Union, this claim fails for two reasons. First, Plaintiff's defamation claim is preempted by the FCRA because Plaintiff has failed to demonstrate that Trans Union acted with malice or willful intent to injure Plaintiff. *See* 15 U.S.C. § 1681h(e) ("[N]o consumer may bring any action or proceeding in the nature of defamation . . . with respect to the reporting of information . . . except as to false information furnished with malice or willful intent to injure such consumer."); *Ross*, 625 F.3d at 814 ("The only exception to this bar is a narrow one, requiring proof of 'malice or willful intent to injure [the] consumer.'"). Under South Carolina law, "'[m]alice' is established only if 'the defendant acted with ill will toward the plaintiff or acted recklessly or wantonly, meaning with conscious indifference toward the plaintiff's rights.'" *Beattie v. Nations Credit Fin. Servs. Corp.*, 69 F. App'x 585 (4th Cir. 2003) (citing *Murray v. Holnam, Inc.*, 542 S.E.2d 743, 750 (S.C. 2001)). Here, the record before the Court simply does not support a finding that Trans Union acted with ill will or conscious

---

[24] Trans Union is also entitled to summary judgment on Plaintiff's FCRA claims because the record contains no admissible evidence indicating that Plaintiff suffered a credit denial or other adverse action because of Trans Union's reporting, as opposed to Plaintiff's undisputed failure to repay his debts. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985) (noting that conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion).

indifference toward Plaintiff's rights; rather, the record indicates that Trans Union reasonably investigated and reinvestigated Plaintiff's claims regarding the disputed accounts, despite Plaintiff's misguided theories about his responsibilities with respect to those accounts.

Further, as described more fully *supra*, the record does not support a finding that Trans Union reported inaccurate information to third parties under the theory set forth in Plaintiff's FAC. In fact, it is now clear that "PenFed retained ownership of the [PenFed Accounts] at all relevant times." (ECF No. 413-1 at 16.) As such, Plaintiff cannot prevail on this claim. *See also Beattie*, 65 F. App'x at 898 ("NationsCredit did not report the alleged foreclosure 'with malice' because, as we have noted, such a report was, at least in NationsCredit's view, accurate."); *Englert v. Nationstar Mortg., Inc.*, 2015 WL 9275662, at *5 (E.D. Va. Dec. 18, 2015) ("If a defendant makes a statement believing that it is true, the defendant does not act with malice."); *Schmidt v. Fair Collection & Outsourcing, Inc.*, 2018 WL 445434, at *2 (E.D. Va. Jan. 12, 2018) (dismissing defamation, libel, and slander claims as preempted by FCRA).

### B. South Carolina Code Annotated § 37-20-170

Plaintiff also alleges that Defendant Trans Union violated § 37-20-170 of the Identity Protection Act. (ECF No. 291 at 37.) Section § 37-20-170 provides, in relevant part:

> (A) If a consumer disputes the accuracy of an item in the consumer's records with a consumer reporting agency, the consumer may give notice in writing to the consumer reporting agency specifying in what manner the report is inaccurate and the consumer reporting agency shall reinvestigate the inaccuracy at no charge to the consumer, provide the consumer with sufficient evidence that the information is true and accurate information as it relates to that consumer, and record the current status of the disputed information. The consumer reporting agency shall provide forms for that notice and shall assist a consumer in preparing the notice when requested.
>
> (B) Within thirty days after receiving a notice of inaccuracy, a consumer reporting agency shall deny or admit the inaccuracy to the consumer in writing. If the consumer reporting agency denies the inaccuracy, the consumer reporting agency

shall include the following information with the written results of the reinvestigation:

> (1) the basis for the denial;

> (2) a copy of the consumer's file that is based on the consumer's file as revised as a result of the reinvestigation, including the business name and address of any furnisher of information who was contacted in connection with that information and, if reasonably available, the telephone number of the furnisher;

> (3) a notice that, if requested by the consumer, the consumer reporting agency shall provide the consumer with a description of the procedure used by the consumer reporting agency to determine the accuracy and completeness of the information; and

> (4) sufficient evidence that the information is true and accurate information as it relates to that consumer.

(C) If the consumer reporting agency admits that the item is inaccurate, it shall correct the item in its records and, on request by the consumer, it shall inform any person who within the last six months has previously received a report containing that inaccurate information.

Plaintiff alleges that Trans Union violated this provision as follows:

148. At all times, Defendants knowingly, willfully and intentionally reported and/or allowed to be reported, inaccurate information, acted with malice and the willful intent to injure the plaintiff, the consumer as they failed to provide the basis for their denial of plaintiff's notice of dispute/request for reinvestigation, failed to provide a description of the procedure used by the consumer reporting agency to determine the accuracy and completeness of the information as requested by the consumer, and failed to provide to the consumer, sufficient evidence that the information being reported is true and 100% accurate information as it relates to the consumer and his rights which they voluntarily signed up for when they became a consumer reporting agency or person furnishing information to credit bureaus;

149. Defendants failed to correct, delete information found to be inaccurate, unauthorized, unverified, and in a reasonable time instead reinserted the information and failed to reasonably and properly reinvestigate Plaintiff's disputes;

150. Defendants failed to promptly reinvestigate the truthfulness and accuracy of the account information being reported and failed to provide plaintiff with the basis for the denial of his dispute, provide the consumer with a description of the procedure used to determine the accuracy and completeness of the information, and sufficient evidence that the information is true and accurate information as it relates

to plaintiff within thirty days after receiving a notice of inaccuracy/notice of dispute/request to reinvestigate from the plaintiff in violation of [S.C. Code Ann. § 37-20-170(A), (B)(1), and (B)(4)]. . . .

(ECF No. 291 at 37–38.)

In its summary judgment motion, Trans Union argues that Plaintiff's claim under S.C. Code. Ann. § 37-20-170, fails on the merits for the same reasons as his claims under 15 U.S.C. § 1681i and, to the extent S.C. Code Ann. § 37-20-170 can be construed as imposing obligations on Trans Union beyond those set forth in § 1681i, is expressly pre-empted by 15 U.S.C. § 1681t. (ECF No. 414-1 at 36–40.) Upon review, the Court agrees that Trans Union is entitled to summary judgment on this claim.

First, as set forth in greater detail above, the record shows that Trans Union did not inaccurately report Plaintiff's PenFed Accounts and that Trans Union promptly investigated and reinvestigated Plaintiff's disputes, despite Plaintiff's failure to properly inform Trans Union of the specific inaccuracies he identifies in his FAC. What is more, to the extent that S.C. Code Ann. § 37-20-170 imposes additional duties on Trans Union, any such duties stem from Trans Union's alleged failure to accurately report or correct information on Plaintiff's credit report and are, therefore, preempted by the FCRA. *See Strianese v. Diversified Consultants, Inc.*, No. 3:18-cv-00100-RJC-DSC, 2018 WL 7283269, at *3 (W.D.N.C. July 19, 2018) ("[The] FCRA preempts state law claims arising from any failure to accurately report or correct information on a consumer's credit report."), *adopted*, 2019 WL 495585 (W.D.N.C. Feb. 8, 2019).[25] As such, Trans

---

[25] Regardless, Plaintiff has again provided no admissible evidence to support his S.C. Code Ann. § 37-20-170 claim or to suggest that he was actually harmed by Trans Union's alleged noncompliance with this statute, as opposed to his undisputed failure to repay his debts. *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985) (noting that conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion).

27

Union's summary judgment motion (ECF. No. 414) is granted as to Plaintiff's claim under S.C. Code Ann. § 37-20-170.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Court **GRANTS** Trans Union's motion for summary judgment (ECF No. 414) and dismisses Plaintiff's claims against Trans Union, in full.

**IT IS SO ORDERED**.

/s/Bruce H. Hendricks
United States District Judge

September 29, 2025
Charleston, South Carolina